**THIS ATTACHMENT IS DIGITAL MEDIA EMBEDDED IN THE DOCUMENT;**
_____

**TO PLAY THE MEDIA,**
**LEFT-CLICK THE PDF "HAND TOOL"**

## AGREEMENT FOR POLICE COOPERATION, MUTUAL AID, AND CAMPUS LAW ENFORCEMENT AGENCY EXTENDED JURISDICTION

This agreement is between **Duke University**, hereinafter referred to as "University" and the **City of Durham**, hereinafter referred to as "City."

**WHEREAS**, the University has established a law enforcement agency on the campus of Duke University, pursuant to North Carolina General Statute §74E; and

**WHEREAS**, there has been a close working relationship between the University and City in the function of law enforcement, which both wish to maintain; and

**WHEREAS**, the University and City recognize the need of the Campus Law Enforcement Agency to have an extension of law enforcement authority beyond the boundaries of the campus; and

**WHEREAS**, under North Carolina General Statutes §116-40.5(b) as amended July 18, 2003 in House Bill 736, Section 2 and §160A-288, the University may enter into agreements that extend the law enforcement authority of campus police officers beyond the perimeter of the campus; and

**WHEREAS**, the University has authorized the Head of Campus Law Enforcement Agency to enter into mutual aid agreements with heads of other law enforcement agencies, and the City has authorized Head of City Law Enforcement Agency to enter into mutual aid agreements with heads of other law enforcement agencies, and

**THEREFORE**, in consideration of these mutual interests, the University and City have agreed that these understandings will define the working relationship between the University's Law Enforcement Agency and City's Law Enforcement Agency:

### 1.0 Definitions

1.1 "Campus" shall mean all property owned and/or leased by the University within the corporate city limits of Durham.

1.2 "Campus Law Enforcement Agency Area of Extended Jurisdiction" shall include the areas bounded by Duke St. on the East; Club Blvd. and Hillsborough Rd. on the North; Hwy. 15-501 on the West; and Cornwallis Rd. and Chapel Hill Rd./Chapel Hill St. on the South.

1.3 "Part 1 Offenses" Shall mean those offenses describe under Part I of the Uniform Crime Reporting Index and listed in Appendix A.

1.4 "Part II Offenses" Shall mean those offenses describe under Part II of the Uniform Crime Reporting Index and listed in Appendix A.

1.5 "City Law Enforcement Agency" shall mean the Durham Police Department.

1.6 "Head of City Law Enforcement Agency" shall mean the Chief of Police of the City of Durham.

1.7 "Campus Law Enforcement Agency" shall mean the Duke University Police Department.

1.8 "Head of Campus Law Enforcement Agency" shall mean the Director/Chief of Duke University Police.

1.9 "Primary Responsibility" shall mean the responsibility to initiate and conclude an investigation with or without the assistance of another law enforcement agency.

1.10 "Mutual Aid Agreement" shall mean an agreement to provide temporary assistance pursuant to North Carolina Statute §160A-288.

## 2.0 Responsibilities of Campus Law Enforcement Agency and City Law Enforcement Agency for Offenses Committed on the Campus.

2.1 The City Law Enforcement Agency shares with the Campus Law Enforcement Agency the authority to investigate any offense on Campus.

2.2 Notwithstanding the provisions of paragraph 2.1, the Campus Law Enforcement Agency maintains the authority and primary responsibility to investigate all offenses committed on Campus.

2.3 Notwithstanding the provisions of paragraph 2.1, the City Law Enforcement Agency maintains the authority and primary responsibility to investigate all offenses committed within the Campus Law Enforcement Agency Area of Extended Jurisdiction.

2.4 Notwithstanding the provisions of Paragraph 2.1, the City Law Enforcement Agency has primary responsibility for investigating the following offenses:

- Parking violations occurring on City streets running through or adjacent to Campus and within the Campus Law Enforcement Agency Area of Extended Jurisdiction.

2.5 Notwithstanding the responsibilities described in Paragraph 2.2, the Head of Campus Law Enforcement Agency, at his discretion, may request the assistance of the City Law Enforcement Agency in investigating any offense committed on the Campus. This provision has no effect on the obligation of the Campus Law Enforcement Agency to notify the State Bureau of Investigation in certain situations.

Revised 11/04/03

2.6 Notwithstanding the primary described in Paragraphs 2.3 and 2.4, the Head of City Law Enforcement Agency assumes full responsibility for investigation of such an offense, and the Campus Law Enforcement may, at the discretion of its Head, accept such responsibility.

## 3.0 Extension of Authority of Campus Law Enforcement Agency Beyond Campus

3.1 The Campus Law Enforcement Agency will have primary authority for investigation as described in Paragraph 2.2 although such investigation may require that officers of the Campus Law Enforcement Agency make inquiries and arrests beyond the perimeter of Campus in the following cases:

- An offense committed on Campus for which the alleged perpetrator or suspect is no longer present on campus, whether or not officers are in active and immediate pursuit;
- An offense alleged to have been committed by a University student in certain off-campus buildings occupied by students by virtue of their association with an organization given formal recognition by the Student Government or the University Administration.

3.2 When on-duty, Officers of the Campus Law Enforcement Agency will have police authority beyond the Campus and within the Corporate Limits of the City of Durham in the following cases.

- The officer has probable cause to believe that the person to be arrested has committed a felony, or
- The officer has probable cause to believe that the person to be arrested has committed a misdemeanor in or out of his presence and has probable cause to believe that one of the following conditions exists:
  a. The person to be arrested will not be apprehended unless immediately arrested, or
  b. The person to be arrested may cause physical injury to himself or others unless immediately arrested, or
  c. The person to be arrested may damage property of another unless immediately arrested, or
- A misdemeanor or traffic offense which occurs in the officer's presence and occurs within the area bounded by Duke St. on the East; Club Blvd. and Hillsborough Rd. on the North; Hwy. 15-501 on the West; and Cornwallis Rd. and Chapel Hill Rd./Chapel Hill St. on the South, or
- The person to be arrested is subject to arrest due to outstanding warrant, order for arrest, or other legal service requiring an arrest.
- When appropriate, the Campus Law Enforcement Agency will notify the City Law Enforcement Agency of intent to execute

warrants and other legal papers off campus and request assistance
                    when needed.

3.3    Notwithstanding the primary responsibilities described in Paragraph 2.3
       and 2.4, the Head of City Law Enforcement Agency, at his discretion, may
       request that the Campus Law Enforcement Agency assume full
       responsibility for investigations of any offense, and the Campus Law
       Enforcement Agency may, at the discretion of its Head, accept such
       responsibility.

3.4    While acting in a law enforcement capacity within the Corporate Limits of
       the City of Durham's jurisdiction under authority of North Carolina
       General Statutes §116-40.5(b) as amended July 18, 2003 in House Bill
       736, Section 2 and §160A-288, officers of the Campus Law Enforcement
       Agency shall have the same powers, rights, privileges, and immunities
       (including those related to the civil actions and the payment of judgments)
       as officers of the City Law Enforcement Agency, in addition to those
       powers the officers normally possess.

## 4.0    Authorization For Mutual Aid Agreements

4.1    As necessary and appropriate, the Head of Campus Law Enforcement
       Agency will enter into mutual aid agreements with the Head of City Law
       Enforcement Agency in accord with North Carolina General Statute
       §160A-288.

## 5.0    Terms and Amendments

5.1    Effective date for this Agreement shall be the last date of signature below.
       It shall run continuously without necessity for renewal.

       This Agreement shall supersede any previous Agreements concerning
       Police Cooperation and Mutual Aid.

