IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No.:  1:07-cv-00953


| | |
|---|---|
| RYAN McFADYEN, MATTHEW WILSON; and BRECK ARCHER,<br><br>Plaintiffs<br><br>vs.<br><br>DUKE UNIVERSITY, THE CITY OF DURHAM, NORTH CAROLINA, et. al.,<br><br>Defendants. | ) ) DEFENDANTS JAMES T. )   SOUKUP, KAMMIE )   MICHAEL, DAVID W. ) ADDISON and RICHARD )    D. CLAYTON'S ) MEMORANDUM  OF ) LAW IN SUPPORT OF )   THEIR MOTION TO )          DISMISS ) (Rule 12(b)(6), F.R. Civ. P ) |

The Defendants, James T. Soupkup ("Soukup"), Kammie Michael ("Michael"), David W. Addison ("Addison") and Richard D. Clayton ("Clayton,"), by and through their counsel of record, respectfully submit this Memorandum of Law in Support of their Motion the Dismiss, pursuant to Local Rules, 7.3(a), M.D.N.C.

## I.    SUMMARY OR THE NATURE OF THE CASE

On December 18, 2007, the Plaintiffs in this action filed their Complaint in the office of the Clerk of this Court.   That Complaint was 379 pages long and contained Thirty-Five (35) separate Causes of Action.   On January 15, 2008, and prior to any responses or motions having been filed by the Defendants, the Plaintiffs filed their Amended Complaint which was expanded to 429 pages and now contains Forty separate Causes of Action.   These pleadings significantly

1

expand, if not violate, the traditional concept of "notice pleading" in our federal court system.

The Amended Complaint names five (5) corporate entities or subsidiaries of such entities, as well as forty-five (45) individuals, each of whom is alleged to have violated some perceived legal or constitutional right of each Plaintiff. Without fear of contradiction, it should be noted that the vast majority of the Complaint and the claims asserted on behalf of these three Plaintiffs are directed at Duke University and/or its subsidiary entities or individual agent/employees. As it relates to these four Defendants (Soukup, Michael, Addison and Clayton), David Addison is a named "Defendant" in only eight (8) of the Forty Causes of Action (Fifth, Ninth, Sixteenth, Nineteenth, Twentieth, Twenty-Fifth, Twenty-Seventh and Twenty-Eight), while Michael is individually named in only four (4) (Ninth, Sixteenth, Twenty-Fifth and Twenty-Eight). In each and every instance in which these two individuals (Addison and Michael) are named under a caption for a specific Cause of Action, they are identified as being named in "their individual and *official* capacities." Clayton is individually named in only three (3) Causes of Action (Fourth, Sixth and Seventh) and his name is only mentioned in a substantive manner three times in the entire Complaint (¶¶ 371, 380 and 668)[1] Ironically, and despite being a named "Defendant" in the caption of the lawsuit, James Soukup is not individually named in any of the forty Causes of Action and

---

[1]    Hereinafter, whenever these Defendants refer to a "¶" with a number, they will be referring to a specific paragraph in the Amended Complaint filed on behalf of the Plaintiffs.

his name seldom appears in the Complaint after he has been identified (¶¶ 101, 568, 576, 1074 and 1081(B)).   Officer Soukup is identified as the Director of the Durham Emergency Communications Center ("DECC") and is included in the group of "Supervising Defendants" (¶¶ 59 and 68), but nowhere in the Complaint is it alleged that he:  actually "supervised" any aspect of the investigation of the incident under review; made any public statements concerning any of the alleged events under review by this Complaint; participated in any of the various identification procedures (whether pictures or laboratory); or that he ever met with Mike Nifong or any other Duke University or City of Durham  agent in connection with any aspect of this matter.

It is these Defendants' belief that:  1) each of these four Defendants is entitled to qualified immunity from the claims asserted against them in the Amended Complaint because their referenced conduct occurred while in the performance of their official duties as police officers for the City of Durham; 2) the inclusion of Addison and Michael as Defendants in their individual *and official* capacities" is duplicative , when the City of Durham is named as a Defendant in the same Cause of Action; and, 3) the allegations fail to allege sufficient facts to state a claim upon which relief can be granted.  As a result, Addison, Clayton, Michael and Soukup, prior to filing their Answers or other pleadings in this matter, have filed their collective Motion to Dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure and submit this Memorandum in support of that Motion.

## II. **STATEMENT OF FACTS**

Like the companion cases filed in this Court, *Evans, et. al. v. City of Durham, et. al.,* (USDC, MDNC: 1:07-cv-00739) and *Carrington, et. al. v. Duke University, et. al.,* (USDC, MDNC: 1:08-cv-00119), the Plaintiffs in this action allege that they have been damaged as a result of an investigation that arose from an infamous "stripper" party conducted at 610 N. Buchanan Blvd., Durham, N.C. on the evening of March 13, 2006 or the early morning hours of March 14, 2006. The party took place at a house rented by the Captains of the 2006 Duke University Men's Lacrosse Team. Each of these three Plaintiffs was a member of that team and was in attendance at the party were alcohol was served and where the activities occurred that spurred the investigation leading to this litigation. However, as a result of the investigation about which they now complain, none of these Plaintiffs were ever charged, arrested or indicted for any criminal charges.

