# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

### CIVIL ACTION NUMBER 1:07-CV-00953

RYAN McFADYEN, et al.,

        Plaintiffs,

    v.

DUKE UNIVERSITY, et al.,

        Defendants.

Brief in Support of "Duke Police Defendants'" Motion to Dismiss Amended Complaint

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rules 7.2 and 7.3, the "Duke Police Defendants"—defined by the Court and the parties for purposes of this motion to comprise the Duke University Police Department, Jeffrey O. Best, Phyllis Cooper, Robert Dean, Joseph Fleming, William F. Garber II, Leila Humphries, James Schwab, Gary N. Smith, and Greg Stotsenberg—move to dismiss all claims in the Amended Complaint (AC) against them for failure to state a claim on which relief may be granted.[1]

---

[1] (*See* Joint Mot. to Extend Page Limitations and to Establish a Rule 12 Briefing Schedule, Dkt. 23; Order, Dkt. 29 (granting Joint Motion in part); Joint Mot. to Reestablish Deadlines in the Rule 12 Briefing Schedule, Dkt. 37 (defining "Duke Police Defendants" and treating Second Amended Complaint, filed April 18, 2008, as the First Amended Complaint; referred to herein as the "Amended Complaint," (AC)); Order, Dkt. 38.) Separate briefs are being filed on behalf of the "Duke University Defendants" and the "Duke SANE Defendants," as defined in the Joint Motion, to dismiss all claims in the Amended Complaint as to those Defendants. The Amended Complaint raises many causes of action against all three groups of Duke Defendants. To avoid repetition, this

# I. NATURE OF THE PROCEEDINGS

The essence of Plaintiffs' claims against the Duke Police Defendants in this case is that the Duke Police improperly allowed the Durham Police to investigate Crystal Mangum's allegations that she was raped by Duke students at a private party in an off-campus house, and failed to intervene to stop the Durham Police investigation when (Plaintiffs contend) the Durham Police were violating Plaintiffs' constitutional rights. Plaintiffs were members of the Duke University men's lacrosse team at the time when three of their teammates were charged with crimes later shown not to have occurred. Plaintiffs were never indicted, let alone tried or convicted, yet they now seek to impose liability on the Duke Police Department for failing to prevent a municipal police department with valid jurisdiction over the case from investigating Mangum's serious criminal accusations.

Plaintiffs' claims rest on legal premises that have no support in either North Carolina or federal law. First, the law does not recognize any cause of action for the

---

brief addresses those causes of action that appear directed principally at the Duke Police Defendants—namely, Counts 11, 22, 24, 29, and 37-40. Where necessary, in addressing those Counts, this brief discusses issues of liability that are related to certain Duke University Defendants. For example, the Amended Complaint assigns some Duke University Defendants to multiple defendant groups; to the extent the Counts discussed herein are also directed against these Duke University Defendants, those issues are addressed in this brief. The Duke University Defendants address, in their brief, Counts 5, 7-10, 12-17, 21, 23, and 30. The Duke SANE Defendants address, in their brief, Counts 1-3, 6, 18-20, and 31-33. Counts 4, 25-28, and 34-36 are brought only against non-Duke defendants. (*See* Ex. 1.) To the extent the arguments presented in the Briefs for the Duke University Defendants or Duke SANE Defendants are relevant to the claims against the Duke Police Defendants, they are incorporated here by reference.

negligent conduct of (or the failure to conduct) a police investigation, and rightly so, lest the police be overwhelmed with lawsuits by victims, suspects, and defendants, charging that the police should have investigated a crime more carefully.  Second, there is no basis in North Carolina law for Plaintiffs to argue that the Duke Police had any power to take an investigation away from the Durham Police, who have plenary authority to investigate any crime within their territorial jurisdiction.  Finally, Plaintiffs' constitutional claim of "bystander liability"—that the Duke Police should have actively impeded the Durham Police's investigation of Mangum's allegations because they should have suspected that the Durham Police were violating the Constitution—finds no support even on Plaintiffs' allegations of the facts of this case, which gives no reason to believe that the Duke Police knew of the existence of any constitutional violations, or had any power or authority to prevent them.  For all these reasons, Plaintiffs' claims against the Duke Police Defendants should be dismissed.

## II.     STATEMENT OF FACTS[2]

The Duke Police Defendants incorporate by reference the Statement of Facts in the Briefs of the Duke University Defendants and Duke SANE Defendants in support of their respective motions to dismiss the Amended Complaint.  In addition, the following facts are relevant to the claims brought against the Duke Police Defendants.

---

[2] Solely for the purpose of this Motion, and as required under Federal Rule of Civil Procedure 12(b)(6), the Duke Police Defendants assume the truth of the facts asserted by Plaintiffs in their Amended Complaint.

On July 18, 2003, the North Carolina Legislature enacted a statute authorizing the City of Durham to enter into an agreement with Duke University to "extend the jurisdiction" of the Duke Police Department "into the City of Durham." (AC ¶ 94.) On November 6, 2003, the City of Durham and Duke University entered into an agreement pursuant to this statute. (*Id*.; *id.* Ex. 2.) Five months later, on April 6, 2004, the City of Durham and Duke University amended that agreement. (*Id.* ¶ 95; *id.* Ex. 3.) This April 2004 agreement was in effect on March 13-14, 2006, when members of the Duke men's lacrosse team hired two strippers to perform at a party held at 610 N. Buchanan Boulevard in Durham. (*Id.* ¶¶ 95, 194-195.) Later that evening, in response to a 911 call from a Kroger grocery store, Durham Police picked up one of those strippers, Crystal Mangum, and took her to Durham Center Access, where she reported that she had been raped at the party. (*Id*. ¶¶ 224-238, 243-255.)

The Durham Police transported Mangum to Duke University Medical Center Emergency Department after she claimed she had been raped. (*Id*. ¶ 255.) When Mangum arrived at the Medical Center in the early morning hours of March 14, she was interviewed by Sergeant John Shelton and Officer Gwen Sutton of the Durham Police Department. (*Id*. ¶¶ 103 F, 262, 266.) Several Duke Police officers were stationed at or dispatched to the Medical Center in the early morning hours of March 14. (*Id*. ¶¶ 274, 278-279, 281, 283.) One of those officers, Christopher Day, was briefed by the Durham police about the initial investigation into Mangum's rape allegations. (*Id*. ¶ 285.) That same morning, Officer Day filed a written report with his supervisors describing the

information he had received from the Durham Police.  (*Id.* ¶¶ 287, 473.)  Officer Day later filed a "Continuation Report" which included additional information on his briefing from the Durham Police.  (*Id.* ¶ 474.)  Other Duke Police officers who were present at the Medical Center, including William Mazurek and Sara Beth Falcon, also filed statements describing their observations from that evening.  (*Id.* ¶¶ 468, 470.)

The Durham Police Department and Durham County District Attorney Mike Nifong investigated the alleged rape.[3]  Plaintiffs allege that Duke Police officers assisted the Durham investigators at selected points in their investigation.  Plaintiffs allege, for example, that Duke Police provided Durham investigators with publicly-available photographs of the men's lacrosse team for use in Durham's photo identification procedures (*id.* ¶ 353); that Duke Police Sergeant Gary Smith "escorted" Durham Police Sergeant Mark Gottlieb and Officer Benjamin Himan to Ryan McFadyen's dorm room to execute a search warrant (*id.* ¶ 614); that Duke Police provided "transaction" data from Plaintiffs' Duke-issued identification cards to Durham Police (*id.* ¶¶ 853-854); and that other Duke Police officers "assisted Gottlieb and Himan in gaining access to locked dorm rooms" to gather information about who was present at the lacrosse team's stripper party (*id.* ¶¶ 820-825).  Plaintiffs further allege that during the course of the investigation, Duke Police officials were kept abreast of Durham's efforts at joint meetings between the two departments.  (*Id.* ¶¶ 627-628.)

