UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

File No. 1:07-CV-00953

RYAN MCFADYEN, MATTHEW WILSON,   )
and BRECK ARCHER,                )
                                 )
          Plaintiffs,            )
                                 )
    vs.                          )      **DEFENDANT BENJAMIN W.**
                                 )      **HIMAN'S BRIEF IN SUPPORT**
DUKE UNIVERSITY, DUKE UNIVERSITY )      **OF HIS MOTION TO DISMISS**
POLICE DEPARTMENT, AARON GRAVES, )
ROBERT DEAN, LEILA HUMPHRIES,    )
PHYLLIS COOPER, WILLIAM F. GARBER,)
II, JAMES SCHWAB, JOSEPH FLEMING,)
JEFFREY O. BEST, GARY N. SMITH, GREG )
STOTSENBERG, ROBERT K. STEEL,    )
RICHARD H. BROADHEAD, Ph.D., JOHN )
BURNESS, LARRY MONETA, Ed.D.,    )
VICTOR J. DZAU, M.D., ALLISON    )
HALTON, KEMEL DAWKINS, SUZZANE   )
WASIOLEK, STEPHEN BRYAN, MATTHEW )
DRUMMOND, DUKE UNIVERSITY        )
HEALTH SYSTEMS, INC., PRIVATE    )
DIAGNOSTIC CLINIC, PLLC, JULIE   )
MANLY, M.D., THERESA ARICO, R.N. )
TARA LEVICY, R.N., THE CITY OF   )
DURHAM, NORTH CAROLINA, MICHAEL  )
B. NIFONG, PATRICK BAKER, STEVEN )
CHALMERS, RONALD HODGE, LEE RUSS,)
STEPHEN MIHAICH, BEVERLY COUNCIL,)
EDWARD SARVIS, JEFF LAMB, MICHAEL )
RIPBERGER, LAIRD EVANS, JAMES T. )
SOUKUP, KAMMIE MICHAEL, DAVID W. )
ADDISON, MARK D. GOTTLIEB,       )
BENJAMIN W. HIMAN, LINWOOD       )
WILSON, RICHARD D. CLAYTON,      )
DNA SECURITY, INC., RICHARD CLARK,)

Dockets.Justia.com

and BRIAN MEEHAN, Ph.D.,                    )
                                            )
              Defendants.                   )
_____

NOW COMES Defendant Benjamin W. Himan ("Investigator Himan"), by and through his undersigned attorneys, and submits the following Brief in support of his motion to dismiss this action pursuant to 12(b)(6) of the Rules of Civil Procedure.

## MATTER BEFORE THE COURT

The matter before the Court is Defendant Investigator Benjamin Himan's motion to dismiss Plaintiffs' claims against him, set out in Counts One, Two, Three, Four, Six, Seven, Nine, Ten, Sixteen, Seventeen, Eighteen, Nineteen, Twenty, Twenty-Three, Twenty-Five and Twenty-Seven in their Amended Complaint for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).

## STATEMENT OF THE CASE

Plaintiffs Ryan McFadyen, Matthew Wilson and Breck Archer filed this action on December 18, 2007.  On March 3, 2008, the parties filed a Joint Motion to Extend Page Limitations and Establish a Rule 12 Briefing Schedule.  Judge Beaty allowed this motion on March 25, 2008.  Under the terms of the Order, Defendants had until April 25, 2008 to file briefs in support of their motions to dismiss.  One week before the April 25th deadline, Plaintiffs filed an Amended Complaint which was fifty pages longer and contained five more causes of action.  Included in these claims are alleged violations of

42 U.S.C. §§ 1983, 1985 (2007) and related violations of state law.  On April 30, 2008, Judge Beaty approved the parties Joint Motion to Reestablish Deadlines, requiring all answers or motions to dismiss to be filed by July 2, 2008.  This Motion to Dismiss has been filed pursuant to Judge Beaty's April 30th Order.

## STATEMENT OF FACTS

Plaintiffs' Amended Complaint numbers over four hundred and twenty-five pages and contains over one thousand three hundred paragraphs of allegations.  Although Investigator Himan strongly disagrees with Plaintiffs' sometimes hyperbolic characterizations of the stated events, Fed. R. Civ. P. 12(b)(6) requires that these allegations be taken as true for the limited purpose of arguing that they should be dismissed as a matter of law.  The relevant allegations of the Amended Complaint are set out below.

Three members of the 2005-2006 Duke lacrosse team were falsely accused of rape by Crystal Mangum after she and another woman had performed as exotic dancers at a party attended by members of the team.  Amended Compl. ¶¶ 193-94, 251, 268, 272. Plaintiffs allege that, as members of that team, they were subjected to a vast conspiracy to harm their reputations and deprive them of their constitutional rights.  Amended Compl. ¶¶ 1, 2.  According to Plaintiffs, this conspiracy encompassed not only the fifty-two listed defendants, but others not listed in the Amended Complaint.  It supposedly included employees of Duke University, the Duke University Health System, the Duke Campus

KCBC:242154

Police, the City of Durham, the Durham Police Department and private companies. Amended Compl. ¶¶ 1-5.

Plaintiffs were never arrested, indicted or tried. Plaintiffs were never specifically identified by the Durham police as the supposed or suspected perpetrators of the alleged crime. They have not spent one day in jail, nor have they been forced to appear in court. Plaintiffs now seek to recover damages against Investigator Himan based upon the fact that their potential involvement in the alleged crime on March 16, 2003 was investigated as part of the Durham Police's inquiry into Crystal Mangum's claims. Amended Compl. ¶¶ 1-5.

The Amended Complaint alleges that Investigator Himan's participation in the investigation of Mangum's charges consisted of the following acts:

### *Initial Investigation*

In the early morning of March 16, 2006, Sergeant Mark Gottlieb assigned Investigator Himan to assist him in his investigation into Mangum's claims. Amended Compl. ¶ 346. Investigator Himan and Sergeant Gottlieb then interviewed Mangum, who provided them with the first names and a physical description of each of the three alleged assailants. Amended Compl. ¶ 362.

Mangum had initially claimed she had been raped during her intake interview at Durham ACCESS, a local outpatient mental health clinic, in the early morning hours of March 14, 2006. Amended Compl. ¶¶ 247-53. Based on her rape allegation, Mangum

was moved to Duke Medical Center for a rape examination, which found evidence of "diffuse edema of the vaginal walls", a symptom consistent with a number of potential causes. Amended Compl. ¶ 306.

Investigator Himan interviewed Mangum again on March 21, 2006 at Durham Police Department District 2 Headquarters. Amended Compl. ¶ 376. During this interview Investigator Himan attempted to get a better description of her alleged assailants. Amended Compl. ¶ 376.

### Interview of Kimberly Pittman

On May 20, 2006, Investigator Himan contacted Kimberly Pittman by telephone. Amended Compl. ¶ 385. Pittman was the exotic dancer who had performed at 610 N. Buchanan with Crystal Mangum on the night in question. Amended Compl. ¶¶ 194-203. During that conversation, Pittman disputed that any assault had occurred. Amended Compl. ¶ 385.

Two days later, Pittman met with Investigator Himan in person, at the District 2 Headquarters of the Durham Police. Amended Compl. ¶ 385. At that meeting Investigator Himan served an outstanding warrant on her for parole violations. Amended Compl. ¶¶ 385-86. Pittman also made a formal written statement in which she recanted her initial statement that no assault had occurred. Amended Compl. ¶¶ 385-86. Plaintiffs allege that these statements were "transparently fabricated or coached to create a window of opportunity for a sexual assault to have occurred." Amended Compl. ¶ 386.

KCBC:242154

### The Non-Testimonial Identification Procedure

On or about March 23, 2006, Investigator Himan and Sergeant Gottlieb filed for and received a Nontestimonial Identification Order (õNTID Orderö), directing all white members of the Duke lacrosse team to provide DNA samples, submit to physical examinations and allow themselves to be photographed.  Amended Compl. ¶¶ 414, 762, 944.  In their Application for the NTID Order, Investigator Himan and Sergeant Gottlieb included information they had identified and collected to that point in the investigation. Compl. ¶¶ 415, 418.

Plaintiffs generally assert that Investigator Himan õleakedö the NTID Order and Affidavit in support of application, but provide no indication as to when and how this was supposedly done.  Amended Compl. ¶¶ 414, 931.

