IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| RYAN MCFADYEN, et al | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:07-CV-953 |
| | ) | |
| DUKE UNIVERSITY, et al | ) | |
| | ) | |
| Defendants. | ) | |

_____

**MEMORANDUM OF DEFENDANTS BAKER, CHALMERS, RUSS, MIHAICH,
COUNCIL, LAMB, RIPBERGER, and EVANS
IN SUPPORT OF THEIR MOTION TO DISMISS**
_____

<u>STATEMENT OF THE CASE</u>

Plaintiffs filed this action on December 18, 2007, seeking damages pursuant to <u>42 U.S.C. §§ 1983</u>, 1985, 1986, and the common law of North Carolina, arising out of the State of North Carolina's investigation into allegations of rape, sexual assault, and kidnapping.  On April 17, 2008, Plaintiffs amended their Complaint.  On April 18, 2008, Plaintiffs amended their Complaint for a second time, with consent of the parties.  This matter is before the Court on the Motion to Dismiss of Defendants Baker, Chalmers, Russ, Mihaich, Council, Lamb, Ripberger, and Evans (hereinafter "Defendants")[1],

_____

[1] Undersigned counsel represents Ronald Hodge as well.  However, Hodge is alleged to have made a single remark to the press, which Plaintiffs contend gives rise to numerous claims that are not asserted against Defendants.  Therefore, Hodge is filing a separate motion to dismiss and supporting memorandum to address those claims.  Nonetheless, all of the arguments asserted in this memorandum in defense of Defendants apply equally to Hodge.

Dockets.Justia.com

pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## STATEMENT OF FACTS

Plaintiffs allege that their 446 page Second Amended Complaint[2] "is a reckoning." (Second Amended Complaint ¶ 5.) Despite exceeding 1300 allegations, however, it is unclear what Defendants should specifically atone for having done. Defendants are eight ranking officers within the Durham Police Department ("DPD") who allegedly supervised a criminal investigation that never focused on Plaintiffs. (2d Amend. Compl. ¶¶ 50-58.)

The facts giving rise to the criminal investigation are far from unknown at this point. Plaintiffs are members of the 2005-2006 Duke University Men's Lacrosse Team. (2d Amend. Compl. ¶ 9.) That team, through its captains, hosted a party on March 13, 2006, at 610 North Buchanan, (*id.* ¶¶ 194, 409), where two dancers performed. (*Id.* ¶ 195.) One of those dancers, Crystal Mangum, alleged she was raped during the party. (*Id.* ¶¶ 251, 266-67.) Durham police began an immediate investigation into Mangum's claims. (*Id.* ¶ 262-63.)

As part of the investigation, DPD officers met with Mangum—on March 16 and 21, 2006, to see if she could positively identify her attackers from photo arrays. (2d Amend. Compl. ¶¶ 360-381.) She could not; Mangum claimed the photos of Plaintiffs

---

[2] Although Plaintiffs' Complaint filed on April 18, 2008, was stylized as a "First Amended Complaint," it is a Second Amended Complaint, and Defendants will refer to it as such.

and their teammates in their jerseys made them "all look the same." (*Id.* ¶¶ 380, 370, 379.)  Officers within the DPD also met several times with medical personnel who treated Mangum.  She was treated at Duke University Medical Center, in part, by a Forensic Sexual Assault Nurse, Tara Levicy.  (*Id.* ¶¶ 647, 780-81.)  Levicy maintained that "the victim had signs, symptoms, and injuries consistent with being raped and sexually assaulted vaginally and anally." (*Id.*)  This evidence, while supporting a possible attack, could not support the identity of the alleged attackers.  To aid in determining that fact, the Durham County District Attorney's Office, assisted by officers in the DPD, secured a nontestimonal order ("NTO") from Superior Court Judge Stephens on or about March 23, 2006.  (*Id.* ¶¶ 404, 414-43, 596, Exhibit 19.)  That NTO directed each white member of the Duke lacrosse team to submit to photographs and cheek swabbings.

On March 30, 2006, using data gathered from the NTO, the State Bureau of Investigations confirmed that no players' DNA matched that found on the rape kit items. (2d Amend. Compl. ¶ 660.)  On April 4, 2006, at Durham County District Attorney Mike Nifong's direction, DPD officers shared the photos from the NTO with Mangum.  (*Id.* ¶¶ 662-63, 668.)  In mid-April, Nifong sought indictments against Collin Finnerty and Reade Seligmann, based in part on Mangum's identification of three teammates of Plaintiffs' as her supposed assailants.  (*See id.* ¶¶ 677, 812, 816-17, Exhibit 24.)  On or about May 12, 2006, David Evans became the third indicted lacrosse player.  (*Id.* ¶ 712.)

As a result, Plaintiffs were never indicted or even charged with anything arising from the incident.

In sum, through the evidence gathered by the DPD and presented to Nifong, (*see* 2d Amend. Compl. ¶¶ 591-93), Plaintiffs were eliminated as possible suspects of any criminal wrongdoing in a matter of several months.

## QUESTIONS PRESENTED

1.    Whether the official capacity claims should be dismissed.

2.    Whether Plaintiffs have alleged a violation of a constitutional right.

3.    Whether Plaintiffs fail to state a claim under 42 U.S.C. § 1983.

4.    Whether Defendants are entitled to qualified immunity.

5.    Whether Plaintiffs have alleged a conspiracy under federal law.

6.    Whether Plaintiffs have alleged the essential elements of their North Carolina common law claims.

7.    Whether Defendants are entitled to public officer immunity.

## ARGUMENT

### I.    APPLICABLE STANDARD

The well-known guideposts of review on a motion to dismiss are not lessened because the Second Amended Complaint requires the Court to sift through, flip over, or line up in excess of 1300 allegations to see what arrangement, if any, displays cognizable claims against 50 different defendants.  Regardless of size, "[t]he plaintiff's factual allegations must be enough to give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc*., 507

F.3d 117, 121 (2d Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)). "In conducting this review, we take the facts in the light most favorable to the plaintiff, but we need not accept the legal conclusions drawn from the facts, and we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quotations and citations omitted).

"Additionally, the complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is *plausible* on its face.'" *Id.* (emphasis in original) (quoting *Twombly*, 127 S. Ct. at 1974); *see also LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) ("The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief.") (emphasis in original)).

> In *Twombly*, the Supreme Court, noting that 'a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do,' [*Twombly*, 127 S. Ct.] at 1964-65, upheld the dismissal of a complaint where the plaintiffs did not 'nudge[] their claims across the line from conceivable to plausible.' *Id.* at 1974.

*Giarratano*, 521 F.3d at 304 (applying *Twombly* to dismiss a section 1983 claim grounded in a conclusory assertion that a prisoner's equal protection rights had been violated); *Bass v. E.I. DuPont de Nemours & Comp.*, 324 F.3d 761, 765 (4th Cir. 2003) (factual allegations supporting the legal elements or grounds of a claim should bear the brunt of the Court's attention on a motion to dismiss, not the plaintiff's legal conclusions). "Thus, a motion to dismiss will be granted if there is either a lack of

cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Tolley v. Kivett*, No. 1:01-CV-410, 2002 U.S. Dist. LEXIS 24368, at *5-6 (M.D.N.C. July 1, 2002) (quotations and citations omitted).

## II.   OFFICIAL CAPACITY CLAIMS ARE REDUNDANT
(Official Capacity claims in the Fifth, Ninth, Tenth, Eleventh, Thirteenth, Fifteenth, Sixteenth, Seventeenth, Twentieth, Twenty-third, Twenty-fifth, Twenty-sixth, Twenty-seventh, and Twenty-eighth Counts)

Plaintiffs' claims against Defendants in their official capacity are essentially claims against the City of Durham, the governmental entity that employees them. "In *Kentucky v. Graham*, 473 U.S. 159, 87 L. Ed. 2d 114, 105 S. Ct. 3099 (1985), the [Supreme] Court sought to eliminate lingering confusion about the distinction between personal- and official-capacity suits." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). In *Graham*, the Court noted that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 165-66, 168 n.14 (1985) (emphasis in original) (citations and quotations omitted). The Supreme Court made this point "explicit" in *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985) (with notice, entity is liable for suit against public servant in his official capacity).

Based on the reasoning of *Graham*—and where the governmental entity is named as a defendant in the action—courts of this Circuit have held that any claims asserted against Defendants in their official capacities should be dismissed as duplicative or redundant. *See Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) (affirming a district court's determination to dismiss official capacity claims in a section 1983 action

against an official when the governmental entity was a named defendant); *W.E.T. v. Mitchell*, No. 1:06-CV-487, 2007 U.S. Dist. LEXIS 68376, at *30 (M.D.N.C. Sept. 14, 2007) ("Claims against the official in his or her official capacity which are duplicative of claims against a government entity are subject to dismissal.").

Application of this well-grounded principle means that Plaintiffs' various federal conspiracy claims in the Amended Complaint—the fifteenth, sixteenth, and seventeenth causes of action—should be dismissed against Defendants in their official capacities. Further, Plaintiffs make out various section 1983 claims against Defendants in their official capacity; therefore, the fifth, ninth, tenth, eleventh, and thirteenth official-capacity claims should be dismissed as well. Accordingly, any of the federal or constitutional claims against Baker, Chalmers, Russ, Council, Lamb, Ripberger, Mihiach, and Evans in their official capacities must be dismissed. *See, e.g., Conley v. Town of Elkton*, No. 5:04-CV-30, 2005 U.S. Dist. LEXIS 2602, at *21 (W.D. Va. Feb. 22, 2005) (Plaintiffs' claims against police chief and members of town council in their official capacity were dismissed where town is a named defendant).

This same principle of duplicative or redundant claims equally applies to Plaintiffs' state law claims against Defendants in their official capacities. The North Carolina Supreme Court in *Moore v. City of Creedmoor*, 345 N.C. 356, 367, 481 S.E.2d 14, 21-22 (1997), adopted the United States Supreme Court's holding in *Graham*, that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent," and held that "where the governmental entity

may be held liable for damages resulting from its official policy, a suit naming public officers in their official capacity is redundant." Therefore, Plaintiffs' twentieth, twenty-third, twenty-fifth, twenty-sixth, twenty-seventh, and twenty-eighth counts against Baker, Chalmers, Hodge, Russ, Council, Lamb, Ripberger, Mihiach, and Evans in their official capacities must be dismissed because the City of Durham is a named defendant.

