IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RYAN MCFADYEN, *et al*,        )
                               )
        Plaintiffs,       )
                               )
v.                        )     No. 1:07-CV-00953
                               )
DUKE UNIVERSITY, *et al*,     )
                               )
        Defendants.     )
_____

**MEMORANDUM IN SUPPORT OF DEFENDANT HODGE'S
MOTION TO DISMISS**
_____

## STATEMENT OF THE CASE

Plaintiffs filed this action on December 18, 2007, seeking damages pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and the common law of North Carolina, arising out of the State of North Carolina's investigation into allegations of rape, sexual assault, and kidnapping. On April 17, 2008, Plaintiffs amended their Complaint. On April 18, 2008, Plaintiffs amended their Complaint for a second time, with consent of the parties. This matter is before the Court on the Defendant Hodge's (Hodge)[1] Motion to Dismiss, pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

---

[1] Undersigned counsel also represent Baker, Chalmers, Russ, Mihaich, Council, Lamb, Ripberger, and Evans as well. Any arguments asserted in their Memorandum apply equally to Hodge; Hodge has filed a separate motion and supporting Memorandum because he is alleged to have made a single remark to the press, which Plaintiffs contend gives rise to numerous claims that are not asserted against the other Defendants.

## STATEMENT OF FACTS

Following a party hosted and attended by students at Duke University, Crystal Mangum, an exotic dancer at that party, alleged that she had been sexually assaulted. (Second Amended Complaint ¶¶ 193-97, 251, 267.) Plaintiffs were Duke students at the time, and members of the Duke men's lacrosse team. (2d Amend. Compl. ¶ 9.) The police investigation of Mangum's allegations form the basis of Plaintiffs' claims against the City of Durham and various employees of the Durham Police Department in this action. (*Id.* ¶ 262-63, 333.)

As alleged in the Complaint, Hodge is, and was at all relevant times, the Deputy Chief of Police for the Durham Police Department (DPD). (2d Amend. Compl. ¶ 52.) By virtue of this status, he is alleged to be part of varying groups of Defendants, including the "Durham Police Supervising Defendants," (*id.* ¶ 68), a group included in the "Durham Police Department Defendants," (*id.* ¶ 67), which is a member of the larger "City of Durham Defendants," (*id.* ¶ 66), which is a component of the all-encompassing "Consortium." (*Id.* ¶ 77.) His rank also earned his membership in the alleged "Himan Chain of Command," the "Addison/Michael Chain of Command." (*Id.* ¶¶ 71, 72.) In these roles, the allegations against him are generally the same as those lodged against other Defendants, including Defendants Baker, Chalmers, Mihaich, Council, Russ, Lamb, Ripberger, and Evans (Durham Supervising Defendants).

In addition to the claims arising out of his rank at the police department, Plaintiffs also assert several claims against Hodge based upon a single response that he is alleged to

have given to a reporter's inquiry at a forum held at North Carolina Central University (NCCU) on April 11, 2006. Nifong, the District Attorney who later sought the indictment of three players other than Plaintiffs, was a speaker at the forum. (2d Amend. Compl. ¶¶ 804, 805.) Nifong gave prepared remarks concerning the results of DNA testing by the SBI, which had been made public the previous day. (*Id.* ¶¶ 800, 804-05.) Those tests had failed to match any lacrosse player with any genetic material on Ms. Mangum. (*Id.* ¶ 800.)

Hodge attended the forum. (2d Amend. Compl. ¶ 804, 809.) Plaintiffs allege that "when asked by a reporter about the strength of the case in light of the DNA test results, Hodge replied, 'I don't think we would be here if it wasn't (a strong case)' against Plaintiffs." (*Id.* ¶ 809.)

This solitary remark gives rise to at least three claims for relief against Hodge in his individual capacity: for false public statements in violation of 42 U.S.C. § 1983 (Fifth Cause of Action); intentional infliction of emotional distress (Twentieth Cause of Action); and negligence (Twenty-Fifth Cause of Action). Although the factual basis is not specified, he is the sole "Durham Police Supervising Defendant" designated as a defendant in the claim for retaliation in violation of 42 U.S.C. § 1983 (Ninth Cause of Action).

## QUESTIONS PRESENTED

1. Whether Plaintiffs fail to state a claim under 42 U.S.C. § 1983 against Hodge.

2. Whether Hodge is entitled to qualified immunity.

3.      Whether Plaintiffs have alleged the essential elements of their North
Carolina common law claims against Hodge.

4.      Whether Hodge is entitled to public officer immunity.

## ARGUMENT

### I.      APPLICABLE STANDARD

The standard applicable to Hodge's Motion to Dismiss is the same, of course, as

the standard that governs the motion submitted by the Durham Supervising Defendants.

Thus, in the interests of judicial economy, the portion of their brief addressing the

applicable standard is incorporated herein by reference.  As more fully discussed below,

the single remark attributed to Hodge is insufficient to support the claims alleged against

him; and those claims, therefore, should be dismissed.

### II.     HODGE'S STATUS AS A SUPERVISOR

Hodge, solely as a result of his rank with the Durham Police Department, is among

a group of Defendants classified as the "Durham Police Supervising Defendants."  (2d

Amend. Compl. ¶ 52.)  That group is included in other, larger collections of Defendants.

So classified, Hodge is one of many targets in Plaintiff's Tenth (Deprivation of Privileges

and Immunities in Violation of 42 U.S.C § 1983), Eleventh (Failure to Prevent

Deprivation of Constitutional Rights in Violation of 42 U.S.C § 1983), Thirteenth

(Supervisory Liability for Violation of 42 U.S.C § 1983), Fifteenth (Conspiracy in

Violation of 42 U.S.C § 1983), Sixteenth (Conspiracy in Violation of 42 U.S.C § 1985),

Seventeenth (Failure to Intervene in Violation of 42 U.S.C § 1986), Twenty-Third

(Breach of Fiduciary Duty and Aiding and Abetting), Twenty-Sixth (Negligent Hiring, Retention, and Supervision), Twenty-Seventh and Twenty-Eighth (Negligent Infliction of Emotional Distress) Causes of Action.

For the most part, these claims do not arise out of any conduct that Hodge is alleged to have personally engaged in, but rather out of his position in the chain of command with the Durham Police Department. Because these allegations are the same as those lodged against the other Durham Supervisor Defendants, these claims should be dismissed for the same reasons expressed in the memorandum submitted by the Durham Supervisor Defendants in support of their Motion to Dismiss. Hodge incorporates fully herein by reference the arguments submitted in their memorandum. For the reasons stated in that memorandum, the claims alleged against Defendant Hodge in the Tenth, Eleventh, Thirteenth, Fifteenth, Sixteenth, Seventeenth, Twenty-Third, Twenty-Sixth, Twenty-Seventh, and Twenty-Eighth Causes of Action should be dismissed.

