**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 1:07-CV-953**


RYAN MCFADYEN *et al.*,

     Plaintiffs,

        v.

DUKE UNIVERSITY *et al.*,

     Defendants.

_____

**BRIEF IN SUPPORT OF MOTION TO DISMISS
OF DEFENDANTS DNA SECURITY, INC. AND RICHARD CLARK**

Robert J. King III
Kearns Davis
BROOKS, PIERCE, MCLENDON,
   HUMPHREY & LEONARD, L.L.P.
Post Office Box 26000
Greensboro, North Carolina  27420
Telephone:  (336) 373-8850

*Counsel for Defendants DNA Security, Inc. and Richard Clark*

Robert A. Sar
Nicholas J. Sanservino, Jr.
OGLETREE, DEAKINS, NASH,
   SMOAK & STUART, P.C.
2301 Sugar Bush Road, Suite 600
Raleigh, North Carolina  27612
Telephone: (919) 787-9700

*Counsel for Defendant DNA Security, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

NATURE OF THE MATTER BEFORE THE COURT ..................................................... 1

SUMMARY OF THE FACTS ............................................................................................ 2

QUESTION PRESENTED ................................................................................................. 6

ARGUMENT ...................................................................................................................... 6

    I.     STANDARD FOR MOTION TO DISMISS ............................................... 6

    II.    SUMMARY OF ARGUMENT ................................................................... 7

    III.   PLAINTIFFS' CLAIMS AGAINST THE DSI
          DEFENDANTS ARE PRECLUDED BY ABSOLUTE
          WITNESS IMMUNITY ............................................................................. 8

          A.   The DSI Defendants Enjoy Absolute Immunity Arising
               from Meehan's Role as an Expert Witness in the
               Underlying Criminal Proceeding ........................................... 8

          B.   Plaintiffs' Conspiracy Claims Do Not Negate the
               Absolute Witness Immunity That Protects the DSI
               Defendants ............................................................................ 10

    IV.   ALL OF PLAINTIFFS' § 1983 CLAIMS FAIL BECAUSE
          PLAINTIFFS HAVE SUFFERED NO CONSTITUTIONAL
          INJURY ................................................................................................... 12

          A.   Plaintiffs' § 1983 Claims Must Be Predicated on a
               Constitutional Violation ....................................................... 12

          B.   Plaintiffs Have Not Pleaded a Fourth Amendment Claim
               Against the DSI Defendants .................................................. 13

          C.   Plaintiffs Have Suffered No Violation of Their Due
               Process Rights as a Result of the Timing and Content of
               the May 12 Report ............................................................... 14

|   |   | 1. | Deprivation of Property in the Form of the May 12 Report and Underlying Data. ......................................................... 17 |
|   |   | 2. | "Misleading" Conclusion Relating to the False Fingernail. .................................................................... 21 |
|   |   | 3. | Deprivation of Privileges and Immunities. .................................... 22 |
|   |   | 4. | Claim for harm to reputation. ....................................... 25 |

V. PLAINTIFFS CANNOT ESTABLISH CAUSATION FOR ANY OF THEIR CLAIMS ......................................................... 26

VI. PLAINTIFFS CANNOT STATE CLAIMS BASED ON RESPONDEAT SUPERIOR OR SUPERVISOR LIABILITY ................ 29

    A. DSI Cannot Be Held Liable Under § 1983 on a Theory of *Respondeat Superior* ........................................................... 29

    B. Clark Cannot Face Supervisory Liability ........................................... 30

VII. PLAINTIFFS CANNOT STATE CLAIMS UNDER §§ 1985 AND 1986 .............................................................................. 31

VIII. PLAINTIFFS' STATE LAW CLAIMS MUST BE DISMISSED ............................................................................. 36

    A. Plaintiffs' Negligence Claims Fail Because the DSI Defendants Owed No Duty to Plaintiffs............................................. 37

    B. Plaintiffs Have Not Stated a Claim for Obstruction of Justice ............................................................................... 39

    C. Plaintiffs Have Not Stated a Claim for Intentional Infliction of Emotional Distress ........................................... 40

IX. PLAINTIFFS' FAILURE TO TRAIN CLAIM ALLEGES NO WRONGDOING BY THE DSI DEFENDANTS................................. 41

CONCLUSION ........................................................................................... 42

# TABLE OF AUTHORITIES

## Federal Cases

*Asque v. Commonwealth Allegheny County,*
　　No. 07-294, 2007 WL 1247051
　　(W.D. Pa. Apr. 27, 2007) ..................................................... 20

*Austin v. Paramount Parks, Inc.,*
　　195 F.3d 715 (4th Cir. 1999) ........................................ 29, 30

*Baker v. McCollan,*
　　443 U.S. 137 (1979) ............................................................. 12

*Barefoot v. City of Wilmington,*
　　306 F.3d 113 (4th Cir. 2002),
　　*abrogation on other grounds recognized*
　　*by Davani v. Va. Dep't of Transp.,*
　　434 F.3d 712 (4th Cir. 2006) .............................................. 23

*Bass v. E.I. Dupont de Nemours & Co.,*
　　324 F.3d 761 (4th Cir. 2003) ................................................. 6

*Bell Atlantic Corp. v. Twombly,*
　　127 S. Ct. 1955 (U.S. 2007) .......................................... 6, 7, 11

*Biasella v. City of Naples,*
　　No. 2:04-CV-320-FTM29DNF,
　　2005 WL 1925705 (M.D. Fla. Aug. 11, 2005) ..................... 26

*Blue v. Bigos,*
　　89 F.3d 827, 1996 WL 325316 (4th Cir. June 7, 1996)
　　(unpublished table decision) ................................................ 27

*Brady v. Maryland,*
　　373 U.S. 83 (1963) ........................................ 14, 15, 16, 18, 22

*Bray v. Alexandria Clinic,*
　　506 U.S. 263 (1993) ............................................................. 33

*Briscoe v. LaHue,*
　　460 U.S. 325 (1983) ............................................................... 8

- iii -

*Brissett v. Paul,*
    141 F.3d 1157, 1998 WL 195945
    (4th Cir. April 6, 1998) (unpublished table decision)...........35

*Brooks v. City of Winston-Salem,*
    85 F.3d 178 (4th Cir. 1996) ....................................................6

*Burke v. Miller,*
    580 F.2d 108 (4th Cir. 1978) ................................................11

*Buschi v. Kirven,*
    775 F.2d 1240 (4th Cir. 1985) ..............................................33

*C&H Co. v. Richardson,*
    78 Fed. Appx. 894 (4th Cir. 2003)........................................34

*Carter v. Barker,*
    225 F.3d 653, 2000 WL 1008794
    (4th Cir. July 21, 2000) (unpublished table decision) ..........26

*Carter v. Burch,*
    34 F.3d 257 (4th Cir. 1994) ..................................................10

*Clark v. Link,*
    855 F.2d 156 (4th Cir. 1988) ................................................12

*Cox v. Indian Head Indus., Inc.,*
    123 F. Supp. 2d 892 (W.D.N.C. 2000) .................................37

*Dennison v. County of Frederick,*
    921 F.2d 50 (4th Cir. 1990) ..................................................12

*Detweiler v. Virginia Dep't of Rehabilitative Servs.,*
    705 F.2d 557 (4th Cir. 1983) ................................................22

*Eastern Shore Mkt., Inc. v. J.D. Assoc. L.P.,*
    213 F.3d 175 (4th Cir. 2000) ..................................................7

*Edwards v. City of Goldsboro,*
    178 F.3d 231 (4th Cir. 1999) ..................................................6

*Field v. Graffagnino,*
    514 F. Supp. 2d 1036 (W.D. Tenn. 2007) ............................38

*Food Lion, Inc. v. Capital Cities/ABC, Inc.*,
    964 F. Supp. 956 (M.D.N.C. 1997),
    *aff'd*, 194 F.3d 505 (4th Cir. 1999) ...................................... 28

*Franklin v. Terr*,
    201 F.3d 1098 (9th Cir. 2000) ............................................. 11

*Friedland v. City of Charlotte*,
    No. 3:98 CV 122, 2001 WL 1360436
    (W.D.N.C. Oct. 26, 2001) ..................................................... 15

*Gantt v. Whitaker*,
    57 Fed. Appx. 141 (4th Cir. 2003) ........................................ 20

*Giannini v. Real*,
    911 F.2d 354 (9th Cir. 1990) ................................................ 23

*Giglio v. United States*,
    405 U.S. 150 (1972) .............................................................. 16

*Great Am. Fed. S&L Ass'n v. Novotny*,
    442 U.S. 366 (1979) .............................................................. 32

*Griffin v. Breckenridge*,
    403 U.S. 88 (1971) ................................................................ 32

*Harden v. Green*,
    27 Fed. Appx. 173 (4th Cir. 2001) (per curiam) .................... 8

*Harrison v. KVAT Food Mgmt., Inc.*,
    766 F.2d 155 (4th Cir. 1985) ................................................ 33

*Hatfield v. Palles*,
    537 F.2d 1245 (4th Cir. 1976) .............................................. 39

*Hodge v. Jones*,
    31 F.3d 157 (4th Cir. 1994) .................................................. 20

*Imbler v. Pachtman*,
    424 U.S. 409 (1976) .............................................................. 10

*J.S. v. Isle of Wight County Sch. Bd.*,
    368 F. Supp. 2d 522 (E.D. Va. 2005) ................................... 30

*Jean v. Collins,*
    155 F.3d 701 (4th Cir. 1998) (en banc),
    *vacated & remanded on other grounds,*
    526 U.S. 1142 (1999)............................................................ 10

*Jean v. Collins,*
    221 F.3d 656 (4th Cir. 2000) ......................................... 15, 16

*Jolly v. Acad. Collection Serv., Inc.,*
    400 F. Supp. 2d 851 (M.D.N.C. 2005) ................................. 40

*Kahn v. Burman,*
    673 F. Supp. 210 (E.D. Mich. 1987), *aff'd on other*
    *grounds,* 878 F.2d 1436 (6th Cir. 1989) ........................... 9, 38

*King v. Jeffries,*
    402 F. Supp. 2d 624 (M.D.N.C. 2005) ................................. 32

*Lambert v. Williams,*
    223 F.3d 257 (4th Cir. 2000) ......................................... 12, 13

*Lohr v. Association of Catholic Teachers,*
    416 F. Supp. 619 (E.D. Pa. 1976) ........................................ 35

*Lyles v. Sparks,*
    79 F.3d 372 (4th Cir. 1996) .................................................... 8

*Madden v. Kentucky,*
    309 U.S. 83 (1940)................................................................. 23

*Martin v. Boyce,*
    No. 1:99 CV 1072, 2000 WL 1264148
    (M.D.N.C. July 20, 2000) ..................................................... 34

*Mowbray v. Cameron County,*
    274 F.3d 269 (5th Cir. 2001) ................................................ 10

*Papasan v. Allain,*
    478 U.S. 265 (1986)................................................................. 7

*Parnell v. Supreme Court,*
    110 F.3d 1077 (4th Cir. 1997) ........................................ 23, 24

*Paul v. Davis,*
    424 U.S. 693 (1976).................................................25

*Phillips v. Bailey,*
    337 F. Supp. 2d 804 (W.D. Va. 2004)...................................31

*Pineda v. City of Houston,*
    291 F.3d 325 (5th Cir. 2002)..............................................30

