UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF NORTH CAROLINA

RYAN McFADYEN, et al.,

     Plaintiffs,

v.

DUKE UNIVERSITY, et al.,

     Defendants.

Civil Action No. 1:07-cv-953

---

**PLAINTIFFS' OPPOSITION TO THE DUPD DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

---

Dated: October 10, 2008

**EKSTRAND & EKSTRAND LLP**

Robert C. Ekstrand (NC Bar #26673)
Attn. Stefanie A. Sparks
811 Ninth Street, Suite 260
Durham, North Carolina 27705

***Counsel for Plaintiffs Ryan McFadyen,
Matthew Wilson, and Breck Archer***

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................... i

STATEMENT OF THE CASE ........................................................................... 1

NATURE OF THE PROCEEDINGS ................................................................ 1

STATEMENT OF THE FACTS ......................................................................... 2

QUESTIONS PRESENTED ............................................................................... 5

ARGUMENT......................................................................................................... 5

    I.   STANDARD OF REVIEW ................................................................. 5

    II.  THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS UNDER FEDERAL LAW AGAINST THE DUPD DEFENDANTS. ............................ 6

        A.  The Amended Complaint States Actionable Section 1983 Claims Against the DUPD Defendants. ................................................................ 6

            1.  The Amended Complaint States an Actionable Section 1983 Claim for Searches and Seizures in Violation of the Fourth Amendment.............. 8

            2.  The Seventh and Fifteenth Causes of Action State a Section 1983 Claim for Conduct that Shocks the Conscience, in Violation of the Fourteenth Amendment........................................................................... 9

            3.  The Ninth Cause of Action States a § 1983 Retaliation Claim. ............ 10

            4.  The Tenth Cause of Action States an Actionable Section 1983 Claim Against the University Defendants for Depriving Plaintiffs of the Privileges and Immunities Afforded to North Carolina Citizens in Violation of 42 U.S.C. § 1983. ............................................................. 11

            5.  The Amended Complaint States an Actionable § 1983 Bystander Liability Claim Against the DUPD Defendants Duke University Officials with Final Policymaking Authority Who Directed the Duke Police Officers to Turn a Blind Eye and Do Nothing When Officers Were Violating Plaintiffs Federal Rights in Their Presence and Within Their Knowledge. .................................................................................. 12

         B.  The Amended Complaint States An Actionable Supervisory Liability Claim Against The Duke Police Supervising Defendants. .................................... 14

      1.  This Circuit has Rejected Heightened Pleading Requirements for Supervisory Liability. ........................................................................... 16

  C.  The Amended Complaint States An Actionable Monell Claim Against Duke University. .......................................................................... 17

III.  THE SUPERVISORY DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY............................................................................ 18

  A.  The Qualified Immunity Standard................................................................ 18

IV.  THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS AGAINST THE DUPD DEFENDANTS FOR PARTICIPATION IN CIVIL RIGHTS CONSPIRACIES. ................................................................ 19

  A.  Conspiracies in Violation of 42 U.S.C. § 1983. ......................................... 19

  B.  The Amended Complaint States Actionable Claims for Conspiracy in Violation of 42 U.S.C. § 1985.................................................................... 20

      1.  The Amended Complaint States a Violation of 42 U.S.C. §1986. ........ 22

V.  THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS UNDER STATE LAW AGAINST THE DUPD DEFENDANTS.................................. 23

  A.  The Amended Complaint States a Civil Conspiracy Claim Against the DUPD Defendants. ..................................................................... 23

  B.  The Amended Complaint States an Invasion of Privacy Claim Against the DUPD Defendants. ..................................................................... 24

  C.  The Amended Complaint States a Breach of Fiduciary Duty Claim Against the University Defendants. ....................................................... 26

  D.  The Amended Complaint States an Actionable Fraud Claim Against the DUPD Defendants. ..................................................................... 30

      1.  Actual Fraud. .......................................................................... 30

      2.  Plaintiffs have Met the Requirements of Rule 9(b) .............................. 31

      3.  Constructive Fraud................................................................... 31

  E.  The Amended Complaint States a Negligence Claim Against the DUPD Defendants. ..................................................................... 32

  F.  The Amended Complaint States a Negligent Supervision, Retention, Training, and Discipline Claim Against the DUPD Defendants................. 37

  G.  The Amended Complaint States a Negligent Infliction of Emotional Distress Claim Against the DUPD Defendants. ........................................... 40

    H.   The Amended Complaint States a Negligent Entrustment Claim Against the DUPD Defendants. ...................................................................................... 42

VI.  DEFENDANTS MAKE NO OTHER ARGUMENTS FOR DISMISSAL; PLAINTIFFS REQUEST LEAVE TO COMMENCE DISCOVERY. ............. 45

CONCLUSION ............................................................................................................ 46

## STATEMENT OF THE CASE

The Amended Complaint describes a combination of actors and entities referred to as the Consortium. For thirteen months beginning in March 2006, the Consortium's ultimate objective was to railroad the Plaintiffs and their 44 teammates into convictions as either principles or accomplices to a horrific, violent crime they knew never happened. The allegations describe a willful, malicious, and calculating conspiracy of multiple dimensions. Acting individually and in concert, Defendants concealed exonerating evidence, manufactured inculpatory evidence, and stigmatized the Plaintiffs, subjecting them to public outrage, public condemnation, and infamy in the minds of millions of people. Defendants' conduct shocks the conscience. The most unsettling of all are those who knew of the wrongs conspired to be done to Plaintiffs, and had the power to prevent or aid in preventing them but did not. Instead, they 'turned a blind eye' and did nothing.

## NATURE OF THE PROCEEDINGS

Plaintiffs filed this action on December 18, 2007 and amended that filing on April 17, 2008. Pursuant to a request from this Court regarding the location of the audio and video exhibits embedded within the First Amended Complaint ("AC"), Plaintiffs re-filed the AC on April 18, 2008 with those embedded exhibits as separate documents. Except for the location of the exhibits, the two "First Amended Complaints" are identical. All Defendants filed Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b) (6) on July 2, 2008. This Memorandum is filed pursuant to the Court's Order of October 7, 2008 [Document #72], granting Plaintiffs' Motion for Leave to File Opposition Briefs

[Document #71], and authorizing Plaintiffs to file their Responses on or before October 10, 2008. [1]

## STATEMENT OF THE FACTS

DUKE UNIVERSITY POLICE DEPARTMENT: "DUPD"[1] is a North Carolina law enforcement agency authorized and existing under the North Carolina General Statutes. Duke Police officers are commissioned under North Carolina General Statutes without limitation; they have the full range of police authority that the State grants to all other municipal law enforcement officers in their respective jurisdictions. The Duke Police Department has primary police jurisdiction over, among other things, crimes reported to have occurred on property owned or controlled by Duke University, including adjacent streets and roadways, within the Durham city limits. The Duke Police Department's duties include providing comprehensive law enforcement services throughout its territorial jurisdiction including, but not limited to the academic campus, a large medical center complex, an 8,000 acre research forest, and all property owned or controlled by Duke University within the Durham city limits. The Duke Police Department has 176 authorized positions, including 67 commissioned Police Officers, 83

_____

[1] Plaintiffs' Opposition Brief is filed in response to Duke University Police Department's ("DUPD") to Dismiss (Document #49) and supporting Memorandum (Document #50). DUPD's supporting brief is cited herein as "DUPD Br."  DUPD's co-defendants' supporting briefs are cited herein as: "Gottlieb Br.," "City Super. Br.," "DNASI Br.," "SANE Br.," "Duke Univ. Br.", "Himan Br.," "SMAC Br.," "Hodge Br.," and "Wilson Br."

[1] Although Defendants incorporate Aaron Graves into their Duke University Brief, Plaintiffs have always defined him as part of DUPD, and therefore he will be treated as such for the purposes of this brief.

Security Officers, 12 Emergency Communications and Records Officers, a 24-hour 911 center, Criminal Investigations Unit, and various administrative support personnel.

From March 14, 2006 through January 12, 2007, the Duke Police Department had original, primary, and continuing statutory authority to investigate Crystal Mangum's false accusations. AC ¶ 82. Early on, after Mangum's allegations were determined to be false and unfounded by both the Durham Police Department and the Duke Police Department, the Duke University Defendants and Durham Police Department Defendants would conspire to conceal the fact that the claims had been determined to be false. AC ¶ Specifically, in the early hours of March 14, 2006, at a critical point in the determination of Mangum's allegations as false, Duke Police and Durham Police agreed to misrepresent what transpired on the loading dock of the Emergency Department and told reporters that Officer Day was "eavesdropping" on Durham Police conversations, and had no place in the investigation.

Despite knowing of the overwhelming evidence that Mangum's claims were a hoax, the glaring lack of inculpatory evidence, and the prior determination by Duke and Durham investigators to close the case as an unsubstantiated, false allegation, Duke officials with policymaking authority with respect to the investigation directed Duke Police Department Officers and employees to assist Gottlieb in his Second Investigation in any way that Gottlieb directed. In doing so, Duke Police Supervising Defendants delegated their primary supervisory and final policymaking authority with respect to the supervision and conduct of the investigation to Himan, Gottlieb, Nifong, and the Himan Chain of Command. AC ¶ 354. DUPD punted and did so at a grave cost.

In an effort to justify their abdicated authority, Defendant Graves (Duke University's Associate Vice President for Campus Safety and Security), and President Brodhead, in particular, made several false public statements about the lack of Duke

Police authority. AC ¶¶ 476; §XVIII ("The Conspiracy to Conceal the Duke Police Department's Statutory Authority to Intervene").

DUPD Defendants were also involved in compiling private information from Duke University's records pertaining to Plaintiffs and their teammates, and relaying the information to Durham Police. DUPD compiled a CD-ROM of all of the identification photos of the members of the lacrosse team that were maintained by the Athletics Department pursuant to their status as student-athletes. AC ¶¶ 352-53.

DUPD Defendants aided in the unlawful searches of its own students' rooms by Durham Police. *See* AC ¶¶ 614, 823-25; § XXXVI.

DUPD Defendants aided in the illegal obtaining of private student information, via the students' Duke Cards, turned over that information to Durham Police and then, DUPD Defendants and City Defendants covered up these acts. AC ¶¶ 853-71

And finally, DUPD Defendants played an active role, in conjunction with University officials, to suppress voter registration efforts, another serious fundamental violation of rights. AC ¶ 883; § XXXIX.

All of the acts, failures to act, failure to intervene, failure to supervise, conspiracies, and concealments by DUPD Defendants that are alleged in the AC led to significant violations of Plaintiffs' constitutional rights and a hoax of a criminal investigation and prosecution that lasted almost a year. DUPD Defendants knew that their fellow officers were engaged in a sweeping Conspiracy to Convict, and at the very least should have known the constitutional violations that were occurring. At best, they turned a blind eye to the abuses of power and lies, and at worse, they actively participated in the acts and conspiracies alleged.

