# UNITED STATES DISTRICT COURT
## FOR THE
## MIDDLE DISTRICT OF NORTH CAROLINA

RYAN McFADYEN, *et al.*,

      Plaintiffs,

              v.

DUKE UNIVERSITY, *et al.*,

      Defendants.

Civil Action No. 1:07-cv-953

---

## PLAINTIFFS' OPPOSITION TO THE UNIVERSITY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

---

Dated: October 10, 2008

**EKSTRAND & EKSTRAND LLP**
Robert C. Ekstrand (NC Bar #26673)
Attn. Stefanie A. Sparks
811 Ninth Street, Suite 260
Durham, North Carolina  27705

***Counsel for Plaintiffs Ryan McFadyen,
Matthew Wilson, and Breck Archer***

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................... i

STATEMENT OF THE CASE ........................................................................ 1

NATURE OF THE PROCEEDINGS ............................................................. 1

STATEMENT OF THE FACTS ..................................................................... 2

QUESTIONS PRESENTED ........................................................................... 3

ARGUMENT .................................................................................................. 4

I.      STANDARD OF REVIEW ........................................................... 4

II.     THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS UNDER FEDERAL LAW AGAINST THE UNIVERSITY DEFENDANTS. .......................................................................... 5

    A.      The Amended Complaint States Actionable Section 1983 Claims Against The University Defendants. .................................................. 6

        1.      The University Defendants Acted Under Color of Law. ........ 7

        2.      The Defendants' Remaining General Arguments Also Fail... 8

        3.      The Fifth Cause Of Action States A §1983 Stigma-Plus Claim Against The University Defendants. .................................... 11

        4.      The Sixth, Seventh, And Fifteenth Causes Of Action State Section 1983 Conspiracy Claims Against The University Defendants ........................................................................ 14

        5.      The Eighth Cause Of Action States A Section 1983 Claim For Deprivation Of First Amendment Rights And Violations Of Federal Statutes. .................................................................. 15

        6.      The Ninth Cause Of Action States A § 1983 Retaliation Claim. ................................................................................ 17

            a.      Plaintiffs Engaged In Conduct Protected By The First Amendment. ............................................................. 18

            b.      Defendants' Retaliatory Conduct Adversely Affected The Plaintiffs' Constitutionally Protected Conduct... 19

        c.      The Amended Complaint Shows A "Causal Relationship" Between Plaintiffs' Exercise Of First Amendment Rights And The Defendants' Retaliation. ...................................................................22

        d.      The Duke University Defendants Have No Immunity As Private Actors Acting In Concert With State Actors. ........................................................................25

    7.      The Tenth Cause Of Action States An Actionable Section 1983 Claim Against The University Defendants For Depriving Plaintiffs Of The Privileges And Immunities Afforded To North Carolina Citizens In Violation Of 42 U.S.C. § 1983. ...................................................................25

III.   THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS FOR PARTICIPATION IN CIVIL RIGHTS CONSPIRACIES. ........................27

   A.   Conspiracy In Violation Of 42 U.S.C. § 1983. ................................27

   B.   The Amended Complaint States Actionable Claims For Conspiracy In Violation Of 42 U.S.C. § 1985. ...................................................28

   C.   The Amended Complaint States A Violation Of 42 U.S.C. §1986. 30

   D.   The Amended Complaint Alleges Sufficient Direct And Circumstantial Evidence To Establish An Unlawful Conspiracy. ....31

   E.   The § 1985 Claims Allege Racial Animus Of Two Types. .............31

    1.      Section 1985 Prohibits Invidious Animus Against Any Race. ...................................................................................31

    2.      Defendants Were Motivated By, Fomented, And Took Advantage Of Racial Animus. ..............................................32

IV.   THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS UNDER STATE LAW AGAINST THE UNIVERSITY DEFENDANTS. ...................................................................................................................34

   A.   The Amended Complaint States A Common Law Obstruction Of Justice Claim Against The University Defendants. ........................34

   B.   The Amended Complaint States A Common Law Abuse Of Process Claim Against The University Defendants. ....................................35

   C.   The Amended Complaint States An Intentional Infliction Of Emotional Distress Claim Against The University Defendants. ......36

D. The Amended Complaint States A Breach Of Contract Claim Against The University Defendants. ................................................. 38

E. The Amended Complaint States An Invasion Of Privacy Claim Against The University Defendants. ................................................. 39

F. The Amended Complaint States A Breach Of Fiduciary Duty Claim Against The University Defendants. ................................................. 40

G. The Amended Complaint States An Actionable Fraud Claim Against The University Defendants. ............................................................ 41

    1. Actual Fraud. ......................................................................... 41

H. The Amended Complaint States A Negligence Claim Against The University Defendants. ....................................................................... 42

I. Plaintiffs Have Stated A Claim For Legal Negligence ................... 45

J. The Amended Complaint States A Negligent Supervision, Retention, Training, And Discipline Claim Against The University Defendants. ................................................................................... 46

K. The Amended Complaint States A Negligent Infliction Of Emotional Distress Claim Against The University Defendants. ...................... 47

V. RESPONDEAT SUPERIOR LIABILITY ................................................. 47

VI. DUKE UNIVERSITY DEFENDANTS MAKE NO OTHER ARGUMENT FOR DISMISSAL; PLAINTIFFS REQUEST LEAVE TO COMMENCE DISCOVERY. .......................................................................................... 48

CONCLUSION ............................................................................................. 48

## STATEMENT OF THE CASE

The Amended Complaint describes a combination of actors and entities referred to as the Consortium. For thirteen months beginning in March 2006, the Consortium's ultimate objective was to railroad the Plaintiffs and their 44 teammates into convictions as either principles or accomplices to a horrific, violent crime they knew never happened. The allegations describe a willful, malicious, and calculating conspiracy of multiple dimensions. Acting individually and in concert, Defendants concealed exonerating evidence, manufactured inculpatory evidence, and stigmatized the Plaintiffs by subjecting them to public outrage, public condemnation, and infamy in the minds of millions of people. Defendants' conduct shocks the conscience. Maybe the most unsettling of all are those who knew of the wrong conspired to be done to Plaintiffs, and had the power to prevent or aid in preventing them. Instead, they 'turned a blind eye' and did nothing.

## NATURE OF THE PROCEEDINGS

Plaintiffs filed this action on December 18, 2007 and amended that filing on April 17, 2008. Pursuant to a request from this Court regarding the location of the audio and video exhibits embedded within the First Amended Complaint ("AC"), Plaintiffs file the AC again on April 18, 2008 with the embedded exhibits as separate documents. Except for the location of the exhibits, the two "First Amended Complaints" are identical. All Defendants filed Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b) (6) on July 2, 2008. This Memorandum is filed pursuant to the Court's Order of October 7, 2008 [Document #72], granting Plaintiffs' Motion for Leave to File Opposition Briefs

[Document #71], and authorizing Plaintiffs to file their Responses on or before October 10, 2008.[1]

## STATEMENT OF THE FACTS

The Duke University Defendants are compromised of the educational institution and twelve persons.[2] AC ¶¶ 10, 22-33. In the difficult days in March 2006 and the months that followed, Duke University demonstrated powerful leadership – just not the kind one might expect. Duke led its own students into harm's way, sacrificing them in the belief that it was "best for the University" and orchestrating the great miscarriage of justice that became known as the "Duke Lacrosse Rape Case." Plaintiffs have explained in great detail the allegations against the Duke University Defendants in the Amended Complaint (AC). AC ¶¶ 1-993. Acts, omissions, and abuses of power by the Defendants appear on nearly every page of Plaintiffs' Amended Complaint. They simply cannot be summarized. Listed below are several of the most significant and egregious relevant allegations involving Duke Defendants:

1.  The delegation of all of Duke University's supervisory power and final policymaking authority with respect to the investigation of Mangum's false accusations to Himan, Gottlieb, Addison, Michael, their chains of command, and/or Nifong.

---

[1] Plaintiffs' Opposition Brief is filed in response to Defendant Duke University's Motion to Dismiss (Document #45) and supporting Memorandum (Document #46). Duke University's supporting Memorandum is cited herein as "Duke Univ. Br." Duke University's co-defendants' co-defendants' supporting briefs are cited herein as: "City Br.," "Gottlieb Br.," "City Super. Br.," "DNASI Br.," "SANE Br.," "DUPD Br.," "Himan Br.," "SMAC Br.," "Hodge Br.," and "Wilson Br."

[2] The Duke University Defendants include: Duke University, Richard Brodhead, Stephen Bryan, John Burness, Kemel Dawkins, Matthew Drummond, Victor Dzau, Aaron Graves, Allison Haltom, Peter Lange, Larry Moneta, Robert K. Steel, Tallman Trask III, and Suzanne Wasiolek.

2. The failure to act to intervene to prevent City officials and police officers and others acting in concert with them from obstructing justice, violating Plaintiffs' constitutional rights, and otherwise acting in furtherance of the conspiracy to frame Plaintiffs and their teammates for horrific crimes the Chairman and those acting at his direction knew did not happen.

3. The affirmative action to assist City officials and police officers and others acting in concert with them in obstructing justice, violating Plaintiffs' constitutional rights in the manner alleged herein, and in other acts and omissions in furtherance of the conspiracy to frame Plaintiffs and their teammates for horrific crimes the Chairman and those acting at his direction knew did not happen.

4. The refusal to receive evidence of Plaintiffs' innocence—beyond that which the University already had amassed—when Plaintiffs' defense counsel expressly offered it without condition or limitation in March of 2006 and repeatedly thereafter.

5. The effort to avoid obtaining additional knowledge of additional evidence of Plaintiffs' innocence by any other means.[3]

## QUESTIONS PRESENTED

1. Have Plaintiffs stated an actionable constitutional deprivation under 42 U.S.C. § 1983? (§§II.A(1)-(6), III(A)).

2. Have Plaintiffs stated a claim under 42 U.S.C. § 1985? (§ III(B))

3. Have Plaintiffs stated a claim under § 1986 for breach of contract? (§ III(C))

4. Have Plaintiffs stated a breach of fiduciary duty claim? (§V(F); Pls. Opp. Br. (DUPD) § V(C)–(E)).

6. Have Defendants stated a negligence claim against Defendants or are the Defendants exempt from the duty of ordinary care that every person owes to the foreseeable victims of their negligence? (§ IV(H)-(K); § V).

---

[3] See AC ¶ 84

**ARGUMENT**

## I.   STANDARD OF REVIEW

A motion to dismiss for failure to state a claim may be granted "only in very limited circumstances." *Rogers v. Jefferson-Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir. 1989). In examining a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Salami v. Monroe*, No. 1:07CV621, 2008 WL 2981553, at *5 (M.D.N.C. Aug. 1, 2008) (quoting *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130 (4th Cir. 1993)). Though the complaint is not required to encompass detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quotations and alterations in original) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007)). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 127 S.Ct. at 1965). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* (quoting *Twombly*, 127 S.Ct. at 1969).

Regardless of the specific theories identified in a complaint, the court has "a duty to examine the pleadings to determine if the allegations provide for relief on *any possible theory*." *Jennings v. University of North Carolina at Chapel Hill*, 240 F.Supp.2d 492, 512 (M.D.N.C., 2002) (emphasis not in original). If the pleadings, taken in the light most favorable to the plaintiff, reveal any plausible claim for relief, the motion must be denied. *Salami,* 2008 WL 2981553, at *5. Further, where Plaintiffs have asserted a civil rights action, the Court "must be especially solicitous of the wrongs alleged and must not

4

dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Veney v. Wyche,* 293 F.3d 726, 730 (4th Cir. 2002) (internal quotations omitted).

## II.  THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS UNDER FEDERAL LAW AGAINST THE UNIVERSITY DEFENDANTS.[4]

The First through Fifteenth Causes of Action allege violations of 42 U.S.C. § (the "§ 1983 Claims").  At this early stage, the Court must determine whether each of these Causes of Action alleges facts sufficient to satisfy the elements of § 1983.[5]  *See Green v. Maroules,* 211 F.App'x 159, 161 (4th Cir. 2006).  Based on the statute's text, the Supreme Court held that a Section 1983 claim requires only two essential allegations:

> By the plain terms of section 1983, two–and only two–allegations are required in order to state a cause of action under that statute.  First, the plaintiff must allege that some person has deprived him of a federal right.  Second, he must allege that the person who deprives them of that right acted under color of state or territorial law.

