# UNITED STATES DISTRICT COURT
## FOR THE
## MIDDLE DISTRICT OF NORTH CAROLINA

RYAN McFADYEN, et al.,

     Plaintiffs,

          v.

DUKE UNIVERSITY, et al.,

     Defendants.

Civil Action No. 1:07-cv-953

---

## PLAINTIFFS' OPPOSITION TO THE SANE DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

---

Dated:  October 10, 2008

**EKSTRAND & EKSTRAND LLP**
Robert C. Ekstrand (NC Bar #26673)
Attn. Stefanie A. Sparks
811 Ninth Street, Suite 260
Durham, North Carolina  27705

***Counsel for Plaintiffs Ryan McFadyen,
Matthew Wilson, and Breck Archer***

# TABLE OF CONTENTS

TABLE OF CONTENTS ...........................................................................................i

STATEMENT OF THE CASE ............................................................................. 1

NATURE OF THE PROCEEDINGS ................................................................. 1

STATEMENT OF THE FACTS ......................................................................... 2

QUESTIONS PRESENTED ................................................................................ 6

ARGUMENT ......................................................................................................... 7

    I.    STANDARD OF REVIEW ....................................................................... 7

        A.  *Twombly* Does Not Impose A Heightened Pleading Requirement. ............. 8

    II.    THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS UNDER FEDERAL LAW AGAINST THE SANE DEFENDANTS. .......................... 10

        A.  The Amended Complaint States Actionable Section 1983 Claims Against The SANE Defendants. ............................................................................. 10

               1.  The First And Second Causes Of Action State Actionable Section 1983 Claims For Subjecting Plaintiffs To Unconstitutional Searches And Seizures In Violation Of The Fourth And Fourteenth Amendments. .. 12

               2.  The Third Cause Of Action States An Actionable Section 1983 Claim For Abuse Of Process Designed To Coerce Plaintiffs Into Submitting To Interrogation. .................................................................................... 13

               3.  The Amended Complaint Alleges A § 1983 "Stigma-Plus" Claim Against Arico And, Through Her, Duke University. ............................ 13

               4.  The Sixth, Seventh And Fifteenth Causes Of Action State Section 1983 Conspiracy Claims Against The SANE Defendants. ............................ 14

               5.  The SANE Defendants Arguments For Dismissal Of Plaintiffs' Section 1983 Claims All Fail. ........................................................................... 16

                    a.  The Fabrications And Material Omissions Were "Necessary" To The Judicial Findings That Caused The NTID Order And Warrant To Issue. ........................................................................................... 16

                    b.  Plaintiffs Do Not "Concede" That Probable Cause Existed Without Defendants' Fabrications. .............................................................. 17

      c. The SANE Defendants Are Liable For The Deprivations Caused By Their Conspiracy With Durham Police. .......................................... 18

      d. The Amended Complaint Alleges Ample Evidence Of A "Meeting Of The Minds." .............................................................................. 18

   6. The Ninth Cause Of Action States A § 1983 Retaliation Claim. ......... 24

      a. Plaintiffs Engaged In Conduct Protected By The First Amendment. ....................................................................................................... 25

      b. Defendants' Retaliatory Conduct Adversely Affected The Plaintiffs' Constitutionally Protected Conduct. ............................. 25

   7. The Tenth Cause Of Action States An Actionable Section 1983 Claim Against The University Defendants For Depriving Plaintiffs Of The Privileges And Immunities Afforded To North Carolina Citizens In Violation Of 42 U.S.C. § 1983. ........................................................... 26

III. THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS AGAINST THE SANE DEFENDANTS FOR PARTICIPATION IN CIVIL RIGHTS CONSPIRACIES. ............................................................... 27

  A. Conspiracies In Violation Of 42 U.S.C. § 1983. ....................................... 27

  B. The Amended Complaint States Actionable Claims For Conspiracy In Violation Of 42 U.S.C. § 1985. ............................................................... 28

   1. The Amended Complaint States A Violation Of 42 U.S.C. §1986. ...... 30

   2. The Amended Complaint Alleges Sufficient Direct And Circumstantial Evidence To Establish An Unlawful Conspiracy. ................................ 31

IV. THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS UNDER STATE LAW AGAINST THE SANE DEFENDANTS. ................................ 31

  A. The Amended Complaint States a Common Law Obstruction of Justice Claim Against The SANE Defendants. ..................................................... 31

  B. The Amended Complaint States A Common Law Abuse Of Process Claim Against The SANE Defendants. .............................................................. 35

  C. The Amended Complaint States An Intentional Infliction Of Emotional Distress Claim Against The SANE Defendants. ........................................ 36

  D. The Amended Complaint States A Civil Conspiracy Claim. .................... 40

E.   The Amended Complaint States A Negligence Claim Against The SANE Defendants. ................................................................................................. 41

F.   The Amended Complaint States A Negligent Supervision, Retention, Training, And Discipline Claim Against The SANE Defendants. ............ 47

G.   The Amended Complaint States A Negligent Infliction Of Emotional Distress Claim Against The SANE Defendants ........................................ 48

CONCLUSION ............................................................................................................. 49

## STATEMENT OF THE CASE

The Amended Complaint describes an action arising out of a combination of actors and entities referred to as the Consortium. For thirteen months beginning in March 2006, the Consortium's ultimate objective was to railroad the Plaintiffs and their 44 teammates into convictions as either principles or accomplices to a horrific, violent crime they knew never happened. The allegations describe a deliberate, malicious, and calculating conspiracy to convict. Acting individually and in concert, Defendants concealed exonerating evidence, manufactured inculpatory evidence, and stigmatized the Plaintiffs by subjecting them to public outrage, public condemnation, and infamy in the eyes of millions of people. Defendants' abuse of process and callous disregard for and deliberate indifference to Plaintiffs' constitutional rights shocks the conscience. Each dimension of the conspiracy was also facilitated by the Defendants' refusal to intervene when they knew of the wrongs conspired to be done to Plaintiffs, and had the power to prevent or aid in preventing them. Instead, they 'turned a blind eye' and did nothing.

## NATURE OF THE PROCEEDINGS

Plaintiffs filed this action on December 18, 2007 and amended that filing on April 17, 2008. Pursuant to a request from this Court regarding the location of the audio and video exhibits embedded within the First Amended Complaint ("AC"), Plaintiffs file the AC again on April 18, 2008 with the embedded exhibits as separate documents. Except for the location of the exhibits, the two "First Amended Complaints" are identical. All Defendants filed Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b) (6) on July 2, 2008. This Memorandum is filed pursuant to the Court's Order of October 7, 2008 [Document #72], granting Plaintiffs' Motion for Leave to File Opposition Briefs

[Document #71], and authorizing Plaintiffs to file their Responses on or before October 10, 2008.[1]

## STATEMENT OF THE FACTS

The "SANE" Defendants[1] include Tara Levicy, Julie Manly, Theresa Arico, and three corporate entities alleged to be liable for their conduct: PDC, DUHS, and Duke University.

- **Julie Manly, M.D.,** is, and at all times relevant to this action, was acting as a member of the DUHS House Staff and an employee of the PDC and Duke University, with supervisory and policymaking authority with respect to Levicy, Arico, DUHS, and Duke University record-keeping personnel. Manly provided and/or supervised forensic medical evidence collection and analysis services with respect to the police investigation of Mangum's accusations. AC ¶ 36.

- **Theresa Arico, R.N.,** is, and at all times relevant to this action, was a clinical nurse employed by DUHS and Duke University as Supervisor of DUMC's SANE services, with supervisory and policymaking authority with respect to Duke University's SANE services, record keeping, and witness services provided by Levicy and Manly in the investigation of Mangum's allegations. AC ¶ 37.

- **Tara Levicy, R.N.** was, employed by Duke University as a member of the DUHS and Duke University nursing staff and the DUHS SANE program as a SANE-in-Training. Levicy provided forensic medical evidence collection and analysis services in the investigation of Mangum's false accusations. AC ¶ 38.

---

[1] This Opposition Brief is filed in response to SANE Defendants' Motion to Dismiss [Document #47] and supporting brief [Document #48]. SANE Defendants' supporting brief is cited herein as "SANE Br." and their co-defendants' supporting briefs are cited herein as: "City Br.," "Gottlieb Br.," "City Super. Br.," "DNASI Br.," "Duke Univ. Br." "DUPD Br.," "Himan Br.," "SMAC Br.," "Hodge Br.," and "Wilson Br."

[1] Defendant Dzau is a policymaking official for Duke University relating to all matters relating to the University's hospital system, which includes the provision of forensic SANE services. Because Dzau is alleged to be a member of the Crisis Management Team that orchestrated the University's conduct with respect to the investigation, Dzau is classified in the AC as a CMT Defendant.

- **Duke University Health Systems, Inc. ("DUHS")** is an independent contractor retained by the City of Durham to provide forensic medical evidence collection and analysis services with respect to the investigation of Mangum's false accusations. AC ¶ 34.

- **The Private Diagnostic Clinic, PLLC ("PDC")** is a corporation whose members are healthcare providers with privileges at DUHS facilities. At all time relevant to this action, the PDC was an independent contractor retained by the City of Durham and/or Duke University to provide competent medical personnel to administer and supervise the provision of forensic medical evidence collection and analysis services in the investigation of Mangum's accusations; in this capacity, the PDC acted under color of state law. AC ¶ 35.

With respect to the SANE Defendants, the Amended Complaint specifically alleges that they were an integral part of the conspiracy to frame innocent young men for crimes they knew never happened. *Id.* ¶¶ 1-2, 974. The SANE Defendants conspired with District Attorney Michael Nifong, Sergeant M.D. Gottlieb, and Investigator Benjamin Himan to cause a legal process directed to the Plaintiffs to be issued in the form of the Non-Testimonial Identification ("NTID Order"), pursuant to N.C. GEN. STAT. § 15A-27 (2008) *et seq.*, on March 23, 2006. *Id.* ¶ 907.[2] At the time Gottlieb, Himan, and Nifong agreed to seek the NTID Order from the court, they all knew, among other things, that probable cause did not exist. *Id.* ¶ 909. Levicy and Arico agreed to provide statements asserting that the medical evidence corroborated the fabricated account that Gottlieb and Himan incorporated in the NTID Affidavit in order for the NTID Order to be granted. *Id.* ¶¶ 779-81, 784-99.

Specifically, to prop up the fabricated account in the NTID Affidavit, Levicy, Manly, Arico, Dzau, DUHS, and Duke University agreed to falsify and alter the Sexual

---

[2] The SANE defendants do not dispute that the NTID Order caused the Plaintiffs to be seized and searched within the meaning of the Fourth Amendment. The AC alleges that the NTID Order compelled the Plaintiffs to surrender themselves to the Durham Police and submit to cheek swabbings to obtain DNA samples, to submit to "mug shot" photographing of their fact, and to disrobe for purposes of close physical inspection and photographing of their bodies. *Id.* ¶ 908.

Assault Examination Report ("SAER"), Mangum's written statement, and evidence they hoped would emerge from the DNA testing. *Id.* ¶¶ 786-99, 913, 996. Levicy fabricated a forensic medical observation that the SAE revealed evidence of penetrating blunt force trauma. Her supervisor Arico, had already echoed support publicly for this false claim in Arico's on-the-record *Durham Herald Sun* interview, given the day after the SBI formally notified Nifong that the rape kit had no DNA evidence that would corroborate Mangum's allegations. *Id.* ¶¶ 641, 784, 945(B).

The particular falsifications of the SAER were plainly designed to conceal the fact that Mangum did not report any of the detail that appeared in Gottlieb's application for a NTID Order that was published widely on the internet. *See Id.* ¶ 783. Levicy, Arico, and DUMC all condoned and ratified Levicy's fabricated claim (and Nifong's repeated recitation of it) that the SANE Nurse observed evidence of "blunt force trauma" during the rape exam. *Id.* ¶¶ 790-91.

Yet, there was no evidence of blunt force trauma at all, much less consistent with rape. In fact, the pelvic exam was abandoned at its inception because Mangum protested Manly's use of a speculum. Penetrating blunt force trauma, if it existed, would be identified as a unique pattern of injury on Mangum's cervix. Mangum's cervix, however, could not be observed without the aid of (1) a speculum and (2) a coloposcope. Yet, a coloposcope was never used in the pelvic exam, because either Mangum refused the insertion of a speculum, or Dr. Manly (who performed the exam) knew Mangum was lying early on in the exam. AC ¶ 785-792.