5.3    Either party upon written notice to the other may terminate this agreement.

5.4    Amendments will be made to this Agreement upon the written
       concurrence of both parties.

                    This instrument has been preaudited in the
                    manner required by the Local Government
                    Budget and Fiscal Control Act. /.7

For and on behalf of _____  2/25  For and on behalf of
The City of Durham:    FINANCE OFFICER      Duke University:

Marcia Conner,                              Dr. Nannerl O. Keohane,
City Manager                                President

                                            Nannerl O. Keohane

Date_____                         Date  11/6/03

                    Page 4 of 4



DURHAM

1869
CITY OF MEDICINE

# City of Durham North Carolina
## Service Contract Authorization
### (To be completed by Department)

Date of Contract  January 6, 2004

Department  Police Department                    Resource Person    Arnetta J. Herring

Selected Vendor    Duke    University

Description of Service to be provided    Extension of Law Enforcement Authority beyond Campus

Type of Service:    X    Routine              Non-Routine

Selection Method:         Bid          RFP           RFQ        X    Other  (description required in Comments)

Advertising Required    Yes   X No   If Yes, Where                                                    When

Performance Bond Required     Yes       X    No        Enclosed      Waived by Council

Privilege License:    Yes    No    Exempt        Privilege License Account Number          Expiration Date

Insurance Requirements

Contract Period (Start to Finish)

Total Cost  $    0          Contingency $           If Multi-Year, Current Fiscal Year Cost $

Payment Terms                Progress Payments                Capital Project Ordinance #

**Responsibility Code and Account Number**
                                        2-16-04
Authorization    X  City Council  Meeting Date 02/02/2004    Agenda Item #            Manager's Office
          City Manager

Department Head or Designee    Steven W. Chalmers

( X ) Check if the Police Attorney's Office is to review the way the Contractor has signed the contract
(   ) Check if the City Attorney's Office is to review the way a bond has been signed

Police Attorney Office  Annetta Herring   Date  11/7/03

MAR 2004

### (To be completed by Department of Finance)

**Contract Number**  N/A      Compliance              Funds Availability

Date Encumbered  N/A

## Contract must be executed by Vendor prior to City Authorization

**Comments**
Agreement specific to needs of  Duke University  and City of Durham

## AGREEMENT FOR POLICE COOPERATION, MUTUAL AID, AND CAMPUS LAW ENFORCEMENT AGENCY EXTENDED JURISDICTION

This agreement is between **Duke University**, hereinafter referred to as "University" and the **City of Durham**, hereinafter referred to as "City."

**WHEREAS**, the University has established a law enforcement agency on the campus of Duke University, pursuant to North Carolina General Statute §74E; and

**WHEREAS**, there has been a close working relationship between the University and City in the function of law enforcement, which both wish to maintain; and

**WHEREAS**, the University and City recognize the need of the Campus Law Enforcement Agency to have an extension of law enforcement authority beyond the boundaries of the campus; and

**WHEREAS**, under North Carolina General Statutes §116-40.5(b) as amended July 18, 2003 in House Bill 736, Section 2 and §160A-288, the University may enter into agreements that extend the law enforcement authority of campus police officers beyond the perimeter of the campus; and

**WHEREAS**, the University has authorized the Head of Campus Law Enforcement Agency to enter into mutual aid agreements with heads of other law enforcement agencies, and the City has authorized Head of City Law Enforcement Agency to enter into mutual aid agreements with heads of other law enforcement agencies, and

**THEREFORE**, in consideration of these mutual interests, the University and City have agreed that these understandings will define the working relationship between the University's Law Enforcement Agency and City's Law Enforcement Agency:

### 1.0    Definitions

1.1    "Campus" shall mean all property owned and/or leased by the University within the corporate city limits of Durham.

1.2    "Campus Law Enforcement Agency Area of Extended Jurisdiction" shall include the areas bounded by Duke St. on the East; Club Blvd. and Hillsborough Rd. on the North; Hwy. 15-501 on the West; and Cornwallis Rd. and Chapel Hill Rd./Chapel Hill St. on the South.

1.3    "Part I Offenses" Shall mean those offenses describe under Part I of the Uniform Crime Reporting Index and listed in Appendix A.

1.4    "Part II Offenses" Shall mean those offenses describe under Part II of the Uniform Crime Reporting Index and listed in Appendix A.

Revised 02/05/04

1.5 "City Law Enforcement Agency" shall mean the Durham Police Department.

1.6 "Head of City Law Enforcement Agency" shall mean the Chief of Police of the City of Durham.

1.7 "Campus Law Enforcement Agency" shall mean the Duke University Police Department.

1.8 "Head of Campus Law Enforcement Agency" shall mean the Director/Chief of Duke University Police.

1.9 "Primary Responsibility" shall mean the responsibility to initiate and conclude an investigation with or without the assistance of another law enforcement agency.

1.10 "Mutual Aid Agreement" shall mean an agreement to provide temporary assistance pursuant to North Carolina Statute §160A-288.

## 2.0 Responsibilities of Campus Law Enforcement Agency and City Law Enforcement Agency for Offenses Committed on the Campus.

2.1 The City Law Enforcement Agency shares with the Campus Law Enforcement Agency the authority to investigate any offense on Campus.

2.2 Notwithstanding the provisions of paragraph 2.1, the Campus Law Enforcement Agency maintains the authority and primary responsibility to investigate all offenses committed on Campus.

2.3 Notwithstanding the provisions of paragraph 2.1, the City Law Enforcement Agency maintains the authority and primary responsibility to investigate all offenses committed within the Campus Law Enforcement Agency Area of Extended Jurisdiction.

2.4 Notwithstanding the provisions of Paragraph 2.1, the City Law Enforcement Agency has primary responsibility for investigating the following offenses:

- Parking violations occurring on City streets running through or adjacent to Campus and within the Campus Law Enforcement Agency Area of Extended Jurisdiction.

2.5 Notwithstanding the responsibilities described in Paragraph 2.2, the Head of Campus Law Enforcement Agency, at his discretion, may request the assistance of the City Law Enforcement Agency in investigating any offense committed on the Campus. This provision has no effect on the obligation of the Campus Law Enforcement Agency to notify the State Bureau of Investigation in certain situations.

Revised 02/05/04

2.6 Notwithstanding the primary described in Paragraphs 2.3 and 2.4, the Head of City Law Enforcement Agency assumes full responsibility for investigation of such an offense, and the Campus Law Enforcement may, at the discretion of its Head, accept such responsibility.

2.7 The Head of Campus Law Enforcement Agency or his designate shall, as soon as practical, notify the Head of City Law Enforcement Agency or his designate as to any occurrence of the Part I offenses of Homicide or Rape on the Duke University Campus. In turn, the Head of the City Law Enforcement Agency or his designate shall, as soon as practical, notify the Head of the Campus Law Enforcement Agency or his designate as to any occurrence of the Part I offenses of Homicide or Rape within the Campus Law Enforcement Agency Area of Extended Jurisdiction.

3.0 **Extension of Authority of Campus Law Enforcement Agency Beyond Campus**

3.1 The Campus Law Enforcement Agency will have primary authority for investigation as described in Paragraph 2.2 although such investigation may require that officers of the Campus Law Enforcement Agency make inquiries and arrests beyond the perimeter of Campus in the following cases:

- An offense committed on Campus for which the alleged perpetrator or suspect is no longer present on campus, whether or not officers are in active and immediate pursuit;
- An offense alleged to have been committed by a University student in certain off-campus buildings occupied by students by virtue of their association with an organization given formal recognition by the Student Government or the University Administration.

3.2 When on-duty, Officers of the Campus Law Enforcement Agency will have police authority beyond the Campus and within the Corporate Limits of the City of Durham in the following cases.

- The officer has probable cause to believe that the person to be arrested has committed a felony, or
- The officer has probable cause to believe that the person to be arrested has committed a misdemeanor in or out of his presence and has probable cause to believe that one of the following conditions exists:
  a. The person to be arrested will not be apprehended unless immediately arrested, or
  b. The person to be arrested may cause physical injury to himself or others unless immediately arrested, or
  c. The person to be arrested may damage property of another unless immediately arrested, or

Revised 02/05/04

- A misdemeanor or traffic offense which occurs in the officer's presence and occurs within the area bounded by Duke St. on the East; Club Blvd. and Hillsborough Rd. on the North; Hwy. 15-501 on the West; and Cornwallis Rd. and Chapel Hill Rd./Chapel Hill St. on the South, or
- The person to be arrested is subject to arrest due to outstanding warrant, order for arrest, or other legal service requiring an arrest.
- When appropriate, the Campus Law Enforcement Agency will notify the City Law Enforcement Agency of intent to execute warrants and other legal papers off campus and request assistance when needed.

3.3 Notwithstanding the primary responsibilities described in Paragraph 2.3 and 2.4, the Head of City Law Enforcement Agency, at his discretion, may request that the Campus Law Enforcement Agency assume full responsibility for investigations of any offense, and the Campus Law Enforcement Agency may, at the discretion of its Head, accept such responsibility.

3.4 While acting in a law enforcement capacity within the Corporate Limits of the City of Durham's jurisdiction under authority of North Carolina General Statutes §116-40.5(b) as amended July 18, 2003 in House Bill 736, Section 2 and §160A-288, officers of the Campus Law Enforcement Agency shall have the same powers, rights, privileges, and immunities (including those related to the civil actions and the payment of judgments) as officers of the City Law Enforcement Agency, in addition to those powers the officers normally possess.