The Amended Complaint in this action comprises 1,389 paragraphs of which 821 are designated as "factual allegations" (¶¶ 82 through 903). Of these four Defendants (Addison, Clayton, Michael and Soukup), there is no allegation that any one of them ever met, interviewed or mentioned any of these Plaintiffs in any public forum.

**James Soukup** is identified as the Director of Emergency Communications Center ("DECC") for the City of Durham and its Police Department (¶ 59) and as a "Durham Police Supervising Defendant" (¶ 68). It is later alleged that in 2005 (during the year prior to the events giving rise to this action) he spoke positively

about an upgrade to the Duke-Durham communication system known as "CAD" (¶ 101). It is further alleged that, during the investigation of the incident alleged to have occurred at 610 N. Buchanan Blvd., he delegated his "official policymaking authority" in regard to certain DECC recordings to two of the alleged "spokespersons" for the Durham Police Department, David Addison and Kammie Michael (¶ 568) as well as other Defendants named in this action: Nifong, Gottlieb and Himan (¶ 1074).. The further claim is that other officers of the Durham Police Department (some of whom were superior officers to Officer Soupkup), along with Michael Nifong, either destroyed, despoiled, secreted or misrepresented to the public some of the communications that came to and through DECC in the late evening of March 13 or the early morning of March 14. Without alleging how, when, where or why he would do so, it is then alleged that "Soukup approved and ratified the abuses" and "did not intervene to either find the tapes or attempt to recover the despoiled tapes" (¶¶ 576 and 1081(B)). Based upon these scant allegations, there is no individual claim asserted against Officer Soukup.

As previously noted, Soukup is also identified as a "Durham Police Supervising Defendant" (¶ 68). There are no allegations that he actually "supervised" any of the investigation in this matter or that he had any supervisory position over any named Durham police employee. However, to the extent that this Court might conclude this bare allegation is sufficient to brand him as a

"Durham Police Supervising Defendant" requiring him to respond to the allegations contained in Thirteenth, Sixteenth, Twenty-Sixth and Twenty Eighth Causes of Action, he will adopt and incorporate by reference the Motion to Dismiss and Memorandum in Support of that Motion to Dismiss filed on behalf of the other alleged "Durham Police Supervising Defendants' (Baker, Chalmers, Hodge, Russ, Mihaich, Council, Lamb, Ripberger and Evans) as his response to these Causes of Action.

**Richard D. Clayton** is identified in the Complaint as a District Two Patrol Officer who "reported directly to Gottlieb" during the investigation of the incident which gives rise to this lawsuit (¶ 65). He is further listed as one of the "Durham Investigator Defendants" (¶ 69). However, the only substantive action that he is ever alleged to have taken in this matter was to show Crystal Mangum a photo array of members of the Duke Men's Lacrosse Team on March 16 (¶ 371) and again on March 21, 2006 (¶ 379) in which she was asked to identify anyone in that array as having been at the party. She did not identify anyone on March 16 or on March 21, allegedly stating "They all look the same." (¶ 379). Without any explanation, Plaintiffs also allege that Clayton was "present" for the search of Ryan McFadyen's dorm room on March 27, 2006 which had been authorized by a valid search warrant issued by the Hon. Ronald Stephens, Presiding Judge of the Durham County Superior Court on that same day. (¶ 613). However, Plaintiffs do not allege and there is no factual evidence to suggest that Officer Clayton

contributed in any manner to securing that search warrant. Finally, and with no apparent factual allegations about the incident, the Plaintiffs allege in the Fourth Cause of Action, that Officer Clayton also participated in a photo identification procedure involving Kim Pittman on May 11 (¶ 945(G)) and that the results of that procedure "were never produced to Plaintiffs." These scant "factual" allegations fail to provide the basis for including Clayton as a named Defendant in the Fourth Cause of Action ("Deprivation of *property* in Violation of 42 U.S.C. § 1983), the Sixth Cause of Action ("Manufacture of False Inculpatory Evidence & *Conspiracy* in Violation of 42 U.S.C. § 1983) and the Seventh Cause of Action ("Concealment of Exculpatory Evidence & Conspiracy in Violation of 42 U.S.C. § 1983).

**Kammie Michael and David Addison:** Kammie Michael is identified in the Complaint as the Durham Police Department's Public Relations Coordinator and Public Information Officer and, upon information and belief, it is alleged that she "had supervisory and final policymaking authority with respect to the dissemination of information to the media and to the public." (¶ 60). David Addison is identified as the Police Department's CrimeStoppers Coordinator where he "was responsible for obtaining information pertaining to unsolved crimes....through mass media publicity and reward incentives, and was responsible for channeling such information from anonymous sources to investigators assigned to cases." (¶ 61). The substantive allegations concerning