---

[3] (*See, e.g.*, AC ¶¶ 62, 333, 335-336, 359, 362, 368, 377, 414-416, 591-601, 606, 608-613, 621, 628, 641-645, 655, 660-664, 668, 680-682, 749, 755, 765.)

It was the Durham Police, however, who interviewed Mangum and Kim Pittman, the second stripper hired to perform for the lacrosse team (*id.* ¶¶ 362, 385); conducted three photo identification procedures (*id.* ¶¶ 368, 371, 377, 667); drafted applications for and executed a Non-Testimonial Identification Order (NTID) and a search warrant of McFadyen's dorm room (*id.* ¶¶ 415, 611, 613); and worked with two different forensic laboratories to conduct testing of DNA evidence (*id.* ¶¶ 565, 617-622, 655, 688-689, 749, 756). Plaintiffs do not allege that any Duke Police Defendant was directly involved in any of these investigation efforts.

## III.  QUESTIONS PRESENTED

**A.** Whether Plaintiffs have failed to state any basis for their negligence claims related to the police investigation of the alleged rape (Counts 29, 37, 38, 39, and 40);

**B.** Whether Plaintiffs have failed to state any basis for their invasion of privacy claim (Count 22);

**C.** Whether Plaintiffs have failed to state any basis for their fraud claim (Count 24); and

**D.** Whether Plaintiffs have failed to state any basis for their claim under 42 U.S.C. § 1983 for the Duke Police Defendants' "failure to intervene" to prevent alleged constitutional violations by the Durham Police (Count 11).

## IV.  STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim, the Court should accept well-pleaded factual allegations in the complaint as true, but should give no weight to legal

conclusions cast in the form of factual allegations. *Young v. City of Mount Rainier*, 238 F.3d 567, 577 (4th Cir. 2001). Nor should the Court give any weight to conclusory allegations ungrounded in any assertion of fact. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Moreover, unsupported allegations of conspiracy are insufficient to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1966 (2007). Plaintiffs raising conspiracy claims must allege specific facts to show that an agreement was made; neither "a bare assertion of conspiracy" nor "a conclusory allegation of agreement" suffices. *Id.* at 1966. Instead, plaintiffs must allege sufficiently specific facts to "raise a right to relief above the speculative level," *id.* at 1965, such that the "claim … is plausible on its face," *id.* at 1974.

## V. ARGUMENT

### A. Plaintiffs Fail To State A Claim For Negligence (Counts 29, 37-40)

In a series of negligence claims (Counts 29, 37, 38, 39, and 40), Plaintiffs allege that Duke University and the Duke Police Defendants injured them by negligently carrying out, or failing to carry out, an investigation into the alleged rape at 610 N. Buchanan, instead improperly "ced[ing]" the investigation to the Durham Police Department and the Durham County District Attorney, Mike Nifong. (*See* AC ¶¶ 1083, 1293-1297, 1356, 1362, 1374.) These claims find no support in North Carolina law and should be dismissed.

### 1. Plaintiffs' Claims Fail Because Defendants Did Not Owe Plaintiffs A Legal Duty Of Care

Plaintiffs' negligence claims in Counts 29, 37, 38, 39, and 40 all fail because of a common fatal flaw: Plaintiffs cannot allege an essential element of any negligence claim, a legal duty owed by the defendants to the plaintiffs. *See, e.g.*, *Bolkhir v. N.C. State Univ.*, 321 N.C. 706, 709, 365 S.E.2d 898, 900 (1988); *W.E.T. v. Mitchell*, No. 1:06CV487, 2007 WL 2712924, at *15 (M.D.N.C. Sept. 14, 2007).[4]

North Carolina law makes clear that officials and entities exercising governmental authority cannot be held liable for negligence in carrying out their duties. Under the "public duty" doctrine, a governmental entity is presumed to "act for the benefit of the general public and not for a specific individual when exercising its statutory police powers, and, therefore, cannot be held liable for a failure to carry out its statutory duties to an individual." *Moseley v. L & L Constr., Inc.*, 123 N.C. App. 79, 83, 472 S.E.2d 172, 174 (1996) (citations omitted). As the North Carolina Supreme Court has explained,

---

[4] Plaintiffs' negligence claims are also flawed because they attempt to impose tort liability on defendants who did not proximately cause Plaintiffs' injuries as a matter of law. As explained at greater length in the Brief for Duke SANE Defendants and hereby incorporated by reference (*see* Br. for SANE Defs. at 31-34), North Carolina adheres to the principle that the "willful and malicious act of a third person" is an intervening cause that precludes liability of the initial negligent actor. *See Ward v. Southern Ry. Co.*, 206 N.C. 530, 530, 174 S.E. 443, 444 (1934); *see also Tise v. Yates Constr. Co., Inc.*, 345 N.C. 456, 460, 480 S.E.2d 677, 680 (1997). Here, on the face of Plaintiffs' own allegations, any injury that Plaintiffs might have suffered was directly caused by the independent and intentional decision of District Attorney Nifong to investigate the rape accusation, and to continue that investigation after Nifong was apparently well aware that the accusation could not be supported in a court of law. (*See, e.g.*, AC ¶¶ 488, 591-593, 660-664.) On the face of the Amended Complaint, therefore, Plaintiffs cannot establish the required proximate causation for their negligence claims.

"when a governmental entity owes a duty to the general public, particularly a statutory duty, individual plaintiffs may not enforce the duty in tort." *Myers v. McGrady*, 360 N.C. 460, 465-466, 628 S.E.2d 761, 766 (2006). The public duty doctrine disallows "tort liability arising out of discretionary governmental actions that by their nature are not ordinarily performed by private persons." *Stone v. N.C. Dep't of Labor*, 347 N.C. 473, 482, 495 S.E.2d 711, 716 (1998) (citations omitted). Courts in North Carolina have consistently held that police investigations are at the core of the public duty doctrine. *See Lassiter v. Cohn*, 168 N.C. App. 310, 317, 607 S.E.2d 688, 692-693 (2005); *Campbell v. Anderson*, 156 N.C. App. 371, 376, 576 S.E.2d 726, 730 (2003); *Clayton v. Branson*, 153 N.C. App. 488, 492, 570 S.E.2d 253, 256 (2002); *Lane v. City of Kinston*, 142 N.C. App. 622, 624, 544 S.E.2d 810, 813 (2001); *see also Moore v. Cease*, No. 03-144, 2005 WL 5322794, at *19 (E.D.N.C. July 5, 2005).

The public duty doctrine bars all of Plaintiffs' negligence claims against the Duke Police Defendants in this case. Plaintiffs' negligence claims all proceed from their allegation that the Duke University Police Department had the powers and authorities of an accredited municipal police force and had a "statutory obligation" to conduct a criminal investigation into Mangum's allegations of rape. (*See* AC ¶¶ 11, 1293-1294.) Assuming the truth of these allegations for the purposes of this motion, under the public duty doctrine, the Duke University Police Department had no actionable duty to these individual Plaintiffs to conduct a criminal investigation, or to conduct such an investigation competently. Although no North Carolina court appears to have directly

addressed the issue, courts outside North Carolina have found the public duty doctrine applicable to universities and their police forces, and have barred negligence claims against universities on that ground. *See, e.g.*, *Cannon v. Univ. of Utah*, 866 P.2d 586, 588-590 (Utah Ct. App. 1993); *Johnson v. State*, 894 P.2d 1366, 1368-1370 (Wash. Ct. App. 1995).[5] This Court should follow those cases here and hold that Plaintiffs cannot recover against the Duke University Police Department (or Duke University) for negligently carrying out, or failing to carry out, a criminal investigation of the alleged rape. As such, Counts 29, 37, 38, 39, and 40 should be dismissed.

Each of these Counts also fails for additional, independent reasons.