### DNA Testing

On March 28, 2006, Investigator Himan was contacted by Special Bureau of Investigation Lab Analyst Rachel Winn, who informed him that their testing of Mangumøs rape kit and clothing from March 16, 2006 did not turn up any samples of semen, saliva or blood.  Amended Compl. ¶ 565.  Investigator Himan relayed the results of the SBIøs investigation to District Attorney Nifong and up his chain of command in the Durham Police Department that same day.  Amended Compl. ¶ 623.  According to Plaintiffsø Amended Complaint, District Attorney Nifong instructed Investigator Himan to have another forensic investigator, CSI Agent Ashby, send swabs of a four-foot area of

-6-

the bathroom floor and a towel that had been collected in the earlier search of 610 N. Buchanan. Amended Compl. ¶ 622.

According to Plaintiffs' Amended Complaint, "[o]n April 4, 2006, the SBI reported . . . the results of all of the testing they would do in the case." Amended Compl. ¶ 655. Soon thereafter District Attorney Nifong "instructed [Sergeant] Gottlieb and [Investigator] Himan to get quotes on additional DNA testing of the rape kit items, and possible DNA analysis of any genetic material found." Amended Compl. ¶ 655.

### The April 4th Identification Procedure

According to Plaintiffs' Amended Complaint, District Attorney Nifong met with Sergeant Gottlieb and Investigator Himan on or about March 31, 2006 to "explain" a new identification procedure and "direct them to do it." Amended Compl. ¶¶ 662-663. Plaintiffs allege that the plan was to "tell Mangum she would see pictures of people they believe were present at the party, and have her pick three." Amended Compl. ¶ 663. Plaintiffs allege that this procedure differed from established Durham police procedure. Amended Compl. ¶ 668. The photo array was shown to Mangum on April 4, 2006. Amended Compl. ¶ 670. During the array Mangum did not identify any of the Plaintiffs. Amended Compl. ¶ 670-674.

### Investigator Himan's Dealings With Potential Witnesses

Plaintiffs allege that "in early April" 2006, Investigator Himan went to the home of Jason Bissey, who lived in a home neighboring 610 N. Buchanan. Amended Compl.

KCBC:242154

¶¶ 389-90.  The purpose of this visit was to pick up a written statement by Mr. Bissey regarding the timing of events on the night in question.  Amended Compl. ¶ 390. Plaintiffs allege that a more vigorous investigation of the facts underlying Mr. Bissey's statement would have produced additional evidence of their innocence.  Amended Compl. ¶¶ 387, 390.

### Discovery of Ryan McFadyen's March 13, 2006 Email

Plaintiffs claim that Investigator Himan met with District Attorney Michael Nifong on an almost daily basis from April 27 through May 15, 2006.  Amended Compl. ¶ 578.  During these meetings Investigator Himan told District Attorney Nifong "everything he knew, and provided witness statements . . . when he obtained them." Amended Compl. ¶ 578.

At the first meeting on April 27, 2006, District Attorney Nifong instructed Sergeant Gottlieb and Investigator Nifong to obtain emails sent by team members after the March 16th party.  Amended Compl. ¶ 593.  This search resulted in the identification of an email drafted by Plaintiff Ryan McFadyen, the contents of which are not included in Plaintiffs' Amended Complaint.  Amended Compl. ¶¶ 594.  Plaintiffs' original Complaint notes that the email discusses the killing of strippers.  Compl. ¶¶ 508, 512, 582.  Based on this email, District Attorney Nifong instructed Sergeant Gottlieb and Investigator Himan to obtain a search warrant for Plaintiff Ryan McFadyen's dorm room. Amended Compl. ¶ 595.  The "Description of Crimes" section of the search warrant

-8-

application was expanded to include "Conspiracy to Commit Murder" and the text of Plaintiff Ryan McFadyen's email was added as further support for the application. Amended Compl. ¶ 605. Judge Ronald L. Stephens signed the search warrant at 5:00 p.m. the same day and ordered that the warrant be sealed. Amended Compl. ¶ 611.

### Investigator Himan's Dealings With DNA Security, Inc.

On or about April 10th, prior to the indictments of David Evans, Reade Seligman and Collin Finnerty, Investigator Himan, District Attorney Nifong and Sergeant Gottlieb met with representatives of DNA Security, Inc. ("DSI"). Amended Compl. ¶ 749. DSI had been engaged at District Attorney Nifong's direction to perform sensitive DNA testing. Amended Compl. ¶¶ 688-90, 746-47. During the April 10th meeting, Defendant Brian Meehan detailed the results of DSI's testing, which found that none of the Duke lacrosse players were contributors of DNA on the rape kit items taken from Mangum. Amended Compl. ¶ 749.

### Investigator Himan's Dealings With Defense Counsel

Plaintiffs' Amended Complaint alleges that Investigator Himan, along with District Attorney Nifong and Sergeant Gottlieb, failed to provide "a written report of the April 4th Identification Procedure" to defense counsel. Amended Compl. ¶ 680. Plaintiffs' Amended Complaint further alleges that "[Investigator] Himan deliberately and willfully evaded his statutory obligation to advise Plaintiffs' defense counsel that a procedure had . . . been conducted." Amended Compl. ¶ 681. Plaintiffs allege that

-9-

Investigator Himan only responded saying that he had been giving all information he received to District Attorney Nifong and that he could not comment on the investigation. Amended Compl. ¶ 681. According to Plaintiffs, this answer was done "to further a conspiracy to violate" North Carolina state law regarding the disclosure of information obtained through a NTID Order. Amended Compl. ¶ 683.

### Investigator Himan's Dealings With Witnesses

On April 13th, Investigator Himan and Sergeant Gottlieb entered student dormitories and attempted to conduct interviews with Duke lacrosse players regarding the events in question on March 13, 2006. Amended Compl. ¶ 820. Plaintiffs' Amended Complaint alleges that the only question asked during these interviews was "who was (and was not) present at the party." Amended Compl. ¶ 821.

### Allegations Regarding Investigator Himan's Failure to Fully Investigate

Plaintiffs' Amended Complaint asserts that Investigator Himan "was willfully blind and/or callously disregarded their knowledge of Mangum's extraordinary history of making false reports of acts evincing extreme immorality or wickedness." Amended Compl. ¶ 392. This includes allegations regarding Investigator Himan's failure to investigate the "arrest and conviction for felony speeding to elude arrest" of the putative rape victim. Amended Compl. ¶ 393. Plaintiffs allege Investigator Himan improperly refused to investigate supposedly exculpatory evidence, despite the fact that they themselves were never arrested or indicted. Amended Compl. ¶ 401.

KCBC:242154

# QUESTIONS PRESENTED

1.      Have Plaintiffs stated cognizable claims against Investigator Himan under federal and state law?

2.      Can Plaintiffs' claims overcome Investigator Himan's qualified immunity for federal claims and absolute immunity from personal liability for state law claims?

# ARGUMENT

Plaintiffs essentially allege that Defendants, including Investigator Himan, violated their right to be free from criminal investigation. Fourth Circuit law is clear that no such right exists. Nor should it. The facts as alleged in Plaintiffs' Amended Complaint makes clear that Investigator Himan complied with his duties as a law enforcement officer under North Carolina law. Investigator Himan provided District Attorney Nifong with all of the potentially exculpatory evidence he was aware of and provided the necessary information to the Court for a Non-Testimonial Identification Order to be granted. As a result, Plaintiffs' Amended Complaint fails to allege sufficient facts to support allegations of violations of their constitutional rights. Plaintiffs' federal claims therefore fail as a matter of law.

Investigator Himan's performance of his duties as a law enforcement officer also means that his actions are protected by the doctrine of qualified immunity for federal constitutional claims and that he is immune from individual liability for state law claims.

KCBC:242154

*Applicable Legal Standard*

A complaint should be dismissed for failure to state a claim when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991), *cert. denied*, 503 U.S. 936 (1992). To state a viable claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 75 U.S. 4337, 127 S. Ct. 1955, 1974, 167 L. Ed.2d 929 (2007). "[A] plaintiff's obligation to provide the ='grounds' of his ='entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Because the primary objective of Rule 12(b)(6) is to test the legal sufficiency of a plaintiff's claims, a court is not bound by any legal conclusions that are included in the complaint. *Heckman v. University of North Carolina at Chapel Hill*, 19 F. Supp. 2d 468, 471 (M.D.N.C. 1998), *rev. denied*, 166 F.3d 1209 (4th Cir. 1998); *see also Gladden v. Winston Salem State Univ.*, 495 F. Supp. 2d 517, 520-21 (M.D.N.C. 2007) ("The presence [ ] of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the Complaint' cannot support the legal conclusion." (quoting *Young v. City of Mount Rainer*, 238 F.3d 567, 577 (4th Cir. 2001))).