### III. NO LIABILITY FOR DEFENDANTS PURSUANT TO 42 U.S.C. § 1983
(Tenth, Eleventh, and Thirteenth Causes of Action)

#### A. No Violation of a Constitutional Right

"Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." *Hafer*, 502 U.S. at 25. Even though Defendants do not dispute their status as officers acting under the color of state law, Plaintiffs' assertion of individual liability based on section 1983 must include "facts that show . . . a deprivation of a right, privilege, or immunity secured by the Constitution or federal laws," *DeBerry v. Runyon*, No. 1:97-CV-777, 1998 U.S. Dist. LEXIS 12532, at *8 (M.D.N.C. Apr. 20, 1998), and facts that show the official was *personally involved* in the alleged constitutional violation. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977).

Through three separate section 1983 claims, Plaintiffs contend that Defendants are personally involved in violations of their "rights under Article IV of the United States Constitution, and the First, Fourth, Fifth, Sixth, and Fourteenth Amendments thereto."

(2d Amend. Compl. ¶¶ 1030, 1117, 1123, 1132, 1139.)[3]  While a variety of shortcomings related to each cause of action—deprivation of property, bystander liability, and supervisory liability—are addressed separately below, there are global failures and defenses central to all three causes of action.  In particular, Plaintiffs fail to identify a specific constitutional right that was infringed upon by Defendants' alleged conduct.

A complaint failing this basic task is subject to dismissal based on the failure to plainly state the elements of a section 1983 claim or qualified immunity.  *See Baker v. McCollan*, 443 U.S. 137, 146 (1979) ("Section 1983 imposes liability for violations of rights protected by the Constitution, *not* for violations of duties of care arising out of tort law." (emphasis added)); *Osborne v. Rose*, Nos. 97-1259 & 1264, 1998 U.S. App. LEXIS 850, at *9 (4th Cir. Jan. 20, 1998) ("[C]ivil liability under § 1983 may be imposed for deprivation of a constitutional right if, but only if, in the light of pre-existing law the unlawfulness under the Constitution is apparent.") (citations and quotations omitted).  At a bare minimum, Plaintiffs failure to articulate the certain right at issue leaves the Court and Defendants to speculate where one might arise.  *See Taylor v. Waters*, 81 F.3d 429, 433 (4th Cir. 1996) (complaint that simply states that "the facts alleged implicate rights protected by the Fourth, Fifth, and Fourteenth Amendments" forces the defendant and court to stylize the specific right in question) (citations and quotations omitted).

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as

---

[3] The Tenth Cause of Action alleges only a violation of Article IV and the Fourteenth Amendment.

their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, [457 U.S. 800, 818](#) (1982) (quotations omitted). "Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, [533 U.S. 194, 200](#) (2001) (quotations omitted). It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, [475 U.S. 335, 341](#) (1986).

"In evaluating whether a government official is entitled to qualified immunity, a court is required to determine, first, whether the facts alleged show that the official's conduct violated a constitutional right." *Layman v. Alexander*, [294 F. Supp. 2d 784, 792-93](#) (W.D.N.C. 2003) (citing *Saucier v. Katz*, [533 U.S. at 201](#)).

> The operation of this standard, however, depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified. . . . It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, [483 U.S. 635, 639-40](#) (1987) (citations omitted). Thus, the substantive weakness of Plaintiffs' Second Amended Complaint, their inability to state the contours of a specific constitutional right that was infringed upon by Defendants, operates not only as grounds for dismissal but also as an entitlement to qualified immunity.

### 1.      No Fifth or Sixth Amendment Violation

No doubt, through the sheer volume of allegations, Plaintiffs attempt to align themselves with Reade Seligmann, David Evans, and Collin Finnerty, who were indicted. That is absolutely not the case. Nifong sought indictments against Seligmann, Evans, and Finnerty. Plaintiffs were not charged with any criminal conduct. The fact that an investigation, which began on March 16 and focused on other players by mid-May, occurred at all is apparently the reason for Plaintiffs' suit.

However, the constitution does not create a right to be immune or free from an official criminal investigation. *McNabb v. North Carolina*, No. 1:00-CV-203, 2001 U.S. Dist. LEXIS 13181, at *40 (W.D.N.C. April 11, 2001) ("There is no constitutional right to be free from a criminal investigation."), *portion adopted by*, 156 F. Supp. 2d 546 (W.D.N.C. 2001), *vacated on other grounds*, 33 Fed. Appx. 91 (4th Cir. 2002); *see also Hale v. Townley,* 45 F.3d 914, 920 (5th Cir. 1995) (citing *U.S. v. Allibhai,* 939 F.2d 244, 249 (5th Cir. 1991); *Watterson v. Page*, 987 F.2d 1, 8 (1st Cir. 1993) ("The right to family integrity clearly does not include a constitutional right to be free from child abuse investigations.") (cited with approval in *Hodge v. Jones*, 31 F.3d 157, 164 (4th Cir. 1994)); *United States v. Jacobson*, 916 F.2d 467, 469 (8th Cir. 1990), *rev'd on other grounds*, 503 U.S. 540 (1992); *United States v. Trayer*, 898 F.2d 805, 808 (D.C. Cir. 1990).

Nor is there a right to be free from questioning during a criminal investigation. "The Fifth Amendment privilege against self-incrimination does not create a right to be free from interrogation, only a right to have one's incriminating statements excluded at

the time of trial if they were extracted involuntarily." *Burrill v. Harrington*, No. 82-

2428, 1983 U.S. Dist. LEXIS 11448, at *9 (D. Mass. Nov. 22, 1983) (district court

dismisses section 1983 complaint alleging that officers violated the plaintiff's

constitutional rights by accusing him of murder, investigating him, subjecting him to

polygraph tests, and disseminating comments that the police believed the plaintiff was a

suspect).

Notably too, despite Plaintiffs' desire, the Sixth Amendment provides no reference

point for Plaintiffs' alleged right to be informed of the investigation prior to indictment.

It does not "give citizens a constitutional right to be informed that they have become

suspects in a criminal investigation." *Chrisco v. Shafran*, 507 F. Supp. 1312, 1316 (D.

Del. 1981).

> Rather, the sixth amendment right "to be informed of the nature and cause
> of the accusation . . ." guarantees that a person who has been formally
> charged with a crime will be given sufficient details about the offense
> charged so as to permit him to adequately present his defense and to plead
> the judgment as a bar to any further prosecution for the same offense.

*Id.* (dismissing a section 1983 complaint alleging, in vague terms, that defendant-officers

violated the Sixth Amendment by informing the plaintiff he was a witness but not a

suspect in a crime).

Absent a constitutional right to be free from investigation, interrogation, or

becoming a suspect in a case, Plaintiffs suggest the investigation should have been

handled by Duke University Police or, alternatively, anybody but Gottlieb. (2d Amend.

Compl. 82, 84.) Yet, there is also no constitutional right to demand which department,

agency, or officer investigates a particular crime.  *See, e.g., Rogan v. Menino*, 175 F.3d 75, 78 (1st Cir. 1999) (plaintiff's claims against Boston police for ceding jurisdiction to transit authority regarding the investigation did not implicate a constitutional right).

Importantly, there is not even a *constitutional* right to have officials follow state statutes, regulations, policies, procedures, or general orders the agencies may have in place.  *See, e.g., McNabb*, 2001 U.S. Dist. LEXIS 13181, at *19-21.  Like Plaintiffs here, the plaintiff in *McNabb* complained that federal agents investigating him "fail[ed] to follow their agency regulations or procedures in conducting [a] search."  *Id.* at *19.  The Court, however, rejected that a "compliance" theory was rooted in the constitution:

> Although appealing, plaintiffs' position that an individual has a constitutionally protected right to have agency officials adhere to statutory and regulatory procedures during an investigation finds no support as a matter of law.  Violation of an agency rule or regulation does not automatically deny citizens a protected liberty or property interest.  If the inverse were true, the courts would be inundated with due-process claims.

*Id.* at *20-21.

## 2. No Fourth Amendment Violation

The only conceivable Fourth Amendment issue raised by Plaintiffs' Second Amended Complaint is whether Plaintiffs' compliance with the NTO amounted to a seizure and unlawful deprivation of liberty.  The answer is no.

Plaintiffs, along with their teammates, complied with an NTO to give cheek swabbings and submit to being photographed for potential identification.  (2d Amend. Compl. ¶¶ 404, 414-43, 596, Ex. 19.)  Securing this NTO and using it to focus on or eliminate potential suspects is "an important investigative procedure," *see* N.C. Gen. Stat.

§ 15A-271 *et. seq.* (official commentary to Article 14), however, does not unduly infringe upon the Fourth Amendment.

"Article 14, in which North Carolina General Statutes section 15A-271, *et. seq.* appears, was enacted in order to provide the State with a valuable new investigative tool to compel the presence of unwilling suspects for nontestimonial identification procedures, even though insufficient probable cause existed to permit their arrest." *State v. Coplen*, 138 N.C. App. 48, 53, 530 S.E.2d 313, 318 (2000) (citations and quotations omitted). Consistent with the Article's purpose, Plaintiffs' compliance with the Court's NTO eliminated them as potential perpetrators: they were not identified as attackers by the alleged victim in a photo array, nor supported as such through DNA evidence. (*See* 2d Amend. Compl. ¶¶ 660, 677, 812, 816-17, Ex. 24.) Pursuant to both state and federal courts, the NTO procedure followed in this case is constitutional.

The NTO procedure followed by Defendants does not have state or federal constitutional implications. Foremost, in *State v. Pearson*, 145 N.C. App. 506, 551 S.E.2d 471 (2001), the North Carolina Court of Appeals rejected an argument that an NTO for cheek swabbing and pubic hair needed to be supported by probable cause instead of the statutorily mandated reasonable suspicion found in N.C. Gen. Stat. § 15A-273:

> The taking of saliva and pubic hair is not as intrusive as a blood sample, which must be taken from below the body's surface. Saliva and hair are commonly seen and can be removed by the suspect rather than a technician. They can be quickly and easily removed without pain and, unlike blood removal, there is virtually no risk of medical complications. Moreover, hair

> and saliva are commonly deposited in public places, as hair sheds and
> saliva can be left while eating or when someone spits.