## III. FEDERAL CLAIMS AGAINST DEFENDANT HODGE

### A. No 42 U.S.C. § 1983 False Public Statements
(Fifth Cause of Action)

In the Fifth Cause of Action, Plaintiffs seek to recover against a number of individuals and entities for various public statements concerning the investigation. Nifong, for example, is alleged to have made "volumes" of statements to members of the media—concerning his certainty that a rape had occurred, the silence of the team, and details of the evidence developed in the investigation—allegedly in an effort to bolster his lagging campaign in the upcoming election for District Attorney. (2d Compl. Amend.

¶¶ 502, 577, 956(E).) Brodhead and members of Duke University's faculty and staff are alleged to have made numerous statements in a similar vein. (*Id.* ¶¶ 462, 535, 581-82, 956(I).)

By contrast, Hodge is alleged to have given a single expression of opinion in response to a question posed by a reporter. When asked by a reporter about the strength of the case in light of the DNA results, Hodge is quoted as having simply replied, "I don't think we would be here if it wasn't."[2] (2d Amend. Compl. ¶ 809.) Unlike other public commentators, he is not alleged to have asserted that a rape had in fact occurred, to have accused anyone of failure to cooperate, or to have disclosed any specific information revealed in the investigation. At most, Hodge's statement is his opinion that the case was strong.

Plaintiffs' allegation that this statement had the effect of "conveying police had amassed evidence that Mangum was raped and sodomized by the Plaintiffs or in their presence," is irrelevant for the purposes of this motion, because it is nothing more than a conclusion drawn by Plaintiffs or their counsel, and is not an allegation of fact. In considering a challenge to a complaint under Rule 12(b)(6), the Court must "take the facts in the light most favorable to the plaintiff," but it "need not accept the legal conclusions drawn from the facts," and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd.*

_____

[2] Plaintiffs attempt to add to Hodge's quotation by including the explanatory parenthetical phrase "(a strong case)" to modify the word "it," and the phrase "against the Plaintiffs." These editorial additions are not alleged to have been stated directly by Hodge.

*P'ship*, 213 F.3d 175, 180 (4th Cir. 2000); *see also Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003).

The single statement attributed to Hodge is insufficient to support this claim. As discussed in the memorandum of the Durham Supervisor Defendants, 42 U.S.C. § 1983, "imposes liability for violations of rights protected by the Constitution, *not* for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles." *Baker v. McCollan*, 443 U.S. 137, 146 (1979) (emphasis added). Further, as also fully discussed in that memorandum, under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Until "this threshold immunity question is resolved, discovery should not be allowed." *Id.*

In considering a claim such as the one asserted against Hodge here:

> A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is "clearly established" at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all. Decision of this purely legal question permits courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits. One of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit.

*Siegert v. Gilley*, 500 U.S. 226, 232 (1991). Thus, where the plaintiff has "failed not only to allege the violation of a constitutional right that was clearly established at the time of

[Defendant's] actions, but also to establish the violation of any constitutional right at all," the claims pursuant to 42 U.S.C. §1983 must be dismissed. *Id.* at 233.

In *Paul v. Davis*, 424 U.S. 693 (1976), the Supreme Court held that defamation by a government official does not give rise to an action under section 1983. *Id.* at 697-701. In that case, the defendant chief of police had widely distributed a flyer containing the plaintiff's picture and naming him as an "active shoplifter." At the time the flyer was published, the plaintiff had been charged as a shoplifter. The charges were subsequently dismissed. When the plaintiff's supervisor saw the flyer, he threatened to fire him. Ultimately, the plaintiff was not fired, but was warned that he "best not find himself in a similar situation" in the future. *Id.* at 696.

The plaintiff alleged that by distributing the flyer the officers had violated his due process rights under the Fourteenth Amendment, as well as his "right to privacy" guaranteed by the First, Fourth, Fifth, Ninth, and Fourteenth Amendments. *Id.* at 697, 712. In his complaint, he "asserted that the 'active shoplifter' designation would inhibit him from entering business establishments for fear of being suspected of shoplifting and possibly apprehended, and would seriously impair his future employment opportunities." *Id.* at 697.

Responding, the Supreme Court concluded that there is "no constitutional doctrine converting every defamation by a public official into a deprivation of liberty within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Id.* at 702. The Court noted that previous cases established that:

The Court has recognized the serious damage that could be inflicted by branding a government employee as "disloyal," and thereby stigmatizing his good name. But the Court has never held that the mere defamation of an individual, whether by branding him disloyal or otherwise, was sufficient to invoke the guarantees of procedural due process absent an accompanying loss of government employment.

*Id.* at 706.

The *Paul* Court observed that it had recognized either a "liberty" or "property" status in a variety of interests, invoking the procedural guarantees of the Fourteenth Amendment, whenever the State sought to alter or remove them. *Id.* at 710-11. The Court noted that such interests "attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law." *Id.* at 710. Thus, a state-issued driver's license cannot be withdrawn without due process, *id.* at 711 (citing *Bell v. Burson*, 402 U.S. 535 (1971)), and alteration of the status of a parolee for violations of parole conditions require procedural safeguards. *Id.* (citing *Morrissey v. Brewer,* 408 U.S. 471 (1972)). Similarly, suspension from an Ohio public school required procedural due process, because Ohio law conferred a right upon all children to attend school. *Id.* at 710 (citing *Goss v. Lopez,* 419 U.S. 565 (1975)). The Court distinguished these cases from the defamation claim before it:

In each of these cases, as a result of the state action complained of, a right or status previously recognized by state law was distinctly altered or extinguished. It was this alteration, officially removing the interest from the recognition and protection previously afforded by the State, which we found sufficient to invoke the procedural guarantees contained in the Due Process Clause of the Fourteenth Amendment. But the interest in reputation alone which respondent seeks to vindicate in this action in federal court is quite different from the "liberty" or "property" recognized in those decisions. Kentucky law does not extend to respondent any legal

guarantee of present enjoyment of reputation which has been altered as a
result of petitioners' actions. Rather his interest in reputation is simply one
of a number which the State may protect against injury by virtue of its tort
law, providing a forum for vindication of those interests by means of
damages actions. And any harm or injury to that interest, even where as
here inflicted by an officer of the State, does not result in a deprivation of
any "liberty" or "property" recognized by state or federal law, nor has it
worked any change of respondent's status as theretofore recognized under
the State's laws. For these reasons we hold that the interest in reputation
asserted in this case is neither "liberty" nor "property" guaranteed against
state deprivation without due process of law.

*Id.* at 711-12.