*Powell v. Shopco Laurel Co.,*
    678 F.2d 504 (4th Cir. 1982)..............................................29

*Price v. City of Charlotte,*
    93 F.3d 1241 (4th Cir. 1996)..............................................27

*Pulliam v. Superintendent of Hoke Corrections,*
    No. 1:05 CV 1000, 2007 WL 4180743
    (M.D.N.C. Nov. 20, 2007).....................................................31

*Randall v. Prince George's County, Md.,*
    302 F.3d 188 (4th Cir. 2002)..............................................31

*Rhodes v. Smithers,*
    939 F. Supp. 1256 (S.D.W.Va. 1995),
    *aff'd,* 91 F.3d 132 (4th Cir. 1996)...........................................27

*Rodriguez v. Smithfield Packing Co.,*
    338 F.3d 348 (4th Cir. 2003)..............................................29

*Scott v. Hern,*
    216 F.3d 897 (10th Cir. 2000)..............................................27

*Shaw v. Stroud,*
    13 F.3d 791 (4th Cir. 1994)............................................27, 30

*Sheaffer v. County of Chatham,*
    337 F. Supp. 2d 709 (M.D.N.C. 2004)...................................37

*Siegert v. Gilley,*
    500 U.S. 226 (1991).................................................25

*Simmons v. Poe,*
    47 F.3d 1370 (4th Cir. 1995)............................................32, 34

*Slaughter-House Cases*,
    83 U.S. 36 (1872)....................................................................23

*Sloan v. Dep't of Housing & Urban Development*,
    231 F.3d 10 (D.C. Cir. 2000)...........................................25-26

*Smith v. Morgan*,
    108 F.3d 1373, 1997 WL 73520
    (4th Cir. Feb. 21, 1997) (unpublished table decision) ..........25

*Supreme Court of Virginia v. Friedman*,
    487 U.S. 59 (1988)..................................................................24

*Taylor v. Waters*,
    81 F.3d 429 (4th Cir. 1996) ...................................................15

*Tigrett v. Rector & Visitors of Univ. of Va.*,
    290 F.3d 620 (4th Cir. 2002) ...........................................25, 31

*Toomer v. Witsell*,
    334 U.S. 385 (1948)...............................................................23

*Trerice v. Summons*,
    755 F.2d 1081 (4th Cir. 1985) ...............................................35

*United Bhd. of Carpenters v. Scott*,
    463 U.S. 825 (1983)..........................................................32, 33

*United Bldg. & Constr. Trades Council v. Mayor and
    Council of Camden*,
    465 U.S. 208 (1984)...............................................................24

*United States v. Agurs*,
    427 U.S. 97 (1976)..................................................................15

*United States v. Bagley*,
    473 U.S. 667 (1985)...............................................................15

*White v. Chambliss*,
    112 F.3d 731 (4th Cir. 1997) .................................................20

**State Cases**

*Ausley v. Bishop,*
  133 N.C. App. 210,
  515 S.E.2d 72, 80 (1999) ....................................................... 41

*Cockerham-Ellerbee v. Town of Jonesville,*
  176 N.C. App. 372, 626 S.E.2d 685 (2006).......................... 19

*Dickens v. Puryear,*
  302 N.C. 437, 276 S.E.2d 325 (1981)................................... 40

*Ford v. Peaches Entm't Corp.,*
  83 N.C. App. 155, 349 S.E.2d 82 (1986).............................. 27

*Fowle v. Fowle,*
  255 N.C. 720, 122 S.E.2d 722 (1961) (per curiam)................ 8

*Hawkins v. Webster,*
  78 N.C. App. 589, 337 S.E.2d 682 (1985)............................ 11

*Henry v. Deen,*
  310 N.C. 75, 310 S.E.2d 326 (1984)..................................... 39

*Huntley v. Howard Lisk Co.,*
  154 N.C. App. 698, 573 S.E.2d 233 (2002).......................... 37

*Jarman v. Offutt,*
  239 N.C. 468, 80 S.E.2d 248 (1954)....................................... 9

*Johnson v. Colonial Life & Accident Ins. Co.,*
  173 N.C. App. 365, 618 S.E.2d 867 (2005).......................... 40

*Jones v. City of Durham,*
  187 N.C. App. 57, 643 S.E.2d 631 (2007)............................ 39

*Lay v. Mangum,*
  87 N.C. App. 251, 360 S.E.2d 481 (1987)............................ 41

*Little v. Omega Meats I, Inc.,*
  171 N.C. App. 583, 615 S.E.2d 45, *aff'd,*
  360 N.C. 164, 622 S.E.2d 494 (2005)................................... 37

*Maiden v. Rozwood,*
   597 N.W.2d 817 (Mich. 1999)...............................................38

*Nelson v. Hartford Underwriters Ins. Co.,*
   177 N.C. App. 595, 630 S.E.2d 221 (2006)..........................26

*Sharp v. Miller,*
   121 N.C. App. 616, 468 S.E.2d 799 (1996)........................8, 9

*Shillington v. K-Mart Corp.,*
   102 N.C. App. 187, 402 S.E.2d 155 (1991)..........................40

*Simmons v. Wilder,*
   6 N.C. App. 179, 169 S.E.2d 480 (1969)..............................39

*Smith v. Privette,*
   128 N.C. App. 490, 495 S.E.2d 395 (1998)..........................37

*State v. Daniels,*
   51 N.C. App. 294, 276 S.E.2d 738 (1981)............................18

*State v. Pearson,*
   145 N.C. App. 506, 551 S.E.2d 471 (2001),
   *aff'd,* 356 N.C. 22, 566 S.E.2d 50 (2002).......................17, 18

*Tise v. Yates Construction Co.,*
   345 N.C. 456, 480 S.E.2d 677 (1997)...................................28

*Ward v. Southern Ry. Co.,*
   206 N.C. 530, 174 S.E.2d 443 (1934)...................................28

*Williams v. Congdon,*
   43 N.C. App. 53, 257 S.E.2d 677 (1979)................................8

## Federal Statutes

42 U.S.C. § 1983 ........................................................................ *passim*

42 U.S.C. § 1985 ........................................................................ 31-35

42 U.S.C. § 1986 ................................................................ 31, 35, 36

## State Statutes

N.C. Gen. Stat. § 15A-282 ......................................................... *passim*

N.C. Gen. Stat. § 15A-903 ............................................................. 16

N.C. Gen. Stat. § 132-1 .................................................................. 16

N.C. Gen. Stat. § 132-1.4(a) ............................................................ 16

## Federal Rules

Federal Rule of Civil Procedure 12(b)(6) ....................................... 1, 6

Defendants DNA Security, Inc. and Richard Clark, through counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7.2, respectfully submit this Brief in support of their Motion to Dismiss.

## NATURE OF THE MATTER BEFORE THE COURT

This matter is the second-filed of three related actions in this Court concerning the so-called Duke Lacrosse Rape Case. In the first-filed action, *Evans et al. v. City of Durham et al.*, No. 1:07-CV-739 ("*Evans*"), the three lacrosse players who were charged in the criminal action styled *State v. Finnerty, Evans & Seligmann* ("the Criminal Action") brought suit against the prosecutor, the City of Durham, various police officers and officials, and the Movants. The third related action is styled *Carrington et al. v. Duke University et al.*, No. 1:08-CV-119 and was brought -- like this case -- by lacrosse players who were never indicted or arrested.

Like the present Plaintiffs, the *Evans* plaintiffs sued DNA Security, Inc. ("DSI"), Richard Clark ("Clark") and Brian Meehan ("Meehan") (collectively, "the DSI Defendants")[1] for Meehan and DSI's expert work on behalf of the State, even though those plaintiffs concede, among other things, that DSI correctly analyzed the DNA samples, the DNA analysis exculpated them, and DSI fully reported its results to the prosecutor and police.

---

[1] Meehan was the director of the lab at DSI during the relevant time, and Clark is DSI's President. (Am. Compl. ¶¶ 74, 75.)

1

In the present action, three Duke lacrosse players who were never charged or arrested have filed a 427-page, 1384-paragraph complaint against the DSI Defendants and 47 other parties, including the prosecutor, the City of Durham, members of the Durham Police Department, Duke University and officials associated with Duke University. While it is highly unusual for a suspect who was never indicted or arrested to bring an action for damages against a prosecutor and investigating officers, the filing of damages claims by a person who was never charged with a crime against the prosecution's expert witness appears to be without precedent. For the reasons set forth below, Plaintiffs' claims against DSI and Clark are meritless and should be dismissed.[2]

## SUMMARY OF THE FACTS

Plaintiffs have filed an extraordinarily voluminous First Amended Complaint in this matter, running more than 400 pages in length, with many hard copy and video attachments. While other defendants may attempt to detail all of Plaintiffs' allegations, DSI and Clark need not do so, since the allegations against the DSI Defendants are relatively brief. Instead, DSI and Clark provide below a brief overview of Plaintiffs' allegations, followed by a short discussion of the allegations that relate specifically to the DSI Defendants.[3]

---

[2]   Meehan is represented by separate counsel. However, almost all of the arguments contained herein would apply with equal force to Meehan.

[3]   DSI and Clark strongly disagree with many of the allegations in the Amended Complaint. For purposes of the present Motion, however, Plaintiffs' allegations are treated as if they were true, as required on a motion to dismiss under Rule 12(b)(6).

## A.     Overview of Plaintiffs' Allegations

Plaintiffs' overall allegations fall into several categories, which can be grouped chronologically:  (1) an effort by Duke University and the Durham Police Department to "crack down" on Duke University students, pre-dating March 2006; (2) the alleged rape on March 14, 2006, and the initial investigations by the Duke University Police and Durham City Police; (3) the determination by the SBI in late March 2006 that no DNA of any lacrosse player was found on the alleged victim, Crystal Mangum ("Mangum"), and the public announcement of those results on April 10, 2006; (4) the hiring of DSI by the prosecutor, Michael Nifong ("Nifong"), on April 5, 2006, and the subsequent confirmation by DSI that no matches existed to any lacrosse players; (5) the indictment of the three *Evans* plaintiffs (Seligmann, Evans and Finnerty); and (6) the decision by Nifong to proceed with the Criminal Action against Seligmann, Evans and Finnerty, despite the lack of supporting DNA evidence.

## B.     Plaintiffs' Allegations Against the DSI Defendants

Plaintiffs' complaints as to the DSI Defendants relate to the preparation of DSI's May 12, 2006 report ("the May 12 Report").  The May 12 Report was generated by DSI for Nifong and contained DSI's analysis of the DNA samples from the lacrosse team members and the evidence samples (*i.e.*, the rape kit and crime scene samples).

After sifting through the 1384 paragraphs in Plaintiffs' First Amended Complaint, it appears that Plaintiffs make only three allegations of wrongdoing against the DSI Defendants:

1.    While Plaintiffs do not deny that they received the May 12 Report, Plaintiffs complain that they should have been given even more immediate reports of DSI's testing results when the tests were performed in mid- and late-April. They claim that a state criminal procedural statute, N.C. Gen. Stat. § 15A-282, gave them a right to receive test results even sooner than they received them. (*See* Am. Compl. ¶¶ 756-57, 944-46.) As discussed below, Plaintiffs have no valid claims related to the timing of the report, and to the extent that Plaintiffs have a complaint on this issue, it is with the prosecutor. But even if a testing laboratory had a duty to bypass the prosecutor and deliver reports to all witnesses and suspects, there is no basis for a civil action (whether state or federal) for violation of § 15A-282.