## QUESTIONS PRESENTED

1.  Have Plaintiffs stated an actionable constitutional deprivation under 42 U.S.C. § 1983? (Section III.A)

2.  Have Plaintiffs stated a § 1983 *Monell* claim against the University, where Plaintiffs allege that their unlawful seizures were caused by:

    a.  misconduct that was authorized or ratified by the University's final policymaking officials? (Section IV.B.1)

    b.  misconduct that Steel and Brodhead caused or directed while acting pursuant to their final policymaking authority over the Durham Police investigation? (Section IV.B.2)

    c.  the foreseeable application of official policies, customs, and practices of the University that had already resulted in highly visible, egregious violations of constitutional rights? (Section IV.B.3)

    d.  the Supervisory Defendants' failures to remove Nifong and Gottlieb from the Durham Police investigation, despite knowledge of their misconduct? (Section IV.B.4)

3.  Have Plaintiffs stated negligence claims against DUPD Defendants? (§V.E-H);

4.  Are the Duke Defendants exempt from the duty of ordinary care that every person owes to the foreseeable victims of their negligence? (Section IX.D);

5.  Have Plaintiffs stated an invasion of privacy claim against DUPD Defendants? (§V.B.);

6.  Have Plaintiffs stated a fraud claim (V.D.1-3)

## ARGUMENT

## I.   STANDARD OF REVIEW

A motion to dismiss for failure to state a claim may be granted "only in very limited circumstances." *Rogers v. Jefferson-Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir. 1989). In examining a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Salami v. Monroe*, No. 1:07CV621, 2008 WL 2981553, at *5 (M.D.N.C. Aug.

1, 2008) (quoting *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). Though the complaint is not required to encompass detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quotations and alterations in original) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007)). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 127 S.Ct. at 1965). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* (quoting *Twombly*, 127 S.Ct. at 1969).

Further, where Plaintiffs have asserted a civil rights action, the Court "must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Veney v. Wyche,* 293 F.3d 726, 730 (4th Cir. 2002) (internal quotations omitted).

II.   **THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS UNDER FEDERAL LAW AGAINST THE DUPD DEFENDANTS.**

   A. **The Amended Complaint States Actionable Section 1983 Claims Against The DUPD Defendants.**

The first fifteen Causes of Action allege violations of 42 U.S.C. § 1983 (the "§ 1983 Claims"). At this early stage, the Court must determine whether each of these Causes of Action alleges facts sufficient to satisfy the elements of § 1983.[2] *See Green v.*

---

[2] Section 1983 provides:

*Maroules*, 211 F.App'x 159, 161 (4th Cir. 2006).  Based on statute's text, the Supreme Court held that a Section 1983 claim requires only two essential allegations:

> By the plain terms of section 1983, two–and only two–allegations are required in order to state a cause of action under that statute.  First, the plaintiff must allege that some person has deprived him of a federal right.  Second, he must allege that the person who deprives them of that right acted under color of state or territorial law.

*Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  Section 1983 does not itself create or establish substantive rights.  Instead, § 1983 provides "a remedy" where a plaintiff demonstrates a violation of a right protected by the federal Constitution, or by a federal statute other than §1983.  *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979.  Analytically, however, it may be more useful to understand a Section 1983 action as having four elements of proof:  (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation (2) proximately caused (3) by the conduct of a "person" (4) who acted "under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia."  42 U.S.C. § 1983 (2000).  *See*, *e.g.*, *Martinez v. California*, 404 U.S. 277 (1980).[3]  In addition, where—as

---

[E]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress[.]  42 U.S.C. § 1983 (2000).

[3] In addition, a plaintiff seeking to establish municipal liability under § 1983 must satisfy a fifth element:  that the violation of plaintiff's federal right was attributable to the enforcement of a municipal policy or practice.  *Monell v. Dep't of Soc. Servs. Of N.Y.*, 463 U.S. 658 (1978).

here—a plaintiff seeks to establish entity liability under *Monell*, the complaint must allege a fifth element: that the violation of plaintiff's federal right was attributable to the enforcement of a municipal policy or practice. *Monell v. Dep't of Social Servs. of N.Y.,* 463 U.S. 658 (1978).

The Amended Complaint adequately alleges these elements and provides significant detailed factual allegations to support them. The Amended Complaint states an actionable §1983 Claim against Duke University Police Defendants and against Duke University and/or the Duke University Police Department pursuant to *Monell v. Dep't of Social Servs. of N.Y.,* 463 U.S. 658 (1978). The DUPD Defendants' concede that the A.C. sufficiently alleges they are persons, acting under color of law, and that their conduct caused the harms alleged. Their arguments against Plaintiffs' Section 1983 Claims focus largely on their contention that that the Amended Complaint does not state an actionable § 1983 Claim against Duke Police. They are wrong.

1. **The Amended Complaint States An Actionable Section 1983 Claim For Searches And Seizures In Violation Of The Fourth Amendment.**

The Second Cause of Action states a § 1983 Claim against the Day Chain of Command and others for unreasonable searches and seizures in violation of Fourth and Fourteenth Amendments. AC ¶¶ 918-28. The Amended Complaint alleges that the Duke Police stood outside the door and allowed Durham Police Officers to search McFadyen's room, all the while knowing that the crime alleged by Mangum had not been committed as Duke had already concluded its investigation. AC ¶¶ 922, 278-290, 614. The McFadyen Search Affidavit adds only one new allegation. Because the Affidavits for the NTID and the Search Warrant for Ryan McFadyen's Room are nearly identical, analysis is more fully developed in Plaintiffs' Opposition to City's Motion to Dismiss ("Pls. Opp. City, § II.A.(1).") and, in the interests of judicial economy, Plaintiffs

8

incorporate that analysis here. The Duke Police Defendants do not address this Cause of Action in this brief.[4]

### 2. The Seventh And Fifteenth Causes Of Action State A Section 1983 Claim For Conduct That Shocks The Conscience, In Violation Of The Fourteenth Amendment.

The Amended Complaint states a Section 1983 claim for conduct in violation of the Fourteenth Amendment against Defendants Graves, Dean, Best. AC ¶¶ 969-77, 978-985 Executive action that "shocks the conscience" is actionable under the Fourteenth Amendment. *County of Sacramento v. Lewis*, 523 U.S. 833 (1998). In *Lewis*, the Court refined the "shocks the conscience" standard by distinguishing between official conduct where there is a realistic opportunity to deliberate and official conduct where such an opportunity is not present. Id. Where an official has an opportunity to deliberate, official conduct that is "deliberately indifferent" is conscience shocking. *Id.* The rationale is that, when officials with the luxury to deliberate and an opportunity to do better nevertheless exhibit "protracted failure to care, indifference is truly shocking." *Id.* at 853. As examples of the opportunity to deliberate, the Supreme Court cited situations in which officials have the opportunity to deliberate over the provision of medical care to detainees, *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239 (1983), and to prisoners, *Estelle v. Gamble*, 429 U.S. 97 (1976). In situations where there is no time to deliberate

---

[4] The DUPD Defendants are parties to the following Causes of Actions, but do not address them in this brief: 2, 7, 9, 10, 13, 15, 16, 17, 30. They refer to the SANE Br. For the 2nd Cause of Action; to the Duke Univ. Br. For the 7th, 9th-10th, 15th, 17th, and 30th.

While all claims are addressed here, Plaintiffs provide a fuller analysis of the following Causes of Action in the Briefs listed: 1 and 2 in Pl. Opp. to Himan Br.; 7 and 15 in Pls. Opp. To SANE Br.; 16-17 and 30 in Pls. Opp. To Duke Univ. Br. This Brief fully addresses the following Causes of Action: 11, 13, 22-24, 29, 37-40.

and unforeseen circumstances demand an officer's instant judgment, such as the tense, rapidly evolving high speed pursuit at issue in *Lewis*, the officer's conduct will be considered conscience shocking only if carried out with a purpose to cause harm. *Lewis*, 523 U.S. at 853. Defendants Graves, Dean, and Best do not address this Cause of Action in this brief. [5]

### 3. The Ninth Cause Of Action States A Section 1983 Retaliation Claim.

The Amended Complaint alleges that the University Defendants, individually and in concert with Steel, Brodhead, Burness, Lange, Stotsenberg, Smith, in their individual and official capacities, the Duke Police Supervising Defendants, Duke University, DUHS, and PDC, retaliated against the Plaintiffs for engaging in conduct protected by the First Amendment. To state a § 1983 Retaliation claim, a complaint must allege that (1) the plaintiff engaged in conduct or an activity protected by the First Amendment; (2) defendants took some action that adversely affected (i.e., "chilled") Plaintiffs' First Amendment rights; and (3) a causal relationship between the protected conduct and the retaliatory actions alleged. *Id.* at 686; *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (2005). The Amended Complaint establishes the elements of a §1983 Retaliation Claim against the DUPD Defendants who do not address this claim in this brief. [6] Plaintiffs provide a fuller analysis of the Tenth Cause of Action in its Opposition Brief to Duke University and incorporate that analysis here. *See* Pl. Opp. Duke Univ. Br. §II.A.(4).

---

[5] *See* n. 4, *supra*.

[6] *See* n. 4, *supra*.

**4. The Tenth Cause Of Action States An Actionable Section 1983 Claim Against The University Defendants For Depriving Plaintiffs Of The Privileges And Immunities Afforded To North Carolina Citizens In Violation Of 42 U.S.C. § 1983.**

The Amended Complaint states an actionable Section 1983 Claim for deprivation of Plaintiffs' rights to the privileges and immunities guaranteed to them as citizens of the United States by Article IV and the Fourteenth Amendment. This Cause of Action identifies rights within the broader "right to travel." The "right to travel" includes at least three different components: (1) the right of a citizen of one State to enter and to leave another State, (2) the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, (3) for travelers who elect to become permanent residents in a new State, the right to be treated like other citizens of that State. Plaintiffs assert that the second and third components of the right to travel are addressed in the Amended Complaint. Analysis for this cause of action is more fully developed in Plaintiffs' Opposition to City Supervisory Defendants' Motion to Dismiss § II.A.(3) ("Pl. Op. to City Sup."), and, in the interests of judicial economy, Plaintiffs incorporate that analysis here. The DUPD Defendants do not address this claim at all in this brief.[7]

---

[7] *See* n. 4, *supra.*

**5. The Amended Complaint States An Actionable Section 1983 Bystander Liability Claim Against The DUPD Defendants Duke University Officials With Final Policymaking Authority Who Directed The Duke Police Officers To Turn A Blind Eye And Do Nothing When Officers Were Violating Plaintiffs' Federal Rights In Their Presence And Within Their Knowledge.**

The Eleventh Cause of Action alleges that the Duke Police Department Defendants (referred to in the Amended Complaint as "Duke Bystander Officers") failed to act when they knew their fellow officers were violating Plaintiffs constitutional rights, had a reasonable opportunity to prevent the harm, and chose not to act. Those are the elements of the claim. The Amended Complaint sufficiently alleges the elements of the cause of action as to the Duke Police Department's officers and investigators. AC ¶ 1008-1013; *Randall v. Prince George's County,* 302 F.3d 188, 202-04 (4th Cir. 2002). The A.C. alleges that all of the Duke University Police Officers within the "Day Chain of Command" knew that no sexual assault occurred within hours of the accusation. Within 48 hours of the accusation, they knew of the staggering evidence demonstrating the Plaintiffs' innocence. AC. ¶¶ 219-332; § XI. ("*The Body Of Evidence Amassed In The First 48 Hours Proved Mangum's Rape Claim Was A Hoax*"). Nevertheless, knowing those things, the same officer turned a blind eye and did nothing when, in their presence and within their knowledge, their fellow officers subjected Plaintiffs to ongoing and repeated violations of their constitutional rights, *Id.* ¶1010. All of the violations alleged in the AC relevant to this cause of action occurred within the territorial jurisdiction of the Duke University Police Department, where they had the primary responsibility to initiate and conclude investigations of reports of crime. *Id; see also, Id.,* Ex. 1-2. Plaintiffs have sufficiently alleged the § 1983 Bystander Officer Cause of Action.