---

[4] Duke University or the University Defendants party to this Brief (Brodhead, Bryan, Burness, Dawkins, Drummond, Dzau, Haltom, Lange, Moneta, Steel, Trask and Wasiolek) are party to Causes of Action 1-3, 5-24, 27, 29-33, and 37-40.  Duke University's Brief in Support of their Rule 12 Motion Addresses Counts 5, 7-10, 12-17, 21, 23, and 30.  Plaintiffs provide a fuller analysis of the following causes of action in the brief listed: 1 and 2 in the Himan Brief; 5 in the SMAC Brief;  3, 6-7, 15, 18-20, and 31-33 in the SANE Brief; 11-13,  29,  37-40, 22 – 24 in the DUPD Brief; and 8-14, 16-17, 21, 27, and 30 in this Brief.

[5] Section 1983 provides:

[E]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress[.]  42 U.S.C. § 1983 (2000).

*Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Section 1983 does not itself create or establish substantive rights. Instead, § 1983 provides "a remedy" where a plaintiff demonstrates a violation of a right protected by the federal Constitution, or by a federal statute other than § 1983. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). The Amended Complaint alleges the elements of the § 1983 Claims Plaintiffs assert against the University Defendants. The Amended Complaint alleges that (1) the University Defendants are "persons" for purposes of § 1983[6]; and (2) were acting under color of state law when[7]; (3) they proximately caused[8]; (4) the deprivation of Plaintiffs'' federal rights.[9] The Amended Complaint alleges detailed allegations documenting the factual basis of Plaintiffs' Causes of Action.

### A. The Amended Complaint States Actionable Section 1983 Claims Against The University Defendants.

Plaintiffs seek to hold University Defendants liable for the Causes of Action they assert under 42 U.S.C. § 1983.[10] Before even alluding to any of Plaintiffs' *actual* § 1983 Claims, however, the University Defendants raise a playlist of their most favored arguments. Most of these will be addressed where they belong: in the context of specific claims.

---

[6] AC ¶¶ 905, 955, 969, 979, 987, 993, 1003, 1008-09, 1038, 1108, 1148

[7] *Id* .¶¶ 905, 955, 969, 988, 993, 1003, 1008-09,1038

[8] *Id.* ¶¶ 916, 967, 976, 984, 990, 1000, 1006, 1012, 1019, 1035, 1045, 1054, 1060, 1065

[9] *Id.* ¶¶ 916, 967, 976, 984, 990, 1000, 1006, 1012, 1019, 1035, 1045, 1054, 1060, 1065

[10] The University Defendants make arguments for dismissal of the Plaintiffs' § 1983 Claims asserted in the Fifth Cause of Action, the Seventh through Tenth Causes of Action, and the Twelfth through Fifteenth Cause of Action. The Plaintiffs respond to the University Defendants arguments for dismissal of the Seventh and Fifteenth Causes of Action where these Defendants have placed it: in Plaintiffs Memorandum in Opposition to the SANE Motion to Dismiss. Pls. Opp. SANE Br., § I.A..

### 1.    The University Defendants Acted Under Color of Law.

First, the University Defendants concede they are "persons" as the term is used in 42 U.S.C. § 1983, but they argue that they are "private persons," and, as such, Plaintiffs' § 1983 claims are not actionable as to Duke University and its employees because they contend they have not acted under color of law.  *See* Duke Univ. Br. §V.A.(1).  That claim however, is defeated by pages upon pages of specific allegations in the Amended Complaint.[11]  A private person acts "under color" of state law if he conspires with a state official *or* participates in a joint activity with a state official to deprive a person of his Constitutional rights. *Jackson v. Pantazes*, 810 F.2d 426, 429-30 (4th Cir. 1987).  The Defendants' denials of joint action is inapposite to this motion; whether Defendants formed such an agreement or participated in such a joint activity is a question of fact for the jury.   At this preliminary stage, with respect to the civil rights conspiracy allegations, it is the law of this circuit that it is enough for a plaintiff to allege facts showing that the defendants entered into "an agreement or a meeting of the minds" and shared "the general conspiratorial objective" to violate their constitutional rights.  *Simmons*, 47 F.3d at 1377-78 (internal quotation marks omitted).

This circuit has held that this agreement need not be established by "direct evidence":  A plaintiff may instead "come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Hinkle*, 81 F.3d at 421. This is especially important in civil rights cases, where "direct evidence of a conspiracy is rarely available, and . . . the existence of a conspiracy must usually be inferred from the circumstances." *Crabtree ex rel. Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990)*; see also Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir.

---

[11] *See, e.g.,* AC §§II-III, XII, XIV-XVIII, XX-XXI,  XXIII-XXIV, XXVI-XL.

2002) ("[Courts] must be especially solicitous of the wrongs alleged [in civil rights actions]." (quotation marks omitted)); *Waller v. Butkovich*, 584 F. Supp. 909, 931 (M.D.N.C. 1984) ("All that can be required at the pleading stage is that a defendant be given notice of how he is alleged to have participated in the conspiracy, so that he may intelligently prepare his answer and defense.").

The University Defendants are incorrect when they contend that they did not act under color of state law on the ground that Plaintiffs "do not allege any facts that would support a plausible inference that any of the Duke Defendants entered into any agreement to deprive Plaintiffs of their constitutional rights, Duke Univ. Br. at 10, because the allegations in the Complaint make it quite "plausible" that the Duke Defendants conspired with Nifong and the Durham Investigators to disclose the key card data and then to conceal that disclosure in violation of Plaintiffs' Fourth Amendment rights.

### 2. The Defendants' Remaining General Arguments Also Fail.

• The same reasoning dispels Defendants' wishful thinking about *Twombly* and the law of conspiracy. See, e.g., Duke Br. at 10.12 This is addressed in Duke SANE §I.13

---

[12] While *Simmons* refers to a "relatively stringent standard" for § 1985 claims, there the court did not impose a heightened pleading requirement but, rather, as in *Twombly*, it relied upon the well settled meaning of Rule 8(a)(2) in "reject[ing] section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *Simmons*, 47 F.3d at 1377. "No Federal Rule or statute provides a heightened pleading standard for § 1985(3) claims," *Evans v. Chichester Sch. Dist.*, 533 F. Supp. 2d 523, 535 (E.D. Pa. 2008), or for conspiracy claims generally. *See, e.g.*, *Twombly*, 127 S. Ct. at 1974 (no heightened fact pleading for Sherman Act conspiracy); *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002) (no heightened pleading standard for § 1983 conspiracy claims); *Higgins v. Spence & Spence*, No: 5:07-CV-33-D, 2008 WL 506187, at *4 (E.D.N.C. Feb. 21, 2008) (no heightened pleading standard for civil conspiracy claims); *Sara Lee Corp. v. Kayser-Roth Corp.*, No. 92-460, 1995 U.S. Dist. LEXIS 6554, at *17 (M.D.N.C. Apr. 10, 1995) ("[C]onsidering

• Defendants are hopelessly lost when they contend that (1) Albright v. Oliver, 510 U.S. 266 (1994), limits the Plaintiffs to claims under the Fourth Amendment because they allege "pretrial incidents," Duke Br. at 13; and then (2) that plaintiffs have alleged no Fourth Amendment violations, Id. The University disfigures Albright. If Albright has any implications on Plaintiffs' claims it is this: Plaintiffs are not limited to the Fourth Amendment because Plaintiffs were never "charged, tried, or convicted" of a crime. That was the implicit holding of Albright, and it was the Court's explicit holding in Chavez v. Martinez, 538 U.S. 760 (2003) (holding that, because Fifth Amendment is not available to plaintiff who was not charged or tried, a claim was

---

the liberal notice-pleading requirements at this stage, the court finds that Kayser-Roth has sufficiently alleged a conspiracy" based on "indirect, circumstantial evidence[.]")
To the contrary, as the Fourth Circuit recognized in *Simmons*, it is enough for purposes of § 1985 for a plaintiff to allege facts showing that the defendants entered into an "an agreement or a meeting of the minds" and shared "the general conspiratorial objective" to violate their constitutional rights. *Simmons*, 47 F.3d at 1377-78 (internal quotation marks omitted). The Fourth Circuit subsequently held that this agreement need not be established by "direct evidence": A plaintiff may instead "come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Hinkle*, 81 F.3d at 421. This is especially important in civil rights cases, where "direct evidence of a conspiracy is rarely available and . . . the existence of a conspiracy must usually be inferred from the circumstances." *Crabtree ex rel. Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990)*; see also Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) ("[Courts] must be especially solicitous of the wrongs alleged [in civil rights actions]." (quotation marks omitted)); *Waller v. Butkovich*, 584 F. Supp. 909, 931 (M.D.N.C. 1984) ("All that can be required at the pleading stage is that a defendant be given notice of how he is alleged to have participated in the conspiracy, so that he may intelligently prepare his answer and defense.").

[13] Defendants also argue that Plaintiffs' conspiracy allegations lack specific facts, relying instead on "conclusory assertions." Duke Univ. Br. at n.5. However, Defendants do recognize, in a footnote, two facts Plaintiffs alleged: the Duke-Durham Joint Command Meetings and the meetings between Tara Levicy and Durham officials. Defendants forget the facts alleged when they contend that Plaintiffs *"mistake meetings for meetings of the mind."* The argument is absurd. *See, e.g.* A.C. §§ I-XXIV, XXXVI-XL.

available under the Fourteenth Amendment's substantive due process prohibition of conduct that shocks the conscience). Defendants simply misrepresent a narrow line of cases holding that certain specific Amendments sometimes preclude claims under broader provisions. Defendants rely on Albright to do something it does not; in fact, as Chavez made clear, Albright only clears the way for the Plaintiffs' substantive due process claims against the University.

- Duke offers nothing to support its "conclusory" contention that "there were no Fourth Amendment violations because the contents of the affidavits used to obtain them were sufficient to establish probable cause without any information to which Plaintiffs' now object" Duke Br. 13 (emphasis in original). Moreover, the argument is dispensed with in Pls. Opp. Br. (DNASI), §III.A.1.

- Duke misses the same point that defeat their Albright arguments when they contend that all claims grounded Plaintiffs' right not to speak (1) are precluded by the Fifth Amendment, and then (2) that the Fifth Amendment does not reach the conduct alleged because Plaintiffs "were never tried" and made "no incriminating statements." Duke Br. at 14. The first contention is wrong on the law. The second turns the law on its head. See, e.g., Chavez, 538 US at 772 (Opinion of the Court); Id. at n.3 (A person's constitutional right to remain silent is an interest in liberty that is protected against federal impairment by the Fifth Amendment and from state impairment by the Due Process Clause of the Fourteenth Amendment) (Stevens, J., concurring in the judgment).

Plaintiffs have asserted federal and state law claims against the University Defendants. The University Defendants arguments all fail because they rely upon propositions that either misrepresent the allegations made in the AC, misstate the law, or both. Below we address each Cause of Action raised by these Defendants in turn.

### 3. The Fifth Cause Of Action States A §1983 Stigma-Plus Claim Against The University Defendants. [14]

The Fifth Cause of Action alleges that all of the Duke University Defendants, including Steel, Brodhead, Burness, Arico, and Duke University, acted individually and in concert, pursuant to express or implied agreements with Addison, Gottlieb, Nifong, Hodge, Michael, Wilson, Baker, and the City of Durham, to publish stigmatizing false statements about and relating to the Plaintiffs and in connection with several identified deprivations of federal rights and tangible interests identified in the AC. AC ¶¶ 956(A)-(I)("stigma"); 957(A)-(G)(deprivation of rights("plus")). Plaintiffs have consolidated the discussion of their stigma-plus claim in Plaintiffs' Opposition to SMAC Motion to dismiss. Pls. Opp. (SMAC), Section II.A.(2). The contentions offered to support dismissing the University Defendants from this cause of action are baseless.