In furtherance of the conspiracy to cause the illegal process directed at Plaintiffs to issue, Levicy, Arico, Manly, and Dzau conspired with Nifong, Gottlieb, Himan, and others to cover-up the conspiracy by further supporting its original fabrication. Specifically, as the case was falling apart, the SANE defendants agreed to act in concert with Nifong, Gottlieb, Himan, and Addison's public media campaign to vilify the

Plaintiffs by falsely and publicly confirming that the SAE produced evidence consistent with the allegation that Mangum was brutally raped vaginally, anally, and orally. Levicy published statements *falsely* asserting that:

- Levicy conducted Mangum's SAE herself

- Mangum exhibited objective indices of actual pain

- There was evidence of blunt force trauma visible in the SAE

- Her written narrative in the SAER was an accurate memorialization of a SANE interview she conducted herself; and

- The SAE corroborated Mangum's claim that she was violently gang-raped.

Arico published statements *falsely* asserting that a complete SAE was performed, it was done by a competent SANE, and produced evidence of blunt force trauma via a coloposcope. AC ¶ 956 (A – I).

In addition to the fabrications, the AC establishes that the Affidavit used to obtain the NTID Order and McFadyen Search Warrant deliberately omitted from the NTID Affidavit overwhelming evidence of innocence obtained by Duke University and DUHS during the extended period of time Mangum was being observed at DUMC. *See id.* ¶¶ 262-311, 321-32, 382-85. From this fact, it may be inferred that Levicy, Arico, and Manly were acting in concert with Himan, Gottlieb, and Nifong. If not, it stands to reason that they would object, loudly. But no one objected; they did just the opposite. For example, they watched on television as:

- On March 28, 2006, Nifong told Dan Abrams of MSNBC that he was convinced there was a rape because "[t]here is evidence of trauma in the victim's vaginal area that was noted when she was examined by a nurse at the hospital. And her general demeanor was suggestive of the fact that she had been through a traumatic situation." *Id.* ¶ 782 (A).

- On March 28, 2006, Nifong told Rita Cosby of MSNBC that he believed "that a rape did occur… [because] the victim's demeanor and the fact that when she was examined by a nurse who was trained in sexual assault, there was swelling, and pain in the area that would have been affected by the rape. The victim gave signs of having been through a traumatic situation. She seemed to

be absolutely honest about what had occurred." Cosby responded "Mr. District Attorney, good luck in tracking down the guys who obviously may have done this horrible thing." *Id.* ¶ 782 (B), Ex. 21(video).

- On March 30, 2006, Nifong told a reporter for CBS's nationally televised *The Early Show* that he was convinced a rape occurred because of the medical evidence in the case. *Id.* ¶ 782 (D), Ex. 22 (video ).

- On April 4, 2006, a reporter for the *Charlotte Observer*, Mark Johnson, was interviewed about the case by Greta Van Susteren. Based on Nifong's statements to him, Johnson told the national audience "[Mangum] was examined at Duke University Medical Center, which as you know is a top flight hospital. This was a nurse who was trained in dealing with these types of cases and that examination is largely what the district attorney is basing his opinion - - is basing his opinion on when he says that he believes an attack did occur." *Id.* ¶ 782 (E).

After the second use of the Affidavit containing Levicy's fabricated account and immediately after Nifong publicly proclaimed his reliance upon Levicy's putative testimony in the case, Defendant Theresa Arico, Levicy's DUMC supervisor, gave an interview to the *Durham Herald Sun*. Arico held herself out as "a sexual nurse examiner and coordinator of that program at Duke." Arico was not present for Mangum's SANE exam, yet she asserted, in her *Durham Herald Sun* interview published on April 1, 2006, "[y]ou can say with a high degree of certainty that there was a certain amount of blunt force trauma present to create injury….I can reasonably say these injuries are consistent with the story she told." AC ¶ 784.

## QUESTIONS PRESENTED

1. Have Plaintiffs stated a cause of action under 42 U.S.C. § 1983? (§II.A.)

2. Have Plaintiffs stated a negligence claim? (§ IV.E.).

3. Have Plaintiffs stated an intentional infliction of emotional distress claim? (§ IV.C.)

4. Have Plaintiffs stated an obstruction of justice claim? (§ IV.A.)

5. Have Plaintiffs stated an abuse of process claim? (§ IV.B.)

## ARGUMENT

## I.     STANDARD OF REVIEW

A motion to dismiss for failure to state a claim may be granted "only in very limited circumstances." *Rogers v. Jefferson-Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir. 1989). In examining a Rule 12(b) (6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Salami v. Monroe*, No. 1:07CV621, 2008 WL 2981553, at *5 (M.D.N.C. Aug. 1, 2008) (quoting *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). Though the complaint is not required to encompass detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quotations and alterations in original) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007)). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 127 S.Ct. at 1965). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* (quoting *Twombly*, 127 S.Ct. at 1969). Further, where Plaintiffs have asserted a civil rights action, the Court "must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Veney v. Wyche,* 293 F.3d 726, 730 (4th Cir. 2002) (internal quotations omitted). With these standards in mind, this Memorandum will identify the factual basis in the Amended Complaint for the causes of action asserted against the SANE Defendants and respond to their arguments for dismissal.

**A.**     ***Twombly* Does Not Impose A Heightened Pleading Requirement.**

The SANE Defendants seem to suggest that the Supreme Court's decision in *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1966 (2007), has created a heightened pleading requirement when stating a claim for conspiracy and that the AC's allegations of conspiracy are therefore insufficient to survive a motion to dismiss under this standard. SANE Br. at 7, 8, 38. They assert that the AC's allegations of conspiracy are insufficient to survive a motion to dismiss pursuant to *Twombly*. *Id*. *Twombly* was, at step one, an antitrust case brought under § 1 of the Sherman Act. 127 S.Ct. at 1958. The Complaint made only one allegation that was intended to allege the unlawful agreement in restraint of trade: the defendant's "parallel" conduct with its competitors in its sector of the telecommunications industry. The Court in *Twombly* held that the Complaint failed to state a claim because the Court's cases had held that, when stating a § 1 claim in the context of antitrust litigation, "parallel conduct" is not enough. That is the rule in antitrust cases because competitors often engage in parallel conduct in the absence of any agreement to do so. In other words, the *Twombly* plaintiffs asserted that one fact in support of its § 1 conspiracy claim, and the Court's Sherman Act cases held—as a matter of substantive antitrust law—that the fact of parallel conduct does not give rise to an actionable inference of conspiracy within a competitive market; "parallel conduct" itself was legally insufficient conduct to be actionable in a § 1 claim. Thus, the Court was – as it said – merely applying Rule 8 to the substantive antitrust law governing § 1 claims. *Id.*

Regardless, Plaintiffs' allegations meet and exceed the Requirements of Rule 8, which is the only scrutiny properly applied to a Complaint—as the Court made clear in *Twombly* itself and elsewhere. The AC is not a "formulaic recitation of the elements of a cause of action," with no supporting factual allegations whatsoever, 127 S. Ct. at 1964-65, 1968-69. To the contrary, the AC consists of over 400 pages, excluding its 28

exhibits, which include video and audio of some of the "specific facts" that establish Plaintiffs claims. The AC documents all Defendants' meetings, agreements, and coordinated misconduct in painstaking detail. AC ¶¶ 279, 352-53, 360, 405, 459, 471, 474, 500-01, 518-22, 526, 594, 596, 627-30, 638, 666, 748, 755, 765, 788, 820-26, 886, 1137(F), 1198. The Court, in anticipation of the stir that misreading its decision in *Twombly* might cause, was careful to be clear that its holding in *Twombly* was decided upon a peculiarity of antitrust law, § 1 litigation in particular, and the same notice pleading required by Rule 8. Specifically, the Court clarified that it was not altering the traditional "notice pleading" standards of Rule 8(a)(2) of the Federal Rules of Civil Procedure; "once a claim has been stated adequately [under Rule 8(a)(2)], it may be supported by showing any set of facts consistent with the allegations in the complaint"; and that "[a]sking for plausible grounds does not impose a probability requirement at the pleading stage"; and a motion to dismiss may not be granted "based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly*, 127 S. Ct. at 1959, 1964-65, 1969 & n.8, 1974.

*Twombly* in other words, like *Conley v. Gibson* did, holds that Rule 8 means what it says. 355 U.S. 41, 47-48 (1957). The muddle that Defendants create with *Twombly* is made more difficult by the recasting and cherry-picking of Plaintiffs' allegations—and phrases from them—to confuse their meaning or diminish their import. The SANE Defendants disregard the well-settled rule that Plaintiffs' allegations must be accepted as true at this stage. They have raised issues that either challenge or mischaracterize the facts alleged in the Amended Complaint (examples are identified in this Brief). Many of the Defendants have filed Memoranda with this Court with "Statements of the Facts" that bear no relation—whatsoever—to these Plaintiffs' allegations. Many briefs filed in this case, assert that these Plaintiffs allege that they have a right to be free of investigation,

that Tara Levicy and other SANE Defendants—on these allegations— "did their jobs," SANE Br. at 4, or that Gottlieb's conduct—as alleged—may be fairly described as an officer who "mistakenly" believed that probable cause existed, *see* Gottlieb Br. at 28-29.

Such arguments must be rejected at this stage because "the purpose of a motion to dismiss is to test the legal sufficiency of the complaint and not the facts that support it." *Phillips v. Mabe,* 367 F. Supp. 2d 861, 867 (M.D.N.C. 2005) (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). The issue presented on a Rule 12(b) (6) motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* (quoting *Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989) (internal quotations omitted)).

## II.   THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS UNDER FEDERAL LAW AGAINST THE SANE DEFENDANTS.

### A.   The Amended Complaint States Actionable Section 1983 Claims Against The SANE Defendants.

The first fifteen Causes of Action allege violations of 42 U.S.C. § 1983 (the "§ 1983 Claims").   At this early stage, the Court must determine whether each of these Causes of Action alleges facts sufficient to satisfy the elements of § 1983.[3]   *See Green v. Maroules*, 211 F.App'x 159, 161 (4th Cir. 2006).   Based on statute's text, the Supreme Court held that a Section 1983 claim requires only two essential allegations:

---

[3] Section 1983 provides:
   [E]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress[.]   42 U.S.C. § 1983 (2000).

By the plain terms of section 1983, two–and only two–allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who deprives them of that right acted under color of state or territorial law.

*Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *accord West v. Atkins*, 487 U.S. 42 (1988).

Section 1983 does not itself create or establish substantive rights. Instead, § 1983 provides "a remedy" where a plaintiff demonstrates a violation of a right protected by the federal Constitution, or by a federal statute other than §1983. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979); *accord Albright v. Oliver*, 510 U.S. 266 (1994). Analytically, however, it may be more useful to understand a Section 1983 action as having four elements of proof: (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation (2) proximately caused (3) by the conduct of a "person" (4) who acted "under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983 (2000). *See*, *e.g.*, *Martinez v. California*, 404 U.S. 277 (1980). In addition, a plaintiff seeking to establish municipal liability under § 1983 must satisfy a fifth element: that the violation of plaintiff's federal right was attributable to the enforcement of a municipal policy or practice. *Monell v. Dep't of Social Servs. of N.Y.*, 463 U.S. 658 (1978).

The Amended Complaint states actionable § 1983 Claims against Tara Levicy, Theresa Arico, Julie Manly, Duke University Health System, and the Private Diagnostic Clinic, PLLC. The Amended Complaint alleges that (1) each of The SANE Defendants are "persons" for purposes of § 1983[4] ; (2) who, while acting under color of state law [5]; (3) proximately caused[6]; (4) the deprivation of Plaintiffs' federal rights.[7] In addition, the

---

[4] AC ¶¶ 905, 919, 930, 955, 969-70, 979, 993, 1003.

[5] *Id.* ¶¶ 905, 919, 930, 955, 969-70, 979, 993, 1003.

[6] *Id.* ¶¶ 916, 927, 939, 958, 967, 976, 984, 1000, 1006.

Amended Complaint is replete with specific facts from which the elements of Plaintiffs' § 1983 Claims can be inferred. They are detailed across more than 400 pages of the Amended Complaint.

> **1. The First And Second Causes Of Action State Actionable Section 1983 Claims For Subjecting Plaintiffs To Unconstitutional Searches And Seizures In Violation Of The Fourth And Fourteenth Amendments.**

The First and Second Causes of Action alleges that the SANE Defendants conspired with Gottlieb, Himan, and others to cause Plaintiffs to be subjected to unreasonable searches and seizures in violation of the Fourth Amendment. AC ¶¶ 904-17, 918-28. Plaintiffs identify two discrete searches and seizures: (1) the Non-Testimonial Identification ("NTID Order") (the First Cause of Action), and (2) the Search Warrant for Ryan McFadyen's dorm room (the "McFadyen Warrant") (the Second Cause of Action). *Id.* ¶¶ 907, 920.[8] The AC alleges that Levicy and Arico violated Plaintiffs' Fourth Amendment rights by conspiring with Gottlieb, Himan, and Nifong to cause the NTID Order and the McFadyen Warrant to issue without probable cause intentionally or with deliberate indifference and callous disregard for the truth. *Id.* ¶¶ 414-44, 591- 616. Plaintiffs exhaustive analysis of their First and Second Causes of Action is discussed fully in Plaintiffs' Brief opposing the City's Motion to Dismiss. *See* Pls. Opp. Br. (City), § II.A.(1).