3.5 To the maximum extent allowed by law, the University shall defend, indemnify, and save harmless the City from and against all claims, demands and lawsuits that may arise in any manner from, in connection with, the acts or omissions of the University's officers while performing their duties under this Agreement.

## 4.0 Authorization For Mutual Aid Agreements

4.1 As necessary and appropriate, the Head of Campus Law Enforcement Agency will enter into mutual aid agreements with the Head of City Law Enforcement Agency in accord with North Carolina General Statute §160A-288.

## 5.0 Terms and Amendments

5.1 Effective date for this Agreement shall be the last date of signature below. It shall run continuously without necessity for renewal.

5.2 This Agreement shall supersede any previous Agreements concerning Police Cooperation and Mutual Aid.

Revised 02/05/04

5.3    Either party upon written notice to the other may terminate this agreement.

5.4    Amendments will be made to this Agreement upon the written concurrence of both parties.

For and on behalf of
The City of Durham:

Marcia Conner,
City Manager

Date_____

For and on behalf of
Duke University:

Dr. Nannerl O. Keohane,
President

Nannerl O. Keohane

Date April 6, 2004

This instrument has been preaudited in the manner required by the Local Government Budget and Fiscal Control Act.    4/21/04
FINANCE OFFICER    DATE

Attest:
D. Ann Gray
City Clerk
4-21-04

Revised 02/05/04

Film No. → File No.

## SEARCH WARRANT

**STATE OF NORTH CAROLINA**

In The General Court of Justice

Durham _____ County _____ District Court Division

... er. ... of ...
..., Grosh Tomovich, and Mike
Kennopf: #2
203 Watts Street Durham, NC 27701

Date Issued
07-07-2005

24 AM / PM

Name of Applicant ...
Org. and M.E. Gottlieb

Name of Additional Affiant

... District Officer

To any officer with authority and jurisdiction to conduct the search authorized by this Search Warrant:

I, the undersigned, affirm that there is probable cause to believe that the property and person described in the application on the reverse side and related to the commission of a crime is located as described in the application.

---

### RETURN OF SERVICE

I certify that this Search WARRANT was received and executed as follows:

Date Received: 10/9/2005
Time Received: 0243 ☒ AM ☐ PM

Date Executed: 10/9/05
Date & Time of Return: 10/9/05 0455

0319

☒ I made a search of
203 WATTS

_____ as commanded.

☒ I seized the items listed on the attached inventory
☐ I did not seize any items.

☐ This warrant was not executed with in 8 hours of the date of issuance and I hereby return it not executed.

Signature of Officer Making Return

Department of Agency of Officer
DURHAM PD

You are commanded to search the premises, vehicle, person, and other place or item described in the application for the property and person in question. If the property and/or person are found, make the seizure and keep the property subject to Court Order and process the person according to law.

You are directed to execute this Search Warrant with in forty-eight (48) hours from the time indicated on this Warrant and make due return to the Clerk of the Issuing Court.

This Search Warrant is issued upon information furnished under oath by the person or persons shown.

Date 10/9/2005
Signature _____
☐ Deputy CSC ☐ Asst. CSC ☐ Clerk of Superior Court
☒ Magistrate ☐ District Ct. Judge ☐ Superior Ct. Judge

This Search Warrant was returned to me on the date and time shown below
Date 10/9/05 Time _____ ☒ AM ☐ PM
Signature _____
☐ Deputy CSC ☐ Asst. CSC ☐ Clerk of Superior Court

## APPLICATION FOR SEARCH WARRANT

Sgt. M.D. (        with the Durham Police Department 505 W. Chapel Hill Street Durham, NC 27701_____
_____*(Insert name and address; or, if law enforcement officer, name, rank and agency)*

:ing duly sw     quest that the court issue a warrant to search the person, place, vehicle and other items described in this
pplication, a    I and seize the property and person described in this application. There is probable cause to believe that _____

ee Attached
        I     *the property to be seized; or if search warrant is to be used for searching a place)*

_____

constitutes ev    of a crime and the identity of a person participating in a crime,

Poss. Stolen C    12-71.1, Durham City Noise Ord. 11-1, and Durham City Ord. Open Containers 12-16.1_____
ed

*(Check appro,     *es) and fill in specified information)*
X in the follc        emises, 203 wa its Street Durham, NC 27701        Premises described on attachment titled "Location to be searched"
        *(Give address and, if useful, describe premises)*

_____
*(and)*
☐ on the fo'        rson(s) _____
        *(Give name(s) and, if useful, describe person(s))*
*(and)*
☐ in the foll        hicle(s) _____
        *(Describe vehicle(s))*
*(and)*
X SEE ATT      I NT PAGE 1-4._____
        *(Name and/or describe other places or items to be searched, if applicable)*
The applicant         to the following facts to establish probable cause for the issuance of a search warrant: The facts to establish probable
cause for the        er of this search warrant are set forth on the attached continuation page titled "Probable Cause Affidavit".

_____
_____
_____                                                                                    *

        WORN AND SUBSCRIBED TO BEFORE ME
Date    |  ᴅ | 9 | 2005
Signature                                                               Signature of Applicant        4398

☐ Deputy CS                ☐ Clerk of Superior Court   ☒ Magistrate ☐ Judge

☐ In additio         affidavit included above, this application is supported by additional affidavit(s) attached, made by

☐ In additio         affidavit included above, this application is supported by sworn testimony, given by

This t.         has been *(check appropriate box)* ☐ reduced to writing  ☐ tape recorded and I have filed each with the Clerk.
  • If         ation is necessary, continue the statement on an attached sheet of paper with a notation saying "see attachment."
Date the conti        and include on it the signatures of applicant and issuing official.

STATE OF NORTH CAROLINA                    IN THE GENERAL COURT OF JUSTICE
DURHAM COUNTY                              DISTRICT COURT DIVISION

ATTACHMENT
CONTINUATION OF SEARCH WARRANT
PROBABLE CAUSE AFFIDAVIT

IN THE MATTER OF 203 Watts Street Durham, North Carolina 27701:

I, Sergeant M.D. Gottlieb, being duly sworn depose and say that I am a Sworn Law
Enforcement Officer in the State of North Carolina for approximately 16 years, and
employed by the Durham Police Department, Durham, NC for approximately 12 years. I
am assigned to the Uniform Patrol Division as a Patrol Supervisor.

The Uniform Patrol Division has the responsibility of responding to calls for service,
investigations of crimes committed by adults and juveniles involving crimes against
persons and property, and ensuring the safety of the public in general. The primary
objectives of this Division is to provide both law enforcement to the citizens of Durham,
and the investigative and general support to other Divisions of the Durham Police
Department in the accomplishment of establishing departmental goals and objectives.
The District Two Command is under the Uniform Patrol Division. It is set up as a
geographic district boundary line to answers these calls in the city.

I have been assigned to the District Two Substation since May 2005 as the Sergeant over
D-Squad. I have received specialized training in Law Enforcement from Durham
Technical Community College, Wake Technical Community College, Davidson County
Community College, Guilford County Community College, Public Agency Training
Council, National College of District Attorneys University of South Carolina in Reno,
NV, NCDAU Anaheim, CA, and Durham Police Department Training Unit. I have
attended the following classes related to law enforcement:

National District Attorneys Domestic Violence Conference1999 and 2000, Rape and Sex
Crimes Investigations, Interview and Interrogation, Domestic Violence and Child Abuse
Investigation, Greenville Police Department Domestic Violence Intervention Seminar,
Black Church Response to Domestic Violence, NC General Instructors School –
Specialized Instructor, Field Training Officers School, Techniques for Sudden Life and
Death Encounters, EMS Technology – Paramedic Curriculum, AHA Basic and Advanced
Life Support Instructor School. These classes are in addition to hundreds of hours of In-
Service Training with the Durham Police Department.

JUDGE \ MAGISTRATE                                          AFFIANT

10 / 9 / 2005
DATE                                                        AFFIANT

ATTACHMENT
CONTINUATION OF SEARCH WARRANT
PROBABLE CAUSE AFFIDAVIT

IN THE MATTER OF 203 Watts Street Durham, North Carolina 27701; Jason B.
Matthews, Kevin Breaux, Justin Bieber, Jeff Goldfarb, Joshua H. Weinstein, Mike
Kenney, and Urosh Tomovich:

This investigation concerns the the Durham City Ordinance Violation of Open Containers
12-16.1, City Noise Ordinance- General 11-1, and the Possessing of Stolen Goods NCGS
14-71.1.