Michael and Addison primarily relate to statements they made to the media in the early stages of the investigation including, a "posting" sent by Addison to the media and other contacts as part of his duties as the CrimeStoppers Coordinator. The Plaintiffs contend that the statements were made "to subject Plaintiffs to public condemnation in retaliation of exercising their constitutional rights" (attributed to Addison, ¶ 429); were "designed to stigmatize the Plaintiffs" (attributed to Addison, ¶ 505); were "fabricated and released to the public false information (attributed to Addison, ¶ 566); and, were "incendiary false statements" (attributed to Addison ¶643). In addition they allege that Addison and Michael "deleted, destroyed, despoiled or otherwise secreted from Plaintiffs the audio recordings from the early morning hours of March 14, 2006" (attributed to both Michael and Addison, ¶ 569); and "falsely told representatives of the media that the 911 caller (on March 14, 2006) 'was not the woman who accompanied the victim to 610 N. Buchanan Blvd." or that we "have not identified the caller in the first call, according to investigators" when the Durham Police knew that the call was made by Pittman (attributed to Michael, ¶ 574). In addition, the Plaintiffs object to the CrimeStoppers flyer initially sent out by Addison on March 28, 2006 because it failed to describe the events detailed in the flyer as "alleged" (¶ 510) although it is acknowledged that this was *amended* and the word "alleged" added on April 10, 2006 (¶ 510).

In their Complaint, the Plaintiffs have individually named David Addison in eight (8) separate Causes of Action:  Ninth (Retaliation in Violation of 42 U.S.C. § 1983 & conspiracy); Sixteenth (Conspiracy in Violation of 42 U.S.C. § 1985); Nineteenth (Common Law Abuse of Process & Conspiracy); Twentieth (Intentional Infliction of Emotional Distress); Twenty-Fifth (Negligence); Twenty-Seventh (Negligent Infliction of Emotional Distress (Durham PD)) and Twenty-Eighth (Negligent Infliction of Emotional Distress).   They have also joined Ms. Michael with Addison as a named Defendant in the Ninth, Sixteenth, Twenty-fifth and Twenty-Eighth Causes of Action.   In all eight (8) of the Causes of Action in which Addison is named as an individual Defendant and in all four (4) Causes of Action in which Michael is named as an individual Defendant, the heading of each respective Cause of Action asserts that they are being sued "in their Individual and Official Capacities" and in each Cause of Action, the City of Durham is a named Defendant.

To the extent that Soukup, Michael, Addison and Clayton are included as individual defendants in the Tenth Cause of Action (Deprivation of the Privileges and Immunities of North Carolina Citizens in Violation of 42 U.S.C. § 1983) which lists "All Defendants in their individual and official capacities" as the named Defendants, they would adopt and incorporate by reference the Motion to Dismiss and Memorandum in Support of that Motion filed on behalf of the City of Durham as their response to the Tenth Cause of action.

### III. STANDARD OF REVIEW

These Defendants, Soukup, Michael, Addison and Clayton acknowledge that, when a Motion to Dismiss is filed pursuant to Rule 12(b)(6) that the Court, in ruling on that Motion, is required to construe the Complaint in the light most favorable to the Plaintiffs, read and consider the (Amended) Complaint as a whole and, take the facts asserted therein as true. Nonetheless, it remains a legal requirement that alleged facts which are deemed to be true, must "state a claim that is plausible on its face," *Bell Atl. Corp. v. Twombley,* 127 S.Ct. 1955, 1874, 75 U.S. 4337, 167 L.Ed.2d 929 (2007) and dismissal is warranted when the Plaintiffs can prove no set of facts which would entitle them to relief against the party or parties seeking dismissal. *Schatz v. Rosenberg,* 93 F.2d 485 (4th Cir. 1991). And, as both this Court and the Fourth Circuit Court of Appeals have consistently noted, a court is not bound by the legal conclusions, either asserted or claimed by the Plaintiff, in the Complaint in reaching the decision as to whether or not the Plaintiffs' Amended Complaint has met its burden under this test. *Heckman v. University of North Carolina at Chapel Hill,*195 F. Supp.2d 468 (M.D.N.C., 1998), *rev. denied,* 166 F.3d 1209 (4th Cir. 1998); *Bass v. E. I. DuPont De Nemours & Comp.,* 324 F.3rd 761 (4th Cir. 2003) as well as the recent case before this Court, *Gladden v. Winston-Salem State Univ.,* 495 F.Supp. 517 (M.D.N.C. 2007). In that matter, this Court wrote: "A few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusions." *Id.* 520-521.

# IV.    ARGUMENT

## Introduction

When judging the allegations in the Amended Complaint of the Plaintiffs by the standards established by this Court and this Circuit on a Rule 12(b)(6) Motion to Dismiss, the Amended Complaint must be dismissed against these four Defendants.  The fact that the Plaintiffs have taken 429 pages containing more than 800 paragraphs of alleged "facts" in an attempt to allege an adequate claim for relief against these Defendants does not relieve the Plaintiffs from their basic legal responsibilities in pleading.  Mere verbiage in a Complaint – no matter how colorful or how many technical "gadgets' are "embedded" or displayed therein – does not, standing alone, create a plausible claim for relief nor establish a cognizable legal right.


## A.  AS GOVERNMENT OFFICIALS PERFORMING A DISCRETIONARY FUNCTION FOR THE DURHAM POLICE DEPARTMENT, JAMES SOUKUP, KAMMIE MICHAEL, DAVID ADDISON AND RICHARD D. CLAYTON ARE ENTITLED TO QUALIFIED GOVERNMENTAL IMMUNITY FROM THIS ACTION.