### 2. Count 29: "Negligence (Duke Police)"

Count 29 alleges that the Duke Police had a "statutory obligation to initiate and conclude an investigation of Mangum's claims" that she was raped at 610 N. Buchanan. (AC ¶ 1293.) Plaintiffs allege that, instead of fulfilling this "statutory obligation," the Duke Police Department "abdicated" its legal obligations and "ceded all of its

---

[5] Although no North Carolina court has ruled on this issue, the North Carolina Legislature, in authorizing Duke University to enter into agreements with the municipality to extend the Duke University Police Department's jurisdiction, also provided that the Duke Police would enjoy the same "powers, rights, privileges, and immunities" as municipal law enforcement officers. N.C. Gen. Stat. § 116-40.5(b), as amended July 18, 2003 by House Bill 736, Section 2 ("While acting in a law enforcement capacity within the municipality's jurisdiction under authority of this section, campus law enforcement officers shall have the same powers, rights, privileges, and immunities (including those related to the defense of civil actions and the payment of judgments) as the law enforcement officers of the municipality, in addition to those powers the officers normally possess.").

investigative authority" to the Durham Police Department. (*Id.* ¶¶ 1293, 1296-1297.) The Duke Police acted negligently, Plaintiffs allege, by "fail[ing] to insist or demand that [the] Duke Police Department immediately intervene" in the Durham Police Department's criminal investigation. (*Id.* ¶¶ 1299 A-G.)

In essence, Plaintiffs assert that they had a right, enforceable at law, to have the Duke University Police Department, rather than the Durham Police Department, conduct any investigation into any criminal allegations against them stemming from Mangum's accusations. This argument fails for several reasons.

First, Plaintiffs cannot establish the legal premise of their claim—that Duke University and the Duke Police Department were legally obligated to preempt the Durham Police Department's investigation of the alleged rape. It was the North Carolina Legislature, not Duke University, that granted the Durham Police the authority to investigate the alleged rape. The territorial jurisdiction of the Durham Police is defined by a North Carolina statute that gives the Durham Police jurisdiction throughout the city limits, which includes 610 N. Buchanan and the entire Duke campus. *See* N.C. Gen. Stat. §§ 15A-402(b), (c); *see also id.* § 160A-286. Durham's authority to investigate the alleged rape therefore was not, and could not have been, "ceded" to Durham by Duke.

Similarly, the "Jurisdictional Agreement between Duke University and the City of Durham" did not create a "statutory obligation" on the part of the Duke Police Department to investigate the alleged rape or to preempt Durham's investigation, as

Plaintiffs allege. (AC ¶¶ 1290, 1293.)[6] As noted, Durham had complete statutory authority under North Carolina law to investigate the alleged crime, and the Agreement between Duke University and the City of Durham, under which the Duke Police Department and the Durham Police Department agreed to provide mutual aid and cooperation, in no way *reduced* Durham's statutory authority or gave Duke control over Durham's police force. (*See* Agreement § 2.1 (AC Ex. 3) ("The City Law Enforcement Agency *shares with* the Campus Law Enforcement Agency the authority to investigate any offense on Campus." (emphasis added)).)

Second, even if one were to accept the notion that the Agreement somehow gave the Duke University Police Department *sole* jurisdiction over the investigation into Mangum's allegations, and that the Duke Police Defendants somehow breached that Agreement, Plaintiffs' claim would still fail, because the Agreement grants no rights to third parties such as Plaintiffs and creates no actionable duties on the part of the Duke Police to them. "A promisor bound to … [a] municipality by contract to do an act or render a service to some or all of the members of the public, is subject to no duty under

---

[6] Plaintiffs refer to a "Police Jurisdiction Allocation Agreement." (AC ¶¶ 96-104.) The agreement to which Plaintiffs refer, however, is titled "Agreement for Police Cooperation, Mutual Aid, and Campus Law Enforcement Agency Extended Jurisdiction." (*Id.* Ex. 3.) This Agreement was entered into between Duke University and the City of Durham under authority of North Carolina General Statutes § 116-40.5(b) (which allows constituent institutions of the University of North Carolina to enter into joint agreements with the municipality to extend the jurisdiction of campus police into the jurisdiction of the municipality), as amended July 18, 2003 by House Bill 736, Section 2 (which authorizes private universities to do the same), and North Carolina General Statutes § 160A-288 (which authorizes the heads of law enforcement agencies in North Carolina to enter into joint agreements for mutual aid and cooperation).

the contract to such members to give compensation for the injurious consequences of performing, or attempting to perform it, or of failing to do so[.]"[7] *Matternes v. City of Winston-Salem*, 286 N.C. 1, 14, 209 S.E.2d 481, 488-489 (1974) (internal quotation marks omitted); *see also Metric Constructors, Inc. v. Indus. Risk Insurers,* 102 N.C. App. 59, 63, 401 S.E.2d 126, 129 (1991) (a plaintiff bringing suit on a third-party beneficiary theory must show "(1) the existence of a contract between two other persons; (2) that the contract was valid and enforceable; and (3) *that the contract was entered into for his direct, and not incidental, benefit*" (emphasis added) (citation omitted)). Because Plaintiffs were neither signatories to nor direct beneficiaries of the Agreement, it provides them with no enforceable rights.

### 3.     Count 37: "Negligence (Duke Police)"

In Count 37, Plaintiffs allege that Duke University and Duke University Police Department officers owed Plaintiffs "a duty to use due care with respect to the investigation of Mangum's false allegations." (AC ¶ 1356.) This duty was breached, according to Plaintiffs, when Duke Police officers allegedly "made false and misleading witness statements to prop up Mangum's credibility in the eyes of the public." (*Id.*

---

[7] The rule carves out two exceptions, both inapplicable in this case: (a) an intention is manifested in the contract, as interpreted in the light of the circumstances surrounding its formation, that the promisor shall compensate members of the public for such injurious consequences; or (b) the promisor's contract is with a municipality to render services the nonperformance of which would subject the municipality to a duty to pay damages to those injured thereby. *See Matternes*, 286 N.C. at 14, 209 S.E.2d at 489. The agreement between Duke and Durham evidences no intent to create an individual right of action for members of the general public and, as discussed *supra* pp. 8-10, the city police cannot be held liable for the nonperformance of their duties due to the public duty doctrine.

¶ 1357.)  To the extent that Plaintiffs are alleging that the Duke Police negligently conducted a criminal investigation into Mangum's allegations, this Count is barred by the public duty doctrine, as discussed above.  *See supra* pp. 8-10.[8]

To the extent this Count is intended to allege negligence by these Duke Police Defendants as *witnesses* assisting the Durham Police investigation, the claim still fails. (AC ¶ 1355 (alleging negligence in conducting the investigation and "subsequently when [Defendants] were assisting" the investigation of Nifong and Durham Police Sgt. Gottlieb).)  Plaintiffs' claim appears to be that the Duke Police Defendants breached a duty of care by making statements to Durham Investigators that "prop[ped] up Mangum's credibility in the eyes of the public and, ultimately, a jury."  (*Id.* ¶ 1357.)  But the Duke Police Defendants are aware of no North Carolina case (or any case) that has ever found that a witness owes a legal duty of care to potential criminal suspects for statements to investigators about *another* witness's credibility.  And the creation of such a duty of care would surely chill the willingness of individuals to cooperate with the police.  Witnesses or others with information about a crime would hesitate to provide information to the police if individuals under investigation for that crime could, in turn, sue them for

---

[8] Count 37 makes allegations of negligence against Duke Police officers Mazurek, Day, Eason, and Falcon.  However, none of these individuals is named as a defendant in the caption of the Complaint or the Amended Complaint, and none was served with process. The Court should therefore strike or disregard those allegations.  *See* Fed. R. Civ. P. 10(a); *Londeree v. Crutchfield Corp.*, 68 F. Supp. 2d 718 (W.D.Va. 1999), *aff'd*, 210 F.3d 361 (4th Cir. 2000).  In addition, Count 37 (and Counts 38 and 39) name both Duke University and individual University officers in their official capacity.  Such claims are redundant and one should be dismissed on that basis.  *See Mullis v. Sechrest*, 347 N.C. 548, 554, 495 S.E.2d 721, 725 (1998).