KCBC:242154

*Plaintiffs' Claims Against Investigator Himan*

Plaintiffs' federal claims against Investigator Himan include alleged violations of § 1983, including "abuse of process" (Count 1), conspiracy to violate § 1983 (Count 2), allegedly improper delays in providing the results of investigations to Plaintiffs (Count 3)[1], deprivation of property (Count 4), fabrication of evidence (Count 6), concealment of evidence (Count 7), retaliation and conspiracy to retaliate (Count 9) and "deprivation of the privileges and immunities of North Carolina citizens" (Count 10). Plaintiffs also allege that Investigator Himan conspired to violate their constitutional rights in violation of §§ 1985 and 1983 (Counts 16 & 17).

Plaintiffs' state law claims include obstruction of justice and conspiracy to obstruct justice (Count 18), abuse of process and conspiracy to abuse process (Count 19), intentional infliction of emotional distress (Count 20), aiding and abetting (Count 23), negligence (Count 25) and negligent infliction of emotional distress (Count 27).

## I. PLAINTIFFS' CLAIMS ARISING OUT OF INVESTIGATOR HIMAN'S INVOLVEMENT IN THE APPLICATION FOR A NONTESTIMONIAL ORDER SHOULD BE DISMISSED, AS THE ASSERTED FACTS DO NOT SUPPORT A VALID § 1983 CLAIM

Under North Carolina law, a Nontestimonial Identification Order may be obtained on a showing that a police officer has "reasonable suspicion" or "reasonable grounds" to

---

[1] Counts 1, 2, 3, 10, 20, 23, 25 and 27 are alleged against Investigator Himan in both his individual and official capacities. Amended Compl. ¶¶ 905, 907, 920, 930, 1004, 1215, 1247, 1263, 1265, 1279. Such "official capacity" claims are really claims against Investigator Himan's employer the City of Durham, who Plaintiffs' have sued directly. To the extent Plaintiffs have alleged such claims they are duplicative and should be dismissed. *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004).

KCBC:242154

believe that the subject may be responsible for a crime. *State v. Pearson*, 356 N.C. 22, 566 S.E.2d 50, 54 (2002). The õreasonable grounds standard required for . . . [a Nontestimonial Identification Order] is significantly lowerö than the standard for probable cause. *Id.* This lower standard arises from the underlying purpose of a Nontestimonial Identification Order, as õan investigative tool requiring a lower standard of suspicion that is available for the limited purpose of identifying the perpetrator of a crime.ö *Id.*

The North Carolina Supreme Court has defined the õreasonable groundsö standard as õsimilar to the reasonable suspicion standard applied to brief detentionsö in cases such as *Terry v. Ohio*. *State v. Pearson*, 356 N.C. 22, 28-29, 566 S.E.2d 50, 54 (2002) (*citing Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). õThe sole requirement is a minimal amount of objective justification, something more than an unparticularized suspicion or hunch.ö *Id. (*quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed.2d 1, 10 (1989) (quoting *Terry*, 392 U.S. at 27, 88 S. Ct. 1868, 20 L. Ed.2d at 909)).

The NTID Application here satisfies this reasonable grounds standard. The NTID Application: (1) recounted the details of the complaining witnessø allegation that three white males raped and sexually assaulted her; (2) asserted that a Forensic Sexual Assault Nurse (SANE) and physician examined the accuser after the alleged incident and that medical records and interviews with the SANE nurse õrevealed the victim had signs,

-14-

symptoms, and injuries consistent with being raped and sexually assaulted vaginally and anallyö and ötheinjuries and her behavior were consistent with a traumatic experienceö; and (3) asserted that three residents of the house where the alleged assault was to have occurred stated that only lacrosse team members attended the party and that there were no strangers who appeared at the event. A copy of the NTID Application is attached hereto as Exhibit 1.

An affidavit for a Nontestimonial Identification Order, like an affidavit supporting a search warrant, is entitled to a presumption of validity. *Franks v. Delaware*, 438 U.S. 154, 171, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). The underlying purpose of this presumption is to encourage police officers to seek warrants, so that neutral judicial officers may serve as vital checkpoints between citizens and their government. *See id.* North Carolina Superior Court Judge Ronald L. Stephens served as this checkpoint, recognizing that the reasonable grounds standard was met here and properly issued NTID Orders directing each white member of the Duke lacrosse team to comply with these orders on March 23, 2006.

**A.** **Plaintiffs Fail to Allege Facts Showing That The NTID Application Contained Willfully Fraudulent Statements That Were Necessary To The Judge's Approval of the NTID Application**

To establish a valid § 1983 claim arising out of a warrant issued during a criminal investigation, a plaintiff must show that the officer in question deliberately or with a

KCBC:242154

"reckless disregard for the truth" made material false statements in the affidavit or omitted "material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading." *Miller v. Prince George's County, Maryland*, 475 F.3d 621, 628, (4th Cir. 2007) (quoting *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990) (internal quotation marks omitted). The plaintiff must further show that the judge or magistrate relied on these fraudulent statements or missions when approving the order. *Miller*, 475 F.3d at 628.

Although Plaintiffs contend that the NTID Application included fabricated assertions "that the women were sexually threatened with a broomstick, the accuser lost several fingernails in the violent struggle, and the team members used each other's names [sic] to disguise their ‑true identify‑ and to avoid identification," they do not allege that these assertions were necessary to the finding of reasonable suspicion. Amended Compl. ¶ 418. In fact, Plaintiffs state that these allegations were not needed to establish reasonable suspicion and were instead "designed to ignite public outrage at the Plaintiffs." Amended Compl. ¶ 416. As these statements were not "necessary to the finding of probable cause," they are irrelevant to the question of whether the NTID Application was valid. *See, e.g.*, *Wilkinson*, 2006 U.S. Dist. LEXIS, at * 20 ("even assuming as true that the affidavit [for a search warrant] contains false and fraudulent information, the Court still concludes that the Plaintiffs have failed to meet the two

KCBC:242154

pronged test [for attacking the validity of a search warrant] because Plaintiffs do not allege that such statements were necessary to the finding of probable causeö).

Even if the NTID Application had included a statement that Mangum had not identified Plaintiffs when shown their photos, as Plaintiffs assert was required, they cannot establish that the NTID Application would have therefore been denied for that reason. A law enforcement officer is not required to provide all potentially exculpatory evidence in a warrant application. The warrant affidavit would only be invalid if öits inclusion in the affidavit would defeat probable cause . . .ö *Colkley*, 899 F.2d at 301 (öan omission must do more than potentially affect the probable cause determination: it must be ‑necessary to the finding of probable causeø‑) (quoting *Franks v. Delaware*, 438 U.S. 154, 156, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978)).

Moreover, Mangumøs failure to identify her alleged attackers does not preclude a finding of reasonable suspicion. Plaintiffs allege that Sergeant Mark Gottlieb and Investigator Himan received a CD from the Duke police department bearing photos of Plaintiffs and their lacrosse teammates. Amended Compl. ¶¶ 353, 360. Mangum was shown four arrays based on these photos on March 16, 2006. Amended Compl. ¶¶ 366-371. During that procedure, Mangum örecognizedö only five of the twenty-four players, despite the fact that she had attended the party and performed before most members of the Duke lacrosse team. Amended Compl. ¶¶372, 375. The NTID Application made clear that the photographs were requested to ögive the availability of the suspectøs current

KCBC:242154

hair styles, complection [sic] and body mass for photographic lineups to identify the suspects.ö Exhibit 1. Mangum may have had difficulty identifying the individuals at the party for any number of reasons. At that early stage of investigation, Investigator Himan and the other investigators had reasonable grounds to seek additional identifying information from all of the white lacrosse players.

### B. The NTID Affidavit Provided Reasonable Grounds For The Identification Information Sought

Plaintiffs assert, with the benefit of perfect hindsight, that investigators should have stopped the investigation prior to filing the NTID Application due to inconsistencies and Mangumøs account of the assault and her alleged mental illness. Amended Compl. ¶ 382. However, the Fourth Circuit has never held that investigators are constitutionally required to stop the investigation of an alleged incident once potential problems with the accuserøs allegations come to light. In fact, they have held that investigators must take their witness as they find him or her.