*Pearson*, 145 N.C. App. at 518, 551 S.E.2d at 479. Based on that reasoning, the Court

held "the taking of hair and saliva samples without a showing of probable cause did not

abridge either the North Carolina or United States Constitutions." *Id.* This case was

affirmed by the North Carolina Supreme Court in a unanimous decision. *See State v.*

*Pearson*, 356 N.C. 22, 566 S.E.2d 50 (2002). In affirming, the Court conclusively stated,

"[c]ollection procedures like those involved in the present case require only reasonable

suspicion to be constitutionally permissible." *Id.* at 39, 566 S.E.2d at 60 (citing *Hayes v.*

*Florida*, 470 U.S. 811, 817 (1985)). Thus, as of 2002 and through today, North Carolina

courts have held that reasonable suspicion is a sufficient constitutional safeguard for an

NTO.

        Federal courts have held precisely the same thing. In *In re Shabazz*, 200 F. Supp.

2d 578 (D.S.C. 2002), the plaintiff, a prison guard, was under investigation for engaging

in sexual relations with inmates. She moved to quash a subpoena from a grand jury

issued for a DNA cheek swabbing in order to test swabbing that against other DNA

collected during the investigation. *Id.* at 581-82. She argued that pursuant to the Fourth

Amendment any DNA could only be collected on the basis of probable cause, a standard

which the grand jury could not meet. The Court rejected this argument:

> [T]he privacy concerns that led the Court to require probable cause in those
> cases are not as pronounced in this case because a saliva swab is not as
> intrusive as a blood test or a surgical bullet-removal procedure. . . .
> Although the saliva swab involves a slight invasion of a person's bodily
> integrity, it is not a 'surgical procedure' and therefore does not fall within

*Schmerber's* threshold requirement of probable cause. Thus, no showing of probable cause is needed before the grand jury may issue a subpoena duces tecum requiring Petitioner to submit a saliva sample.

*Id*. at 584 (citations omitted).

The Court did, however, determine that the search or seizure instituted by the grand jury must "be based on reasonable individualized suspicion that Petitioner was engaged in criminal wrongdoing." *Id*. at 585. In addition, the Court held that there should be a balancing of interests under the circumstances:

> To determine the reasonableness of procedures to obtain physical evidence, the 'extent to which the procedure may threaten the safety or health of the individual' and the 'extent of intrusion upon the individual's dignitary interests in personal privacy and bodily integrity' should be 'weighed against . . . the community's interest in fairly and accurately determining guilt or innocence.' A balancing of these factors in this case reveals that the procedure used to obtain the saliva swab is plainly 'reasonable' under the Fourth Amendment. First, there is no evidence that the saliva swab presents any safety or health risk to the Petitioner. Second, the saliva sample is a relatively minor intrusion into Petitioner's dignitary interest in personal privacy and bodily integrity. The sample is obtained by simply swabbing the inside of her mouth and does not involve any risk of pain or embarrassment. On the public interest side of the equation, the grand jury has a clear interest in obtaining the DNA as highly probative evidence of identifying or eliminating Petitioner as a suspect in the case. The saliva swab is much less intrusive than the blood sample procedure upheld by the Court in *Schmerber*. And it is easily distinguishable from the operation in *Winston*, which was potentially dangerous and was of uncertain evidentiary value. Thus, the means and procedures used to obtain the saliva sample are 'reasonable' under the Fourth Amendment.

*Id*. at 585 (citations omitted).

The same reasons the *Shabazz* and *Pearson* courts rejected a Fourth Amendment claim exist here. Due to Mangum's allegation and the early DPD investigation indicating that all of the party attendees and alleged attackers were lacrosse players, there was a

reasonable suspicion that anyone present at the party could have committed the crime. Gottlieb, Himan, and the District Attorney's office prepared the NTO, and Judge Stephens found the information alleged to support a reasonable suspicion of criminal activity. (2d Amend. Compl. ¶¶ 404, 414-43, 596.) The same procedural safeguards in *Shabazz* were statutorily used with Plaintiffs here, and Plaintiffs were eliminated as suspects of any criminal activity.

### 3.    No Due Process Violation

In *Albright v. Oliver*, 510 U.S. 266 (1994), the Supreme Court held that a plaintiff's constitutional claim regarding a criminal prosecution must be adjudged pursuant to the Fourth Amendment, which explicitly pertains to "matter[s] of pretrial deprivations of liberty," *id.* at 274-75, and not the substantive due process clause of the Fourteenth Amendment. *Id.* at 273. The Fourth Circuit has followed suit, looking only to the Fourth Amendment for matters of pretrial deprivations of liberty. *See Taylor v. Waters*, 81 F.3d 429, 436 (4th Cir. 1996) (determining that *Albright* "held that no substantive due process right against prosecution on less than probable cause exists under the Fourteenth Amendment.").

Nonetheless, the judicial system has a familiar response to allegations of injury to reputation under the constitution. It is not recoverable. To state a claim for infringement of privacy rights or deprivation of liberty under the Due Process Clause, even discussing an investigation, Plaintiffs must allege harm to their reputation plus the loss of a liberty or property interest. *See Smith v. Coughlin*, 727 F. Supp. 834, 841 (S.D.N.Y.

1989) ("*Paul* [*v. Davis*, 424 U.S. 693 (1975),] holds that the plaintiff must demonstrate damage to reputation and the impairment of a right or status recognized by state law— that is, he must show 'stigma plus'—in order to establish a constitutional deprivation." (citing *Neu v. Corcoran*, 869 F.2d 662, 667 (2d Cir. 1989)).

> The interests for which plaintiff claims protection do not rise to that level. There is no constitutional protection against the disclosure of the fact of an ongoing investigation. As in *Paul*, plaintiff's "claim is based, not upon any challenge to the State's ability to restrict his freedom of action in a sphere contended to be 'private,' but instead on a claim that the State may not publicize a record of an official act such as an arrest," or, in this case, an investigation or accusation. Thus, defendants' motions to dismiss the complaint are granted with respect to the privacy right claim.

*Smith*, 727 F. Supp. at 843 (emphasis added) (complaint that inmate's daughter's allegations that she was sexually assaulted during a visit harmed the inmate's reputation, caused a loss of privileges and job, and resulted in a transfer was dismissed as not protected by constitution). This principle is fundamental across the Circuits.

In *Baker v. Howard*, 419 F.2d 376, 377 (9th Cir. 1969), the "plaintiff alleged that after police had investigated a 'suspicious incident' involving him and had concluded that no crime had been committed, the police deliberately released to KAGO a police report containing 'libelous and false statements' suggesting that plaintiff had committed a crime." *Id.* The invasion of privacy there was held to be "not . . . so flagrant that it calls for invocation of the Constitution." *Id.*; *see also Jefferies v. Hogan*, No. 1:07-CV-379, 2007 U.S. Dist. LEXIS 93177 (W.D.N.C. Dec. 7, 2007) (holding that even inaccurate or libelous accounts to media of plaintiff's actual arrest by officers states only a state-law libel claim; it does not invoke constitutional rights).

In *Kipps v. Ewell*, 391 F. Supp. 1285 (W.D. Va. 1975), a fifteen year-old's body was found decomposing in a field. The plaintiff's arrest and trial for the murder received a large amount of publicity due to the "noticeable" public demand and pressure for results. *Id.* at 1287, n.1. The plaintiff was eventually acquitted and filed a section 1983 action. *Id.* at 1286. Plaintiff sought to impose liability on defendants for officers' comments to the media, including that an officer "had been working his head off to solve this case," as well as for the release of his photo to the papers. *Id.* at 1286-87. Reviewing these claims against the officer, however, the Court relied on precedent from the Second and Ninth Circuits regarding the release of information regarding a criminal investigation and held that the conduct not only must be beyond the limits of proper police procedure, but the publicity must actually affect the result *at trial*. *Id.* at 1290.

Here, Plaintiffs were never tried or even charged with any crime; thus, any claim regarding or arising from comments by Defendants or their subordinates regarding the investigation are *constitutionally* infirm. *See Rosenberg v. Martin*, 478 F.2d 520 (2nd Cir. 1973) (analyzing publicity by officers as implicating right to fair trial and finding no violation where multiple inflammatory comments were made to media implying guilt of accused). "We must constantly remain aware . . . that the Constitution does not provide a remedy for every wrong that occurs in society. Rather, it is a framework for governance that protects those rights that are most cherished among free individuals." *Eagle v. Morgan*, 88 F.3d 620, 627 (8th Cir. 1996). The Eighth Circuit plainly stated this controlling principle in a section 1983 case where officers were alleged to have violated

19

the plaintiff's right to privacy by disclosing the existence of a previously expunged crime. Far from condoning the officers' precipitating actions designed to "publicly trample upon another man's reputation," *id.* at 627, the Court nonetheless rejected any privacy interest in the information. *Id.* at 626. "Criminal activity is . . . not protected by the right to privacy." *Id.* at 628 (citation and quotation omitted).

### 4. No Privileges and Immunities Clause Violation
(Tenth Cause of Action)

The Tenth Cause of Action is based squarely upon an attempt to allege deprivation of only the Privileges and Immunities Clause. Plaintiffs also allege a violation of this Clause as one basis for their claims in the Eleventh and Thirteenth Causes of Action. Because Plaintiffs fail to state a claim for a violation of the Privileges and Immunities Clause, their Tenth Cause of Action must be dismissed.