The Supreme Court also rejected the plaintiff's contention that the publication

violated his "right to privacy guaranteed by the First, Fourth, Fifth, Ninth, and Fourteenth

Amendments." *Id.* at 712. The Court held that the plaintiff's claims did not come within

any of the recognized "zones of privacy" created by more specific constitutional

guarantees. *Id.* The Court reasoned:

He does not seek to suppress evidence seized in the course of an
unreasonable search. *See Katz v. United States*, 389 U.S. 347, 351 (1967);
*Terry v. Ohio*, 392 U.S. 1, 8-9 (1968). And our other "right of privacy"
cases, while defying categorical description, deal generally with substantive
aspects of the Fourteenth Amendment. In *Roe* the Court pointed out that
the personal rights found in this guarantee of personal privacy must be
limited to those which are "fundamental" or "implicit in the concept of
ordered liberty" as described in *Palko v. Connecticut*, 302 U.S. 319, 325
(1937). The activities detailed as being within this definition were ones
very different from that for which respondent claims constitutional
protection -- matters relating to marriage, procreation, contraception, family
relationships, and child rearing and education. In these areas it has been
held that there are limitations on the States' power to substantively regulate
conduct.

Respondent's claim is far afield from this line of decisions. He claims
constitutional protection against the disclosure of the fact of his arrest on a
shoplifting charge. His claim is based, not upon any challenge to the

State's ability to restrict his freedom of action in a sphere contended to be "private," but instead on a claim that the State may not publicize a record of an official act such as an arrest. None of our substantive privacy decisions hold this or anything like this, and we decline to enlarge them in this manner.

*Id.* at 712-13. Because the plaintiff had not alleged the violation of a constitutional right, the defendants were not liable to him under 42 U.S.C. § 1983. *Id.* at 714.

In subsequent decisions, our Courts have held that defamation will not support a claim pursuant to 42 U.S.C. § 1983. In *Siegert*, the plaintiff, a clinical psychologist, sought to become credentialed in a new job at an Army hospital. *Siegert*, 500 U.S. at 228. When asked for a reference, his former supervisor at another hospital operated by the federal government, sent a letter stating that the plaintiff was inept, unethical, and untrustworthy. *Id.* The plaintiff was denied credentials, and his employment at the hospital was terminated. *Id.* at 229. The plaintiff filed suit against his supervisor, alleging that he maliciously made the statements knowing them to be untrue. *Id.* The plaintiff contended that his former supervisor had caused an infringement of his "liberty interests," secured by the Due Process clause of the Fifth Amendment. *Id.*

The Supreme Court held the claims against the defendant were barred by the doctrine of qualified immunity, because the plaintiff "failed to allege the violation of a clearly established constitutional right." *Id.* at 231. Relying on its prior decision in *Paul*, the Court held that, "[d]efamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation." *Id.* at 233. The Court reasoned:

The alleged defamation was not uttered incident to the termination of Siegert's employment by the hospital, since he voluntarily resigned from

his position at the hospital, and the letter was written several weeks later. The statements contained in the letter would undoubtedly damage the reputation of one in his position, and impair his future employment prospects. But the plaintiff in *Paul v. Davis* similarly alleged serious impairment of his future employment opportunities as well as other harm. Most defamation plaintiffs attempt to show some sort of special damage and out-of-pocket loss which flows from the injury to their reputation. But so long as such damage flows from injury caused by the defendant to a plaintiff's reputation, it may be recoverable under state tort law but it is not recoverable in a *Bivens* action.

*Id.* at 234.

Indeed, many courts have rejected claims brought under section 1983 for reputational stigma in cases where the plaintiffs, unlike Plaintiffs here, allege that they were wrongfully arrested and/or prosecuted. *See, e.g., Burke v. Town of Walpole,* 405 F.3d 66, 93 (1st Cir. 2005) (statement by police chief at a public meeting that "I can tell you we've got the right man," affected no federal right when made after negative DNA results were public and plaintiff was awaiting release from house arrest); *Thomas v. Kippermann,* 846 F.2d 1009, 1010 (5th Cir. 1988) (publication of false "wanted" posters, resulting in plaintiff "being defamed, falsely arrested, falsely imprisoned, [and] maliciously prosecuted," were "insufficient to establish a cause of action under § 1983" under *Paul*); *Geter v. Fortenberry,* 849 F.2d 1550, 1555-56 (5th Cir. 1988) (allegations that defendant "used the public media to defame plaintiff and to declare him guilty" were " insufficient to establish § 1983 liability"); *Wolf v. Carey,* 438 F. Supp. 545, 547-48 (N.D. Ill. 1977), *aff'd* 582 F.2d 1282 (7th Cir. 1978) (allegations of false, inflammatory television comments by the defendant prior to plaintiff's indictment concerning the plaintiff did not state a claim under § 1983).

Here, Plaintiffs have alleged only reputational injuries, (2d Amend. Compl. ¶¶ 958-60), which are insufficient to allege the required constitutional violation. Although they also summarily allege that this "stigma" was connected to violations of their "constitutional rights," they fail to allege facts supporting this conclusion. (*Id.*) In an attempt to gloss over this deficiency, Plaintiffs enumerate claimed "deprivations of Plaintiffs' tangible interests" in Paragraph 957 of the Second Amended Complaint. In subparagraph A, they merely recite several constitutional provisions; for the reasons discussed in the Memorandum filed in support of the Durham Supervisor Defendants' Motion to Dismiss, Plaintiffs have failed to allege facts sufficient to support allegations of violations of the constitution set out in this subparagraph.

The remaining subparagraphs of Paragraph 957 fail to allege constitutional violations and are wholly unrelated to Hodge's single remark. For example, there is no constitutional right to obtain the test results described in Paragraph 957(B), or to compete in Division I intercollegiate athletics, as alleged in Paragraph 957(C); further, neither of these events is alleged to have any connection to Hodge's statement. (2d Amend. Compl. ¶ 648 (SBI test results provided on April 10), ¶ 756 (others agreed to withhold DNASI test results on May 12), ¶ 828 (lacrosse season cancelled on April 5).)

Similarly, Plaintiffs have no constitutional right to maintain their "educational status" at a private university. (*Id.* ¶ 957(D).) Assuming this allegation is based upon Plaintiffs' suspensions from Duke, they are unrelated to Hodge: Plaintiff McFadyen was suspended by Duke officials on April 5, six days *before* Hodge's statement, for sending

an email with violent content, (*id.* ¶¶ 693-96); Plaintiff Wilson was suspended by Duke officials for having pled guilty to driving while impaired sometime after May 12, 2006, (*id.* ¶¶ 706-20); and Plaintiff Archer was suspended for the fall semester of *2005*, months before the party at 601 N. Buchanan, by a panel of Duke's Judicial Affairs, for failure to comply with community service previously imposed by Defendant Bryan. (*Id.* ¶¶ 722-25.) Duke's decisions to punish Plaintiffs for their misbehavior simply cannot be attributed to Hodge.