2.    Plaintiffs acknowledge that the May 12 Report stated that no matches were found between Plaintiffs and any evidence samples, eliminating any suspicion of a physical link between Plaintiffs and the alleged rape. Plaintiffs allege, however, that the Report did not reveal that DNA from males other than lacrosse players was found.[4] (*Id*. ¶¶ 747, 765, 980.)

---

[4] As the DSI Defendants will show, if necessary, the Report in fact indicated that third-party DNA had been found and that information concerning such findings was available from DSI.

Plaintiffs characterize this evidence as "exculpatory." It is unclear, however, what the evidence would "exculpate" Plaintiffs from, since none of them were ever charged with a crime.

3. The May 12 Report referred to a match between an unindicted lacrosse player -- someone *other than these Plaintiffs* -- and evidence found on one false fingernail. Plaintiffs do not dispute (1) that the false fingernail was among the evidence gathered from 610 N. Buchanan that the DSI Defendants were asked to analyze and (2) that the DSI Defendants accurately reported the match between the non-Plaintiff lacrosse player and the sample on the fingernail. Instead, Plaintiffs claim that referring to the match in the May 12 Report was misleading because they claim that there was no evidence that the fingernail was Mangum's. (*Id.* ¶¶ 769-71.) They claim that the match was included with the intention "to intimidate Plaintiffs' non-indicted teammate and prevent him from authenticating the photographic evidence that was the foundation of the digital alibis for Plaintiffs and all of their teammates who attended the party." (*Id.* ¶ 973.) But there is no allegation that the attempted "intimidation" had any effect on the witness, let alone on the Criminal Action or Plaintiffs themselves, nor does the law recognize any claim by a stranger to a criminal action against a party who allegedly intimidated *someone other than the Plaintiffs*

who would be a potential witness in a criminal case filed against *someone other than the Plaintiffs*.

The foregoing represents the totality of the allegations of supposed wrongdoing asserted by Plaintiffs against the DSI Defendants. Plaintiffs' claims against the DSI Defendants are frivolous and should be dismissed.

## QUESTION PRESENTED

Should Plaintiffs' claims against DSI and Clark be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6)?

## ARGUMENT

## I. STANDARD FOR MOTION TO DISMISS

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). Such a motion should be granted when the complaint fails to allege all of the elements of a cause of action or facts sufficient to support such elements. *Bass v. E.I. Dupont de Nemours & Co*., 324 F.3d 761, 765 (4th Cir. 2003). Dismissal also is "appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996).

To survive a motion to dismiss, the complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (U.S. 2007). A plaintiff opposing a motion to dismiss must allege "enough facts to state a claim to relief that is plausible on

its face." *Id*. at 1974. The Court should construe the factual allegations in the complaint in favor of the plaintiff but need not accept as true "unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkt., Inc. v. J.D. Assoc. L.P.*, 213 F.3d 175, 180 (4th Cir. 2000); *see Papasan v. Allain*, 478 U.S. 265, 286 (1986) (in deciding motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

## II.    SUMMARY OF ARGUMENT

Plaintiffs' claims against DSI and Clark are subject to dismissal on multiple grounds. *First*, the DSI Defendants are entitled to absolute witness immunity under both federal and state law. *Second*, Plaintiffs have no constitutional claims related to the timing and content of the May 12 Report, since they were never tried as defendants in the criminal case. *Third*, even assuming that Plaintiffs had suffered some type of injury, Plaintiffs' own allegations show that there is no proximate causal link between any act or omission by the DSI Defendants and any such injury. And *fourth*, the DSI Defendants (expert witnesses for the State) owed no duty to Plaintiffs (unindicted witnesses in a criminal investigation), and Plaintiffs are otherwise unable to state claims against these Defendants.

**III.  PLAINTIFFS' CLAIMS AGAINST THE DSI DEFENDANTS ARE PRECLUDED BY ABSOLUTE WITNESS IMMUNITY**

**A.     The DSI Defendants Enjoy Absolute Immunity Arising from Meehan's Role as an Expert Witness in the Underlying Criminal Proceeding**

A witness in a criminal proceeding is absolutely immune from subsequent damages actions based on his testimony.  *Briscoe v. LaHue*, 460 U.S. 325, 335 (1983); *Lyles v. Sparks*, 79 F.3d 372, 378 (4th Cir. 1996).[5]  That absolute witness immunity extends not only to testimony given at trial but also to pre-trial (and even pre-indictment) activities undertaken in preparation for trial testimony.  *See, e.g.*, *Harden v. Green*, 27 Fed. Appx. 173, 177 (4th Cir. 2001) (per curiam) (expert witness is entitled to absolute immunity for "conduct in completing competency exams and furnishing written reports"); *Sharp v. Miller*, 121 N.C. App. 616, 617-18, 468 S.E.2d 799, 801 (1996) (witness immunity extends to actions taken "in preparation for providing expert witness testimony in the 'due course of a judicial proceeding,'" including "actions in preparing the report to guide expert testimony" and analysis conducted prior to drafting the expert's report); *Williams v. Congdon*, 43 N.C. App. 53, 55, 257 S.E.2d 677, 678 (1979) (where "defendant conducted his interviews and made his report as a witness in the due course of a judicial proceeding," report was "absolutely privileged").  Indeed, the North Carolina courts not only have dismissed claims against an expert witness entitled to immunity but

---

[5] *See also* Brief in Support of Motion to Dismiss filed by DSI and Clark in *Evans* ("the *Evans* Brief") at 11-14.  The same immunity rule bars North Carolina state law damages claims against witnesses in criminal proceedings.  *E.g.*, *Fowle v. Fowle*, 255 N.C. 720, 721, 122 S.E.2d 722, 723 (1961) (per curiam).

have found damages claims against an expert so clearly barred by settled immunity rules as to justify Rule 11 sanctions. *Sharp*, 121 N.C. at 618, 468 S.E.2d at 801-02.

These settled immunity rules compel dismissal of all of Plaintiffs' claims, both federal and state, against the DSI Defendants, for the same reason the *Evans* plaintiffs' claims are barred by immunity: Because all of the DSI Defendants' actions occurred in the course of Meehan's role as an expert witness for the State and in anticipation of his testimony at the expected trial in the Criminal Action, the DSI Defendants enjoy absolute immunity from damages claims arising from those activities. Although Meehan never testified against these Plaintiffs at trial (because these Plaintiffs were never charged with a crime, much less subjected to a trial), every act on which Plaintiffs predicate their claims against the DSI Defendants arose directly out of Meehan's role in the Criminal Action -- specifically, his preparation of DSI's expert report. Immunity attached at the outset of those activities, even though no criminal trial occurred at their conclusion. *Sharp*, 121 N.C. App. at 617-18, 468 S.E.2d at 801; *see also, e.g.*, *Jarman v. Offutt*, 239 N.C. 468, 472, 80 S.E.2d 248, 251 (1954) (witness immunity applicable to expert witness statement furnished to party but never subsequently submitted by party to the court when litigation was abandoned); *Kahn v. Burman*, 673 F. Supp. 210, 212 (E.D. Mich. 1987) (witness immunity "encompasses experts' reports prepared either before or during litigation"), *aff'd on other grounds'*, 878 F.2d 1436 (6th Cir. 1989).[6]

---

[6] Even if absolute witness immunity did not apply, the DSI Defendants are nonetheless immune because they made full disclosure of the DNA testing results to the prosecutor, and it was the prosecutor who allegedly withheld that information from Plaintiffs. (Am.

## B.    Plaintiffs' Conspiracy Claims Do Not Negate the Absolute Witness Immunity That Protects the DSI Defendants

These Plaintiffs take a page from the *Evans* plaintiffs' playbook when they couple their § 1983 claims with a broad, generalized and factually unsupported charge of "conspiracy" against various defendants (and when they assert a stand-alone § 1983 "conspiracy" claim as well).  (*E.g.*, Am. Compl. ¶¶ 946, 973, 980, 1147-55.)  But just as in *Evans*, the fact that Plaintiffs have added "conspiracy" claims to their Amended Complaint does nothing to alter the *Briscoe* immunity that otherwise protects the DSI Defendants.  *See Evans* Br. at 15-17.

Courts extend witness immunity to § 1983 conspiracy claims because they acknowledge that an expert witness does not prepare and present his testimony in a vacuum but necessarily interacts with the prosecutor, investigators and other state actors in preparation for trial.  *E.g.*, *Mowbray v. Cameron County*, 274 F.3d 269, 277-78 (5th Cir. 2001) (acknowledging that "a witness rarely prepares her testimony on her own," and finding that laboratory expert had absolute immunity under § 1983 when, after discussions with prosecutors and officers, he failed to disclose that two tests for victim's blood on defendant's clothing were negative and instead testified that tests were

Compl. ¶¶ 749, 752, 760-64, 945.)  It is well settled that both prosecutors and police have absolute immunity in the determination of whether evidence is exculpatory and must be disclosed, as well as in the act of disclosure (or non-disclosure) of that evidence to the defense (or, as here, to a non-defendant witness).  *Imbler v. Pachtman*, 424 U.S. 409, 431 n.34 (1976) (absolute immunity for "deliberate withholding of exculpatory information"); *Carter v. Burch*, 34 F.3d 257, 262 (4th Cir. 1994) (same); *Jean v. Collins*, 155 F.3d 701, 706 (4th Cir. 1998) (en banc), *vacated & remanded on other grounds*, 526 U.S. 1142 (1999) (extending *Imbler* to claims against non-prosecutors).

positive). Allowing "conspiracy" claims to overcome otherwise-applicable *Briscoe* immunity therefore "would undermine the purposes served by granting witnesses absolute immunity from damages liability under § 1983." *Franklin v. Terr*, 201 F.3d 1098, 1101 (9th Cir. 2000). Accordingly, an expert witness is immune from § 1983 claims, both for conspiracy and for underlying constitutional violations, when those claims are premised on conversations with prosecutors or investigators. *See, e.g.*, *Burke v. Miller*, 580 F.2d 108, 108 (4th Cir. 1978) (finding witness immune from claims of conspiracy "with the prosecuting attorney to deprive [plaintiff] of a fair trial"); *Hawkins v. Webster*, 78 N.C. App. 589, 591-92, 337 S.E.2d 682, 684 (1985) (finding witness immune from claims of conspiracy to provide false information to investigators and to make false statements in sworn testimony and in documents); *see also* cases cited in *Evans* Br. at 16-17. That immunity calls for the dismissal of each of Plaintiffs' claims against the DSI Defendants.[7]

---

[7] In addition, Plaintiffs' conspiracy allegations are conclusory and thus fall short of the factual detail required. *See Bell Atlantic*, 127 S. Ct. at 1965-66. The Amended Complaint describes in general terms a series of meetings between Nifong and the DSI Defendants, from which Plaintiffs derive the conclusion that the Defendants must have conspired to deprive these Plaintiffs of their constitutional rights. (*E.g.*, Am. Compl. ¶¶ 756, 765,-67, 946.) Plaintiffs' leap of logic is simply insufficient to plead conspiracy: That a prosecutor met with his retained expert and provided direction on the format and content of the expert's written report is not suggestive of conspiracy, but in fact describes the perfectly commonplace, and even expected, interaction between a prosecutor and his retained expert.