With references to the Duke University Brief, Defendants contend that the § 1983 claims fails because Plaintiffs were not deprived of their constitutional rights. DUPD §V.D. As to bystander liability in particular, Defendants assert that facts were not

alleged to satisfy the legal elements, such as "reasonable opportunity" or "realistic authority" to prevent any deprivations. *Id.* Defendants recognize just one potential instance of a failure to intervene by Sgt. Smith during the McFadyen room search; however, Defendants see no facts alleged that would suggest Smith knew the warrant lacked probably cause. *Id.* According to the Defendants, the search seemed "facially appropriate" and thus, intervention was unrealistic. *Id.*

The Amended Complaint documents an extraordinary array of credible sources of information. *See, e.g.,* AC. §VII – XI (pp. 76 – 102) (including Sgt. Shelton, Inv. Jones, Durham ACCESS[8], Duke Police Officers Falcon, clinical staff at DUMC, Officer Gwen Sutton, Angel Altmon, Best, Smith, Stotsenberg, Day, Mazurek, Falcon, Eason, and other Duke Police Officers. *See Id.* The cumulative evidence that the Day Chain of Command, from Day to Steel, knew within the first 48 hours was extraordinary and it is documented in AC § XI ("The Body of Evidence Amassed in the First Forty-Eight Hours Proved Mangum's Rape Claim Was a Hoax"). *Id.* ¶¶ 321-332.

In short, the Duke Police Departmnt knew that no rape had occurred. In particular, the Day Chain of Command, knew that no one, either at the hospital or on patrol in Duke's or Durham's Police Department, believed Mangum's claims (about virtually anything). *See, Id.* Knowing two things: first, that there was no rape and that the evidence to prove that was overwhelming, and second, that Gottlieb and Himan were engaged in a calculated scheme to frame Plaintiffs or three of their teammates for a crime that did not happen, the officers in the Day Chain of Command and Duke Police Department, abdicated their authority and let the hoax begin.

---

[8] Durham ACCESS was operated by Defendant DUHS, a constituent of Duke University.

Knowing that Plaintiffs' rights were being violated in their presence or within their knowledge, and with a reasonable opportunity throughout the thirteen month ordeal to act to prevent the harm. AC ¶¶ 104-06, the Duke University Police Officers did not act. *Id.* 1008-1024. As a direct and proximate result of the Duke Bystander Officers' failure or refusal to act when they had a reasonable opportunity to prevent those harms, Plaintiffs were subjected to deprivations of their constitutional rights. *Id.* As a direct and foreseeable consequence, Plaintiffs suffered significant harm. The AC is replete with allegations that establish the elements of this claim. Duke Police Defendants' Motion to Dismiss this cause of action must be denied. *Id.*

**B. The Amended Complaint States An Actionable Supervisory Liability Claim Against The Duke Police Supervising Defendants.**

The supervisory law enforcement officer's obligation is to insure that his subordinates act within the law. *Randall*, 302 F.3d at 203. Although such a supervisor may not prevent all illegal acts by his subordinates, he is obligated, when on notice of a subordinate's tendency to act outside the law, to take steps to prevent such activity. *Id.* If a supervisory law enforcement officer is deliberately indifferent to that responsibility, he is culpable for the illegal conduct by his subordinates, and he may be held vicariously liable for their illegal acts. *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994). There are three elements of a supervisory liability claim: "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices[]'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw*, 13 F.3d at 799. The first and second elements are established by either (a) evidence of a supervisor's inaction in the

face of conduct that is either "widespread" or that "has been used on several different occasions,"[9] or (b) evidence of the supervisor's affirmative approval of or participation in even a single instance of misconduct.[10] The third element is established by "direct" proof, such as "'where the conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices[]'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw*, 13 F.3d at 799.

The Amended Complaint satisfies each of these elements by showing Supervising Defendants "approved every false step, and [did] their part to make the scheme work."[11]

_____

[9] *Id.* (citing *Slakan*, 737 F.2d at 373-74),

[10] *See Cranford v. Frick*, No. 1:05CV62, 2007 WL 676687, at *5-6 (M.D.N.C. Feb. 28, 2007) ("Plaintiff's allegation of the Sheriff's affirmative misconduct relieves her from the burden of showing 'deliberate indifference,' and provides a sufficient basis for an individual liability claim under § 1983."); *Blair v. County of Davidson*, No. 1:05CV11, 2006 WL 1367420, at *10-11 (M.D.N.C. May 10, 2006) (denying motion to dismiss where plaintiff alleged that supervisors "were specifically involved in the deprivation of her constitutional rights, knew of the constitutional violations, had the power to prevent them, and failed to act to prevent the constitutional violations"); *see also Jones v. City of Chicago*, 856 F.2d 985, 993 (7th Cir. 1988) (supervisors "had approved every false step, and had done their part to make the scheme work"); *Jasinski v. Adams*, 781 F.2d 843, 848 (11th Cir. 1986) (supervisor participated in decision); *Lavender v. W. Va. Reg'l Jail & Corr. Facility Auth.*, No. 3:06-1032, 2008 WL 313957, at *4 (S.D.W. Va. Feb. 4, 2008) (supervisor "acquiesced" in subordinates' unlawful use of force) (quotation marks omitted); *Pruitt v. Pernell*, 360 F. Supp. 2d 738, 741 (E.D.N.C. 2005), *aff'd*, 173 F.App'x 298 (4th Cir. 2006) (supervisor instructed subordinates to engage in single incident of unlawful conduct).

[11] *See Jones v. City of Chicago*, 856 F.2d 985, 993 (7th Cir. 1988).

First, it details the Supervisory Defendants' contemporaneous knowledge of the repeated abuses that were being committed by Durham Police and Nifong throughout the investigation, AC ¶¶ 500-503; the prior history of misconduct by Gottlieb documented in their own records and in a dossier assembled from court records, AC ¶¶ 171, *see generally Id.* § IV ("The Gottlieb Dossier"), and the prior history of improper public statements by Addison, *Id.* ¶¶ 505(A)-(H).   Second, it details not only the Supervisory Defendants' utter inaction in the face of these repeated abuses by asserting that they had no authority to investigate the allegations, they hid the conclusive results of their initial investigation, and they allowed a completed investigation to be turned over to members of the Durham Police Department who were know to be abusive.  *Id.* 461-76. 1109-33. The AC also alleges Supervisory Defendants personally participated in, authorized, or ratified the abuses.  AC § XL; ¶¶ 890.   Finally, the Amended Complaint alleges that these supervisory failures foreseeably led to the constitutional deprivations suffered by Plaintiffs.  *Id.*

The Supervising Defendants' arguments for dismissal of this Cause of Action fail as the allegations are not "broad and inclusive" but instead the AC provides more than adequate notice to the Duke Police Supervisors as to their actions and ensuing liability.

### 1. This Circuit Has Rejected Heightened Pleading Requirements For Supervisory Liability.

Defendants argue that Plaintiffs' allegations are insufficient because, they contend, Plaintiffs were required to plead multiple instances of similar constitutional violations to support the claim of a municipal policy or practice.  However, the Fourth Circuit has squarely rejected Defendants' proposition.  In *Jordan v. Jackson*, 15 F.3d 333 (4th Cir. 1994), the Fourth Circuit interpreted the Supreme Court's decision in *Leatherman vs. Tarrant County*, 507 US 163(1993), as having rejected the requirement that a plaintiff plead multiple instances of similar constitutional violations to support an allegation of a

municipal policy or practice. *Id.* The court found that the complaint's allegations stated a § 1983 municipal liability claim where plaintiff alleged that the county maintained a policy of inadequate training of its employees on how to determine whether summary removal of a child from the home is proper and on the statutory procedural requirements following removal. *Id.*

### C. The Amended Complaint States An Actionable *Monell* Claim Against Duke University.

Plaintiffs have asserted an actionable § 1983 claim against Duke University within this cause of action. In that regard, the Plaintiffs *do not* seek to hold Duke University liable on a theory of *respondeat superior*, but, rather, on the same principles as the *Monell* claim Plaintiffs have alleged against the City. *Monell* liability attaches upon a showing that a deprivation of the plaintiff's federally protected right was attributable to enforcement of a municipal policy or practice. The extensive case law concerning this issue establishes that, generally, municipal liability may be based upon: (1) a formally promulgated policy; (2) a well settled custom or practice; (3) a final decision by a policymaker; or (4) deliberately indifferent training or supervision. The *Monell* principles apply equally to a private corporation in these circumstances. *See, e.g., Rodriguez v. Smithfield Packing Co.*, 338 F.3d 348, 355 (4th Cir. 2003) ("'The principles of § 1983 municipal liability . . . apply equally to a private corporation[.]'" (quoting *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727-28 (4th Cir. 1999)). One of those principles, expressly recognized by the Fourth Circuit, is that "corporate liability may . . . 'be imposed for a single decision by [corporate] policymakers under appropriate circumstances.'" *Id.* at 355 (alteration in original) (quoting *Pembaur*, 475 U.S. at 480).

Here, Duke University's liability arises from a series of decisions and actions by Brodhead, Duke University's "President," Steel, Duke University's Executive Committee Chairman of the Board ("the Chairman"), the Day Chain of Command (running from

Christopher Day to the Chairman),[12] its Vice Presidents, Trask, Dawkins, and Burness, for just a few examples. Steel's conduct establishes *Monell* liability in at least two ways. First, he directed the Duke Police Officers to ignore the ongoing deprivations of Plaintiffs' constitutional rights. This was an important feature of the Chairman's Directive. AC ¶ 85 (B), *see generally*, ¶85 (A)-(E). Another was the University's "false helplessness" message. ¶¶ 87-92.