University Defendants do not contend that their statements were not stigmatizing. Nor could they. Instead, they assert that no statement attributable to them was made "specifically about" Plaintiffs. Here, they fight the facts: the AC alleges statements—dozens of them—made by these defendants specifically about Plaintiffs. *See, e.g.*, AC ¶¶ 462-464, 528-41, 582. That proposition is impossible to support, so the University Defendants offer the example of the *SANE* Defendants' statements. The University Defendants fail to extricate the SANE Defendants from the claim, as plaintiffs explain where the argument belongs. *See*, Pls. Opp. (SANE), and the issue as to themselves. *See* Duke Br. at 16.

They replay the same flawed argument when they contend "'group references' are insufficient as a matter of law to state a due process claim." Duke Br. at 17

---

[14] The University Defendants do not assert any argument for dismissal of the First through Fourth Causes of Action in their Brief. Plaintiffs address those claims viz. other Defendants elsewhere.

(§V.(A)(2)(b)). They impale themselves on the very saber they rattle: *Algarin v. Town of Wallkill*, 421 F.3d 137 (2nd Cir. 2005) defeats the point they claim it makes. In their brief, they state the stigma-plus claim in that case failed "on the ground that the report 'was written without naming names or associating alleged incidents . . . with specific officers' and thus, it was 'impossible to directly tie any of the [allegedly stigmatizing] statements in the Report *to individual officers*.'" As it turns out, *Algarin* court stated that the failure of a "direct tie" to "individual officers" would not preclude the claim if the report at issue "besmirched" the entire group. Instead, it "besmirched" some unidentified members of the group, and praised others. The Chairman drew no such distinctions, and, consistent with his Directive, neither did Burness, Brodhead, Trask, Moneta, or any of the University Defendants who habitually stigmatized all members of the lacrosse team, a group in which Plaintiffs were readily identifiable members. The argument does not lack nerve. It bears remembering: this argument is directed to three Plaintiffs who spent time at the center of the national vilification these defendants orchestrated.

Defendants concede the argument that Plaintiffs fail to meet the "plus" element when they make it; their failure to mention any of the specific deprivations of state and federal rights identified in the AC *Id.* ¶¶ 956 (A)-(I). Thus, they waive argument as to them. Inexplicably, Defendants ground their argument in a quoted phrase that does not exist in the AC (the "right to play Division I lacrosse"). They studiously avoid *specifically enumerated* violations of federal and state law for which they are directly responsible. The rule requires Defendants to take the allegations as true, it gives no license to ignore those they hope are not.

Defendants' argument that "a plaintiff must allege an intimate connection between the 'stigma' and the 'plus'" is entirely of their own making. The case they cite for the existence of a mandatory "intimate connection" offers them no support. Marrero v. City

of Hialeah, 625 F.2d 499 (5th Cir. 1980), and is completely at odds with the "consensus of cases" on the required nexus between the stigma and the connected deprivation.[15]

Burness may not save himself from the claim by asserting, as he does, that his claim that Plaintiffs "were capable of rape" was "made more than a year after the earliest deprivation, because the AC alleges that Burness was making that statement from the beginning, at every opportunity, to anyone who would publish it without attributing it to him specifically. The AC's allegation that he is still saying it as the Attorney General declares no sexual assault or assault of any kind ever happened simply makes the point that he is—inexplicably—working from the same talking points he, Brodhead, Steel, and the CMT concocted in the first days of the ordeal. AC ¶ 532.

---

[15] The nexus requirement is certainly not a causal one, it is enough that the false statements and deprivation were "connected" or "coupled with" one another. *See Velez v. Levy*, 401 F.3d 75, 88-89 (2d Cir. 2005) (holding that the same person need not cause the reputational stigma and the constitutional deprivation, so long as both are "connected"); *Univ. Gardens Apartments Joint Venture v. Johnson*, 419 F. Supp. 2d 733, 740 n.4 (D. Md. 2006) (recognizing § 1983 claim where a malicious false statement is "coupled with an illegal . . . seizure"); *Paul*, 424 U.S. at 710; *Barrett v. Harrington*, 130 F.3d 246, 261 (6th Cir. 1997) (no judicial immunity from § 1983 claim based on false public statements); *Cooper v. Dupnik*, 924 F.2d 1520, 1534-35 (9th Cir. 1991) (recognizing § 1983 claim under Fourteenth Amendment based on public statements that falsely implied that evidence supported plaintiff's arrest); *Gobel v. Maricopa County*, 867 F.2d 1201, 1205 (9th Cir. 1989) (recognizing § 1983 due process claim where "false statements were made in connection with [plaintiffs'] illegal arrest"); *Marrero v. City of Hialeah*, 625 F.2d 499, 519 (5th Cir. 1980) (recognizing § 1983 claim based on false public statements relating to illegal seizure); *Burke v. Ocean County Prosecutor's Office*, No. 07-3623, 2008 WL 346142, at *3 (D.N.J. Feb. 6, 2008) (recognizing § 1983 claim based on false statements to press that "jeopardized [the plaintiff's] life"); *Stevens v. Rifkin*, 608 F. Supp. 710, 727 (N.D. Cal. 1984) (recognizing due process claim "where the injury to reputation is inflicted in connection with the denial of a right specifically secured by the Bill of Rights"); *Buckley*, 509 U.S. at 262 (prosecutors lacked absolute immunity for § 1983 claim based on false public statements).

Likewise, Burness' contention, Duke Br. 21, that the "stonewall of silence" myth he and his co-defendants created was not only connected to the deprivation of Plaintiffs' right not to speak and to be free of retaliation for exercising it; the myth of a "stone wall of silence" was, in fact, one of the means used to coerce Plaintiffs' to submit to Gottlieb's questioning and to retaliate against them for not doing so. *See* AC §XXI.D.(2).

### 4. The Sixth, Seventh, And Fifteenth Causes Of Action State Section 1983 Conspiracy Claims Against The University Defendants.

The Sixth and Seventh Causes of Action allege conspiracies to manufacture and fabricate evidence of Plaintiffs' guilt (the Sixth Cause of Action), while concealing powerful proof of Plaintiffs' innocence (the Seventh Cause of Action). The unlawful purpose of the conspiracy was transparent and it was pursued in plain view: to cause Plaintiffs and their teammates to be subjected to criminal charges, seizures and ultimately to convictions for First Degree Forcible Rape, First Degree Sexual Offense, Kidnapping, and Felonious Strangulation, all the while knowing, or deliberately indifferent to the evidence of innocence. The evidence was so powerful that the Attorney General's Chief Deputy determined that it required more than a mere dismissal of pending charges; it required an unequivocal declaration of innocence. The agreement to undertake this course of conduct lasted over thirteen months, until it was thwarted by an ethics charge that removed Nifong from the case. This is conduct so egregious that it shocks the conscience.

The Sixth and Seventh Causes of Action have a second, independent purpose. In addition to stating a Fourteenth Amendment conspiracy in violation of the Fourteenth Amendment's substantive due process guarantee, the Sixth and Seventh Causes of Action will be picked up by the Fifteenth Cause of Action alleging Conspiracy in violation of § 1983. Plaintiffs establish their factual basis for the Sixth, Seventh, and Fifteenth Causes of Action directed to the University Defendants—and also respond to all arguments for

14

their dismissal—in Plaintiffs' Opposition to SANE Defendants Motion to Dismiss. Pls. Opp. SANE Br. § II B 4.

### 5. The Eighth Cause Of Action States A Section 1983 Claim For Deprivation Of First Amendment Rights And Violations Of Federal Statutes.

The Plaintiffs allege that Steel, Brodhead, Burness, and unknown Duke University Employees, Duke University with final policymaking authority with respect to campus voter registration efforts and compliance with federal laws, directed unnamed Duke University employees to interfere with the Plaintiffs' First Amendment rights to free speech and to engage in political processes. The Defendants' conduct not only caused a deprivation of Plaintiffs' First Amendment rights, but also, the conduct violated federal registration statutes. AC ¶¶ 874-877; 888-889; and 986-991. Specifically, the Amended Complaint alleges that, under color of state law, Duke University employees joined by Duke University police officers, seized and detained team members and confiscated their voter registration forms to prevent them from registering students and other citizens to vote in the then-upcoming federal and state elections. AC ¶¶ 986-989.

The University Defendants' sole contention offered for dismissal of this cause of action—the absence of state action (Duke Br. §V.A.(2)(b)(iii))—ignores Plaintiffs' plainly stated allegations. The AC alleges that these defendants shut down Plaintiffs' voter registration effort by forcing the surrender of voter registration materials (and even the shirts off of their backs), with the aid of uniformed police officers. AC ¶ 988.[16]

---

[16] The allegation states: "Under color of state law, Steel, Brodhead, Trask and Burness, directed unknown Duke University employees and Duke University Police Officers to direct team members who were registering students and other Durham residents to vote in the then upcoming federal and state elections to abandon their registration efforts, surrender their voter registration forms, and take off their shirts, which read "Voice Your Choice." AC § XXXIV.A.

Detaining students in buildings, stopping them on the causeway, and coercing their surrender of blank voter registration forms with the aid of a police officer is state action. Duke's second contention—that this happened on "their property"—is rendered irrelevant by the failure of the first.

The AC alleges that the University's senior officers, officials, and managers discussed the Plaintiffs' plan to conduct voter registration during Homecoming weekend activities on the University's main campus, and agreed they would direct the unknown employees and Duke Police Officers to locate and seize Plaintiffs when they began registering new voters. The directive was to force Plaintiffs to abandon their registration efforts, and surrender their voter registration materials to them. They carried out their orders, as stated, and a number of officers called to the staging area for their voter registration efforts inside the Murray Building seized and detained team members until they surrendered their voter registration materials to them and acceded to Defendants' agents' demands to cease and abandon their voter registration efforts. *Id.* ¶ 988. And that was not all. The Defendants named in this cause of action directed the officers and University administrators to seize the shirts they were wearing, because it read "Voice Your Choice". *Id.*

In short, Defendants shut down Plaintiffs' efforts to register as new North Carolina voters, students who travelled from other states to study and vote as new North Carolina voters. *Id.* ¶874-87. The voter registration effort was a lawful attempt to redress Durham's discriminatory custom and policies that abused the criminal laws and processes in all matters where "permanent residents" complained of "non-permanent" residents of North Carolina. Defendants' seizure of Plaintiffs and the confiscation of their registration forms violates federal voter registration law and was in furtherance of the

unconstitutional Zero-Tolerance Policy for "non-permanent" residents. This is an overt violation of Plaintiffs' First, Fourth, and Fourteenth Amendment Rights.

Duke police officers' prevention of the Plaintiffs' and other team members' efforts to register their fellow students to vote in North Carolina violated the Plaintiffs' and other team members' right to the Freedom of Speech (as evidenced by the "Voice Your Choice" incident), right to participate in the political process (as evidenced by Duke police officers' seizure of the voter registration materials), and Plaintiffs' Fourth Amendment right to be free of unreasonable seizures.

### 6. The Ninth Cause Of Action States A § 1983 Retaliation Claim. [17]

The Amended Complaint alleges that the University Defendants, individually and in concert with Steel, Brodhead, Burness, Lange, Stotsenberg, Smith, in their individual and official capacities, the Duke Police Supervising Defendants, Duke University, DUHS, PDC, retaliated against the Plaintiffs for engaging in conduct protected by the First Amendment. To state a § 1983 Retaliation claim, a complaint must allege that (1) the plaintiff engaged in conduct or activity protected by the First Amendment; (2) defendants took some action that adversely affected (i.e., "chilled") Plaintiffs' First Amendment rights; and (3) a causal relationship between the protected conduct and the retaliatory actions alleged. *Id.* at 686; *Constantine v. Rectors & Visitors of George Mason Univ.,* 411 F.3d 474, 499 (2005). The Amended Complaint establishes the elements of a §1983 Retaliation Claim against the University.

---

[17] This is Plaintiffs' consolidated analysis of their Ninth Cause of Action as it relates to all Defendants named therein.