---

[7] *Id.* ¶¶ 916, 927, 939, 958, 967, 976, 984, 1000, 1006.

[8] The McFadyen Search Affidavit adds only one new allegation: text that "anonymous source" claimed was excerpted from an email sent from Ryan McFadyen's email account Because the two Affidavits are nearly identical, they will be analyzed together.

## 2. The Third Cause Of Action States An Actionable Section 1983 Claim For Abuse Of Process Designed To Coerce Plaintiffs Into Submitting To Interrogation.

The Third Cause of Action alleges that Levicy, in concert with Nifong, Himan, Levicy, and Arico procured the unlawful NTID Order and the unlawful McFadyen Search Warrant in retaliation for refusing to voluntarily submit to interrogations Gottlieb, Himan, Nifong, and Duke University Administrators had planned for them (where they planned to coerce Plaintiffs into consenting also to DNA samples). *Id.* ¶¶ 929-40. The Amended Complaint alleges that Levicy and her co-defendants were enraged by Plaintiffs' refusal to submit to those interrogations without more than a day's notice or an opportunity to consult with counsel. Thus, in a "fit of pique," Gottlieb and Himan conspired with Levicy and others to concoct the sensationalized, fabricated account of events that they knew never happened. *Rogers v. Pendleton,* 249 F.3d 279, 295 (4th Cir. 2001). Their purpose was to coerce Plaintiffs into consenting to interrogations that would be unlawful in the absence of their consent. Their chosen means of coercion was the mob. To incite the mob, Levicy, Arico, Gottlieb, Himan and others knowingly drafted a fabricated account of a brutal, racially motivated gang rape that they knew did not happen.[9] Levicy, Gottlieb, Himan, and others thus set the mob loose upon them, and subjected them to public vilification the likes of which few have ever had to endure. Defendants turned them into pariahs in their own communities and in the eyes of— literally—millions of people. AC ¶ 1278.

## 3. The Amended Complaint Alleges A § 1983 "Stigma-Plus" Claim Against Arico And, Through Her, Duke University.

The Fifth Cause of Action alleges that Levicy and Arico, acting under color of law, jointly and in concert with Gottlieb, Addison, Michael, Nifong, Levicy, and others, stigmatized Plaintiffs in connection with the deprivation of their federal rights and

---

[9] *See* AC ¶¶ 413-18, 780-81; *see also Id.* ¶¶ 223-37, 262-311, 321-31, 382-85.

existing tangible interests. *Id*. ¶¶ 954-68. The SANE Defendants do not address the Fifth Cause of Action in their brief, Plaintiffs' analysis is more fully developed in Plaintiffs' Opposition to Soukup, Michaels, Addison, and Clayton's Motion to Dismiss ("Pl. Op. SMAC Br.) § II.A.(2), and, in the interests of judicial economy, Plaintiffs incorporate that analysis here.[10]

### 4. The Sixth, Seventh And Fifteenth Causes Of Action State Section 1983 Conspiracy Claims Against The SANE Defendants.

The Sixth, Seventh, and Fifteenth Causes of Action state Section 1983 claims for conduct in violation of the Fourteenth Amendment. AC ¶¶ 969-77, 978-985. Executive conduct that "shocks the conscience" is actionable under the Fourteenth Amendment. *County of Sacramento v. Lewis*, 523 U.S. 833 (1998). In *Lewis*, the Court refined the "shocks the conscience" standard by distinguishing between official conduct where there is a realistic opportunity to deliberate and official conduct where such an opportunity is not present. *Id*. Where an official has an opportunity to deliberate, official conduct that is "deliberately indifferent" is conscience shocking. *Id.* The rationale is that, when officials with the luxury to deliberate and an opportunity to do better nevertheless exhibit "protracted failure to care, indifference is truly shocking." *Id.* at 853.[11]

---

[10]The SANE Defendants do not address the 5th, 7th, 9th-10th, and 15th-17th Cause of Action at all in this brief. They claim to address these Causes of Action in Defendants' briefs for Duke University and Duke Police. Plaintiffs address Causes of Action 6 -7, and 15 in this brief; more developed analysis of Causes of Action 9-10, 16-17 and 30 are in Plaintiffs' Brief for Duke University.

[11] As examples of the opportunity to deliberate, the Supreme Court cited situations in which officials have the opportunity to deliberate over the provision of medical care to detainees, *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239 (1983), and to prisoners, *Estelle v. Gamble*, 429 U.S. 97 (1976). In situations where there is no time to deliberate and unforeseen circumstances demand an officer's instant judgment, such as the tense, rapidly evolving high speed pursuit at issue in *Lewis*, the officer's conduct will be considered conscience shocking only if carried out with a purpose to cause harm. *Lewis*, 523 U.S. at 853.

In these Causes of Action[12] the AC alleges that the SANE Defendants (Levicy, Arico, Manly, Dzau, the PDC, DUHS, and Duke University), individually and in concert with Gottlieb, Himan, and Nifong, conspired to fabricate inculpatory forensic medical evidence for the purpose of corroborating Mangum's false accusations by altering the SAER and other forensic medical records to conform them to the fabricated narrative in the NTID Affidavit and to harmonize them with other evidence being fabricated for the same purpose. AC ¶ 969-77, 1147-55. The AC also, specifically alleges that, in furtherance of the conspiracy, Levicy, under Arico's supervision, fabricated and falsified the medical records relating to Mangum's SAE by fabricating the ostensibly "contemporaneous" SANE narrative of Mangum's account and by revising the recorded responses Mangum gave during the limited SAE.[13]

The Sixth and Seventh Causes of Action serve two purposes. First, they are a freestanding Fourteenth Amendment claims alleging malicious, deliberate, and arbitrary conduct that shocks the contemporary conscience. In that regard, the Sixth Cause of Action alleges that Levicy and Arico conspired with Himan and Gottlieb to fabricate forensic evidence of a crime they knew never occurred. AC ¶ 779, 785. As stated here, the conspiracy is limited to these individuals. The second function of the Sixth Cause of Action is to be picked up by the Fifteenth Cause of Action, which alleges that the conspiracies identified in the First through Eleventh Causes of Action are all in furtherance of a conspiracy to obstruct justice for the ultimate unlawful objective of causing Plaintiffs to be wrongfully charged, tried, and incarcerated for crimes that never

---

[12] SANE Defendants do not address the Seventh Cause of action in this brief, but as it is substantially the same as the sixth, Plaintiffs address both here.

[13] For example, Levicy revised the SAER in an attempt to falsely establish that two sources of semen found on a towel and another swabbed from the floor in the residence during the police search would connect Plaintiffs or their teammates to the fabricated narrative of the assault. AC ¶ 971; *see also* AC ¶ 779-799 ("The SANE Conspiracy").

occurred. While Plaintiffs are not required to show that the SANE Defendants engaged in overt acts in furtherance of either conspiracy, the AC does. AC § XXXIV; *see infra* Statement of Facts.

Apart from the obvious evidence of conspiracy throughout the AC, we note also that a statement may be both evidence of a conspiracy and an act in furtherance of a conspiracy. Arico's statements are both. Arico's statements were in furtherance of the conspiracy because they infused an incompetent, unqualified SANE-in-Training (Levicy) and her fabrications with the University's credibility. AC §XXXIV (C). The AC alleges Arico made these public statements pursuant to the Chairman's Directive, under the supervision of the Medical Center's senior policymaking official and CMT member, Chancellor Dzau. AC ¶ 28. The Chairman and the Chancellor both subsequently ratified Arico and Levicy's misconduct by failing to correct, reprimand, reeducate, or terminate either of them. AC ¶ 558. Even Levicy, as late as the Summer of 2007, testified that she was a SANE still employed by Duke University.

### 5. The SANE Defendants Arguments For Dismissal Of Plaintiffs' Section 1983 Claims All Fail.

#### a. The Fabrications And Material Omissions Were "Necessary" To The Judicial Findings That Caused The NTID Order And Warrant To Issue.

The SANE Defendants argue that there was "ample" probable cause even without the SANE fabrication. SANE Br. at 11-14. They assert that (1) Mangum's statements to the police, (2) physical evidence found at 610 N. Buchanan, (3) statements by individuals present at the party, and (4) Ryan McFadyen's email, "taken together . . . provided more than a 'substantial basis' for the magistrate judge's findings of probable cause for the NTID and Search Warrant." *Id.* at 14. This is precisely the argument Plaintiffs addressed exhaustively in Plaintiffs' Brief in Opposition to Himan's Motion to Dismiss. Pls. Opp. City Br.) *See* Pls. Opp. City Br., § II.A.(1) (applying the *Franks* correction process to the

NTID Order Affidavit and the McFadyen Warrant Affidavit and producing the inexorable conclusion that those orders would not have issued in the absence of the alleged false statements and omissions). Because that analysis is equally applicable to the argument made by the SANE Defendants here, in the interest of judicial economy, Plaintiffs incorporate by reference their application of the *Franks* analysis here. The Plaintiffs demonstrate that, based upon the facts alleged in the AC, both of the "corrected" Affidavits would not support a *Terry* stop, and certainly do not justify the intrusions requiring probable cause like those alleged in the AC. *See* Pls. Opp. City Br., § II.A.(1). For all the reasons discussed in Plaintiffs Response to Himan's Motion, the first three Causes of Action against the SANE Defendants may not be dismissed.

### b. Plaintiffs Do Not "Concede" That Probable Cause Existed Without Defendants' Fabrications.

Like their co-conspirators, the SANE Defendants assert that "Plaintiffs themselves concede that there would have been probable cause to support the NTID [Order] and McFadyen Search Warrant." SANE Br. at 11. To arrive at this proposition, they carve out a phrase from one sentence and add a word. The SANE Defendants state: "Plaintiffs explicitly allege that the Probable Cause affidavit for an earlier search of 610 N. Buchanan, which did not contain the allegedly false information from the health care providers, 'was sufficient to obtain [that] Search Warrant.'" *See* AC ¶ 415; SANE Br. at 11. Only the last six words are quoted from the AC. Here is what the AC *actually* says on this point: "Gottlieb's fabricated allegations in the NTID Order added a sinister dimension to the *already fabricated* account of the evening in the Search Warrant Affidavit." AC ¶ 418. In addition, as the *Franks* analysis makes plain, the AC devotes substantial space to detailing the specific allegations of fact that demonstrate how extraordinarily misleading *all three* affidavits were.[14]

---

[14] Plaintiffs explain in their response to Gottlieb's motion that the AC does not focus its attention on the 610 N. Buchanan Warrant Affidavit because (1) Plaintiffs were not

### c. The SANE Defendants Are Liable For The Deprivations Caused By Their Conspiracy With Durham Police.

The SANE Defendants read §1983 too narrowly when they assert that they cannot be liable for the unlawful searches and seizures alleged because they had "no authority to conduct, and are not alleged to have conducted any searches or seizures" contending that Plaintiffs may not therefore establish that their conduct was a proximate cause of the seizures. SANE Br. at 17. Section 1983, by its terms, reaches conduct that "subjects" or "*causes* to be subjected" any citizen to the deprivation of any rights. They add that they were "merely providing information" to the police. *Id*. Those are not Plaintiffs' allegations, and, as such, the argument merely raises a question of fact. The AC alleges that these Defendants conspired with enforcement officers they knew to be corrupt by agreeing to provide—and then providing—fabricated forensic evidence for the purpose of supporting the applications for judicial authorization thereby causing Plaintiffs to be subjected to searches and seizures without probable cause. AC ¶¶ 909-10, 923-24. In doing so, the SANE Defendants encouraged, aided, and engaged in overt acts in furtherance of an unlawful conspiracy that caused Plaintiffs to be subjected to unreasonable searches and seizures. This argument is no basis for dismissal of Plaintiffs First, Second, or Third Causes of Action.

### d. The Amended Complaint Alleges Ample Evidence Of A "Meeting Of The Minds."

SANE Defendants incorrectly assert that the plaintiffs cannot pierce the presumption that "police or prosecutors acted [independently] … because plaintiffs allege no facts whatsoever that would support an agreement or meeting of the minds between any Duke University defendant and Gottlieb, Himan, or Nifong to include fabricated

---

subjected to that search so they do not have standing to raise a Fourth Amendment claim on that basis, and (2) the false statements and omissions made in the 610 N. Buchanan Warrant Affidavit were also made in the NTID and McFadyen Warrant Affidavit, so they are addressed in their subsequent iterations.

material in the NTID or Search Warrant Applications." SANE Br. at 16. The AC's allegations are not "conclusory" by any stretch of that word. The entirety of Section XXXIV of the AC, entitled "the SANE CONSPIRACY," contains pages of non-conclusory allegations demonstrating a meeting of the minds between the SANE Defendants and Nifong, Gottlieb and Himan.