Based upon the factual information hereinafter described in detail, I believe probable
cause exists to conclude that the evidence described in this application probably is
located at the residence and inside the residence to be searched as described in this
application. The information related in this affidavit is based upon the personal
knowledge of this officer executing this application, and upon information received from
the people interviewed in the course of this investigation. All the citizens interviewed
appeared creditable and truthful in relation to whatever information they had relevant to
this investigation. None of the persons interviewed have an apparent motive to be
untruthful. None of the persons interviewed have any reputation or history for being
untruthful or uncooperative with Law Enforcement Officers performing in an
investigation. The information received by me in the course of this investigation is
discussed in detail in this affidavit and is believed accurate and true. No significant
contradiction or difference exists in the information that I have received from persons
interviewed since October 8, 2005.

**The facts are as follows:**

On October 8, 2005 Sergeant M.D. Gottlieb of the Durham Police Department Uniform
Patrol Bureau 2-D, hereafter being referred to as the affiant to this search warrant,
received information from the complainant concerning illegal activity being conducted
inside and outside of 203 Watts Street. This information was called in by a Lee Coggins
of 204 Watts Street Durham, North Carolina 27701.

JUDGE \ MAGISTRATE

10 / 9 / 2005

DATE

AFFIANT

AFFIANT

ATTACHMENT
CONTINUATION OF SEARCH WARRANT
PROBABLE CAUSE AFFIDAVIT

IN THE MATTER OF 203 Watts Street Durham, North Carolina 27701; Jason B.
Matthews, Kevin Breaux, Justin Bieber, Jeff Goldfarb, Joshua H. Weinstein, Mike
Kenney, and Urosh Tomovich:

The information provided indicates the suspects who all reside at 203 Watts Street, while
attending Duke University, are known to have regular parties at their school residence.
They are reported to be a part of the Delta Phi Alpha Fraternity according to
representatives of Duke University. The complainant stated today around 5:00pm the
suspects began a party that was both inside and flowed outside of their home. People
were in the street, sidewalk, on the porch, looking out of second story windows, and up
on the second story balcony drinking beer out of red cups, cans, and bottles. They were
yelling and playing music that was very disruptive. The suspects and their friends
continued this activity until 6:30pm when the police were called. The complainant stated
at that point people were urinating on her home, and throwing beer cans on her lawn.
She stated she walked outside to tell one of the subjects to pick up the can, and a second
male threw a 40 ounce bottle in her direction that struck the sidewalk and shattered.

A near by neighbor, Nathan Isley, of 115 Watts Street stated he saw two individuals
urinating across the street at his neighbors home during this event. One male was
urinating on her fence, and a second male was urinating on the white house next to the
complainant's home. He stated the noise was very upsetting and he wanted to press
charges also. He stated he ran inside and got his camera to document what was
occurring. He stated while he was on the way back outside he heard the complainant tell
someone to pick up something, and then heard the glass breaking. He stated he took a
picture of the white male running back to a white SUV, get in and drive off. The
complainant positively identified the person in the photo as the male who threw the beer
bottle in her direction.

Over several years, the Durham Police Department has received numerous complaints
about a liquor and noise violations concerning 203 Watts Street and its residents. In
addition, police records indicate multiple complaints have been generated just since the
return of the Duke students to this home since August 2005. Arrest warrants have been
obtained for the arrest of all seven residents of the home.

JUDGE/MAGISTRATE

DATE

AFFIANT

AFFIANT

3

STATE OF NORTH CAROLINA          IN THE GENERAL COURT OF JUSTICE
DURHAM COUNTY                    DISTRICT COURT DIVISION

ATTACHMENT
CONTINUATION OF SEARCH WARRANT
PROBABLE CAUSE AFFIDAVIT

IN THE MATTER OF 203 Watts Street Durham, North Carolina 27701; Jason B.
Matthews, Kevin Breaux, Justin Bieber, Jeff Goldfarb, Joshua H. Weinstein, Mike
Kenney, and Urosh Tomovich:

According to Duke University Police Officer David Dyson, he observed a rare Duke
University flag hanging in a second story window of 203 Watts Street Durham, North
Carolina 27701. He stated the flag was stole from the Allen Building on 3-30-2005, and
the Duke report number is 2005-01541. He stated the flag is approximately 4'x6', blue in
color, and has a Duke logo on it. He stated he has conducted research on the make of this
flag, and this is not a flag that is sold to the public. He stated he was unable to retrieve
the stolen property on the day he observed it inside the home. It is believed to still be
inside the residence of 203 Watts Street.

It is believed there is currently evidence of the crimes that the suspects are charged with
inside the residence to aid the State of NC in their prosecution. In addition, it is also
believed there is the flag that was stole from Duke University still inside of the residence.
Finally, as the residence is the temporary dwelling for all seven of the wanted suspects
reside in while attending Duke University it is believed all of the suspects can be
apprehended during the search warrant.

JUDGE / MAGISTRATE _____

DATE _____

AFFIANT _____

AFFIANT _____

4

STATE OF NORTH CAROLINA                IN THE GENERAL COURT OF JUSTICE
DURHAM COUNTY                          DISTRICT COURT DIVISION

ATTACHMENT
CONTINUATION OF SEARCH WARRANT
PROBABLE CAUSE AFFIDAVIT

IN THE MATTER OF 203 Watts Street Durham, North Carolina 27701; Jason B.
Matthews, Kevin Breaux, Justin Bieber, Jeff Goldfarb, Joshua H. Weinstein, Mike
Kenney, and Urosh Tomovich:

**Description of Evidence to be seized**
1. Kegs
2. Red serving cups
3. Beer distribution equipment
4. Receipts of purchases of materials listed above
5. Written documentation of illegal activities conducted in the home
6. Duke flag approximately 4'x6' blue in color with a Duke logo
7. Documents to show legal possession or attachment to the residence of the occupants.
8. Any other items used in criminal activity not listed in this application.

_____
JUDGE/MAGISTRATE

_____
DATE

_____
AFFIANT

_____
AFFIANT

5

ATTACHMENT
CONTINUATION OF SEARCH WARRANT
PROBABLE CAUSE AFFIDAVIT

IN THE MATTER OF 203 Watts Street Durham, North Carolina 27701; Jason B.
Matthews, Kevin Breaux, Justin Bieber, Jeff Goldfarb, Joshua H. Weinstein, Mike
Kenney, and Urosh Tomovich:

9.  BODY – Jason Matthews, W/M, 07/04/1984 

10. BODY – Kevin Breaux, W/M, 12/30/1980 

11. BODY – Justin Bieber, W/M, 06/02/1983 

12. BODY – Jeff Goldfarb, W/M, 06/22/1984 

13. BODY – Josh Weinstein, W/M, 04/02/1984 

JUDGE \ MAGISTRATE

DATE

_____ AFFIANT

_____ AFFIANT

6

STATE OF NORTH CAROLINA
DURHAM COUNTY

IN THE GENERAL COURT OF JUSTICE
DISTRICT COURT DIVISION

ATTACHMENT
CONTINUATION OF SEARCH WARRANT
PROBABLE CAUSE AFFIDAVIT

IN THE MATTER OF 203 Watts Street Durham, North Carolina 27701; Jason B.
Matthews, Kevin Breaux, Justin Bieber, Jeff Goldfarb, Joshua H. Weinstein, Mike
Kenney, and Urosh Tomovich:

14. BODY – Urosh Tomovich, W/M, 05/01/1984




15. BODY – Mike Kenney, W/M, 05/24/1984

JUDGE \ MAGISTRATE

DATE

_____
AFFIANT

_____
AFFIANT

7

STATE OF NORTH CAROLINA          IN THE GENERAL COURT OF JUSTICE
DURHAM COUNTY                    DISTRICT COURT DIVISION

ATTACHMENT
CONTINUATION OF SEARCH WARRANT
PROBABLE CAUSE AFFIDAVIT

IN THE MATTER OF 203 Watts Street Durham, North Carolina 27701; Jason B.
Matthews, Kevin Breaux, Justin Bieber, Jeff Goldfarb, Joshua H. Weinstein, Mike
Kenney, and Urosh Tomovich:

**Location to be searched**
203 Watts Street Durham, North Carolina 27701

203 Watts is located on the west side of Watts Street Lamond and Gloria Street. It is the
third house north of Lamond. The structure is a wood frame two story dwelling with
brown shingle siding and white trim. It has a large front porch supported by three brick
pillars. The numbers 203 are nailed on the right upper side of the front door. There is
also an open balcony enclosed by a protective rail on the front second story over the front
porch.