In every factual allegation concerning any of these four Defendants, the act complained of occurred while the individual was performing his or her official duties or function as a government employee – a police officer for the City of Durham.  James Soukup is alleged to have been the Director of the "DECC" (¶ 59) and each of his actions, or his alleged inappropriate delegation of his duties as Director, was in the performance of those responsibilities associated with that

position. Richard Clayton is identified as a Patrol Officer (¶ 65) and the substantive allegations involving him relate to some photographic identification procedures and participation in a lawfully authorized search (¶¶ 371. 379, 945(G) and 613), all of which were undertaken in his position as a police officer for the City of Durham. All of the factual assertions and ultimate claims made against David Addison and Kammie Michael arise out of their alleged positions as "official spokespersons" for the Durham Police Department. In addition, the creation of the "flyer" for publication on behalf of CrimeStoppers was a normal part of David Addison's responsibilities as the Coordinator of that program (¶ 61). Regardless of how the Plaintiffs choose to characterize the tenor, intention or motive behind the issuance of the numerous public comments made or publications issued by Addison and Michael, each and everyone one of those published statements was made in the course and scope of their function as a governmental official.

It has long been established law and good public policy that "public officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald,* 457 U.S. 800,818 (1982). To hold otherwise, would open a Pandora's box of potential litigation for real and perceived wrongs allegedly done to our citizens by governmental officials. The requirement that the alleged actionable conduct must violate some clearly established "statutory or

constitutional right" is designed to protect government officials in the performance of their discretionary functions, but it is not intended to shield citizens, including the Plaintiffs in this action, from a criminal investigation - particularly, one in which no criminal charges were ever brought as is the case for these three Plaintiffs. The Plaintiffs' ultimate claim in this action is that their reputations were damaged during this investigation. There is no constitutional nor statutory right established by alleged reputational damage (see *Seigart v. Gilley,* 500 U.S. 226 (1991) and **ARGUMENT C** below).

The Plaintiffs, through their Complaint have attempted to establish the "statutory right" requirement of our controlling case law by alleging that Richard Clayton violated an internal Durham Police Department policy, General Order 4077 (¶ 668) related to the proper method to be used in a photo identification procedure. Clearly, an internal department policy does not have the force and effect of a lawfully enacted statute nor does it create a constitutional right by its enactment. More importantly, in this instance, it is clearly shown that no harm was done to the named Plaintiffs in this suit as they were never identified as having been at the party that was the subject of the investigation. (¶ 380). Similarly, the Plaintiffs allege that David Addison violated Durham Police Department General Order 4060 R-2 relating to public statements about an active investigation. (¶ 515), but as is the case with Officer Clayton, such a G.O. creates neither a statutory or constitutional right.

Since the Plaintiffs cannot meet the threshold requirement of establishing a violation of a statutory or constitution right, each of these four Defendants is not only entitled to raise the defense of qualified immunity, but to do so at this time as it has been held that a ruling on such an issue "should be made early in the proceedings so the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz,* 533 U.S. 194, 200 (2001). In addition to the emotional "costs" to each of these four Defendants during the pendency of this suit, the financial "costs and expenses" to the taxpayers of Durham for a prolonged defense of these four Defendants, if unnecessary and unwarranted, should mandate an early decision and dismissal.

**B. DISMISSAL IS WARRANTED AS TO JAMES SOUKUP, KAMMIE MICHAEL AND DAVID ADDISON IN THAT IN EACH CAUSE OF ACTION IN WHICH THEY ARE INCLUDED AS A NAMED DEFENDANT, THEY ARE NAMED "IN THEIR OFFICIAL CAPACITY AS A DURHAM POLICE OFFICE AND, SINCE THE CITY OF DURHAM IS ALSO NAMED AS A DEFENDANT IN EACH CAUSE OF ACTION IN WHICH THEY ARE NAMED, THE CONTINUED INVOLVEMENT OF THESE THREE DEFENDANTS IS DUPLICATIVE AND UNWARRANTED.**

As has been previously mentioned, James Soukup is not a named Defendant in a single one of the Forty Causes of Action in this Complaint. If for no other reason, that alone should be grounds for his dismissal from this action. Plaintiffs should not be encouraged to name an individual in the caption of a Complaint (along with 44 other named individuals) and then make no claim for relief against that individual. It should be noted that the Tenth Cause of

Action,(Deprivation of the Privileges and Immunities of North Carolina Citizens in Violation of 42 U.S.C. § 1983), it is claimed that this Cause of Action is "Against All Defendants" (which, presumably, would include James Soukup and the City of Durham), but the description continues when it states "in their individual and official capacities" (which presumably refers to the 45 named individuals as compared to the corporate entities or their subsidiaries of affiliated entities. When these Defendants have claims asserted against them *in their official capacity* as a police officer for the City of Durham and the City is also named in the same Cause of Action, the real party in interest is the City and the individuals should be dismissed as duplicative. Such a ruling would not prevent the Plaintiffs from offering evidence (if otherwise admissible) as to the conduct of the individuals in order to attempt to impose liability on the City. Rather, it avoids the risk of a double recovery for the same perceived injury and recognizes that the principle is liable for the acts of its agents.