providing mistaken information.[9]

Plaintiffs' real grievance appears to be that the alleged actions of the Duke Police facilitated a malicious prosecution of them. They cannot bring a malicious prosecution claim under North Carolina law, however, because they were never arrested, indicted, or tried. In North Carolina, to prove a claim for malicious prosecution, a plaintiff must establish four elements: (1) the defendant instituted, procured, or participated in a criminal proceeding against the plaintiff; (2) without probable cause; (3) with malice; and (4) the criminal proceeding terminated in favor of the plaintiff. *See Cook v. Lanier*, 267 N.C. 166, 169, 147 S.E.2d 910, 913 (1966). Here, no criminal proceedings were ever instituted against Plaintiffs, and they therefore have no cognizable claim for malicious prosecution. The law has placed careful and narrow restrictions on the malicious prosecution tort for good reason, and Plaintiffs' effort to escape those restrictions by seeking to recover under common law negligence theories is unavailing. *See* W. Page Keeton, et al., *Prosser and Keeton on The Law of Torts* § 119, at 871 (5th ed. 1984) ("The individual interest in freedom from unjustifiable litigation and the social interest in supporting resort to law have traditionally been balanced by the requirement that the

---

[9] It is no response that Plaintiffs allege that the Duke Police Defendants *intentionally* made "false and misleading" statements to "fram[e]" the Plaintiffs for a crime that the Duke Police "knew did not happen." (AC ¶¶ 1357-1358.) Intentional acts, alleged to be committed negligently, cannot support a claim for negligence. *See Sabrowski v. Albani-Bayeux, Inc.*, No. 02-728, 2003 WL 23018827, at *5-6 (M.D.N.C. Dec. 19, 2003), *aff'd*, No. 04-1114, 2005 WL 435416 (4th Cir. Feb. 25, 2005) (Beaty, J.); *see also Barbier v. Durham County Bd. of Educ.*, 225 F. Supp. 2d 617, 631 (M.D.N.C. 2002) (Beaty, J.); (Br. for Duke SANE Defs. at 31 (incorporated here by reference).)

plaintiff must prove four elements to establish a malicious prosecution action. . . ."); (*see also* Br. for Duke SANE Defs. at 44-45 (discussing malicious prosecution)). Accordingly, Count 37 should be dismissed.

### 4. Count 38: "Negligent Supervision (Duke Police)"

In Count 38, Plaintiffs raise a negligent supervision claim against Duke University and what the Amended Complaint styles the "Duke Police Supervising Defendants."[10] The Amended Complaint alleges that these "Duke Police Supervising Defendants" owed Plaintiffs a legal duty of care "with respect to their involvement in the investigation of Mangum's false allegations," and that these supervisors and Duke University negligently hired, trained and supervised Duke Police officers in relation to this criminal investigation. (AC ¶¶ 1362-1363.) This count should be dismissed because Plaintiffs cannot state a claim for negligent supervision. Also, as a matter of law, individual defendants, such as each of those individuals listed as "Duke Police Supervising Defendants," cannot be held liable for negligent supervision.

To state a claim for negligent supervision, "the plaintiff must prove that the incompetent employee committed a tortious act resulting in injury to plaintiff and that prior to the act, the employer knew or had reason to know of the employee's

_____

[10] Plaintiffs define the "Duke Police Supervising Defendants" to include Richard Brodhead, Tallman Trask III, Kemel Dawkins, Jeffrey O. Best, Phyllis Cooper, Robert Dean, Joseph Fleming, William F. Garber II, Aaron Graves, Leila Humphries, and James Schwab. (AC ¶ 44.) This group includes all of the "Duke Police Defendants" except Smith and Stotsenberg, plus Brodhead, Trask, Dawkins, and Graves. *See supra* p. 1 & n.1. Defendants Brodhead, Trask, Dawkins, and Graves join in these arguments.

incompetency." *Smith v. Privette*, 128 N.C. App. 490, 494-495, 495 S.E.2d 395, 398 (1998) (citation omitted). Plaintiffs' claim fails on both grounds. First, the Amended Complaint is devoid of any allegations that Duke University knew or had reason to know of any Duke University Police officer's incompetency. Second, as a matter of law, Plaintiffs cannot allege that any Duke Police employee committed a tort against them, and absent a viable negligence claim against any Duke Police employee, Plaintiffs cannot maintain an action against their employer for negligent supervision. *See Guthrie v. Conroy*, 152 N.C. App. 15, 26, 567 S.E.2d 403, 411 (2002); *Hogan v. Forsyth Country Club*, 79 N.C. App. 483, 496-497, 340 S.E.2d 116, 125 (1986). As explained above, Duke University Police officers owed no actionable duty to Plaintiffs with respect to any criminal investigation. *See supra* pp. 8-10, 13-16. Because no Duke University Police Department *employee* may be held liable for any tortious act alleged in the Amended Complaint, Plaintiffs' claim against their *employers* for negligent supervision should be dismissed. *See Guthrie*, 152 N.C. App. at 26, 567 S.E.2d at 411 (holding that "where there is no liability on the part of [an employee], plaintiff's claims against [an employer] asserting … negligent retention of [employee] may not be [maintained]") (internal quotation marks and citation omitted).

Even if a Duke University Police Department employee had committed a tortious act, Count 38 should still be dismissed as to the individual "Duke Police Supervising Defendants" (which as noted includes Best, Brodhead, Cooper, Dawkins, Dean, Fleming, Garber, Graves, Humphries, Schwab, and Trask). These individuals cannot, as a matter

of law, be liable for negligent supervision because none of them is the "employer"; only the employer can be liable for negligent supervision, not individual defendants. *See Smith*, 128 N.C. App. at 494, 495 S.E.2d at 398 (negligent supervision is based on "the *employer's* liability to third parties" (emphasis added) (citation omitted)); *Cox v. Indian Head Indus., Inc.*, 123 F. Supp. 2d 892, 914 (W.D.N.C. 2000) (negligent supervision claim sustainable only against corporate defendant as employer; individual defendants and supervisory employees were not the employer and could not be liable for negligent supervision); (*see also* AC ¶ 10 (describing Duke University as the employer).)

### 5. Count 39: "Negligent Infliction Of Emotional Distress (Duke Police)"

In Count 39, Plaintiffs allege that Duke University and various Duke Police Defendants[11] negligently inflicted emotional distress on them by "manufacturing false and misleading witness statements" and concealing exculpatory information "for the purpose of obtaining Plaintiffs' convictions" for crimes these Defendants "knew never

---

[11] This Count is also brought against several individuals who are not part of the "Duke Police Defendants" group, including Chairman of the Board of Trustees Robert Steel, the Duke University "Crisis Management Team" Defendants, Richard Brodhead, Tallman Trask, Kemel Dawkins, and Aaron Graves. Those Defendants join in these arguments. In addition to those arguments, this Count should be dismissed as to these individuals because it contains no factual allegations against any of them, but offers only the conclusory assertion that the individual Duke Police Defendants acted "in concert" with them. (AC ¶ 1367.) *See Tolley v. Kivett*, No. 1:01 CV 410, 2002 WL 31163773, at *2 (M.D.N.C. July 1, 2002) (noting that "where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted") (internal quotation marks and citations omitted).

happened."  (AC ¶ 1367; *see also id.* ¶ 1369.)  This Count fails to state a claim for several reasons.