In *Torchinsky v. Siwinski*, the Fourth Circuit considered the validity of an arrest warrant based on the conflicting accounts of events given by the putative victim. 942 F.2d 257, 262 (4th Cir. 1990). The accuser was Bill Bull, who was found battered and bloodied outside of his home and gave conflicting accounts of how he had been injured, including claims that he had been in an auto accident and assaulted in his home by two black males. *Id.* at 259.

-18-

The investigating officer later learned that Bull was bisexual and had been in a relationship with a man known as Stanley. *Torchinsky*, 942 F.2d at 259. The investigating officer suspected that Stanley had been the individual who assaulted Bull. *Id.* Two days later, the investigating officer interviewed Bull, who stated that he had actually been assaulted by Bill Torchinsky. *Id.* at 259-60. Bull repeated his accusation in a subsequent interview in the presence of a nurse. *Id.* Siwinksi then sought and obtained an affidavit for Torchinsky's arrest. *Torchinsky*, 942 F.2d at 260. After the arrest, Bull recanted his allegation and the charges against Torchinsky were dismissed. *Id.* Torchinsky sued the investigating officer under § 1983. *Id.*

The Fourth Circuit affirmed the district court's dismissal of Torchinsky's § 1983 claims. *Torchinsky*, 942 F.2d at 263. Both courts rejected the argument that probable cause was lacking because of inconsistencies in the accuser's statements. *Id.* The Fourth Circuit held in part:

> Under the circumstances, we believe Siwinski acted reasonably in relying on Bull's implication of the Torchinskys. Bull's other explanations of his injures had been given just before and just after he was transported to the hospital at a time when he was still experiencing the shock and trauma of the assault. Siwinski could reasonably believe that Bull's implication of the Torchinskys, given two full days after the attack, was the most credible and reliable account of the events. In addition, an officer could reasonably believe that a victim might be initially reluctant to discuss, or even try to hide, the details of an assault that also involved the intimate details of his somewhat unusual sex life.

KCBC:242154

> . . . Torchinsky's various contentions disregard the realities of police work that must inform qualified immunity analysis. Criminal investigations are often conducted under trying conditions over which officers have limited control. Here, for example, there was only witness to a brutal attack, the victim himself. Ideally, of course, additional witnesses would have been available and the victim would not have been so brutalized. In reality, however, the police were compelled to take the victim as they found him and do the best they could under the circumstances.

*Id.*

Plaintiffs' allegations here likewise "disregard the realities of police work that must inform qualified immunity analysis." *Torchinsky*, 942 F.2d at 263. Mangum made inconsistent statements in the aftermath of a purported violent group assault. Investigator Himan and others had to take Mangum "as they found [her] and do the best they could under the circumstances." *Torchinsky*, 942 F.2d at 263. It was reasonable for them to continue the investigation and seek identifying photographic and DNA information from the white members of the Duke lacrosse team as part of that process. Plaintiffs' claim that their Constitutional rights were violated because they had to sit for photos and provide buccal samples must be rejected, and their First Cause of Action dismissed.

### C. Plaintiffs' Conclusory Assertions Regarding "Fraudulent Statements" In The NTID Application Are Insufficient To Support A Viable Claim Under Section 1983

Anytime a plaintiff challenges an application for a court order, he is alleging essentially fraudulent behavior. A plaintiff must therefore meet the requirements for

specific pleading under Fed. R. Civ. P. 9(b).  *See Wilkinson v. Hallsten*, No. 5:06CV2, 2006 U.S. Dist. LEXIS, at *15-16 (W.D.N.C. August 2, 2006) (failure to identify what information included in search warrant was fraudulent rendered claim insufficient for purposes of Fed.R.Civ.P. 9(b)).  Plaintiffs must plead the time, place and contents of the alleged fraudulent statements with particularity in order to satisfy this standard.  *See Harrison v. United States of America*, 176 F.3d 776 (4th Cir. 1999) (setting out pleading requirements under Fed.R.Civ.P. 9(b)).  Plaintiffsø general assertion that the NTID Application included õfalse and sensationalizedö allegations, Amended Compl. ¶ 414, is insufficient.

## II.   PLAINTIFFS' CLAIMS REGARDING THE FABRICATION AND CONCEALMENT OF EVIDENCE SHOULD BE DISMISSED AS TO INVESTIGATOR HIMAN, AS PLAINTIFFS CANNOT ESTABLISH THE REQUIRED ELEMENTS

In their Third, Fourth, Sixth, Seventh, Ninth and Tenth Causes of Action, Plaintiffs assert that Investigator Himan violated their constitutional rights by manufacturing inculpatory evidence and concealing evidence that was exculpatory. Plaintiffs claim that Investigator Himan and others: (1) failed to turn over reports from the April 4, 2006 photo identification and DNA testing, Amended Compl. ¶¶ 946-47, 957; (2) fabricated a post-examination SANE report, a DNA report and affidavits, Amended Compl. ¶¶ 970-71; (3) intimidated witnesses into recanting stories that

KCBC:242154

provided exculpatory information, Amended Compl. ¶ 997; and (4) designed an identification procedure that violated police department policy, Amended Compl. ¶ 972.

### A. The Fact That Plaintiffs Were Subject To An Investigation Does Not Amount To A Constitutional Violation

Even if the above allegations had some basis in fact, which they do not, Plaintiffs' constitutional rights have not been violated. The parade of horrors listed above did not result in the arrest, indictment, trial or conviction of any of the Plaintiffs. Plaintiffs' underlying complaint is that they were forced to endure unwanted examination and attention from the public for some thirteen months as opposed to some shorter, unspecified, period. Plaintiffs claim that this unwanted attention deprived them of education, privacy and liberty and caused them to incur the expense of counsel and experts to defend their rights during the investigation of Mangum's claims. Amended Compl. ¶¶ 968, 977, 985, 1001, 1007. However, the fact that an individual is the subject of an investigation, and incurs costs as a result, is not by itself cognizable under § 1983. *See Sloane v. Department of Housing and Urban Development*, 231 F.3d 10, 24 (D.C. Cir. 2000) ("[t]he law is clear, however, that 'there is no constitutional right to be free of investigation.'") (quoting *United States v. Trayer*, 283 U.S. App. D.C. 208, 898 F.2d 805, 808 (D.C. Cir.), *cert. denied*, 498 U.S. 839, 111 S. Ct. 113, 112 L. Ed. 2d 83 (1990)).

"The constitution does not require reasonable suspicion of wrongdoing before the government can begin an undercover investigation." *United States v. Jacobsen*, 916 F.2d

467, 469 (8th Cir. 1990) (en banc). There is no constitutional right "to be free from maliciously instigated and baseless investigations." *Biasella v. City of Naples, Florida*, No. 2:04-cv-320-FtM-29DNF, 2005 U.S. Dist. LEXIS 20211, at *4-5 (M.D. Fl. August 11, 2005); *see also Sloane*, 231 F.3d at 24. The fact that the investigation is undertaken for improper motives or out of personal animus is irrelevant, as an investigation by itself does not implicate any constitutional rights.

The facts as alleged by Plaintiffs are analogous to those set out in *Biasella v. City of Naples, Florida*, where the plaintiff, a contractor, claimed that he was harassed and his business and reputation destroyed over a four year period by representatives of the City of Naples. 2005 U.S. Dist. LEXIS at *4-5. According to the plaintiff, this harassment was in retaliation arising out of his contentious dispute with the City of Naples over a bill for work his company performed. *Id.* According to the plaintiff, the City instituted eleven different investigations of plaintiff with clear advance knowledge that he was innocent. *Id.* The true purpose of these investigations was for city officials "to further their own political careers." *Id.* at 11-12.

The Court in *Biasella* found that the plaintiff's constitutional rights were not violated, as he was "never arrested or charged with anything." *Biasella*, 2005 U.S. Dist. LEXIS at *13. The Court recognized that "[w]hile there is a cause of action . . . [against] investigators if they conduct a constitutionally deficient investigation and an arrest results from the investigation" there is "no particular level of evidence constitutionally required

KCBC:242154

before a person may seek to instigate an investigation by authorities." *Biasella*, 2005 U.S. Dist. LEXIS at *13 (*citing Kingsland v. City of Miami*, 382 F.3d 1220, 1228-31 (11th Cir. 2004)).