"The Privileges and Immunities Clause of the United States Constitution provides that 'the Citizens of each State shall be entitled to all Privileges and Immunities of Citizens of the several States.'" *Salem Blue Collar Workers Assoc. v. City of Salem*, 33 F.3d 265, 267 (3rd Cir. 1994) (quoting U.S. Const. art. IV, § 2). "[T]he 'privileges and immunities' entitled to constitutional protection have been described as those that are 'fundamental,' or 'essential,' to the maintenance and vitality of the Union." *Alerding v. Ohio High School Athletic Assoc.*, 779 F.2d 315, 317 (6th Cir. 1985) (internal citations omitted). "Up to this point in time, the Supreme Court has dealt only with prohibitions involving the practice of trades and businesses—private employment." *Salem Blue Collar Workers Assoc.*, 33 F.3d at 268; *see also Friedman v. Supreme Court of Virginia*,

822 F.2d 423, 426 (4th Cir. 1987) ("Thus, the Court has found on many occasions that the Clause guarantees to the citizens of the nation that they may do business within a state on the same terms as the citizens of that state."); *Alerding*, 779 F.2d at 317 ("Most commonly, such privileges have included those involving the right to pursue a livelihood or economic opportunities.").

Plaintiffs have been less than clear in identifying what fundamental or essential right Defendants' conduct has supposedly infringed upon. Plaintiffs do not complain about any of Defendants' actions or policies infringing upon business or trade rights, favoring one state's citizens over another. In the context of a privileges and immunities argument, the Sixth Circuit has certainly rejected the right to participate in "interscholastic sports" as "fundamental or basic to the nation's vitality or interstate harmony." *See Alerding*, 779 F.2d at 317.

Further, Plaintiffs seem to interchange discrimination against "Duke" students and "out-of-state" students as if there is no difference in the privileges and immunities context. (*See* 2d Amend. Compl. ¶¶ 108, 113, 115, 1004.) Plaintiff Matthew Wilson, a Duke student who is a citizen and resident of North Carolina, (*see id.* ¶ 7), has no claim under the Privileges and Immunities Clause. *See Stoianoff v. Comm'r of Motor Vehicles*, 107 F. Supp. 2d 439, 446-47 (S.D.N.Y. 2000) ("The Clause does not permit individuals to pursue actions against their own states.") (citing *Zobel v. Williams*, 457 U.S. 55, 59, n.5 (1982). Also, allegations regarding Duke students, as opposed to out-of-state residents, cannot support a claim under the Privileges and Immunities Clause. *See*

*Chavez v. Illinois State Police*, [251 F.3d 612, 649](#) (7th Cir. 2001) ("Plaintiffs' complaint does not allege that the ISP discriminates against non-residents, . . . but that the ISP targets all African-American and Hispanic motorists, regardless of their state of origin. This allegation does not state a claim under the Privileges and Immunities Clause of Article VI. [sic]").

Without a constitutional foothold in the area of investigating criminal activity, Plaintiffs' reliance on the Privileges and Immunities Clause is misplaced. Therefore, Plaintiffs do not state a claim under the Privileges and Immunities Clause. *See, e.g., Gravitte v. North Carolina Police Benevolent Assoc.*, [33 Fed. Appx. 45, 49](#), [2002 U.S. App. LEXIS 4826](#) (4th Cir. 2002) (dismissing an officer's challenge to a ticketing policy involving quotas as violative of the Privileges and Immunities Clause, the Court noted that the allegations of discrimination against citizens of other states and that plaintiff lacked standing to raise a Fourth Amendment challenge of others who might be impacted by the policy).

### B.     No Claims for Bystander and Supervisory Liability

Plaintiffs attempt to hold Defendants liable both for bystander and supervisory liability. Amidst Plaintiffs failure to allege a violation of a constitutional right, which is fatal to both of these Causes of Action, based on the Second Amended Complaint, Plaintiffs also fail to link their facts to the substantive elements of these theories of liability. Therefore, these Causes of Action must be dismissed.

#### 1.     No Bystander Liability
(Eleventh Cause of Action)

Plaintiffs seek to tax the entire DPD with their Eleventh Cause of Action for bystander liability. (*See* 2d Amend. Compl. ¶ 1021) ("The Durham Police Department Supervising Defendants and their subordinate officers within the Durham Police Department ("Durham Bystander Officers") . . . .") Plaintiffs aver that Defendants, among others, failed to prevent violations of Plaintiffs' constitutional rights of which they had knowledge and that occurred in their presence. (*See id.* ¶¶ 1023, 1028.) "Although personal liability premised on an omission is a disfavored concept[;] . . . [t]he concept of bystander liability is premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." *Randall v. Prince George's County*, 302 F.3d 188, 203 (4th Cir. 2002). "An officer possesses an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers." *Id.* (quotations and citation omitted). "This standard recognizes that, in certain limited situations, bystanding officers are obliged to act." *Id.* at 204.

For several reasons, the circumstances of this case fall outside those limited situations where officers are under a duty to act. First, as with all claims rooted in section 1983, an officer must be violating a person's constitutional rights before there is an affirmative constitutional duty upon another officer to stop it. *See Willis v. Oakes*, 493 F. Supp. 2d 776, 783-84 (W.D. Va. 2007) (rejecting bystander liability claim where participating officer was held not to have violated the plaintiff's constitutional rights); *Blair v. County of Davidson*, No. 1:05-CV-11, 2006 U.S. Dist. LEXIS 34253, at *19

(M.D.N.C. May 10, 2006) (plaintiff's rights not violated, so no bystander liability for officer at scene).

Second, bystander liability can only be premised on knowledge that a violation of someone's rights is about to occur or is occurring. *See Randall*, 302 F.3d at 203-04; *see also Ibarra v. Harris County*, 243 Fed. Appx. 830, 835 n.8 (5th Cir. 2007) (dismissing claim against officers unaware of violation). That awareness or knowledge, in the vast majority of cases, has been first-hand, direct knowledge of a violation occurring in the officer's *immediate vicinity*. *Torres-Rivera v. O'Neill-Cancel*, 406 F.3d 43, 51-52 (1st Cir. 2005) (duty to stop violation of rights at the scene), *rev'd on other grounds by* 524 F.3d 331 (1st Cir. 2008); *Randall*, 302 F.3d at 203-05 (officer in station house where plaintiff allegedly detained); *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) (officer at scene of stop where beating said to occur); *Thompson v. Boggs*, 33 F.3d 847, 857 (7th Cir. 1994) (officer at scene); *Masel v. Barrett*, 707 F. Supp. 4, 9 (D.D.C. 1989) (at scene). While Plaintiffs claim that everyone in the chain of command, and essentially all DPD officers, knew of constitutional violations occurring during the investigation, Plaintiffs do not allege the proximity or vicinity of any officer to these foundational violations. Plaintiffs here were not arrested, detained, or beaten in the proximity of any other officer; there is no basis for such speculation. As such, Plaintiffs' bystander claim, which essentially asks the Court to impose a duty upon all officers to monitor the investigations of every other officer, must fail. *See Wilson v. Kittoe*, 229 F. Supp. 2d 520, 538 (W.D.

Va. 2002) (officer not liable for failing to investigate the circumstances surrounding an arrest).

Third, to the extent that Plaintiffs' bystander liability claim rests upon the actions of Nifong, the gubernatorially-appointed Durham County District Attorney, Defendants did not have the authority or power to control him. "Power," "authority," or "reasonable opportunity to prevent the harm," is one of the key elements to a claim for bystander liability. *See Randall*, 302 F.3d at 203-04. For the reasons aptly stated in the City of Durham's Memorandum, Nifong is an employee of the state of North Carolina, not the DPD. As a licensed lawyer, versed in constitutional law, and an employee of the state, any officer of the DPD lacks the authority or power to force Nifong to stand down. As such, Plaintiffs' claim must fail.

Last, in the absence of clearly identifiable and specific constitutional infringements alleged in the Second Amended Complaint, as well as binding legal authority that officers are supposed to monitor and intercede on allegedly wayward investigations, Defendants are certainly shielded from liability here on the basis of qualified immunity. There is no support that Defendants were under a clearly established duty to intercede in an ongoing investigation. *See Anderson*, 483 U.S. at 639-40; *Kittoe*, 229 F. Supp. 2d at 538.

### 2. No Supervisory Liability
(Thirteenth Cause of Action)

Framing and forecasting the level of personal involvement against a supervisor necessary to state a claim for supervisory liability is arduous because "respondeat

superior does not apply in these actions"; rather, in the supervisory context, "[s]uch liability must be based on a showing of some personal responsibility for the conduct of [one's subordinates]."  *Williams v. Vincent*, 508 F.2d 541, 546 (2d Cir. 1974).  Here, Plaintiffs fail to state a supervisory liability claim because personal involvement is inadequately and unsoundly pled.

### (i).    Supervisory Liability Inadequately Pled

When pleading claims of supervisory liability, the burden is squarely on the plaintiff to allege a specified affirmative act or omission against each defendant, not rely on group-think, team action, or mere chain of command.  First, "courts have consistently held that, where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted."  *Humphreys v. Nager*, 962 F. Supp. 347, 351 (E.D.N.Y. 1997); *see also Tolley v. Kivett*, No. 1:01-CV-410, 2002 U.S. Dist. LEXIS 24368, at *7 (M.D.N.C. July 1, 2002).  Plaintiffs have sued Laird Evans, individually, but fail to make any allegation beyond jurisdiction and his capacity with the Durham Police Department.  (2d Amend. Compl. ¶¶ 58, 68, 71.)  This type of *im*personal pleading is woefully insufficient to meet Plaintiffs' obligation to factually support the elements of their claims.  *See Crawford v. Dep't of Corrections*, No. 07-C-840, 2008 U.S. Dist. LEXIS 6048, at *6-7 (E.D. Wis. Jan. 16, 2008) ("Because the complaint does not allege that defendant Nygren caused or participated in any

constitutional violation, she will be dismissed from this action for lack of personal involvement.").

Second, Plaintiffs' "group" or "team" pleading methodology, (*see* 2d Amend. Compl. ¶¶ 66-68, 143-44, 164, 256, 258-59, 461, 510, 579, 623, 633, 950, 1021, 1025-26, 1028, 1069, 1072, 1074, 1080-81, 1083-84, 1087, 1090, 1102, 1108-09, 1113, 1115-16, 1119-22, 1126, 1129-31, 1136-38, 1157-58, 1161-62, 1172-73, 1176-82, 1269-76, 1284-88, 1302, 1331, 1374-75 (noting "Durham Police Supervising Defendants)), is not sufficient notice pleading against Baker, Chalmers, Council, Evans, Lamb, Mihiach, Ripberger, and Russ and lowers Plaintiffs' burden of proof below the appropriate threshold. *See Jones v. Williams*, 297 F.3d 930, 939 (9th Cir. 2002) ("We reject the idea that mere presence at a search or membership in a group, without personal involvement in and a causal connection to the unlawful act, can create liability under section 1983.").