The purported violations of Plaintiffs' "privacy rights" under "federal and state banking laws" alleged in subsections (E) and (F), (2d Amend. Compl. ¶957), do not meet the standard established in *Paul*; similar to the publication of the fact of the plaintiff's arrest there, any "privacy" interest in Plaintiffs' transaction card accounts, (*Id.* ¶¶ 853-57), are not privacy rights that are "fundamental" or "implicit in the concept of ordered liberty" warranting constitutional protection. *Paul,* 424 U.S. at 711-13. Again, these alleged "violations" are unrelated to Hodge's statement. According to Plaintiffs, Duke officials accessed these records on March 13-14 and turned them over to Gottlieb on March 31, well before Hodge attended the NCCU forum. (2d Amend. Compl. ¶¶ 853-57.)

Plaintiffs also allege that their rights under "federal and state elections laws" were violated when Duke officials thwarted their efforts to have a voter registration drive on campus on September 30, 2006. (2d Amend. Compl. ¶¶ 874-887, 957(G).) Assuming, solely for the sake of argument, that being prevented from registering *other* people to vote on private property was a violation of Plaintiffs' constitutional rights, there are no

allegations suggesting that this event was related in any way to Hodge's remark six months earlier.  (*Id.*)

Thus, here, Plaintiffs have not alleged the violation of any constitutional right, much less one that is clearly established.  Should the Court now glean that any constitutional issue is raised, Hodge is entitled to qualified immunity.  *See Siegert v. Gilley,* 500 U.S. 226, 233 (1991).  As the Fourth Circuit has observed, for the purposes of qualified immunity:

> For a right to have been clearly established, "the 'contours of the right' must have been so conclusively drawn as to leave no doubt that the challenged action was unconstitutional."  *Swanson v. Powers*, 937 F.2d 965, 969 (4th Cir. 1991) (quoting *Anderson [v. Creighton]*, 483 U.S. [635,] 640 [(1987)]).  In determining whether a right was clearly established at the time of the claimed violation, "courts in this circuit [ordinarily] need not look beyond the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose . . . ."  *Jean v. Collins*, 155 F.3d 701, 709 (4th Cir. 1998) (*en banc*).  "If a right is recognized in some other circuit, but not in this one, an official will ordinarily retain the immunity defense."  *Id.*  Notably, however, the nonexistence of a case holding the defendant's identical conduct to be unlawful does not prevent the denial of qualified immunity.  *See id.* at 708.  In analyzing the applicability of the qualified immunity defense, we lastly consider whether a reasonable person in the official's position would have known that his conduct would violate that right.  *See Anderson*, 483 U.S. at 639; *Taylor [v. Waters]*, 81 F.3d [429,] 433 [(4th Cir. 1996)].

*Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999).  There is no law in this Circuit that would have alerted Hodge that his single expression of opinion about the strength of the case, in response to a reporter's question, could be a violation of any of Plaintiffs' rights.  Thus, he is immune from this section 1983 claim.

### B.    No Retaliation in Violation of 42 U.S.C. § 1983

(Ninth Cause of Action)

In the heading and first two introductory paragraphs of the Ninth Cause of Action, Plaintiffs allege that Hodge, along with sixteen other Defendants, retaliated against Plaintiffs for their decision to "exercise their constitutional right not to submit to police interrogation without the benefit of counsel." (2d Amend. Compl. ¶ 994.) Plaintiffs then specify the actions taken by Defendants *other* than Hodge that they contend demonstrate the alleged retaliation.

Specifically, Nifong, Gottlieb, and Himan are alleged to have obtained court orders based upon fabricated affidavits. (2d Amend. Compl. ¶ 995.) Hodge is not alleged to have participated in this conduct. (*See id.* ¶¶ 414-39; 591-610.) Plaintiffs allege that Nifong, Gottlieb, Levicy, Arico, and Manly concealed and falsified medical evidence, (*id.,* ¶ 996); Hodge is not an alleged participant. (*Id.* ¶¶ 780-99.) Nifong, Gottlieb, Himan and Clayton are alleged to have intimidated witnesses, (*id.* ¶ 997); there are no such allegations concerning Hodge. (*Id.* ¶¶ 771, 973.) Finally, Plaintiffs allege that Nifong and Duke officials directed Duke police officers to produce reports concealing exculpatory evidence, (*id.* ¶ 998); again, this conduct is not attributed to Hodge. (*Id.* ¶¶ 466-475).

Indeed, despite the specificity with which Plaintiffs detail the alleged conduct of others in the body of the Ninth Cause of Action, no act is attributed to Hodge. Further, there is no mention anywhere in this voluminous twice amended complaint of any act allegedly done by Hodge in retaliation for any act undertaken by Plaintiffs. This

omission leaves Hodge to assume that his inclusion in this Cause of Action was either an oversight, or that it is based upon his statement discussed above.

The allegations concerning Hodge's statement, however, are insufficient to support a claim for retaliation under section 1983. To make out a claim for retaliation, the "plaintiff must allege (1) that plaintiff engaged in constitutionally protected conduct; (2) that the conduct was a 'substantial or motivating factor' inducing the alleged retaliation; and (3) resulting injury." *Amador v. Humboldt County Corr. Facility*, No. C 06-6043, 2007 U.S. Dist. LEXIS 34724, *15 (N.D. Cal. May 10, 2007). A plaintiff must allege specific facts showing that the retaliation occurred because of the exercise of his rights. *Id.; Fisher v. Mullin,* 213 Fed. Appx. 698, 2007 U.S. Dist. LEXIS 1223 (10th Cir. 2007) (inmate's continued assignment to maximum-security facility after alleged failure to cooperate in investigation insufficient to show retaliation); *Reedy v. Township of Cranberry,* No. 2:06-CV-1080, 2007 U.S. Dist. LEXIS 58221, *9 (W.D. Pa. Aug. 9, 2007) (without allegation of facts to support a causal connection between plaintiff's refusal to incriminate herself and her arrest, allegations were "mere conjecture"). In *Amador,* the court dismissed a prisoner's claim for retaliation under Rule 12(b)(6), because his allegations of revocation of privileges after protests to prison officials were insufficient to show that the conduct was a "substantial or motivating factor" resulting in retaliation:

> Plaintiff's allegations that these complaints substantially motivated the revocation of his phone privileges and his transfer to high security housing, however, do not meet the second prong for purposes of overcoming Rule 12(b)(6). Plaintiff points to the timing of his request and the subsequent

revocation of privileges, asking the court to infer improper motivation on the part of the defendants. The court declines to make such an inferential leap. For these reasons, plaintiff has failed to state a claim for unlawful retaliation.