## IV. ALL OF PLAINTIFFS' § 1983 CLAIMS FAIL BECAUSE PLAINTIFFS HAVE SUFFERED NO CONSTITUTIONAL INJURY

### A. Plaintiffs' § 1983 Claims Must Be Predicated on a Constitutional Violation

Plaintiffs assert a host of § 1983 claims against the DSI Defendants, but each of those claims fails at the outset for a fundamental reason: Plaintiffs have not suffered any constitutional injury. It is hornbook law that § 1983 "is not 'a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes.'" *Lambert v. Williams*, 223 F.3d 257, 260 (4th Cir. 2000) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 (1979)). "If there is no violation of a federal right, there is no basis for a § 1983 action . . . ." *Clark v. Link*, 855 F.2d 156, 161 (4th Cir. 1988); *see Dennison v. County of Frederick*, 921 F.2d 50, 53 (4th Cir. 1990) (to "assert a claim under 42 U.S.C. § 1983, a plaintiff must establish a deprivation of a constitutionally protected right").

Although Plaintiffs' Amended Complaint is long on narrative and rhetoric, it fails to describe infringement by the DSI Defendants of any constitutional right upon which a § 1983 claim can be grounded. As noted above, Plaintiffs' claims against the DSI Defendants reduce to this: They complain (1) that they did not immediately receive the results of tests performed in mid- to late-April that were incorporated into the May 12 Report, (2) that, although the Report accurately described the absence of any lacrosse player DNA on the rape kit samples, it did not also include allegedly "exculpatory" information about DNA evidence from non-lacrosse players, and (3) that the Report's

accurate description of lacrosse player DNA found on a false fingernail, which DSI was asked to analyze, was "misleading" because its inclusion indicated that the DNA evidence was relevant. None of those allegations describes any infringement by the DSI Defendants of any of Plaintiffs' constitutional rights.

### B. Plaintiffs Have Not Pleaded a Fourth Amendment Claim Against the DSI Defendants

As a preliminary matter, it is important to note what these Plaintiffs are *not* claiming. These Plaintiffs do not claim that the DSI Defendants caused them to be unreasonably searched or seized in violation of the Fourth Amendment. These Plaintiffs were never arrested, detained or charged with a crime. Consequently, unlike the *Evans* Plaintiffs, these Plaintiffs do not assert a § 1983 "malicious prosecution" claim. Because Plaintiffs were never "seized" pursuant to an arrest warrant, an indictment, or otherwise, their rights under the Fourth Amendment -- the sole basis for a § 1983 "malicious prosecution" claim, as the Fourth Circuit made clear in *Lambert*, 223 F.3d at 262 -- were not implicated.

Plaintiffs do attempt to make search and seizure claims against others, but they exclude the DSI Defendants from those claims. They have included claims based on their providing DNA samples in compliance with the March 23, 2006 nontestimonial identification order ("NTIO") (Am. Compl. ¶¶ 904-17) and based on the search of Plaintiff McFadyen's dorm room (*id*. ¶¶ 918-28). But those claims are asserted only against various Duke and Durham Defendants.

**C.    Plaintiffs Have Suffered No Violation of Their Due Process Rights as a Result of the Timing and Content of the May 12 Report**

Plaintiffs instead claim that they had some sort of due process interest in the timing and content of information that they allegedly should have received -- even though there was never any proceeding against them to which that information would have been relevant.   Indeed, Plaintiffs do not dispute that they received copies of the May 12 Report.   Instead, Plaintiffs' complaint is that they did not get the information in the May 12 Report as soon as the tests were performed (Am. Compl. ¶¶ 944-46), that the May 12 Report omitted certain test results (what they call "exculpatory" evidence, *see id*. ¶¶ 978-85) and that it reported other test results (involving a false fingernail that contained the DNA of a non-party to both this civil action and the Criminal Action) in a way that Plaintiffs describe as misleading (*id*. ¶¶ 969-77).   Thus, Plaintiffs' constitutional claims boil down to an assertion that they had a freestanding constitutional right to receive the DNA testing information, in a particular format and at a particular time, and that the DSI Defendants had a constitutional obligation to ensure that it was provided.   Those allegations simply do not describe any infringement of Plaintiffs' due process rights.

To begin, *Brady v. Maryland*, 373 U.S. 83 (1963), governs the question of whether there is a due process violation based on the timing and quality of the evidence provided to a criminal defendant.   *Brady* and its progeny flatly foreclose the claims made here by non-criminal defendants.   No *Brady*-type claim (whether labeled concealment of exculpatory evidence, failure to produce a report or manufacture of inculpatory evidence) will lie where the evidence did not affect the outcome of a criminal trial.   *United States v.*

*Bagley*, 473 U.S. 667, 674-75 (1985); *United States v. Agurs*, 427 U.S. 97, 104 (1976). Following that rule, the Fourth Circuit has been emphatic that no constitutional violation occurs unless the § 1983 plaintiff was convicted in a criminal trial that was rendered unfair by the disclosure or non-disclosure. *See Taylor v. Waters*, 81 F.3d 429, 436 n.5 (4th Cir. 1996) (no Fourteenth Amendment violation arising from investigator's failure to make timely disclosure of exculpatory evidence to the prosecutor where § 1983 plaintiff "was not subjected to trial"); *Jean v. Collins*, 221 F.3d 656, 663 (4th Cir. 2000) (Wilkinson, J.) ("A *Brady* violation that resulted in the overturning of the § 1983 plaintiff's conviction is a necessary, but not sufficient, condition for § 1983 liability on the part of the police. It is a necessary condition because the *Brady* violation establishes *the requisite threshold of constitutional injury (a conviction resulting in loss of liberty) below which no § 1983 action can lie*.") (emphasis added); *accord, e.g., id.* at 674 (Murnaghan, J., dissenting) ("no court has ever recognized [a] freestanding liberty interest in exculpatory evidence"; instead, defendant has only liberty interest in "avoiding incarceration" based on withheld material evidence); *see also Friedland v. City of Charlotte*, No. 3:98 CV 122, 2001 WL 1360436, at *5 (W.D.N.C. Oct. 26, 2001) (*Brady* "provides a remedy where a criminal defendant can show that there is a reasonable probability that he would not have been convicted if the state had disclosed the exculpatory evidence").

It follows that, where exculpatory evidence is provided to a defendant before trial or the charges against a defendant are dismissed before trial (or both), no § 1983 claim

for failure to disclose potentially exculpatory information will lie. That settled rule precludes the *Evans* Plaintiffs' claims. *See Evans* Br. at 22-25. The result is even clearer here, where Plaintiffs were merely unindicted potential witnesses in the criminal investigation.[8] DSI and Clark are aware of no basis for a witness or suspect to demand disclosure of "exculpatory" evidence or otherwise engage in discovery in a criminal case in which the individual was never arrested or charged.[9] In effect, these Plaintiffs are asserting a claim based solely on a purported due process right to information -- a claim that even the *Evans* plaintiffs do not attempt to make. *Evans* Opposition to Motions to Dismiss at 33 n.10 [*Evans* Dkt. no. 51].

Plaintiffs' remaining claims are simply variations on this theme.

---

[8] Even if *Brady* applied to Plaintiffs, its disclosure obligations would fall only on the prosecutor, not a retained expert like DSI. The duty to disclose potentially exculpatory information belongs to the prosecutor alone. *Brady*, 373 U.S. at 87; *Giglio v. United States*, 405 U.S. 150, 154 (1972); *Jean*, 221 F.3d at 660 (Wilkinson, J.) ("The Supreme Court has always defined the *Brady* duty as one that rests with the prosecution."). As in *Evans*, Plaintiffs' Amended Complaint concedes that the DSI Defendants made full disclosure to the prosecutor of the results of the DNA testing they conducted. (Am. Compl. ¶¶ 749, 765, 767, 980.) Nothing more was required. *See, e.g.*, *Jean*, 221 F.3d at 660; *Evans* Br. at 18-22 and cases cited therein.

[9] For example, the criminal discovery statutes in North Carolina give only defendants, not witnesses or other third parties, the right to obtain discovery from the prosecution. *See* N.C. Gen. Stat. § 15A-903 (authorizing pretrial discovery "[u]pon motion of the defendant"). In fact, documents generated in criminal proceedings are expressly *exempted* from North Carolina's Public Records law. N.C. Gen. Stat. § 132-1.4(a) ("Records of criminal investigations conducted by public law enforcement agencies, records of criminal intelligence information compiled by public law enforcement agencies, and records of investigations conducted by the North Carolina Innocence Inquiry Commission, are not public records as defined by G.S. 132-1.").

1.    Deprivation of Property in the Form of the May 12 Report and Underlying Data.

Plaintiffs assert a right to immediately receive the results of tests performed in mid- to late-April 2006 under a state criminal procedural statute, N.C. Gen. Stat. § 15A-282.  (*See* Am. Compl. ¶¶ 758-64, 941-46.)  It is not entirely clear whether Plaintiffs mean to assert a § 1983 constitutional claim or a claim arising entirely under North Carolina law.  But either such claim would fail, as the statute does not create a "property right" to receive immediate results of tests (or to money damages for violation of that right), much less a right enforceable under § 1983.

Section 15A-282 provides that "[a] person who has been the subject of nontestimonial identification procedures or his attorney must be provided with a copy of any reports of test results as soon as the reports are available."  Plaintiffs here do not dispute that they received a copy of the May 12 Report, but instead complain that they had a right to immediate disclosure of tests that were allegedly performed within the month preceding the May 12 Report.  But nothing in the statute requires creation of a report on the same day tests are conducted or preparation of a report on a particular schedule, much less production of a report before the report even exists.

Indeed, the statute has not been interpreted to provide even criminal defendants with due process rights, even if there are extreme delays in production of a report.  In *State v. Pearson*, 145 N.C. App. 506, 551 S.E.2d 471 (2001), *aff'd*, 356 N.C. 22, 566 S.E.2d 50 (2002), for example, the defendant's rights were not violated where the State failed to furnish the defendant with a copy of results of tests under § 15A-282 until

twelve years after the test. 145 N.C. App. at 515, 551 S.E.2d at 477. Although the defendant was given the test results "over twelve years later," suppression was not warranted because "the violations [of the statutory scheme] were not substantial." *Id.*, 551 S.E.2d at 477; *see also Pearson*, 356 N.C. at 33, 566 S.E.2d at 57 (agreeing that "any statutory violation [of § 15A-282] was insignificant and non-prejudicial"); *State v. Daniels*, 51 N.C. App. 294, 300, 276 S.E.2d 738, 742 (1981) (where defendant's counsel received reports of handwriting comparison performed on samples obtained pursuant to nontestimonial identification order three and a half months before trial, "any delay between receipt of the reports by the SBI agent and furnishing the reports to defendant's attorneys did not result in prejudice to defendant"; evidence was properly admitted). As *Pearson* and *Daniels* make clear, the statute's purpose is the protection of the same fair trial right that *Brady* protects. And for the reasons noted above, there was no violation of that fair trial right here.