## III. THE SUPERVISORY DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY.

### A. The Qualified Immunity Standard

Qualified immunity does not apply to conduct that violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A right is "clearly established" if a reasonable official would have been on fair notice that the conduct at issue was unconstitutional at the time he engaged in the conduct. *Hope v. Pelzer,* 536 U.S. 730, 739 (2002) (internal quotations omitted). The inquiry is an objective one; it does not depend on "the subjective beliefs of the particular officer at the scene, but instead on what a hypothetical, reasonable officer would have thought in those circumstances." *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 279 (4th Cir. 2004) (quoting *Wilson v. Kittoe,* 337 F.3d 392, 402 (4th Cir. 2003)). A constitutional right is "clearly established" for qualified immunity purposes when either (1) it has been established by closely analogous case law; *see, Id.,* or (2) "when the defendants' conduct is so patently violative of the

---

[12] The chain of command established for the Duke Police Department's investigation of the Mangum allegations, as alleged in the AC, is: Best, Smith, Fleming, Cooper, Humphries, Dean, Graves, Dawkins, Trask, Brodhead, and Steel.

constitutional right that reasonable officials would know without guidance from the courts that the action was unconstitutional[.]" *Clem v. Corbeau*, 284 F.3d 543, 553 (4th Cir. 2002) (internal citations omitted). A defendant may not avail himself of qualified immunity by ignoring the detailed facts alleged in the Complaint or recasting them into broad general propositions. *Saucer v. Katz,* 533 U.S. 194, 201 (2001). The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition ..." *Id.* Therefore, to determine whether Defendants have qualified immunity at this preliminary stage the Court must first describe the Defendants' alleged conduct in the specific context of the circumstantial detail alleged in the Amended Complaint and in the light most favorable to the plaintiff, and then ask if pre-existing law made the unlawfulness of Defendants' conduct apparent. *See, e.g., W.E.T. v. Mitchell,* 2008 WL 151282, * (M.D.N.C. Jan. 10, 2008). Defendants do not assert qualified immunity in this brief.

## IV. THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS AGAINST THE DUPD DEFENDANTS FOR PARTICIPATION IN CIVIL RIGHTS CONSPIRACIES.

### A. Conspiracies In Violation Of 42 U.S.C. § 1983.

The Fifteenth Cause of Action states a §1983 Conspiracy claim against all Defendants for unlawful conspiracies that deprived Plaintiffs of their civil rights.[13] AC ¶ 1147-1155. The Fifteenth Cause of Action alleges a broad conspiracy, agreement, or understanding shared by all named Defendants in this action. The objective of the

---

[13] To allege a cause of action under 42 U.S.C. § 1983 for conspiracy, a plaintiff must allege facts that show that two or more defendants "acted jointly [and] in concert and that some overt act was done in furtherance of the conspiracy" that resulted in the deprivation of a federal right. *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996).

unifying conspiracy alleged in the Fifteenth Cause of Action was to unlawfully force the wrongful indictment, prosecution, and, ultimately, incarceration of the Plaintiffs, as the principals or accomplices in a horrific, racially motivated gang-rape, which all Defendants in this action knew or were deliberately indifferent to the likelihood that it did not occur. The conduct giving rise to the Fifteenth Cause of Action is alleged in the Fifteenth Cause of Action by incorporation of the First through Eleventh Causes of Action (collectively, "the Predicate Violations"). The required showing of constitutional harm done in furtherance of the conspiracy is met by incorporation of the constitutional violations alleged in the First through Eleventh Causes of Action (the "Predicate Violations"). The DUPD Defendants do not address this cause of action at all in this brief.[14]

**B.**      **The Amended Complaint States Actionable Claims For Conspiracy In Violation Of 42 U.S.C. § 1985.**

The Sixteenth Cause of Action alleges Four Conspiracies in violation of § 1985(2) and (3). The DUPD Defendants do not address this claim at all in this brief.[15]

To state a cause of action under 42 U.S.C. § 1985(2), a plaintiff must allege that "two or more persons conspire[d] for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws...." 42 U.S.C. § 1985(2).

---

[14] *See* n. 4, *supra.*

[15] *See* n. 4, *supra.*

The Sixteenth Cause of Action alleges that Addison, Michael, Nifong, Gottlieb, Himan, Wilson, Steel, the DNASI Defendants, the Crisis Management Team Defendants, the SANE Defendants, Graves, Dean, the Duke Police Supervising Defendants, and Duke University conspired to impede or obstruct the due course of justice in North Carolina generally with the intent to deny Plaintiffs the equal protection of the laws in violation of 1985(2). AC ¶¶ 1156-59. Defendants, motivated by race-based invidiously discriminatory motives, violated this statute by conspiring to deprive Plaintiffs of their federally secured rights as alleged elsewhere in the First through Eleventh Causes of Action and by fomenting race-based animus within the Plaintiffs' community. *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Additionally, the Sixteenth Cause of Action alleges that Nifong, Gottlieb, Himan, Clayton, Addison, Michael, the Durham Police Supervising Defendants, the SANE Defendants, the City of Durham, and Duke University conspired to impede or obstruct the due course of justice in North Carolina generally with the intent to intimidate witnesses, including the Plaintiffs, elicit false statements and testimony from Plaintiffs and other witnesses, and to prevent them from testifying truthfully to matters with the general objective of securing Plaintiffs' convictions as principals or accessories in state court for crimes they knew did not happen. AC ¶¶ 1161.

To establish a violation of 42 U.S.C. § 1985(3), a plaintiff must allege that "two or more persons in any State or Territory conspire…(1) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (2) or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws." 42 U.S.C. § 1985(3).

The Sixteenth Cause of Action alleges that, in violation of 42 U.S.C. § 1985(3) (cl.2), Nifong, Gottleib, Himan, Clayton, Addison, Michael, the Durham Police Supervising Defendants, Steel, the Crisis Management Team Defendants, the Duke Police Supervising Defendants, the SANE Defendants, the City of Durham and Duke University, conspired with others to deprive Plaintiffs of their federal rights with the purpose of targeting "temporary residents" for disparate treatment and abusive enforcement of the criminal laws depriving Plaintiffs of the equal privileges or immunities of national citizenship under the laws thereby violating this statute by conspiring to deprive Plaintiffs of their federally secured rights. AC ¶¶ 1156-1169; *Phillips v. Mabe*, 367 F. Supp. 2d 861, 873 (M.D.N.C. 2005).  Plaintiffs also allege in the Sixteenth Cause of Action an independent §1985(3) Claim arising out of animus directed to Plaintiffs status as "temporary residents" and, on that basis, subject them to discriminatory and abusive police tactics, thereby imposing "disabilities of state citizenship" in deprivation of their equal protection and immunities under laws. AC ¶ 1164-65.

## 1. The Amended Complaint States A Violation Of 42 U.S.C. §1986.

Plaintiffs' Seventeenth Cause of Action (the "Section 1986 Claims") alleges that the DUPD Defendants violated 42 U.S.C. § 1986 by refusing or neglecting to prevent or aid in the preventing of the § 1985 Conspiracies (alleged in the Sixteenth Cause of Action), despite having the power and knowledge to do so. The DUPD Defendants do not address this claim at all in this brief.[16]  The Plaintiffs have stated actionable Section 1986 Claims against the DUPD Defendants, having alleged the predicate § 1985 Conspiracies

---

[16] *See* n. 4, *supra*.

in the Sixteenth Cause of Action, as well as the § 1985 elements and facts from with they may be inferred.  AC ¶¶ 1170-88.

## V.    THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS UNDER STATE LAW AGAINST THE DUPD DEFENDANTS.

The remaining causes of action asserted against the DUPD Defendants are alleged under North Carolina law.  They include claims for Common Law Obstruction of Justice and Conspiracy, Common Law Abuse of Process and Conspiracy, Intentional Infliction of Emotional Distress and Conspiracy, Breach of Contract, Invasion of Privacy and Conspiracy, Violation of the Financial Privacy Act and Conspiracy, Breach of Fiduciary Duty, Aiding or Abetting the Breach of Fiduciary Duties, Fraud (Actual and Constructive), Negligence, Negligent Supervision, Retention, Training, and Discipline, Negligent Infliction of Emotional Distress, and Negligent Entrustment.

### A.    The Amended Complaint States A Civil Conspiracy Claim Against The DUPD Defendants.

The Twenty-Second Cause of Action states an actionable civil conspiracy claim against the DUPD Defendants.  A cause of action for civil conspiracy arises whenever an injury is caused by "a wrongful act … committed by one or more of the conspirators pursuant to the common scheme and in furtherance of the objective." *State ex rel. Cooper v. Ridgeway Brands Mfg.*,--- S.E.2d ----, 2008 WL 3915186 (N.C., Aug. 27, 2008) (quoting  *Henry v. Deen,* 310 S.E.2d 326, 334 (1984)).  To state a claim for civil conspiracy a plaintiff must allege (1) a conspiracy, (2) wrongful acts done by certain of the alleged conspirators in furtherance of that conspiracy, and (3) injury as a result of that conspiracy.  *Id.*; *see also Muse v. Morrison,* 66 S.E.2d at 785 (1951)).  A conspiracy, under North Carolina law, is an agreement, expressed or implied, between two or more persons to commit an unlawful act or to do a lawful act in an unlawful manner.  *See*, *Evans v. Star GMC Sales & Service, Inc.*, 268 N.C. 544, 546, 151 S.E.2d 69, 71 (N.C.

1966).  Where a conspiracy is established, all conspirators are jointly and severally liable for acts done in furtherance of the agreement by any one of them. *Id.*

The Amended Complaint alleges sufficient facts showing (1) the existence of the conspiracy to conceal the fact that Mangum's allegations had been determined to be false in which the DUPD Defendants participated, (2) numerous acts of the DUPD Defendants' co-conspirators in furtherance of the conspiracy, which (3) caused injury to Plaintiffs, A.C. ¶¶ 1089-1211; *1203-1212*; 1213-1222; 1229-1260 Taken together, these allegations are sufficient to withstand a motion to dismiss.  The DUPD Defendants contend that Plaintiffs will not be able make good the allegations of the conspiracies alleged.  However, that contention "is of no concern at this stage." *Ridgeway,* at *11 (citing *Muse*, 66 S.E.2d at 785)).  Plaintiffs' allegations entitle them to an opportunity to do so—their day in court.  Therefore, the DUPD Defendants' Motion to Dismiss Plaintiffs' civil conspiracy claims must be denied.