### a. Plaintiffs Engaged In Conduct Protected By The First Amendment.

The Duke Defendants contend that the Amended Complaint fails to identify any conduct protected by the First Amendment. But they are wrong: right not to speak is protected by the First Amendment, and it is that right that is identified by the facts alleged in the AC. See AC ¶ 430, § XVI. The University Defendants acknowledge the right to speak, Duke Br. at 22-23, but still insist that this cause of action should be dismissed because, they contend, Plaintiffs do not allege that they engaged in any act of speaking.[18] The First Amendment is not so narrow: it protects the "right not to speak" with no less force than it protects Plaintiffs' "right to speak." *Wooley v. Maynard*, 430 U.S. 705 (1977). The proposition is settled. The Supreme Court has long held that the right to speak and the right not to speak are 'complementary' fundamental components of the First Amendment's Speech Clause. In *Wooley*, for example, the Court stated:

> We begin with the proposition that the right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all. … The right to speak and the right to refrain from speaking are complementary components of the broader concept of "individual freedom of mind."

*Id.* at 714 (internal quotations omitted) (citing *W.Va. Bd. of Educ. v. Barnette*, 319 U.S. 624, 633-34 (1943); *Id.* at 645, (Murphy, J., concurring)). Based on that principle, the

---

[18] Defendants also argue that the Plaintiffs may not proceed here pursuant to the Fifth Amendment because that is a "trial right" and Plaintiffs were not tried. Duke Br. at 23. Plaintiffs explain, *supra*, that the fact that the more specific "Fifth Amendment" trial protections are foreclosed to Plaintiffs means only that the right passes over to the First or Fourteenth Amendments. Because the right to be free of retaliation for exercising the right not to speak is protected specifically by the First Amendment, and the right to be free of state-coercion, threats and harassment designed to force a waiver of those rights, Plaintiffs are proceeding under the First and Fourteenth Amendments. Whether the unconstitutional purpose is retaliation or coercion is a question of fact; Plaintiffs may plead in the alternative.

Court has struck down numerous statutes under the First Amendment, not because the statutes inhibited speech, but because they *compelled* speech. *See, e.g., Barnette*, 319 U.S. 624 (statute compelling public school students to honor the flag both with words and a traditional salute constitutes impermissible coercion of speech in violation of the First Amendment); *Wooley*, 430 U.S. 705 (statute punishing the act of removing the motto "Live Free or Die" from state-issued license plates constitutes impermissible coercion of speech in violation of the First Amendment). Therefore, the Amended Complaint plainly alleges conduct identifying Plaintiffs protected First Amendment rights, and may not be dismissed for failure to allege this element.

### b. Defendants' Retaliatory Conduct Adversely Affected The Plaintiffs' Constitutionally Protected Conduct.

The Amended Complaint alleges Plaintiffs were subjected to conduct that adversely affected Plaintiffs' constitutionally protected First Amendment right not to speak. AC § XVI ¶¶ 414-445 (Durham); 445-478 (Duke). The test for determining whether action "adversely affects" a protected right is *not* whether [Plaintiffs'] First Amendment rights were chilled, but whether a person of reasonable firmness in [Plaintiffs'] position would have been chilled. *See Blankenship v. Manchin*, 471 F.3d 523, 530 (4th Cir. 2006) (internal quotation omitted). This is "an objective inquiry into whether a similarly situated person of ordinary firmness reasonably would be chilled by the government conduct in light of the circumstances presented in the particular case." *Id. Blankenship v. Manchin*, 471 F.3d 523, 530 (4th Cir. 2006) (internal quotation omitted). The Fourth Circuit emphasizes a focus on the status of the plaintiff, the status of the retaliator, and the relationship between the two. *See e.g., Suarez*, 202 F.3d at 686. The inquiry, while objective, is necessarily fact intensive. The Fourth Circuit has held that a person of ordinary firmness would be chilled when "the punitive machinery of the government [is invoked] in order to punish" a person for exercising a constitutional right.

*Id.* at 531 (quoting *Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003) "punitive machinery of the government" invoked when the Mayor directed city employees to issue parking tickets to punish Plaintiff for exercising First Amendment rights). The Amended Complaint paints a far more disturbing abuse of the punitive machinery of the government to punish Plaintiffs for exercising their right not to speak than the punishing conduct alleged in *Suarez* and *Garcia*:

- Duke Faculty upheld the mythology created by the administrators by publicly asserting the allegations were true, and racist. AC ¶¶ 584-90.

- Himan and Gottlieb, in concert with Nifong, Levicy, and Arico, subjected Plaintiffs to unconstitutional searches and seizures in retaliation for the Plaintiffs' exercise of their right not to speak by refusing to consent to interrogations conducted by University and City Police interrogators. AC ¶ 414, §§ ,XVI, XXIV. [19]

- Nifong, Himan, Gottlieb, in concert with Levicy, Arico, Gottlieb, Himan, and others acting in concert with them, retaliated against Plaintiffs, for exercising their right not to speak, by alerting the media that the Plaintiffs were ordered to appear at the Durham Forensics Unit in order to publicize the fabricated affidavits. The purpose of publishing the NTID Affidavit's fabrication was to publicly vilify and stigmatize the Plaintiffs in their local community. AC § XVI-XXIV.

- Levicy, Arico, Gottlieb, and Himan agreed to cause an NTID Order to issue without the required legal justification and to obtain a discretionary Order from the issuing judge compelling Plaintiffs to appear at the Investigations Unit in less than an hours' notice. In the ensuing thirteen months, vilification was fomented and maintained by false public statements of other co-conspirators. Id§ XVI-XL

- Duke University faculty, administrators, and staff—in furtherance of the Chairman's Directive—individually and in concert with City officials, Nifong, Addison, and Michael retaliated against Plaintiffs by contributing to the deluge

---

[19] Subjecting Plaintiffs to unconstitutional seizures in connection with a fraudulent stigmatizing police affidavit and threatening prosecution on crimes they knew did not happen in retaliation for exercising constitutionally protected rights is sufficient to state a retaliation claim. See, e.g., *Suarez*, 202 F.3d 676; *Blankenship* 471 F.3d. 523.

public statements designed to foment racial hostility and visceral anger in millions of people to coerce plaintiffs to abandon their right not to speak.  AC ¶¶ 584-90, 544-54.

- The Chairman directed a law professor to convene a public investigative committee, charged with soliciting incriminating statements from the Plaintiffs, collecting evidence of and producing a report of Plaintiffs' prior bad acts to be disseminated at a nationally televised press conference to be held on the eve of Nifong's primary*, AC § XXVII; and, finally, in virtually every public statement made by the co-conspirators, there was an explicit or implicit demand that the Plaintiffs speak to Gottlieb and his investigators*, AC § XXII (fomenting public rage at Plaintiffs by characterizing their exercise of the right not to speak as a "Stonewall of Silence"),  *Id.*¶¶ 535 (overt commands directing Plaintiffs "stop stonewalling the police investigation")*, Id.*¶¶ 535  (the President's incessant public urging to "all members of the Duke Community" to speak to the police and assist with the "investigation."  *See* ¶¶ 456-77, 496-99, 518-24, 528-40, 552-58, 581-90, 827-52, 853-72, 874-89

In *Suarez,* the Fourth Circuit held that a public official's speech act gives rise to an actionable First Amendment retaliation claim where the speech "threatens, coerces, or intimidates, intimating that punishment, sanction, or adverse regulatory action will imminently follow."  202 F.3d at 687.  Subsequently, the Fourth Circuit held that its holding in *Suarez* created a "bright line" rule that, where the retaliatory conduct alleged is in the nature of speech, the conduct violates the constitution if the remarks are "threatening, coercive, or intimidating so as to intimate that punishment, sanction, or adverse regulatory action will imminently follow."  *Id.* at 689; *Blankenship*, 471 F.3d at 528 (defendants had no claim to qualified immunity because *Suarez* created a "bright line" rule).

The Amended Complaint alleges statements that threatened and encouraged physical violence, public harassment; public demonstrations and marches; threats of and demands for Plaintiffs' castration; demands for Plaintiffs' confessions; public declarations of Plaintiffs' guilt; demands for their punishment; and demands for their expulsion.  All of these public statements cross the Fourth Circuit's "bright line."  *Id.* ¶¶

21

992-1001.   Finally, the Amended Complaint alleges that certain defendants made statements that, while not actionable on their face, evince their participation in the conspiracy to publicly vilify Plaintiffs for the purpose of coercing their speech.

Their participation in the conspiracy renders them jointly and severally liable for the acts of all participants in furtherance of the conspiracy. The Amended Complaint sufficiently alleges facts showing that the University Defendants retaliatory conduct "adversely affected" the Plaintiffs' exercise of their constitutionally protected rights. The University Defendants do not dispute this element.

### c. The Amended Complaint Shows A "Causal Relationship" Between Plaintiffs' Exercise Of First Amendment Rights And The Defendants' Retaliation.

Duke University Defendants argue that Plaintiffs have not alleged any facts to suggest that these Defendants even knew that Plaintiffs had exercised constitutional rights. Duke Univ. Br. at 24. They are wrong. Plaintiffs have alleged that Wasiolek personally arranged the mass interrogations of the entire team, with help from her Duke Police co-defendants. Wasiolek was the one of the first to "know" that the Plaintiffs refused to submit to Gottlieb's interrogations, the Duke Police Supervising Defendants were also on notice right away (they were making the arrangements at the various facilities they would use when they were told). The AC alleges the email list that was used to communicate every detail of the events as they emerged. It was through that email list that Wasiolek learned, for example, that, by sending Zash, Flannery and Evans in to speak to the police, she made them "suspects" and exposed to indictment because, without knowing what they were doing, they gave Gottlieb the only evidence he needed to charge them: they placed themselves at the "scene" in their statements. AC ¶ 340-408. Further, as discussed, infra, the plan was designed to reduce the exposure to civil liability that Wasiolek's legal advice to the three renters created for herself and for Duke.

These Defendants knew the Plaintiffs invoke their right not to speak or submit to interrogation, and the allegations are more than sufficient to support the inference of knowledge.

On a related point, the Amended Complaint's allegations show that the retaliatory conduct would not have occurred "but for" the exercise of their First Amendment rights. First, the Amended Complaint alleges multiple admissions by Defendants who openly confessed that the conscious object of their conduct was to coerce Plaintiffs into speaking, or, in the language of the element, to chill Plaintiffs' exercise of their protected right not to speak. For example, on March 25, 2006, Addison admitted publicly—on television—that there would have been no NTID Order (and, of necessity, no fabricated, sensationalized Affidavits) if the Plaintiffs had cooperated with Gottlieb and Himan, AC¶ 505(B), (C). Nifong later admitted in sworn testimony—*twice*—that his sole purpose in publicly vilifying Plaintiffs was to coerce their speech. AC ¶ 503, Ex. 12 (Video). In his sworn testimony, Nifong stated:

> "to maybe make someone who did have information about this that could help us with the investigation feel a sense of duty to come forward that was what I was really trying to do was to get people to cooperate with the law enforcement investigation."

This was Nifong's second sworn confession admitting to his unconstitutional retaliatory motive; he first confessed to it in his deposition testimony.

And there is more: one unnamed participant in the conspiracy openly admitted— on television—that he was participating in the mob calling for Plaintiffs' castration (pictured in *Id.* p. 172) because the Plaintiffs "haven't been convicted but--but 30 something kids are remaining silent." The mob participant clearly understood that the purpose of the mob's threats, intimidation, and harassment was to deter them from continuing to do so.

While Defendants may argue in their Reply that Nifong is immune, the mob participant may not be their employee, etc., those distinctions make no difference. Addison, Nifong, and the mob participant are all alleged to be participants in a conspiracy that included Defendants as co-conspirators. Their confessions as to the purpose of the public statements establish the causal nexus between Plaintiffs' protected activity and the Defendants' retaliatory conduct (e.g., the fabricated NTID Affidavit, the unconstitutional search and seizure, and the false, threatening, coercive, and intimidating public statements). As such, each participant in the Retaliation conspiracy, including the University Defendants, is jointly and severally responsible for all of the harms caused by the acts of their co-conspirators in furtherance of the conspiracy.