And there is more. The Amended Complaint recounts in detail Levicy's fabrication of medical records to support the fabrication that she agreed to make for Gottlieb, Himan, and Nifong to use in obtaining the NTID Order and McFadyen Warrant. *Id.* ¶¶ 785-799. On April 5, 2006, Levicy produced a second installment of the material portions of the SAER to Himan with a multitude of falsifications made to conform to the evidence known to Levicy at the time. These included[15]:

- A fabricated transcript of Levicy's interview of Mangum with strike-outs and other addenda.
- A falsified medical record of Mangum's SAE with revisions and annotations to Mangum's contemporaneous responses on the pre-printed SAER forms
- Levicy's original notation, "no," was struck through, and the (formerly empty) "yes" blank was checked.
- A handwritten notation near the revision states, "wiped her off with a rag." (a towel containing semen had been seized during the search of 610 N. Buchanan. *Id.* ¶ 785(B)(2)).

The next day, on April 6th, Mangum gave her first (and only) written statement in the case. She wrote an account remarkably consistent with the SAER interview transcript Levicy gave Himan the day before. In a move transparently designed to conform her account to the existent evidence of semen found by police in the bathroom, in the case, Mangum writes an "add-on" paragraph at the end of her statement. The add-on paragraph

---

[15] *See* AC ¶ 785(A)-(C).

reads, *in toto*, "I would like to add that Adam ejaculated in my mouth and I spit it out onto the floor, part of it fell onto the floor [scratch out] after he pulled his penis out." This "add-on" was suggested to Mangum to harmonize her statement with Levicy's fabrication. AC ¶ 785(C).

These allegations are not "conclusory allegations." These are specific facts that trace the outlines of a chilling conspiracy between Duke University and the City of Durham to convict Plaintiffs as principals or accomplices in a crime that never happened. The falsifications in the SAER were plainly designed to fabricate a forensic medical record of things that did not happen, responses Mangum never gave, and evidence that did not exist, all designed to corroborate the sensationalized version of Mangum's account that Gottlieb falsely reported in his factual sections of the application for the NTID Order. *Id.* ¶¶ 785-99.

SANE Defendants also entered into a "meeting of the minds" with Nifong, Gottlieb, and Himan to solve the DNA problem. *Id.* ¶ 793-796. In three separate places, the SAER notes that no condoms were used. Nearly a year after the SAE, Levicy claimed that she felt Mangum could not be sure that condoms were used. Throughout Levicy's SAER, Mangum's unequivocal report that no condoms were used is noted again and again. For example, when asked if condoms were used, the "not sure" blank was not checked in favor of the "no" blank. Further, in Step 2 of the SAER, the SANE is required to write a "[b]rief account of the assault us[ing] the patient's own words." In the small space provided, Levicy volunteered, "No condoms used." *Id.* ¶ 793.

After the DNA testing revealed the impossibility that Mangum could have been assaulted vaginally, rectally, and orally by any lacrosse player, Nifong claimed publicly and falsely that he believed condoms were used. Further, Levicy proffered additional fabricated testimony to explain why the SAER is rife with statements indicating "no condoms" were used. As of January 10, 2007, Levicy's testimony would have been: (1)

that Mangum, in fact, "wasn't sure," (2) Levicy explained that no one can ever really be sure whether a condom is used, unless they actually see the condom; and (3) she "wasn't surprised when [she] heard no DNA was found because rape is not about passion or ejaculation but about power." AC ¶ 796.

Another "meeting of the minds" involving Duke SANE Defendants is Levicy's proffered testimony calculated to save Mangum's identifications from suppression. AC ¶¶ 797-99. The evidence that Mangum was incoherent, if not suffering from psychotic delusion, in the early morning hours of March 14th was a significant basis for excluding any in-court identifications. Levicy proffered testimony to rebut the evidence of psychosis that initiated her commitment proceedings. Nearly a year after the SAE, Levicy agreed to testify falsely that Mangum "could always speak articulately" and that she was "very alert." Levicy proffered the foregoing fabricated testimony on the evening of January 10, 2007 just before Nifong quit the case.[16] *Id.* ¶ 797.

The SANE Defendants' remaining arguments are similarly misplaced:

The SANE Defendants rely on a false premise when they contend that the subjective motivations of the Defendants are irrelevant to Plaintiffs' §1983 claims. SANE Br. 17-18 n.11. The argument might succeed if the AC alleged that the requisite legal justification for the searches and seizures did exist, *See, e.g., Whren v. United States* 517 U.S. 806, 813 (1996), but, the premise is false: the AC alleges—and

---

[16] The AC documents proof of the SANE Defendants' participation in the conspiracy in Levicy's attempted withdrawal just after Nifong quit the case. Days later, Levicy attempted her own formal withdrawal from the conspiracy, and, to conceal her involvement, called the District Attorney's to advised that she wished to make a "clarification" in her proffered testimony that she had never made before. For the first time in the investigation, Levicy stated that she now believed that the absence of any DNA matching a member of the lacrosse team could be explained by the fact that the rape "didn't happen." There is ample evidence of a meeting of the minds. *See* AC ¶¶ 780-99.

demonstrates—that the required legal justification for the searches and seizures did not exist. *See Franks* Analysis in Plaintiffs' Opp. Br. Himan, § II.A.(1) The AC contradicts them; it, alleges that, but for the fabrications of the SANE Defendants and the Durham Police Defendants, the required legal justification for the NTID Order and McFadyen Search Warrant did not exist. Their reliance on *Whren* is misplaced.

The SANE Defendants mischaracterize the Plaintiffs' allegations when they contend that the Sixth Cause of Action should be dismissed because "there is no constitutional right to be free from investigation." SANE Br. at 19. The Plaintiffs have never alleged such a right nor have they alleged violation of such a right. *See generally* AC ¶¶ 1-427. The conduct that the Sixth (and Seventh) Cause of Action identifies is overt acts (fabricating evidence of guilt and concealing evidence of innocence) that are also picked up in the Fifteenth Cause of Action, which alleges a conspiracy to obstruct justice in Violation of 42 U.S.C. § 1983.

The SANE Defendants argue that the Sixth Cause of Action (alleging fabrication of SANE evidence) should be dismissed because the Plaintiffs were "never tried, indicted, or even arrested for any crime." SANE Br. at 19. But the argument ignores a fundamental premise of conspiracy doctrine: there is no requirement, in § 1983 or elsewhere, that every act in furtherance of the conspiracy be successful. For purposes of a § 1983 conspiracy the requirement is that plaintiffs must show that overt acts in furtherance of the conspiracy caused the deprivation of a federal right. Furthermore, in this respect, the fact that Plaintiffs were "never tried, indicted, or even arrested for any crime" means that Plaintiffs are not bound, as they might be otherwise, to the remedies available pursuant to the Constitution's "trial rights." *See, e.g., Chavez v. Martinez*, 538 U.S. 760 (2003); *Albright v. Oliver,* 510 U.S. 226, 274 (1994). Instead, their right to be free from executive action that is arbitrary or "shocks the conscience" remains within the "broader sweep" of the Fourteenth Amendment's substantive due process protections.

As explained above, those rights are asserted in the Fifteenth Cause of Action alleging a § 1983 Conspiracy that incorporates as overt acts the independent violations of federal rights established in the First through Eleventh Causes of Action.

The SANE Defendants similarly argue that the Sixth Cause of Action should be dismissed, contending that since the fabricated portions of the forensic records were delivered to the Durham Police on April 5, 2006, Plaintiffs "cannot establish any connection" between the deprivation of their Fourth Amendment rights and the delivery of the fabricated SAER on April 5, 2006. Defendants focus on the fact that by April 5, 2008 "the NTID had already been applied for, approved, and executed." SANE Br. at 19. Despite citing the relevant AC paragraph on the same page of their argument, Defendants fail to recognize that the AC alleges other meetings/interviews between Levicy and co-conspirators. These "connections" include a telephone interview with Himan on March 16th and a subsequent "staggered" production of medical records and interview with Gottlieb on March 21st. *See* AC ¶¶ 780-81, 785, 788-89. Furthermore, Plaintiffs do not rely upon the Fourth Amendment in the Sixth Cause of Action. The SANE Defendants' fabrication of the SAER reports is an act in furtherance of the conspiracy to obstruct justice with the conscious purpose of causing Plaintiffs to be charged, tried, and incarcerated for a crime she knew did not happen.[17] The Sixth, Seventh, and Fifteenth Causes of Action state § 1983 Conspiracy Claims Against the University Defendants.

---

[17] Contrary to the SANE Defendants' contention, Plaintiffs are not limited to the "trial rights" as their exclusive source of remedies for violations of their federal rights. Here, as elsewhere SANE Defendants' reliance on *Albright v. Oliver* is entirely misplaced in this case. *Albright v. Oliver*, stands for the proposition (and barely so) that a person *who is* falsely charged and prosecuted may not proceed under the Fourteenth Amendment's substantive due process clause. 510 U.S. 266, 274 (1994). In *Albright*, the plaintiff was arrested and charged and brought a §1983 action alleging only a Fourteenth Amendment claim. (His counsel believed that a Fourth Amendment claim was time-barred.). The Court held that a §1983 claim is available to an individual who has been charged and prosecuted but only under the "trial rights" of the constitution. Because of that fact, the

The Sixth and Seventh Causes of Action allege conspiracies to manufacture and fabricate evidence of Plaintiffs' guilt (the Sixth Cause of Action), while concealing powerful proof of Plaintiffs' innocence (the Seventh Cause of Action). The unlawful purpose of the conspiracy was transparent and it was pursued in plain view: to cause Plaintiffs and their teammates to be subjected to criminal charges, seizures and ultimately to convictions for First Degree Forcible Rape, First Degree Sexual Offense, Kidnapping, and Felonious Strangulation, all the while knowing, or deliberately indifferent to the evidence of innocence. The evidence was so powerful that the Attorney General's Chief Deputy determined that it required more than a mere dismissal of pending charges; it required an unequivocal declaration of innocence. The agreement to undertake this course of conduct lasted over thirteen months, until it was thwarted by an ethics charge that removed Nifong from the case. This conduct is so egregious that it shocks the conscience.

### 6. The Ninth Cause Of Action States A § 1983 Retaliation Claim.

The Amended Complaint alleges that the University Defendants, individually and in concert with Steel, Brodhead, Burness, Lange, Stotsenberg, Smith, in their individual and official capacities, the Duke Police Supervising Defendants, Duke University, DUHS, PDC, retaliated against the Plaintiffs for engaging in conduct protected by the First Amendment.[18] To state a § 1983 Retaliation claim, a complaint must allege that (1) the plaintiff engaged in conduct or activity protected by the First Amendment; (2) defendants took some action that adversely affected (i.e., "chilled") Plaintiffs' First Amendment rights; and (3) a causal relationship between the protected conduct and the retaliatory actions alleged. *Constantine v. Rectors & Visitors of George Mason Univ.,*

---

Court held that he could not bring a § 1983 claim under the Fourteenth Amendment, as he had done, for malicious prosecution.

[18] *See* n. 10, *supra.*

411 F.3d 474, 499 (4th Cir. 2005) (citing *Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 686 (4th Cir. 2000)).   The Amended Complaint establishes the elements of a §1983 Retaliation Claim against the SANE Defendants.   Analysis for this cause of action is more fully developed in Plaintiffs' Opposition to Duke Univ. Motion to Dismiss § II.A.(4) ("Pl. Op. to Duke Univ. §II.A.(4)"), and, in the interests of judicial economy, Plaintiffs incorporate that analysis here.

### a. Plaintiffs Engaged In Conduct Protected By The First Amendment.

The Duke SANE Defendants contend that the Amended Complaint fails to identify any conduct protected by the First Amendment.   But they are wrong.   The right not to speak is protected by the First Amendment, and it is that right that is identified by the facts alleged in the AC.   The First Amendment is not so narrow:  it protects the "right not to speak" with no less force than it protects Plaintiffs' "right to speak."   *Wooley v. Maynard*, 430 U.S. 705 (1977).

### b. Defendants' Retaliatory Conduct Adversely Affected The Plaintiffs' Constitutionally Protected Conduct.

The Amended Complaint alleges Plaintiffs were subjected to conduct that adversely affected Plaintiffs' constitutionally protected First Amendment right not to speak. AC § XVI, ¶¶ 414-445 (Durham); 445-478 (Duke).   The test for determining whether action "adversely affects" a protected right is *not* whether [Plaintiffs'] First Amendment rights were chilled, but whether a person of reasonable firmness in [Plaintiffs'] position would have been chilled. *Baltimore Sun Co. V. Ehrlich,* 437 F.3d 410, 416 (4th Cir. 2006).   This is "an objective inquiry into whether a similarly situated person of ordinary firmness reasonably would be chilled by the government conduct in light of the circumstances presented in the particular case." *Blankenship v. Manchin*, 471 F.3d 523, 530 (4th Cir. 2006) (internal quotations and citations omitted).   The Amended Complaint paints a far more disturbing abuse of the punitive machinery of the

government to punish Plaintiffs for exercising their right not to speak.  *See generally* AC §§ XVI, XXI-XXIV, XXIX-XXXI, XXXIII-XXXIV, XXXVIII.