When leaving Durham Police District 2 Station; exit on the Gregson Street of the station
and turn south bound on Gregson Street. Travel south bound to W. Main Street and turn
right which is west on Main Street. Take W. Main Street to Watts Street and turn right
which is north on watts Street. The residence is located on the west side of the street
three houses past Lamond.

JUDGE / MAGISTRATE

DATE 10/9/05

_____
                        AFFIANT

_____
                        AFFIANT

8

**From:** TrinityPark@yahoogroups.com [mailto:TrinityPark@yahoogroups.com] **On Behalf Of** Gottlieb, Mark
**Sent:** Sunday, October 09, 2005 10:30 PM
**To:** pac2@yahoogroups.com; trinitypark@yahoogroups.com
**Cc:** Sarvis, Ed; Smith, Larry; Duke, Frank
**Subject:** [TrinityPark] 203 Watts

NOTE: THIS IS A SECOND ATTEMPT TO SEND OUT THIS MESSAGE TO PAC2. THE ORIGINAL
MESSAGE WOULD NOT GO THROUGH WITH ALL THE PHOTOGRAPHS OF THE SUSPECTS.

### RECENT DISTRICT BACKGROUND INFORMATION

The Durham Police Department District 2 officers have been conducting a zero tolerance enforcement
program throughout the district to decrease problems that interfere with quality of life issues. This operation
has been going on for the past few months. Officers have gone into high crime areas and areas with
multiple complaints and began to enforce everything from public alcohol consumption, to noise complaints,
and parking violations. Officers also identify suspicious people who are out in areas that appear to be out
of place, and document who they are, and what they say they are doing there. The heavy patrols along
with quick response to neighborhood complaints have been the back bone of this operation. The early
results have been impressive. While the officers from District 2-D have worked to solve individual
neighborhood quality of life issues, we have had excellent timing in September to arrest two break in
suspects and a Peeping Tom all in the Trinity Park / Walltown areas. This has decreased the number of
B/E's to autos our officers have responded to, and helped the people of these communities.

### 203 WATTS STREET HISTORY

For several years officers have had numerous complaints that have been generated about loud parties,
public urination, alcohol violations, public consumption, under age drinking, and general disrespect caused
by residents of this house. Since August 2005, the home has been a problem for neighbors several times.
According to records research by the police department provided to Captain Sarvis, this house is the
number one house for noise and alcohol complaints in the city. The house is a rental property owned by
Guy Solie of Trinity Properties. According to Jason Matthews, a current resident at 203 Watts Street, there
are six people on the lease, but seven who live there. He stated he has given their names (people residing
at 203 Watts Street) and phone numbers to neighbors and asked them to call one of them if a party is
disturbing them instead of the police. He met with Captain Sarvis, Cpl. Reitz, and I on Wednesday 10-5-
2005. He stated he has been arrested 4 times now and cannot afford to keep going to jail. He asked what
could be done to decrease complaints from the neighbors and allow the residents to continue to enjoy a
social life. We explained to him the people need to be respectful, clean up after themselves, keep the noise
down, and not drink or urinate in public. We also suggested they join the Trinity Park website to see what
neighborhood concerns are, and try to abide by them.

### PARTY ON 10-08-2005 at 203 WATTS STREET

On 10-8-2005 at 6:30pm, District 2-D officers were called to the 200 block of Watts for a loud party at 203
Watts Street. There were reports of subjects urinating on houses across the street, throwing beer cans on
neighbor's lawns, loud music, public consumption of beer on the street and sidewalk, and people breaking
beer bottles in the street and on the sidewalks. Written statements were taken from neighbors who
witnessed this activity. One neighbor even took a picture of a subject who threw a 40 ounce bottle in the

direction of a neighbor who asked one of the people at the party to pick up the trash they threw on her lawn. The subject was running back to his white SUV with Virginia tags when the photograph was taken. Warrants will hopefully be issued for that person in the very near future. Duke police responded to this call with city officers. They advised me there is also a stolen flag from the Duke Allen Administration Bldg. that was observed hanging in a window on 9-15-2005. It was still believed to be inside the residence on 10-8-2005.

Officers went to the Durham County Magistrates Office and obtained arrest warrants on the seven individuals who live in the home. They are;

1    Mike Kenney, W/M, 5-24-1984, of 5664 Woodcrest Dr. Edina, MN 55424

2    Urosh Tomovich, W/M, 05-01-1984, of 8930 # 203 Halfmoon Ct Raleigh, NC 27613

3    Joshua H. Weinstein, W/M, 04-02, 1984, of 117 Margery Ln. Westwood, MA 02090

4    Jeff Goldfarb, W/M, 06-22-1984, of 55 Spier Dr. South Orange, NJ 07079

5    Justin Bieber, W/M, 02-06-1984, of 9532 Potomac Potomac, MD 20854

6    Kevin Breaux, W/M, 12/30/1983, of 612 Fifth Street Marrietta, OH 45750

7    Jason Boone Matthews, W/M, 07-04-1984, of 2418 Nantes Lane Bakersfield, CA 93311

On 10-9-2005 in the early morning hours, Durham Police 2-D Officers assisted by Duke Police conducted a search warrant at 203 Watts Street and took 5 of the seven wanted suspects into custody. In addition, evidence was gathered to assist in the prosecution of the charges that were related to the earlier call on 10-8-2005 at 6:30pm.

The stolen flag that belongs to Duke University was also recovered. The flag was turned back to their possession, and the case will be turned over to their Investigative Services for the issuance of additional charges; Possessing Stolen Goods.

### FOLLOW UP PLANNED FOR 203 WATTS STREET

Officers will locate and arrest the remaining two individuals who were not located at the time of the search warrant. They are Jason Matthews and Mike Kenney.

This house continues to be a nuisance for the neighbors who live in Trinity Park I am forwarding information to the City for suspected violations of zoning codes. When the search warrant was conducted there is obviously only one kitchen in this single occupancy dwelling. I am under the impression that houses

occupied in this fashion are required to have two kitchens to meet the zoning requirements.

Finally, Check with Duke Police on the status of the pending warrants.

I would like to thank everyone for their continued support of the work by the District 2 officers, and will attempt to continue to make District 2 a better place to live and work.

Sergeant M.D. Gottlieb

Durham Police District 2

505 West Chapel Hill Street

Durham, North Carolina 27701

919-560-4582

919-560-4826 (Fax)

M.Gottlieb@durhamnc.gov



WILLIE L. COVINGTON
REGISTER OF DEEDS, DURHAM COUNTY
DURHAM COUNTY COURTHOUSE
200 E. MAIN STREET
DURHAM, NC 27701

# PLEASE RETAIN YELLOW TRAILER PAGE

It is part of recorded document, and must be submitted with original for re-recording and/or cancellation.

| | |
|---|---|
| Filed For Registration: | 02/28/2006 11:23:07 AM |
| Book: | RE  5126  Page: 678-685 |
| Document No.: | 2006008836 |
| | DEED  8 PGS  $32.00 |
| NC REAL ESTATE EXCISE TAX: | $7,400.00 |
| Recorder: | APRIL J WILLIAMS |



2006008836



2006008836

FOR REGISTRATION REGISTER OF DEEDS
Willie L. Covington
DURHAM COUNTY, NC
2006 FEB 28 11:23:07 AM
BK:5126 PG:678-685 FEE:$32.00
NC REV STAMP:$7,400.00
INSTRUMENT # 2006008836

# NORTH CAROLINA GENERAL WARRANTY DEED

Excise Tax: $7,400.00

| Parcel Identifier No. _____ Verified by _____ County on the ___ day of _____, 20__ |
| By: _____ |

Mail/Box to: Grantee  c/o RH Bolton, Duke University R/E Admin., 402 Oregon St., Durham NC 27705

This instrument was prepared by: Maxwell, Freeman & Bowman, P.A., 2741 University Drive, Durham, NC 27707

Brief description for the Index: _____

THIS DEED made this 27th day of February, 20 06, by and between

| GRANTOR | GRANTEE |
|---|---|
| SOLEIL, LLC | DURHAM REALTY, INC. |

The designation Grantor and Grantee as used herein shall include said parties, their heirs, successors, and assigns, and shall include singular, plural, masculine, feminine or neuter as required by context.