The Supreme Court articulated this principle in *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed2d 114 (1985). As in this instant case, an individual defendant had been named as a defendant when that individual's conduct was also pled as the basis for a claim against the governmental agency represented by the individual. The Court ruled that "such suits (official capacity suits)…generally represent only another way of pleading an action against an entity of which this officer is an agent….There is no longer a need to bring such official-capacity actions against local government officials…..local government

units can be sued directly for damages and injunctive or declaratory relief." 473 U.S. at 165-166. The Fourth Circuit has demonstrated that this principle of law will be upheld in this Circuit in the decision of *Love-Lane v. Martin,* 355 F.3rd 766, 783 (4th Cir. 2004) wherein that Court upheld a District Court's decision to dismiss a § 1983 claim against a named individual government official when the government entity that he represented was also a named defendant and was the real party in interest. Less than a year ago, this Court reiterated its acceptance and adoption of that same principle in *W.E.T. v. Mitchell,* No. 1:06-cv-447, U.S.Dist. LEXIS 68376*30 (M.D.N.C., Sept. 14, 2007) when it stated that: "Claims against the official in his or her official capacity which are duplicative of claims against a government entity are subject to dismissal."

As is the case for an early determination on the issue of dismissal as a result of qualified governmental immunity for these individual Defendants, a dismissal based on the duplicative nature of the claims is good public policy. Dismissing unnecessary parties promotes efficient litigation and when, as here, the principle is a governmental entity, it prevents wasted public resources for attorney fees and costs for the individual defendants. This particular interest of the courts was noted in *Wisler v. City of Fresno,* No. CV F 06-1694, 2007 U.S. Dist. LEXIS 18666*19 (E.D.Cal. Mar. 16, 2007). So long as Soukup, Michael, Addison and Clayton remain participating Defendants in this lawsuit, there will continue to be (as there are in regard to these Motions to Dismiss) duplicative pleadings filed with the Court (with various Defendants often restating what their colleagues have said and

citing the same statutes, case law or constitutional concepts in support of their position); the courtroom will be filled with counsel who, on behalf of their individual clients will be making essentially the same arguments to the Court as their colleagues representing the City of Durham; and, there will be the unnecessary expenditure of public funds to separate attorneys and their law firms for these duplicative efforts. This is neither an efficient use of the court's time nor the public's resources.


## C. THERE IS NO COGNIZABLE LEGAL CLAIM ASSERTED AGAINST RICHARD D. CLAYTON IN THIS COMPLAINT

There is scant mention of Richard Clayton in the Amended Complaint after he is identified as a Patrol Officer in the District Two (¶ 65). It is alleged that, after Inv. M. Soucie "prepared four photo arrays ("six packs') of members of the 2006 Duke Lacrosse Team on March 16, 2006, that Officer Clayton "showed Mangum each of the 24 lacrosse players in the arrays, one picture at a time, and, each time, asked Mangum if she could identify any of them as being present at the party." (¶ 371) The Complaint goes on to allege that these Plaintiffs were all included in "Array D" and that Ms. Mangum did not identify any of them as having been at the party. It is further alleged that at a subsequent photo array attempt at identification on March 21, 2006, Mangum was shown photos of 12 lacrosse players who had not been included in the March 16 arrays. The pleadings do not state what role Clayton is alleged to have played in that photo identification

attempt, but it is alleged that Mangum told Clayton, "They all look the same." (¶ 381). The Plaintiffs complain that these photo ID procedures were in violation of General Order 4077. Even if that is correct, that alleged violation of that G.O. led to no prejudice to these Plaintiffs as they were never identified from those arrays.

Finally, the Plaintiffs infer that Clayton participated in the decision to withhold from the Plaintiffs, knowledge that both Mangum and Pittman had been unable to make any identification in the photo arrays they had had been shown. (Fourth Cause of Action, (Deprivation of Property in Violation of 42 U.S.C. § 1983) and, specifically, ¶¶ 945(D)(G) and 947). Since these Plaintiffs were not indicted or ever charged with any crimes in connection with this investigation, they have no legal or constitutional right to criminal discovery and they have no standing to make such an assertion. Even if they did have such standing, a decision in regard to what discovery should or should not be made available to a defendant (which none of these Plaintiffs ever were) in a criminal proceeding is not a decision that a Durham City Patrol Office in District Two can or ever would make. Such a legal judgment is in the exclusive decision-making province of the District Attorney.