First, as this Court has held, intentional acts, alleged to be committed negligently, cannot make out a claim for negligent infliction of emotional distress.  *See Sabrowski v. Albani-Bayeux*, No. 02-00728, 2003 WL 23018827, at *5-6 (M.D.N.C. Dec. 19, 2003) (Beaty, J.), *aff'd*, No. 04-1114, 2005 WL 435416 (4th Cir. Feb. 25, 2005); *see also Barbier v. Durham County Bd. of Educ.*, 225 F. Supp. 2d 617, 631 (M.D.N.C. 2002); (Br. for Duke SANE Defs. at 31 (incorporated here by reference).)  And Plaintiffs allege *only* intentional conduct in this Count; Plaintiffs assert "negligence" only in the caption.

Second, even if Plaintiffs had alleged negligent conduct, Plaintiffs cannot allege an essential element of their claim because Defendants owed no duty of care in conducting a criminal investigation, as explained above.  *See supra* pp. 8-10; *see also Guthrie v. Conroy*, 152 N.C. App. 15, 25, 567 S.E.2d 403, 411 (2002) ("Absent a breach of duty of care, plaintiff's suit … for [negligent infliction of emotional distress] cannot be maintained.").

Third, Plaintiffs' claim also fails because they have not alleged another necessary element of their claim—namely, that they suffered *severe* emotional distress as a result of the alleged conduct.  A claim for emotional distress will lie only if the plaintiff has suffered a "*severe and disabling* emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so."  *Waddle v. Sparks*, 331 N.C. 73, 83, 414 S.E.2d 22, 27 (1992); *see Pruett v. Town of Spindale*, 162 F. Supp. 2d 442,

447 (W.D.N.C. 2001) (dismissing complaint for failure to allege severe emotional distress); (Br. for Duke SANE Defs. at 30 (incorporated here by reference).) Although Plaintiffs offer the conclusory assertion that they "suffer from diagnosable emotional and mental conditions" (AC ¶ 1371), the Court should give no weight to legal conclusions cast in the form of factual allegations. *See Young*, 238 F.3d at 577 (stating that, on a motion to dismiss, court should give no weight to "conclusory legal terms"). Plaintiffs have failed to satisfy these pleading requirements, and so this emotional distress claim should be dismissed.

### 6.     Count 40: "Negligent Entrustment (Duke Police)"

In Count 40, Plaintiffs make the novel allegation that Duke University and the Duke Police should be held liable because they "negligently entrusted" the criminal investigation into Mangum's allegations to the Durham Police Department. (AC ¶ 1374.) But as explained above, Duke did not have the power to "entrust" the investigation, negligently or otherwise, to the Durham Police Department. *See supra* pp. 10-13. The Durham Police always had the full and independent authority to conduct the investigation, and there was no authority that needed to be, or indeed could be, "entrusted" to Durham by Duke. *See* N.C. Gen. Stat. § 15A-402(b) and *supra* pp. 10-13.

Moreover, North Carolina courts have never recognized a claim for negligent entrustment based on the "entrustment" of an intangible "responsibility," such as a criminal investigation. In all reported North Carolina cases, the courts have recognized such a cause of action for the entrustment of a *tangible chattel* only—specifically, either

- 20 -

an automobile or firearm.  *See Meachum v. Faw*, 112 N.C. App. 489, 493-494, 436 S.E.2d 141, 144 (1993); *see also* Restatement (Second) of Torts § 390 (1965).[12] Plaintiffs' attempt to base their claim on the "entrustment" of a criminal investigation stretches the elements of this cause of action beyond recognition.

Finally, the public duty doctrine bars Count 40 just as it bars Plaintiffs' other claims of negligent police investigation.  Plaintiffs' negligent entrustment claim is necessarily premised on the notion that the Duke University Police Department had the primary investigative responsibility in this case, and that it negligently handed off that responsibility to the Durham Police.  (AC ¶¶ 94-106, 1374.)  But even if that premise

---

[12] In the overwhelming majority of North Carolina cases involving a claim for negligent entrustment, the entrusted object was a motor vehicle.  *See, e.g.*, *Hill ex rel. Hill v. West*, 177 N.C. App. 132, 627 S.E.2d 662 (2006); *Builders Mut. Ins. Co. v. North Main Constr., Ltd.*, 176 N.C. App. 83, 625 S.E.2d 622, *aff'd*, 361 N.C. 85, 637 S.E.2d 528 (2006); *Campbell v. McIlwain*, 163 N.C. App. 553, 593 S.E.2d 799 (2004); *Thompson v. Three Guys Furniture Co.*, 122 N.C. App. 340, 469 S.E.2d 583 (1996); *Anderson v. Austin*, 115 N.C. App. 134, 443 S.E.2d 737 (1994).  In fact, negligent entrustment cases in this state so ubiquitously involve the entrustment of an automobile that courts describing the elements of the cause of action have assumed that the entrusted object *must* be an automobile.  *See, e.g.*, *Swicegood v. Cooper*, 341 N.C. 178, 180, 469 S.E.2d 206, 207 (1995) ("Negligent entrustment occurs when the owner of an automobile entrusts its operation to a person whom he knows, or by the exercise of due care should have known, to be an incompetent or reckless driver who is likely to cause injury to others in its use." (internal quotation marks omitted)); *see also Colombo v. Flemings*, No. 93-2540, 1994 WL 708486, at *3 (4th Cir. Dec. 14, 1994); *Rosser v. Wal-Mart Stores, Inc.*, 947 F. Supp. 903, 909 (E.D.N.C. 1996) (stating that "the court is not aware of even one case in North Carolina that has discussed the negligent entrustment theory outside the context of the negligent entrustment of an automobile").  To our knowledge, other than motor vehicles, the only type of "entrusted" object that has ever formed the basis for a negligent entrustment claim in North Carolina is a firearm.  *See Thomas v. Poole*, 45 N.C. App. 260, 262 S.E. 854 (1980); *Lane v. Chatham*, 251 N.C. 400, 111 S.E.2d 598 (1959); *Brittingham v. Stadiem*, 151 N.C. 299, 66 S.E. 128 (1909).

were correct (and it is not), the public duty doctrine provides that law enforcement agencies are not liable in negligence to an individual for failing to carry out their duties. *See supra* pp. 8-10; *see also Jackson v. City of Wentzville*, 844 S.W.2d 585, 588-589 (Mo. Ct. App. 1993) (affirming dismissal of negligent entrustment of an automobile claim against a police officer because claim was barred by the public duty doctrine).

### B. Plaintiffs Fail To State A Claim For Invasion Of Privacy (Count 22)

In Count 22, Plaintiffs allege that the "Duke Police Supervising Defendants," Duke University, and various Duke Defendants intruded upon their seclusion by invading their homes, collecting and disseminating financial and educational records maintained by the University, reviewing their e-mails, and subjecting them to harassment and threats of violence. (AC ¶ 1230.) These allegations fail to state a claim for invasion of privacy against these Defendants because (1) the allegations about conduct of the Duke Defendants do not involve activities for which Plaintiffs had a reasonable expectation of privacy, and (2) other alleged intrusions, by Plaintiffs' own admission, were not committed by the Duke Defendants.[13]

The tort of invasion of privacy by intrusion upon seclusion is defined as "'the intentional intrusion[,] physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns … [where] the intrusion would be highly offensive to a

---

[13] As noted, Plaintiffs include in their "Duke Police Supervising Defendants" group several non-police defendants, including Brodhead, Trask, Graves and Dawkins. *See supra* n.10. In addition, this claim is brought against Chairman Steel, the Duke "Crisis Management Team," and Duke University. All of these Defendants join in these arguments.

reasonable person.'" *Sabrowski*, 2003 WL 23018827, at *10 (quoting *Toomer v. Garrett*, 155 N.C. App. 462, 479, 574 S.E.2d 76, 90 (2002)).  To prove such a claim, a plaintiff must establish three elements:  "first, that the defendant made an actual intrusion; second, that the intrusion … [is] offensive or objectionable to a reasonable person; and, third, that the intrusion be upon the plaintiff's privacy or seclusion, *i.e.*, something intended and entitled to be private."  *Binkley v. Loughran*, 714 F. Supp. 776, 780 (M.D.N.C. 1989). None of Plaintiffs' alleged intrusions satisfies this standard.