Plaintiffs' Third, Fourth, Sixth, Seventh, Ninth and Tenth Causes of Action suffer from the same fatal flaw as those in *Biasella.*  Plaintiffs were never arrested or tried, only subjected to scrutiny as part of a criminal investigation.  As such, they have suffered no harm to their constitutional rights. Allegations that Investigator Himan sought to conceal or fabricate evidence, and that he attempted to intimidate witnesses, fails to state a valid claim under § 1983.[2]  *See Biasella*, 2005 U.S. Dist. LEXIS at *13 ("the Amended Complaint asserts that all investigations ended favorably towards plaintiff and he was never arrested or charged with anything.  While defendants may have committed a state tort, this does not amount to a constitutional violation within the Due Process clause.")

**B.    Even if Plaintiffs' Constitutional Rights Were Violated, There Is No Legal Basis For Holding Investigator Himan Liable**

Plaintiffs allege that Investigator Himan should be held liable for failing to disclose the results of photo identification procedures, DNA test results and other theoretically exculpatory evidence to them.  Amended Compl. ¶¶ 944-47.  Even if the failure to disclose exculpatory evidence to individuals potentially under investigation

---

[2] Plaintiffs' Third Cause of Action, for abuse of process, likewise fails to allege a cognizable claim under § 1983.  Investigator Himan hereby adopts Section IV(C) of City of Durham's Brief in Support of its Motion to Dismiss on this point as if fully stated herein.

KCBC:242154

gave rise to a § 1983 claim, it would be the district attorney, not an investigating officer whose failure would be the basis of liability.  This is because the district attorney, not the investigating officer, is the individual who has the duty to provide such information. *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d  215.

Here, District Attorney Michael Nifong had the öultimate responsibilityö for disclosing all potentially exculpatory evidence to Plaintiffs in his role as prosecutor. *Jean v. Collins*, 221 F.3d 656, 661 (4th Cir. 2000) (for purposes of § 1983 claims, öthe law has already placed ultimate responsibility upon the prosecutor for disclosing [evidence favorable to the accused, as discussed in] *Brady* . . . to the defense.ö (*citing Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963)).  As District Attorney Nifong was presented with all available evidence, and only District Attorney Nifong had a responsibly to provide potentially exculpatory evidence to the Plaintiffs, only he can be held responsible for failing to do so.

The Fourth Circuit has previously held that a § 1983 action will not lie against a law enforcement officer where that officer discloses all information to the prosecutor and the prosecutor made the decision whether to charge plaintiffs based on that information. In *Rhodes v. Smithers*, 939 F. Supp. 1256 (S.D.W.V. 1995), *aff'd,* No. 95-2837 1996 U.S. App. LEXIS 18638 (4th Cir. July 29, 1996), the Court held that öthe only particularized duty of an investigative officer who participates in the prosecution is the duty to turn over all relevant information, especially information of an exculpatory nature, to a prosecutor

or grand jury for an independent assessment of the probable cause evidence." Since the defendant officers in *Rhodes* were not shown to have withheld exculpatory evidence from the prosecutor, they were entitled to summary judgment dismissing all § 1983 claims against them. The Fourth Circuit affirmed, explicitly stating that its decision was based "on the reasoning set forth in the district court's extensive and careful memorandum opinion." *Rhodes*, 1996 U.S. App. LEXIS 18638, at * 2.

      1.      **Plaintiffs' Due Process Rights Are Not Violated By The Fact that Investigator Himan's Were Consistent With The Supreme Court's Decision in *Brady***

Despite the Supreme Court's holding in *Brady* the Plaintiffs claim that Investigator Himan nonetheless violated their due process rights by not directly providing them with results of the Nontestimonial Identification procedures. Amended Compl. ¶ 944. Plaintiffs contend that Investigator Himan's actions violated N.C. Gen. Stat. § 15A-282, which they contend deprived them "of their rights under Article IV of the United States Constitution, and the First, Fifth, Fourth Amendments thereto." Amended Compl. ¶¶ 944, 952. *See also* N.C. Gen. Stat. § 15A-282 ("a person who has been the subject of nontestimonial identification procedures or his attorney must be provided with a copy of any reports of test results as soon as the reports are available").

None of these legal sources explicitly require a police officer to provide exculpatory evidence to an individual under investigation or imply the conclusion that the

KCBC:242154

failure of a police officer to provide such information violates a constitutional right. Defendant is aware of no cases that would support the argument that the delay in producing the results of testing done pursuant to a Non-Testimonial Order is a violation of constitutional standards that is actionable under § 1983. The limited available case law suggests the opposite. In *State v. Pearson*, 551 S.E.2d 471 (N.C. Ct. App. 2001), the North Carolina Court of Appeals held that the failure to provide the results of a nontestimonial identification procedure to the accused more than twelve years after investigators received them was not sufficient for the result to be suppressed at trial. The Court in *Pearson* considered N.C. Gen. Stat. § 15A-974(1) (2001), which required the exclusion of evidence obtained as a result of substantial violations of statutes such as N.C. Gen. Stat. § 15A-282. The Court stated that õsection 15A-974(1) provides that evidence obtained as a result of substantial constitutional violation be suppressed *only* if it is required to be suppressed by the constitution.ö *Pearson*, 551 S.E.2d at 515. The Court in *Pearson* reasoned that the requirement to turn over the results of a search pursuant to a nontestimonial order was based õon post-procedure policies unrelated to obtaining the samplesö and not some õrelationship between the violation and the acquisition of evidence.ö *Id.*

KCBC:242154

**C.     Plaintiffs Were Never Tried And Therefore Cannot Establish
         Their Fifth Amendment Claims**

Plaintiffs' Fourth, Sixth and Seventh Causes of Action allege a violation of their

Fifth Amendment rights.  Amended Compl. ¶¶ 952, 976, 984.  Such claims arising under

the Fifth Amendment are not cognizable, as Plaintiffs were never tried.  *See, e.g.*, *Burrell*

*v. Virginia*, 395 F.3d 508, 513 (4th Cir. 2005) (even if Fifth Amendment rights would

have been violated by officer's questioning, no violation could be established because

incriminating statements were not used at trial).  "The Constitution does not require that

police lineups, photo arrays, and witness interviews meet a particular standard of

quality."  *Alexander v. City of South Bend*, 433 F.3d 550, 555 (7th Cir. 2006).  Claims

based on suggestive line-ups and the like are only actionable under § 1983 where the

conduct impairs "defendant's core right" i.e., the right to a fair trial."  *Antonio v. Moore*,

174 Fed. App'x. 131, 135 (4th Cir. 2006).

**D.     Investigator Himan Complied With His Duties Under State Law,
         And Therefore Is Entitled to Qualified Immunity For Purposes
         of Plaintiffs Federal Claims**

Even if Investigator Himan was required by his role as a police officer to

circumvent the prosecutor and provide all exculpatory evidence directly to defendants or

the grand jury, the fact remains that Investigator Himan's actions did not violate any

"clearly established statutory or constitutional rights of which a reasonable person would

have knownö by failing to do so.  *Simmons v. Poe*, 47 F.3d 1370, 1385 (4th Cir. 1995). As such, his actions are protected by qualified immunity.[3]

A cause of action under § 1983 requires more than Investigator Himan violating a right guaranteed under the U.S. Constitution; that right must also have been clearly established at the time of the alleged violation.  *See Saucier v. Katz*, 533 U.S. at 201-02, 121 S. Ct. 2151, 150 L. Ed. 2d 272.  For a police officer to lose his qualified immunity öthe contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.ö  *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987); *Gooden v. Howard County*, 954 F.2d 960, 968 (4th Cir. 1992) (öThe right must be sufficiently particularized to put potential defendants on notice that their conduct is probably unlawful.ö) (quoting *Azeez v. Fairman*, 795 F.2d 1296, 1301 (7th Cir. 1986)).  The applicability of qualified immunity is to be assessed at öthe time at which the action or inaction occurred.ö  *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982); *see also Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872,  104 L. Ed. 2d 443 (1989) (determination regarding the reasonableness of an officerøs use of force should not be judged öwith the 20/20 vision of hindsightö).

---

[3] Determination of qualified immunity may be made at either the motion to dismiss or summary judgment stage, however, the Supreme Court has örepeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation.ö *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001) (citations omitted).