Here, although peppering Defendants' names at points in the Second Amended Complaint, the vast majority of allegations concerning violations of rights are leveled against them as a group, collectively referred to as the "Durham Police Supervising Defendants," (2d Amend. Compl. ¶ 68), a group subsumed in the "Durham Police Department Defendants," (*id.* ¶ 67), that is part of the larger "City of Durham Defendants," (*id.* ¶ 66), which is finally a component of the all-encompassing "Consortium." (*Id.* ¶ 77.) This Venn diagram of liability is properly limited, if proper at all, as a short-hand way of alleging liability against the City, through the official or collective actions of "policymakers," "final decisionmakers," or "supervisors." *See*

*Mikkelsen v. DeWitt*, [141 Fed. Appx. 88, 90-91](#) (4th Cir. 2005) (Plaintiff's characterization that sheriff "is a 'policy-maker' does not quite capture the relevant issue. . . . It is not the right question to ask when confronting a supervisor's potential liability in his individual capacity."); *see also Chuman v. Wright*, [76 F.3d 292, 295](#) (9th Cir. 1996); *Wisler v. City of Fresno*, No. CV F 06-1694, [2007 U.S. Dist. LEXIS 18666, at *14-15](#) (E.D. Cal. Mar. 16, 2007).

Third, it is insufficient to rest supervisory liability on allegations of the chain of command or who supervised whom—a quintessential example of an improper *respondeat superior* theory. A complaint that attempts to shoulder personal liability on such allegations should be dismissed. *See Williams*, [508 F.2d at 546](#) (superintendent of prison not personally liable where a section 1983 complaint regarding an assault does nothing more than allege that he was in charge of the prison); *see also Evancho v. Fisher*, [423 F.3d 347, 354](#) (3rd Cir. 2005) ("Evancho's amended complaint merely hypothesizes that Attorney General Fisher may have been somehow involved simply because of his position as the head of the Office of the Attorney General. This conclusion, however, is not a reasonable inference to be drawn from facts alleged in Evancho's complaint."). A proper section 1983 complaint for personal liability "must link each named defendant with some *affirmative* act or omission that demonstrates a violation of plaintiff's federal rights." *Whisler*, [2007 U.S. Dist. LEXIS 18666, at *11-12](#).

### (ii). Supervisory Liability Unsoundly Pled

Personal involvement by a supervisor in the deprivation of a constitutional right is properly alleged only when three elements are factually supported:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff;

> (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and

> (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotations omitted).

Apart from the knowledge component of the first element, which Plaintiffs attempt to show merely by demonstrating who was in the chain of command, Plaintiffs have failed to demonstrate any actual constitutional infringement as a matter of law. *See supra* Section III.A-D; *see also Harris v. Virginia Beach*, 11 Fed. Appx. 212, 214-15 (4th Cir. 2001) (affirming district court's dismissal of supervisory liability claim against a city manager, former and current police chiefs, a captain, and a sergeant where plaintiff's complaint failed to allege personal involvement of each of the individuals); *Reaves v. Fair Bluff*, No. 7:03-CV-103, 2005 U.S. Dist. LEXIS 43084, at *12 (E.D.N.C. May 12, 2005) (where plaintiff failed to make "any non-frivolous allegations of personal involvement against the individual defendants," and instead named a defendant "solely on the basis of respondeat superior," the action against the city manager, former and current police chiefs, and a sergeant must be dismissed). "Section 1983 does not permit recovery for an attempted constitutional violation; only a claim of actual deprivation is

cognizable under the statute." *Holt Cargo Sys. v. Delaware River Port Auth.*, [20 F. Supp. 2d 803, 834](E.D. Pa. 1998) (citing *Hale v. Townley*, [45 F.3d 914, 920](5th Cir. 1995)); *see also Serna v. Colorado Dep't of Corrections*, [455 F.3d 1146, 1151](10th Cir. 2006) (establishing that supervisory liability claim requires plaintiff to "first show the supervisor's subordinates violated the constitution.").

"Merely alleging . . . deliberate indifference 'does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support a finding of deliberate indifference.'" *W.E.T.*, [2007 U.S. Dist. LEXIS 68376, at *33](quoting *Young v. City of Mt. Ranier*, [238 F.3d 567, 576-77](4th Cir. 2001)).  "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, [195 F.3d 692, 695](4th Cir. 1999).  This heavy burden of proof may not be established "by pointing to a single incident or isolated incidents, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities."  *Slakan v. Porter*, [737 F.2d 368, 373](4th Cir. 1984) (citations and quotations omitted).

Allegations that Defendants should have done more or must have known of the violations befalling Plaintiffs do not demonstrate necessary deliberate indifference.  *See Pacelli v. Devito*, [972 F.2d 871, 878](7th Cir. 1992) ("The 'should have known' theory that [the plaintiff] pursues is both legally deficient and inconsistent with the demands of effective administration.").  "[D]elegation is essential to bureaucracy; a decision to delegate does not violate the Constitution[.]"  *[Id.](at 877-78).  Allegations of deliberate

indifference also ring hollow absent an actual duty to supervise the presumptive wayward subordinate. *See Serna*, [455 F.3d at 1154](#) ("Our cases make clear that failure to supervise is only actionable under § 1983 against a defendant who had a duty to supervise."). Thus, concerns of delegation to Nifong or an inability to supervise him are not supervisory failures under the constitution—no one in the DPD has a duty to supervise him, in particular Defendants.[4] Further, receiving updates or reports about the investigation, whether from Nifong, Duke, or other DPD officers, falls short of alleging deliberate indifference. *See id.* at 1153-54 ("[T]he fact that [director of prisons] received reports about the operation does not suggest he directed the application of force against [the plaintiff].") Simply put, repeatedly pasting the phrase "deliberate indifference" through over 1300 allegations does not actually create the facts, circumstances, or actions of Defendants to state a claim for it.

## IV.   NO FEDERAL CONSPIRACY
(Fifteenth, Sixteenth, and Seventeenth Causes of Action)

### A.   No 42 U.S.C. § 1983 Conspiracy
(Fifteenth Cause of Action)

In order to establish a civil conspiracy under section 1983, a plaintiff "must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in a deprivation of [plaintiff's] constitutional right . . . ." *Hinkle v. City of Clarksburg, W. Va.,* [81 F.3d 416, 421](#) (4th Cir. 1996) (citing *Hafner v. Brown,* [983 F.2d 570, 577](#) (4th Cir.1992)).   "[C]ourts have . . .

---

[4] Indeed, North Carolina state and constitutional law places district attorneys beyond anyone's supervision, save that of the courts and the State Bar.

required that plaintiffs alleging unlawful intent in conspiracy claims under § 1985[] or § 1983 plead specific facts in a nonconclusory fashion to survive a motion to dismiss." *Gooden v. Howard County*, 954 F.2d 960, 969-70 (4th Cir. 1992) (en banc).

Without specifically stating how and naming which Defendants violated their rights, Plaintiffs' blanket allegations against all Defendants fall woefully short of the factual specificity necessary to allege a claim for conspiracy. (*See* 2d Amend. Compl. ¶¶ 1150(A)-(N).) Without specific allegations against each Defendant, Plaintiffs' claims for conspiracy must be dismissed. *See supra* Section III.F.1.

Further, "'[i]f there is no violation of a federal right, there is no basis for a section 1983 action' or civil conspiracy action under § 1983." *Powell v. Keller,* No. 5:03-CV-160, 2004 U.S. Dist. LEXIS 30266, at *12 (W.D.N.C. Aug. 18, 2004) (quoting *Clark v. Link*, 855 F.2d 156, 161 (4th Cir. 1988)). As fully discussed in Section III, *supra*, Plaintiffs fail to allege that Defendants violated Plaintiffs' constitutional rights. Without allegations of such a violation, Plaintiffs' claim for conspiracy pursuant to section 1983 should be dismissed.

**B.     No 42 U.S.C. § 1985 Conspiracy**
(Sixteenth Cause of Action)

There is a "heightened pleading standard for § 1985 conspiracy claims." *Mbadiwe v. Union Mem'l Reg'l Med. Ctr., Inc*., 3:05CV49-MU, 2005 U.S. Dist. LEXIS 31674, at *7 (W.D.N.C. Nov. 28, 2005); *see Brissett v. Paul*, No. 97-6898, 1998 U.S. App. LEXIS 6824, at *10 (4th Cir. April 6, 1998) ("The threshold requirement is very high . . . .").

"Because of the high threshold that a plaintiff must meet to establish a prima facie case

under section 1985, courts often grant motions of dismissal." *Davis v. Hudgins*, [896 F. Supp. 561, 571](E.D. Va. 1995) (citations omitted).  The Fourth Circuit has "specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *Simmons v. Poe*, [47 F.3d 1370, 1377](4th Cir. 1995); *see also Jenkins v. Trustees of Sandhills Cmty. College*, [259 F. Supp. 2d 432, 445](M.D.N.C. 2003), *aff'd*, [80 Fed. Appx. 819](4th Cir. 2003). "Concrete facts" means facts showing some act of involvement, not mere acquiescence. *See Simmons*, [47 F.3d at 1378](rejecting as "wholly unsupported by the law" an argument that defendant was participant in section 1985(3) conspiracy because of "wilful [sic] blindness").

Plaintiffs in this case fail to state specific facts against Defendants to survive a motion to dismiss; in fact, Plaintiffs fail to state any specific allegation of participation in a conspiracy against even one of these Defendants.  Plaintiffs merely state, in a conclusory manner, that everyone from DNASI to Duke and the Durham Police Supervising Defendants "conspired and/or entered into express and/or implied agreements, understandings, or meetings of the minds among themselves for the purpose of impeding, hindering, obstructing or defeating the due course of justice...."  (2d Amend. Compl. ¶ 1158).  This blanket allegation against nearly fifty defendants, falls woefully short of stating a claim for conspiracy against Defendants under section 1985.