*Amador*, 2007 U.S. Dist. LEXIS 34724 at *15-16.

Plaintiffs' allegations here are similarly flawed. Plaintiffs contend that they engaged in constitutionally protected conduct by refusing to submit to police interrogation without the benefit of counsel. (2d Amend. Compl. ¶ 994.) This contention arises out of allegations that, after talking with Plaintiffs' defense counsel in this case on March 21, the members of the lacrosse team cancelled interviews scheduled with police for later that day. (*Id.* ¶¶ 405, 407, 411-12.) Plaintiffs do not allege a single fact to suggest that the cancellation of the interviews in any way motivated Hodge's remark three weeks later suggesting that the case was strong. Indeed, the Second Amended Complaint suggests that the only reason Hodge offered his opinion about the strength of the case is because it was solicited by a reporter. (*Id.* ¶ 809.) Under the cases cited above, allegations showing only that Plaintiffs' conduct preceded Hodge's remark are insufficient to support this claim. Without allegations of specific facts showing a causal connection, this Cause of Action must be dismissed.

Further, even assuming that Plaintiffs have intended to state a claim against Hodge in this Cause of Action, Hodge is entitled to qualified immunity on this claim: as discussed above, a reasonable officer would have not understood that this remark violated one of Plaintiffs' rights. Where even "threatening language and gestures of a state actor do not, even if true, amount to constitutional violations," *Holt Cargo Sys. v. Delaware*

18

*River Port Auth.*, 20 F. Supp. 2d 803, 834 (E.D. Pa. 1998), Hodge could not have been expected to anticipate that this single comment could be a constitutional violation. For this additional reason, this Cause of Action must be dismissed as to Hodge.

## IV.  STATE TORT CLAIMS AGAINST HODGE FAIL

### A.  Statute of Limitations Bars State Law Claims Rooted in Defamation

Plaintiffs attempt to assert two claims under North Carolina law against Hodge arising out of his remark. The first is a claim for intentional infliction of emotional distress (Twentieth Cause of Action) and the second is a claim for negligence (Twenty-fifth Cause of Action). Both are grounded on allegations in the body of the claims, and elsewhere in the Second Amended Complaint, that Hodge made a "false" statement in responding to a reporter's inquiry about the strength of the case. (2d Amend. Compl, ¶¶ 809-11, 1214, 1264.)[3] These claims are thinly-veiled attempts to revive a time-barred claim for defamation, and thus must be dismissed.

In determining the applicable limitations period, "North Carolina law requires a court . . . to consider the essence of the claim, rather than the labels a plaintiff may apply." *Adams v. McIntyre*, No. 4:97-CV-210, 1997 U.S. Dist. LEXIS 15942 *4 (W.D.N.C. Sept. 4, 1997), *aff'd,* 194 F.3d 1303 (4th Cir. 1999). The essential elements of a defamation claim under North Carolina law are that "the defendant caused injury to the plaintiff by making *false*, defamatory statements of or concerning the plaintiff, which

_____

[3] Although Plaintiffs allege that Hodge is one of a group of Defendants who made multiple "statements," the only statement factually attributed to Hodge in Plaintiffs' mammoth Amended Complaint is the single statement described in Paragraph 809.

were published to a third person." *Boyce & Isley v. Cooper*, 153 N.C. App. 25, 29, 568 S.E.2d 893, 897 (2002) (emphasis added). In North Carolina, the statute of limitations for defamation is one year. N.C. Gen. Stat. § 1-54(3); *Gibson v. Mutual Life Ins. Co.*, 121 N.C. App. 284, 287, 465 S.E.2d 56, 58 (1996).

Although labeled as claims for "intentional infliction of emotional distress," and "negligence," Plaintiffs' state law claims arising out of Hodge's remark to the reporter on April 11, 2006, are essentially claims for defamation. Indeed, Hodge's alleged "false statement," (*see* 2d Amend. Compl. ¶ 809), is the sole fact alleged against him in support of these claims. (*Id.* ¶¶ 1214, 1221, 1262, 1264.) While other Defendants are alleged to have manufactured inculpatory evidence, to have concealed exculpatory evidence, and to have intimidated witnesses, (*id.* ¶¶ 1215-16), no such allegations are lodged against Hodge. Plaintiffs' initial complaint was filed on December 18, 2007, eight months after the statute of limitations for any claim arising out of any defamatory statement had expired.

In *Dickens v. Puryear,* 302 N.C. 437, 276 S.E.2d 325 (1981), the North Carolina appellate courts squarely addressed a claim that had been mislabeled as intentional infliction of emotional distress to avoid the statute of limitations. In *Dickens,* the plaintiff had been kidnapped, beaten over a period of two hours, threatened with castration, and with death if he did not leave North Carolina, by the defendant and four masked men. *Id.* at 439-40, 276 S.E.2d at 327. Three years later, in 1978, the plaintiff filed a claim for intentional infliction of emotional distress. At that time, the statute of

limitations for assault was one year.[4]  The North Carolina Court of Appeals affirmed summary judgment for the defendants, concluding that, despite the label, the plaintiff's claim was one for assault and was barred by the statute of limitations.  *Dickens v. Puryear*, 45 N.C. App. 696, 263 S.E.2d 856 (1980).  The Court of Appeals reasoned: "Where the gist of a claim for relief is assault and battery, courts have applied the statute of limitations applicable to assault and battery despite allegations in the complaint that it was some other tort.  This is particularly true where it appears the purpose in the use of a label different from assault and battery is to provide a different and longer statute of limitations."  *Id. at 700, 263 S.E.2d at 859*.

On appeal, the North Carolina Supreme Court agreed with the Court of Appeals that "[t]he nature of the action is not determined by what either party calls it . . . .  The nature of the action is determined by the issues arising on the pleading and by the relief sought."  *Dickens*, 302 N.C. at 454, 276 S.E.2d at 336 (internal citations and quotations omitted).  The Court held that the plaintiff's claims for mental and physical injuries arising out of physical beatings were barred by the one-year statute of limitations.  *Id.*[5]

---

[4] Formerly, the one-year statute, N.C. Gen. Stat. 1-54(3) applied to "libel, slander, assault, battery or false imprisonment."  In 2001, it was amended and now only applies to claims for "libel and slander."

[5] The Court concluded, however, that the threat to kill the plaintiff if he returned to the State was not a threat of imminent harm, and was therefore not properly characterized as an assault.  This single threat was "actionable, if at all, as an intentional infliction of mental distress," and was not time-barred.  *Dickens v. Puryear,* 302 N.C. 437, 455, 276 S.E.2d 325, 336 (1981).