Moreover, even if § 15A-282 could be read to create an absolute and instantaneous disclosure obligation, any such obligation, just like the duty to make disclosure of potentially exculpatory evidence under *Brady* (*see supra* at 16 n.8), is imposed on the prosecutor alone. Plaintiffs effectively admit as much.[10] Nothing in the statute or the

---

[10] Am. Compl. ¶ 760 ("*Nifong* knew he had an obligation to provide a written report to every team member who submitted DNA"); *id*. ¶ 761 ("Plaintiffs' defense counsel put *Nifong* on notice of *his obligations* to produce a report of every test or experiment conducted with the DNA of any team member"); *id*. ¶¶ 763-64 ("*Nifong* fully understood *his obligation*" to make disclosure and "plainly understood *his obligation* to [Plaintiffs] under the statute") (all emphases added); *see also id*. ¶ 946 ("*Himan, Gottlieb and Nifong* withheld the reports"). With respect to the DSI Defendants, Plaintiffs complain that

cases construing it suggests that Plaintiffs were entitled to receive a report of test results directly from the DSI Defendants. Such a construction not only would be unprecedented but would create chaos, since, under Plaintiffs' view, every person with access to materials covered by § 15A-282 -- lab personnel, police, secretaries, and the like -- would have an obligation to bypass the prosecutor and immediately deliver materials directly to witnesses and suspects. Because the statute therefore places the obligation to produce a report upon the prosecutor, the DSI Defendants did not violate the statute.

But even if Plaintiffs were correct that the DSI Defendants' supposed failure to provide a report directly and instantaneously to Plaintiffs amounted to a violation of § 15A-282, such a violation would not be enforceable via an action for monetary damages under state law (if that is, in fact, the claim Plaintiffs are making). The North Carolina courts "have generally held that a private right of action only exists where the Legislature expressly provides for such in the statute." *Cockerham-Ellerbee v. Town of Jonesville*, 176 N.C. App. 372, 377, 626 S.E.2d 685, 689 (2006) (citation omitted). Because § 15A-282 contains no language indicating intent to provide for a private right of action for damages to enforce its disclosure requirement -- let alone a right of action against a laboratory that performed the testing at issue -- Plaintiffs cannot seek money damages for a violation of the statute.

---

"Meehan and Clark created an entirely novel reporting criteria." *Id*. Of course, neither § 1983 nor § 15A-282 entitles Plaintiffs to DNA reports prepared using particular "reporting criteria."

Plaintiffs may, however, be claiming that the violation of a state statute can form the basis for a claim under § 1983. But Plaintiffs' claim fares no better under the rubric of § 1983. Even if § 15A-282 created a disclosure obligation enforceable via suppression (or damages) in state court, a violation of a state rule of criminal procedure like § 15A-282 simply does not provide a predicate for a damages claim under § 1983. Section 1983 provides remedies for violations of federal rights but "does not provide redress for violations of state law." *Gantt v. Whitaker*, 57 Fed. Appx. 141, 146 (4th Cir. 2003) (citing *White v. Chambliss*, 112 F.3d 731, 738 (4th Cir. 1997)). In particular, § 1983 does not provide a vehicle for enforcement of state procedural rules in the absence of any constitutional violation: "[A] State's violation of its own laws or procedural rules, creating rights beyond those guaranteed by the Constitution, cannot support a federal due process claim." *Hodge v. Jones*, 31 F.3d 157, 168 (4th Cir. 1994).[11] Indeed, if every violation of a state procedural statute gave rise to a constitutional claim, the federal courts would be overrun with § 1983 claims arising from myriad, everyday discovery disputes under state law. That is why there is no constitutional due process claim unless the civil rights plaintiffs were criminal defendants who were deprived of their due process rights

---

[11] In *Hodge*, "[t]he fact that Defendants' acts may have violated various Maryland statutory provisions" was "of no consequence in [their] § 1983 action," because "*no protected liberty interest was implicated* by Defendants' actions." 31 F.3d at 168 (emphasis added); *see also, e.g., Asque v. Commonwealth Allegheny County*, No. 07-294, 2007 WL 1247051, at *2 (W.D. Pa. Apr. 27, 2007) ("[V]iolation of a state rule of criminal procedure [requiring speedy trial] simply does not establish a violation of Plaintiff's federal rights and, hence, fails to state a claim under § 1983 because even where state law provides certain procedures should be followed, the state does not violate an individual's federal constitutional rights merely by deviating from its own established procedures.").

because they were deprived of a fair trial as a result of the evidence provided (or not provided) to them. None of that is true here. Because the Amended Complaint describes, at most, a violation of a state procedural rule that did not deprive Plaintiffs of any liberty interest protected by the Due Process Clause, their claim premised on the disclosure requirement created by § 15A-282 fails.

2. "Misleading" Conclusion Relating to the False Fingernail.

Plaintiffs complain about one statement in the May 12 Report linking DNA evidence on a false fingernail to one of Plaintiffs' non-indicted teammates. Plaintiffs do not dispute that the May 12 Report correctly and accurately reported the presence of DNA on the fingernail, nor do they contend that the DNA discovered on the fingernail belonged to any of these three Plaintiffs. Instead, Plaintiffs claim that the May 12 Report's reference to the false fingernail DNA indicated that the evidence was relevant when it was not. They leap to the conclusion that that inclusion represents an attempt to "intimidate" a witness – a witness who *was not one of these Plaintiffs* and who would have been a witness at a trial of criminal defendants *other than these Plaintiffs*. (Am. Compl. ¶¶ 969-77.)

DSI and Clark are aware of no basis upon which a person who was never arrested or charged can assert a claim for "witness intimidation," let alone *attempted* "witness intimidation." Indeed, Plaintiffs complain that "Defendants engaged in this conduct knowing that it would lead to the deprivation of other of Plaintiffs' federally protected rights and with the intention of securing indictments and eventually convictions of

Plaintiffs and their teammates (as principals or as accomplices to crimes they knew never did happen.)" (Am. Compl. ¶ 974.) But none of these Plaintiffs were ever indicted, and none of their teammates were ever convicted of anything. The Fourth Circuit has recognized a § 1983 due process claim for witness tampering or witness intimidation only where a witness reported actual, direct intimidation by a supervisor prior to her testimony in the plaintiff's (ongoing, non-speculative) grievance hearing, to which due process protections had already attached. *See Detweiler v. Virginia Dep't of Rehabilitative Servs.*, 705 F.2d 557, 561-62 (4th Cir. 1983). These Plaintiffs, by contrast, assert a due process right not to have a potential witness -- who never testified -- "interfered with" in a proceeding to which Plaintiffs themselves were never parties. DSI and Clark are aware of no authority for such a "due process" claim.

Moreover, the Amended Complaint includes no allegation that the supposed "intimidation" in fact had any effect on the unidentified witness or the Criminal Action, let alone that it affected Plaintiffs. No *constitutional* claim arises from the mischaracterization of evidence as "probative" unless a due process fair trial right is thereby infringed. *Brady* and its progeny establish as much. The DSI Defendants' alleged conduct with respect to the false fingernail evidence simply did not "lead to the deprivation" of *any* of these Plaintiffs' "federally protected rights."

3. Deprivation of Privileges and Immunities.

Plaintiffs urge that "Defendants' conduct deprived Plaintiffs of the same privileges and immunities they bestowed upon similarly situated citizens of the State of North

Carolina because of Plaintiffs' real or perceived status as citizens of other states." (Am. Compl. ¶ 1004.) The essence of a claim arising under the Privileges and Immunities Clause of Article IV is the deprivation of some right or privilege otherwise afforded to citizens of the State, due to the plaintiff's non-residency. *See, e.g.*, *Toomer v. Witsell*, 334 U.S. 385, 395 (1948) (Article IV Privileges and Immunities Clause is "designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy"); *Parnell v. Supreme Court*, 110 F.3d 1077, 1080 (4th Cir. 1997); *see also Giannini v. Real*, 911 F.2d 354, 357 (9th Cir. 1990) ("Discrimination on the basis of out-of-state residency is a necessary element for a claim under the Privileges and Immunities Clause").[12] But Plaintiffs' own allegations foreclose the requisite claim of differential treatment based on their state citizenship, because one of the three Plaintiffs, Matthew Wilson, is a citizen and resident of North Carolina, while the other two Plaintiffs are not. (*Id.* ¶¶ 6-8.) Plaintiff Wilson has no claim because he is a North

---

[12] Although Plaintiffs' Privileges and Immunities Claim also makes reference to the Fourteenth Amendment, they do not appear to assert a claim for violation of the very different privileges and immunities clause contained therein. "The Privileges and Immunities Clause of the Fourteenth Amendment 'protects all citizens against abridgement by states of rights of national citizenship as distinct from the fundamental or natural rights inherent in state citizenship.'" *Barefoot v. City of Wilmington*, 306 F.3d 113, 125-26 (4th Cir. 2002) (quoting *Madden v. Kentucky*, 309 U.S. 83, 90 (1940)), *abrogation on other grounds recognized by Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 718-19 (4th Cir. 2006). To establish a Fourteenth Amendment privileges and immunities claim, Plaintiffs must show that they were denied rights "which owe their existence to the Federal government, its National character, its Constitution, or its laws." *Slaughter-House Cases*, 83 U.S. 36, 79 (1872). Plaintiffs make no claim that any of their rights as "national citizens" have been infringed by the DSI Defendants, and they have pleaded no violation of their constitutional rights by the DSI Defendants, for the myriad reasons discussed above.

Carolina resident, and Plaintiffs McFadyen and Archer cannot show discriminatory treatment based on their out-of-state residence when they allege throughout the Amended Complaint that they were treated the same as Wilson, a state resident.

Plaintiffs therefore craft a novel theory: that they can state a claim because the Defendants assumed that all of the Plaintiffs were non-residents and treated them accordingly. The DSI Defendants are unaware of any authority adopting the theory that in-state residents have a constitutional right not to be discriminated against because of their "perceived status" as residents of other states.

Moreover, even assuming that Defendants' alleged "discriminatory conduct" (Am. Compl. ¶ 1005) was based on a mistaken belief that all three Plaintiffs are not citizens of North Carolina, Plaintiffs' Privileges and Immunities claim fails for the same reason that their other § 1983 claims fail: They have not alleged a deprivation of any "fundamental" right. *Parnell*, 110 F.3d at 1080 ("the 'out-of-state resident's interest [in the activity restricted] in another State [must be] sufficiently 'fundamental' to the promotion of interstate harmony so as to fall within the purview of the [Privileges and Immunities Clause]'") (quoting *United Bldg. & Constr. Trades Council v. Mayor and Council of Camden*, 465 U.S. 208, 218 (1984)); *see also Supreme Court of Va. v. Friedman*, 487 U.S. 59, 64 (1988) ("the activity in question must be sufficiently basic to the livelihood of the Nation as to fall within the purview of the Privileges and Immunities Clause") (internal quotations omitted). For all the reasons discussed above, Plaintiffs have been

deprived of no constitutional or fundamental right at all. Their state citizenship, then, whether real or perceived, is simply irrelevant.