## B. The Amended Complaint States An Invasion Of Privacy Claim Against The DUPD Defendants.

The Twenty-Second Cause of Action states an actionable claim for Invasion of Privacy.  In North Carolina, "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Smith v. Jack Eckerd Corp.*, 400 S.E.2d 99, 100 (N.C. Ct. App. 1991) (quoting Restatement (Second) of Torts § 652B (1977)); *see also Miller v. Brooks,* 472 S.E.2d 350, 354 (N.C. Ct. App. 1996) (quoting *Smith*).  "Generally, there must be a physical or sensory intrusion or an unauthorized prying into confidential personal records to support a claim for invasion of privacy by intrusion." *Broughton v. McClatchy Newspapers, Inc.*, 588 S.E.2d 20, 27 (N.C. Ct. App. 2003) (quoting *Burgess v. Busby*, 544 S.E.2d 4 (N.C. Ct. App. 2001), *reh'g denied*, 559 S.E.2d 554 (N.C. Ct. App. 2001));

*see also Toomer v. Garrett,* 574 S.E.2d 76, 90 (N.C. Ct. App. 2002), *rev. denied, appeal dismissed*, 579 S.E.2d 576 (2003). Invasion of privacy is a tort that "does not depend upon any publicity given a plaintiff or his affairs but generally consists of an intentional physical or sensory interference with, or prying into, a person's solitude or seclusion or his private affairs." *Broughton,* 588 S.E.2d at 27 (alteration in original) (quoting *Hall v. Post,* 355 S.E.2d 819, 823 (N.C. Ct. App. 1987), *rev. on other grounds*, 372 S.E.2d 711 (1988)). Actionable intrusions include "physically invading a person's home or other private place, eavesdropping by wiretapping or microphones, peering through windows, persistent telephoning, unauthorized prying into a bank account, and opening personal mail of another." *Burgess*, 544 S.E.2d at 11 (internal quotations omitted).

Defendants first allege that no invasion of privacy took place because the allegations of specific privacies invaded "do not involve activities for which Plaintiffs had a reasonable expectation of privacy," and because some of the invasions were committed by people who are not part of Duke Police Defendants. DUPD Br. §V.B. Both of these arguments fail because Plaintiffs can reasonably expect that personal information, such as financial information and educational records, will be free of unfounded or unreasonable seizure. The assertion that "some of" the deprivations of Plaintiffs' right to privacy was committed by others contradicts the allegations, which Defendants may not do at this stage. If they could, the assertion does not in any way lessen Defendants' culpability who are guilty of more invasive offenses, and had the power to control others' misconduct.

Defendants then contend that Plaintiffs did not allege that any Duke Defendant actually entered a dorm room, qualifying that statement by saying that even if a Duke Defendant did intrude on a dormitory, the intrusion was justifiable because officers were in possession of a search warrant. DUPD Br. §V.B. However, this argument disregards

Plaintiffs' assertion in the AC that the McFadyen Warrant was obtained illegally, by way of misleading a judicial official and fabricating probable cause. Thus, this argument must be disregarded because it ignores facts alleged in the Amended Complaint (facts which must be considered to be true for the purposes of a Rule 12(b)(6) motion). Because the McFayden Warrant itself is an illegal document, Duke Police Defendants had no legal right to be present in Plaintiffs' dorm rooms.

As to the email that served as the basis for this illegal search warrant, Defendants contend that since the email was received by intended recipients, there was no expectation of privacy there and further that there is no factual allegation that DUPD played a role in the obtaining of the email. DUPD Br. §V.B. n.16. Defendants qualify DUPD's presence at the searches as "outside of the rooms" searched or just "escorting" Durham Police, emphasizing that no Duke employee entered into any alleged private space. Defendants try to bolster this position by pointing to examples of abuses by DUPD that involved private spaces searched that did not belong to the Plaintiffs'. DUPD Br. §V.B. n.17. As to public harassments and threats on campus, DUPD defines the campus and other listed locations as not "private." *Id.* Overall, Defendants contend that Plaintiffs' allege no specific intrusion into a private place of the Plaintiffs'. These arguments all fail because they misstate, misrepresent, or misunderstand Plaintiffs' allegations; therefore, Plaintiffs' claim for invasion of privacy cannot be dismissed.

## C. The Amended Complaint States A Breach Of Fiduciary Duty Claim Against The University Defendants.

The Twenty-Third Cause of Action states an actionable claim for Breach of Fiduciary Duty. To state a claim for breach of fiduciary duty, a plaintiff must allege that a fiduciary relationship existed and that the fiduciary failed to " 'act in good faith and with due regard to [plaintiff's] interests.' " *White v. Consol. Planning, Inc.*, 603 S.E.2d 147 (N.C. Ct. App. 2004) (quoting *Vail v. Vail*, 63 S.E.2d 202, 206 (N.C. 1951)), *see also*

*Toomer v. Branch Banking and Trust Co*, 614 S.E.2d 328, 337 (N.C. Ct. App. 2005) (quoting *White*).

Duke University has a fiduciary relationship with all students and faculty who maintain Duke Cards. Plaintiffs, like many others, put money into an account linked to their cards, which could then be used to purchase items, and a transaction record was maintained by the Duke Card Office that reflected all activity on the Card. *See* AC ¶¶ 853-856, 1235-1239. Duke University gave the transaction records from Plaintiffs' Cards to law enforcement agencies without a subpoena or any request from the agency. AC ¶¶ 853, 857, 1242-6. Additionally, Duke and the law enforcement agencies took vigorous steps to hide the fact that the records were submitted without a court order and then relied on by the police in their attempt to put Plaintiffs in jeopardy of being subjected to a wrongful prosecution when they filed notice and then conducted a hearing to subpoena documents already in their possession; they did this without once admitting that Duke officials had previously volunteered and given the records to the Durham Police. *See generally,* AC § XXXVIII.

The University defendants are incorrect when they contend that Plaintiffs have failed to allege a fiduciary relationship between themselves and the Duke University. They offer two reasons: (1) "university educators and administrators cannot satisfy the duty of undivided loyalty because they always remain charged with carrying out the "rules and regulations" of the university, and (2) courts fiduciary relationships have traditionally been confined to the legal and business contexts…, often *in which one person entrusts money to another*." Duke Univ. Br. at 45. (citations omitted). The Duke Card is a financial account. Plaintiffs entrusted money to Duke University when they each established a Duke Card Account. Duke retained the money and maintained information relating to that financial account. Plaintiffs made various transactions with

27

the Duke Card, with on campus merchants and off. Duke is, quite literally, "a bank" in this relationship with the Plaintiffs. That is the "common law" basis for holding Duke University liable as a fiduciary in breach of its obligations to Plaintiffs.

The statutory basis of their duty, and the basis of an independent cause of action in this matter is the state and federal Financial Privacy Acts. The state statute is codified in Chapter 53B. First it declares the policy of the State of North Carolina to be "that financial records should be treated as confidential and that no financial institution may provide to any government authority and no government authority may have access to any financial records except in accordance with the provisions of this Chapter." N.C.G.S.A. § 53B-3.

§ 53B-4 provides that "no government authority may have access to a customer's financial record held by a financial institution unless the financial record is described with reasonable specificity and access is sought pursuant to any of the following: (1) Customer authorization that meets the requirements of the Right to Financial Privacy Act § 1104, 12 U.S.C. § 3404, …; (3) Search warrant as provided in Article 11 of Chapter 15A of the General Statutes; … [or] (11) Other court order or administrative or judicial subpoena authorized by law if the requirements of G.S. 53B-5 are met." N.C.G.S.A. § 53B-4. The Duke Police are "government authorities." N.C.G.S.A. § 53B-2(4)

Duke Card Account Reports are "financial records." N.C.G.S.A. § 53B-2 The Plaintiffs "financial records" were therefore were unlawfully mined by and produced to the Duke and Durham Police after the Police had reached what Himan called "a stalemate." The purpose of the records was to break the stalemate by obtaining reliable information about Plaintiffs whereabouts at the relevant time so Defendants could know who Mangum could and could not "pick" as her "attackers." Additionally, Duke University's Duke Card office was on notice that it functions as a bank, in that it accepts

money into accounts and then allows the student to purchase goods. North Carolina Attorney General Advisory Opinion 69.[1]  By breaching a statute and then attempting to fix and cover up that breach, Duke breached its fiduciary duty to its client/students.

Defendants argue that "[t]here is no such thing as a "Duke Transaction Card Agreement" to serve as a basis for a contract," *Id.,* yet they assert that "Terms and Conditions" of a non-contract they attach to their response "authorizes disclosure of this information at the request of law enforcement." Duke Br. n.30.  For this self-defeating argument, Duke relies on documents outside the Amended Complaint that are not appropriate for conclusive judicial notice and that impermissibly contradict Plaintiffs' allegations. Plaintiffs therefore move to strike the attachment from consideration in this motion. Furthermore, Defendants do not allege, nor could they, that Plaintiffs (1) signed such a waiver effectively waiving their rights under federal and state law in a manner this Court could enforce or (2) that Plaintiffs did not effectively revoke any such waiver when they demanded Duke not release their pictures, home addresses, and any other personally identifying information about them prior to the unlawful disclosure.  Finally, the Duke University Defendants have made no arguments with respect to the cause of action that arises out of the federal and state financial privacy acts.  Here, because the "government authority" appears only to be state authorities, the statute violated is the North Carolina Financial Privacy Act, and Plaintiffs have stated a cause of action for damages pursuant to N.C.G.S.A § 53B-10, for: (1) one thousand dollars ($1,000); (2) any actual damages sustained by the customer as a result of the disclosure; and (3) such

---

[1] Authority of East Carolina University to Offer a Debit Card to its Student Body and to Permit Private Business Access to the Card,  available at http://www.ncdoj.com/DocumentStreamerClient?directory=AGOpinions&file=69.pdf

punitive damages as the court may allow, where the violation is found to have been willful or intentional. *Id.*

Because the City's agents also violated the same statute through the same conduct, Plaintiffs have also stated a cause of action against the City, for "participat[ing] in or induc[ing] or solicit[ing] a violation of this Chapter shall be liable to the customer to whom the violation relates in the amount set out in subsection (a) above.

### D.   The Amended Complaint States An Actionable Fraud Claim Against The DUPD Defendants.

#### 1.   Actual Fraud.

The Twenty-Fourth Cause of Action states an actionable claim for Fraud. "Fraud may be actual or constructive." *Forbes v. Neal*, 649 S.E.2d 382, 387 (N.C. 2007) (citing *Watts v. Cumberland County Hosp. Sys., Inc.*, 343 S.E.2d 879, 883 (N.C. 1986)). To state a claim for Actual Fraud, Plaintiff must allege "(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Id.* (quoting *Ragsdale v. Kennedy*, 209 S.E.2d 494, 500 (N.C. 1974)). Plaintiffs have alleged that the University's issuance of letters with notices of a subpoena for the financial information contained in the Duke Card Accounts and associated materials, and that, when they issued the notice, the University had already turned over the statutorily protected material to the police months earlier. The University still did not advise Plaintiffs that the information from their financial records had been unlawfully released when Plaintiffs moved to quash the subpoena. These were concealments of material facts – omissions made in the face of a duty. The Duty is imposed by statute (N.C.G.S. § 53B), and done with the intent to deceive; which did deceive; causing financial loss.