The conspirators' admissions are not the only allegations establishing the required causal nexus. The second "nexus" is a "temporal nexus" between the protected conduct and the Defendants' retaliatory actions. First, the public vilification of the Plaintiffs alleged to be in retaliation against Plaintiffs for engaging in protected conduct began one day after Plaintiffs conveyed to the Defendants their decision to exercise their right not to speak to University administrators or submit to the City's interrogations about the false accusations. AC § XVI-XXI. The investigation had been ongoing for weeks when Plaintiffs conveyed to the Defendants their decision not to speak publicly or to interrogators. All of the false, threatening, coercive, and intimidating public statements began one day after the Defendants learned that the Plaintiffs determined to exercise their right to refuse to speak about the events under "investigation." AC ¶ 412-414.

The Amended Complaint sufficiently alleges a §1983 Retaliation Claim that states facts that, taken in the light most favorable to the Plaintiffs, sufficiently demonstrate that the University Defendants' alleged retaliatory conduct would not have occurred "but for"

Plaintiffs' exercise of their right not to speak. This cause of action may not be dismissed.

### d. The Duke University Defendants Have No Immunity As Private Actors Acting In Concert With State Actors.

The University Defendants do not assert immunity for their concerted conduct with Gottlieb, Himan, Nifong, and the Duke and Durham police officers involved, nor can they.

### 7. The Tenth Cause Of Action States An Actionable Section 1983 Claim Against The University Defendants For Depriving Plaintiffs Of The Privileges And Immunities Afforded To North Carolina Citizens In Violation Of 42 U.S.C. § 1983.

The Amended Complaint states an actionable Section 1983 Claim for deprivation of Plaintiffs' rights to the privileges and immunities guaranteed to them as citizens of the United States by Article IV and the Fourteenth Amendment. This Cause of Action identifies rights within the broader "right to travel." The "right to travel" includes at least three different components: (1) the right of a citizen of one State to enter and to leave another State, (2) the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, (3) for travelers who elect to become permanent residents in a new State, the right to be treated like other citizens of that State. Plaintiffs assert that the second and third components of the right to travel are addressed in the Amended Complaint. Plaintiffs establish their § 1983 Privileges and Immunities Claims against the Duke University Defendants in the extended analysis of this Cause of Action set out in Plaintiffs Opposition Brief directed to the City's Motion to Dismiss. Pls. Opp. Br. (City), §II.A.(3).

As it does against the City, *see id.*, the Amended Complaint also sufficiently alleges a policy— Zero-Tolerance for Duke Students—that penalized Plaintiffs' exercise

of the right to travel, by classifying them as "temporary residents" and subjecting them to disproportionate and abusive enforcement of the criminal law, and the suspension of constitutional rights in police encounters with Duke students. The policy was designed, adopted, and vigorously enforced by Duke University and the City of Durham. Defendants do not (and cannot plausibly) justify the Zero-Tolerance policy as "narrowly tailored" to any "compelling" interest. The enforcement of the policy against the Plaintiffs therefore caused the violations of Plaintiffs' rights under Article IV of the United States Constitution and the Fourteenth Amendment thereto. Therefore, Defendants' motion to dismiss this Cause of Action is baseless and must be denied.

The University cannot avoid liability for the violations of the Privileges and Immunities Clauses of the First and Fourteenth Amendments by disfiguring the allegations in the Amended Complaint. Duke Univ. Br. at 24-26. The argument fails because it depends on a recasting of the AC's very serious allegations implicating the purposeful deprivation of a right that is "fundamental to our constitutional order." By way of example, these Defendants argue to this Court that the:

- Defendants do not dispute that the AC sufficiently alleges that Zero Tolerance is a formal "policy" designed by Duke University and City of Durham Policymakers, nor do they contest the sufficiency of the allegations that Zero-Tolerance was implemented primarily through the joint and concerted conduct of the Duke and Durham Police Departments. *See* Duke Univ. Br. at 25-26. Instead, the Duke University Defendants argue that the Zero Tolerance Policy allegations do not sufficiently allege that the Zero Tolerance Policy was a "moving force" behind the constitutional violations alleged. In doing so, they are fighting the facts as they must accept them, and, as such, merely raise a question of fact for the jury.

- Duke University Defendants misapprehend the liability that *Monell* establishes when they contend that Plaintiffs were never cited, arrested, or prosecuted under the policy. First, the AC contradicts them. Second, *Monell* does not require such a "showing" and certainly not at this stage.

The AC alleges that Zero Tolerance was the "moving force" behind deprivations of federal rights alleged elsewhere in the AC. Further, the AC devotes nearly one hundred pages to a detailed description of the policy as it was implemented in the year prior to the deprivations plaintiffs suffered. AC ¶¶ 107-87. Plaintiffs' *Monell* Claim is asserted in the Twelfth Cause of Action, and we discuss that Cause of Action against Duke University together with the City in Pl. Opp. Br. (City) § II.B.

## III. THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS FOR PARTICIPATION IN CIVIL RIGHTS CONSPIRACIES.

### A. Conspiracy In Violation Of 42 U.S.C. § 1983.

The Fifteenth Cause of Action alleges a broad conspiracy, agreement, or understanding shared by all named Defendants in this action.[20] AC ¶ 1147-1155. The objective of the unifying conspiracy alleged in the Fifteenth Cause of Action was to convict; specifically to unlawfully force the wrongful indictment, prosecution, and, ultimately, incarceration of the Plaintiffs as principals or accomplices in a horrific, racially motivated gang-rape. The Defendants in this action engaged in overt acts in furtherance of the conspiracy knowing or deliberately indifferent to the likelihood that no crime occurred. AC §§ X-XI.[21] Those overt acts are alleged in the Predicate Violations established in the First through Eleventh Causes of Action.

---

[20] To allege a cause of action under 42 U.S.C. § 1983 for conspiracy, a plaintiff must allege facts that show that two or more defendants "acted jointly [and] in concert and that some overt act was done in furtherance of the conspiracy" that resulted in the deprivation of a federal right. *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996).

[21] *See* n.4, *supra.*

**B.** **The Amended Complaint States Actionable Claims For Conspiracy In Violation Of 42 U.S.C. § 1985.**

The Sixteenth Cause of Action alleges Four Conspiracies in violation of § 1985(2) and (3). To state a cause of action under 42 U.S.C. § 1985(2), a plaintiff must allege that "two or more persons conspire[d] for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws...." 42 U.S.C. § 1985(2).

The Sixteenth Cause of Action alleges that Addison, Michael, Nifong, Gottlieb, Himan, Wilson, Steel, the DNASI Defendants, the Crisis Management Team Defendants, the SANE Defendants, Graves, Dean, the Duke Police Supervising Defendants, and Duke University conspired to impede or obstruct the due course of justice in North Carolina generally with the intent to deny Plaintiffs the equal protection of the laws in violation of 1985(2). AC ¶¶ 1156-59. Defendants, motivated by race-based invidiously discriminatory motives, violated this statute by conspiring to deprive Plaintiffs of their federally secured rights as alleged elsewhere in the First through Eleventh Causes of Action and by fomenting race-based animus within the Plaintiffs' community. *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Additionally, Sixteenth cause of action alleges that Nifong, Gottlieb, Himan, Clayton, Addison, Michael, the Durham Police Supervising Defendants, the SANE Defendants, the City of Durham, and Duke University conspired to impede or obstruct the due course of justice in North Carolina generally with the intent to intimidate witnesses, including the Plaintiffs, elicit false statements and testimony from Plaintiffs and other witnesses, and to prevent them from testifying truthfully to matters with the general objective of securing Plaintiffs' convictions as principals or accessories in state court for crimes they knew did not happen. AC ¶¶ 1161.

To establish a violation of 42 U.S.C. § 1985(3), a plaintiff must allege that "two or more persons in any State or Territory conspire…(1)for the purpose of depriving, either

directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (2) or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws." 42 U.S.C. § 1985(3).

The Sixteenth Cause of Action alleges that, in violation of 42 U.S.C. § 1985(3) (cl.2), Nifong, Gottleib, Himan, Clayton, Addison, Michael, the Durham Police Supervising Defendants, Steel, the Crisis Management Team Defendants, the Duke Police Supervising Defendants, the SANE Defendants, the City of Durham and Duke University, conspired with others to deprive Plaintiffs of their federal rights with the purpose of targeting "temporary residents" for disparate treatment and abusive enforcement of the criminal laws depriving Plaintiffs of the equal privileges or immunities of national citizenship under the laws thereby violating this statute by conspiring to deprive Plaintiffs of their federally secured rights. AC ¶¶ 1156-1169; *Phillips v. Mabe*, 367 F. Supp. 2d 861, 873 (M.D.N.C. 2005). Plaintiffs also allege in the Sixteenth Cause of Action an independent §1985(3) Claim arising out of animus directed to Plaintiffs status as "temporary residents" and, on that basis, subject them to discriminatory and abusive police tactics, thereby imposing "disabilities of state citizenship" in deprivation of their equal protection and immunities under laws. AC ¶ 1164-65.

The "duly constituted authorities" in this last Cause of Action are the Duke University Police Department and its officers, which were the target of the Chairman's Directive to "f**k those lacrosse players" and an ensuing conspiracy to prevent or hinder the execution of their obligations as the duly constituted authorities in the City of

Durham, North Carolina. It is alleged that these Defendants participated in a conspiracy to prevent or hinder the Duke Police Officers' executions of their obligations.

Defendants argue that claims under both §§ 1985-1986 fail because of an "official policy or custom" relating to the matter must be established to satisfy entity liability and that Plaintiff fails to meet that threshold. Duke Br. §V.B.n.21. They are wrong. Plaintiffs establish the University's liability under *Monell* in four ways, alleged in the Twelfth Cause of Action and discussing in Pls. Opp. Br. (City) § II.B.

Defendants are incorrect to conclude that Plaintiffs' claim under §1985(2) regarding witness intimidation fails because that clause applies only to proceedings in *federal courts*. The argument simply does not apply. The AC alleges a witness tampering conspiracy in violation of the second clause of § 1985(2), which prohibits conspiracies "impeding, hindering, obstructing, or defeating, in any manner, *the due course of justice in any State*." 42 U.S.C. § 1985(2), cl. 2 (emphasis added). A conspiracy to interfere with the truthful testimony of witnesses in state proceedings is covered by this clause. *See Kush v. Rutledge*, 460 U.S. 719, 721 n.1 (1983) ("The second clause of [§1985(2)] . . . applies to witness intimidation in state-court proceedings. The Defendants' argument is directed to the *first* clause of § 1985(2), which applies to witness tampering in federal court proceedings, which is not alleged. Defendants cite no cases barring state-court witness tampering claims from being brought under the second clause of § 1985(2). To the contrary, their cases recognize such causes of action, but dismissed claims that lacked allegations of invidious animus.

### C. The Amended Complaint States A Violation Of 42 U.S.C. §1986.

Plaintiffs' Seventeenth Cause of Action (the "Section 1986 Claims") alleges that the Duke University violated 42 U.S.C. § 1986 by refusing or neglecting to prevent or aid in the preventing of the § 1985 Conspiracies identified in the Sixteenth Cause of Action,

despite having the power and knowledge to do so. The Plaintiffs have stated actionable Section 1986 Claims against the Duke University Defendants, having alleged the predicate § 1985 Conspiracies, in the Sixteenth Cause of Action, as well as the § 1985 elements and facts from with they may be inferred.  AC ¶¶ 1170-88.

### D.     The Amended Complaint Alleges Sufficient Direct And Circumstantial Evidence To Establish An Unlawful Conspiracy.

Plaintiffs respond to the Defendants' assertions or suggestions that *Twombly* creates a heightened pleading requirement in § 1983 Actions.  Plaintiffs address this argument in Plaintiffs Opposition to the SANE Defendants' Brief at §I.(A) and elsewhere.