> **7. The Tenth Cause Of Action States An Actionable Section 1983 Claim Against The University Defendants For Depriving Plaintiffs Of The Privileges And Immunities Afforded To North Carolina Citizens In Violation Of 42 U.S.C. § 1983.**

The Amended Complaint states an actionable Section 1983 Claim for deprivation of Plaintiffs' rights to the privileges and immunities guaranteed to them as citizens of the United States by Article IV and the Fourteenth Amendment.  The SANE Defendants do not address this cause of action in this brief.[19]  This Cause of Action identifies rights within the broader "right to travel."  The "right to travel" includes at least three different components:  (1) the right of a citizen of one State to enter and to leave another State, (2) the right to be treated as a welcomed visitor rather than an unfriendly alien when temporarily present in the second State, and, (3) for travelers who elect to become permanent residents in a new State, the right to be treated like other citizens of that State. Plaintiffs assert that the second and third components of the right to travel are addressed in the Amended Complaint.   The SANE Defendants do not address this claim at all in this brief.[20]  Plaintiffs provided a fuller analysis of this cause of action in Pls. Opp. City Sup. Br. §II.A.(3).

---

[19] *See* n. 10*, supra.*

[20] *See* n. 10*, supra.*

# III. THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS AGAINST THE SANE DEFENDANTS FOR PARTICIPATION IN CIVIL RIGHTS CONSPIRACIES.

## A. Conspiracies In Violation Of 42 U.S.C. § 1983.

The Fifteenth Cause of Action states a §1983 Conspiracy claim against all Defendants for unlawful conspiracies that deprived Plaintiffs of their civil rights.[21]  AC ¶¶ 1147-55.  The Fifteenth Cause of Action alleges a broad conspiracy, agreement, or understanding shared by all named Defendants in this action.  The objective of the unifying conspiracy alleged in the Fifteenth Cause of Action was to unlawfully force the wrongful indictment, prosecution, and, ultimately, incarceration of the Plaintiffs, as the principals or accomplices in a horrific, racially motivated gang-rap, which all Defendants in this action knew or were deliberately indifferent to the likelihood that it did not occur. The conduct giving rise to the Fifteenth Cause of Action is alleged in the Fifteenth Cause of Action by incorporation of the First through Eleventh Causes of Action (collectively, "the Predicate Violations").  The required showing of constitutional harm done in furtherance of the conspiracy is met by incorporation of the constitutional violations alleged in the First through Eleventh Causes of Action (the "Predicate Violations").

The Predicate Violations are constitutional deprivations caused by acts in furtherance of the Conspiracy to Convict, and were the direct and proximate cause of the damages alleged.  The acts and omissions that establish the Predicate Violations are alleged to be done in furtherance of the unifying common objective and plan of the larger conspiracy to convict.  In addition, the AC alleges the predicate elements of causation,

---

[21] To allege a cause of action under 42 U.S.C. § 1983 for conspiracy, a plaintiff must allege facts that show that two or more defendants "acted jointly [and] in concert and that some overt act was done in furtherance of the conspiracy" that resulted in the deprivation of a federal right. *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996).

state action and/or joint action (with respect to the private party and private entity Defendants), and the Defendants' status as a § 1983 "person."

The Amended Complaint alleges the combined and concerted conduct of so many pursuant to a preordained plan. AC ¶ 1152. The plan was "made in quiet deliberation and discussion" among officials with final policymaking authority with respect to the matters described in the Amended Complaint. *Id.* The acts and omissions described in the Amended Complaint evince a malicious and corrupt intent to harm the Plaintiffs. AC ¶¶ 1153; 1147-1155. The cumulative effect of the concerted wrongdoing among so many is so egregious that it "shocks the conscience" in violation of the Fourteenth Amendment as to shock the contemporary conscience. AC ¶ 1153. The Fifteenth Cause of Action alleges that Defendants violated § 1983 by conspiring to deprive Plaintiffs of their rights under the Fourth and Fourteenth Amendments, including the substantive Due Process protections of the Fourteenth Amendment, and, in furtherance of the conspiracies, committing overt acts that caused actual violations of Plaintiffs' rights. AC ¶ 1150(A)-(O).

### B. The Amended Complaint States Actionable Claims For Conspiracy In Violation Of 42 U.S.C. § 1985.

The Sixteenth Cause of Action alleges four Conspiracies in violation of § 1985(2) and (3). The SANE Defendants do not address this claim at all in this brief.[22] AC ¶¶ 1156-69.

To state a cause of action under 42 U.S.C. § 1985(2), a plaintiff must allege that "two or more persons conspire[d] for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws...." 42 U.S.C. § 1985(2).

---

[22] *See* n. 10*, supra*.

The Sixteenth Cause of Action alleges that Addison, Michael, Nifong, Gottlieb, Himan, Wilson, Steel, the DNASI Defendants, the Crisis Management Team Defendants, the SANE Defendants, Graves, Dean, the Duke Police Supervising Defendants, the Durham Police Supervising Defendants, the City of Durham, and Duke University conspired to impede or obstruct the due course of justice in North Carolina generally with the intent to deny Plaintiffs the equal protection of the laws in violation of 1985(2). AC ¶¶ 1156-59. Defendants, motivated by race-based invidiously discriminatory motives, violated this statute by conspiring to deprive Plaintiffs of their federally secured rights as alleged elsewhere in the First through Eleventh Causes of Action and by fomenting race-based animus within the Plaintiffs' community. *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Additionally, the Sixteenth Cause of Action alleges that Nifong, Gottlieb, Himan, Clayton, Addison, Michael, the Durham Police Supervising Defendants, the Duke Police Supervising Defendants, the SANE Defendants, the City of Durham, and Duke University conspired to impede or obstruct the due course of justice in North Carolina generally with the intent to intimidate witnesses, including the Plaintiffs, elicit false statements and testimony from Plaintiffs and other witnesses, and to prevent them from testifying truthfully to matters with the general objective of securing Plaintiffs' convictions as principals or accessories in state court for crimes they knew did not happen. AC ¶ 1161.

To establish a violation of 42 U.S.C. § 1985(3), a plaintiff must allege that "two or more persons in any State or Territory conspire…(1) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (2) or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws." 42 U.S.C. § 1985(3).

The Sixteenth Cause of Action alleges that, in violation of 42 U.S.C. § 1985(3) (cl.2), Nifong, Gottleib, Himan, Clayton, Addison, Michael, the Durham Police Supervising Defendants, Steel, the Crisis Management Team Defendants, the Duke Police Supervising Defendants, the SANE Defendants, the City of Durham, and Duke University, conspired with others to deprive Plaintiffs of their federal rights with the purpose of targeting "temporary residents" for disparate treatment and abusive enforcement of the criminal laws depriving Plaintiffs of the equal privileges or immunities of national citizenship under the laws thereby violating this statute by conspiring to deprive Plaintiffs of their federally secured rights. AC ¶¶ 1156-69; *Phillips v. Mabe*, 367 F. Supp. 2d 861, 873 (M.D.N.C. 2005). Plaintiffs also allege in the Sixteenth Cause of Action an independent §1985(3) Claim arising out of animus directed to Plaintiffs status as "temporary residents" and, on that basis, subject them to discriminatory and abusive police tactics, thereby imposing "disabilities of state citizenship" in deprivation of their equal protection and immunities under laws. AC ¶ 1164-65.

      1.    **The Amended Complaint States A Violation Of 42 U.S.C. §1986.**

Plaintiffs' Seventeenth Cause of Action (the "§ 1986 Claims") alleges that the SANE Defendants violated 42 U.S.C. § 1986 by refusing or neglecting to prevent or aid in the preventing of the § 1985 Conspiracies (alleged in the Sixteenth Cause of Action), despite having the power and knowledge to do so. The SANE Defendants do not address this claim at all in this brief.[23] The Plaintiffs have stated actionable Section 1986 Claims against the SANE Defendants, having alleged the predicate § 1985 Conspiracies in the Sixteenth Cause of Action, as well as the § 1985 elements and facts from which they may be inferred. AC ¶¶ 1170-88.

---

[23] *See* n. 10, *supra*.

### 2. The Amended Complaint Alleges Sufficient Direct And Circumstantial Evidence To Establish An Unlawful Conspiracy.

Plaintiffs respond to the Defendants' assertions or suggestions that *Twombly* creates a heightened pleading requirement in § 1983 Actions, *see supra* § 1.

## IV. THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS UNDER STATE LAW AGAINST THE SANE DEFENDANTS.

The remaining causes of action asserted against the SANE Defendants are alleged under North Carolina law. They include claims for Common Law Obstruction of Justice and Conspiracy, Common Law Abuse of Process and Conspiracy, Intentional Infliction of Emotional Distress and Conspiracy, Negligence, Negligent Supervision, and Negligent Infliction of Emotional Distress.

### A. The Amended Complaint States a Common Law Obstruction of Justice Claim Against The SANE Defendants.

The Eighteenth Cause of Action states an actionable claim for Common Law Obstruction of Justice against the SANE Defendants. The Cause of Action has two separate bases: the first alleges obstruction of public justice in the prior criminal matter in which the Plaintiffs were suspects, witnesses and potentially defendants pursuant to an available "accomplice" theory; the second alleges obstruction with respect to this civil litigation, which was foreseeable and anticipated by the Duke SANE and University Defendants. AC ¶¶ 1189-1202. To state an obstruction of justice claim under North Carolina law, a plaintiff may allege "any act which prevents, obstructs, impedes or hinders public or legal justice." *Jones v. City of Durham*, 643 S.E.2d 631, 633 (N.C. Ct. App. 2007) (quoting *Broughton v. McClatchy Newspapers, Inc.,* 588 S.E.2d 20, 30 (N.C. Ct. App. 2003)). The cause of action is a broad one, and courts have held that plaintiffs have stated actionable claims in a variety of contexts, covering conduct quite similar to that alleged in the Amended Complaint. *See, e.g., Jones,* 643 S.E.2d at 633 (claim stated against the City of Durham for its Police Department's failure to produce evidence);

*Jackson v. Blue Dolphin Commc'ns of N.C.*, 226 F. Supp. 2d 785, 794 (W.D.N.C. 2002) (cause of action stated upon allegation of soliciting a false affidavit); *Henry v. Deen*, 310 S.E.2d 326, 334 (N.C. 1984) (cause of action stated by allegation of conspiracy to conceal evidence of medical negligence).[24]

The settled law of North Carolina contradicts the SANE Defendants' contention that Plaintiffs lack (or *should* lack) standing to bring a claim for obstruction of justice because they were not a plaintiff or defendant in a prior case. SANE Br. at 42. Future or past litigation may be the subject of an obstruction claim. *Burgess,* 544 S.E.2d at 410-11; *Jackson,* 226 F. Supp. 2d at 794. A plaintiff need not be in the position of a defendant or plaintiff in the underlying action. A juror may state a claim for obstruction of justice arising out of his or her jury service in a prior civil action. *Burgess,* 544 S.E.2d at 410-11.[25]

---

[24] Article 30 of Chapter 14 of the North Carolina General Statutes identifies specific obstruction of justice offenses, but the common law claim remains a valid cause of action. *Jackson,* 226 F. Supp. at 794 (citing *In re Kivett,* 309 S.E.2d 442, 462 (N.C. 1983) (holding that Article 30 of Chapter 14 did not abrogate the common law offense of obstruction of justice)); *Burgess v. Busby,* 544 S.E.2d 4, 12, *reh'g den.,* 559 S.E.2d 554 (N.C. Ct. App. 2001) (permitting a civil common law obstruction of justice claim to proceed along with a statutory claim).

[25] Similarly, in *Jackson,* the plaintiff alleged that the Defendants attempted to force her to sign a false witness affidavit that was to have been used in a civil suit that would possibly be filed later by one of plaintiff's colleagues. 226 F. Supp. 2d at 794. When the plaintiff refused to sign the false affidavit, she was terminated. *Id.* The Western District held that allegations establishing that defendants attempted to impede the legal justice system with respect to a potential proceeding stated the cause of action. *Id.* at 794-95. Likewise, in *Burgess,* the defendant retaliated against jurors who had previously found him liable for medical malpractice by sending a letter to his colleagues that listed the jurors' names. 544 S.E.2d at 6-7. The acts alleged to constitute obstruction of justice occurred *after* the first trial concluded, but *before* the obstruction claim was filed. *Id.* In *Burgess,* even though a suit was not pending at the time of the acts that obstructed justice, the plaintiffs had standing. 544 S.E.2d 4; *Jackson,* 226 F. Supp. 2d at 794. North Carolina courts have already squarely decided this issue in Plaintiffs' favor: there is no requirement that

The SANE Defendants are incorrect when they contend that the North Carolina Supreme Court will consider whether North Carolina law recognizes a civil claim for obstruction of justice for the alleged destruction of evidence by one who is not a party to any pending judicial proceeding at the time of the destruction. The grant of discretionary review they cite appears to present a question of venue. *See Grant* v. *High Point Reg'l Health Sys.,* 659 S.E.2d 441 (N.C. 2008).