WITNESSETH, that the Grantor, for a valuable consideration paid by the Grantee, the receipt of which is hereby acknowledged, has and by these presents does grant, bargain, sell and convey unto the Grantee in fee simple, all that certain lot or parcel of land situated in the City of _____, _____ Township, Durham County, North Carolina and more particularly described as follows:

SEE EXHIBIT A

The property hereinabove described was acquired by Grantor by instrument recorded in Book _____ page _____.

A map showing the above described property is recorded in Plat Book _____ page _____.

NC Bar Association Form No. L-3 © 1976, Revised © 1977, 2002
Printed by Agreement with the NC Bar Association – 1981    SoftPro Corporation, 333 E. Six Forks Rd., Raleigh, NC 27609

TO HAVE AND TO HOLD the aforesaid lot or parcel of land and all privileges and appurtenances thereto belonging to the Grantee in fee simple.

And the Grantor covenants with the Grantee, that Grantor is seized of the premises in fee simple, has the right to convey the same in fee simple, that title is marketable and free and clear of all encumbrances, and that Grantor will warrant and defend the title against the lawful claims of all persons whomsoever, other than the following exceptions: Any Restrictive Covenants and Easements of public record.

IN WITNESS WHEREOF, the Grantor has duly executed the foregoing as of the day and year first above written.

SOLEIL, LLC
_____ (SEAL)
(Entity Name)

By:_____ _____ (SEAL)
Title: Member / Manager

By:_____ _____ (SEAL)
Title:_____

By:_____ _____ (SEAL)
Title:_____

State of North Carolina - County of _____

I, the undersigned Notary Public of the County and State aforesaid, certify that _____
_____ personally appeared before me this day and acknowledged the due execution of the foregoing instrument for the purposes therein expressed. Witness my hand and Notarial stamp or seal this _____ day of _____, 20__ .

My Commission Expires:_____
_____
Notary Public

State of North Carolina - County of Durham_____

I, the undersigned Notary Public of the County and State aforesaid, certify that Guy T. Solie_____ personally came before me this day and acknowledged that he is the Member_____ of Soleil, LLC_____ , a North Carolina or _____ corporation/limited liability company/general partnership/limited partnership (strike through the inapplicable), and that by authority duly given and as the act of such entity, he signed the foregoing instrument in its name on its behalf as its act and deed. Witness my hand and Notarial stamp or seal, this 27th day of February ☐ 20 06

My Commission Expires: 2-20-11

JO ANN F. MILLER
NOTARY PUBLIC
Durham County, North Carolina
My Commission Expires

_____
Notary Public

State of North Carolina - County of _____

I, the undersigned Notary Public of the County and State aforesaid, certify that _____
_____

Witness my hand and Notarial stamp or seal, this _____ day of _____, 20__ .

My Commission Expires:_____
_____
Notary Public

The foregoing Certificate(s) of_____ is/are certified to be correct. This instrument and this certificate are duly registered at the date and time and in the Book and Page shown on the first page hereof.

_____ Register of Deeds for _____ County
By:_____ Deputy/Assistant - Register of Deeds

NC Bar Association Form No. L-3 © 1976, Revised © 1977, 2002
Printed by Agreement with the NC Bar Association – 1981    SoftPro Corporation, 333 E. Six Forks Rd., Raleigh, NC 27609

EXHIBIT A

LEGAL DESCRIPTION

**Tract 1**       508 N. Buchanan Blvd.

BEGINNING at a stake in the east side of Buchanan Boulevard 110.66 feet in a southerly direction from the south side of Dacian Avenue; and running thence South 87 degs. 48' East 109 feet to a stake; thence South 4 degs. 50' West 39.5 feet to a stake in the north side of a 15 foot alley; thence along and with the north side of said alley North 87 degs. 48' West 109 feet to a stake in the east side of Buchanan Boulevard; thence along and with the east side of Buchanan Boulevard North 4 degs. 50' East 39.5 feet to a stake, the point and place of beginning, and being the southern portions of Lots 1 and 2 in Block 6 of the B. L. DUKE NORTH DURHAM PROPERTY, as per plat and survey thereof on file in the Office of the Register of Deeds of Durham County, in Plat Book 5, at page 102, to which reference is hereby made for a more particular description of same.

**Tract 2**       610 N. Buchanan Blvd.

BEGINNING at a stake on the east side of Buchanan Boulevard at a point where the inside line of the sidewalk on the east side of Buchanan Boulevard intersects the north side of a 15 foot alley; and running thence along and with the inside line of the sidewalk on the east side of Buchanan Boulevard North 12 degrees 20 minutes West 56 feet to a stake on the inside line of the sidewalk on the said east side of Buchanan Boulevard; thence South 88 degrees east 99 feet to a stake in F.C. Delamar's line; thence South 2 degrees 50 minutes West 56 feet to a stake on the north side of said 15 foot public alley; thence North 87 degrees West 88 feet to the point of BEGINNING and being the same property described in Deed Book 241 at Page 187.

**Tract 3**       702 N. Buchanan Blvd.

LYING at the northeastern intersection of Buchanan Boulevard and Urban Avenue, and being all of Lot 3 of the DR. T.T. FRAZIER PROPERTY as per plat and survey thereof now on file in Plat Book 10 at page 56 in the Office of the Register of Deeds of Durham County, to which plat reference is hereby expressly made for a more particular description of same. This is the same identical property conveyed to Guy T. Solie by deed recorded in Real Estate Book 1162 at page 22, Durham County Registry.

**Tract 4**       704 N. Buchanan Blvd.

BEGINNING at a stake on the eastern side of Buchanan Boulevard, said stake being the southwestern corner of the lot designated as "708" on the plat hereinafter referred to: thence with the southern line of said lot "708" South 88 degrees 41' East 159.66 feet to a stake; thence South 00 degrees 41' East 100.00 feet to a stake, northeastern corner of Lot 3, Plat Book 10 at page 56, as shown on said plat, thence with the northern line of said Lot 3 North 88 degrees 41' West 151.6 feet to a stake on the eastern side of Buchanan Boulevard, northwestern corner of said Lot 3; thence

along and with the eastern side of said Buchanan Boulevard in a northerly direction along an arc having a radius of 716.2 feet a distance of 100.00 feet to a stake, the point and place of BEGINNING, and being all of that lot designated as "704" on that plat of the BRIAN SOUTH PROPERTY recorded in Plat Book 106 at page 9 in the Office of the Register of Deeds of Durham County, to which plat reference is hereby expressly made for a more particular description of same. This is a part of that property conveyed to Guy Solie by deed recorded in Real Estate Book 1203 at page 82, Durham County Registry.

**Tract 5**      708 N. Buchanan Blvd.

BEGINNING at a stake on the eastern side of Buchanan Boulevard, said stake being the southwestern corner of the lot designated as "710" on the plat hereinafter referred to; thence with the southern line of said Lot "710" South 88 degrees 41' East 155.85 feet to a stake; thence South 00 degrees 41' East 80.00 feet to a stake, northeastern corner of Lot "704" as shown on said plat; thence with the northern line of said Lot "704" North 88 degrees 41' West 159.66 feet to a stake on the eastern side of Buchanan Boulevard, northwestern corner of said Lot "704"; thence along and with the eastern side of said Buchanan Boulevard in a northerly direction along an arc having a radius of 716.2 feet to a distance of 80.00 feet to a stake, the point and place of BEGINNING, and being all of that lot designated as "708" on that plat of the BRIAN SOUTH PROPERTY recorded in Plat Book 106 at page 9 in the office of the Register of Deeds of Durham County, to which plat reference is hereby expressly made for a more particular description of same. This is a part of that property conveyed to Guy Solie by deed recorded in Real Estate Book 1203 at page 82, Durham County Registry.

**Tract 6**      710 N. Buchanan Blvd.

BEGINNING at an iron pin at the inside of the sidewalk on the east side of Buchanan Blvd. at the northwest corner of property known as 708 Buchanan Blvd. and running thence along the inside of the sidewalk on the east side of Buchanan Blvd. North 5 degrees 15 minutes East 22.6 ft. to an iron pin, thence along a clockwise arc, the radius of which is 33 ft., a distance of 49.45 ft. to an iron pin on the south side of Markham Avenue, thence along and with the same South 88 degrees 30 minutes East 29.98 ft. to an iron pin, thence continuing along the south side of Markham Avenue along a counterclockwise arc, the radius of which is 422.05 ft., a distance of 80.29 ft. to an iron pin, thence South 1 degree 58 minutes West 61.05 ft. to an iron pin in the north line of property known as 708 Buchanan Blvd., thence with the north line of said property North 88 degrees 41 minutes West 143.75 ft. to an iron pin on the east side of Buchanan Blvd. the point of BEGINNING and being that property known as 710 Buchanan Blvd. as shown on Plat of the property of Brian South by Charles P. Hinnant RLS dated August, 1984 and recorded in Plat Book 106, Page 9, Durham County Registry to which plat reference is hereby made for a more particular description.