**D.  NEITHER DEFAMATION NOR FREEDOM FROM A CRIMINAL INVESTIGATION ARE CONSTITUTIONALLY PROTECTED RIGHTS OR AN ACTIONAL RIGHT PURSUANT TO 42 U.S.C. § 1983.**

The Plaintiffs' claims against David Addison and Kammie Michael are contained in the Fifth Cause of Action (False Public Statements - Addison), the Ninth Cause of Action (Retaliation -Addison and Michael), the Sixteenth Cause of Action (Conspiracy - Addison and Michael), the Nineteenth Cause of Action (Common Law Abuse of Process - Addison), the Twentieth Cause of Action (Intentional Infliction of Emotional Distress - Addison), the Twenty-Fifth Cause of Action (Negligence - Addison and Michael), the Twenty-Seventh Cause of Action (Negligent Infliction of Emotional Distress (Durham PD) - Addison) and the Twenty-Eighth Cause of Action (Negligent Infliction of Emotional Distress - Addison and Michael).  In summary, the Fifth, Ninth and Sixteenth Causes of Action are purported to be federal constitutional or 42 U.S.C. § 1983 claims while the Sixteenth, Twentieth, Twenty-Fifth, Twenty-Seventh and Twenty-Eight Causes of action purport to be State or common law claims.

In essence, all of the claims against Addison and Michael arise out of the Plaintiffs' contention that, as the "official spokespersons" for the City of Durham's Police Department, they made public statements that were "false," "misleading," or "inflammatory" and, in the case of the flyer on behalf of Durham CrimeStoppers, that it was "incendiary."  To seek constitutional protection, they then ascribe motives to this conduct such as: "to subject Plaintiffs to public

condemnation in retaliation for exercising their constitutional right" (¶ 429); "to stigmatize the Plaintiffs in the local community and in the eyes of hundreds of millions of people" (¶ 505); "to stir up and then galvanize racial hostility in the community (and in the minds of hundreds of millions of people around the world) against the Plaintiffs" (¶ 567); and, that the statements attributed to Addison and Michael were issued "with malice" (¶ 514). As a result of these alleged statements (which are only summarized here for the purpose of brevity and to avoid undue repetition), the Plaintiffs' claim that they have federal rights which have been violated and state claims for negligence, negligent and intentional infliction of emotional damage and abuse of process. Procedurally, these claims fail because Addison and Michael are entitled to qualified governmental immunity for all the statements attributed to either of them and the claims are asserted against each of them in their "official capacities." Substantively, these claims fail because there is either no federally recognized right to be free from defamation or an unwanted criminal investigation or they have not stated a cognizable state claim.

As a brief reminder, this Court could examine the entire 902 paragraphs in the Amended Complaint of the Plaintiffs and not find that Addison or Michael ever once mentioned any of these Plaintiffs individually or by name – in any public statement attributed to them. And, of course, none of these three Plaintiffs were ever subject to arrest, indictment or incarceration as a result of any statement attributed to either Addison or Michael. Their claim appears to be that, as a

member of the 2006 Duke Men's Lacrosse Team, each of them may have had their reputations damaged by association. Since, at least, 1976, the Supreme Court has recognized that alleged damage to one's reputation, standing alone, is not a constitutionally protected right for which civil redress can be sought or obtained. *Paul v. Davis,* 424 U.S. 693 (1976) and, see also, *Siegert v. Gilley,* 500 U.S. 226, 233 (1991). As the Court has consistently stated, these claims are essentially claims for defamation which is not a constitutionally protected right. *Id.*

Apparently in recognition that reputational damage is not a federally protected right for which damages can be claimed, the Plaintiffs attempt to bolster this claim by asserting that they have suffered a loss of education, the loss of privacy, the loss of liberty, even *physical harm* and economic losses (¶¶ 953, 968, 977, 985, 1001, 1169, and 1212), with no specificity alleged as to any one of them as to how, when or where such losses might have occurred. Even if they could demonstrate, with some specificity, that they had a financial or economic loss as alleged, such harm "caused by a government imposed stigma" has been ruled to "not transform an interest in reputation into a liberty interest." *Mosrie v. Barry,* 715 F.2d 1151,1158 (D.C. Cir. 1983).

The Plaintiffs' claim for these damages appears to rest on the false assumption that they should have been free from a criminal investigation. There is no constitutional or federally protected right to be free from official governmental investigation and the Supreme Court has recognized the public policy behind such a decision: "To hold otherwise would give the federal judiciary an unauthorized

'veto over law enforcement practices of which it [does] not approve." *United States v. Russell,* 411 U.S. 423, 435, 93 S.Ct. 1637, 361 L.Ed.2d 366 (1973). Such decisions as *Hale v. Townley,* 45 F.3[rd] 914 (5th Cir. 1995) and *Biasella v. City of Naples,* 2005 U.S. Dist. LEXIS 20211 (M.D. Fla. 2005) have fully discussed such claims. This legal concept was clearly adopted by the Fourth Circuit in *Taylor v. Waters,* 81 F.3[rd] 429 (1996) rejecting a similar claim to this one where the plaintiff claimed that investigators failed to disclose exculpatory evidence to the prosecutor and he was harmed. The Court there held that such allegations do not "allege a deprivation of any right guaranteed under the Due Process Clause of the Fourteenth Amendment" where the Plaintiff had not been subjected *to trial.* In this instance, none of these Defendants were even subjected to arrest or indictment and after March 21 (one week after the alleged events had occurred), none of these Plaintiffs were even considered a part of he ongoing investigation.