First, many of the allegations involve activities for which Plaintiffs had no reasonable expectation of privacy.  For example, Plaintiffs contend that the Duke Police invaded their privacy by collecting their photographs and electronic data from Duke-issued student identification cards (Duke Cards or "key cards").[14]  The photographs and key card data cannot form the basis of an invasion of privacy claim, however, because they reflect information that is publicly observable.  *See Broughton v. McClatchy Newspapers, Inc.*, 161 N.C. App. 20, 30, 588 S.E.2d 20, 28 (2003) (rejecting claim for invasion of privacy by intrusion where information at issue was public).  The photographs are reproductions of Plaintiffs' actual likeness, and the key card data (as

---

[14] (AC ¶¶ 352-353, 360 (alleging that Duke Police provided Durham Police with photographs of the lacrosse players), 853-862 (alleging that Duke Police provided Durham Police with data showing transactions Plaintiffs made over two-day period using their Duke-issued key cards).)

Plaintiffs acknowledge) reflected their publicly-observable movements on campus.[15]

The Supreme Court has held that individuals have no expectation of privacy in their

publicly-observable comings and goings, *see United States v. Knotts*, 460 U.S. 276, 281-

282 (1983), and courts interpreting North Carolina law have reached the same conclusion

with respect to otherwise public information, *see, e.g.*, *Burgess v. Busby*, 142 N.C. App.

393, 405-406, 544 S.E.2d 4, 10-11 (2001) (dismissing privacy cause of action and noting

that "Defendant did not have to intentionally intrude upon the private records of plaintiffs

to obtain the published information …. [since the information was] part of the public

record and therefore there is no expectation of privacy").

To the extent Plaintiffs allege that Duke Police Defendants improperly viewed and

disclosed key card data about financial transactions or e-mail messages that they sent to

others, that allegation also fails to state a claim, because Plaintiffs had no legitimate

expectation of privacy in that information.  As the Supreme Court has made clear, a

person has no legitimate expectation of privacy in information that he shares with others,

such as the details of commercial transactions.  *See, e.g., Smith v. Maryland*, 442 U.S.

735, 743-744 (1979); *United States v. Miller*, 425 U.S. 435, 442-444 (1976).  Similarly,

"[t]he sender of an email loses his own legitimate expectation of privacy in the email

---

[15] (AC ¶¶ 853 (alleging that the Duke Defendants provided the key card data to the
Durham Police, in part, "to establish the whereabouts of lacrosse team members at the
relevant time"), 857 (alleging that Durham Police needed the key card data to ensure that
Mangum did not identify a player who was not present at the party, *i.e.*, to track the
lacrosse players' public movements), 859 (alleging that Gottlieb and Nifong believed the
key card data was necessary to avoid indicting someone who could prove he was
elsewhere at the relevant time, *i.e.*, to establish the whereabouts of a suspect).)

once it reaches the recipient's account." *Culbreth v. Ingram*, 389 F. Supp. 2d 668, 676

(E.D.N.C. 2005); *see United States v. Lifshitz*, 369 F.3d 173, 190 (2d Cir. 2004); *Guest v.*

*Leis*, 255 F.3d 325, 333 (6th Cir. 2001).[16]

Second, Plaintiffs cannot claim invasion of privacy where the allegedly invaded

space is not their own. Plaintiffs claim an invasion of "their homes and other private

spaces" (AC ¶ 1230), but beyond the suggestion that Sgt. Smith stood outside as the

Durham Police searched McFadyen's dormitory room, the allegations against the Duke

Defendants and others allege intrusions into the homes and allegedly private space of

individuals *other than* Plaintiffs.[17] On these facts, Plaintiffs cannot maintain an action for

---

[16] Although the basis of Plaintiffs' e-mail claim is unclear, it appears that it turns on Ryan McFadyen's e-mail message, obtained by the Durham Police, about killing and skinning strippers. (*See, e.g.*, AC ¶ 694.) Plaintiffs concede that the intended recipients received McFadyen's e-mail message (*id.* ¶¶ 594-595, 598, 603) and so McFadyen could not have had any expectation of privacy in it. Furthermore, although Plaintiffs assert that the Duke Defendants invaded their privacy by opening their electronic mail accounts (*see id.* ¶ 1230), the only factual allegation asserts merely that "Gottlieb obtained an email written by Ryan McFadyen" for the purposes of "plac[ing] Ryan's email in a public document." (*Id.* ¶ 594-595.) There is no allegation in the complaint that the Duke Defendants had any hand in this alleged intrusion.

[17] (*See, e.g.*, AC ¶¶ 116-128 (describing searches of "Duke students' homes," but not alleging that Plaintiffs' homes were searched), 149-150 (alleging that the Duke Card Office provided Gottlieb with key card data and photographs of students other than Plaintiffs), 153-154 (describing the Durham Police's raid of a house at 203 Watts Street, but not suggesting that Plaintiffs resided at the home or were even involved in the incident), 165-168 (describing Durham Police's access to the house at 610 N. Buchanan, but not suggesting that Plaintiffs lived there or were even present at the time of the described events), 361 (alleging that Duke "gave the keys to the home at 610 N. Buchanan Blvd. to the Durham investigators," but with no suggestion that Plaintiffs lived there), 544-551 (describing protests that allegedly occurred at 610 N. Buchanan, "the home of three of the lacrosse team captains," and not Plaintiffs), 560 (describing protesters' taunts directed at "the residents of the home," but never suggesting that

invasion of privacy.  *See In re Guess*, 327 N.C. 46, 57, 393 S.E.2d 833, 839-840 (1990)

(noting that doctor did not have standing to raise the privacy interests of his patients).

Third, Plaintiffs allege that the Duke Defendants subjected them to public

harassment and threats, but such conduct (even if true) does not constitute actionable

intrusion upon seclusion.  Plaintiffs assert that they were subjected to threats of violence

"on campus" and in other public locations (although Plaintiffs do not even allege that

they were present when these alleged events took place).  (*See, e.g.*, AC ¶¶ 544-551.)

These allegations cannot form the basis of an action for intrusion upon seclusion, because

such an action will lie only where the defendant "has intruded into a private place, or has

otherwise invaded a private seclusion that the plaintiff has thrown about his person or

affairs."  Restatement (Second) of Torts § 652B, cmt. C (1977).  Neither the Duke

campus nor any of the other locations referred to by Plaintiffs is a "private place" where

Plaintiffs can be said to have secluded themselves.  Further, to establish intrusion upon

seclusion, "there must be something in the nature of prying or intrusion, and … mere

noises which disturb … or bad manners, harsh names, and insulting gestures in public,

are not enough."  W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 117,

at 855 (5th ed. 1984).  Yet nowhere in the Amended Complaint do Plaintiffs identify any

*specific* physical invasion of their homes or other intrusion into their private space by any

---

Plaintiffs were those residents), 562 (describing vandalism at "three of the Captains'
home," not Plaintiffs' home), 822 (describing Durham Police's alleged access to
dormitory room belonging to an individual other than Plaintiffs).)

Duke Defendant. While the conduct of which Plaintiffs complain (if true) may be disturbing to them, it does not establish the tort of invasion of privacy.