KCBC:242154

There is little legal support for Plaintiffs' implicit argument that a "reasonable person" in Investigator Himan's position would have gone around the prosecutor and directly provided exculpatory evidence to defendants or the grand jury. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999) (in determining whether a right was clearly established, courts do not ordinarily need to "look beyond the decisions of the Supreme Court, the [local Circuit] court of appeals and the highest court of the state in which the case arose . . . "). "[A] reasonable officer possessing the same information [as Investigator Himan] would have believed his conduct was lawful." *Shaw v. Stroud*, 13 F.3d 791, 801 (4th Cir. 1994) (citation omitted).

## III. THE FACTS AS ALLEGED BY PLAINTIFFS FAIL TO STATE A VALID CAUSE OF ACTION FOR CONSPIRACY IN VIOLATION OF SECTION 1983

In their Fourth and Seventh Causes of Action, Plaintiffs allege that Investigator Himan conspired with District Attorney Nifong, Sergeant Mark Gottlieb and others to withhold the results of DNA testing performed by the lab of the North Carolina Special Bureau of Investigations and DNA Security, Inc. Amended Compl. ¶¶ 946, 980. Plaintiffs assert that they had a statutory right to the report as of April 10, 2006, and that the failure to provide it by that date deprived them "of their rights under Article IV of the United State Constitution as well as the First, Fourth, Fifth and Sixth Amendments." Amended Compl. ¶¶ 952, 984.

KCBC:242154

To prove a § 1983 conspiracy, a plaintiff "must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in a deprivation of [the plaintiffs'] constitutional right . . ." *Hinkle v. City of Clarksburg, W.Va.*, 81 F.3d 416, 421 (4th Cir. 1996) (*citing Hafner v. Brown*, 983 F.2d 570, 577 (4th Cir. 1992)). Here, Plaintiffs were not deprived of a constitutional right. Moreover, Investigator Himan had no duty to produce purported exculpatory evidence and as such did not take an act "in furtherance of the conspiracy." *Hinkle*, 91 F.3d at 421 (*citing Hafner*, 983 F.2d at 577).

### A.    There Is No Underlying Violation Of The Federal Constitution To Support Plaintiffs' Conspiracy Claim

In order to establish a valid claim for conspiracy in violation of § 1983, there must be an underlying violation of a federal right. *Powell v. Keller*, 5:03CV160-5-MU, 2004 U.S. Dist. LEXIS 30266, at * 12 (W.D.N.C. August 18, 2004) ("[i]f there is no violation of a federal right, there is no basis for a section 1983 action' or civil conspiracy action under § 1983.") (quoting *Clark*, 855 F.2d at 161). As set out above, Plaintiffs were never arrested or indicted, so there is no violation of their constitutional rights associated with the supposed delay in the production of evidence. Thus Plaintiffs' conspiracy claim fails as a matter of law. *See Biasella*, 2005 U.S. Dist. LEXIS at *13 (while there may be a cause of action under § 1983 where investigators "conduct a constitutionally deficient

investigation and an arrest results" there is no violation "for simply initiating and conducting an investigation") (*citing Kingsland*, 382 F.3d at 1228-31).

### B. The Facts As Alleged By Plaintiffs Do Not Support A Plausible Claim Of Conspiracy In Violation of Section 1983

Plaintiffs' First, Second, Third, Fourth, Sixth, Seventh and Ninth Causes of Action make only broad, conclusory assertions regarding the existence of a conspiracy. Amended Compl. ¶¶ 910 ("Nifong, Gottlieb and Himan . . . conspired to and did fabricate a false affidavit"), 924 ("Nifong, Gottlieb and Himan . . . conspired to fabricate and did fabricate a false affidavit"), 936 ("Defendants conspired to conceal from the public the fact that the NTID and Search Warrant Affidavits' allegations were fabricated"), 946 ("Himan, Gottlieb, Nifong Meehan, Clark and DNASI . . . conspired to conceal and without from Plaintiffs the reports of DNASI's test results"), 970 ("Nifong, Himan, Gottlieb and the SANE Defendants . . . conspired to fabricate inclupatory forensic medical evidence . . ."), 997 ("Nifong, Gottlieb, Himan, and Clayton . . . retaliated against Plaintiffs by abusing their law enforcement powers . . ."). These generalized assertions fall well short of the standard required for pleading a conspiracy in violation of § 1983. *See Sherwin v. Piner*, No. 5:03-CV-275-H(3), 2003 U.S. Dist. LEXIS 26855, at *7-8 (E.D.N.C. July 22, 2003) ("It is well settled that ÷where the complaint makes only conclusory allegations of a conspiracy under § 1983 or § 1985 and fails to allege facts suggesting an agreement or meeting of the minds among the

defendants, the court may properly dismiss the complaint.") (quoting *Sales v. Murray*, 862 F. Supp 1511, 1517 (W.D. Va. 1994) (additional citations omitted)).

As explained previously, Investigator Himan cannot be held liable for an alleged conspiracy to withhold, or postpone the production of, exculpatory evidence from DNA testing, as the duty to disclose this information was on District Attorney Michael Nifong, not Investigator Himan. Plaintiffs cannot hold Investigator Himan liable for the prosecutor's duty by asserting a conspiracy. *See Mowbray v. Cameron County*, 274 F.3d 269 (5th Cir. 2001) (affirming 12(b)(6) dismissal of claim that police officer participated in conspiracy to violate the plaintiff's civil rights by failing to disclose evidence to defense counsel because "police officers have no constitutional duty under *Brady* to disclose exculpatory evidence to defense counsel").

## IV. PLAINTIFFS HAVE NO COGNIZABLE CLAIM AGAINST INVESTIGATOR HIMAN UNDER SECTION 1985(2) OR SECTION 1985(3)

In their Sixteenth Cause of Action, Plaintiffs allege that Investigator Himan conspired with others to "incite and then galvanize invidious racial animus against Plaintiffs in the Durham community" in violation of § 1985. Amended Compl. ¶ 1159. Specifically, Plaintiffs allege that Investigator Himan conspired with others to both elicit false statements and subsequent testimony from witnesses, Amended Compl. ¶ 1161, and forment racial animus against Plaintiffs in Durham. Amended Compl. ¶ 1163. Plaintiffs further allege that these acts were either "motivated by invidious racial animus . . . and/or

were intended to take advantage of the invidious racial animus that these Defendants had formented in the Durham Community.ö Amended Compl. ¶ 1159.

Plaintiffsø claims fall short of the necessary elements for a viable claim under § 1985, as they do not, and cannot, allege that Investigator Himan was motivated by racial animus *against them as white individuals*. Plaintiffs seek to avoid this key element by alleging that Investigator Himan and others were generally õmotivated by invidious racial animus,ö sought to õincite and then galvanize invidious racial animusö and that these actions were õbased upon . . . [the] belief that Plaintiffs were citizens of other states.ö Amended Compl. ¶¶ 1159-60. However Plaintiffs do not allege that Investigator Himan was explicitly motivated by racial animus against white individuals. As Investigator Himan is white and supposedly was participating in an alleged conspiracy with other white individuals, there is no underlying factual basis for such an inference based on Plaintiffsø allegations.

The case law regarding § 1985 claims makes clear that a plaintiff must allege that the defendant *himself* was motivated by racial animus in order to state a claim under § 1985. *See, e.g.*, *Griffin*, 403 U.S. 88, 91, 91 S. Ct. 1790, 29 L. Ed. 2d 338; *Bey v. Celebration Station*, 3:02CV461, 2006 U.S. Dist. LEXIS 72479, at *9-10 (W.D.N.C. 2006). Plaintiffsø factual allegations, distilled to their essence, are that Investigator Himan and others sought to inflame racial animus to their own ends, which Plaintiffs allege was done to deprive members of the 2006-2007 Duke lacrosse team of their

-34-

constitutional rights.  Amended Compl. ¶ 1158.  Plaintiffs are alleging that race was used as a tool to attack them and raise animosity against them.  To that extent Plaintiffs are not simply members of a racial classification as white, but two different political classifications as Duke students and members of the lacrosse team.  § 1985 does not protect such classes.[4]  *See Trerice v. Summons*, 755 F.2d 1081, 1085 (4th Cir. 1985) ō[N]either the Supreme Court nor the Fourth Circuit has identified any classes other than racial or religious classes.ö); *see also Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269, 122 L. Ed. 2d 34, 113 S. Ct. 753 (1993) (holding that women seeking an abortion were not a protected class for purposes of § 1985(3)).