        **1.**      **No Protected Class**
                  (Sixteenth Cause of Action, Sections I and III)

Claims for conspiracy pursuant to sections 1985(2), clause 2, and 1985(3) require that plaintiffs be members of a protected class. *See Hoidink El Bey v. Celebration Station*, 3:02-CV-461, 2006 U.S. Dist. LEXIS 72479, at *9-10 (W.D.N.C. Sept. 29, 2006) (noting that section 1985(2) and section 1985(3), "which cover general equal protection violations, … require proof of a racial or otherwise class-based discriminatory animus behind the defendant's actions." (citing *Griffin v. Breckenridge*, 403 U.S. 88 (1971)). "In construing this requirement neither the Supreme Court nor the Fourth Circuit has identified any classes other than racial or religious classes." *Trerice v. Summons*, 755 F.2d 1081, 1085 (4th Cir. 1985) (military prisoners not "protected class"); *see also Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th Cir. 1985) ("It is obvious that . . . the class protected can extend no further than to those classes of persons who are, so far as the enforcement of their rights is concerned, in unprotected circumstances similar to those of the victims of Klan violence." (citation and quotation omitted)); *Harrison v. KVAT Food Mgmt.*, 766 F.2d 155, 161-62 (4th Cir. 1985) (declining to expand section 1985(3) to include Republicans or Democrats as a protected class); *Cloaninger v. McDevitt*, No. 1:06-CV-135, 2006 U.S. Dist. LEXIS 65913 (W.D.N.C. Sept. 3, 2006) ("As recognized by the controlling law in the Fourth Circuit, *Harrison v. KVAT* [,] it remains that the only class of persons protected by Section 1985(3) are African-Americans."). As evident from the Court's ruling in *Harrison*, Plaintiffs cannot state a claim for conspiracy under section 1985(2), clause two, and (3) because, as white Duke lacrosse players, they are not members of a protected class. *See Kush v. Rutledge*, 859 F.2d 732 (9th Cir. 1988)

(football players are not a protected class); *Moore v. Denver*, 744 F. Supp. 1028 (D. Colo. 1990) (Caucasian males are not a protected class).

In a crafty attempt to establish protected class status beyond their race, Plaintiffs claim Defendants alleged acts were "motivated by invidious animus based upon Plaintiffs' state citizenship.[5] (2d Amend. Compl. ¶1160, 1164.) However, courts have extended the scope of a section 1985 claim in very limited circumstances, and there is no case where state citizenship has been recognized as a cognizable protected class. Indeed, to receive the protection of section 1985, Plaintiffs must state, "a well-defined class and that such discrimination [by Defendants] affects a traditionally disadvantaged group, is irrational, or unnecessarily burdens [Plaintiffs'] exercise of a fundamental right. A class is recognized for purposes of the class-based animus requirement only when it is composed of a segment of the community which is distinctive and identifiable by reference to any objective criteria." *Rolon v. Rafael Rosario & Assocs., Inc.*, 450 F. Supp. 2d 153, 161 (D.P.R. 2006); *see Burnett v. Brown*, No. 1:94-CV-236, 1995 U.S. Dist. LEXIS 20135 (W.D.N.C. Dec. 22, 1995) ("To simply contend that attorney defendants conspired with numerous judges at two levels of the state judicial system to deprive plaintiffs of the right to access to the courts or exercise other civil rights because of their son's parentage being one-half Hawaiian/Chinese and one-half Caucasian, is not sufficient."). Because state citizenship is not a traditionally disadvantaged group, Plaintiffs' attempt to establish this classification should be rejected.

---

[5] Interestingly, Plaintiff Matthew Wilson is a citizen and resident of North Carolina. (2d Amend. Compl. ¶ 7.)

### 2. No Racial Animus
#### (Sixteenth Cause of Action, Sections I and III)

Plaintiffs attempt to claim that the alleged acts of Defendants were "motivated by invidious animus." (2d Amend. Compl. ¶¶ 1160, 1164.) However, Plaintiffs fail to allege any specific facts suggesting that any one of these Defendants harbored any animus toward Plaintiffs or exploited any such animus in the Durham community; Plaintiffs focus their allegations regarding motive entirely on the alleged targeting of Duke students by the City and Nifong's desire to get elected. (*Id.* ¶¶ 171-76, 478-95.) These allegations, however, are wholly unrelated to Plaintiffs' race. Conclusory allegations that "one or more of these Defendants engaged in overt acts that were motivated by invidious racial animus," (*id.* ¶¶ 448, 463), without any alleged factual support, are insufficient to state a claim for individual liability." *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993); *Jordan v. Alternative Resources Corp.*, 458 F.3d 332 (4th Cir. 2006).

### 3. No Witness Tampering
#### (Sixteenth Cause of Action, Section II)

Plaintiffs attempt to state a federal claim for witness tampering in the second section of the Sixteenth Cause of Action; however, this claim also fails. 42 U.S.C. § 1985(2) provides a right of action for a plaintiff damaged when "two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness <u>in any court of the United States</u> from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully." (emphasis added).

The first part of § 1985(2) creates a cause of action against conspiracies to interfere with federal judicial proceedings. The second part of § 1985(2) is directed at conspiracies which seek to subvert state judicial proceedings, with the intent to deny to any citizen the equal protection of the laws. 42 U.S.C. § 1985(2). Although no showing of a class-based discriminatory animus is required to state a claim under the first part of § 1985(2), which relates to *federal* court proceedings, *Kush v. Rutledge*, 460 U.S. 719, 103 S. Ct. 1483, 75 L. Ed. 2d 413 (1983), the "intent to deny . . . equal protection" language which provides the source of part 1985(3)'s class-based animus requirement, *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S. Ct. 1790, 1798, 29 L. Ed. 2d 338 (1971), is found in the state proceedings portion of § 1985(2). Reading *Kush* and *Griffin* together, it is clear that a claim under the state proceedings portion of § 1985(2) requires the showing of a class-based animus. *Penry v. Hartford Fire Ins. Co.*, 662 F. Supp. 792 (E.D.Tex. 1987).

*Martin v. Williams,* No. 5:95-CV-372, 1995 U.S. Dist. LEXIS 17386, at *11-12

(E.D.N.C. Nov. 13, 1995) (emphasis in original).

In the Second Amended Complaint Plaintiffs fail to identify which of the two clauses of 42 U.S.C. § 1985(2), they rely upon to support their claims for witness tampering. (2d Amend. Compl. ¶ 1161.) However, the second section of Plaintiffs' Sixteenth Cause of Action tracks the language of clause one of 42 U.S.C. § 1985(2). (*Id.*) Specifically, Plaintiffs' Second Amended Complaint uses the following language straight from clause one: "by force, by intimidation, and threats, from testifying freely, fully, and truthfully . . . ." (*Id.*) Further, the Sixteenth Cause of Action fails to track any language from the second clause of § 1985(2), which allows for obstruction of justice claims in state court proceedings.

Plaintiffs' witness tampering claim under clause one of section 1985 fails because the acts complained of in the Second Amended Complaint took place in state, not federal

court.  (2d Amend. Compl. ¶¶ 815, 1148(M).)  Further, Plaintiffs cannot state a claim

under clause two of § 1985(2) because Plaintiffs are not members of a protected class,

and they fail to allege a recognizable racial animus.[6]  *See supra* Section IV.B.1 & 2.  For

these reasons, Plaintiffs' claims under section 1985 should be dismissed.

### C.      No 42 U.S.C. § 1986 Conspiracy

The "[v]iability of a § 1986 claim is based on the antecedent § 1985 claim.  If the

[§] 1985 claim is dismissed, the § 1986 claim also fails." *Savage v. N.C. Dep't. of Corr.*,

No. 5:06-CV-171, 2007 U.S. Dist. LEXIS 73340, at *15 (E.D.N.C. Sept. 29, 2007)

(citing *Buschi*, 775 F.2d at 1243); *see also Trerice*, 755 F.2d at 1085 ("A cause of action

based upon § 1986 is dependent upon the existence of a claim under § 1985.").  In this

case, Plaintiffs fail to state a claim for conspiracy pursuant to section 1985, thus, their

section 1986 claim must be dismissed.

### V.    STATE LAW CLAIMS

#### A.      No Intentional Infliction of Emotional Distress
(Twentieth Cause of Action)

Plaintiffs attempt to hold Lamb and Hodge, along with eighteen other defendants,

for intentional infliction of emotional distress.  With regard to Hodge, Plaintiffs allege

that he was one of a group that made false statements about them and their teammates.

(2d Amend. Compl. ¶¶ 809, 1214.)  There is no indication, however, as to what conduct

---

[6] In an attempt to state a claim under the second clause of section 1985(2) and section 1985(3), Plaintiffs allege that Defendants actions were "motivated by invidious racial animus."  (2d Amend. Compl. ¶¶1159-60, 1163-64).  However, this claim is not made in the section of Plaintiffs' Sixteenth Cause of Action.

allegedly supports this claim against Lamb. Indeed, outside of the caption, Defendant Lamb's name does not appear in the paragraphs contained in this cause of action, (*id*. ¶¶ 1213-22); and he has notice of the nature of the basis of this claim against him.

While Lamb's name is mentioned a few times in Plaintiffs' Second Amended Complaint, Plaintiffs have not attributed any conduct to him sufficient to satisfy the element of extreme and outrageous conduct required under North Carolina law. As fully discussed at pages 22-26 of the Memorandum in Support of Hodge's Motion to Dismiss, which is fully incorporated herein by reference, "a claim for intentional infliction of emotional distress exists when a defendant's conduct exceeds all bounds usually tolerated by decent society[.]" *Watson v. Dixon*, 130 N.C. App. 47, 52, 502 S.E.2d 15, 19 (1998) (quotations and citations omitted). Conduct is extreme and outrageous when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Briggs v. Rosenthal*, 73 N.C. App. 672, 677, 327 S.E.2d 308, 311 (1985) (quotations and citation omitted). No such allegations are lodged against Lamb here, and this claim against, if Plaintiffs even intended to assert one, should be dismissed.