In *Adams v. McIntyre,* the Court applied the analysis of *Dickens* to claims designated as negligent and intentional infliction of emotional distress, primarily arising out of the defendants' publication of "false statements about [plaintiff], as a result of which [plaintiff] suffered damage to his 'personal and business' reputation, embarrassment, and mental anguish." *Adams,* 1997 U.S. Dist. LEXIS 15942, at *4. In his decision later adopted by the District Court, the Magistrate Judge recommended dismissal of these claims, pursuant to Rule 12(b)(6), reasoning:

> Inasmuch as claims for infliction of emotional distress have a longer limitations period, it is common for plaintiffs who have missed the deadlines for filing claims for shorter-lived torts to attempt to re-dress their claims. *See Dickens v. Puryear,* 302 N.C. 437, 276 S.E.2d 325 (1981). . . . As discussed briefly above, plaintiff has alleged damage to his personal and business reputation and his standing in the community arising from allegedly false and defamatory statements about him published by defendants in their newspaper. Plaintiff's claim is most certainly one for libel.

*Id.* at *5-6. In this case, Plaintiffs' state tort claims against Hodge arise out of his having allegedly made a false statement about Plaintiffs to a reporter. Thus, these claims are most certainly claims for defamation, which are barred by the statute of limitations.

### B. No Intentional Infliction of Emotional Distress
(Twentieth Cause of Action)

The only act of Hodge that is alleged as a factual basis for this claim against him is his remark. (2d Amend. Compl. ¶ 809-11, 1214.) Even if this claim were not barred by the applicable statute of limitations, it should be dismissed, because this act is insufficient to support a claim for intentional infliction of emotional distress.

The essential elements of a common law claim for intentional infliction of emotional distress in North Carolina are: "(1) extreme and outrageous conduct by the defendant (2) which is intended to and does in fact cause (3) severe emotional distress." *Waddle v. Sparks*, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992) (citation omitted). "The determination of whether the conduct alleged was intentional and was extreme and outrageous enough to support such an action is a question of law for the trial judge." *Sabrowski v. Albani-Bayeux, Inc*., No. 1:02-CV-728, 2003 U.S. Dist. LEXIS 23242, *8 (M.D.N.C. Dec. 19, 2003) (citing *Lenins v. K-Mart Corp*., 98 N.C. App. 590, 599, 391 S.E.2d 843, 848 (1990)).

"A claim for intentional infliction of emotional distress exists when a defendant's conduct exceeds all bounds usually tolerated by decent society[.]" *Watson v. Dixon*, 130 N.C. App. 47, 52, 502 S.E.2d 15, 19 (1998) (internal quotations and citations omitted). Conduct is extreme and outrageous when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Briggs v. Rosenthal*, 73 N.C. App. 672, 677, 327 S.E.2d 308, 311 (1985) (internal quotations and citation omitted). The North Carolina Supreme Court has summarized the nature of this claim:

> This tort imports an act which is done with the intention of causing
> emotional distress or with reckless indifference to the likelihood that
> emotional distress may result. A defendant is liable for this tort when he
> desires to inflict severe emotional distress . . . [or] knows that such distress
> is certain, or substantially certain, to result from his conduct . . . [or] where
> he acts recklessly . . . in deliberate disregard of a high degree of probability
> that the emotional distress will follow and the mental distress does in fact
> result.

*Dickens*, 302 N.C. at 449, 276 S.E.2d at 333 (internal quotations and citations omitted).

The standard for conduct sufficient to support a claim for intentional infliction of emotional distress was addressed in *Hogan v. Forsyth Country Club Co.,* 79 N.C. App. 483, 340 S.E.2d 116:

> The liability clearly does not extend to mere insults, indignities, [or] threats . . . .  The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate or unkind.  There is no occasion for the law to intervene in every case where some one's feelings are hurt.  There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam. . . .

*Id.* at 493-94, 340 S.E.2d at 123 (citations omitted).

In numerous cases, North Carolina's appellate courts have found false accusations insufficient to meet this standard.  In *Smith-Price v. Charter Behavioral Health Sys.,* 164 N.C. App. 349, 595 S.E.2d 778 (2004), the North Carolina Court of Appeals held that the defendant's false accusations of sexual harassment at work, while sufficient to support a claim for defamation, were not sufficient to support a claim for intentional infliction of emotional distress.  The Court held that "[a]lthough defendant's behavior was undeniably churlish and ill-mannered, it does not rise to the level of the extreme and outrageous conduct which is required to sustain a claim for intentional infliction of emotional distress."  *Id.* at 355,  595 S.E.2d at 783; *see also Johnson v. Colonial Life & Accident Ins. Co.,* 173 N.C. App. 365, 373, 618 S.E.2d 867, 873 (2005) (threats and accusations concerning submission of an allegedly false insurance claim were "insulting and

offensive" but did not constitute "extreme and outrageous conduct"); *Dobson v. Harris,* 134 N.C. App. 573, 521 S.E.2d 710 (1999) (false accusation of child abuse was not "extreme and outrageous conduct" that would support a claim for intentional infliction of emotional distress), *other portion of opinion rev'd on other grounds,* 352 N.C. 77, 530 S.E.2d 829 (2000); *Ausley v. Bishop*, 133 N.C. App. 210, 221, 515 S.E.2d 72, 80 (1999) (false report to police resulting in embezzlement charges, and negative and accusatory comments to creditors and potential clients, although "deplorable," did not meet standard).

This Court has similarly concluded that defamatory statements are insufficient to support this claim under North Carolina law.  In *Sabrowski*, the plaintiff alleged that her supervisor made numerous false statements to her ex-husband and co-workers, including that: "(1) her job was in jeopardy; (2) she came to work 'stoned out of her mind'; (3) she fabricated her therapist's note; (4) she was a threat to other employees; (5) she was seeing a 'head doctor'; (6) she was experiencing severe emotional problems; (7) she attended counseling every week; (8) she possibly had a problem with alcohol; (9) she made a bomb threat; (10) she was 'mentally ill,' 'mentally disturbed,' and 'probably in a (mental) hospital'; and (11) she stole money from [her employer]." 2003 U.S. Dist. LEXIS 23242, at *2-3.  This Court dismissed plaintiff's claim for intentional infliction of emotional distress, finding "that Plaintiff's Complaint has failed to identify any conduct which can be considered extreme and outrageous under North Carolina law." *Id.* at *12.