4. Claim for harm to reputation.

Finally, it should be noted that Plaintiffs cannot bring a constitutional claim for harm to their reputations. The Amended Complaint is replete with references to such alleged harm. It is firmly established, however, that § 1983 cannot be used as a vehicle to assert reputational injury apart from any injury to a constitutionally protected interest. *See, e.g.*, *Tigrett v. Rector & Visitors of Univ. of Va.*, 290 F.3d 620, 628-29 (4th Cir. 2002) ("an injury to reputation alone does not deprive an individual of a constitutionally protected liberty interest") (citing *Siegert v. Gilley*, 500 U.S. 226, 233 (1991), and *Paul v. Davis*, 424 U.S. 693, 712 (1976)); *Smith v. Morgan*, 108 F.3d 1373, 1997 WL 73520, at *1 (4th Cir. Feb. 21, 1997) (unpublished table decision) ("Section 1983 can not be used as a vehicle to assert a defamation claim, because personal reputation is not a liberty interest within the meaning of the Fourteenth Amendment").

\*　　\*　　\*

In sum, Plaintiffs were witnesses (or, at most, suspects at some point) in a criminal investigation. At the heart of their Amended Complaint are the general contentions that they should not have been investigated at all, or that the investigation should have been handled differently, or that they should have been eliminated as suspects sooner. But those complaints do not provide a foundation for their § 1983 claims when one is otherwise entirely lacking. *See, e.g.*, *Sloan v. Dep't of Hous. & Urban Dev.*, 231 F.3d 10,

18 (D.C. Cir. 2000) ("'there is no constitutional right to be free of investigation'") (citation omitted); *Biasella v. City of Naples*, No. 2:04-CV-320-FTM29DNF, 2005 WL 1925705, at *4 (M.D. Fla. Aug. 11, 2005) (no constitutional right to be free from "malicious investigation"; where "all investigations ended favorably towards plaintiff and he was never arrested or charged with anything," "the alleged conduct [did] not amount to a constitutional violation within the Due Process Clause"). With no Fourth Amendment claim, no defamation claim, no Privileges and Immunities claim, and no colorable due process claim premised on the timing of the May 12 Report or its content or on their involvement in the criminal investigation, Plaintiffs are left with no "wrong" committed by the DSI Defendants upon which to found a § 1983 claim.

## V. PLAINTIFFS CANNOT ESTABLISH CAUSATION FOR ANY OF THEIR CLAIMS

The Amended Complaint shares yet another fundamental failing with the *Evans* complaint: Both fail to allege the necessary causal link between the DSI Defendants' actions and the injuries Plaintiffs claim. Proximate cause -- a cause that "directly produces an event and without which the event would not have occurred," *Nelson v. Hartford Underwriters Ins. Co.*, 177 N.C. App. 595, 613, 630 S.E.2d 221, 233 (2006) -- is a prerequisite to liability for both Plaintiffs' § 1983 and state tort claims. *Carter v. Barker*, 225 F.3d 653, 2000 WL 1008794, at *7 (4th Cir. July 21, 2000) (unpublished table decision) (traditional notions of proximate cause apply in § 1983 actions) (citing

*Price v. City of Charlotte*, 93 F.3d 1241, 1250 (4th Cir. 1996)).[13]   A bald allegation of causation, however, is insufficient; a plaintiff must plead *facts* that show the necessary causal relationship.  *Scott v. Hern*, 216 F.3d 897, 911 (10th Cir. 2000).  A complaint that lacks such a factually grounded allegation of causation should be dismissed.  *Id.*; *Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156, 349 S.E.2d 82, 83 (1986).

For the reasons explained in the *Evans* Brief, the *Evans* plaintiffs could not establish that any action or inaction by the DSI Defendants could have proximately caused any injury to those plaintiffs, where the prosecutor alone had the opportunity and responsibility to present evidence to the grand jury.  Because the DSI Defendants made full disclosure to the prosecutor of *all* the results of the DNA testing, the prosecutor's independent decision about what evidence to present to the grand jury and what to disclose to the criminal defendants broke the causal chain.  *See Rhodes v. Smithers*, 939 F. Supp. 1256, 1274 (S.D.W.Va. 1995), *aff'd*, 91 F.3d 132 (4th Cir. 1996); *Evans* Br. at 32-35.

These Plaintiffs' claims hang on an even more tenuous causal thread.  Even if Plaintiffs had alleged some injury compensable under § 1983 or state law -- and they have not -- Plaintiffs make no allegation of harm that can be causally linked to any act by the DSI Defendants.  According to the Amended Complaint, both the SBI and the DSI Defendants concluded, and reported to the prosecutor, that no DNA evidence connected

---

[13]   *See also Shaw v. Stroud*, 13 F.3d 791, 800 (4th Cir. 1994) ("the causal link in § 1983 cases is analogous to proximate cause"; discussing supervisory liability); *Blue v. Bigos*, 89 F.3d 827, 1996 WL 325316, at *1 (4th Cir. June 7, 1996) (unpublished table decision).

any Plaintiff to either the alleged victim or the alleged crime scene. (*E.g.*, Am. Compl. ¶¶ 618-20, 747-49.) Plaintiffs allege that after DSI's Report confirmed the findings of the SBI, Nifong proceeded with his prosecution and other conduct related to the *Evans* plaintiffs *despite* the lack of DNA evidence.[14] According to Plaintiffs' own allegations, then, Nifong's deliberate actions constituted an intervening act that broke the causal chain. North Carolina has long followed "the general rule of law . . . that if between the negligence and the injury there is the intervening crime or willful and malicious act of a third person producing the injury, . . . 'the causal chain between the original negligence and the action is broken.'" *Ward v. Southern Ry. Co.*, 206 N.C. 530, 530, 174 S.E.2d 443, 444 (1934) (citation omitted); *see also Tise v. Yates Constr. Co.*, 345 N.C. 456, 460-61, 480 S.E.2d 677, 680 (1997) (same); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 964 F. Supp. 956, 961 (M.D.N.C. 1997) ("[I]f the original wrong only becomes injurious in consequence of the intervention of some distinct wrongful act or omission by another, the injury shall be imputed to the last wrong as the proximate cause, and not to that which was more remote.") (internal quotation marks and citation omitted), *aff'd*, 194 F.3d 505 (4th Cir. 1999). Nifong's independent determination to proceed with the investigation and anticipated prosecution of people other than these Plaintiffs -- notwithstanding DSI's full disclosure of the DNA test results -- is precisely the sort of "distinct wrongful act"

---

[14] *See, e.g.*, Am. Comp. ¶ 754 ("With Mangum's identifications, Nifong did not need DNA evidence to get the case to a jury. Like many states, North Carolina abandoned its corroboration rule in sexual assault cases. So long as an accuser will testify that she was sexually assaulted and identifies someone as the perpetrator, the case will go to the jury.").

that precludes the DSI Defendants' liability. Whatever alleged harms may have flowed indirectly to these Plaintiffs based on Nifong's independent determination to prosecute third parties are so remote that they do not give rise to liability on the part of the DSI Defendants.

## VI. PLAINTIFFS CANNOT STATE CLAIMS BASED ON RESPONDEAT SUPERIOR OR SUPERVISOR LIABILITY

### A. DSI Cannot Be Held Liable Under § 1983 on a Theory of *Respondeat Superior*

A private corporation, like a municipality, cannot be held liable under § 1983 on a theory of *respondeat superior*. *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982). Section 1983 liability can be imposed on a private corporation like DSI only when an "official policy or custom" causes the constitutional injuries of which the plaintiff complains. *Austin*, 195 F.3d at 728; *Rodriguez v. Smithfield Packing Co.*, 338 F.3d 348, 355-56 (4th Cir. 2003); *see also Evans* Br. at 28-29 & n.16 (citing additional cases). Plaintiffs here, like the *Evans* plaintiffs, do not allege that any "official policy or custom" of DSI caused the constitutional deprivations they claim. In particular, Plaintiffs do not suggest that DSI had or implemented a "policy" of reporting DNA test results in the manner they find objectionable here, or that DSI ever applied the "Mangum reporting method" in any other case. Instead, Plaintiffs affirmatively assert that DSI acted *contrary to established company policy* in this case, applying an "entirely novel" and "wholly new" reporting methodology. (*See* Am. Compl. ¶¶ 756, 765, 770, 946.) In light of those allegations,

DSI cannot be held liable for any constitutional tort allegedly committed by its employees, and all § 1983 claims against DSI must be dismissed. *See J.S. v. Isle of Wight County Sch. Bd.*, 368 F. Supp. 2d 522, 526 (E.D. Va. 2005) (no § 1983 liability where "individual defendants act[ed] contrary to the school board's policy").[15]

**B.    Clark Cannot Face Supervisory Liability**

Plaintiffs' Amended Complaint is similarly deficient as to Defendant Clark because Plaintiffs fail to plead the elements necessary to impose § 1983 "supervisory" liability: *first*, that the supervisor had actual or constructive knowledge that his subordinate's conduct threatened constitutional injury; *second*, that the supervisor's response suggested deliberate indifference to or tacit authorization of the conduct; and *third*, that there was an "affirmative causal link" between the supervisor's inaction and the injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Plaintiffs allege, at most, that Clark "was present" at meetings at which Nifong, Himan, Gottlieb and Meehan discussed the results of the DNA testing performed by DSI (*e.g.*, Am. Compl. ¶¶ 749, 755), but do not describe any action by Clark individually upon which supervisory liability can be premised.

---

[15] It is true that, in certain circumstances, corporate liability can be predicated upon the actions of a "policymaking official." *Austin*, 195 F.3d at 728-29. Although the Amended Complaint contains boilerplate allegations that both Clark and Meehan had "policymaking authority" (Am. Compl. ¶¶ 74-75), the mere fact that some of the alleged actions were taken by someone with (unexercised) policymaking authority does not state a claim against the corporation. *See, e.g.*, *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) ("Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy.").

Even if these exceedingly general allegations satisfied the first two elements of the *Shaw* test -- and they do not[16] -- Plaintiffs' claims fail at the third requirement. Plaintiffs suggest no "affirmative causal link" between any action by Clark and any injury they suffered, and thus no basis for the imposition of supervisory liability, because they have failed adequately to plead any underlying violation of their constitutional rights. *E.g.*, *Tigrett v. Rector & Visitors of Univ. of Va.*, 290 F.3d 620, 630-31 (4th Cir. 2002) (§ 1983 supervisory liability claim failed at third prong of the *Shaw* test where plaintiffs "failed to demonstrate a constitutional injury"); *Phillips v. Bailey*, 337 F. Supp. 2d 804, 807 (W.D. Va. 2004). Absent an adequately pleaded constitutional violation (or sufficient allegations of a direct causal link between any conduct by Clark and any such violation), no supervisory liability claim against Clark can stand.

## VII. PLAINTIFFS CANNOT STATE CLAIMS UNDER §§ 1985 AND 1986

Plaintiffs allege that the DSI Defendants conspired to deny Plaintiffs equal protection of the laws (and failed to prevent such a conspiracy among other defendants), in violation of 42 U.S.C. §§ 1985 & 1986. Plaintiffs' sixteenth and seventeenth causes of

---

[16] Like the *Evans* plaintiffs, these Plaintiffs fail to plead the sort of "pervasive," "widespread," non-"isolated" conduct by any employee under Clark's supervision that the first two prongs of the *Shaw* test require. This would require a showing that the conduct was repeated in several different expert reports. *See Randall v. Prince George's County, Md.*, 302 F.3d 188, 206 (4th Cir. 2002); *Pulliam v. Superintendent of Hoke Corrections*, No. 1:05 CV 1000, 2007 WL 4180743, at *4 (M.D.N.C. Nov. 20, 2007); *Evans* Br. at 30 n.17. Here, Plaintiffs affirmatively allege that this expert report was unique, foreclosing any supervisory liability.

action are largely indistinguishable from the same claims asserted in *Evans*, and they should be dismissed for the same reasons.[17]

*First*, Plaintiffs' § 1985 claims fail for the same reason their § 1983 claims fail: because they have not adequately pleaded a violation of any underlying constitutional right. Like § 1983, § 1985 creates no substantive rights but provides remedies only for violations of other established rights. *See United Bhd. of Carpenters v. Scott*, 463 U.S. 825, 833 (1983); *Great Am. Fed. S&L Ass'n v. Novotny*, 442 U.S. 366, 372 (1979). Because the same "predicate" violations underlie Plaintiffs' § 1983 claims and their § 1985 claims, the latter fail for the same reasons the former do: Plaintiffs simply have not pled any infringement of a constitutional right.