## 2. Plaintiffs Have Met The Requirements Of Rule 9(B).

"In pleading a claim of fraud, 'the circumstances constituting fraud ... shall be stated with particularity.' " *S.N.R. Mgmt. Corp. v. Danube Partners 141 LLC*, 659 S.E.2d 442, 449 (N.C. Ct. App. 2008) (quoting N.C. Gen. Stat. § 1A-1, Rule 9(b) (2004)); *see also Breeden v. Richmond Cmty. College*, 171 F.R.D. 189, 195 (M.D.N.C. 1997) (quoting Rule 9(b)). Further, "in pleading actual fraud the particularity requirement is met by alleging *time*, *place* and *content of the fraudulent representation*, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations." *S.N.R. Mgmt. Corp.*, 659 S.E.2d at 449 (emphasis in original) (quoting *Terry v. Terry*, 273 S.E.2d 674, 678 (N.C. 1981)); *see also Breeden*, 171 F.R.D. at 195 (citing Rule 9(b) pleading requirements of time, place, and contents).

"In North Carolina, the general rule is that: [s]ilence, in order to be an actionable fraud, must relate to a material matter known to the party and which it is his legal duty to communicate to the other ... party, whether the duty arises from a relation of trust, from confidence, inequality of condition and knowledge, or other attendant circumstances.... [T]he silence must, under the conditions existing, amount to fraud, because it amounts to an affirmation that a state of things exists which does not, and the uninformed party is deprived to the same extent that he would have been by positive assertion." *Breeden*, 171 F.R.D. at 194 (citing *Setzer v. Old Republic Life Ins.*, 126 S.E.2d 135, 137 (N.C. 1962)). The silence in failing to disclose that the subpoenaed material was already given to Police is just that kind of silence. *See, id.*

## 3. Constructive Fraud.

The Amended Complaint states a claim for constructive fraud. To show constructive fraud, a plaintiff must allege facts and circumstances that created a relationship of trust and confidence "that led up to and surrounded the consummation of

the transaction in which defendant allegedly took advantage of this position of trust to the hurt of plaintiff." *Watts v. Cumberland Hosp. Sys., Inc.*, 345 S.E.2d 201, 203 (N.C. 1986) (citing *Watts v. Hosp.,* 343 S.E.2d 879, 884 (N.C. 1986)) (citing 37 AM. JUR. 2D *Fraud and Deceit* § 442, at 602 (1968)). When a fiduciary relationship exists between the parties to a transaction, a presumption of fraud arises when the superior party obtains a possible benefit, but this presumption disappears if that party can show, for instance, that the other party acted on independent advice." *Id.* The superior party may rebut this presumption by showing "that the confidence reposed in him was not abused, but that the other party acted on independent advice." *Id.* (quoting AM. JUR. 2D *Fraud and Deceit* § 442). If rebutted, the presumption "evaporates" and the plaintiff then bears the burden of producing actual evidence of fraud. *Id.* The same facts identified above constitute constructive fraud. The required showing of a fiduciary relationship is met on these facts – even as stated by opposing counsel. Duke University acted as a "bank" under North Carolina law when it took Plaintiffs' money and retained it on deposit for use via its Duke Card in making purchases on campus and off.

### E. The Amended Complaint States A Negligence Claim Against The DUPD Defendants.

The Twenty-Ninth and Thirty-Seventh Causes of Action state actionable negligence claims against the DUPD Defendants. To state a negligence claim, a plaintiff must allege that (1) defendant owed plaintiff a duty of care, (2) the defendant breached that duty, and (3) defendant's breach was the actual and proximate cause of plaintiff's injury. *Cameron v. Merisel Props*, Inc., 652 S.E.2d 660, 664 (N.C. Ct. App. 2007) (quoting *Thomas v. Weddle*, 605 S.E.2d 244 (N.C. Ct. App. 2004)). The Amended Complaint states an actionable negligence claim against the DUPD Defendants. A.C. 1291 – 1300.

The DUPD Defendants argue that the Plaintiffs' negligence claims should be dismissed because, they contend, they owed Plaintiffs no "duty." DUPD Br. at V.A.(1). Defendants put forth the "public duty doctrine" as a shield from liability, using a string of NC cases to support the proposition that police investigations are at the core of this doctrine. *Id.* This argument misstates the public duty doctrine.

The overwhelming rule is that a municipality and its agents act for the benefit of the public; therefore, there is no liability for the failure to furnish police protection to specific individuals. *Coleman v. Cooper,* 366 S.E.2d 2, 6 (N.C. App, 1987),*disc. rev. denied,* 371 S.E.2d 275 (N.C. 1988). "This rule recognizes the limited resources of law enforcement and refuses to judicially impose an overwhelming* burden of liability for failure to prevent every criminal act." *Braswell v. Braswell* 410 S.E.2d 897, 901 (1991). In general there are two exceptions to this doctrine "(1) where there is a special relationship between the injured party and the police, for example, a state's witness or informant who has aided law enforcement officers; and (2) when a municipality, through its police officers, creates a special duty by promising protection to an individual, the protection is not forthcoming, and the individual's reliance on the promise of protection is causally related to the injury suffered." *Braswell* 401 S.E. 2d at902.

In 2007, the State Supreme Court limited the public duty doctrine's applicability in police cases by stating "the purpose of the doctrine, as noted in *Braswell*, is to respect the limited resources of law enforcement agencies by relieving them of liability for **failure to prevent every criminal act**." (emphasis added) *Multpl. Claimants v. N. C. Dept. of Health and Human Sevcs.*, 646 S.E. 2d 356, 358 (2007). ; *Lumsden v. U.S.* 555 F.Supp.2d 580, 594 (E.D.N.C.,2008) ("The North Carolina Supreme Court recently explained that: [t]he public duty doctrine, which this Court first adopted in *Braswell v. Braswell,* 330 N.C. 363, 410 S.E.2d 897 (1991), provides that a municipality and its

agents act for the benefit of the public, and therefore, there is no liability for the failure to furnish police protection to specific individuals."(internal citation omitted)).

Plaintiffs are not contending that the City failed to protect them from crime; Plaintiffs allege that the negligent actions of city actors while, investigating an alleged crime that they knew to be false, caused them foreseeable harm. Therefore, the doctrine does not apply to Plaintiffs' claims. Because Plaintiffs have stated a claim for negligence and the public duty doctrine does not apply, North Carolina's common law of negligence must be used to evaluate the claims.

The DUPD's remaining arguments for dismissal of Plaintiffs' state law claims fail:

The DUPD Defendants are incorrect when they argue that Plaintiffs cannot establish proximate cause on the grounds that Nifong's misconduct supersedes their own. First, the AC alleges Nifong is principally their *co-conspirator*, and, as such, Duke University is jointly and severally liable with Nifong and others for all of the harm done by Nifong in furtherance of the conspiracies alleged. This is particularly true in light of the overarching Conspiracy to Convict alleged in the Fifteenth Cause of Action. Negligence theory will not save Duke University from liability for harms caused by their co-conspirators. The argument simply ignores the doctrine of conspiracy, alleged in the Fifteenth Cause of Action (and several of the state-law causes of action), which makes one co-conspirator liable for the acts of the others. *See Hafner v. Brown*, 983 F.2d 570, 577 & n.6 (4th Cir. 1992). Such an argument again ignores the settled proposition that § 1983 incorporates the common law of torts, holding defendants liable for "the natural consequences of [their] actions." *Wilmore*, 407 F.3d at 283 (internal quotation marks omitted). Second, at this juncture, proximate cause is far too fact-intensive an inquiry to dispose of upon the pleadings.

DUPD recasts the allegations when it argues that DUPD could not have stopped the Durham investigation from going forward, because Plaintiffs don't allege that Durham had no authority. The jurisdiction of the Duke Police Department is invoked in the AC to establish that the Duke Police Department had the statutory authority. The President of the University found the fact important enough to affirmatively attempt to conceal by making speeches in which he declared that Duke University has no power to conduct investigations, when, in fact, has the power to do so, the fully staffed police department to do so, and, it has the statutory jurisdiction to do so. The fact of jurisdiction is also material to the Plaintiffs' Eleventh Cause of Action, which seeks to hold the University liable for § 1983 Officer Bystander Liability.

The University's argument premised in their contention that their officers were uninvolved witnesses fails because its premise is contradicted by the clear allegations of the AC.

North Carolina's common law of ordinary negligence "'imposes upon every person *who enters upon an active course of conduct the positive duty to exercise ordinary care to protect others from harm*, and calls a violation of that duty negligence.'" *Peal v. Smith*, 444 S.E.2d 673, 677 (N.C. Ct. App. 1994) (emphasis in the original) (quoting *Hart v. Ivey*, 420 S.E.2d 174, 178 (N.C. 1992)). "The duty to protect others from harm arises whenever one person is by circumstances placed in such a position towards another that anyone of ordinary sense who thinks will at once recognize that if he does not use ordinary care and skill in his own conduct with regard to those circumstances, he will cause danger of injury to the person or property of the other." *Lumsden v. U.S.*, 555 F.Supp.2d 580, 589 (E.D.N.C. May 7, 2008) (quoting *Quail Hollow E. Condo. Ass'n v. Donald J. Scholz Co.*, 268 S.E.2d 12, 15 (N.C. Ct. App. 1980)). "Every man is in general bound to use care and skill in his conduct wherever the reasonably prudent person

in his shoes would recognize unreasonable risk to others from failure to use such care."
*Id.* (quoting *Estate of Mullis v. Monroe Oil Co.*, 505 S.E.2d 131, 137 (N.C. 1998)). Thus,
a duty of care arises from any conduct where the risk of harm to another is both
unreasonable and foreseeable. *Mullis*, 505 S.E.2d at 137. Therefore, it is every person's
duty is to avoid foreseeable, unreasonable risk of harm to others. *Id.* (quoting Justice
Cardozo's "classic analysis of duty" in *Palsgraf v. Long Island R. Co.*, 162 N.E. 99 (N.Y.
1928) ("*The risk reasonably to be perceived defines the duty to be obeyed… .*")
(emphasis in original)).