### E.     The § 1985 Claims Allege Racial Animus Of Two Types.

#### 1.     Section 1985 Prohibits Invidious Animus Against Any Race.

Several Defendants have asserted that only members of a "minority" or "traditionally disadvantaged" group may avail themselves of the protections of § 1985. At step one, by its terms, the statute applies to any person or class of person.  42 U.S.C. § 1985(3) (2000).  Consistent with the statutory language, we have found no cases in this circuit that held that members of other races have no standing to bring a § 1985(3) claim That is consistent with the broader equal protection principles of the statute itself. Further, courts, including this one, have consistently rejected the argument.  *See, e.g., Mabe*, 367 F. Supp. 2d at 873-74.  ( Contention that Plaintiff "cannot rely on §1985(3) because he is not a minority is without merit."); *Waller v. Butkovich*, 605 F. Supp. 1137, 1144-45 (M.D.N.C. 1985) (rejecting the assertion that Section 1985(3) requires the alleged animus be directed at a traditionally disadvantaged group).   In addition, this Court and others have expressly permitted white plaintiffs to bring claims under § 1985 in response to animus against them based on their race or even their perceived racist beliefs. *See Waller*, 605 F.Supp. 1137    The Fourth Circuit's decision in *Harrison v.*

*KVAT Food Management*, urged by many Defendants held only that "victims of purely political conspiracies" do not have standing on that basis to bring a § 1985(3) claim. 766 F.2d 155, 161 (4th Cir. 1985). *Harrison*'s passing mention of "blacks" was merely a counterexample invoked to explain the difference between a victim of political conspiracy and a member of a "race or class" that is protected by § 1985(3). *See Id.*

### 2. Defendants Were Motivated By, Fomented, And Took Advantage Of Racial Animus.

Civil rights conspiracies under § 1985(2) and § 1985(3) require proof of invidious animus based on race or other protected status. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 340 (1993). Defendants argue (1) that Plaintiffs have failed to allege membership in any such class; (2) that Plaintiffs are alleging that "Duke students" or "Duke lacrosse players" are a protected class; or (3) that Plaintiffs have failed to allege animus at all. Each of these arguments is incorrect.

Plaintiffs allege that Defendants' acts in furtherance of the § 1985 conspiracies were motivated by invidious animus based on race and were intended to foment and take advantage of racial animus against Plaintiffs. AC ¶ 1375. Race—any race—is an established protected classification. *See § II.E.(1), infra..* The Amended Complaint is replete with details from which to infer Defendants' invidious racial motives. See, e.g.:

- The Racist Dimension of The Conspiracy To Convict. AC ¶ 566-90.

- Spoilation of DECC Evidence. AC ¶ 568-69.

- Nifong's Acts in Furtherance of the Conspiracy to Fabricate. AC ¶¶ 577-80.

- Brodhead's Acts in Furtherance of the Conspiracy to Fabricate the "Racist" dimension to Mangum's False Rape and the Duke Faculty's Acts in Furtherance of the Conspiracy. AC ¶¶ 581-90.

- Nifong's Public Acts and Statements, AC ¶¶ 502-03.

- Addison Publicly Stigmatized the Plaintiffs, AC ¶ 504-06.

- The Established Policy or Custom of Disseminating Defamatory Posters in Potentially High-Profile Cases, AC ¶ 525-27.

- Duke Officials Publicly Stigmatized the Plaintiffs AC ¶¶ 528-35.

- Duke University's Clergy Publicly Stigmatize the Plaintiffs AC ¶ 554

- Duke University and City of Durham Officials with Final Policymaking Authority Ratified and Condoned the Foregoing Faculty and Employee Statements AC ¶¶ 555-58.

*See also,* AC ¶¶ 500-06; 544-59; 568-69; 570-76; 577-90; 1375. These allegations are based on fact, not "legal conclusion." *See Green v. Maroules*, 211 F. App'x 159, 162-63 (4th Cir. 2006) (holding that plaintiff who alleged she was target of racial profiling and conspiracy to falsely arrest her alleged racial animus and properly stated a claim under § 1985).

Defendants uniformly assert that "invidious racial animus" is not satisfied by deliberate acts designed to "create racial tensions or take advantage of racial animus on the part of others in order to achieve some other objective." City Br. at 32, citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). That is not the holding of *Griffin* which defined the "racial animus" element to require that the alleged "conspiracy . . . must aim at a deprivation of the equal enjoyment of rights secured by the law to all."

There is powerful guidance on this point also from the treatment given to the requirement of all actions brought under 42 U.S.C. § 1982[22] that the plaintiff prove invidious animus based on race or class. With respect to fomenting racial animus "regardless of defendants' ultimate motivation, the fact that they deliberately stirred up and harnessed the racial animosity of others to serve their own ends is sufficient to find a

---

[22] 42 U.S.C. § 1982 was enacted pursuant to Congress' Thirteenth Amendment authority; it secures to all citizens the right, enforceable against private and public defendants, to "inherit, purchase, lease, sell, hold and convey real and personal property.'

violation." *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc*., 41 F.3d 1190, 1194 (7th Cir. 1994); *see also Clark v. Universal Builders, Inc.*, 501 F.2d 324, 331 (7th Cir. 1974) (defendants cannot escape liability for acting with racial animus in violation of § 1982 by "proclaiming that they merely took advantage of a discriminatory situation created by others"); *Ortega v. Merit Ins. Co.*, 433 F. Supp. 135, 140-41 (N.D. Ill. 1977) (quoting *Clark*, 501 F.3d at 331).

## IV.     THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS UNDER STATE LAW AGAINST THE UNIVERSITY DEFENDANTS.

The remaining causes of action asserted against the University Defendants are alleged under North Carolina law.  They include claims for Common Law Obstruction of Justice and Conspiracy, Common Law Abuse of Process and Conspiracy, Intentional Infliction of Emotional Distress and Conspiracy, Breach of Contract, Invasion of Privacy and Conspiracy, Violation of the Financial Privacy Act and Conspiracy, Breach of Fiduciary Duty, Aiding or Abetting the Breach of Fiduciary Duties, Fraud (Actual and Constructive), Negligence, Negligent Supervision, Retention, Training, and Discipline, Negligent Infliction of Emotional Distress, and Negligent Entrustment.

### A.     The Amended Complaint States A Common Law Obstruction Of Justice Claim Against The University Defendants.

The Amended Complaint states a common law obstruction of justice claim.  *Id.* ¶¶ 1189-1202.  To state an obstruction of justice claim under North Carolina law, a plaintiff may allege "any act which prevents, obstructs, impedes or hinders public or legal justice." *Jones v. City of Durham*, 643 S.E.2d 631, 633 (N.C. Ct. App. 2007) (quoting *Broughton v. McClatchy Newspapers, Inc.,* 588 S.E.2d 20, 30 (N.C. Ct. App. 2003)). The cause of action is a broad one, and courts have held that plaintiffs have stated actionable claims in a variety of contexts.  *See, e.g., Jones,* 643 S.E.2d at 633 (claim stated against the City of Durham for its Police Department's failure to produce

34

evidence); *Jackson v. Blue Dolphin Commc'ns of N.C.*, 226 F. Supp. 2d 785, 794 (W.D.N.C. 2002) (cause of action stated upon allegation of soliciting a false affidavit); *Henry v. Deen*, 310 S.E.2d 326, 334 (N.C. 1984) (cause of action stated by allegation of conspiracy to conceal evidence of medical negligence).[23]

The Amended Complaint alleges that Steel, Graves, Dean and Best "prevented, obstructed, impeded, or hindered" public justice in North Carolina by:

1. Manufacturing fabricated, false and misleading investigation reports designed to conceal powerful eyewitness testimony of sworn Duke police officers. *Id.*¶¶466-75.

2. Conspiring with Gottlieb, Himan, Wilson, Nifong, Levicy, Arico, and Dzau to cause Plaintiffs to be subjected to wrongful prosecutions; seizures and searches without probable cause; and ultimately to wrongfully incarcerate Plaintiffs for crimes they knew never happened. *Id.*¶1207-1208.

Defendants do not address this claim in this brief.[24]

### B. The Amended Complaint States A Common Law Abuse Of Process Claim Against The University Defendants.

The Nineteenth Cause of Action states an actionable claim for Common Law Abuse of Process. To state a claim for Abuse of Process, a complaint must allege (1) a

---

[23] Article 30 of Chapter 14 of the North Carolina General Statutes identifies specific obstruction of justice offenses, but the common law claim remains a valid cause of action. *Jackson,* 226 F.Supp. at 794 (citing *In re Kivett,* 309 S.E.2d 442, 462 (N.C. 1983) (holding that Article 30 of Chapter 14 did not abrogate the common law offense of obstruction of justice)); *Burgess v. Busby,* 544 S.E.2d 4, 12, *reh'g den.,* 559 S.E.2d 554 (N.C. Ct. App. 2001) (permitting a civil common law obstruction of justice claim to proceed along with a statutory claim).

[24] *See* n.4, *supra.*

willful act by the defendant, (2) done with bad intent or ulterior motive, (3) after valid process has been issued at defendant's behest, (4) whereby the defendant attempts to use the process to accomplish a purpose for which it was not intended. *Carson v. Moody*, 394 S.E.2d 194 (1990). It is the malicious perversion of a legally issued process whereby a result not lawfully or properly obtainable under it is [intended] to be secured. *Stanback*, 254 S.E.2d 611 (1979) (quoting *Barnette v. Woody*, 88 S.E.2d 223 (1955)); W. Page Keeton, Prosser and Keeton on the Law of Torts, Section 121 (5th ed. 1984) ("The gist of the tort is the misuse of process for an end other than that which it was designed to accomplish").[25] Plaintiffs allege that the University, through Dzau, oversaw the SANE Defendants' fabrication of the SAE and that this was done in order to create a fabricated NT*ID*. AC ¶¶ 1204-108. Defendants do not address this claim in this brief.[26]

### C. The Amended Complaint States An Intentional Infliction Of Emotional Distress Claim Against The University Defendants.

The Twentieth Cause of Action states an actionable claim for Intentional Infliction of Emotional Distress ("IIED"). To state a claim for IIED under North Carolina law, a plaintiff must allege: "(1) extreme and outrageous conduct by the defendant; (2) which is

---

[25] The existence of an ulterior motive, malice or bad intent in getting process issued does not alone give rise to an action for abuse of process. There must also be a willful act by the defendant whereby the defendant attempts to use that process to harass or pressure the plaintiff regarding a matter outside the scope of the original writ. *Melton v. Rickman,* 36 S.E.2d 276 (N.C. 1945). Although many decisions state that the act, such as an extortion attempt, must occur after process issues,8 Professor Keeton states that "[m]ost of these cases probably stand only for the narrower proposition that there must be an overt act and that bad purpose alone is insufficient. Thus a demand for collateral advantage that occurs before the issuance of process may be actionable so long as process does in fact issue at the defendants behest, and as a part of the attempted extortion. W. Page Keeton, Prosser and Keeton on the Law of Torts, § 212 (5th ed 1984); *See also*, *Carson, 394 S.E.2d 194.*

[26] *See* n.4, s*upra.*

intended to and does in fact cause (3) severe emotional distress." *W.E.T. v. Mitchell,* No. 1:06CV487, 2007 WL 271294, at *8 (M.D.N.C. Sept. 14, 2007) (citing *Harris v. County of Forsyth*, 921 F.Supp. 325, 335-36 (M.D.N.C. 1996)); *see also Waddle v. Sparks*, 414 S.E.2d 22, 27 (N.C. 1992) (stating same essential elements for IIED). "A claim may also exist where the defendant's actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress." *W.E.T., at* *8 (citing to *Hogan v. Forsyth Country Club Co.*, 340 S.E.2d 116, 119-20 (N.C. Ct. App. 1986)). "It is a question of law for the court to determine, from the materials before it, whether the conduct complained of may be reasonably found to be sufficiently outrageous as to permit recovery." *Id.* (citing *Beck v. City of Durham*, 573 S.E.2d 183, 191 (N.C. Ct. App. 2002)). As distilled by the North Carolina Supreme Court, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *West v. King's Dep't Store, Inc.*, 365 S.E.2d 621, 625 (citing *Dickens v. Puryear*, 276 S.E.2d 325, 332 (N.C. 1981)) (quoting Restatement (Second) of Torts § 46 (1965)).