The SANE Defendants' claim that "the case law on the tort of obstruction of justice is extremely sparse," SANE Br. at 42-43, is difficult to square with the cases cited herein. And their contention that every reported decision relating to the cause of action involved a plaintiff alleging interference with a civil case, even if accurate, only aids Plaintiffs' cause, since Plaintiffs are alleging obstruction of their ability to pursue and present evidence in *this* civil case.

The SANE Defendants themselves do not offer any support for their contention that "there is good reason . . . not to make this cause of action available to aggrieved criminal suspects." SANE Br. at 43. The United States Congress created such a cause of action for the federal courts in 42 U.S.C. § 1985(2) (cause of action for obstruction of justice in federal actions)[26] and the Supreme Court recognizes essentially the same cause of action under § 1983. *See, e.g., Chavez* v. *Martinez,* 538 U.S. 760 (2003).

---

plaintiff show that a lawsuit was pending against plaintiff at the time a defendant is alleged to obstruct justice. *Jackson,* 226 F. Supp. 2d at 794-95.

[26] Plaintiffs explain, infra, that §1985(2) has no requirement of racial animus with respect to federal courts,; obstruction of justice affecting a federal proceeding. See also, *Kush v. Rutledge*, 460 U.S. 719 (1983). The most likely explanation for the different treatment given to state court actions in §1985 (i.e., the addition element of race or class based animus, is a feature of Congress' perceived jurisdictional limits upon regulating state courts, which could be extended only insofar as Section 5 of the Fourteenth Amendment authorized).

The SANE Defendants forget the facts as they are alleged when they assert that allowing Plaintiffs to proceed on this Cause of Action would "deter witnesses from coming forward with evidence." SANE Br. at 43. Plaintiffs hope that this action has a deterrent effect, but disagree as to what conduct will be deterred. As alleged in the AC, the conduct at issue is not the act of "coming forward with evidence"; rather, the conduct to be deterred is that of the SANE Defendants: the formulation and execution of a calculated, deliberate scheme pursued by multiple parties to abuse the power of the State for the purpose of convicting innocent persons for a crime the defendants knew did not occur. *See* AC ¶¶ 2, 5, 298-301, 414-18, 596-610, 660-69, 779-99, 997, 1193. Further, since the cause of action could have been limited by statutory abrogation and has not been, SANE Defendants' "policy" argument is for the legislature.

The SANE Defendants are incorrect when they suggest Plaintiffs require an "expansion" of existing law or that it would upset the "delicate balance" established in *Henry v. Deen*, 310 S.E. 2d 326 (1984), if the Court allowed Plaintiffs to proceed with this claim as it relates to Defendants' conduct with respect to the criminal matter, SANE Br. 43. *Henry* simply acknowledged the risk of compounding proceedings that caused the North Carolina Supreme Court to bar obstruction claims for civil perjury arising out of a prior proceeding between the parties.

The SANE Defendants' last supposition that Plaintiffs have brought this cause of action because they "cannot bring a claim for malicious prosecution under North Carolina law" and "therefore seek to recover under other theories that do not apply (e.g. negligence or obstruction of justice)" is bizarre SANE Br. at 44.

The SANE Defendants have no other arguments for dismissal of this cause of action. Their motion to dismiss Plaintiffs' obstruction of justice claim must be denied.

**B.     The Amended Complaint States A Common Law Abuse Of Process Claim Against The SANE Defendants.**

The Nineteenth Cause of Action states an actionable claim for Common Law Abuse of Process.    AC ¶¶ 1203-12.  To state a claim for Abuse of Process, a complaint must allege (1) a willful act by the defendant, (2) done with bad intent or ulterior motive, (3) after valid process has been issued at defendant's behest, (4) whereby the defendant attempts to use the process to accomplish a purpose for which it was not intended. *Carson v. Moody*, 394 S.E.2d 194 (N.C. Ct. App. 1990).  It is the malicious perversion of a legally issued process whereby a result not lawfully or properly obtainable under it is [intended] to be secured. *Stanback v. Stanback*, 254 S.E.2d 611 (N.C. 1979) (quoting *Barnette v. Woody*, 88 S.E.2d 223 (N.C. 1955)); W. Page Keeton, *Prosser and Keeton on the Law of Torts*, Section 121 (5th ed. 1984) ("The gist of the tort is the misuse of process for an end other than that which it was designed to accomplish").    The SANE Defendants' argument that no misuse after the process issued is alleged is contradicted by the AC.  The AC alleges that the NTID was abused after issuance when Gottlieb, Nifong, and others leaked the procedure to the media so that it would become a national new story.  AC ¶ 414(C).  Plaintiffs have alleged the required secondary use for which the process was not intended.  *See generally* AC § XVI.A.  Next, Plaintiffs contend that the Durham Police abused the Warrant and the NTID Process and the SANE Defendants did not.  The SANE Defendants forget the precept of conspiracy law: the conspiracy to abuse the Warrant and NTID process makes all conspirators liable for damages caused by any act by any conspirator in furtherance of the conspiracy.  *See Hafner v. Brown*, 983 F.2d 570, 577 & n.6 (4th Cir. 1992)

### C. The Amended Complaint States An Intentional Infliction Of Emotional Distress Claim Against The SANE Defendants.

The Twentieth Cause of Action states an actionable claim for Intentional Infliction of Emotional Distress ("IIED"). AC ¶¶ 1213-22. To state a claim for IIED under North Carolina law, a plaintiff must allege: "(1) extreme and outrageous conduct by the defendant; (2) which is intended to and does in fact cause (3) severe emotional distress." *W.E.T. v. Mitchell,* No. 1:06CV487, 2007 WL 271294, at *8 (M.D.N.C. Sept. 14, 2007) (citing *Harris v. County of Forsyth*, 921 F. Supp. 325, 335-36 (M.D.N.C. 1996)); *see also Waddle v. Sparks*, 414 S.E.2d 22, 27 (N.C. 1992) (stating same essential elements for IIED). "A claim may also exist where the defendant's actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress." *W.E.T., at* *8 (citing to *Hogan v. Forsyth Country Club Co.*, 340 S.E.2d 116, 119-20 (N.C. Ct. App. 1986)). "It is a question of law for the court to determine, from the materials before it, whether the conduct complained of may be reasonably found to be sufficiently outrageous as to permit recovery." *Id.* (citing *Beck v. City of Durham*, 573 S.E.2d 183, 191 (N.C. Ct. App. 2002)). As distilled by the North Carolina Supreme Court, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *West v. King's Dep't Store, Inc.*, 365 S.E.2d 621, 625 (citing *Dickens v. Puryear*, 276 S.E.2d 325, 332 (N.C. 1981)) (quoting Restatement (Second) of Torts § 46 (1965)).

The SANE Defendants argue for dismissal of Plaintiffs IIED Claim, contending that what the Amended Complaint describes as a conspiracy to maliciously and falsely accuse and ultimately convict Plaintiffs was not sufficiently "outrageous" as a matter of law. SANE Br. at 35-39. The conduct of Levicy, Arico, and Manly—Plaintiffs submit—"exceeds all bounds of decency tolerated by society[.]" *West,* 365 S.E.2d at 625. One reading of the allegations contained within the Amended Complaint's Section

XXXIV entitled "the SANE Conspiracy," renders the Defendant's contention indefensible if not preposterous. AC ¶¶ 779-98. The North Carolina Supreme Court has already spoken with considerable force on the sufficiency of a false public accusation of a crime. *See West,* 365 S.E.2d 621. In *West*, the North Carolina Supreme Court reversed a directed verdict for a shopkeeper who publicly accused the plaintiffs of stealing a hand cart, despite their offer of proof that they had purchased it, and announced "in the presence of others that they stole the merchandise and would be arrested if they did not return it." *See id*. at 625 (citations omitted). The North Carolina Supreme Court held that it was "manifest" that the shopkeeper's conduct was "extreme and outrageous conduct," adding that:

> Few things are more outrageous and more calculated to inflict emotional distress on innocent store customers that have paid their good money for merchandise and have in hand a document to prove their purchase than for the seller or his agent, disdaining to even examine their receipt, to repeatedly tell them in a loud voice in the presence of others that they stole the merchandise and would be arrested if they did not return it. . . . [T]he store manager's last remarks to the [plaintiffs] as they left the store, a threat of prosecution in the future, left the [plaintiffs] under a continuing apprehension of prosecution for a year after this incident. . . . [T]hese factors together constitute sufficient evidence upon which a reasonable jury could have returned a verdict in favor of the plaintiffs.

*Id.* at 625-26 (alteration, citations, and quotations omitted).

The Amended Complaint alleges that the SANE Defendants sought to fabricate evidence of unspeakable crimes. The false accusation in *West* related to a minor theft. Further, the SANE Defendants did not do so on a whim; the Amended Complaint alleges a calculated scheme, executed at the direction of the Chairman and enforced by the President and Chancellor. AC ¶¶ 85-86,445-55. The inflammatory, and racially-charged statements both to the Durham community and the world accusing Plaintiffs of committing a racially-motivated gang rape—statements that predictably led to death threats, subjected the Plaintiffs to public condemnation and infamy in the eyes of millions

of people, as well as the fear of convictions as accessories to a crime that never occurred - all of that for over a year. AC ¶¶ 1-3, 701-02, 709-10, 1230. Like the shopkeeper in *West*, Levicy, Arico, and Manly willfully ignored overwhelming evidence of innocence; but, worse than the shopkeeper in *West*, the SANE Defendants, knowing that no crime occurred, conspired with other defendants in this action to conceal the very proof that no crime occurred and then to fabricate evidence in an effort to establish that it did. AC Section XXXIV, ¶¶ 293-309, 321-31.

Instead Defendants allege that " under North Carolina law, reporting a possible crime to the police and prosecutors is not "extreme and outrageous," even if that report is inaccurate—indeed, even if that report is false or fabricated, as alleged here. *See Dobson v. Harris,* 521 S.E.2d 710 (N.C. Ct. App. 1999), *rev'd on other grounds*, 530 S.E.2d 829 (N.C. 2000). In so holding, North Carolina courts have recognized that the law should encourage individuals to report suspicions of crime to the police, and should place the responsibility to determine whether the reports are well-founded with the public authorities. *See, e.g*., *Shillington v. K-Mart Corp.,* 402 S.E.2d 155, 160 (N.C. Ct. App. 1991) (concluding that security guard's reporting of alleged trespass and looting to police, resulting in the police officer's decision to arrest plaintiff, was not "extreme" or "outrageous" conduct); SANE BR. at 36-37

The present case is distinguishable from both cases cited by the Defendants. *Dobson* held that fabricated statements within an investigation are by definition not extreme or outrageous. 521 S.E.2d 710. In *Dobson*, the court assumed that the Plaintiff was correct, as it must in Rule 12 Motions, in asserting that the defendant falsified or exaggerated the child abuse claim; but, it found that because this merely initiated an investigation, it did not cause severe and outrageous harm. Plaintiffs do not contend that they have the right to remain free of investigation or that investigations by nature are extreme and outrageous conduct. Instead, the difference is that in this instance, the

fabrications and other actions of SANE Defendants were used to continue this investigation, long after Defendants knew that Plaintiffs and their teammates were not guilty of any crime, and thereby continued to subject them to public trauma and humiliation.

Similarly, the initial report of the incident that gave rise to the investigation in Shillington took place during a state of emergency. As such, the investigation cannot be deemed extreme and outrageous because everyone's everyone was tense, and the man while "rude" was doing his job properly. *Shillington,* 402 S.E.2d at 198.

Finally, the Duke SANE Defendants, as a catch-all, assert that Plaintiffs allegation inadequately state the standard because Plaintiffs do not claim to have suffered "severe emotional distress. In this instance, the Defendants misstate the law. In *Waddle v. Sparks*, the claim was dismissed because the Plaintiffs did not "forecast … any medical documentation of plaintiff's alleged 'severe emotional distress' nor any other forecast of evidence of "severe and disabling" psychological problems within the meaning of the test laid down in *Johnson v. Ruark*." *Waddle v. Sparks,* 414 S.E.2d 22, 28 (N.C. 1992) (citing *Johnson v. Ruark Obstetrics and Gynecology Assocs., P.A.*, 395 S.E.2d 85, 97 (N.C. 1990). Other cases have also cited to the test in *Johnson* which is laid out as defining "severe emotional distress," as "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which *may be generally recognized and diagnosed by professionals trained to do so."* *Soderland v. Korch*, 546 S.E.2d 632, 637 (N.C. Ct. App. 2001) (emphasis in original) (citing *Johnson,* 395 S.E.2d at 97). As noted above, the Plaintiffs allege that Defendants acted in such with intent to cause "severe emotional distress" and did in fact cause "diagnosable emotional and mental conditions causing disabling emotional, mental and/or physical harm." AC ¶¶ 1217, 1222. Therefore, Plaintiff's allegations more than sufficiently meet the pleading standards for intentional

infliction of emotional distress.