**Tract 7**      814 Lancaster St.

BEGINNING at a stake 166 2/3 feet from the intersection of the inside line of the sidewalk on the south side of "B" Street (now Green Street) and the east side of Second Street (now Lancaster Street), and running thence in a southerly direction 83 1/3 feet along the inside line of the sidewalk

on Lancaster Street to a stake, the Methodist parsonage lot northwest corner; thence in an easterly direction along the line of said Methodist Parsonage lot 140 feet to the western line of a 20 foot alley; thence along the western line of said alley in a northerly direction 83 1/3 feet to a stake, the southeast corner of T.L. Poole's lot; thence along said T.L. Poole line 140 feet to the point and place of BEGINNING, and being the same identical property conveyed to Guy T. Solie by deed recorded in Real Estate Book 1024 at page 536, Durham County Registry.

**Tract 8**       700 Maplewood Ave.

BEING Lot 11 as shown on plat of the ROSS PROPERTY, dated December 13, 1921, by R.M. Pickard, C.E., and recorded in Plat Book 3, at page 155, and being a portion of the property conveyed by W. G. Bramham and Hugh Scarlett, Commissioners, to Jack Long, by deed recorded in Deed Book 65, at page 72, to which reference is hereby expressly made for a more particular description of same. Reference is also made to deed from Egbert L. Haywood, Commissioner, to Mrs. Irene E. Long, dated August 11, 1947, and recorded in Book of Deeds 173, at page 441, Registry of Durham County.

**Tract 9**       1105 Urban Ave.

BEGINNING at a stake on the south side of Urban Avenue at the northeast corner of Lot No. 1, as shown on the plat hereinafter referred to, said beginning point being 107.7 feet in an easterly direction from the east side of Buchanan Boulevard, and running thence along and with the south side of Urban Avenue South 88 degrees 30 minutes East 50 feet to a stake; thence South 2 degrees 32 minutes West 83.5 feet to a stake; thence North 87 degrees 5 minutes West 35 feet to a stake; thence South 2 degrees 3 minutes West 10 feet to a stake; thence North 87 degrees 48 minutes West 11.3 feet to a stake; thence North 00 degrees 57 minutes East 93.8 feet to the point and place of BEGINNING and being Lot No. 2 of the Holder property, as shown on plat recorded in Plat Book 8, page 212, Durham County Registry, to which reference is hereby made for a more particular description. See Deed Book 51, page 675, and Deed Book 85, page 260.

It is understood and agreed that the driveway between Lots Nos. 1 and 2, shown on said plat, is to be used jointly between the owners of said Lot No.s 1 and 2.

**Tract 10**       1107 Urban Ave.

LYING on the southern side of Urban Avenue, containing 4332.6 square feet, more or less, and being all of Lot 2 of the PROPERTY OF MARY E. HALL (ESTATE) as per plat and survey thereof now on file in Plat Book 112 at page 53 in the Office of the Register of Deeds of Durham County, to which plat reference is hereby expressly made for a more particular description of same. SUBJECT AND TOGETHER WITH a joint driveway 10 feet wide and 64 feet long centered on the eastern side property line as shown on the recorded plat. This is part of that property conveyed to Guy Solie by Deed recorded in Real Estate Book 1319 at page 34, Durham County Registry.

**Tract 11**     1111 Urban Ave.

LYING at the southeast intersection of Urban Avenue and Buchanan Boulevard, containing 5,220 square feet, more or less, and being all of Lot 1 of the PROPERTY OF MARY E. HALL (ESTATE) as per plat and survey thereof now on file in Plat Book 112 at page 53 in the Office of the Register of Deeds of Durham County, to which plat reference is hereby expressly made for a more particular description of same. This is the part of that property conveyed to Guy Solie by deed recorded in Real Estate Book 1319 at page 34, Durham County Registry.

**Tract 12**     203 Watts St.

LYING on the western side of Watts Street, and being all of Lot 16 of the GEORGE W. WATTS PROPERTY as per plat and survey thereof now on file in Plat Book 3-A at page 62 in the Office of the Register of Deeds of Durham County, to which plat reference is hereby expressly made for a more particular description of same. This is the same identical property conveyed to Guy T. Solie by deed recorded in Real Estate Book 959 at page 345, Durham County Registry.

**Tract 13**     601 Watts St.

BEGINNING at a stake in the northwest corner of the intersection of Watts Street and Monmouth Avenue, and running thence along and with the north side of said Monmouth Avenue North 87 deg. 48 min. West 150 feet to a stake; thence North 2 deg. 12 min. East 75 feet to a stake; thence South 87 deg. 48 min. East 150 feet to a stake in the west side of Watts Street; thence along and with the west side of said street South 2 deg. 12 min. West 75 feet to a stake, the place and point of BEGINNING, and being the southern one-half of Lots 8, 9 and 10 in Block 6 of the B.L. DUKE PROPERTY as per plat and survey thereof on file in the office of the Register of Deeds of Durham County in Plat Book 5 at page 102, to which reference is hereby made for a more particular description of same.

**Tract 14**     913 Wilkerson Ave.

BEGINNING at a stake at the point of intersection of the south side of Wilkerson Avenue with the east side of 20 foot alley (known as Thaxton Alley), and running thence along and with the south side of Wilkerson Avnue N 75 degrees 15' E 123.6 feet to a stake in the north line of Lot No. 4 as shown on the plat hereinafter referred to; thence in a southerly direction approximately 145 feet to a stake in the north line of Lot #1 at the southeastern corner of Lot No. 3 and the southwestern corner of Lot No. 4; thence with the south line of Lots Nos. 4 and 5 and with the north line of Lot No. 1 N 82 degrees 15' E 110 feet and 6 inches to a stake at the northeastern corner of Lot No. 1; thence south 1 degree 15' W 59 feet to a stake at the southeastern corner of Lot No. 1; thence S 85 degrees 45' W 212 feet and six inches to a stake on the east side of said 20 foot alley; thence along and with the east side of said alley N 6 degrees 45' W 178 feet and 6 inches to the point and place of beginning and BEING all of Lot Nos. 1, 2, and 3 and a triangular portion of Lot No. 4 of the George W. Teer proeprty, as shown on plat recorded in Plat Book 1, page 52, Durham County Registry. SAVING AND EXCEPTING THEREFROM all of Lot 1 of the George W. Teer Property as shown on plat recorded in Plat Book 1 at Page 52 of the Durham County Registry.

**Tract 15**    921½ Wilkerson Ave.

BEGINNING at a stake in the eastern side of a 20 foot alley the southwest corner of Lot No. 2 of the plat hereinafter referred to and running thence along and with the southern side of Lot Nos. 2, 3, 4 and 5 N 82 degrees 15' E 220.6 feet to the southeastern corner of Lot No. 5; thence S 1 degree 15' W 59 feet to a stake; thence S 35 degrees 45' W 212.6 feet to a stake in the eastern side of said 20 foot alley; thence along and with the eastern side of said 20 foot alley N 6 degrees 45' W 49 feet to the place and point of BEGINNING and being Lot No. 1 as shown on undated plat of the Property of George W. Teer, recorded in Plat Book 1, Page 52, to which reference is hereby made for a more particular description of same.



On Monday, March 13, 2006 about 11:00pm, the Duke University Lacrosse Team solicited a local escort service for entertainment. The victim was paid to dance at the residence located at 610 Buchanan. The Duke Lacrosse Team was hosting a party at the residence. The victim was sodomized, raped, assaulted and robbed. This horrific crime sent shock waves throughout our community.

Durham Police needs your assistance in solving this case. We are asking anyone who has any information related to this case, please contact Inv. Himan at 560-4582 x229.

Information can also be provided anonymously through Durham CrimeStoppers at 683-1200 or by email to david.addison@durhamnc.gov (Please use an anonymous email account). Durham CrimeStoppers will pay cash for any information which leads to an arrest in this case.

DISTRIBUTED BY
DURHAM POLICE
ON 4/8/2006

# PLEASE COME FORWARD.

"We're not saying that all 46 were involved. But we do know that some of the players inside that house on that evening knew what transpired and we need them to come forward."