Regardless of what may now be known (or thought to be known) about the events at 610 N. Buchanan Blvd. during the evening of March 13 or the early morning of March 14, 2006, the Durham Police Department was presented a claim that a rape and sexual assault had occurred. It was (and should be) incumbent upon the law enforcement officials of Durham to investigate such an allegation without having to prove or disprove the veracity of the citizen making the complaint prior to initiating the investigation. And, when such an investigation is confusing or difficult because of the circumstances surrounding it, public discussion of the events can, and often does, assist in the investigation of such

allegations. The very existence of the national CrimeStoppers program rests upon the basis that, an informed public, will come forward and provide confidential information that may assist law enforcement officers in an investigation of an alleged crime. Understandably, our courts have been hesitant to impose civil liability on public officials who have made public statements during an investigation, even when it might result in an arrest of an innocent individual. See *Kipps v. Ewell,* 391 F. Supp. 1285 (W.D. Va. 1975). In this case, the statements attributed to Addison and Michael did not lead to the arrest of any of these Plaintiffs.

### State Claims

Finally, the Plaintiffs have raised several state based claims against Addison and Michael in this action including Negligence (Twenty-Fifth Cause of Action), Negligent Infliction of Emotional Distress (Twenty-Seventh and Twenty-Eight Causes of Action) and Intentional Infliction of Emotional Distress (Twentieth Cause of Action). As previously suggested in this Memorandum, each of these Defendants is entitled to qualified governmental immunity from these claims as their conduct was in the course and scope of their employment and in the exercise of their discretionary governmental duties. *Shaw v. Stroud,* 13 F.3[rd] 791, 803 (4th Cir. 1994) and *Green v. Town of Valdese,* 306 N.C. 79, 82, 291 S.E.2d 630, 632 (1982). There are insufficient pleadings in this Amended Complaint to take the conduct of Addison or Michael outside the protection of this public official immunity.

In regard to the claims of negligence (Twenty-Fifth Cause of Action) and negligent infliction of emotional distress (Twenty-Seventh and Twenty-Eighth Causes of Action), the Plaintiffs have failed to adequately plead or establish a key element of such a claim against Addison or Michael. In order to have such a claim, the Plaintiffs must first establish that Addison or Michael failed to exercise due care in the performance of some *legal duty owed to the plaintiff* and that this breach was a proximate cause of damage to the plaintiff. *Wood v. Guilford County,* 355 N.C. 161, 558 S.E.2d 844 (2002). In carrying out their duties as "spokespersons" for the Durham Police Department, neither Addison nor Michael owed any duties to these Plaintiffs which were breached. While no specific case in North Carolina has been found on this point, there are many cases from other jurisdictions which have addressed this issue and the public policy for such a rule may have best been stated by the Idaho Court when it wrote to rule otherwise would "impair vigorous prosecution and have a chilling effect on law enforcement." *Wimer v. State of Idaho,* 841 P.2d 453 (Idaho 1993).

In their Twentieth Cause of Action, the Plaintiffs claim that Addison intentionally inflicted emotional distress upon each of them. This claim must fail as well – as a matter of law. The elements necessary to establish and support a claim for intentional infliction of emotional distress are: 1) extreme and outrageous conduct 2) which is intended to cause and does cause 3) severe and disabling emotional distress. *Dickens v. Puryear,* 302 N.C. 437, 276 S.E.2d 325 (1985). Historically, the burden to establish this tort in North Carolina has been

set high.  Generally, the conduct (public statements of Addison in this instance) must be "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly 'intolerable in a civilized' community.  *Brigg v. Rosenthal,* 73 N.C. App. 672, 677, 327 S.E.2d 308, 311, *cert. denied,* 314 N.C. 11, 332 S.E.2d 479 (1985).

When judged by this standard, as is required here, the statements made by or attributed to, David Addison in the performance of his discretionary duties as a government employee (spokesperson for the Durham Police Department), based upon information provided to him from the investigating officers, cannot meet these standards.  None of these Plaintiffs were ever identified by name by him, there was no indication that he was intended to do them harm (as compared to carrying out his responsibilities as a police officer) and, while the Plaintiffs claim a long list of emotional and financial damages, they do not claim to be or to have been "disabled" as a result of any of Addison's statements.

## V.   CONCLUSION

James Soukup, Kammie Michael, David Addison and Richard Clayton were all police officers with the City of Durham at all times complained of in this Amended Complaint and all of their actions of which the Plaintiffs now complain, occurred while they were performing their duties as police officers for the City of Durham.  As such, each of them is entitled to qualified governmental immunity from this action and they should each be dismissed.

In any and all claims that are asserted against Addison, Michael and Soukup (assuming that the Tenth Cause of Action against "All Defendants" would include Soukup since he is not individually named in a single Cause of Action), the claim is made against the officer individually and "in their official capacities." In each Cause of Action, the City of Durham is also a named Defendant and, as such, these individual claims are duplicative and they should be dismissed as to each of them.

Richard Clayton's alleged involvement which brings him into this suit is participation in several photo identification procedures in which neither Crystal Mangum nor Kim Pittman were able to identify any of these Plaintiffs as even having been at the party under review. There is no actionable harm to the Plaintiffs by his alleged conduct and he should be dismissed from this action.