Fourth, many of Plaintiffs' allegations describe actions undertaken by non-Duke parties and therefore cannot form the basis of a claim against the Duke Defendants. Plaintiffs allege an invasion of their "homes and other private places" (AC ¶ 1230), but, as they concede, the Duke Defendants did not actually intrude upon any of the private spaces identified in the Amended Complaint.[18] At most, Plaintiffs allege that, on "April 13th, Duke Police Officers assisted Himan and Gottlieb in gaining access to locked dorms where most of the sophomore team members lived" (*id.* ¶ 820), and that Duke Police Officer Gary Smith "escorted Himan and Gottlieb into McFadyen's dorm and stood-by the room throughout the search" (*id*. ¶ 614 (describing search of McFadyen's dorm room by Gottlieb and Himan, but not any Duke Defendant).) Importantly, Plaintiffs do not allege that *any* Duke employee entered McFadyen's dormitory room. On the contrary, they readily concede that Smith "stood *outside* the door of McFadyen's dorm room throughout the entire search and took no affirmative acts to intervene." (*Id.* ¶ 922 (emphasis added).) On these facts, where no Duke employee entered into

_____

[18] (*See, e.g.*, AC ¶¶ 165-168 (describing access by Durham Police, but not any Duke Defendant, to the house at 610 Buchanan, where none of Plaintiffs resided), 821 (alleging that Gottlieb and Himan, but not any Duke Defendant, "cornered team members in their dorms"), 822 (alleging that Gottlieb and Himan, but not any Duke Defendant, "cornered" a lacrosse player who is not a party to this lawsuit "and coaxed him into his room"), 823 (alleging that Duke Police "left" Gottlieb and Himan at one of the dorms), 825 (acknowledging that Duke did not even know who the Durham Police interviewed while they were at the dorms).)

Plaintiffs' allegedly private space, there can be no claim that the Duke Defendants intruded upon the seclusion of Plaintiffs. *See Sabrowski*, 2003 WL 23018827, at *12 ("As the name of the claim suggests, the tort of intrusion protects one against wrongful *intrusions* into his or her private affairs."); *see also Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 718 (4th Cir. 1991) (noting that "[t]he intrusion prong of invasion of privacy requires a positive act by a defendant … that encroaches on a plaintiff's seclusion"); *Bradley v. Ramsey*, 329 F. Supp. 2d 617, 628 (W.D.N.C. 2004) (dismissing action against defendants who were in receipt of private information but had not themselves "intrude[d] into Plaintiff's affairs to obtain the information").

But even if Plaintiffs had alleged that a Duke Defendant had entered a dormitory room, they would still fail to state a claim for intrusion. As Plaintiffs admit, the entry into McFadyen's dorm room was pursuant to a court-issued search warrant. (*See* AC ¶¶ 596, 611.) "[A]n officer with a search warrant can enter any house, any room, any building, any office." *Warden v. Hayden*, 387 U.S. 294, 321 (1967). Nor do Plaintiffs allege that anyone forced their way into their dormitory rooms or entered in the face of objection, as would be required for a physical intrusion upon seclusion. *See* Restatement (Second) of Torts § 652B, cmt. B. Finally, Plaintiffs have not suggested that any of their private affairs or concerns were intruded upon in the course of the alleged room search; and the mere asking of questions does not amount to an intrusion upon seclusion absent a showing that a questioner obtained any information about the plaintiff's private affairs. *See Keyzer v. Amerlink, Ltd.*, 173 N.C. App. 284, 289, 618 S.E.2d 768, 772 (2005);

*Jennings v. Univ. of N.C.*, 444 F.3d 255, 281-282 (4th Cir. 2006), *overruled on other grounds*, 482 F.3d 686, 702 (4th Cir. 2007); *cf. Sabrowski*, 2003 WL 23018827, at *12-13 (concluding that merely asking employee certain medical questions was not "highly offensive because it may, in fact, be necessary to ensure a safe workplace").

### C.     Plaintiffs Fail To State A Claim For Fraud (Count 24)

In Count 24, Plaintiffs allege that several Duke Police officials (Smith, Dean, and Graves), Duke University, and Matthew Drummond ("Head of the University's Duke Card Office" (AC ¶ 33)), committed fraud by failing to advise them, when Duke received a subpoena from Nifong for data regarding Plaintiffs' Duke Card transactions, that the data had already been provided to the Durham Police.[19]  (*Id.* ¶¶ 1250-1252.)  For several reasons, this claim should be dismissed.

First, Plaintiffs have failed to plead their claim against Defendants Dean, Smith, and Graves with the particularity required by Federal Rule of Civil Procedure 9(b).  Where, as here, there are multiple defendants to a fraud claim, a plaintiff must state "all claims with particularity as to each of the defendants" and "identif[y] each individual defendant's participation." *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250-251 (D. Md. 2000).  Although Plaintiffs allege that Dean, Graves, and Smith participated in "delivering" Plaintiffs' Duke Card records to Durham Police (AC ¶ 1257), they make no

---

[19] As noted, Plaintiffs characterize Graves as a "Duke Police Supervising Defendant" (AC ¶ 44.)  Defendants Graves, Drummond, and Duke University join in these arguments.

allegations that Dean, Graves, or Smith deceived them in any way or were involved in any of the actions giving rise to the alleged fraud.  (*See id.* ¶¶ 1250-1256.)

The claim should also be dismissed as to Defendants Drummond and Duke because Plaintiffs have not adequately pleaded a fraud.  Under North Carolina law, the elements of actual fraud are "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party."  *Forbis v. Neal*, 361 N.C. 519, 526-527, 649 S.E.2d 382, 387 (2007) (citation omitted).  Here, Plaintiffs have alleged that Drummond and Duke "did not advise the Plaintiffs that, in fact, the University had produced and delivered the same [financial and/or educational] records to Gottlieb, Himan and Nifong on March 31, 2006."  (AC ¶ 1252.)  This assertion is solely an allegation of omission, not an allegation of false representation or concealment.[20]  Indeed, nothing in the letter misrepresented or concealed any previous actions undertaken by

---

[20] In some cases, the North Carolina courts have found that material omissions can give rise to fraud claims.  When a plaintiff alleges fraud by omission, the plaintiff must plead seven discrete elements, as articulated in *Breeden v. Richmond Community College*, 171 F.R.D. 189 (M.D.N.C. 1997).  These seven requirements are: "(1) the relationship [between plaintiff and defendant] giving rise to the duty to speak, (2) the event or events triggering the duty to speak and/or the general time period over which the relationship arose and the fraudulent conduct occurred, (3) the general content of the information that was withheld and the reason for its materiality, (4) the identity of those under a duty who failed to make such disclosures, (5) what [the defendant] gained by withholding information, (6) why plaintiff's reliance on the omission was both reasonable and detrimental, and (7) the damages proximately flowing from such reliance."  *Id.* at 195.  Plaintiffs have failed to allege that Duke had an affirmative duty to relay information to the plaintiffs or what the Defendants gained by withholding the information.

Duke; rather, the letter accurately conveyed that a subpoena was pending which required production of Plaintiffs' Duke Card records.

### D. Plaintiffs Fail To State A Claim Under 42 U.S.C. § 1983 (Count 11)

Plaintiffs have asserted numerous constitutional claims against various Duke defendants under 42 U.S.C. § 1983 (Counts 1-3, 5-15). This brief addresses the § 1983 claim most relevant to the Duke Police Defendants, Count 11, which alleges that Duke University and the Duke Police Defendants failed to prevent deprivations of Plaintiffs' constitutional rights. (AC ¶ 1010.)

As explained more fully in the Brief for the Duke University Defendants (Br. for Duke Univ. Defs. at 8-15), Plaintiffs' § 1983 claims all fail because Plaintiffs have failed adequately to allege the two essential elements of any § 1983 claim: state action, and the deprivation of a constitutional right. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).[21] Because none of these Plaintiffs was deprived of their constitutional rights, no Duke defendant can be held liable under § 1983 for failure to prevent such a deprivation.

---

[21] With respect to the state action requirement, as explained in the Brief for Duke University Defendants (Br. for Duke Univ. Defs. at 8-12) and incorporated here by reference, Plaintiffs' bare assertions that Duke Defendants conspired with Durham defendants (state actors) are insufficient to demonstrate that these Duke Defendants are state actors. *See Twombly*, 127 S. Ct. at 1966. Instead, Plaintiffs must include "enough factual matter" to "plausibly suggest[]" a meeting of the minds to deprive Plaintiffs of their constitutional rights. *See id.* at 1955, 1965-1966. Plaintiffs do not allege any such facts with respect to the Duke Police Defendants and therefore have not sufficiently alleged a conspiracy with Durham or state action on that basis. (*See* Br. for Duke Univ. Defs. at 8-12 & n.5.)