Plaintiffsø allegations do not establish them as a protected class, therefore Investigator Himan and other defendants cannot have, as a matter of law and logic, have acted with the requisite discriminatory purpose.  *See Fletcher v. Nebraska*, 2007 U.S. Dist. LEXIS 14465, at *5-6 (D. Neb.) (ō[a] review of the plaintiffø pleadings reveals that the plaintiff has asserted no racial or other class-based invidiously discriminatory animus.  Therefore, the plaintiff has not alleged a claim on which relief may be granted pursuant to 42 U.S.C. § 1985(3).ö).  The Supreme Court has stated that ōdiscriminatory purpose . . . implies that the decision maker . . . selected or reaffirmed a particular course of action at

---

[4] Plaintiffsø Tenth Cause of Action, alleging that they were discriminated against because they were perceived as being from out of state in violation of the Privileges and Immunities Clause of Article IV, Section 2 of the Constitution, likewise fails for the reasons set out in Defendant City of Durhamø Brief in Support of its Motion to Dismiss. Investigator Himan hereby adopts Section IV(G) of the Cityø Brief on this point as if fully stated herein.

KCBC:242154

least in part ―because of,ø not merely ―in spite of,ø its adverse effects upon an identifiable group.ö *Id.*

## V.    INVESTIGATOR HIMAN CANNOT BE HELD LIABLE UNDER PLAINTIFFS STATE LAW CLAIMS, AS HIS ACTIONS ARE PROTECTED BY PUBLIC OFFICIAL IMMUNITY

In their Eighteenth, Nineteenth, Twentieth, Twenty-Third, Twenty-Fifth and Twenty-Seventh Causes of Action, Plaintiffs allege various common law claims, including obstruction of justice and conspiracy to obstruct justice, abuse of process and conspiracy to abuse process, intentional infliction of emotional distress, aiding and abetting, negligence and negligent infliction of emotional distress. Amended Compl. ¶¶ 1190, 1204, 1215, 1247, 1266, 1282. These claims are generally based on the same factual allegations that underlie Plaintiffsø federal claims. The facts as alleged in Plaintiffsø Amended Complaint make clear, however, that Investigator Himanøs actions are protected from liability under the doctrine of public official immunity.

Under North Carolina law, a public official performing discretionary acts can be liable for wrongdoing only (1) if the wrongdoing occurs outside the scope of official authority or if the conduct is (2) intended to be prejudicial or injurious to the Plaintiff or (3) malicious or corrupt. David A. Logan and Wayne A. Logan, *North Carolina Torts* § 107 (2d Ed. 2004); *Moore v. Evans*, 124 N.C. App. 35, 42, 476 S.E.2d 415, 421 (1996). As a police officer employed by a North Carolina municipality engaged in the investigation of an alleged crime, Investigator Himan is a public official for purposes of

the public official immunity doctrine.  *See Campbell v. Anderson*, 156 N.C. App. 371, 376 576 S.E.2d 726, 730 (2003).

The law presumes that "in the performance of his official duties [the officer] acts fairly, impartially, and in good faith and in the exercise of sound judgment or discretion, for the purpose of promoting the public good and protecting the public interest." *Green v. Town of Valdese*, 306 N.C. 79, 82, 291 S.E.2d 630, 632 (1982).  It is the Plaintiffs' burden to overcome this presumption and "make a prima facie showing that the official's actions (under the color of state authority) are sufficient to pierce the cloak of official immunity." *Moore*, 124 N.C. App. at 42, 476 S.E.2d at 421.  Plaintiffs fail to satisfy this burden and, as such, their state law claims must be dismissed.

Plaintiffs' allegations do not create a plausible inference that Investigator Himan acted outside the scope of his employment, acted corruptly (e.g., for personal benefit), or that he "intended his actions to be prejudicial or injurious" to the Plaintiffs in particular. *Marlowe v. Piner*, 119 N.C. App. 125, 128, 458 S.E.2d 220, 223 (1995).  Investigator Himan's duty as a police officer is to investigate claims of sexual assault and kidnapping made by anyone within the jurisdiction.  *See, e.g.*, N.C. Gen. Stat. §§ 15A-31.  This is precisely what Plaintiffs' allegations show he did.

According to Plaintiffs' Amended Complaint, Investigator Himan was assigned to the investigation by Sergeant Gottlieb and was told to report both to District Attorney Nifong and up the Durham Police chain of command.  Amended Compl. ¶¶ 71, 387.

Investigator Himan did so, providing all evidence he uncovered to District Attorney Nifong. Plaintiffs detail a host of allegedly improper actions Investigator Himan took during the course of the investigation, but they fall short of pleading specific facts to support a claim that he acted outside the scope of his authority, was corrupt or õintended . . . to be prejudicial or injuriousö to these Plaintiffs specifically. *Marlowe*, 119 N.C. App. at 128, 458 S.E.2d at 223 (granting summary judgment dismissing claims against deputy sheriff in his individual capacity for false imprisonment and false arrest based on public official immunity where evidence showed that õ[a]t mostö plaintiff had presented evidence showing that defendant õnegligently believed he had probable cause to arrest plaintiffs); *see also Jetton v. Caldwell County Board of Education*, No. COA05-1389, 2007 N.C. App. LEXIS 1699, at *17-18 (August 7, 2007) (õWhile Defendants may not have always acted in a professional manner, or treated Plaintiff with patience, respect or kindness, there is no evidence they intended to hurt Plaintiff. Any alleged harm resulting to Plaintiff from Defendantsø allegedly improper conduct was simply a collateral consequenceö).

## VI.   PLAINTIFFS' CLAIM FOR OBSTRUCTION OF JUSTICE FAILS AS A MATTER OF LAW

Plaintiffsø Eighteenth Cause of Action, for obstruction of justice and conspiracy to obstruct justice, fails as a matter of law, as the facts in the Amended Complaint do not support such a claim. A claim for obstruction of justice arises where the defendant takes

action that prevents, obstructs, impedes, or hinders public or legal justice. *Broughton v. McClatchy Newspapers, Inc.*, 161 N.C. App. 20, 33, 588 S.E.2d 20, 29-30 (2003). Once its hyperbole is left aside, Plaintiffs' allegations fail to meet these elements.

Plaintiffs allege that Investigator Himan investigated an alleged sexual assault based on claims made by the supposed victim of a brutal rape and forensic evidence he was provided. Amended Compl. ¶¶ 306, 346, 362, 376. Plaintiffs further allege that Investigator Himan shared all information he uncovered, both inculpatory and exculpatory, with District Attorney Michael Nifong and up the chain of command. Amended Compl. ¶¶ 7, 387, 578. These alleged actions do not support a finding that Investigator Himan impeded or hindered public justice. *Compare Reed v. Buckeye Fire Equip.*, 241 Fed. App'x 917, 919 (4th Cir. 2007) (obstruction of justice claim where there was an attempt to blackmail plaintiff by threatening to reveal extramarital affair in exchange for plaintiff's not going forward with a claim under the Family Medical Leave Act); *Jackson v. Blue Dolphin Communs. of N.C., LLC*, 226 F. Supp. 2d 785 (W.D.N.C. 2002) (obstruction of justice claim where employee terminated in retaliation for her refusal to sign false affidavit in unrelated matter); *Henry v. Deen*, 310 N.C. 75, 310 S.E.2d 326 (1984) (obstruction of justice claim where physician intentionally altered medical records).

KCBC:242154

## VII. INVESTIGATOR HIMAN DID NOT OWE PLAINTIFFS A DUTY FOR PURPOSES OF THEIR NEGLIGENCE CLAIM

Plaintiffsø Twenty-Fifth Cause of Action, for negligence, and Twenty-Seventh Cause of Action, for negligent infliction of emotional distress, fail for a further reason ó Investigator Himan did not owe them a duty greater than that he owed to the general public. An actionable negligence claim exists where there is õa failure to exercise proper care in the performance of some legal duty which the defendant owed the plaintiff, under the circumstances they were placed.ö *Wood v. Guilford County*, 355 N.C. 161, 166, 558 S.E.2d 490, 490 (2002) (quoting *Mattingly v. N.C.R.R. Co.*, 253 N.C. 746, 750, 117 S.E.2d 844, 847 (1961)). No reported North Carolina decision addresses the question whether a law enforcement officerøs alleged negligence in the course of the investigation of a crime is an actionable tort. However other jurisdictions have held that no such cause of action exists. *See Fondren v. Klickitat County*, 905 P.2d 928 (Wash. App. 1995) (a claim for negligent investigation is not cognizable under Washington law); *Wimer v. State of Idaho*, 841 P.2d 453 (Idaho 1993) (holding that a claim for negligent investigation does not exist and stating that to hold otherwise would õimpair vigorous prosecution and have a chilling effect on law enforcementö); *Lewis v. McDorman*, 820 F. Supp. 1001 (W.D. Va. 1992), *aff'd*, 28 F.3d 1210 (4th 1994) (police officers owe no duty of reasonable care in conducting investigations).