## B. No Aiding and Abetting a Breach of Fiduciary Duty
### (Twenty-third Cause of Action)

Plaintiffs attempt to state a cause of action against Defendants Baker, Chalmers, Council, Hodge, Lamb and Ripberger for aiding and abetting an alleged breach of fiduciary by Duke Defendants. Notably, however:

> It remains an open question whether North Carolina law recognizes a claim for aiding and abetting breach of fiduciary duty.  The reason for doubt is that the sole North Carolina appellate decision recognizing such a claim involved allegations of securities fraud, and its federal underpinnings were subsequently overruled by the United States Supreme Court.

*Battleground Veterinary Hosp., P.C. v. McGeough*, 2007 NCBC 33, 68-69 (N.C. Super. Ct. 2007); *see Sompo Japan Ins. Co. v. Deloitte & Touche, LLP*, 2005 NCBC 2 (N.C. Super. Ct. 2005).  When addressing issues of purely state law, such as this, "federal courts should by chary to expand upon state courts' conceptions of state remedies." *McDaniels v. Douglas Hollowell, P.C.*, 1998 U.S. Dist. LEXIS 4055 at *4 (E.D.N.C. Jan. 17, 1998) (refusing to "extend North Carolina common law remedies", the Court dismissed plaintiff's claim for wrongful discharge based upon pregnancy discrimination, because it found no support in North Carolina cases for the claim).

Additionally, a plaintiff's claim for aiding and abetting breach of fiduciary duty fully depends on whether the plaintiff states a claim for a breach of the fiduciary duty. *Smith v. N.C. Motor Speedway, Inc.*, 1997 NCBC 5, 55 (N.C. Super. Ct. 1997) (granting the defendants' motion to dismiss an aiding and abetting fiduciary claim).  A fiduciary duty "exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence."  *Abbott v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931).  Here, a fiduciary relationship is alleged between Plaintiffs and Duke University and Duke officials.  (2d Amend. Compl. ¶ 1236.)  In North Carolina there is no fiduciary relationship between a university and its students.  *See Davidson v.*

*Univ. of N.C. at Chapel Hill*, [142 N.C. App. 544, 556](), [543 S.E.2d 920, 928]() (2001); *Ryan v. Univ. of N.C. Hosp.*, [168 N.C. App. 729](), [609 S.E.2d 498]() (2005) (A fiduciary relationship does not exist between educators/supervisors and medical residents.); *Hendricks v. Clemson Univ.*, [353 S.C. 449](), [578 S.E.2d 711]() (2003) (A fiduciary relationship does not exist between an academic advisor and a student.).

In *Davidson*, the court found that a special relationship existed between a plaintiff-cheerleader that was injured while participating in the defendant-*sponsored* activity. *Davidson*, [142 N.C. App. at 556](), [543 S.E.2d at 928]().  However, this finding was limited by the court:

> Our holding should not be interpreted as finding a special relationship to exist between a university, college, or other secondary educational institution, and every student attending the school, or even every member of a student group, club, intramural team, or organization.  We agree with the conclusion reached by other jurisdictions addressing this issue that a university should not generally be an insurer of its students' safety, and that, therefore, the student-university relationship, standing alone, does not constitute a special relationship giving rise to a duty of care.

*Id*.  Unlike the plaintiff in *Davidson*, the facts here do not support a finding that a special relationship existed between Plaintiffs and the Duke Defendants.  Plaintiffs' decision to participate in and attend an off-campus party where two exotic dancers performed, leading to the investigation of a rape allegation by one of the dancers, Mangum, was hardly a Duke-sponsored event between Plaintiffs and the Duke Defendants.  As such, no fiduciary relationship existed; Plaintiffs aiding and abetting theory should be dismissed.

**C.    Negligence Claims**
(Twenty-fifth, Twenty-sixth, Twenty-seventh, and Twenty-eighth Causes of Action)

In the Second Amended Complaint, Plaintiffs assert four claims against various individuals, including some of the Durham Supervisor Defendants, allegedly grounded in negligence. As discussed at pages 27-28 of the Memorandum in Support of Hodge's Motion to Dismiss, which is fully incorporated herein by reference, Defendants are public officials, and are absolutely immune from claims for negligence. *See, e.g., Shaw v. Stroud,* 13 F.3d 791, 803 (4th Cir. 1994) ("A public officer performing discretionary acts . . . is absolutely immune from mere negligence claims."). Thus, these Causes of Action should be dismissed.

### 1. No Negligence
(Twenty-fifth Cause of Action)

Plaintiffs attempt to assert a general negligence claim against Russ, but fail to point out any facts in this Cause of Action to support that claim against him. The other Defendants named in this Cause of Action are alleged to have "breached" some "duty to use due care" either in making statements or conducting the investigation. Nowhere in the 1383-paragraph Second Amended Complaint is Russ alleged to have made any statement or to have directly participated in the investigation. Thus, it appears that his inclusion in this claim is likely an oversight. If Plaintiffs intended to include him in this claim, they have failed to allege any facts to show any breach of any duty owed to them by Russ.

Further, there is no allegation that Russ acted with malice or corruption with regard to any act attributed to him. Thus, even if Plaintiffs allege a factual basis for a

claim for negligence against him, that claim would be barred by public officer immunity. *See id.* This claim must be dismissed.

### 2. No Negligent Hiring, Retention, Supervision, Training & Discipline
(Twenty-sixth Cause of Action)

Plaintiffs allege that the Durham Police Supervising Defendants *negligently* hired, trained, supervised, disciplined, and retained Addison, Michael, Gottlieb and Himan. There are no allegations in this count that this conduct was either malicious or corrupt, and thus, this Cause of Action should be dismissed on the basis of immunity.

Additionally, this claim should be dismissed because Defendants are not Gottlieb's, Himan's, or Addison's "employer." North Carolina recognizes the existence of a cause of action for negligent supervision and retention against an employer. *See Braswell v. Braswell,* 330 N.C. 363, 373, 410 S.E.2d 897, 903 (1991). Applying North Carolina law, the Western District of North Carolina has held that any "claim for negligent hiring, retention, and supervision would be actionable only against *employers*," not supervisory employees. *Cox v. Indian Head Indus.* 123 F. Supp. 2d 892, 914 (W.D.N.C. 2000), *also available at*, No. 2:98-CV-175, 2000 U.S. Dist. LEXIS 20118, at *27 (W.D.N.C. May 16, 2000) (rejecting a cause of action for negligent supervision as applied to an individual and not an employer). "Absent specific guidance from North Carolina decisions," Magistrate Judge Cogburn, in a recommended decision adopted by the District Court, looked to North Carolina's judicial rejection of a wrongful discharge claim against a supervisor as a basis for predicting North Carolina's response to a

negligent retention claim.  *Id.* at 914, n.2, 2000 U.S. Dist. LEXIS at *26 ("No North Carolina case has been cited for the proposition that a supervisory employee is subject to liability under such a claim.").  Thus, as none of these Defendants were, or were alleged to have been, the employers of Addison, Michael, Gottlieb or Himan, this claim should be dismissed.

### 3. No Negligent Infliction of Emotional Distress
(Twenty-seventh and Twenty-eighth Causes of Action)

Plaintiffs seek to maintain a claim for negligent infliction of emotional distress against Hodge, Chalmers, Ripberger, and Lamb, along with other defendants who are not alleged to be part of the DPD chain of command.  In the twenty-eighth cause of action, Plaintiffs allege a separate claim for negligent infliction of emotional distress against all of the Durham Police Supervising Defendants, as well as Defendants Nifong, Addison, and Michael, arising out of alleged false public statements.  In *Shaw*, 13 F.3d at 803, the Fourth Circuit affirmed the dismissal of a plaintiff's negligent infliction of emotional distress claim against a police officer based upon that officer's immunity from claims for negligence:  "A negligent infliction of emotional distress claim, *by its very definition, necessarily alleges only negligence.*  Therefore, [defendant] is absolutely immune from any negligent infliction of emotional distress claim under North Carolina law."  *Id.* (emphasis added).  The Court further indicated that because a claim for negligent infliction of emotional distress necessarily involves neither malice nor corruption, the exception to immunity did not apply.  *Id.*  Thus, these two causes of action are barred by public officer immunity as a matter of law, and should be dismissed.

Additionally, Plaintiffs fail to allege sufficient facts to state a claim for negligent infliction of emotional distress. The essential elements of this claim have been clearly defined by the North Carolina Supreme Court:

> [T]o state a claim for negligent infliction of emotional distress, a plaintiff must allege that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress, . . . and (3) the conduct did in fact cause the plaintiff severe emotional distress. Although an allegation of ordinary negligence will suffice, a plaintiff must also allege that severe emotional distress was the foreseeable and proximate result of such negligence in order to state a claim; mere temporary fright, disappointment or regret will not suffice. In this context, the term "severe emotional distress" means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so.

*Johnson v. Ruark Obstetrics & Gynecology Assoc., P.A.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990) (citations omitted). Here, Plaintiffs fail to allege that Defendants engaged in negligent conduct, or that it was foreseeable that the conduct alleged would cause Plaintiffs severe emotional distress.

In these claims, Plaintiffs allege that Hodge and Chalmers subjected them to public infamy, made them pariahs, and forced them to endure extortionate pressures, (2d Amend. Compl. ¶1278); that Hodge, Lamb, Ripberger, and Chalmers approved the manufacturing false evidence to ensure that Plaintiffs or their teammates would be convicted of false charges, (*id.* ¶1279); and that Defendants acted in concert with Nifong and Addison in making consciously false public statements. (*Id.* ¶1284.) As this Court has consistently held, "however, 'when the plaintiff's complaint alleges acts . . . that are

intentional in nature, and simply concludes that the acts were committed negligently, it is insufficient to state a claim for negligent infliction of emotional distress.'" *Sabrowski v. Albani-Bayeux, Inc.*, No. 1:02-CV-728, [2003 U.S. Dist. LEXIS 23242, at \*16-17](#) (M.D.N.C. Dec. 19, 2003) (quoting *Barbier v. Durham County Bd. of Educ.*, [225 F. Supp. 2d 617, 631](#) (M.D.N.C. 2002)). Because the allegations of these claims allege only intentional conduct, they should be dismissed on this basis as well.