Hodge's single remark suggesting only that the case was strong simply does not meet the established standard of extreme and outrageous conduct. The inadequacy of this claim is not bolstered by Plaintiffs' labeling this claim as one for "conspiracy." It is unclear from the claim whether Plaintiffs even intend to allege that Hodge participated in a conspiracy to inflict emotional distress; while other defendants are alleged to have acted "in concert," Hodge is not. (*Compare* 2d Amend. Compl. ¶ 1214 to ¶¶ 1215-16). Further, Plaintiffs have not alleged the elements of a civil conspiracy involving Hodge. These elements are: "(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." *Privette v. University of North Carolina*, 96 N.C. App. 124, 139, 385 S.E.2d 185, 193 (1989). Here, Plaintiffs have not alleged that Hodge entered into an agreement with anyone to inflict emotional distress upon them. *See Henderson v. LeBauer*, 101 N.C. App. 255, 261, 399 S.E.2d 142, 145 ("The existence of a conspiracy requires proof of an agreement between two or more persons."), *disc. review denied,* 328 N.C. 731, 404 S.E.2d 868 (1991). The intentional infliction of emotional distress claim is inadequately pled against Hodge and should be dismissed.

### C. No Negligence
(Twenty-fifth Cause of Action)

In an obvious effort to avoid the bar of the statute of limitations, Plaintiffs attempt to allege that Hodge owed Plaintiffs a duty "to use due care" in making public statements, and that he "negligently breached" that duty in making the "false" statement discussed

above.  (2d Amend. Compl. ¶¶ 1264, 1266.)  Publication of false statements is

defamation.  *Boyce & Isley v. Cooper,* 153 N.C. App. 25, 29, 568 S.E.2d 893, 897 (2002).

Research has disclosed no North Carolina authority for the proposition that such conduct

also gives rise to a claim for negligence.[6]  For the reasons discussed by the Western

District in *Adams,* North Carolina courts would not restyle this as a claim for negligence

simply to give Plaintiffs the benefit of a longer limitations period.  *Adams,* 1997 U.S. Dist.

LEXIS 15942, at *4-6.  This claim is time-barred, and should be dismissed.

      Further, Hodge is immune from liability for any claim grounded in negligence.

"A public officer performing discretionary acts . . . is absolutely immune from mere

negligence claims."  *Shaw v. Stroud*, 13 F.3d 791, 803 (4th Cir. 1994).  A "police officer

is a public official who enjoys absolute immunity from personal liability for discretionary

acts done without corruption or malice."  *Campbell v. Anderson*, 156 N.C. App. 371, 376,

576 S.E.2d 726, 730 (2003)  Moreover, "the North Carolina Supreme Court has never

allowed a showing of gross negligence to suffice to pierce an officer's immunity, absent a

statute specifically abolishing the common law immunity."  *Shaw*, 13 F.3d at 803.

Further, "allegations of . . . even 'reckless indifference' are not sufficient."  *Layman v.*

---

[6] The only North Carolina common law claim based upon a statement negligently made is one for negligent misrepresentation.  This tort "occurs when in the course of a business or other transaction in which an individual has a pecuniary interest, he or she supplies false information for the guidance of others in a business transaction, without exercising reasonable care in obtaining or communicating the information."  *Fulton v. Vickery*, 73 N.C. App. 382, 388, 326 S.E.2d 354, 358 (1985).  To make out such a claim, the plaintiff must have relied on the representation to his detriment.  *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988).  Clearly, this authority is inapplicable here: this case does not involve a transaction, and Plaintiffs have not, and could not, allege that they relied on Hodge's statement.

*Alexander*, [294 F. Supp. 2d 784, 795](#) (W.D.N.C. 2003). When suing a public officer, a

"plaintiff may not *just* allege negligent behavior and expect his personal capacity action

to survive." *Epps v. Duke Univ.*, [122 N.C. App. 198, 207](#), 468 S.E.2d 846, 853 (1996)

(emphasis in original). Where there are "no allegations of corrupt or malicious actions,

actions outside the scope of defendants' duties, or gross negligence" a negligence claim

against a public officer fails to state a claim and should be dismissed. *Thompson*

*Cadillac-Oldsmobile, Inc. v. Silk Hope Auto, Inc.*, [87 N.C. App. 467, 469-70, 361 S.E.2d](#)

[418, 420 (1987)](#).

Here, Plaintiffs have alleged that Hodge made this statement acting in the capacity

as "Acting Chief of Police," or "Deputy" Chief of Police. (2d Amend. Compl. ¶¶ 810,

811.) Thus, the statement is alleged to have been made within the scope of his official

duties. Further, while the phrases "malicious" and "corrupt" are peppered throughout the

Amended Complaint, Plaintiffs have made no specific allegation that Hodge, individually,

acted with malice or corruption, or that this statement was so motivated. Thus, this claim

for "negligent statements," if recognized at all in North Carolina, is barred by Hodge's

immunity.

Additionally, Plaintiffs have failed to allege any negligent conduct on the part of

Hodge. This Court has consistently held that "when the plaintiff's complaint alleges

acts . . . that are intentional in nature, and simply concludes that the acts were committed

negligently, it is insufficient to state a claim for [negligence]." *Sabrowski*, [2003 U.S.](#)

[Dist. LEXIS 23242 at *16-17](#) (allegations of defamation did not support claim for

negligent infliction of emotional distress); *Barbier v. Durham County Bd. of Educ.*, [225 F. Supp. 2d 617](#) (M.D.N.C. 2002) (allegations of intentional sexual harassment did not support a claim for negligent infliction of emotional distress); *see also Magidson v. Wachovia Bank,* No. 1:07-CV-5005, [2007 U.S. Dist. LEXIS 95084](#) (M.D.N.C. Dec. 27, 2007) (allegations of intentional harassment did not support a claim for negligent infliction of emotional distress).

Here, Plaintiffs affirmatively allege that Hodge made the statement to the reporter intentionally, with knowledge that it was false. (2d Amend. Compl. ¶¶ 811, 1264-65.) Plaintiffs have alleged only intentional conduct and have alleged no facts suggesting that he was negligent. After consistent allegations that this conduct was intentional, Plaintiffs summarily make a single assertion that, in committing this act, Hodge "negligently breached said duty to use due care." (*Id.* ¶ 1266.) This conclusory allegation does not convert allegations of intentional conduct into a claim for negligence. *See Sabrowski, supra*; *Barbier, supra*; *Magidson, supra*; *see also Gourley v. Ken Wilson Ford, Inc.*, No. 1:06-CV-141, [2006 U.S. Dist. LEXIS 62107, *3](#) (W.D.N.C. Aug. 15, 2006) (a complaint containing one conclusory allegation that the defendant was negligent, and every other allegation in the complaint charges intentional acts, fails to state a claim for negligent infliction of emotional distress). Thus, this claim must be dismissed.

## **CONCLUSION**

While he was in attendance at a public event, a reporter approached Hodge and asked him if the case was strong. Hodge replied, "I don't think we would be here if it wasn't." (2d Amend. Compl. ¶ 809.)