*Second*, a plaintiff cannot state a claim under § 1985 absent an allegation that the defendant was motivated by a "racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 103 (1971); *see Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995); *King v. Jeffries*, 402 F. Supp. 2d 624, 634 (M.D.N.C. 2005). The Supreme Court has never extended the protections of § 1985 to any "class-based" groups other than African-Americans. *Griffin*, 403 U.S. at 102 & n.9;

---

[17] Plaintiffs take a rather unusual pleading approach. Plaintiffs appear to allege a number of discrete "sub-conspiracies" each involving some but not all of the defendants. (*See, e.g.*, Am. Compl. ¶ 640 (in furtherance of a primary conspiracy, "multiple conspiracies emerged"); *id.* ¶¶ 1156-88.) The Amended Complaint is far from a model of clarity. Plaintiffs appear to allege that the DSI Defendants were involved in only one of the four arbitrarily defined § 1985 "sub-conspiracies" (*id.* ¶¶ 1158-60), that, in violation of § 1986, they knew of but failed to prevent one of four conspiracies (*id.* ¶¶ 1180-82) and that they were involved in another underlying conspiracy that other defendants knew of but failed to prevent (*id.* ¶¶1172-75). There is no apparent rhyme or reason to Plaintiffs' numerous subdivisions of the Defendants for purposes of these claims.

*Bray v. Alexandria Clinic*, 506 U.S. 263, 269-70 (1993); *Scott*, 463 U.S. at 836 (economically or politically motivated animus does not provide grounds for claim under § 1985(3)). Since *Bray* and *Scott*, the Fourth Circuit likewise has not recognized any other group as protected under § 1985. *E.g.*, *Harrison v. KVAT Food Mgmt., Inc.*, 766 F.2d 155, 161 (4th Cir. 1985) ("[N]o other group or class has achieved similar status.").[18] But even if the protections of the Act are theoretically available to any other "discrete" and "insular" class, that hypothetical class must satisfy what the Fourth Circuit has recognized as the *sine qua non* of the application of § 1985: "[T]he class protected can extend no further than to those classes of persons who are, so far as the enforcement of their rights is concerned, 'in unprotected circumstances similar to those of the victims of Klan violence.'" *Buschi v. Kirven*, 775 F.2d 1240, 1258 (4th Cir. 1985) (quoting *Scott*, 463 U.S. at 851).

Plaintiffs simply cannot state a claim under § 1985. Plaintiffs -- who describe themselves as white college students who were members of the Duke University men's lacrosse team (Am. Compl. ¶¶ 6-9, 414, 443) -- are no more members of a "discrete" and "insular" class "in unprotected circumstances similar to those of the victims of Klan violence" than are the plaintiffs in *Evans*. *Buschi*, 775 F.2d at 1258. Nor do they claim to be: The Amended Complaint does not contain even the most conclusory allegation that Plaintiffs are members of any class entitled to protection under § 1985. (Am. Compl.

---

[18] The Fourth Circuit has, since *Bray* and *Scott*, affirmatively refused to extend the protections of the Ku Klux Klan Act to a number of groups. *See Evans* Br. at 37 & n.20.

¶¶ 1157-69.)  That omission alone calls for dismissal of Plaintiffs' § 1985 claims against the DSI Defendants.  *C&H Co. v. Richardson*, 78 Fed. Appx. 894, 902 (4th Cir. 2003) (where § 1985(3) plaintiff failed to "allege that the complained-of discrimination resulted from its membership in any qualifying class," summary judgment was appropriate).

**Third**, these Plaintiffs compound that critical omission with a second:  They do not allege a discriminatory animus on the part of the DSI Defendants, much less that the DSI Defendants shared any such motivation with the other Defendants.  *See Martin v. Boyce*, No. 1:99 CV 1072, 2000 WL 1264148, at *7 (M.D.N.C. July 20, 2000) ("[A]ll of the conspirators must share the same forbidden animus.").  At most, Plaintiffs declare, without elaboration, that "one or more" of a lengthy list of defendants "engaged in overt acts that were motivated by invidious racial animus."  (Am. Compl. ¶¶ 1159, 1163.) Those bare allegations fall well short of a claim of discriminatory animus on the DSI Defendants' part, let alone of shared discriminatory animus, required to state a claim under § 1985.

**Fourth**, Plaintiffs' speculative § 1985 "conspiracy" allegations fail to satisfy the Fourth Circuit's "relatively stringent standard for establishing § 1985 conspiracies." *Simmons*, 47 F.3d at 1377-78 (§ 1985 plaintiff must show both "an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights" and that defendants "share[d] the general conspiratorial objective"; conspiracy claim not adequately pleaded based on allegations that defendants met and talked with one another several times while playing their respective roles in criminal process) (citing cases).  As

in *Evans*, Plaintiffs' § 1985 "conspiracy" claims, like their § 1983 claims, are founded on nothing more than the assumption that the DSI Defendants *must have* "conspired" with the prosecutor (and other Defendants) because they conferred during the course of the criminal investigation. For the same reasons that such speculative allegations failed to establish a conspiracy in *Evans*, these Plaintiffs have not satisfied the Fourth Circuit's "very high" standard for pleading a § 1985 conspiracy. *Brissett v. Paul*, 141 F.3d 1157, 1998 WL 195945, at *2 (4th Cir. April 6, 1998) (unpublished table decision).

**Fifth**, because Plaintiffs' underlying § 1985 claims fail, their § 1986 claim must be dismissed as well, since "[a] cause of action based upon § 1986 is dependent upon the existence of a claim under § 1985." *Trerice v. Summons*, 755 F.2d 1081, 1085 (4th Cir. 1985); *see Brissett*, 1998 WL 195945, at *3.

**Sixth**, Plaintiffs cannot state a § 1986 claim against the DSI Defendants absent an allegation that those Defendants had "the power to prevent or aid in preventing the commission" of the underlying violations of § 1985. 42 U.S.C. § 1986. According to the plain language of the statute, no § 1986 claim will lie where a defendant lacked the power to control the alleged wrongdoing. *See, e.g.*, *Lohr v. Ass'n of Catholic Teachers*, 416 F. Supp. 619, 623 (E.D. Pa. 1976). By Plaintiffs' own admission, the DSI Defendants made full disclosure to the prosecutor of the results of the DNA testing, and Nifong had sufficient evidence to get to a jury *regardless of the DNA evidence*. (*E.g.*, Am. Compl. ¶¶ 749, 754, 765, 767, 980.) Thereafter, the decision how to handle that evidence was solely vested in Nifong under the law. The DSI Defendants lacked any ability to control

the exercise of his prosecutorial discretion, and thus could not have "prevent[ed] or aid[ed] in preventing" the alleged harms arising from Nifong's decision about how to disclose and use the results of the DNA testing.

And *finally*, Plaintiffs' § 1986 claims are time-barred. Section 1986 includes a one-year statute of limitations. 42 U.S.C. § 1986 ("[N]o action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued."). Plaintiffs filed their complaint on December 18, 2007 -- well more than one year after they claim to have been "injured." (*See* Am. Compl. ¶¶ 907-08 (Plaintiffs submitted to cheek swabbings pursuant to NTIO on March 23, 2006); *id*. ¶ 812 (Nifong presented Finnerty and Seligmann indictments on April 12, 2006); *id*. ¶ 775 (Nifong presented final indictment to grand jury on May 15, 2006).) Their § 1986 claim, then, comes too late.

## VIII.  PLAINTIFFS' STATE LAW CLAIMS MUST BE DISMISSED

Plaintiffs' state law tort claims are similar to those raised by the *Evans* plaintiffs, and they must be dismissed for similar reasons.[19]  In each case, however, the claims are even more suspect than those in *Evans*, because these Plaintiffs were never defendants in any criminal proceeding.

---

[19] The state law causes of action differ in one significant respect:  Unlike the *Evans* plaintiffs, these Plaintiffs do not assert a state law claim for malicious prosecution, for obvious reasons.

### A. Plaintiffs' Negligence Claims Fail Because the DSI Defendants Owed No Duty to Plaintiffs

None of Plaintiffs' state law claims based in negligence -- negligence; negligent hiring, retention, and supervision; and negligent infliction of emotional distress -- can stand, because the DSI Defendants owed no duty to Plaintiffs. As the North Carolina Court of Appeals has explained, "[a]ctionable negligence presupposes the existence of a legal relationship between parties by which the injured party is owed a duty by the other, and such duty must be imposed by law." *Huntley v. Howard Lisk Co.*, 154 N.C. App. 698, 703, 573 S.E.2d 233, 236 (2002) (quotation omitted); *see Sheaffer v. County of Chatham*, 337 F. Supp. 2d 709, 733-34 (M.D.N.C. 2004) (dismissing negligent infliction of emotional distress claim where "Plaintiff's complaint ma[de] no reference to any duty that Defendants owed her," because "lack of a duty from a defendant to a plaintiff is fatal to a negligent infliction of emotional distress claim").[20] No such relationship exists, and thus no duty arises, between an expert witness and a party against whom the witness is retained to testify. On the contrary, an expert's duty is to the court and to the litigant on whose behalf the expert is retained to testify -- here, the State -- but not to a criminal

---

[20] *See also Little v. Omega Meats I, Inc.*, 171 N.C. App. 583, 586-87, 615 S.E.2d 45, 48, *aff'd*, 360 N.C. 164, 622 S.E.2d 494 (2005) (negligent hiring and supervision). Plaintiffs' negligent supervision claim should be dismissed as against Clark in any event, because only the employer, not an individual supervisor, can be liable for negligent supervision. *See, e.g.*, *Smith v. Privette*, 128 N.C. App 490, 494, 495 S.E.2d 395, 398 (1998) (negligent supervision is "based on the *employer's* liability to third parties") (emphasis added); *Cox v. Indian Head Indus., Inc.*, 123 F. Supp. 2d 892, 902-03, 914-15 (W.D.N.C. 2000) (negligent supervision claim lies only against corporate defendant as employer; individual defendant-employees cannot be held liable for negligent supervision) (applying North Carolina law).

defendant or other adverse litigant. *See,, e.g.*, *Field v. Graffagnino*, 514 F. Supp. 2d 1036, 1046 (W.D. Tenn. 2007) ("Expert witnesses do not owe any duty to an adverse party; instead they owe a duty to the Court to testify truthfully and honestly."); *Maiden v. Rozwood*, 597 N.W.2d 817, 829-30 (Mich. 1999) (medical examiner who prepared autopsy report that implicated defendant owed duty of care to prosecution on whose behalf she testified and to the court, but not to criminal defendant); *Kahn v. Burman*, 673 F. Supp. 210, 213-14 (E.D. Mich. 1987) (expert had no duty to adverse party with respect to statements in preliminary expert report), *aff'd on other grounds*, 878 F.2d 1436 (6th Cir. 1989); *Evans* Br. at 41-42 (citing numerous cases). These Plaintiffs' negligence claims are even less compelling than those of the *Evans* plaintiffs. Since an expert witness owes no duty to a criminal defendant in the proceeding in which the expert is expected to testify, an expert surely owes no duty to individuals who are never arrested, indicted or charged with any offense in that criminal proceeding.