The test for whether Plaintiffs have stated a claim for negligence "is no more than
whether [defendant(s) / or it agents], in undertaking to perform an active course of
conduct, exercised such ordinary care as is required of a reasonable, prudent person under
the circumstances." *Lumsden*, 555 F.Supp.2d at 589 (alteration not in original). Taking
as true the allegations contained in the Complaint, these defendants owed a duty of
ordinary care to plaintiffs. The Amended Complaint alleges the following negligent
conduct of the DUPD Defendants:

- DUPD did not possess the degree of professional learning skill, and ability which
  other law enforcement officers similarly situated ordinarily possess;

- DUPD negligently failed to insist that the command staff implement adequate and
  immediate tests and investigative procedures in order to establish the truth or
  falsity of the accuser's account;

- Duke Police Department Officers negligently failed to observe the conduct of the
  investigation, the evidence obtained in the investigation, and convey to Command
  Staff and Duke Administrators the quickly accumulating and overwhelming
  evidence of innocence or the conspiracy to obstruct justice that was being carried

out in plain view in an investigation within Duke Police Department's primary jurisdiction;

- Duke Police Department Officers negligently failed to insist or demand that Duke Police Department immediately intervene in the investigation or attend to the open misconduct that was rampant in the investigation from its outset;

- Duke Police Department Officers negligently failed to notify a Duke Police Supervising Officer of changes or developments in the investigation; Duke Police Officers negligently failed to use their own judgment in getting Duke Police Supervising Defendants and Duke Officials to examine the evidence of the Students' innocence or the evidence of the Durham Police and prosecutor's misconduct in the investigation; and

- Duke Police Department Officers negligently failed or refused offers made by the Students and their agents to provide them with evidence that established that Mangum's account (every version of it) was a fraud.  AC ¶ 1299 A-G.

These allegations are more than sufficient to state actionable negligence claims against the DUPD Defendants; as such, their motion to dismiss Plaintiffs' negligence claims must be denied.

### F. The Amended Complaint States A Negligent Supervision, Retention, Training, And Discipline Claim Against The DUPD Defendants.

The Thirty-Eighth Cause of Action states an actionable claim for Negligent Supervision, Retention, Training, and Discipline ("Negligent Supervision") Claim against Duke University.  North Carolina recognizes an employer's negligent supervision and retention of an employee as an independent tort that renders employers liable to third parties injured as a result of their employees' incompetence. *See Smith v. Privette*, 495 S.E.2d 395, 398 (N.C. Ct. App. 1998) (citing *Braswell v. Braswell*, 410 S.E.2d 897, 903

(N.C. 1991)).  To state a claim for negligent supervision, a plaintiff must allege that: (1) an incompetent employee committed a tortious act resulting in injury to the plaintiff, and that (2) prior to the tortious act, the employer knew or had reason to know of the employee's incompetence.  *Privette*, 495 S.E.2d at 398 (citing *Graham v. Hardee's Food Sys., Inc.*, 465 S.E.2d 558, 560 (N.C. Ct. App. 1996)).

DUPD Defendants are reaching when they claim that the Amended Complaint "is "devoid of any allegations that Duke University knew or had reason to know of any Duke University Police officer's incompetency."  DUPD Br. at 17.  In fact, the first 79 pages of the Amended Complaint are devoted to the recent history of abuses of Duke students carried out in plain view of Duke University's policymakers.  One example:

> The police violence at the Belmont  raid was unprovoked … "stand-by" officers refused to intervene to prevent the violations or the harm to Duke students that flowed from them.  A.C. ¶ 142.  Duke Police Supervising Defendants . . . did not take remedial action in response to the misconduct known to them.  A.C. ¶ 143.

The purpose of the first third of the Complaint is to demonstrate clearly, for other purposes, that, in fact, what occurred in the Plaintiffs' thirteen month ordeal Duke's was no accident.  It was the result of months and years of policymakers' deliberate indifference to constitutional violations carried out in plain view.  See, generally, A.C. ¶ 1- 500.  They policymakers themselves proved their own knowledge by making public statements supportive of the Durham Police Departments' warrantless raids.  The A.C. is filled with allegations that would put any reasonable policymaker on notice that the DUPD Senior chain of command was incompetent.  In the alternative, they were perfectly competent, and following directives from the President or the Chairman.

The Duke Police were involved in the planning of the warrantless raids of private homes owned by Duke students.  Duke Police officers attended these warrantless raids of student homes within their police jurisdiction as—in their own words—standby officers.

A.C. ¶ 142-145.  They did nothing to stop the flagrant constitutional violations of students in their presence.  To a reasonable policymaking official, it would be plainly obvious that standing-by while citizens' homes are raided without a warrant or exigency and hauled off to jail is incompetent.  The Amended Complaint is not, therefore, "devoid of any allegations that Duke University knew or had reason to know of any Duke University Police officer's incompetency."

Nothing in the cases cited by the Defendants compels their conclusion that only an employer may be liable for negligently supervising and employee; and there is positive cases law to controvert the proposition.  *Gamble v. Barnette*, No. 06-0104, 2007 U.S. Dist. LEXIS 48815, at *12 (W.D.N.C.  July 5, 2007) (negligent supervision claim requires "the defendant to be an employer *or have supervisory duties* over other employees").  The essential element in this regard is different:  the defendant must be "an employer *or have supervisory duties over other employees*." [17]Plaintiffs have not alleged that Officer Barnette was an employer or had supervisory duties over other employees,

Defendants are also incorrect when they assert that there is no predicate "Duke Police Department *employee*" negligence to support Plaintiffs' claim against "the *employer*, Duke University," DUPD Br. at 17, because, as Plaintiffs establish herein, Duke Police were negligent in their failure to intervene to prevent or aid in preventing the deprivation of Plaintiffs' constitutional rights when those deprivations were occurring or

---

[17] *Gamble v. Barnette*  2007 WL 2003418, 5 (W.D.N.C.) (W.D.N.C.,2007) (citing *Floyd v. McGill*, 575 S.E.2d 789, 793-794 (2003) (recognizing claim for negligent training); *Braswell v. Braswell*, 410 S.E.2d 897, 903 (1991); *Medlin v. Bass*, 327 N.C. 587, 590-591, 398 S.E.2d 460, 462 (1990) (recognizing claim for negligent retention and supervision).

about to occur in their presence or within their knowledge. *See Barbier v. Durham County Bd. of Educ.*, 225 F. Supp. 2d 617, 630 n.11 (M.D.N.C. 2002) (rejecting argument that violation of federal statute "cannot serve as the underlying tort for a negligent supervision/retention claim").

### G. The Amended Complaint States A Negligent Infliction Of Emotional Distress Claim Against The DUPD Defendants.

The Thirty-Ninth Cause of Action states an actionable claim for Negligent Infliction of Emotional Distress ("NIED") against the DUPD Defendants.[18] The Plaintiffs allege that the Day Chain of Command, Officers Mazurek, Falcon, Day, and the Duke Police Supervising Defendants engaged in conduct that subjected Plaintiffs to threats and the fear of prosecution and conviction for rape, sexual offense, and kidnapping, *Id.* ¶1368; subjected them to public condemnation and infamy, and force them to endure the extortionate pressures of public outrage directed at them for crimes the defendants knew never happened; their conduct violated Duke Police General Orders, Subpoenas, accreditation rules for municipal law enforcement entities, Duke University policies and protocols, among other professional guidelines, *Id.* ¶ 1369; and, at the time these defendants engaged in the conduct at issue is reasonably foreseeable that plaintiff suffered emotional and psychological harm, *Id.* ¶1371.

Defendants unnecessarily ascribe intentions of others onto their own clients by claiming that Plaintiffs' have alleged only "intentional conduct" in this cause of action.

---

[18] The elements of a ("NIED") claim are: (1) negligently conduct of the defendant, (2) under circumstances in which it was reasonably foreseeable that the conduct would cause the plaintiff severe emotional distress; and (3) the conduct caused the plaintiff severe emotional distress. *Johnson v. Ruark Obstetrics & Gynecology Assoc.*, 395 S.E.2d 85, *reh. den.*, 399 S.E.2d 133 (1990).

DUPD Br. at 19.  The Amended Complaint makes it plain that these statements were produced at the direction of the Chairman or pursuant to his Directive.  A.C. ¶¶ 445-455..  Moreover, "the general rule [is] that a plaintiff may plead alternative theories of recovery based on the same conduct or transaction." *Stanley v. Moore*, 454 S.E.2d 225, 228-29 (N.C. 1995); *Norman v. Nash Johnson & Sons' Farms, Inc.*, 537 S.E.2d 248, 265 (N.C. Ct. App. 2000) (same); *see also James River Equip., Inc. v. Mecklenburg Utils., Inc.*, 634 S.E.2d 557, 560 (N.C. Ct. App. 2006) ("It is well-established that liberal pleading rules permit pleading in the alternative, and that theories may be pursued in the complaint."

Next, Defendants argue that plaintiffs have failed to allege "severe" emotional distress, and then mislead when they say that plaintiffs only allege to have "suffered from diagnosable emotional and mental conditions."  DUPD Br. at 20.  For this, Defendants cite AC ¶ 1371.  There are no ellipses, and, yet, there is more.  The allegation states:  "As a direct and foreseeable consequence of the foregoing conduct, Plaintiffs have suffered and continue to suffer from diagnosable emotional and mental conditions *causing disabling emotional mental and physical harm*."  AC ¶ 1371 (emphasis not in original).  It is a significant omission, really.  "Severe emotional distress" is a label, or as the Defendants might call it, a *conclusory* allegation.  We have come full circle in this briefing; Plaintiffs insist that Defendants seek dismissal for failing to make a conclusory allegation.

What the AC alleges is more than that, and more in line with what the element requires a plaintiff to show.  The North Carolina courts have set the bar for this element at the point where emotional harm is significant enough that it may be "generally recognized and diagnosed by a professional trained to do so."  *Sorrells v. M.Y.B.*

*Hospitality Ventures*, 435 S.E.2d 320, 322 (1993); *Johnson*, 395 S.E.2d 85.  That is what Plaintiffs allege. [19]

### H. The Amended Complaint States A Negligent Entrustment Claim Against The DUPD Defendants.

The Fortieth Cause of Action states an actionable claim for Negligent Entrustment. Defendants concede the plaintiffs have alleged all of the elements, save one.  Defendants allege that the instrumentality of harm that plaintiffs alleged in this 40th cause of action does not qualify under the common law rules applicable to the tort.  DUPD Br. 20. Defendants are incorrect when they claim that "in all reported North Carolina cases the court to recognize such a cause of action for the entrustment other tangible chattel only specifically, either an automobile or a firearm; but are accurate in stating that "North Carolina courts have not recognized a claim for negligent entrustment based upon the 'entrustment of … a criminal investigation."  DUPD Br. 20.  Also, Defendants argue that the object of entrustment must be tangible (such as an automobile or a firearm) and not a "responsibility."  *Id.*

Thus, negligent entrustment most commonly is "established when the owner of an automobile entrusts its operation to a person whom he knows, or by the exercise of due care should have known, to be an incompetent or reckless driver ... who is likely to cause injury to others in its use...."*Tart v. Martin,* 540 S.E.2d 332, 334 (2000) (quoting

---

[19] Plaintiffs did not deliberately omit the word "severe" except insofar as it appears redundant to the specifics the law requires of this particular allegation, unnecessary in light of what the plaintiffs have alleged elsewhere, and "conclusory."  Nevertheless if the Court requires the word "severe" be pled in addition to "disabling emotional, mental and physical harm," plaintiffs request leave to amend the first amended complaint for that purpose.