The University Defendants argue for dismissal of Plaintiffs' IIED Claim, contending that, in and of itself, reporting a crime to the police is not "extreme and outrageous." Plaintiffs allege that Defendants Brodhead, Burness, Dzau and Steel, actively spoke out in public to prop up allegations they knew to be false, while refusing to acknowledge evidence to the contrary. This went on for 13 months, far longer and far more egregious than in *West*. Defendants do not address this cause of action in this brief.[27]

---

[27] *See* n.4, s*upra.*

**D.**    **The Amended Complaint States A Breach Of Contract Claim Against The University Defendants.**

The Twenty-First Cause of Action states an actionable claim for Breach of Contract. To state a claim for breach of contract, plaintiffs must allege: "(1) existence of a valid contract; and (2) breach of the terms of that contract." *Poor v. Hill*, 530 S.E.2d 838, 843 (N.C. Ct. App. 2000) (citing *Jackson v. Cal. Hardwood Co.*, 463 E.2d 571, 572 (N.C. Ct. App. 1995)).

The Twenty-First Cause of Action states a Breach of Contract claim. To state a breach of contract claim Under North Carolina law, there must be (1) a valid contract; and (2) breach of the terms of that contract. *Elina Adoption Servs. Inc. v. Carolina Adoption Servs., Inc.*, No. 1:07CV169, 2008 WL 4005738, at *3 (M.D.N.C. Aug. 25, 2008) (citing *Poor v. Hill,* 530 S.E.2d 838, 843 (N.C. Ct. App. 2000)). "A valid contract exists when there is an agreement based on a meeting of the minds and sufficient consideration." *Id.* (citing *Creech ex rel. Creech v. Melnik*, 556 S.E .2d 587, 591 (N.C. Ct. App. 2001)). It is well settled that North Carolina recognizes an actionable claim for breach of an educational contract against a university. *Ryan v. Univ. N.C. Hosps.*, 494 S.E.2d 789 (N.C. Ct. App. 1998), *disc. rev. improvidently allowed*, 507 S.E.2d 39 (N.C. 1998). The only limit North Carolina courts have placed on such claims is that the student must allege a breach of a specific aspect of the educational contract that would not require the court to conduct an "inquiry into the nuances of educational processes and theories." *Id.* at 791. This limitation is merely the application of the rule that North Carolina does not recognize educational malpractice claims. *See generally id.* at 790-791. Thus, when alleging a breach of educational contract, "the plaintiff must do more than simply allege that the education was not good enough. Instead, he must point to an identifiable contractual promise that the University failed to honor." *Id.* at 791. The Amended Complaint sufficiently alleges that the University failed to honor identifiable

contractual promises which do not require an "inquiry into the nuances of educational process and theories." *Id.*

The seminal North Carolina case that identified an actionable claim for breach of an educational contract—relied on and quoted extensively from the Seventh Circuit's opinion in *Ross v. Creighton Univ.,* 957 F.2d 410 (7th Cir.1992). In *Ross*, the Seventh Circuit surveyed the educational contract decisions of every jurisdiction in the country. Among other things, the Seventh Circuit concluded that:

> The basic legal relation between a student and a private university or college is contractual in nature. The catalogues, bulletins, circulars, and regulations of the institution made available to the matriculate become a part of the contract. Indeed, there seems to be no dissent from this proposition.

*Id.* at 416. In essence, Duke University has relied on two federal court decisions that, as they relate to Plaintiffs' claims, have been overruled by the North Carolina Courts' decision in a case directly on point.

### E.     The Amended Complaint States An Invasion Of Privacy Claim Against The University Defendants.

The Twenty-Second Cause of Action states an actionable claim for Invasion of Privacy. In North Carolina, "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Smith v. Jack Eckerd Corp.*, 400 S.E.2d 99, 100 (N.C. Ct. App. 1991) (quoting Restatement (Second) of Torts § 652B (1977)); *see also Miller v. Brooks,* 472 S.E.2d 350, 354 (N.C. Ct. App. 1996) (quoting *Smith*). Plaintiffs have alleged that University employees invaded Plaintiffs' privacy by aiding in an illegal search and

allowing harassment to continue on campus. Defendants do not argue for dismissal of this cause of action in this brief.[28]

**F.      The Amended Complaint States A Breach Of Fiduciary Duty Claim Against The University Defendants.**

The Twenty-Third Cause of Action states an actionable claim for Breach of Fiduciary Duty. To state a claim for breach of fiduciary duty, a plaintiff must allege that a fiduciary relationship existed and that the fiduciary failed to " 'act in good faith and with due regard to [plaintiff's] interests.' " *White v. Consol. Planning, Inc.*, 603 S.E.2d 147 (N.C. Ct. App. 2004) (quoting *Vail v. Vail*, 63 S.E.2d 202, 206 (N.C. 1951)), *see also Toomer v. Branch Banking and Trust Co*, 614 S.E.2d 328, 337 (N.C. Ct. App. 2005) (quoting *White*).

Duke University has a fiduciary relationship with all students and faculty who maintain Duke Cards. Plaintiffs, like many others, put money into an account linked to their cards, which could then be used to purchase items, and a transaction record was maintained by the Duke Card Office that reflected all activity on the Card. *See* Cmpl. ¶¶ 853-856, 1235-1239. Duke University gave the transaction records from Plaintiffs' Cards to law enforcement agencies without a subpoena or any request from the agency. Cmpl. ¶¶ 853, 857, 1242-6. Additionally, Duke and the law enforcement agencies took vigorous steps to hide the fact that the records were submitted without a court order and then relied on by the police in their attempt to put Plaintiffs in jeopardy of being subjected to a wrongful prosecution when they filed notice and then conducted a hearing to subpoena documents already in their possession; they did this without once admitting that Duke officials had previously volunteered and given the records to the Durham Police. Cmpl.§ XXXVIII Generally. Plaintiffs' analysis of this Cause of Action is

---

[28] *See* n.4, s*upra.*

more fully developed in Plaintiffs' Opposition to DUPD Motion to Dismiss ("Pl. Op. to DUPD § V.C."), and, in the interests of judicial economy, Plaintiffs incorporate that analysis here.

### G. The Amended Complaint States An Actionable Fraud Claim Against The University Defendants.

#### 1. Actual Fraud.

The Twenty-Fourth Cause of Action states an actionable claim for Fraud. "Fraud may be actual or constructive." *Forbes v. Neal*, 649 S.E.2d 382, 387 (N.C. 2007) (citing *Watts v. Cumberland County Hosp. Sys., Inc.*, 343 S.E.2d 879, 883 (N.C. 1986)). To state a claim for Actual Fraud, Plaintiff must allege "(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Id.* (quoting *Ragsdale v. Kennedy*, 209 S.E.2d 494, 500 (N.C. 1974)). Plaintiffs have alleged that the University's issuance of letters with notices of a subpoena for the financial information associated materials that the University already turned over to the police months earlier. The University still did not advise Plaintiffs that the information from their financial records had been unlawfully released when Plaintiffs moved to quash the subpoena. These were concealments of material facts – omissions made in the face of a duty which is imposed by statute (N.C.G.S. § 53B) – done with the intent to deceive; and did deceive; causing financial loss. Defendants do not address this claim in this brief.[29]

---

[29] *See* n.4, s*upra*.

## H.    The Amended Complaint States A Negligence Claim Against The University Defendants.

The Twenty-Ninth, Thirtieth and Thirty-Seventh Causes of Action state actionable Negligence claims against the University Defendants.[30]  The Amended Complaint states an actionable negligence claim against the University Defendants.   The University Defendants argue that the Plaintiffs' negligence claims should be dismissed because, they contend, they owed Plaintiffs no "duty".   Their argument fails because, under North Carolina law, "every person" who engages in an active course of conduct that creates the risk of foreseeable harm to other persons, owes a duty of care to such other persons.

North Carolina's common law of ordinary negligence "'imposes upon every person *who enters upon an active course of conduct the positive duty to exercise ordinary care to protect others from harm*, and calls a violation of that duty negligence.'"  *Peal v. Smith*, 444 S.E.2d 673, 677 (N.C. Ct. App. 1994) (emphasis in the original) (quoting *Hart v. Ivey*, 420 S.E.2d 174, 178 (N.C. 1992)).   "The duty to protect others from harm arises whenever one person is by circumstances placed in such a position towards another that anyone of ordinary sense who thinks will at once recognize that if he does not use ordinary care and skill in his own conduct with regard to those circumstances, he will cause danger of injury to the person or property of the other."  *Lumsden v. U.S.*, 555 F.Supp.2d 580, 589 (E.D.N.C. May 7, 2008) (quoting *Quail Hollow E. Condo. Ass'n v. Donald J. Scholz Co.*, 268 S.E.2d 12, 15 (N.C. Ct. App. 1980)).    "Every man is in general bound to use care and skill in his conduct wherever the reasonably prudent person in his shoes would recognize unreasonable risk to others from failure to use such care."

---

[30] To state a negligence claim, a plaintiff must allege that (1) defendant owed plaintiff a duty of care, (2) the defendant breached that duty, and (3) defendant's breach was the actual and proximate cause of plaintiff's injury.  *Cameron v. Merisel Props*, Inc., 652 S.E.2d 660, 664 (N.C. Ct. App. 2007) (quoting *Thomas v. Weddle*, 605 S.E.2d 244 (N.C. Ct. App. 2004)).

*Id.* (quoting *Estate of Mullis v. Monroe Oil Co.*, 505 S.E.2d 131, 137 (N.C. 1998)). Thus, a duty of care arises from any conduct where the risk of harm to another is both unreasonable and foreseeable. *Mullis*, 505 S.E.2d at 137. Therefore, it is every person's duty is to avoid foreseeable, unreasonable risk of harm to others. *Id.* (quoting Justice Cardozo's "classic analysis of duty" in *Palsgraf v. Long Island R. Co.*, 162 N.E. 99 (N.Y. 1928) ("*The risk reasonably to be perceived defines the duty to be obeyed… .*") (emphasis in original)).

The test for whether Plaintiffs have stated a claim for negligence "is no more than whether [defendant(s) / or his/her/their agents], in undertaking to perform an active course of conduct, exercised such ordinary care as is required of a reasonable, prudent person under the circumstances." *Lumsden*, 555 F. Supp. 2d at 589 (alteration not in original). Taking as true the allegations contained in the Complaint, these defendants owed a duty of ordinary care to plaintiffs. The Amended Complaint alleges the following negligent conduct of University Defendants:

- The Amended Complaint alleges negligence by virtue of a special relationship created out of systems of power and knowledge

- Defendants had a duty to act with respect to the known and foreseeable dangers of Mangum and her allegations

- Defendants had a duty to act with respect to the known and foreseeable dangers relating to Nixon, Gottlieb, Clayton, Himan, Himan's Chain of Command, The Durham Police Supervising Defendants and the City of Durham's policies and customs;

- Defendants had a duty to act with respect to the known and foreseeable dangers relating to Levicy, Arico Manly, Dzau and the policies and customs of DUHS;

- Defendants had a duty to act with respect to the known and foreseeable dangers relating to the polices and customs of the Duke Police Department;

- Defendants had a duty to act with respect to the known and foreseeable dangers relating to the Durham Police Department's approach to Zero Tolerance;

- The University's had a duty to provide a qualified, competent supervisor familiar with the Plaintiffs' legal rights and with standard investigative practices to oversee the investigation and particularly to intervene to prevent Gottlieb's likely retaliatory efforts;

- The University's had a duty to notify Plaintiffs' parents of the accusations;

- The University's had a duty to safeguard Plaintiffs' private email accounts, private financial records, private banking records, and materials (including their pictures) that were made publicly available by virtue of the Plaintiffs' membership in the University's Men's lacrosse program.

- The University's had a duty to evaluate the skill, experience or judgment of legal counsel that the University's Dean of Students Administrators recommended to the Plaintiffs and to identify conflicts with her own interests in avoiding liability for her negligent legal advice;

- The University's had a duty to evaluate course of action to be pursued by the University's chosen counsel, or to advise the Plaintiffs after selecting counsel that they should consider obtaining non-conflicted counsel independent of that offered by a Dean of Students with a conflict arising out of her potential liability for the negligent advice she have the residents;

- Having undertaken to recommend counsel, the University's had a duty to exercise due care in doing so;

- The University's had a duty to correct the false and misleading statements, which Administrators knew to be demonstrably false, made to the media by the University's faculty and staff who were acting in the course and scope of their employment; and

- The University's had a duty to clarify that those faculty members and staff did not speak for the University when they falsely condemned Plaintiffs in the minds of millions of people;

- Defendants had a duty to act with respect to the known and foreseeable dangers relating to the Chairman's Directive; and

- The Defendants' had a duty to hire retain, supervise, and train those whose negligence caused the Plaintiffs' injuries and damages as alleged herein.