**D. The Amended Complaint States A Civil Conspiracy Claim.**

In addition to the direct liability established in the Eighteenth, Nineteenth, Twentieth, and Twenty-Second Causes of Action, Plaintiffs also state independent civil conspiracy claims against the SANE Defendants. AC ¶¶ 1189-1222, 1229-34. To state a claim for civil conspiracy a plaintiff must allege (1) a conspiracy,[27] (2) wrongful acts done by certain of the alleged conspirators in furtherance of that conspiracy, and (3) injury as a result of that conspiracy. *State ex rel. Cooper v. Ridgeway Brands Mfg.*, No. 408A07, 2008 WL 3915186, at *9 (N.C. Aug. 27, 2008)*; see Muse* v. *Morrison,* 66 S.E.2d 783, 785 (N.C. 1951)). Where a conspiracy is established, all conspirators are jointly and severally liable for acts done in furtherance of the agreement by anyone of them. *See, e.g., Henry v. Deen,* 310 S.E.2d 326, 334 (N.C. 1984).

The SANE Defendants argue that "[t]o the extent that Plaintiffs are alleging a separate claim for "conspiracy," that there is no such thing as "a separate civil action for civil conspiracy in North Carolina." SANE Br. at 41. The Plaintiffs are alleging a civil action for conspiracy with respect to their intentional tort claims asserted in the Eighteenth through Twenty-First Causes of Action; and Defendants are wrong insofar as they argue that the elements of the cause of action identified above and alleged in the AC are not sufficient to state that claim. While the cause of action is often misunderstood, it is alive and well in North Carolina, even as of thirty days ago. *See, e.g., Ridgeway Brands Mfg.,* 2008 WL 3915186, at *9 (N.C. Aug. 27, 2008). In *Ridgeway,* the North Carolina Court of Appeals confirmed that a cause of action for civil conspiracy arises whenever "a wrongful act ... committed by one or more of the conspirators pursuant to the common

---

[27] A conspiracy, under North Carolina law, is an agreement, express or implied, between two or more persons to commit an unlawful act or to do a lawful act in an unlawful manner. *See Evans v. Star GMC Sales & Serv., Inc.,* 151 S.E.2d 69, 71 (N.C. 1966).

scheme and in furtherance of the objective" causes injury. *Id.* (quoting *Henry* v. *Deen,* 310 S.E.2d 326, 334 (N.C. 1984)).

Plaintiffs allege actionable civil conspiracies in all of their Intentional Tort Claims. The Amended Complaint alleges sufficient facts showing the existence of an agreement, for example, among the SANE Defendants Gottlieb, Himan, Wilson, Nifong, Steel, Dzau, Manly, Arico, Levicy, DUHS, and Duke University obstructed justice by conspiring to manufacture and manufacturing false and misleading forensic medical records and reports with respect to the SAE conducted at DUHS designed to conceal exculpatory witness accounts with the knowledge that these reports would be used bring and maintain criminal prosecutions against Plaintiffs, as principals or accessories to crimes Defendants knew never happened, or to intimidate Plaintiffs and other witnesses who had personal knowledge necessary to prove their innocence. AC ¶ 1193. Their conduct in furtherance of the conspiracy evinced malice, *id.* ¶ 1199, and as a direct and foreseeable consequence of that conduct Plaintiffs were subjected to searches and seizures without legal justification, subjected to public outrage, death threats, humiliation, fear of prosecution for heinous crimes that Defendants knew never occurred, and emotional trauma (including *severe* emotional distress), for over a year. *Id.* ¶ 1200. And there is more. The AC also states precisely the conduct that caused the harm. *See id.* ¶¶ 647-54, Ex. 16 (Video), 779-99, *id.* § XXXIV ("The SANE Conspiracy").

The SANE Defendants' Motion to Dismiss Plaintiffs' civil conspiracy claims must be denied.

### E. The Amended Complaint States A Negligence Claim Against The SANE Defendants.

The Thirty-First Cause of Action states an actionable negligence claim against The SANE Defendants. AC ¶¶ 1309-17. To state a negligence claim, a plaintiff must allege that (1) defendant owed plaintiff a duty of care, (2) the defendant breached that duty, and

(3) defendant's breach was the actual and proximate cause of plaintiff's injury. *Cameron v. Merisel Props*, Inc., 652 S.E.2d 660, 664 (N.C. Ct. App. 2007) (quoting *Thomas v. Weddle*, 605 S.E.2d 244 (N.C. Ct. App. 2004)). The Amended Complaint states an actionable negligence claim against The SANE Defendants. The factual basis for Plaintiffs' negligence claim includes, for example, allegations that the SANE Defendants:

- Failed to meet the professional standard of care established for the provision of SANE services and the conduct and record keeping of forensic sexual assault examinations in the same or similar communities;

- Violated DUHS policies and procedures with respect to the conduct and recordkeeping of a SAE, and the qualification standards required of any nurse providing forensic medical services at DUHS;

- Violated internal DUHS policies and procedures as well as national standards and protocols with respect to the conduct and recordkeeping of a SAE;

- Assigned Levicy to conduct an SAE, when they knew or should have known that Levicy was incompetent to do so, and without making a sufficient inquiry as her professional or personal competence to collect, preserve, and record forensic medical evidence

AC ¶¶ 1309-17. The AC alleges also alleges that the SANE Defendants knew or should have known that their conduct would likely cause the deprivation of Plaintiffs' constitutional rights and other foreseeable harm, and that the negligence described directly and proximately caused injuries and damages. *Id*.

The SANE Defendants argue that the Plaintiffs' negligence claims should be dismissed because, they contend, they owed no "duty" to the Plaintiffs. SANE Br. at 21. The SANE Defendants offer no authority that exempts them from the duty of ordinary care that "every person" owes to the foreseeable victims of their negligence. *Hart v. Ivey*, 420 S.E.2d 174, 178 (N.C. 1992). North Carolina's common law of ordinary negligence "'imposes upon every person *who enters upon an active course of conduct the positive duty to exercise ordinary care to protect others from harm*, and calls a violation of that duty negligence.'" *Peal v. Smith*, 444 S.E.2d 673, 677 (N.C. Ct. App. 1994) (emphasis in

original). "The duty to protect others from harm arises whenever one person is by circumstances placed in such a position towards another that anyone of ordinary sense who thinks will at once recognize that if he does not use ordinary care and skill in his own conduct with regard to those circumstances, he will cause danger of injury to the person or property of the other." *Lumsden v. U.S.*, 555 F. Supp. 2d 580, 589 (E.D.N.C. May 7, 2008) (quoting *Quail Hollow E. Condo. Ass'n v. Donald J. Scholz Co.*, 268 S.E.2d 12, 15 (N.C. Ct. App. 1980)).

Thus, because a duty of care arises from any conduct where the risk of harm to another is both unreasonable and foreseeable, *Mullis*, 505 S.E.2d at 137, it is every person's duty is to avoid foreseeable, unreasonable risk of harm to others. *Id.* (quoting Justice Cardozo's "classic analysis of duty" in *Palsgraf v. Long Island R.R. Co.*, 162 N.E. 99 (N.Y. 1928) ("*The risk reasonably to be perceived defines the duty to be obeyed… .*") (emphasis in original)). The test for whether Plaintiffs have stated a claim for negligence "is no more than whether [the SANE Defendants], in undertaking to perform an active course of conduct, exercised such ordinary care as is required of a reasonable, prudent person under the circumstances." *Lumsden*, 555 F. Supp. 2d at 589 (alteration not in original).

The SANE Defendants do not even argue that the actions described in the AC could not foreseeably harm Plaintiffs. Nor could they. Instead, the SANE Defendants make several arguments for dismissal of Plaintiffs' negligence claims, all of which fail because they all engage in cherry-picking and recasting the Plaintiffs' allegations in an effort to inaccurately redefine the active course of conduct alleged by the Amended Complaint (i.e., forensic evidence collection) as the "provision of medical services" in order to render an extensive argument for a new immunity, akin to the public duty doctrine, converted for "doctors and nurses," who they claim owe no duty of care to any person who is not a patient. It is absurd. *See* SANE Br. at 20-34.

43

The SANE Defendants were retained to assist in the Durham Police investigation by collecting, recording, and preserving forensic medical evidence. *See* AC ¶¶ 36-38. When they undertook to conduct a forensic SAE of Crystal Mangum, they knew or should have foreseen that their findings would be critical to the determination of whether or not the persons accused by Mangum would be charged with crimes of the most serious kind. Yet, the SANE Defendants violated their own internal policies and the standards set by accrediting organizations, by producing a SAER document in which they elected not to report all material facts observed by and known to them; failed to explain in the SAER why the evidence collection ceased and never resumed; failed to complete or report the completion of most of the examinations required, the signs and symptoms of the accusing witness's severe psychological dysfunction, the fact that she nodded "yes" during commitment proceedings, the fact that she recanted as soon as she got to the hospital, or the fact that every medical provider who evaluated her noted that she was lying about her pain.[28] These were all failures that violated state and national accrediting entities as well as the hospital's own policies. *See Peal ex rel. Peal v. Smith*, 444 S.E.2d 673, 678-79 (N.C. Ct. App. 1994) ("The conduct by the corporation, in violating its own policy, provided evidence that the corporation failed to exercise ordinary care . . . . *We therefore conclude that there was a duty*." (emphasis added)), *aff'd*, 457 S.E.2d 599 (N.C. 1995). To the extent that the SANE Defendants' misconduct was not intentional, it was undoubtedly reckless or at least negligent.

The SANE Defendants recast Plaintiffs' clear allegation that the cause of their damages was the "provision of forensic medical evidence collection services," AC ¶ 1312; SANE Br. at 21, into an entirely different allegation of medical malpractice which was never alleged. And to the extent that the Amended Complaint could conceivably be construed as one for medical negligence, Plaintiffs obtained a Rule 9(j) certification from

---

[28] AC ¶¶ 262-63, 266-71, 291-92, 293-96, 298-309.

a proper SANE expert. In alleging the 9(j) certification, Plaintiffs clarified that the certification was prophylactic and was made only to the extent the AC could be construed to allege a medical negligence action. The SANE Defendants bootstrap that certification into an extended argument grounded upon the false contention that the AC alleges damages arising out of the provision of medical services to the Plaintiffs. The Amended Complaint defeats their contention.

The SANE Defendants fabricate wholly new allegations not made in the AC in order to conclude, "as Plaintiffs were not patients, the healthcare providers did not owe them a duty of care." SANE Br. at 24. Their argument depends upon the incorrect contention that the AC alleges the SANE Defendants were acting as "healthcare providers" when they were providing forensic SANE services. Plaintiffs do not allege that the SANE Defendants were providing health care services; the AC alleges that the SANE Defendants were negligent in conduct arising out of an agreement "to provide and/or supervise forensic medical evidence collection and analysis services." AC ¶¶ 36, 37, 38. To the extent that SANE Defendants' contentions are plausible, they have merely raised a fact issue.

To the extent that SANE Defendants could possibly be construed as presenting a question of law, the law in North Carolina on this issue, is well settled that there is a very important distinction to be drawn between the work performed by a forensic nurse examiner verse providing health care to a patient. *See, e.g.,* N.C. GEN. STAT. § 90-171.38 (2008). Levicy conducted the examination of Mangum in her capacity as a member of the DUHS and Duke University nursing staff and the DUHS SANE program as a SANE-in-Training, having been retained to provide forensic medical evidence collection and analysis services in conjunction with and for the purposes of the police investigation of Mangum's false allegations. Defendants fail to recognize that in this capacity, Levicy acted *under color of state law*.

45

Case law establishes that the purpose of an examination conducted by a Forensic Nurse Examiner is the "collection of evidence rather than treatment or diagnosis." *State v. Hargett*, No. COA01-835, 2002 WL 1542957, at *3 (N.C. Ct. App. July 16, 2002); *see also Glass v. Runnels*, No. C 01-4957 THE(PR), 2003 WL 21262372, * (N.D. Cal. May 28, 2003) ("The examination was a 'medical examination intended to determine what happened' and 'not merely a therapeutic tool invoked to treat a patient in counseling irrespective of what happened.'").[29] Like Mangum, the defendant had been examined by an ED physician and was not in need of medical attention when she made the statements.