- Durham Police Cpl.
David Addison

ABCNews
3/26/2005

Please call
Durham CrimeStoppers
at 683-1200. Callers may
remain anonymous.

  

Breck        Bo           Casey
Archer       Carrington   Carroll

       

Mike       Tom      Kevin     Josh        Ned       Matt        Ed         Kyle
Catallino  Clute    Coleman   Coveleski   Crotty    Danowski    Douglass   Dowd

       

David      Collin    Dan       Gibbs      Zack      Erik         Jay        Ben
Evans      Finnerty  Flannery  Fogarty    Greer     Henkelman    Jennison   Koesterer

       

Fred       Peter     Adam      Chris      Dan       Kevin        Tony       Ryan
Krom       Lamade    Langley   Loftus     Loftus    Mayer        McDevitt   McFadyen

       

Glenn      Nick      Dan          Sam       Brad      KJ          Steve       Rob
Nick       O'hara    Oppedisano   Payton    Ross      Sauer       Schoeffel   Schroeder

      

Reade       Dan          Bret        Chris     John      Michael     Rob          Matt
Seligmann   Theodorisis  Thomspon    Tkac      Walsh     Ward        Wellington   Wilson

NOTE: There are four more players that were not retrieved from the GoDuke.com website before Duke took down the lacrosse team's roster on Monday morning, March 27th.

LAW OFFICES

# EKSTRAND & EKSTRAND, LLP

811 NINTH STREET, SUITE 260
DURHAM, NORTH CAROLINA 27705
(919) 416-4590

WWW.NINTHSTREETLAW.COM

SENDER:
ROBERT C. EKSTRAND
FAX: (919) 416-4591
E-MAIL: RCE@NINTHSTREETLAW.COM

April 6, 2006

## VIA FACSIMILE AND REGULAR MAIL

Mr. Michael Nifong
Durham County District Attorney
Judicial Building, 6th Floor
201 East Main Street
Durham, NC
27701

### RE: 610 BUCHANNAN INVESTIGATION
### OUR FILE NUMBER: 1029-1120

Dear Mike:

Please be advised that I represent the individuals listed on the attached page. Each of these individuals were among those subjected to a compulsory non-testimonial order in proceedings captioned as "In the Matter of 610 N. Buchanan Blvd., Durham, NC 27701." The Non-Testimonial Identification Order is attached for your reference. Pursuant to that order my clients were compelled to provide (1) "Photographs of potential injuries sustained...during the alleged offenses located on [the] torso or upper extremities"; (2) "Mug shot photographs for line-ups"; and (3) "Swabbings of the mouth to provide DNA evidence for a link between the victim and suspects."

This is to formally notify you that each of the individuals listed on the attached page hereby assert their right, pursuant to N.C.G.S. §15A-282, to receive a copy of all reports of test results as soon as the reports are available. Pursuant to the same statute, as each listed individual's attorney, I am requesting that you provide a copy of any reports of test results to me at the fax number or address above as soon as the reports are available. Please consider this letter as a formal request under §15A-282 to provide me with all reports and test results derived from or related to materials obtained from my clients through the nontestimonial identification order, as soon as they are available, including but not limited to the following:

1. Regarding the photographs taken of "potential injuries sustained," the results of any analysis of those photographs, including reports of any witness interviews regarding the comparison and identification of such injuries;

2. Regarding the "mug shot photographs for line-ups," the reports of the results of any such line-up identification procedures; and

3.     Regarding the DNA "swabbings," the results of any analysis made to compare with any of my clients' DNA with any other material.

To the extent that any test results, including any preliminary or partial test results, are already available, please provide me with a copy of any such reports in the same manner.

Cordially,

Robert C. Ekstrand

RCE/tlp
cc:     Robin Pendergraft, Director (w/ encl.)

STATE OF NORTH CAROLINA    FILED     IN THE GENERAL COURT OF JUSTICE
COUNTY OF DURHAM             SUPERIOR COURT DIVISION

06 APR 19 AM 10: 0 (FILE NOS. 06 CRS 4334; 06 CRS 4335;
06 CRS 4336

DURHAM COUNTY, C.S.C.

BY

STATE OF NORTH CAROLINA

VS.                   MOTION

Reade William Seligmann,
    Defendant

Now comes the State, by and through the undersigned District Attorney, and moves the Court for an order, pursuant to N.C.G.S. 15A-623(f), for an order directing that the indictments in the above-captioned cases be sealed by the clerk, and that no person may disclose the finding of the bills of indictment or the proceeding leading to that finding, until the defendant has been arrested.

In support of this motion, the State submits the following:
1. The defendant is currently a sophomore at Duke University, but his hometown is Essex Falls, New Jersey;
2. The crimes with which the defendant is charged include two class B1 felonies and one class C felony; even if all charges were consolidated for judgment and the defendant were sentenced to the minimum sentence in the mitigated range, he would face a sentence of 144-182 months upon conviction;
3. Defendant's lack of long-term ties to the Durham community and the severity of the punishment he faces create a substantial risk that he would attempt to flee the jurisdiction of this Court if he learned that an indictment had been returned against him.

This the 12th day of April, 2006.

Michael B. Nifong
District Attorney

FILED

05 APR 10 AM 10: 0 ?

STATE OF NORTH CAROLINA DURED, COUNTY IN THE GENERAL COURT OF JUSTICE
COUNTY OF DURHAM            SUPERIOR COURT DIVISION
                    BY_____ FILE NOS. 06 CRS 4334; 06 CRS 4335;
                                     06 CRS 4336

STATE OF NORTH CAROLINA

VS.                            ORDER

Reade William Seligmann,
    Defendant

Upon the motion of the State, the Court hereby orders, pursuant to N.C.G.S. 15A-623(f),
that the bills of indictment referenced above be kept secret until the defendant is arrested or
appears before the Court. The Clerk of Court is hereby ordered to seal said bills of indictment,
and no person, including a witness, may disclose the finding of the bill of indictment, or the
proceedings leading to the finding, except when necessary for the issuance and execution of an
order of arrest.

This the  13th  day of April, 2006.

Ronald L. Stephens
Superior Court Judge

STATE OF NORTH CAROLINA (FILED)    IN THE GENERAL COURT OF JUSTICE
COUNTY OF DURHAM                    SUPERIOR COURT DIVISION
                    06 APR 10  AM 10: 0  FILE NOS. 06 CRS 4331; 06 CRS 4332;
                    DURHAM COUNTY, C.S.C.        06 CRS 4333
                    BY _____

STATE OF NORTH CAROLINA

VS.                                    MOTION

Collin Finnerty,
     Defendant

      Now comes the State, by and through the undersigned District Attorney, and moves the
Court for an order, pursuant to N.C.G.S. 15A-623(f), for an order directing that the indictments
in the above-captioned cases be sealed by the clerk, and that no person may disclose the finding
of the bills of indictment or the proceeding leading to that finding, until the defendant has been
arrested.

      In support of this motion, the State submits the following:
   1. The defendant is currently a sophomore at Duke University, but his hometown is Garden
      City, New York;
   2. The crimes with which the defendant is charged include two class B1 felonies and one
      class C felony; even if all charges were consolidated for judgment and the defendant
      were sentenced to the minimum sentence in the mitigated range, he would face a sentence
      of 144-182 months upon conviction;
   3. Defendant's lack of long-term ties to the Durham community and the severity of the
      punishment he faces create a substantial risk that he would attempt to flee the jurisdiction
      of this Court if he learned that an indictment had been returned against him.

      This the 12th day of April, 2006.

                                        _____
                                        Michael B. Nifong
                                        District Attorney

FILED

06 APR 18 AM 10: 01

DURHAM COUNTY, C.S.C.
STATE OF NORTH CAROLINA                   IN THE GENERAL COURT OF JUSTICE
COUNTY OF DURHAM    BY                    SUPERIOR COURT DIVISION
                                          FILE NOS. 06 CRS 4331; 06 CRS 4332;
                                          06 CRS 4333

STATE OF NORTH CAROLINA

VS.                                       ORDER

Collin Finnerty,
        Defendant

        Upon the motion of the State, the Court hereby orders, pursuant to N.C.G.S. 15A-623(f),
that the bills of indictment referenced above be kept secret until the defendant is arrested or
appears before the Court. The Clerk of Court is hereby ordered to seal said bills of indictment,
and no person, including a witness, may disclose the finding of the bill of indictment, or the
proceedings leading to the finding, except when necessary for the issuance and execution of an
order of arrest.

        This the ____ day of April, 2006.

                                          Ronald L. Stephens
                                          Superior Court Judge