Since there is no constitutionally protected right which guarantees that a citizen will be free from a criminal investigation nor alleged defamation, the claims against David Addison and Kammie Michael arising out of those allegations in this Amended Complaint should be dismissed.

The Motions to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on behalf of James Soukup, Kammie Michael, David Addison and Richard D. Clayton should be granted.

Respectively submitted this the 2nd day of July, 2008.

/S/  James B. Maxwell
Maxwell, Freeman & Bowman, P.A.
P. O. Box 52396
Durham, NC  27717-2396
Telephone:  919-493-6464
Facsimile:   919-493-1218
State Bar No.:  2933
*Attorneys for James T. Soukup, Kammie*
*Michael, David W. Addison and Richard*
*D. Clayton*

## Certificate of Service

I hereby certify that I have served a copy of the foregoing Motion to Dismiss upon the below listed individuals by electronically filing the document with the Court on this date using the CM/ECF system and by placing a copy in the U.S. Mail to Defendant Linwood Wilson.

Reginald B. Gillespie, Jr.
Faison & Gillespie
5517 Durham-Chapel Hill Blvd, Ste. 2000
P.O. Box 51729
Durham, NC 27717-1729

And

Roger E. Warin
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20003
*Counsel for Defendant City of Durham, N.C. and Edward Sarvis*

Patricia P. Kerner
D. Martin Warf
Hannah G. Styron
Troutman Sanders, LLP
434 Fayetteville Street, Suite 1900
Raleigh, NC 27601
*Counsel for Defendants Steven Chalmers, Patrick Baker, Beverly Council, Ronald Hodge, Jeff Lab, Stephen Mihaich, Michael Ripberger, Laird Evans, and Lee Russ*

Jamie Gorelick
Paul R. Q. Wolfson
Jennifer M. O'Conner
Wilmer Cutler Pickering Hale and Dorr, LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006

And

William F. Lee
Wilmer Cutler Pickering Hale and Dorr, LLP
60 State Street
Boston, MA 02109

And

J. Donald Cowan, Jr.
Dixie T. Wells
Smith Moore LLP
P.O. Box 21927 [26420]
300 N. Greene Street, Suite 1400
Greensboro, NC 27401
*Counsel for Defendants Duke University, Duke University Police Department, Aaron Graves, Robert Dean, Leila Humphries, Phyllis Cooper, William F. Garber, II, James Schwab, Joseph Fleming, Jeffrey O. Best, Gary N. Smith, Greg Stotsenberg, Robert K. Steel, Richard H. Brodhead, Ph.D., Peter Lange, Ph.D., Tallman Trask, III, Ph.D., Johan Burness, Larry Moeta, Ed.D., Victor J. Dzau, M.D., Allison Halton, Kemel Dawkins, Suzanne Wasiolek, Stephen Bryan, and Matthew Drummond.*

Dan J. McLamb
Shirley M. Pruitt
T. Carlton Younger, III
Yates, McLamb & Weyher, LLP
One Bank of America Plaza, Ste 1200
421 Fayetteville Street
Raleigh, NC 27601
*Counsel for Defendants Duke University Health Systems, Inc., Private Diagnostic Clinic, PLLC, Julie Manly, M.D., Theresa Arico, R.N., and Tara Levicy, R.N.*

Joel M. Craig
Henry W. Sappenfield
Kennon Craver Belo Craig & McKee, PLLC
4011 University Drive, Suite 300
P.O. Box 51579
Durham, NC 27717-1579
*Counsel for Defendant Benjamin Himan*

Edwin M. Speas
Eric P. Stevens
Poyner & Spruill, LLP
3600 Glenwood Avenue
Raleigh, NC 27612
*Counsel for Defendant Mark Gottlieb*

Robert J. King III
Kearns Davis
Brooks, Pierce, McLendon, Humphrey & Leonard, LLP
2000 Renaissance Plaza
P.O. Box 26000
Greensboro, NC 27420
*Counsel for Defendant DNA Security, Inc. & Richard Clark*

Robert A. Star
Nicholas J. Sanservino, Jr.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2301 Sugar Bush Road, Suite 600
Raleigh, NC 27612
*Counsel for Defendant DNA Security, Inc.*

Paul R. Dickinson, Jr.
Lewis & Roberts, PLLC
1305 Navaho Drive, Suite 400
Raleigh, NC 27609-7482
*Counsel for Defendant Brian Meehan*

James A. Roberts, III
Lewis & Roberts, PLLC
1305 Navaho Drive, Suite 400
Raleigh, NC 27609-7482
*Counsel for Defendant Brian Meehan*

Robert C. Ekstrand
811 Ninth Street, Suite 260
Durham, NC  27705
*Counsel for Plaintiffs Ryan McFadyen, Matthew Wilson and Breck
Archer*

By Mail:

     Linwood Wilson
     6910 Innesbrook Way
     Bahama, NC 27503-9700

This the 2nd day of July, 2008.

                              /S/James B. Maxwell
                              Maxwell, Freeman & Bowman, P.A.
                              Attorneys for David Addison
                              P. O. Box 52396
                              Durham, NC  27717-2396
                              (919) 493-6464
                              State Bar No.:  2933