*See, e.g.*, *McFadden v. Kennington*, No. 05-0284, 2008 WL 163058, at *5 (D.S.C. Jan. 15, 2008); *Willis v. Oakes*, 493 F. Supp. 2d 776, 784 (W.D. Va. 2007).

But even if Plaintiffs could surmount those difficulties, they have nonetheless failed to state a claim under § 1983 on a bystander liability theory. To state a claim for bystander liability under § 1983, the plaintiff must establish that the police officer: (1) knew "that a fellow officer [was] violating an individual's constitutional rights"; (2) had "a reasonable opportunity to prevent the harm"; and (3) "[chose] not to act." *Randall v. Prince George's County, Md.*, 302 F.3d 188, 204 (4th Cir. 2002). Here, Plaintiffs do not allege facts that would satisfy these elements.

In Count 11, Plaintiffs allege that unspecified Duke Police officers had an opportunity to prevent violations of Plaintiffs' constitutional rights but instead "'turned a blind eye' . . . and did nothing." (AC ¶ 1011.) They further allege that Duke University officials directed these officers to "'turn a blind eye'" when Plaintiffs' constitutional rights were being violated. (*See id*. ¶ 1015.)[22] But nowhere do Plaintiffs explain how (or even plead that) any Duke Defendant had any reasonable opportunity or realistic authority to prevent such deprivations—an essential showing for bystander liability under

_____

[22] In addition to the Duke Police Defendants, this Count is also brought against Chairman Steel, President Brodhead, Tallman Trask, Kemel Dawkins, the "Crisis Management Team" Defendants, and Duke University, who join in these arguments. Plaintiffs allege that Duke University had an established policy or custom *not* to prevent violations of their constitutional rights. (AC ¶ 1032, *see also id*. ¶¶ 1014-1017.) These allegations should be dismissed because they are duplicative of those stated in Count 12 (*Monell* Liability) and because they fail on the merits. (*See* Br. for Duke Univ. Defs. at 26-31 (discussing Plaintiffs' failure to state a claim in Count 12 under the principles of *Monell v. Department of Social Services,* 436 U.S. 658 (1978), incorporated here by reference).)

§ 1983. *See Blair v. County of Davidson*, No. 1:05CV00011, 2006 WL 1367420, at *5 (M.D.N.C. May 10, 2006) (Beaty, J.) (dismissing bystander liability claim because plaintiff failed to allege facts establishing that city police officer had any authority or opportunity to prevent county detention officer from using excessive force); *see also Randall*, 302 F.3d at 204 (considering whether defendants had a "realistic opportunity to intervene").[23]

Plaintiffs' only specific allegation of a "failure to intervene" is their assertion that Duke Police Sgt. Gary Smith "stood-by" Plaintiff McFadyen's dorm room as it was being searched, and that Smith "'turned a blind eye' to the violations of McFadyen's constitutional rights occurring in Smith's presence." (AC ¶¶ 614-615.) But Plaintiffs allege no facts that would suggest that Sgt. Smith "knew" that the judicially authorized and sealed warrant (AC ¶ 611) was somehow lacking in probable cause. Nor do Plaintiffs allege any facts to suggest that Sgt. Smith had a reasonable opportunity or realistic authority to intervene to prevent the Durham Police officers from executing this facially-valid warrant that had been issued by a neutral magistrate. Indeed, on the facts alleged it would be entirely unrealistic to require a University police officer to intervene

---

[23] Indeed, Plaintiffs nowhere identify which constitutional deprivations the Duke Police defendants supposedly failed to prevent (with one exception discussed below). Nor do Plaintiffs allege facts that would indicate which officers failed to prevent these constitutional violations—or, for that matter, how they reasonably could have prevented them. Instead, Plaintiffs simply assert that Defendants collectively "turned a blind eye" to (unnamed) constitutional violations. (*See*, *e.g.*, AC ¶¶ 4, 86, 458, 465, 1011.) These critical omissions in the Amended Complaint provide adequate grounds for dismissal. *See Young v. City of Mount Rainier*, 238 F.3d 567, 577 (4th Cir. 2001).

to prevent the Durham Police from conducting a facially-appropriate search as part of a criminal investigation involving a University student. Because none of the Duke Police Defendants had "a reasonable opportunity to prevent" the constitutional deprivations alleged in this Amended Complaint, Count 11 should be dismissed. *Randall*, 302 F.3d at 204.

## VI.  CONCLUSION

The Amended Complaint against the Duke Police Defendants should be dismissed in its entirety for failure to state a claim on which relief may be granted.


/s/ Jamie S. Gorelick
_____
Jamie S. Gorelick
District of Columbia Bar No. 101370
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Ave., N.W.
Washington, D.C. 20006
Telephone: (202) 663-6500
Facsimile: (202) 663-6363
Email: jamie.gorelick@wilmerhale.com

/s/ J. Donald Cowan, Jr.
_____
J. Donald Cowan, Jr.
N.C. State Bar No. 0968
Smith Moore LLP
P.O. Box 21927 [27420]
300 N. Greene Street, Suite 1400
Greensboro, N.C. 27401
Telephone: (336) 378-5329
Facsimile: (336) 378-5400
Email: don.cowan@smithmoorelaw.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 2, 2008, I electronically filed the foregoing Brief in Support of "Duke Police Defendants'" Motion to Dismiss Amended Complaint with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> *Counsel for the Plaintiffs*
> Robert C. Ekstrand
> Email:  rce@ninthstreetlaw.com
>
> *Counsel for City of Durham and Edward Sarvis*
> Reginald B. Gillespie, Jr.
> Email:  rgillespie@faison-gillespie.com
>
> *Counsel for Patrick Baker, Steven Chalmers, Ronald Hodge, Lee Russ, Stephen Mihaich, Beverly Council, Jeff Lamb, Michael Ripberger, and Laird Evans*
>
> Patricia P. Kerner
> Email:  tricia.kerner@troutmansanders.com
>
> D. Martin Warf
> Email:  martin.warf@troutmansanders.com
>
> Hannah Gray Styron
> Email:  hannah.styron@troutmansanders.com
>
> *Counsel for James T Soukup, Kammie Michael, David Addison, Richard D. Clayton*
> James B. Maxwell
> Email:  jmaxwell@mfbpa.com
>
> *Counsel for Brian Meehan*
> James Avery Roberts, III
> Email:  jimroberts@lewis-roberts.com

*Counsel for Mark Gottlieb*
    Edwin M. Speas, Jr.
    Email:  espeas@poynerspruill.com

    Eric P. Stevens
    Email:  estevens@poyners.com

*Counsel for Benjamin Himan*
    Henry W. Sappenfield
    Email:  hsappenfield@kennoncraver.com

    Joel Miller Craig
    Email:  jcraig@kennoncraver.com

*Counsel for DNA Security, Inc., Richard Clark*
    Kearns Davis
    Email:  kdavis@brookspierce.com

    Robert James King, III
    Email:  rking@brookspierce.com

*Counsel for J. Wesley Covington*
    Kenneth Kyre, Jr.
    Email:  kkyre@pckb-law.com

As of the date of this filing, no attorneys have made an appearance on behalf of the following Defendants.  I hereby certify that I served the following Defendants by U.S. Mail:

    Linwood Wilson
    6910 Innesbrook Way
    Bahama, NC 27503-9700

This 2d day of July 2008.

/s/ Jamie S. Gorelick
Jamie S. Gorelick

Attorney for Duke University Police
Department, Jeffrey O. Best, Phyllis Cooper,
Robert Dean, Joseph Fleming, William F.
Garber II, Leila Humphries, James Schwab,
Gary N. Smith, and Greg Stotsenberg