KCBC:242154

As a police officer for a municipal law enforcement agency, Investigator Himan owed the same duty to all members of the public. Plaintiffs were not owed a greater duty merely due to the fact that they were some of a group of individuals under criminal investigation. By investigating Mangum's claims, including searching for suspects and physical evidence, Investigator Himan was fulfilling this general duty. There is no legal basis for Plaintiffs' allegation that he owed them a separate, higher duty in conducting his investigation.

## VIII.  THE FACTS ALLEGED BY PLAINTIFFS DO NOT SUPPORT A VIABLE CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST INVESTIGATOR HIMAN

Investigator Himan's supposed intimidation of witnesses, manipulation of witness identification procedures and other obstruction of justice, Amended Compl. ¶ 1216, does not qualify as sufficiently extreme or outrageous conduct to support a claim of intentional infliction of emotional distress.

To establish a valid claim for intentional infliction of emotional distress, a plaintiff must allege: (1) extreme and outrageous conduct; (2) which is intended to cause and does cause; (3) severe and disabling emotional distress. *Dickens v. Puryear*, 276 S.E.2d 325, 335 (N.C. 1981). For conduct to qualify, it must be "so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Bradley v. Lowe's Cos.*, 3:05CV488-MU, 2007 U.S. Dist. LEXIS 69872, at *10 (W.D.N.C. Sept. 20, 2007)

KCBC:242154

(quoting *Briggs v. Rosenthal*, 327 S.E.2d 308, 311 (N.C. App. 1985).  Plaintiffs must allege facts that, if later proved, "exceed all bounds of decency," *Peck v. Town of Lake Lure*, 2001 U.S. Dist. LEXIS 13179, * 15 (W.D.N.C. Feb. 23, 2001) (internal quotations omitted), or are "regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Wagoner v. Elkin City School Bd. of Educ.*, 113 N.C. App. 579, 440 S.E.2d 119, 123 (N.C. Ct. App. 1994)).

Investigator Himan's alleged behavior is not sufficiently extreme or atrocious. Plaintiffs do not allege that Investigator Himan threatened or used force against them, only that he supposedly "intimidated" them and aggressively investigated Ms. Mangum's claims.  *See, e.g.*, *Dickens v. Puryear*, 302 N.C. 437, 447 276 S.E.2d 325, 332 (1981) (valid claim of intentional infliction of emotional distress where defendants threatened plaintiff's life, pointed a gun between his eyes, beat him with a nightstick and threatened him with castration).  It does not compare with a husband's knowledge of and intentionally refusing to pay a tax deficiency as part of a separation agreement, resulting to foreclosure of the wife's home, *Stanback v. Stanback*, 297 N.C. 181, 254 S.E.2d 611 (1979), or with a private citizen placing posters of Plaintiff in public places, approaching other citizens, including teachers and students in high school within the jurisdiction where defendant was a superintendent, and reading or showing portions of papers about the plaintiff's *nolo contendere* plea while a college student decades earlier.  *Woodruff v. Miller*, 64 N.C. App. 364, 307 S.E.2d 176 (1983).

KCBC:242154

## CONCLUSION

Plaintiffs' claim that their Constitutional rights were violated because they had to sit for photos and provide a buccal sample must be rejected. Plaintiffs identify no underlying violation of their constitutional rights. As such, their federal claims against Investigator Himan must be dismissed as a matter of law.

The alleged facts set out that Investigator Himan was assigned to investigate an allegation of rape, participated in the investigation consistent with his duty as a law enforcement officer and then turned over all evidence he uncovered to District Attorney Michael Nifong. Although Plaintiffs detail a host of purportedly improper actions by Investigator Himan, they do not make specific allegations that would support a viable cause of action against him under federal or state law. Accordingly Investigator Himan's Motion to Dismiss should be granted and all claims against him dismissed.

KCBC:242154

This the 2nd day of July, 2008.

KENNON, CRAVER, BELO,
CRAIG & MCKEE, PLLC

By:    */s/ Joel M. Craig*
North Carolina State Bar No. 9179


*/s/ Henry W. Sappenfield*
North Carolina State Bar No. 37419
Attorneys for Defendant Benjamin
Himan
4011 University Drive, Suite 300
P.O. Box 51579
Durham, NC 27717-1579
(919) 490-0500
jcraig@kennoncraver.com
hsappenfield@kennoncraver.com

KCBC:242154

# CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that I electronically filed the foregoing Defendant Benjamin W. Himan's Brief In Support of His Motion to Dismiss with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Robert C. Ekstrand
Ekstrand & Ekstrand, LLP
811 Ninth St., Ste. 260
Durham, NC 27705
*Attorney for Plaintiffs Breck Archer, Matthew Wilson and Ryan McFadyen*

Reginald B. Gillespie, Jr.
Faison & Gillespie
P.O. Box 51729
Durham, NC 27717-1729
*Attorney for Defendant City of Durham, North Carolina and Edward Sarvis*

James B. Maxwell
Maxwell, Freeman & Bowman, P.A.
P.O. Box 52396
Durham, NC 27717-2396
*Attorney for Defendants David W. Addison, James T. Soukup, Kammie Michael and Richard D. Clayton*

Edwin M. Speas, Jr.
Eric P. Stevens
Poyner & Spruill LLP
P.O. Box 10096
Raleigh, NC 27605-0096
*Attorneys for Defendant Mark Gottlieb*

KCBC:242154

Patricia P. Kerner
D. Martin Warf
Hannah G. Styron
Troutman Sanders LLP
434 Fayetteville Street, Suite 1900
Raleigh, NC 27601
*Attorneys for Defendants Patrick Baker, Steven Chalmers, Ronald Hodge, Lee Russ, Stephen Mihaich, Beverly Council, Jeff Lamb, Michael Ripberger and Laird Evans*

Dan J. McLamb
Shirley M. Pruitt
T. Carlton Younger, III
Yates, McLamb & Weyher, L.L.P.
P.O. Box 2889
Raleigh, NC 27602
*Attorneys for Defendants Duke University Health Systems, Inc., Private Diagnostic Clinic, PLLC, Julie Manly, M.D., Theresa Arico, R.N. and Tara Levicy, R.N.*

J. Donald Cowan, Jr.
Dixie T. Wells
Smith Moore LLP
300 N. Greene Street, Suite 1400
Greensboro, NC 27401

William F. Lee
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109

KCBC:242154

Jamie Gorelick
Jennifer M. O'Connor
Paul R.Q. Wolfson
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
*Attorneys for Defendants Duke University, Duke University Police Department, Aaron Graves, Robert Dean, Leila Humphries, Phyllis Cooper, William F. Garber, II, James Schwab, Joseph Fleming, Jeffrey O. Best, Gary N. Smith, Greg Stotsenberg, Robert K. Steel, Richard H. Brodhead, Ph.D., Peter Lange, Ph.D., Tallman Trask, III, Ph.D., John Burness, Larry Moneta, Ed.D., Victor J. Dzau, M.D., Allison Halton, Kemel Dawkins, Suzanne Wasiolek, Stephen Bryan and Matthew Drummond*

Robert J. King, III
Kearns Davis
Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P.
P.O. Box 26000
Greensboro, NC 27420
*Attorneys for Defendants DNA Security and Richard Clark*

The undersigned further certifies that the foregoing document was served by first-class mail, postage prepaid to the following non CM/ECF participant:

Linwood Wilson
Bahama, NC
*Pro Se*

KCBC:242154

This the 2nd day of July, 2008.

<div style="margin-left: 40%;">

KENNON, CRAVER, BELO,
  CRAIG & MCKEE, PLLC


By:    */s/ Henry W. Sappenfield*
North Carolina State Bar No. 37419
Attorney for Defendant Benjamin Himan
4011 University Drive, Suite 300
P.O. Box 51579
Durham, NC 27717-1579
(919) 490-0500
hsappenfield@kennoncraver.com

</div>

KCBC:242154