Even if Plaintiffs base these claims on allegations of negligent, rather than intentional, conduct by Defendants, Plaintiffs fail to allege sufficient facts to support the element of foreseeability. In *Robblee v. Budd Servs. Inc.*, [136 N.C. App. 793](#), [525 S.E.2d 847](#) (2000), the plaintiff sought damages for the emotional distress she sustained as a result of being a potential target of a workplace shooting incident. The defendant was a security company, which had negligently failed to confiscate the access security card of a violent, terminated employee. The Court concluded that the plaintiff's emotional distress was not foreseeable:

> These facts are sufficient to support a finding that Budd engaged in negligent conduct, and that plaintiff Shipley suffered severe emotional distress. However, these facts do not support an inference that Shipley's emotional distress was a reasonably foreseeable result of Budd's negligent acts; Budd's negligence in failing to retrieve the access card and Shipley's emotional distress are simply too attenuated to support a finding of reasonable foreseeability. There is no evidence that Budd was told, or had any specific notice of the relationship between Shipley and Antilak [the gunman] which would support an inference that Budd could have taken actions to prevent this specific injury to Shipley. The possibility that (1) defendant's negligence in failing to retrieve the temporary access card (2) would combine with Antilak's rage against his former employer (3) to result in a workplace shooting (4) which would cause Shipley to suffer emotional distress, was, like the situation in *Sorrells*, "too remote to permit

a finding that it was reasonably foreseeable." *Sorrells* [*v. M.Y.B. Hospitality Ventures*, 334 N.C. 669, 774, 435 S.E.2d 320, 323 (1993)]. Therefore, an essential element of plaintiff's claim is non-existent and summary judgment in favor of Budd must be affirmed.

*Id.* at 797, 525 S.E.2d at 850 (emphasis added).

Here, Plaintiffs' theory against Defendants is flawed for the same reasons that the plaintiff's claim against the security company failed in *Robblee*. As in *Robblee*, Plaintiffs allege that they were the *potential* target of the malicious acts of others. (2d Amend. Compl. ¶¶ 1126, 1136.) The possibility that any negligence by these Defendants would combine with the alleged malicious investigation and statements of Nifong and others, and result in the indictments of players other than Plaintiffs, which would cause Plaintiffs to suffer emotional distress, was, like the situation in *Robblee*, "too remote to permit a finding that it was reasonably foreseeable." *Sorrells v. M.Y.B. Hospitality Ventures,* 334 N.C. 669, 674, 435 S.E.2d 320, 323 (1993). Because any severe emotional distress allegedly suffered by these unindicted Plaintiffs was not foreseeable, this claim must be dismissed.

Finally, for the reasons fully explained at pages 19-22 and pages 26-27 of the Memorandum in Support of Hodge's Motion to Dismiss, which is incorporated herein by reference, Plaintiffs' negligent infliction of emotional distress claim is barred by the applicable statute of limitations.[7] This claim arises entirely out of alleged false statements made by Nifong and Addison. (2d Amend. Compl. ¶¶ 1284-85.) Thus, North

---

[7] To the extent that the Twenty-seventh Cause of Action arises out of alleged false statements, (2d Amend. Compl. ¶ 1278), it is time-barred as well.

Carolina's one-year statute of limitations for defamation applies. *Adams v. McIntyre*, No. 4:97-CV-210, [1997 U.S. Dist. LEXIS 15942 at *4](#) (W.D.N.C. Sept. 4, 1997), *aff'd,* [194 F.3d 1303](#) (4th Cir. 1999). Addison's last verbal statement was allegedly made on March 29, 2006, (2d Amend. Compl. ¶ 505(H)), and his written statements were last allegedly sent out to the public on May 26, 2006. (*Id.* ¶ 510.) The last false public statement attributed to Nifong in the Second Amended Complaint was made on April 12, 2006. (*Id.* ¶ 815.) The first Complaint in this action was filed on December 18, 2007, more than one year after these statements were made. Thus, this Cause of Action should be dismissed on the grounds that it was not timely filed.

## **CONCLUSION**

For the foregoing reasons, this Court should grant Defendants' Motion to Dismiss.

Respectfully submitted, this the 2nd day of July, 2008.

TROUTMAN SANDERS LLP

By: /s/ Patricia P. Kerner
    Patricia P. Kerner
N.C. State Bar No. 13005
    Hannah G. Styron
N.C. State Bar No. 28824
    D. Martin Warf
N.C. State Bar No. 32982
*Attorneys for Defendants Baker, Chalmers,*
*Council, Evans, Lamb, Ripberger, and Russ*
434 Fayetteville Street, Suite 1900
Raleigh, North Carolina 27601
Telephone: (919) 835-4100
Facsimile: (919) 829-8714
tricia.kerner@troutmansanders.com
hannah.styron@troutmansanders.com
martin.warf@troutmansanders.com

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RYAN MCFADYEN, *et al,*                    )
                                           )
            Plaintiffs,                    )
                                           )
v.                                         )        Case No. 1:07-CV-00953
                                           )
DUKE UNIVERSITY, *et al,*                  )
                                           )
            Defendants.                    )
_____

**CERTIFICATE OF SERVICE**
_____

I hereby certify that the foregoing was electronically filed with the Clerk of the

Court using the CM/ECF system, which will send notification of such filing to the

following:

Robert C. Ekstrand
EKSTRAND & EKSTRAND, LLP
811 Ninth Street, Suite 260
Durham, North Carolina 27705
rce@ninthstreetlaw.com
*Attorneys for Plaintiffs*

James D. Cowan, Jr.
Dixie T. Wells
Leslie Cooper Harrell
SMITH MOORE, LLP
Post Office Box 21927
Greensboro, NC 27420
don.cowan@smithmoorelaw.com
dixie.wells@smithmoorelaw.com
cooper.harrell@smithmoorelaw.com
*Attorneys for Defendants Duke*
*University, Duke University Health System,*
*Inc., Richard Brodhead,*
*Peter Lange, Larry Moneta,*
*John Burness, Tallman Trask,*
*Suzanne Wasiolek, Matthew*
*Drummond, Aaron Graves,*
*Robert Dean, Tara Levicy, Theresa*
*Arico, Kate Hendricks, Victor Dzau*

Jamie S. Gorelick
Jennifer M. O'Connor
Paul R.Q. Wolfson
William F. Lee
WILMER, CUTLER, PICKERING,
HALE, and DORR, LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006
jamie.gorelick@wilmerhale.com
jennifer.oconnor@wilmerhale.com
paul.wolfson@wilmerhale.com
william.lee@wilmerhale.com
*Attorneys for Defendants Duke*
*University, Duke University Health*
*System, Inc., Richard Brodhead,*
*Peter Lange, Larry Moneta,*
*John Burness, Tallman Trask,*
*Suzanne Wasiolek, Matthew*
*Drummond, Aaron Graves,*
*Robert Dean, Tara Levicy, Theresa*
*Arico, Kate Hendricks, Victor Dzau*


Dan J. McLamb
Shirley M. Pruitt
T. Carlton Younger, III
YATES, MCLAMB & WEYHER, LLP
P.O. Box 2889
Raleigh, NC 27602-2889
dmclamb@ymwlaw.com
spruitt@ymwlaw.com
cyounger@ymwlaw.com
*Attorneys for Defendants Duke*
*University Health Systems, Inc.,*
*Tara Levicy, and Theresa Arico*

Robert A. Saar
Nicholas J. Sanservino, Jr.
OGLETREE DEAKINS NASH SMOAK
& STEWART, PC
2301 Sugar Bush Rd., Suite 600
Raleigh, NC 27612
*Attorneys for DNA Security*

Robert J. King, III
Kearns Davis
BROOKS, PIERCE, McLENDON,
HUMPHREY & LEONARD, LLP
Post Office Box 26000
Greensboro, NC 27420
*Attorneys for Defendants DNA Security,
Inc. and Richard Clark*

James A. Roberts, III
LEWIS & ROBERTS, PLLC
1305 Navaho Drive, Suite 400
Raleigh, NC 27605
*Attorneys for Brian Meehan*

Paul R. Dickinson, Jr.
LEWIS & ROBERTS, PLLC
590 Fairview Rd., Suite 102
Charlotte, NC 28210
*Attorneys for Brian Meehan*

Reginald B. Gillespie, Jr.
FAISON & GILLESPIE
Post Office Box 51729
Durham, NC 27717
rgillespie@faison-gillespie.com
*Attorneys for Defendant City of Durham*

Edwin M. Speas
Eric P. Stevens
POYNER & SPRUILL, LLP
3600 Glenwood Avenue
Raleigh, NC 27612
*Attorneys for Defendant Gottlieb*

Joel M. Craig
Henry W. Sappenfield
KENNON, CRAVER, BELO, CRAIG &
MCKEE, PLLC
Post Office Box 51579
P.O. Box 51579
Durham, NC 27717-1579
*Attorneys for Defendant Himan*

James B. Maxwell
MAXWELL, FREEMAN & BOWMAN,
P.A.
Post Office Box 52396
Durham, NC 27717
*Attorneys for Defendant Addison*

I further certify that a copy of the foregoing was served today upon each of the

following non CM/ECF participants by United States mail, postage prepaid, addressed as

follows:

Linwood Wilson                 Roger E. Warrin
6910 Innesbrook Way            Michael A. Vatis
Bahama, NC 27503-9700          John P. Nolan
*Pro Se*                       Leah M. Quadrino
                               STEPTOE & JOHNSON, LLP
                               1330 Connecticut Ave. N.W.
                               Washington, DC 20036
                               *Attorneys for Defendant City of Durham*

This the 2nd day of July, 2008.

                    Respectfully submitted,

                    By: /s/ Patrica P. Kerner
                        Patricia P. Kerner
                    N.C. State Bar No. 13005
                    *Attorneys for Defendants Baker, Chalmers,*
                    *Council, Evans, Hodge, Lamb, Mihiach,*
                    *Ripberger, and Russ*
                    434 Fayetteville Street, Suite 1900
                    Raleigh, North Carolina 27601
                    Telephone: (919) 835-4100
                    Facsimile: (919) 829-8714
                    tricia.kerner@troutmansanders.com