If this allegedly "false" response gives rise to any cognizable claim at all, it would be a common law claim for defamation. Plaintiffs allowed the statute of limitations on that claim to expire months before filing suit.

Despite Plaintiffs' best efforts to dress their defamation claim up to look like something else, they have not, and cannot succeed. Hodge did not violate Plaintiffs' constitutional rights in responding to the reporter, and their federal section 1983 claims, therefore, fail. Hodge's conduct was not extreme or outrageous, and Plaintiffs' common law claim for intentional infliction of emotional distress similarly fails. This intentional remark does not support a claim for negligence, and even if it could, Hodge is immune from negligence claims. Plaintiffs' claims against Hodge in the Fifth, Ninth, Twentieth, and Twenty-fifth Causes of Action are insufficient to state a claim for relief as a matter of law, and should be dismissed.

Further, for all of the reasons stated in the Memorandum of Durham Supervising Defendants, all other claims against Hodge should be dismissed as well.

Respectfully submitted, this the <u>2nd</u> day of July, 2008.

TROUTMAN SANDERS LLP

By: <u>/s/ Patricia P. Kerner</u>
    Patricia P. Kerner
N.C. State Bar No. 13005
    Hannah G. Styron
N.C. State Bar No. 28824
    D. Martin Warf
N.C. State Bar No. 32982
*Attorneys for Defendant Hodge*
434 Fayetteville Street, Suite 1900
Raleigh, North Carolina 27601
Telephone: (919) 835-4100
Facsimile: (919) 829-8714
tricia.kerner@troutmansanders.com
hannah.styron@troutmansanders.com
martin.warf@troutmansanders.com

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RYAN MCFADYEN, *et al*,       )
                             )
         Plaintiffs,          )
                             )
v.                           )       Case No. 1:07-CV-00953
                             )
DUKE UNIVERSITY, *et al*,     )
                             )
         Defendants.          )
_____

**CERTIFICATE OF SERVICE**
_____

I hereby certify that the foregoing was electronically filed with the Clerk of the

Court using the CM/ECF system, which will send notification of such filing to the

following:

Robert C. Ekstrand
EKSTRAND & EKSTRAND, LLP
811 Ninth Street, Suite 260
Durham, North Carolina 27705
rce@ninthstreetlaw.com
*Attorneys for Plaintiffs*

James D. Cowan, Jr.
Dixie T. Wells
Leslie Cooper Harrell
SMITH MOORE, LLP
Post Office Box 21927
Greensboro, NC 27420
don.cowan@smithmoorelaw.com
dixie.wells@smithmoorelaw.com
cooper.harrell@smithmoorelaw.com
*Attorneys for Defendants Duke
University, Duke University Health
System, Inc., Richard Brodhead,
Peter Lange, Larry Moneta,
John Burness, Tallman Trask,
Suzanne Wasiolek, Matthew
Drummond, Aaron Graves,
Robert Dean, Tara Levicy, Theresa
Arico, Kate Hendricks, Victor Dzau*

Jamie S. Gorelick
Jennifer M. O'Connor
Paul R.Q. Wolfson
William F. Lee
WILMER, CUTLER, PICKERING, HALE,
and DORR, LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006
jamie.gorelick@wilmerhale.com
jennifer.oconnor@wilmerhale.com
paul.wolfson@wilmerhale.com
william.lee@wilmerhale.com
*Attorneys for Defendants Duke
University, Duke University Health
System, Inc., Richard Brodhead,
Peter Lange, Larry Moneta,
John Burness, Tallman Trask,
Suzanne Wasiolek, Matthew
Drummond, Aaron Graves,
Robert Dean, Tara Levicy, Theresa
Arico, Kate Hendricks, Victor Dzau*

Dan J. McLamb
Shirley M. Pruitt
T. Carlton Younger, III
YATES, MCLAMB & WEYHER, LLP
P.O. Box 2889
Raleigh, NC 27602-2889
dmclamb@ymwlaw.com
spruitt@ymwlaw.com
cyounger@ymwlaw.com
*Attorneys for Defendants Duke
University Health Systems, Inc.,
Tara Levicy, and Theresa Arico*

Robert A. Saar
Nicholas J. Sanservino, Jr.
OGLETREE DEAKINS NASH SMOAK
& STEWART, PC
2301 Sugar Bush Rd., Suite 600
Raleigh, NC 27612
*Attorneys for DNA Security*

Robert J. King, III
Kearns Davis
BROOKS, PIERCE, McLENDON,
HUMPHREY & LEONARD, LLP
Post Office Box 26000
Greensboro, NC 27420
*Attorneys for Defendants DNA Security,
Inc. and Richard Clark*

James A. Roberts, III
LEWIS & ROBERTS, PLLC
1305 Navaho Drive, Suite 400
Raleigh, NC 27605
*Attorneys for Brian Meehan*

Paul R. Dickinson, Jr.
LEWIS & ROBERTS, PLLC
590 Fairview Rd., Suite 102
Charlotte, NC 28210
*Attorneys for Brian Meehan*

Reginald B. Gillespie, Jr.
FAISON & GILLESPIE
Post Office Box 51729
Durham, NC 27717
rgillespie@faison-gillespie.com
*Attorneys for Defendant City of
Durham*

Edwin M. Speas
Eric P. Stevens
POYNER & SPRUILL, LLP
3600 Glenwood Avenue
Raleigh, NC 27612
*Attorneys for Defendant Gottlieb*

Joel M. Craig
Henry W. Sappenfield
KENNON, CRAVER, BELO, CRAIG &
MCKEE, PLLC
Post Office Box 51579
P.O. Box 51579
Durham, NC 27717-1579
*Attorneys for Defendant Himan*

James B. Maxwell
MAXWELL, FREEMAN & BOWMAN,
P.A.
Post Office Box 52396
Durham, NC 27717
*Attorneys for Defendant Addison*

I further certify that a copy of the foregoing was served today upon each of the

following non CM/ECF participants by United States mail, postage prepaid, addressed as

follows:

Linwood Wilson                     Roger E. Warrin
6910 Innesbrook Way                Michael A. Vatis
Bahama, NC 27503-9700              John P. Nolan
*Pro Se*                           Leah M. Quadrino
                                   STEPTOE & JOHNSON, LLP
                                   1330 Connecticut Ave. N.W.
                                   Washington, DC 20036
                                   *Attorneys for Defendant City of Durham*

This the <u>2nd</u> day of July, 2008.

Respectfully submitted,

By: /s/ Patrica P. Kerner
    Patricia P. Kerner
N.C. State Bar No. 13005
*Attorneys for Defendant Hodge*
434 Fayetteville Street, Suite 1900
Raleigh, North Carolina 27601
Telephone: (919) 835-4100
Facsimile: (919) 829-8714
tricia.kerner@troutmansanders.com