The North Carolina courts have never recognized any duty owed by an expert witness to an adverse party (or a potential adverse party). Therefore, in order for Plaintiffs' negligence claims to withstand dismissal, this Court would be required to recognize a new legal duty in North Carolina, and a new cause of action for breach of such duty. Since North Carolina's courts will not create new legal duties or causes of

action out of whole cloth, this Court should similarly decline to do so.[21]  Absent such a

duty, Plaintiffs' negligence claims must be dismissed.

### B.      Plaintiffs Have Not Stated a Claim for Obstruction of Justice

Plaintiffs' common law obstruction of justice claim against the DSI Defendants is

premised on allegations about the content of the DSI Defendants' May 12 Report.  Their

complaint is that the Report included certain information that they felt irrelevant and did

not include other information that they felt relevant.  This does not constitute obstruction

of justice.  In North Carolina, a claim for obstruction of justice related to documentary

evidence lies only for *alteration* or *destruction* of that documentary evidence that makes

it unavailable to a party to the litigation.  *E.g.*, *Henry v. Deen*, 310 N.C. 75, 310 S.E.2d

326 (1984) (alteration and destruction of medical records); *Jones v. City of Durham*, 187

N.C. App. 57, 643 S.E.2d 631 (2007) (destruction of videotape of accident).  No such

claim can be predicated on a party's complaints about the manner or format in which

evidence is produced, which is all that Plaintiffs here assert.[22]  They thus seek to make

---

[21]  As North Carolina's courts have repeatedly recognized, it is the function of the legislature, not the courts, to create new causes of action, in part because the General Assembly is uniquely positioned to weigh the public policy concerns that arise when new causes of action are proposed.  *Simmons v. Wilder*, 6 N.C. App. 179, 169 S.E.2d 480 (1969); *see also Hatfield v. Palles*, 537 F.2d 1245 (4th Cir. 1976).  The instant case presents an excellent example.  If non-parties can sue expert witnesses for the content of expert reports in proceedings involving other parties, it is difficult to imagine how the courts would limit the number of claims that could be filed.

[22]  The rule that an obstruction of justice claim relating to documentary evidence cannot be based on failure to produce documents is particularly applicable in the present case, since (as discussed above), the DSI Defendants had no obligation to produce any documents to Plaintiffs under either federal or state law.

their dispute about the content of an expert report (indeed, their dispute as strangers to litigation) into obstruction of justice -- an effort that would dramatically expand that tort in North Carolina. Their obstruction of justice claim against the DSI Defendants should be dismissed.

### C. Plaintiffs Have Not Stated a Claim for Intentional Infliction of Emotional Distress

A claim for intentional infliction of emotional distress requires Plaintiffs to show "(1) extreme and outrageous conduct, (2) intending to cause and causing (3) severe emotional distress." *Jolly v. Acad. Collection Serv., Inc.*, 400 F. Supp. 2d 851, 866 (M.D.N.C. 2005); *see Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325 (1981). Plaintiffs' claim fails at the first prong because Plaintiffs do not allege any conduct by the DSI Defendants that can be considered "extreme and outrageous." Conduct meets that "stringent" standard, *Jolly*, 400 F. Supp. 2d at 866, only when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Johnson v. Colonial Life & Accident Ins. Co.*, 173 N.C. App. 365, 373, 618 S.E.2d 867, 873 (2005) (internal quotations omitted).[23]

None of Plaintiffs' allegations describe "atrocious" conduct "beyond all possible bounds of decency" or "utterly intolerable in a civilized community." Even if it were

---

[23] "Whether the conduct is extreme and outrageous is a question of law for the Court." *Jolly*, 400 F. Supp. 2d at 866; *see also Shillington v. K-Mart Corp.*, 102 N.C. App. 187, 198, 402 S.E.2d 155, 161 (1991) (same).

assumed that an expert's failure to include all test results in an expert report or to summarize the underlying raw data constituted a violation of these Plaintiffs' legal rights, such conduct simply does not meet the high standard of "extreme and outrageous" conduct necessary to state a claim for intentional infliction of emotional distress.[24]

## IX. PLAINTIFFS' FAILURE TO TRAIN CLAIM ALLEGES NO WRONGDOING BY THE DSI DEFENDANTS

Plaintiffs' Amended Complaint reflects at least one instance of dissonance between their claim headings and their supporting allegations. Plaintiffs' heading for their § 1983 claim for "failure to train" (Fourteenth Cause of Action) does not match up with the allegations within the cause of action itself. The heading purports to signal a claim against DSI, but the text below the headings describes no wrongdoing -- or, indeed, any action at all -- by the DSI Defendants. In fact, DSI is mentioned *only* in the heading of the claim; the DSI Defendants are not mentioned even once in the factual allegations that follow. (*See* Am. Compl. ¶¶ 1141-46.) Even if Plaintiffs do, however, purport to assert such a claim against the DSI Defendants, their failure to provide any factual assertions in support of the claim calls for its dismissal.

---

[24] *Compare, e.g.*, *Ausley v. Bishop*, 133 N.C. App. 210, 221, 515 S.E.2d 72, 80 (1999) (affirming summary judgment in favor of defendant on claim of intentional infliction of emotional distress where, among other things, plaintiff alleged that defendant "contacted the police and caused embezzlement charges to be filed against defendant"); *Lay v. Mangum*, 87 N.C. App. 251, 255-56, 360 S.E.2d 481, 484 (1987) (affirming directed verdict in favor of defendant on claim of intentional infliction of emotional distress premised on plaintiff's swearing out warrant charging defendant with nonsupport of illegitimate child; concluding as a matter of law that, although criminal charges were terminated in plaintiff's favor, plaintiff failed to show outrageous conduct).

## CONCLUSION

For the reasons stated above, DNA Security, Inc. and Richard Clark respectfully request that the claims against them be dismissed.

Respectfully submitted,

/s/ Robert J. King III
Robert J. King III
N.C. State Bar No. 15946
Kearns Davis
N.C. State Bar No. 22014
Brooks, Pierce, McLendon, Humphrey, &
  Leonard, L.L.P.
Post Office Box 26000
Greensboro, North Carolina  27420
Telephone:  336-373-8850
Facsimile:  336-378-1001

*Counsel for Defendants DNA Security, Inc. and Richard Clark*


Robert A. Sar
N.C. State Bar No. 22306
Nicholas J. Sanservino, Jr.
N.C. State Bar No. 36557
Ogletree, Deakins, Nash, Smoak & Stuart, P.C.
2301 Sugar Bush Road, Suite 600
Raleigh, North Carolina 27612
Telephone: (919) 787-9700
Facsimile: (919) 783-9412

*Counsel for Defendant DNA Security, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 2, 2008, I electronically filed the foregoing **Brief in Support of Motion to Dismiss of Defendants DNA Security, Inc. and Richard Clark** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Robert C. Ekstrand
Ekstrand & Ekstrand, LLP
811 Ninth Street, Ste. 260
Durham, NC 27705
*Counsel for Plaintiffs Ryan McFadyen, Matthew Wilson, and Breck Archer*

Jamie S. Gorelick
Paul R. Q. Wolfson
Jennifer M. O'Conner
Wilmer Cutler Pickering Hale and Dorr, LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006

*and*

William F. Lee
Wilmer Cutler Pickering Hale and Dorr, LLP
60 State Street
Boston, MA 02109

*and*

James Donald Cowan, Jr.
Dixie T. Wells
Smith Moore LLP
300 N. Green Street, Ste. 1400
P.O. Box 21927 [26420]
Greensboro, NC 27401
*Counsel for Defendants Duke University, Duke University Police Department, Aaron Graves, Robert Dean, Leila Humphries, Phyllis Cooper, William F. Garber, II, James Schwab, Joseph Fleming, Jeffrey O. Best, Gary N. Smith, Greg Stotsenberg, Robert K. Steel, Richard H. Brodhead, Ph.D., Peter Lange, Ph.D., Tallman Trask, III, Ph.D., John Burness, Larry Moneta, Ed.D., Victor J. Dzau, M.D., Allison Halton, Kemel Dawkins, Suzanne Wasiolek, Stephen Bryan, and Matthew Drummond*

Dan J. McLamb
Shirley M. Pruitt
Thomas Carlton Younger, III
Yates, McLamb & Weyher, LLP
One Bank of America Plaza, Ste. 1200
421 Fayetteville Street
P.O. Box 2889 [27602]
Raleigh, NC 27601
*Counsel for Defendants Duke University Health Systems, Inc., Private Diagnostic Clinic, PLLC, Julie Manly, M.D., Theresa Arico, R.N., and Tara Levicy, R.N.*

Reginald B. Gillespie, Jr.
Faison & Gillespie
P.O. Box 51729
5517 Durham-Chapel Hill Blvd, Ste. 2000
Durham, NC 27717-1729

*and*

Roger E. Warin
Steptoe & Johnson LLP
1330 Connecticut Ave., NW
Washington, D.C. 20003
*Counsel for Defendants City of Durham, North Carolina and Edward Sarvis*

Patricia P. Kerner
D. Martin Warf
Hannah Gray Styron
Troutman Sanders, LLP
434 Fayetteville Street, Ste. 1900
Raleigh, NC 27601
*Counsel for Defendants Patrick Baker, Steven Chalmers, Ronald Hodge, Lee Russ, Stephen Mihaich, Beverly Council, Jeff Lamb, Michael Ripberger, and Laird Evans*

James B. Maxwell
Maxwell, Freeman & Bowman, P.A.
P.O. Box 52396
Durham, NC 27717-2396
*Counsel for Defendants James T. Soukup, Kammie Michael, David W. Addison, and Richard D. Clayton*

Edwin M. Speas, Jr.
Eric P. Stevens
Poyner & Spruill, LLP
3600 Glenwood Avenue
Raleigh, NC  27612
*Counsel for Defendant Mark D. Gottlieb*

Joel M. Craig
Henry W. Sappenfield
Kennon Craver Belo Craig & McKee, PLLC
4011 University Drive, Ste. 300
P.O. Box 51579
Durham, NC 27717-1579
*Counsel for Defendant Benjamin W. Himan*

James A. Roberts, III
Paul R. Dickinson, Jr.
Lewis & Roberts, PLLC
1305 Navaho Dr., Ste. 400
P.O. Box 17529
Raleigh, NC 27609-7482
*Counsel for Defendant Brian Meehan, Ph.D.*

I further certify that I caused the foregoing document to be served by first-class mail, postage-prepaid, to the following non CM/ECF participants:

Linwood Wilson
6910 Innesbrook Way
Bahama, NC 27503-9700
*Pro Se*

Respectfully Submitted,

/s/ Robert J. King