*Swicegood v.Cooper,* 459 S.E.2d 206, 207(1995)). "Based on his own negligence, the owner is 'liable for any resulting injury or damage proximately caused by the borrower's negligence.'" *Id.* (citation omitted). *Tart* makes clear that, in the vehicle cases, the entrustor /defendant must have been the owner of the vehicle. *Id.* at 333; *see also Hill v. West,* 657 S.E.2d 694, 697 (N.C. App.2008).

North Carolina's law of negligent entrustment is not so confined as Defendants hope. For example, N.C.G.S. § 18B-120-21 codified the common law theory of negligent entrustment as applied to the purveyors of alcohol. North Carolina also recognizes liability for harm to third parties resulting from the noncommercial provision of an intoxicant to an intoxicated person. *See, Hart v. Ivey,* 332 N.C. 299, 420 S.E.2d 174, 178 (1992) (pursuant to North Carolina's principles of negligence, a social host is "'under a duty to the people who travel on the public highways not to serve alcohol to a intoxicated individual who [i]s known to be driving.' ") (citation omitted). *Hart* applied to a specific application of the common law duty of "every person who enters upon an active course of conduct ... to exercise ordinary care to protect others from harm," emphasizing that the decision did not create a new cause of action, but utilized "established negligence principles." *Id.* at 178.

While neither Dram Shop nor social host liability theory *literally* is applicable to the facts alleged in the Complaint, the fundamental premise of both is consistent with the grave public policy concerns underlying the Plaintiffs' allegations. The Plaintiffs' analogy to North Carolina's embrace of third party liability for injuries proximately resulting from a tortfeasor's foreseeable negligence, fueled by intoxication and caused or enhanced by the third party's knowing provision of the intoxicant to the tortfeasor, should be taken as such an analogy. The thing "negligently entrusted" in a dram shop/social host context is not really the drunken patron's motor vehicle which he crashes head-on into a carload of

43

unsuspecting motorists; it is "that one-more-for-the-road" that the bartender gives to the patron at "last call," knowing full well that the patron is headed shortly to the parking lot, car keys in hand.

In *Iodice v. United States,* 289 F.3d 270 (4th Cir. 2002), the Court of Appeals analogized to the ruling in *Hart,* where the North Carolina Supreme Court "held that the third party victim of a drunk driver could sue a social host who served alcohol to the driver, if the host 'knew or should have known' that the person served 'was under the influence of alcohol [and] ... would shortly thereafter drive an automobile.' " *Id.* at 278 (quoting *Hart,* 420 S.E.2d at 178). In *Iodice,* the VA patient drove an automobile while under the influence of those negligently-dispensed narcotics, and caused three traffic accidents, one of which resulted in the plaintiffs' death and serious injuries. *Id.*

Applying the standard applicable to the determination of a Rule 12(b)(6) motion to dismiss to the instant Complaint, the Court may conclude that novel facts may be applied to old, settled law such that the plaintiffs have alleged "enough facts to state a claim to relief that is plausible on its face" and to "raise a right to relief above the speculative level." *Twombly,* 127 S.Ct. 1955, 1974 (2007). Specifically, the court may conclude that this Cause of Action sufficiently alleges an actionable claim at least for general or ordinary negligence, and by analogy to traditional entrustment principles that would be recognized under North Carolina law. The Defendants' overarching position is fairly summarized as: Gottlieb was not capable of being controlled by the University Police Department. *See, e.g*., Duke Univ. Br. 29-30; DUPD Br. 10-13. However, the A.C. does not purport to base its claim for recovery in this Cause of Action on the grounds that that it failed *to control* Gottlieb's conduct *after* its agents handed him "the keys" to the investigation. The actionable conduct alleged in the AC is that of DUPD agents who

*enabled* Gottlieb to turn their investigation into a weapon in his hand that proximately caused the plaintiffs' injuries.

On the facts alleged in the Amended Complaint and the principles discussed above, Plaintiffs contend that there is a duty owed to those in the Plaintiffs' position, if not to *control* the conduct of Sgt. Gottlieb, then certainly *not to empower it*. "No better general statement can be made than that the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists." W. PAGE KEETON, *ET AL.,* PROSSER AND KEETON ON THE LAW OF TORTS, § 53, p. 359 (5th ed. 1984). It is on this basis that the species of negligence asserted in Plaintiffs' Fortieth Cause of Action is based.

## VI.    DEFENDANTS MAKE NO OTHER ARGUMENTS FOR DISMISSAL; PLAINTIFFS REQUEST LEAVE TO COMMENCE DISCOVERY.

DUPD Defendants have made no other arguments in support of dismissal of Plaintiffs' claims. Defendants have, however, requested oral argument on their motions, pointing to the complexity of the issues raised by the Amended Complaint. Any complexity that Defendants could not clarify in the course of the 825 pages that has already been extended to them likely will not clarify in oral argument. That is particularly true if, at oral argument, Defendants persist in recasting Plaintiffs' allegations to find a foothold for their arguments. With respect, Plaintiffs request that the Defendants' request for oral argument be denied, and Plaintiffs request leave to schedule the Rule 26(f) discovery conference.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motions to Dismiss. Defendants' request for oral argument should be denied, and Plaintiffs' request for leave to conduct the Rule 26(f) discovery conference should be granted.

Dated: October 10, 2008

Respectfully submitted,

EKSTRAND & EKSTRAND LLP

/s/ Robert C. Ekstrand

_____
Robert C. Ekstrand, Esq. (NC Bar #26673)
Attn: Stefanie A. Sparks
811 Ninth Street, Suite 260
Durham, North Carolina 27705
Email: rce@ninthstreetlaw.com
Email: sas233@law.georgetown.edu
Phone: (919) 416-4590
Counsel for Plaintiffs Ryan McFadyen, Matthew Wilson, and Breck Archer

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF NORTH CAROLINA

RYAN MCFADYEN, ET AL.,

      Plaintiffs,

V.

DUKE UNIVERSITY, ET AL.,

      Defendants.

Civil Action No. 1:07-cv-953

## CERTIFICATE OF SERVICE

I hereby certify that, on October 10, 2008, I electronically filed the foregoing

PLAINTIFFS' OPPOSITION TO THE DUPD DEFENDANTS' MOTION TO DISMISS

PLAINTIFFS' AMENDED COMPLAINT with the Clerk of the Court using the

CM/ECF system which will send notification of such filing to the following:

James Donald Cowan, Jr.
Ellis & Winters, LLP
100 North Greene Street, Suite 102
Greensboro, NC  27401
***Counsel for the University Defendants***

Dixie Wells
Ellis & Winters, LLP
100 North Greene Street, Suite 102
Greensboro, NC  27401
***Counsel for the University Defendants***

Jamie S. Gorelick
Wilmer Cutler Pickering Hale and Dorr, LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
*Counsel for the University Defendants*

Jennifer M. O'Connor
Wilmer Cutler Pickering Hale and Dorr, LLP
1875 Pennsylvania Ave., N.W.
Washington, DC  20006
*Counsel for the University Defendants*

Paul R.Q. Wolfson
Wilmer Cutler Pickering Hale and Dorr, LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
*Counsel for the University Defendants*

William F. Lee
Wilmer Cutler Pickering Hale and Dorr, LLP
60 State Street
Boston, MA  02109
*Counsel for the University Defendants*

Dan J. McLamb
Yates, McLamb & Weyher, LLP
One Bank of America Plaza, Ste 1200
421 Fayetteville Street
Raleigh, NC 27601
*Counsel for the Sane Defendants*

Reginald B. Gillespie, Jr.
Faison & Gillespie
P.O. Box 51729
Durham, NC 27717
*Counsel for the City of Durham, North Carolina*

Patricia P. Kerner
Troutman Saunders, LLP
434 Fayetteville Street, Suite 1900
Raleigh, NC 27601
***Counsel for Steven Chalmers, Patrick Baker, Beverly Council, Ronald Hodge, Jeff Lamb, Stephen Mihaich, Michael Ripberger, Laird Evans, and Lee Russ***

D. Martin Warf
Troutman Sanders LLP
P.O. Drawer 1389
Raleigh, North Carolina 27602
***Counsel for Steven Chalmers, Patrick Baker, Beverly Council, Ronald Hodge, Jeff Lamb, Stephen Mihaich, Michael Ripberger, Laird Evans, and Lee Russ***

James B. Maxwell
Maxwell, Freeman & Bowman
P.O. Box 52396
Durham, NC  27717-2396
***Counsel for David Addison, Kammie Michael, Richard D. Clayton and James T. Soukup***

Joel M. Craig
Kennon, Craver, Belo, Craig & McKee
4011 University Drive, Suite 300
Durham, NC 27707
***Counsel for Benjamin W. Himan***

Edwin M. Speas, Jr.
Poyner & Spruill, LLP
P.O. Box 10096
Raleigh, NC 27605-0096
***Counsel for Mark Gottlieb***

Eric P. Stevens
Poyner & Spruill, LLP
P.O. Box 10096
Raleigh, NC 27605-0096
***Counsel for Mark Gottlieb***

Kearns Davis
Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P.
P.O. Box 26000
Greensboro, NC  27420
***Counsel for DNA Security, Inc. and Richard Clark***

Robert J. King, III
Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P.
P.O. Box 26000
Greensboro, NC  27420
***Counsel for DNA Security, Inc. and Richard Clark***

I further certify that I caused the foregoing document to be served by first-class mail, postage prepaid, to the following non CM/ECF participants:

Paul R. Dickinson, Jr.
Lewis & Roberts, PLLC
5960 Fairview Road, Suite 102
Charlotte, NC  28210
***Counsel for Brian Meehan***

James A. Roberts, III
Lewis & Roberts, PLLC
1305 Navaho Drive, Suite 400
Raleigh, NC  27609-7482
***Counsel for Brian Meehan***

Roger E. Warin
Steptoe & Johnson, LLP
1330 Connecticut Avenue, NW
Washington, DC 20003
***Counsel for City of Durham, North Carolina***

Linwood Wilson
**\*\*Address Redacted Pursuant to Local Rule**

Robert A. Sar
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2301 Sugar Bush Road, Suite 600
Raleigh, NC  27612
***Counsel for DNA Security, Inc.***

Nicholas J. Sanservino, Jr.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2301 Sugar Bush Road, Suite 600
Raleigh, NC  27612
***Counsel for DNA Security, Inc.***


Respectfully submitted,


**EKSTRAND & EKSTRAND LLP**

/s/ Robert C. Ekstrand
_____
Robert C. Ekstrand, Esq.
NC Bar #26673
811 Ninth Street, Suite 260
Durham, North Carolina 27705
Email:  rce@ninthstreetlaw.com
Phone: (919) 416-4590
Counsel for Plaintiffs