These allegations are more than sufficient to state actionable negligence claims against the University Defendants; as such, their motion to dismiss Plaintiffs' negligence claims must be denied. Defendants only focus on two of these claims. They first assert that Plaintiffs allege a special relationship based upon their standing on the lacrosse team. Defendants state "In a special relationship, 'the defendant who, correspondingly, holds considerable power over the plaintiff's welfare. In addition such relations have often involved some existing or potential economic advantage to the defendant'" Duke Univ. Def. Br. at 47[31]

## I.     Plaintiffs Have Stated A Claim For Legal Negligence

Defendants throw away their second argument in a footnote. They note that Plaintiffs are asserting a voluntary undertaking by an administrator as a basis for negligence. It is true that North Carolina's common law of ordinary negligence "'imposes upon every person *who enters in an active course of conduct the positive duty to exercise ordinary care to protect others from harm*, and calls a violation of that duty negligence,'"

---

[31] While it is true that a special relationship between the athletes and students typically arise due to the dangers on the field over which the school has control, and from which most of the financial benefit to the defendant arises, that is not the sole or primary basis of Plaintiffs' special relationship theory. Instead it is based primarily on the University's negligent legal advice, control over its own investigation, and the hospital's control over fabrication of evidence. The University also placed the Plaintiffs in the danger through those failures. If the University had prevented a known rogue cop from taking over the case, had not advised the students not to get private counsel when Dean Sue knew police were identifying "suspects", had not covered up the conclusions of its own investigation, or any of the myriad failings documented in the complaint, the harms would not have been done.

*Peal v. Smith*, 444 S.E.2d 673, 677 (N.C. Ct. App. 1994) (emphasis in the original) (quoting *Hart v. Ivey*, 420 S.E.2d 174, 178 (N.C. 1992)), and Dean Wasiolek's statement to the Plaintiffs team that they would not need counsel constitutes such an undertaking and the harm would be the resulting scandal. But Dean Wasiolek is a licensed attorney, and as such, the Plaintiffs relied on her advice as legal advice; in other words they believed, and she should have known, that there was an "implied attorney client privilege[32]" between them and that she was giving them advice as a lawyer. The Ethical rules of North Carolina ask any lawyer who does not feel competent in an area to either tell the client or ask advice Dean Sue did neither. And there is more. Wasiolek had a vested interest in the matter. She knew the next day that the interrogations turned the three renters into suspects. She had given negligent legal advice, but then compounded it by spreading it more broadly. Wasiolek is liable for the harm that flowed from her negligent legal advice, and Duke University is liable for that conduct done in the course and scope of her employment, and by virtue of her position as an official or managing employee with respect to students' legal concerns.

### J. The Amended Complaint States A Negligent Supervision, Retention, Training, And Discipline Claim Against The University Defendants.

The Thirty-Eighth Cause of Action states an actionable claim for Negligent Supervision Claim against the University Defendants.[33] Defendants do not address this claim in this brief.[34]

---

[32] An attorney client privilege can be implied by the conduct of the parties. *Cornelius v. Helms*, 421 S.E2d 338 (N.C. App, 1995).

[33] North Carolina recognizes an employer's negligent supervision and retention of an employee as an independent tort that renders employers liable to third parties injured as a result of their employees' incompetence. *See Smith v. Privette*, 495 S.E.2d 395, 398 (N.C. Ct. App. 1998) (citing *Braswell v. Braswell*, 410 S.E.2d 897, 903 (N.C. 1991)). To state a claim for negligent supervision, a plaintiff must allege that: (1) an incompetent

**K.**      **The Amended Complaint States A Negligent Infliction Of Emotional Distress Claim Against The University Defendants.**

The Twenty-Seventh Cause of Action, which Duke does not address in any of its three briefs, and Thirty-Ninth Cause of Action state actionable claims for Negligent Infliction of Emotional Distress ("NIED") against the University Defendants for the harm caused by the Police investigation.[35] Defendants do not address this claim in this brief.[36]

## V.      RESPONDEAT SUPERIOR LIABILITY

Under North Carolina law, a principal is liable for the torts of his agent in three situations: "(1) when the agent's act is expressly authorized by the principal; (2) when the agent's act is committed within the scope of his employment and in furtherance of the principal's business; or (3) when the agent's act is ratified by the principal." *Hogan v. Forsyth Country Club Co.,* 340 S.E.2d 116, 121-22 (N.C.App. 1986) (citations omitted).

---

employee committed a tortious act resulting in injury to the plaintiff, and that (2) prior to the tortious act, the employer knew or had reason to know of the employee's incompetence. *Privette*, 495 S.E.2d at 398 (citing *Graham v. Hardee's Food Sys., Inc.*, 465 S.E.2d 558, 560 (N.C. Ct. App. 1996)).

[34] *See n.* 4, *supra.*

[35] To state a cause of action for Negligent Infliction of Emotional Distress ("NIED"), the plaintiff must allege that the defendant (1) negligently engaged in conduct, (2) under circumstances in which it was reasonably foreseeable that the conduct would cause the plaintiff severe emotional distress; and (3) the conduct caused the plaintiff severe emotional distress. *Johnson v. Ruark Obstetrics & Gynecology Assoc.*, 395 S.E.2d 85, *reh. den.*, 399 S.E.2d 133 (1990). The term "severe emotional distress" means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by a professional trained to do so. *Sorrells v. M.Y.B. Hospitality Ventures*, 435 S.E.2d 320, 322 (1993); *Johnson*, 395 S.E.2d 85.

[36] *See n.* 3, *supra.*

All of the conduct of Duke University's employees named in this action is attributable to Duke University under each of the three theories identified in *Hogan*.

## VI.  DUKE UNIVERSITY DEFENDANTS MAKE NO OTHER ARGUMENT FOR DISMISSAL; PLAINTIFFS REQUEST LEAVE TO COMMENCE DISCOVERY.

Duke University Defendants have made no other arguments in support of dismissal of Plaintiffs' claims.  Defendants have, however, requested oral argument on their motions, pointing to the complexity of the issues raised by the Amended Complaint.  Any complexity that Defendants could not clarify in the course of the 825 pages that has already been extended to them likely will not clarify in oral argument.  That is particularly true if, at oral argument, Defendants persist in recasting Plaintiffs' allegations to find a foothold for their arguments.  With respect, Plaintiffs request that the Defendants' request for oral argument be denied, and Plaintiffs request leave to schedule the Rule 26(f) discovery conference.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motions to Dismiss, deny Defendants' request for oral argument, and grant Plaintiffs' request for leave to schedule and conduct the Rule 26(f) discovery conference.

Dated:  October 10, 2008

Respectfully submitted,

**EKSTRAND & EKSTRAND LLP**

/s/ Robert C. Ekstrand

_____

Robert C. Ekstrand, Esq. (NC Bar #26673)
Attn:  Stefanie A. Sparks
811 Ninth Street, Suite 260
Durham, North Carolina 27705
Email:  rce@ninthstreetlaw.com
Email:  sas233@law.georgetown.edu
Phone: (919) 416-4590

*Counsel for Plaintiffs Ryan McFadyen, Matthew Wilson, and Breck Archer*

# UNITED STATES DISTRICT COURT
## FOR THE
## MIDDLE DISTRICT OF NORTH CAROLINA

RYAN MCFADYEN, ET AL.,

    Plaintiffs,

v.

DUKE UNIVERSITY, ET AL.,

    Defendants.

**Civil Action No. 1:07-cv-953**

## CERTIFICATE OF SERVICE

I hereby certify that, on October 10, 2008, I electronically filed the foregoing PLAINTIFFS' OPPOSITION TO THE UNIVERSITY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

James Donald Cowan, Jr.
Ellis & Winters, LLP
100 North Greene Street, Suite 102
Greensboro, NC  27401
***Counsel for the University Defendants***

Dixie Wells
Ellis & Winters, LLP
100 North Greene Street, Suite 102
Greensboro, NC  27401
***Counsel for the University Defendants***

Jamie S. Gorelick
Wilmer Cutler Pickering Hale and Dorr, LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
***Counsel for the University Defendants***

Jennifer M. O'Connor
Wilmer Cutler Pickering Hale and Dorr, LLP
1875 Pennsylvania Ave., N.W.
Washington, DC  20006
***Counsel for the University Defendants***

Paul R.Q. Wolfson
Wilmer Cutler Pickering Hale and Dorr, LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
***Counsel for the University Defendants***

William F. Lee
Wilmer Cutler Pickering Hale and Dorr, LLP
60 State Street
Boston, MA  02109
***Counsel for the University Defendants***

Dan J. McLamb
Yates, McLamb & Weyher, LLP
One Bank of America Plaza, Ste 1200
421 Fayetteville Street
Raleigh, NC 27601
***Counsel for the Sane Defendants***

Reginald B. Gillespie, Jr.
Faison & Gillespie
P.O. Box 51729
Durham, NC 27717
***Counsel for City of Durham, North Carolina***

Patricia P. Kerner
Troutman Saunders, LLP
434 Fayetteville Street, Suite 1900
Raleigh, NC 27601
**Counsel for Steven Chalmers, Patrick Baker, Beverly Council, Ronald Hodge, Jeff Lamb, Stephen Mihaich, Michael Ripberger, Laird Evans, and Lee Russ**

D. Martin Warf
Troutman Sanders LLP
P.O. Drawer 1389
Raleigh, North Carolina 27602
**Counsel for Steven Chalmers, Patrick Baker, Beverly Council, Ronald Hodge, Jeff Lamb, Stephen Mihaich, Michael Ripberger, Laird Evans, and Lee Russ**

James B. Maxwell
Maxwell, Freeman & Bowman
P.O. Box 52396
Durham, NC  27717-2396
**Counsel for David Addison, Kammie Michael, Richard D. Clayton and James T. Soukup**

Joel M. Craig
Kennon, Craver, Belo, Craig & McKee
4011 University Drive, Suite 300
Durham, NC 27707
**Counsel for Benjamin W. Himan**

Edwin M. Speas, Jr.
Poyner & Spruill, LLP
P.O. Box 10096
Raleigh, NC 27605-0096
**Counsel for Mark Gottlieb**

Eric P. Stevens
Poyner & Spruill, LLP
P.O. Box 10096
Raleigh, NC 27605-0096
**Counsel for Mark Gottlieb**

Kearns Davis
Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P.
P.O. Box 26000
Greensboro, NC  27420
***Counsel for DNA Security, Inc. and Richard Clark***

Robert J. King, III
Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P.
P.O. Box 26000
Greensboro, NC  27420
***Counsel for DNA Security, Inc. and Richard Clark***

Linwood Wilson
**\*\* Address Redacted Pursuant to Local Rule**

I further certify that I caused the foregoing document to be served by first-class mail, postage prepaid, to the following non CM/ECF participants:

Paul R. Dickinson, Jr.
Lewis & Roberts, PLLC
5960 Fairview Road, Suite 102
Charlotte, NC  28210
***Counsel for Brian Meehan***

James A. Roberts, III
Lewis & Roberts, PLLC
1305 Navaho Drive, Suite 400
Raleigh, NC  27609-7482
***Counsel for Brian Meehan***

Roger E. Warin
Steptoe & Johnson, LLP
1330 Connecticut Avenue, NW
Washington, DC 20003
***Counsel for City of Durham, North Carolina***

Robert A. Sar
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2301 Sugar Bush Road, Suite 600
Raleigh, NC  27612
*DNA Security, Inc.*

Nicholas J. Sanservino, Jr.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2301 Sugar Bush Road, Suite 600
Raleigh, NC  27612
*DNA Security, Inc.*


Respectfully submitted,

**EKSTRAND & EKSTRAND LLP**

/s/ Robert C. Ekstrand
Robert C. Ekstrand, Esq.
NC Bar #26673
811 Ninth Street, Suite 260
Durham, North Carolina 27705
Email:  rce@ninthstreetlaw.com
Phone: (919) 416-4590
*Counsel for Plaintiffs*