Additionally, in *United States v. Gardinier*, the court held that statements made by a minor to a SANE were testimonial hearsay because a forensic nurse performs sexual assault examinations "at the behest of law enforcement with the forensic needs of law enforcement and prosecution in mind." 65 M.J. 60, 66 (C.A.A.F. 2007). The court recognized that the questions asked by the forensic nurse reflected "more of a law enforcement purpose and less of a medical treatment purpose" and that the form utilized was referred to as "the medical legal record" rather than "simply a medical exam form." *Id.* Ultimately, the court concluded that "the statements were elicited in response to law enforcement inquiry with the primary purpose of producing evidence with an eye toward trial." *Id.* Furthermore N.C. GEN. STAT. § 90-171.38 (2008) set up the authorization to establish programs to train registered nurses "in the skills, procedures, and techniques necessary to conduct medical examinations for the purpose of collecting evidence… ."

---

[29] In *Hargett*, the Forensic Nurse Examiner, Tucker, obtained a statement describing the alleged rape and was permitted to read the statement to the Jury during the trial. The defendant lost and appealed on the ground that the nurse's statement was hearsay and that the statement had prejudiced the jury and caused the conviction. Like with Mangum's examination, there was no physical evidence of rape. The court looked at Fed. R. Evid. 804 and the hearsay exception for statements made for the purpose of diagnosis and treatment and then critically examined the "purpose" of a rape exam. The court further noted that the statements were not reasonably pertinent to a diagnosis or treatment and would have been excluded anyway.

On the facts alleged in the AC, Defendants' claim has no merit.

**F.     The Amended Complaint States A Negligent Supervision, Retention, Training, And Discipline Claim Against The SANE Defendants.**

The Thirty-Second Cause of Action states an actionable claim for Negligent Supervision Claim against the employer(s) of Levicy, Arico, and Manly (i.e., Duke University, DUHS, and/or the PDC).[30] AC ¶¶ 1318-25.  The elements are that: (1) an incompetent employee committed a tortious act resulting in injury to the plaintiff, and that (2) prior to the tortious act, the employer knew or had reason to know of the employee's incompetence.  *Privette*, 495 S.E.2d at 398 (citing *Graham v. Hardee's Food Sys., Inc.*, 465 S.E.2d 558, 560 (N.C. Ct. App. 1996)).  North Carolina recognizes an employer's negligent supervision and retention of an employee as an independent tort that renders employers liable to third parties injured as a result of their employees' incompetence.  *See Smith v. Privette*, 495 S.E.2d 395, 398 (N.C. Ct. App. 1998) (citing *Braswell v. Braswell*, 410 S.E.2d 897, 903 (N.C. 1991)).  The Amended Complaint alleges that Levicy was an incompetent SANE, Arico was an incompetent SANE program supervisor; and Manly was an incompetent SANE supervisor, and Plaintiffs suffered damages as a result of their incompetence.  AC ¶¶ 1318-1325.  Plaintiffs have also alleged facts from which it can be inferred that their employer,[31] Duke University, knew or should have known of their employees' incompetence, and did not take adequate steps to correct, train, retrain, educate, reprimand, warn or terminate these incompetent

---

[30] Defendants do not identify which entity "employs" Levicy, Arico, and Manly; Plaintiffs will be able to identify the employer of each individual in discovery. Therefore, Plaintiffs will rely upon their allegations in the AC relating to the employment relationships of Manly (employed by PDC), Arico (employed by DUHS, a constituent of Duke University), and Levicy (employed by DUHS, a constituent of Duke University). AC ¶¶ 34-38.

[31] As alleged, the employers are DUHS, which is a constituent entity of Duke University (in the case of Levicy and Arico), and the PDC (in the case of the resident, Dr. Manly).

employees.  AC ¶¶ 1320-1323.  Duke University, DUHS and PDC are is therefore liable for the alleged harms caused by their employees' conduct.

The SANE Defendants argue this cause of action should be dismissed because they contend that Plaintiffs have failed to establish the predicate negligence of any hospital employee.   They assert no new arguments, but rely instead on their arguments in support of dismissal of Plaintiffs' negligence claims, *supra* § IV.E (Negligence); thus, for the same reasons Defendants' motion to dismiss Plaintiffs' negligence claims against the SANE Defendants must be denied, their motion to dismiss Plaintiffs' negligent supervision, retention, and training claim must also be denied.[32]

## G. The Amended Complaint States A Negligent Infliction Of Emotional Distress Claim Against The SANE Defendants.

The Thirty-Third Cause of Action states an actionable claim for Negligent Infliction of Emotional Distress ("NIED") against the SANE Defendants.  AC ¶¶ 1326-31. To state a cause of action for Negligent Infliction of Emotional Distress ("NIED"), the plaintiff must allege that the defendant (1) negligently engaged in conduct, (2) under circumstances in which it was reasonably foreseeable that the conduct would cause the plaintiff severe emotional distress; and (3) the conduct caused the plaintiff severe emotional distress. *Johnson* v. *Ruark Obstetrics* & *Gynecology Assoc.,* 395 S.E.2d 85, *reh'g. den.,* 399 S.E.2d 133 (N.C. 1990).  Plaintiffs have stated an NIED claim.  AC ¶¶ 1326-31.  The SANE Defendants argue this cause of action should be dismissed because,

---

[32] The SANE Defendants contend that only an employer may be held liable for negligent supervision; however, the North Carolina Supreme Court has held that supervisors may be liable for negligent supervision, *see Mozingo v. Pitt County Mem'l Hosp., Inc.,* 415 S.E.2d 341, 344 (N.C. 1992), and does not mention the word "employer" in the elements of the tort, *see Medlin v. Bass,* 398 S.E.2d 460, 462 (N.C. 1990). *Accord Smith v. Jackson County Bd. of Educ.,* 608 S.E.2d 399, 410 (N.C. Ct. App. 2005); *Block v. County of Person,* 540 S.E.2d 415, 421-22 (N.C. Ct. App. 2000); *Herndon v. Barrett,* 400 S.E.2d 767, 767 (N.C. Ct.  App. 1991).

they contend, the AC fails to allege the negligence of any SANE Defendant at step one ("no duty"), and, further, that Plaintiffs fail to sufficiently allege "severe emotional distress."[33] Their contentions are no different than those they assert against Plaintiffs negligence and IIED claims. Because those contentions fail to defeat Plaintiffs' allegations of a duty or their allegations of "severe emotional distress," § IV.E (Negligence), § IV.C. (IIED), *supra*, the SANE Defendants' arguments also fail here.


## <u>CONCLUSION</u>

The SANE Defendants make no other arguments in support of dismissal of Plaintiffs' claims. SANE Defendants have, however, requested oral argument on their motions, pointing to the "complexity" of the issues raised by the Amended Complaint. Any complexity that Defendants could not clarify in the course of the 825 pages that have already been extended to them will not likely clarify in oral argument. That is particularly true if, at oral argument, these Defendants persist in recasting Plaintiffs' allegations to find a foothold for their arguments. With respect, Plaintiffs request that the Defendants' request for oral argument be denied, and Plaintiffs request leave to schedule the Rule 26(f) discovery conference.

———

For the foregoing reasons, the Court should deny Defendants' Motions to Dismiss, Defendants' request for oral argument should be denied, and Plaintiffs' request for leave to conduct the Rule 26(f) discovery conference should be granted.

---

[33] The "severe emotional distress" element is the same for both IIED and NIED claims. *Sorrells* v. *M. YE. Hospitality Ventures,* 435 S.E.2d 320, 322 (N.C. 1993); *Johnson,* 395 S.E.2d 85.

Dated:  October 10, 2008         Respectfully submitted,

**EKSTRAND & EKSTRAND LLP**

/s/ Robert C. Ekstrand

_____
Robert C. Ekstrand, Esq. (NC Bar #26673)
Attn:  Stefanie A. Sparks
811 Ninth Street, Suite 260
Durham, North Carolina 27705
Email:  rce@ninthstreetlaw.com
Email:  sas233@law.georgetown.edu
Phone: (919) 416-4590
*Counsel for Plaintiffs Ryan McFadyen, Matthew Wilson, and Breck Archer*

**UNITED STATES DISTRICT COURT**
**FOR THE**
**MIDDLE DISTRICT OF NORTH CAROLINA**

RYAN MCFADYEN, ET AL.,

    Plaintiffs,

          V.

DUKE UNIVERSITY, ET AL.,

    Defendants.

**Civil Action No. 1:07-cv-953**

CERTIFICATE OF SERVICE

I hereby certify that, on October 10, 2008, I electronically filed the foregoing PLAINTIFFS' OPPOSITION TO THE SANE DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

        James Donald Cowan, Jr.
        Ellis & Winters, LLP
        100 North Greene Street, Suite 102
        Greensboro, NC  27401
        *Counsel for the University Defendants*

        Dixie Wells
        Ellis & Winters, LLP
        100 North Greene Street, Suite 102
        Greensboro, NC  27401
        *Counsel for the University Defendants*

Jamie S. Gorelick
Wilmer Cutler Pickering Hale and Dorr, LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
***Counsel for the University Defendants***

Jennifer M. O'Connor
Wilmer Cutler Pickering Hale and Dorr, LLP
1875 Pennsylvania Ave., N.W.
Washington, DC  20006
***Counsel for the University Defendants***

Paul R.Q. Wolfson
Wilmer Cutler Pickering Hale and Dorr, LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
***Counsel for the University Defendants***

William F. Lee
Wilmer Cutler Pickering Hale and Dorr, LLP
60 State Street
Boston, MA  02109
***Counsel for the University Defendants***

Dan J. McLamb
Yates, McLamb & Weyher, LLP
One Bank of America Plaza, Ste 1200
421 Fayetteville Street
Raleigh, NC 27601
***Counsel for the SANE Defendants***

Reginald B. Gillespie, Jr.
Faison & Gillespie
P.O. Box 51729
Durham, NC 27717
***Counsel for City of Durham, North Carolina***

Patricia P. Kerner
Troutman Saunders, LLP
434 Fayetteville Street, Suite 1900
Raleigh, NC 27601
**Counsel for Steven Chalmers, Patrick Baker, Beverly Council, Ronald Hodge, Jeff Lamb, Stephen Mihaich, Michael Ripberger, Laird Evans, and Lee Russ**

D. Martin Warf
Troutman Sanders LLP
P.O. Drawer 1389
Raleigh, North Carolina 27602
**Counsel for Steven Chalmers, Patrick Baker, Beverly Council, Ronald Hodge, Jeff Lamb, Stephen Mihaich, Michael Ripberger, Laird Evans, and Lee Russ**

James B. Maxwell
Maxwell, Freeman & Bowman
P.O. Box 52396
Durham, NC  27717-2396
**Counsel for David Addison, Kammie Michael, Richard D. Clayton and James T. Soukup**

Joel M. Craig
Kennon, Craver, Belo, Craig & McKee
4011 University Drive, Suite 300
Durham, NC 27707
**Counsel for Benjamin W. Himan**

Edwin M. Speas, Jr.
Poyner & Spruill, LLP
P.O. Box 10096
Raleigh, NC 27605-0096
**Counsel for Mark Gottlieb**

Eric P. Stevens
Poyner & Spruill, LLP
P.O. Box 10096
Raleigh, NC 27605-0096
**Counsel for Mark Gottlieb**

Kearns Davis
Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P.
P.O. Box 26000
Greensboro, NC  27420
***Counsel for DNA Security, Inc. and Richard Clark***

Robert J. King, III
Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P.
P.O. Box 26000
Greensboro, NC  27420
***Counsel for DNA Security, Inc. and Richard Clark***
Linwood Wilson
**\*\* Address Redacted Pursuant to Local Rule**

I further certify that I caused the foregoing document to be served by first-class mail, postage prepaid, to the following non CM/ECF participants:

Paul R. Dickinson, Jr.
Lewis & Roberts, PLLC
5960 Fairview Road, Suite 102
Charlotte, NC  28210
***Counsel for Brian Meehan***

James A. Roberts, III
Lewis & Roberts, PLLC
1305 Navaho Drive, Suite 400
Raleigh, NC  27609-7482
***Counsel for Brian Meehan***

Roger E. Warin
Steptoe & Johnson, LLP
1330 Connecticut Avenue, NW
Washington, DC 20003
***Counsel for City of Durham, North Carolina***

Robert A. Sar
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2301 Sugar Bush Road, Suite 600
Raleigh, NC  27612
***Counsel for DNA Security, Inc.***

Nicholas J. Sanservino, Jr.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2301 Sugar Bush Road, Suite 600
Raleigh, NC  27612
*Counsel for DNA Security, Inc.*

Respectfully submitted,

**EKSTRAND & EKSTRAND LLP**

/s/ Robert C. Ekstrand
Robert C. Ekstrand, Esq.
NC Bar #26673
811 Ninth Street, Suite 260
Durham, North Carolina 27705
Email:  rce@ninthstreetlaw.com
Phone: (919) 416-4590
*Counsel for Plaintiffs Ryan McFadyen,*
*Matthew Wilson, and Breck Archer*