# UNITED STATES DISTRICT COURT
## FOR THE
## MIDDLE DISTRICT OF NORTH CAROLINA

RYAN McFADYEN, et al.,

       Plaintiffs,

           v.

DUKE UNIVERSITY, et al.,

       Defendants.

Civil Action No. 1:07-cv-953

---

## PLAINTIFFS' OPPOSITION TO THE DNASI DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

---

Dated:  October 10, 2008

**EKSTRAND & EKSTRAND LLP**

Robert C. Ekstrand (NC Bar #26673)
Attn. Stefanie A. Sparks
811 Ninth Street, Suite 260
Durham, North Carolina  27705

*Counsel for Plaintiffs Ryan McFadyen,*
*Matthew Wilson, and Breck Archer*

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................................... i

STATEMENT OF THE CASE .............................................................................. 1

NATURE OF THE PROCEEDINGS ................................................................... 1

      A.    The DNASI Defendants ........................................................................ 2

QUESTIONS PRESENTED ................................................................................. 5

ARGUMENT........................................................................................................ 5

    I.    STANDARD OF REVIEW ........................................................................ 5

    II.   THE DNASI DEFENDANTS DO NOT HAVE ABSOLUTE WITNESS IMMUNITY FOR PLAINTIFFS' CLAIMS. .................................................. 6

    III.  THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS UNDER FEDERAL LAW AGAINST THE DNASI DEFENDANTS. .......... 9

        A.    The Amended Complaint States Actionable Section 1983 Claims Against The DNASI Defendants. ............................................................ 9

            1.    The Fourth Cause Of Action States A Section 1983 Claim For Deprivation Of Property In Violation Of The Fourteenth Amendment. ................................................................................. 11

                a.    The Obligation To Produce §15a-282 Reports Is Not A *Brady* Obligation And Is Not Limited To The Prosecutor .............. 16

            2.    The Sixth, Seventh, And Fifteenth Causes Of Action State A Section 1983 Claim For Conduct That Shocks The Conscience, In Violation Of The Fourteenth Amendment. .................................... 21

            3.    The Tenth Cause Of Action States An Actionable Section 1983 Claim Against The DNASI Defendants For Depriving Plaintiffs Of The Privileges And Immunities Afforded To North Carolina Citizens In Violation Of 42 U.S.C. § 1983. .................................. 21

            4.    The Fourteenth Cause Of Action States An Actionable Section 1983 Claim Against DNASI Defendants For Failure To Train In Violation Of 42 U.S.C. § 1983. ..................................................... 22

    IV.  THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS AGAINST THE DNASI DEFENDANTS FOR PARTICIPATION IN CIVIL RIGHTS CONSPIRACIES. .......................................................................... 22

    A.    Conspiracies In Violation Of 42 U.S.C. § 1983. ................................... 22

    B.    The Amended Complaint States Actionable Claims For Conspiracy In Violation Of 42 U.S.C. § 1985. ........................................................... 23

    C.    The Amended Complaint States A Violation Of 42 U.S.C. §1986 ...... 24

    D.    The § 1985 Claims Allege Racial Animus Of Two Types ................. 25

        1.    Section 1985 Prohibits Invidious Animus Against Any Race. ..... 25

        2.    Defendants Were Motivated By, Fomented, And Took Advantage Of Racial Animus. ......................................................................... 26

V.    THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS UNDER STATE LAW AGAINST THE DNASI DEFENDANTS. ............. 28

    A.    The Amended Complaint States A Civil Conspiracy Claim Against The DNASI Defendants. ............................................................................... 28

    B.    The Amended Complaint States A Common Law Obstruction Of Justice Claim Against The DNASI Defendants. ................................... 30

    C.    The Amended Complaint States An Intentional Infliction Of Emotional Distress Claim Against The DNASI Defendants. ................................. 32

    D.    The Amended Complaint States A Negligence Claim Against The DNASI Defendants. ............................................................................... 34

    E.    The Amended Complaint States A Negligent Supervision, Retention, Training, And Discipline Claim Against The Dnasi Defendants. ........ 36

    F.    The Amended Complaint States A Negligent Infliction Of Emotional Distress Claim Against The DNASI Defendants. ................................. 36

VI.    DNASI'S *MONELL* LIABILITY ................................................................. 37

VII.  DNASI'S RESPONDEAT SUPERIOR LIABILITY .................................... 37

VIII. DNASI DEFENDANTS MAKE NO OTHER ARGUMENT FOR DISMISSAL; PLAINTIFFS REQUEST LEAVE TO COMMENCE DISCOVERY. ............................................................................................... 38

CONCLUSION ............................................................................................... 38

## STATEMENT OF THE CASE

The Amended Complaint describes a combination of actors and entities referred to as the Consortium. Beginning in March 2006, and for thirteen months thereafter, the Consortium's ultimate objective was to railroad the Plaintiffs and their 44 teammates into convictions as either principles or accomplices to a horrible, violent crime they knew never happened. The allegations describe a willful, malicious, and calculating conspiracy of multiple dimensions. The Defendants, acting individually and in concert, concealed exonerating evidence, manufactured inculpatory evidence, and stigmatized the Plaintiffs by subjecting them to public outrage, public condemnation, and infamy in the minds of millions of people. The DNASI Defendants' participation in the conspiracy alleged in this action shocks the conscience. The most chilling of all are those who, like the DNASI Defendants, knew of the wrongs conspired to be done to the Plaintiffs, had the power to prevent or aid in preventing them, and did nothing. Instead, they 'turned a blind eye' and did nothing.

## NATURE OF THE PROCEEDINGS

Plaintiffs filed this action on December 18, 2007 and amended that filing on April 17, 2008. Pursuant to a request from this Court regarding the location of the audio and video exhibits embedded within the First Amended Complaint ("AC"), Plaintiffs file the AC again on April 18, 2008 with the embedded exhibits as separate documents. Except for the location of the exhibits, the two "First Amended Complaints" are identical. All Defendants filed Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b) (6) on July 2, 2008. This Memorandum is filed pursuant to the Court's Order of October 7, 2008 [Document #72], granting Plaintiffs' Motion for Leave to File Opposition Briefs

[Document #71], and authorizing Plaintiffs to file their Responses on or before October 10, 2008.[1]

## A.     The DNASI Defendants

For months, Brian Meehan had lobbied the City of Durham for business on behalf of his lab, DNASI.    DNASI utilized an extraordinarily sensitive DNA testing technology—so called Y-plex technology—that enabled the lab to detect male (Y-chromosome) DNA in miniscule amounts, even a male skin cell could be detected with it. AC ¶ 656.   DNASI was new and eager to obtain market share in a market filled with powerful, reputable testing companies.   *Id.*   Meehan was particularly eager to work on a high profile case—and in the spring of 2006, he and DNASI were offered an opportunity to do just that.   Id. A desperate property crimes investigator from the Durham Police Department called looking for a way to keep a dead case alive after police and a rogue prosecutor had launched a media firestorm with claims they had evidence of a racially-motivated gang-rape.   AC ¶ 656.

The testing DNASI performed in the case quickly detected at least five sources of male DNA in and on the accuser, Crystal Magnum.   None of the male sources of DNA matched the Plaintiffs or any member of the lacrosse team. *Id.* ¶ 560.   DNASI and Meehan's reporting—to put it mildly—fell well below the legal, professional, and ethical standards of the industry.   *Id.* ¶ 756.   And that was not by accident.   DNASI had never

---

[1] Plaintiffs' Opposition Brief is filed in response to Defendant DNASI's Motion to Dismiss (Document #59) and supporting Memorandum (Document #60).    DNASI's supporting brief is cited herein as "DNASI Br.," and their co-defendants' supporting briefs are cited herein as: "City Br.," "City Super. Br.," "Gottlieb Br.," "SANE Br.," "Duke Univ. Br." "DUPD Br.," "Himan Br.," "SMAC Br.," "Hodge Br.," and "Wilson Br."

produced a report of testing like the report they produced to the Plaintiffs. Meehan, DNASI President Richard Clark, District Attorney Michael Nifong, Sergeant M.D. Gottlieb, and Investigator Benjamin W. Himan conspired to conceal the results that excluded all 43 lacrosse players as potential to the rape kit of Mangum. *Id.* ¶¶ 748-49, 755-56. Through meetings and phone calls, these co-Defendants concocted a novel reporting method to carry out their scheme. The explanation they would ultimately give for it did not lack nerve: they claimed they concealed from the Plaintiffs the evidence that exonerated them because they wanted to "protect their privacy." *Id.* ¶¶ 765-68.

The reporting scheme they created for these tests alone was designed to exclude from the reports the explosive evidence of the presence of at least four different male sources of DNA in Chrystal Mangum's rape kit. Plaintiffs were entitled to reports that revealed that information by operation of N.C.G.S. § 15A-282, which is discussed extensively herein. Meehan, Clark, and, through their conduct, DNASI, conspired with Nifong, Gottlieb, Himan, and others to conceal and withhold from Plaintiffs those test results. AC § XXV.

They, therefore, subjected Plaintiffs to national vilification as "racist rapists" and worse in a thirteen month ordeal for a crime that they had conclusive proof that these Plaintiffs never committed. In doing so, they became co-conspirators with Nifong, the City, the Chairman and Duke University in a Conspiracy to Convict that was conducted in plain view. In the end, the plot failed. Nifong was held in criminal contempt, specifically for his statements and representations to the court relating to this DNA cover-up; later, Nifong was disbarred, in part, for these same actions. *Id.* ¶¶ 901-02.

The DNASI DEFENDANTS are:

- DNA SECURITY, INC. ("DNASI") is a corporation formed under the laws of the State of North Carolina with its principal place of business in Burlington, North Carolina. At all relevant times to this action, DNASI was an independent contractor retained by the State of North Carolina, the City of Durham, and/or the Durham Police Department, and/or the Duke Police Department to provide forensic DNA testing and analysis services with respect to the investigation of Mangum's false allegations; and, in this capacity, DNASI acted under color of state law. At all times relevant to this action, the DNASI defendants were acting within the course and scope of their agency and/or employment with DNASI, and in furtherance of DNASI's identified business interests.

- RICHARD CLARK is, and at all times relevant to this action, was DNASI's President and controlling shareholder. At all relevant times to this action, Clark participated in DNASI's lobbying efforts directed to City of Durham Officials to obtain contracts for the provision of DNA testing and analysis services to the City of Durham. In particular, Clark participated in City's the engagement of DNASI on behalf of the City of Durham to provide forensic DNA testing and analysis services in the City's investigation of Mangum's false accusations; and, in this capacity, Clark acted under color of state law. As President and controlling shareholder of DNASI, Clark was, at all relevant times, a DNASI official with final policymaking authority for DNASI in all matters relating to DNASI's personnel, its services, and reports of those services.

- BRIAN MEEHAN, Ph.D. was, at all times relevant to this action, employed as the Laboratory Director of DNASI. Upon information and belief, Meehan served in a supervisory capacity with respect to DNASI's laboratory personnel, and was an

official who shared with Clark official policy-making authority over all matters relating to DNASI's forensic testing and its reporting of the results of such tests. Meehan negotiated with Durham Police Officers for the provision of DNA testing services, and conducted the testing and reporting of DNASI's forensic DNA testing and analysis services relating to the investigation of Mangum's false accusations; and, in this capacity, he acted under color of state law.

## QUESTIONS PRESENTED

1. Are Defendants Clark, Meehan, and DNASI Entitled to Expert Witness Immunity?

2. Have Plaintiffs stated a claim against the DNASI Defendants under 42 U.S.C. § 1983?

3. Have Plaintiffs stated a claim claims against Defendants Clark, Meehan and DNASI for Federal Civil Rights Conspiracies under 42 U.S.C. § 1983, 42 U.S.C. § 1985?

4. Have Plaintiffs stated a claim under 42 U.S.C. § 1986 against the DNASI Defendants for failing to intervene to prevent or aid in preventing the wrongs conspired to be done to Plaintiffs by Nifong, Gottlieb, Himan, the City of Durham,  and Duke University?

5. Have Plaintiffs stated actionable claims against the DNASI Defendants under North Carolina law?

## ARGUMENT

## I.    STANDARD OF REVIEW

A motion to dismiss for failure to state a claim may be granted "only in very limited circumstances."  *Rogers v. Jefferson-Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir. 1989).  In examining a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff."  *Salami v. Monroe*, No. 1:07CV621, 2008 WL 2981553, at *5 (M.D.N.C. Aug.

1, 2008) (quoting *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). Though the complaint is not required to encompass detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quotations and alterations in original) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007)). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 127 S.Ct. at 1965). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* (quoting *Twombly*, 127 S.Ct. at 1969). Further, where Plaintiffs have asserted a civil rights action, the court "must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Veney v. Wyche,* 293 F.3d 726, 730 (4th Cir. 2002) (internal quotations omitted). With these standards in mind, this Memorandum will identify the factual basis in the Amended Complaint ("AC") for the causes of action asserted against the DNASI Defendants and respond to their arguments for dismissal.


## II.     THE DNASI DEFENDANTS DO NOT HAVE ABSOLUTE WITNESS IMMUNITY FOR PLAINTIFFS' CLAIMS.

As a threshold issue, the DNASI Defendants claim that they are "expert witnesses" entitled to absolute witness immunity." DNASI Br. at 10-11. Experts are not entitled to absolute immunity unless their conduct was "in preparation for providing expert witness testimony in the due course of a judicial proceeding." *Sharp v. Miller*, 468 S.E.2d 799, 801 (N.C. 1996) (internal quotations omitted). Just as a prosecutor is not

entitled to absolute immunity for non-prosecutorial acts, an expert is not entitled to immunity for "non-testimonial acts," *Brown v. Daniel*, Nos. 99-1678, 99-1679, 99-1680, 2000 WL 1455443, at *4 (4th Cir. Sept. 29, 2000), nor can an expert bootstrap unlawful, non-testimonial conduct into an immunity by later providing testimony, *see Spurlock v. Satterfiled,* 167 F.3d 995, 1003-04 (6th Cir. 1999). *See also Williams v. Rappeport*, 699 F. Supp. 501, 507 (D. Md. 1988) (applying functional analysis to retained expert's immunity claim), *aff'd sub nom. Williams v. Dvoskin*, 879 F.2d 863 (4th Cir. 1989).

The DNASI Defendants' absolute immunity claim rests on two incorrect premises: (1) because Meehan testified at the December 15 Hearing, he was merely an "expert witness"; and (2) because DNASI's May 12 Report was produced to Plaintiffs along with police and SBI crime lab reports, it was an "expert report" prepared for litigation. DNASI Br. at 11-14. But the Amended Complaint does not proceed from either of those functions; it proceeds upon DNASI's forensic analysis and reporting in support of a police investigation. The "functions" served by the conduct at issue, in the language of the test, were non-testimonial, investigative functions performed by any crime lab. *See* AC ¶¶ 73-76 (DNASI is "an independent contractor . . . retained to provide forensic DNA testing and analysis services with respect to the investigation of Mangum's false accusations."). DNASI Defendants "owed Plaintiffs a duty of due care with respect to their involvement in the police investigation of Mangum's claims." *Id.* ¶ 1333. At the April 10 meeting DNASI Defendants in concert with Nifong, Gottlieb, and Himan agreed to withhold and conceal from Plaintiffs the existence of the exonerating results of tests conducted with products of Plaintiffs' DNA, to which they were entitled by operation of §15A-282. *Id.* ¶¶ 801-01. Instead, DNASI Defendants met several times with Nifong, Gottlieb, and Himan, each time to discuss the results of DNASI's testing and to create a reporting protocol that would conceal from Plaintiffs the evidence of their innocence. *Id.* ¶ 765.

It is not enough for DNASI Defendants (or other forensic examiners) to say they have specialized knowledge in an area, and might have served as an expert in a sham trial for convicting the innocent, that his rudimentary reporting of test results is somehow transfigured into the immunized realm of "preparation for providing expert witness testimony." DNASI Br. at 12. The cases routinely reject such claims by forensic experts. And rightly so. It is the fact of their specialized knowledge, beyond the reach of many, that makes the honorable among them so precious and the knaves among them so dangerous.

The proposition that ends this inquiry is straightforward (and familiar): "'Expert' forensic examiners act in an investigatory fashion when they *interpret and document physical evidence*. . . . [T]he pre-trial investigatory acts by forensic examiners merit no more protection under absolute immunity than do other persons performing investigatory actions." G*regory v. City of Lousiville*, 444 F.3d 725, 740 (6th Cir. 2006), *cert denied,* 127 S. Ct. 962 (2002) (emphasis supplied); *see also Keko v. Hingle,* 318 F.3d 639, 644 (5th Cir. 2003) (denying absolute immunity to a private physician who had been retained for investigative forensic analysis and other "pre-testimonial activities."). Of course, that proposition assumes the forensic examiner performing investigatory functions is not fabricating evidence. Neither qualified immunity nor absolute immunity is available for defendants who face allegations of having falsified one's forensic analysis. *See, e.g., Pierce v. Gilchrist*, 359 F.3d 1279, 1300 (10th Cir. 2004) (affirming denial of qualified immunity where forensic analyst was alleged to have falsified report and recorded a "match" when one did not exist). In *Gregory*, the defendant was retained to interpret and compare physical evidence taken from the victim's clothing and compare them to the suspect. *See* 444 F.3d at 740. Like the DNASI Defendants, the examiner's report did not disclose the identification of several hairs that did not match the suspect. *See id.* The Sixth Circuit rejected the forensic examiner's absolute immunity defense. *See id.* at 732.

The Amended Complaint limits the function in question to the unprotected functions of forensic reporting. The function at issue is making a report that reveals the results of tests conducted with Plaintiffs' DNA. The DNASI Defendants avoid this clear line of cases, and it is these cases that govern the conduct alleged. They rely instead Rule 26(a)(2) cases relating to expert witnesses retained for civil litigation who falsified testimony either as an expert or routine witness. They are grasping at smoke. None of these cases is applicable to the egregious conduct of the DNASI Defendants. The functional analysis applicable to the immunity they hope for simply does protect against the functions or the allegations Plaintiffs have alleged in the Amended Complaint. It will not protect them on these facts.

Thus, as they must, DNASI has soldiered on beyond immunities in their brief to attack Plaintiffs' § 1983 Claims. The allegations of the Amended Complaint defeat them there as well.

## III.   THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS UNDER FEDERAL LAW AGAINST THE DNASI DEFENDANTS.

### A.   The Amended Complaint States Actionable Section 1983 Claims Against The DNASI Defendants.

The first fifteen Causes of Action allege violations of 42 U.S.C. § 1983 (the "§ 1983 Claims"). At this early stage, the Court must determine whether each of these Causes of Action alleges facts sufficient to satisfy the elements of § 1983.[2] *See Green v.*

---

[2] Section 1983 provides:

[E]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress[.]   42 U.S.C. § 1983 (2000).

*Maroules*, 211 F.App'x 159, 161 (4th Cir. 2006).  Based on statute's text, the Supreme Court held that a Section 1983 claim requires only two essential allegations:

> By the plain terms of section 1983, two–and only two–allegations are required in order to state a cause of action under that statute.  First, the plaintiff must allege that some person has deprived him of a federal right.  Second, he must allege that the person who deprives them of that right acted under color of state or territorial law.

*Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *accord West v. Atkins*, 487 U.S. 42 (1988).  Section 1983 does not itself create or establish substantive rights.  Instead, § 1983 provides "a remedy" where a plaintiff demonstrates a violation of a right protected by the federal Constitution, or by a federal statute other than §1983.  *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979); *accord Albright v. Oliver*, 510 U.S. 266 (1994).  Analytically, however, it may be more useful to understand a Section 1983 action as having four elements of proof:  (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation (2) proximately caused (3) by the conduct of a "person" (4) who acted "under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983 (2000).  *See*, *e.g.*, *Martinez v. California*, 404 U.S. 277 (1980).  In addition, a plaintiff seeking to establish municipal liability under § 1983 must satisfy a fifth element:  that the violation of plaintiff's federal right was attributable to the enforcement of a municipal policy or practice.  *Monell v. Dep't of Social Servs. of N.Y.,* 436 U.S. 658 (1978).

The Amended Complaint adequately alleges (1) the DNASI Defendants are "persons" for purposes of § 1983, AC ¶¶ 942, 969, 979, 1003, 1148; (2) who, while acting under color of state law, *Id*. ¶¶ 942, 969-70, 979, 1003, 1148-49; (3) proximately caused *Id.* ¶¶ 952, 976, 984, 1006, 1145, 1154; (4) Plaintiffs to be subjected to the

deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States, *Id.* ¶¶ 952, 976, 984, 1006, 1145, 1154. The Amended Complaint states actionable § 1983 Claims against all DNASI Defendants**.** DNASI Defendants all move for dismissal of all of Plaintiffs' §1983 claims directed against them. Their arguments fall into three categories: (1) that the Section 1983 Claims do not allege a deprivation of an actionable federal right; (2) *Brady v. Maryland,* 373 U.S. 83 (1963) controls the timing and quality of evidence produced; and (3) there is no "freestanding liberty interest" in exculpatory evidence;. These arguments fail because each one requires the Court to accept either a mischaracterization of the Plaintiffs' allegations, a misstatement of the law, or both.

### 1. The Fourth Cause Of Action States A Section 1983 Claim For Deprivation Of Property In Violation Of The Fourteenth Amendment.

In their Fourth Cause of Action Plaintiffs allege that DNASI, individually and in concert with Nifong, Gottlieb, Himan, Clayton, Meehan, and Clark conspired to withhold from Plaintiffs the reports of the results of tests conducted with the products of Plaintiffs' NTID procedures. AC ¶¶ 941-53. The products of their NTID procedures included Plaintiffs' DNA profiles, mug shots, and close-up photos of suspected injuries on their torsos by Durham forensic examiners. AC ¶ 944. These products were used during the investigation in multiple tests, including DNA tests performed by the SBI and, subsequently, by DNASI. Plaintiffs allege that the Defendants conspired to—and did—deprive Plaintiffs of their statutory entitlement. Plaintiffs' entitlement was the right to a report of every test conducted with the DNA the State obtained in their NTID procedures, as soon as the results were available. AC. ¶¶ 617-620, 655, 666, 676-81, 688-92, 746-51, 756-57, 758-64, 945 (A)–(G) (SBI serology and DNA tests, DNASI Y-STR DNA test, and Durham Police identification procedures).

And there is more.  The Amended Complaint alleges that Himan agreed with Nifong, Gottlieb, Clayton, Clark, and Meehan to conceal from Plaintiffs and their defense counsel (1) the fact that the identification tests were done, and (2) the results of the tests when the results were available.  AC  ¶¶ 947-49.  In doing so, DNASI and its co-conspirators caused the deprivation of Plaintiffs' constitutionally protected property rights in violation of the Due Process Clause.  AC ¶¶ 950-52.

Defendants argue that Plaintiffs  " who were never arrested, detained or charged with a crime,"  assert "that they had a freestanding constitutional right to receive the DNA testing information, in a particular format and at a particular time, and that the DSI Defendants had a constitutional obligation to ensure that it was provided."  DNASI Br. at 13-14; s*ee also* Gottlieb Br. at 2. Plaintiffs do not assert such a "freestanding constitutional right."  Plaintiffs' assertions are far from it.  The fallacy in DNASI's argument rests in the assertion that Plaintiffs are attempting to state a claim under *Brady v. Maryland*, 373 U.S. 83 (1963).  Of course, *Brady* and its progeny establish the constitutional pre-trial discovery rights of the accused.  *See, e.g., id.; Kyles v. Whitley,* 514 U.S. 419 (1995).  *Brady* and its progeny are immaterial to Plaintiffs' Fourth Cause of Action.  The Fourth Cause of Action does not intend to state a § 1983 cause of action under *Brady*.  Instead, the Fourth Cause of Action states a § 1983 Claim for deprivation of property rights protected by the Due Process Clause.  AC ¶ 952.  It is a very specific cause of action that arises from a statutory entitlement which grants unconditionally to every person who is the subject of an NTID Order, *id.* ¶¶ 942-44, like Plaintiffs, the right to a report of the results of any test conducted with the products of his or her NTID procedure (e.g., DNA samples, handwriting samples, fingerprints, "mug shots," and other identification evidence obtainable pursuant to an NTID Order).  § 15A-273; *see generally* N.C. GEN. STAT. §§15A-271- 15A-282 (2008) (Article 14, "Nontestimonial Identification").

Plaintiffs assert a claim for deprivation of constitutionally protected property rights in violation of the Fourteenth Amendment's Due Process Clause.[3]  In order to state a claim for deprivation of property or liberty in violation of the Due Process clause, a complaint must allege that the plaintiff was deprived of a constitutionally protected liberty or property interest.  *See, e.g., Bd. of Regents v. Roth*, 408 U.S. 564 (1972). Plaintiffs have alleged a constitutionally protected property interest arising out of the entitlement established by § 15A-282.  AC ¶¶ 943-44.  It is well settled that

> [p]roperty interests: . . .  are not created by the Constitution.   Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings to secure certain benefits and that support claims of entitlement to those benefits.

*Roth*, 408 U.S. at 577.  Property that is protected by the Due Process Clause includes traditional notions of property as well as relatively new "statutory entitlements."  *See, e.g., Cleveland Bd. of Educ. vs. Loudermill*, 470 U.S. 532 (1985) (public employment); *Matthews v. Eldridge*, 424 U.S. 319 (1976) (social security benefits); *Goss v. Lopez*, 419 U.S. 565 (1975) (public school education); *Perry v. Sindermann*, 408 U.S. 593 (1972)

---

[3] Defendant's repeated assertion that Plaintiffs have never been "charged with, arrested for, or accused of a crime" does not aid their cause in this regard in any conceivable way. Indeed, under the Supreme Court's cases, that oft-repeated fact in these motions operates to open up to the Plaintiffs many § 1983 causes of action, including causes of action under the "broad sweep" of the Fourteenth Amendment that have been applied to Plaintiffs who have been charged, arrested, prosecuted or convicted.  That implication is what Rehnquist called the "cornucopia of opinions" in *Albright v. Oliver*, 510 U.S. 266 (1994), and it is the clear holding of the majority in *Chavez v. Martinez*, 538 U.S. 760 (2003) (holding that a § 1983 Plaintiff whose statement was coerced by police investigators could not bring a § 1983 action under the Fifth Amendment because he was never charged, arrested or convicted, but, he could bring a cause of action under the Fourteenth Amendment *for the same conduct*); *Martinez v. City of Oxnard,* 337 F.3d 1091, 1092 (9th Cir. 2003) (on remand, the Ninth Circuit held that the conduct alleged did state § 1983 claim under the Fourteenth Amendment).

(public employment); *Bell v. Burson*, 402 U.S. 535 (1971) (driver's license); *Goldberg v. Kelly*, 397 U.S. 254 (1965) (public assistance). To establish that a statutory right is an entitlement protected by the Due Process clause, plaintiffs must point to a right that arises from objective standards of eligibility for some government-dispensed commodities. *Loudermill,* 470 U.S. 532. Objective conditions of entitlement create a "reasonable expectation" that, if the conditions are satisfied, the government will provide the entitlement; on the other hand, discretionary eligibility standards do not create a "reasonable expectation" and thus do not create statutory entitlements. *Id.* To state a cause of action for deprivation of a constitutionally protected property interest, a complaint must allege (1) plaintiff has a constitutionally protected "liberty" or "property" interest, and (2) plaintiff has been "deprived" of that protected interest by some form of "state action." *See Roth,* 408 U.S. 564; *Daniels v. Williams,* 474 U.S. 327 (1986); *Stone v. Univ. of Md. Med. Sys.*, 855 F.2d 167, 172 (4th Cir. 1988).

Plaintiffs have alleged that (1) § 15A-282 creates in every person subject to an NTID Order an unconditional right to a report of the results of all tests conducted with the products of that person's NTID procedures *as soon as the results are available,* AC ¶ 944; and (2) Nifong, Gottlieb, Himan, the City, Clayton, Clark, and Meehan, individually and in concert, conspired to withhold from Plaintiffs the results of tests conducted with their DNA and their "mug shots." AC ¶¶ 946-50. The statutory entitlement Plaintiffs allege arises from the objective standard of eligibility to receive reports as soon as they are available. Section 15A-282 provides:

> A person who has been the subject of nontestimonial identification procedures or his attorney must be provided with a copy of any reports of test results as soon as the reports are available.

The statute plainly creates a "reasonable expectation" that if its conditions are satisfied, the government will provide the entitlement. First, the statute sets up an objective

qualification standard: "a person who has been the subject of nontestimonial identification procedures." § 15A-282. The expectation that arises from the objective qualification standard is reinforced by the statute's mandatory language: "must be provided with a copy of any reports of test results as soon as the reports are available." *Id.* Plaintiffs plainly had a constitutionally protected property interest in those reports at the time they were available. *Accord Loudermill*, 470 U.S. at 539.[4]

Defendants argues that *State v. Pearson*, 551 S.E.2d 471 (N.C. Ct. App. 2001), somehow defeats this cause of action. DNASI Br. at 17-18; Gottlieb Br. at 26; Himan Br. at 27; City Br. at 19. *Pearson* is an appeal of a criminal conviction. On appeal Pearson argued that evidence of tests results derived from products of his NTID procedures should have been suppressed because he did not receive a report of those tests for 12 years. *Pearson,* at 477. The fallacy in this argument lies in the unstated premise that suppression analysis is the same as the analysis employed in determining whether a plaintiff states a § 1983 Due Process property deprivation claim. The two analyses are different, and dispositively so. Suppression analysis, as in *Pearson's* case, asks if evidence *was obtained as a result of* a violation of the Constitution or significant statutory rights. If it was, or if it was the fruit of such a violation, the evidence will ordinarily be suppressed. *See generally Wong Sun v. United States,* 371 U.S. 471 (1963) (seminal suppression case). The violation Pearson asserted was wholly unrelated to *the acquisition* of evidence, so there was no basis for suppression at step one. *Pearson*, 551

---

[4] In *Loudermill,* for example, the Court found a constitutionally protected property interest in continuing employment as a "civil servant" where the relevant state law provided that no classified civil servant may be removed except for certain enumerated "acts of misfeasance, malfeasance, or nonfeasance in office." 470 U.S. at 539. Based upon that statutory language, the Court held that Mr. Loudermill had a right to continuing employment except upon a showing of an enumerated form of misfeasance or nonfeasance. *Id.*

S.E.2d at 476. Pearson was asserting the deprivation of a right that suppression analysis takes no account of. It does not follow that § 1983 takes no account of the deprivation as well. The flaw in Pearson's appeal was its failure to appreciate the limits of suppression analysis in criminal proceedings.[5] Furthermore, the denial of suppression on the grounds that the denial of the report constituted a "substantial violation" of the Criminal Procedure Act was affirmed on the unremarkable premise that the trial court made a factual finding that the violation was not "willful" (an important factor in that suppression analysis) based upon the testimony of the Agent who admitted to violating the statute. *See id*. at 475-76.

### a. The Obligation To Produce §15a-282 Reports Is Not A *Brady* Obligation And Is Not Limited To The Prosecutor

DNASI, Himan, and Gottlieb argue that, even if the Plaintiffs have stated a § 1983 property deprivation claim, the claim should be dismissed as to them, because, he contends, the obligation to produce the report was Nifong's, not his. Gottlieb Br. at 26, DNASI Br. at 19, City Br. at 20, and Himan Br. at 25. This conclusion does not follow from the premise (i.e., that "the *Brady* duty" to "disclose exculpatory evidence to the accused … rests with the prosecution."). Gottlieb Br. at 26; *see also* Himan Br. at 25,

---

[5] Pearson also argued that tests results should have been suppressed because the failure to produce reports of tests conducted with his NTID procedures constituted a substantial violation of the Criminal Procedure Act. *Pearson*, 551 S.E.2d at 475-76. Suppression of evidence on the basis of a violation of the Act is determined according to a similar analysis, and the *Pearson* Court held that the denial of suppression on the basis of the Act was appropriate for the same reason. *Id*. at 477. In addition, the trial judge had found that an important factor (the willfulness of the violation) favored the State, and a trial court's ruling on that issue will not be overturned on appeal if it is based upon any competent evidence in the record. The trial court found as fact that the investigator, named Tuttle, admitted that he violated the statute by failing to provide Pearson with the report of test results, but the trial court found that Tuttle did so "unknowingly." *Id.* at 471.

City Br. at 20 and DNASI Br. at 15. (citing *Jean v. Collins*, 221 F.3d 656, 660 (4th Cir. 2000)). Plaintiffs are not asserting the failure to produce *Brady* material or even necessarily *exculpatory* material. Section 15A-282 draws no distinction between exculpatory and inculpatory material; every subject of NTID procedures has an immediate right to reports of the results of every test conducted—whether the results are exculpatory or inculpatory—"as soon as the results are available." § 15A-282.

Also unlike *Brady* obligations, the statute does not identify "the prosecution" as the responsible party. In fact, the legislature made a deliberate choice to place the statute in Subchapter II of the Criminal Procedure Act, which governs "Law-Enforcement and Investigative Procedures" and not in Subchapter IX, which governs "Pre-Trial Procedure" and includes Article 48 "Discovery in the Superior Court." *See generally* N.C. GEN. STAT. Ch. 15A. There is additional evidence that it is the investigator's responsibility to produce §15A-282 reports in the very case Defendants have identified.

In *Pearson*, the Court of Appeals reported that the investigator in charge of the investigation was examined by the trial court, by Pearson's counsel, and in the presence of his own counsel, to determine one question: whether *the investigator's* violation was willful. In the examinations, the investigator admitted that *he violated* § 15A-282 by failing to produce the report of results of tests conducted with products of Pearson's NTID procedure. *Pearson*, 551 S.E.2d at 476-77; *see also* discussion, *infra*, at n.8. Contrary to the premise of the contention DNASI asserts, the prosecutor was not made to answer for the violation; the investigator was. While the *Pearson* court did not discuss in what office the obligation was located, neither the trial court nor the Court of Appeals objected to the absence of any testimony from the prosecutor regarding the failure to deliver §15A-282 reports. Both the trial court and the court of appeals therefore implicitly held that the obligation belonged in that instance at least to the investigator by

accepting and then relying upon his confession and excuse as a means of finding that the violation was not a willful violation of § 15A-282. *See Pearson,* 551 S.E.2d 471.

Thus, while it may well be that Nifong had an obligation to produce the § 15A-282 reports to Plaintiffs, in light of Pearson, that obligation cannot be exclusive to him. *Pearson,* therefore, offers little aid in DNASI's effort. The most DNASI Defendants may argue based upon the authority they cite is that the obligation was co-extensive with Gottlieb's, Himan's, Clayton's, and the City's obligation to produce them. The plain language of the statute leads inexorably to the conclusion that the obligation belongs to any person, like DNASI and its co-conspirators, Gottlieb, Nifong, Himan, Clayton, the City, who are aware that a § 15A-282 report is available and has possession, custody, or control of it. When such a person, under color of law, deprives a person of a § 15A-282 report and he willfully refuses to accept a copy to avoid the obligation or to cause a copy to be delivered to the subject of the report, such conduct gives rise to a deprivation of a property right that is actionable under § 1983. At best, DNASI has merely raised a question of fact, and that is for the jury. DNASI raises no other arguments for dismissal of Plaintiffs' Fourth Cause of Action. Nor do the City, Gottlieb, Clayton, or Himan.

Therefore, Plaintiffs' have stated an actionable § 1983 Claim against DNASI Defendants directly, and pursuant to a conspiracy as they are alleged to have acted in concert and pursuant to an agreement or understanding with Gottlieb, Himan, Clayton, the City, and Nifong, to deprive Plaintiffs of property in violation of the Due Process Clause of the Fourteenth Amendment (and not pursuant to *Brady*). AC ¶¶ 765, 952. Plaintiffs' Fourth Cause of Action may not be dismissed.

Additionally, DNASI, Gottlieb, Himan, and other defendants' observation that Plaintiffs were never criminal defendants or were "merely suspects" does not support their assertion that Plaintiffs do not have an actionable § 1983 Claim. Nor could it. The

Due Process protections do not depend upon one's status in an investigation or station in life, except insofar as the state-created entitlement does so.

Defendants mistakenly attempt to apply to these Plaintiffs the premise that "the settled rule [under Brady]precludes the Evans Plaintiffs… ." DNASI Br. at 9. The Supreme Court has made clear that the constitutional grounds available to a plaintiff who has not been charged, prosecuted, or convicted are not limited to the Fourth Amendment. *Chavez v. Martinez*, 538 U.S. 760 (2003). To the extent that DNASI's argument has been employed in the *Evans* litigation, the argument has no place here. Plaintiffs are proceeding on a much different basis, and the means of constitutional relief that are available to these Plaintiffs are quite different than those that are available to the Evans Plaintiffs; *Chavez* leaves no doubt on that score.

- For the same reasons, DNASI's argument that Plaintiffs' inability to obtain "pre-trial" statutory discovery pursuant to N.C. GEN. STAT. §15A-903, has no bearing upon Plaintiffs' Fourth Cause of Action because Plaintiffs are not proceeding pursuant to any rights codified in that statute, or in its Subchapter of the North Carolina Statutes "Pre-Trial Discovery in the Superior Courts."

- DNASI, the City's and other Defendants' contention that "nothing in the statute requires creation of a report on the same day tests are conducted or preparation of a report on a particular schedule," DNASI Br. at 17, has little to do with the facts alleged, given that the AC—specifically—alleges that the reports existed, were distributed by DNASI to Defendants to Gottlieb, Himan, and Nifong. Plaintiffs have not asserted a right to reports before they existed; they assert a right to reports that existed long before they produced reports. AC ¶¶ 750-51, 755-57. Further, the Plaintiffs have alleged that those reports deliberately excluded the results of tests conducted with Plaintiffs' DNA *because* the reports of tests

conducted with Plaintiffs DNA revealed the information that would have destroyed the Conspiracy to Convict (i.e., tests comparing Plaintiffs' DNA with the DNA of at least four male sources of DNA in Mangums' rape kit were 'tests conducted with Plaintiffs' DNA' and as such, Plaintiffs were entitled to reports of those tests).

- That information was removed from the reporting protocol specifically for this case, only for this case. The act of removing that information from the reports of tests conducted with Plaintiffs' DNA was an overt act in furtherance of the Conspiracy to Convict Plaintiffs. That Conspiracy is alleged in the overarching Fifteenth Cause of Action. *Id.* ¶¶ 758-59, 765-68, 769-71.

- Defendants' contentions that Plaintiffs claim a right to "exculpatory" information are wrong: plaintiffs claim a right to a report of all tests conducted with products of Plaintiffs' NTID procedures—regardless of the exculpatory or inculpatory nature. Unlike the *Brady* rules, § 15a-282 makes no distinction based upon the effect the report would have upon the results of such tests.

- DNASI's and other defendants' argument that §1983 "does not provide for redress of violations of state law" is incorrect insofar as the Supreme Court's cases applying the Due Process Clause's protections of property interests look to sources of such rights in state law. DNASI Br. at 20 (citing Gantt v. Whitaker, No. 02-1340, 2003 WL 15286, at *4 (4th Cir. Jan. 23, 2003)). As discussed more fully above, this is settled law.

- Similarly, the remainder of DNASI Defendants' arguments fail because they depend upon their incorrect characterization of the statue as a merely "procedural statue" DNASI. That argument is belied by the clear unequivocal language of §15A-282's entitlement. The statute's language gives it its status as an

entitlement, and renders it enforceable, as here, through the Due Process clause. *See, e.g., Roth,* 408 U.S. at 577.

2. **The Sixth, Seventh, And Fifteenth Causes Of Action State A Section 1983 Claim For Conduct That Shocks The Conscience, In Violation Of The Fourteenth Amendment.**

Defendant does not have qualified immunity for Plaintiffs' § 1983 Fourteenth Amendment substantive due process claims. The first step in determining if a person is immune for actions under § 1983 for substantive due process claims is to determine whether "whether the challenged government actions shocks the conscience of federal judges." *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006) (Citing to *Ruiz v. McDonnell*, 299 F. 3d 1173, 1183 (10th Cir. 2002)). Additionally, this right must be clearly established at the time it as violated. *Seigert v. Gilley*, 500 U.S. 226, 232 (1992). Conduct that shocks the conscience is not simply intentional it is "intended to injure in some way unjustifiable by any government interest." *Hawkins v. Freeman*, 195 F. 3d 732, 742 (4th Cir. 1999). Like any other violation of a federal right, conduct that shocks the conscience and violates clearly established rights is not entitled to qualified immunity. *Martinez v. City of Oxnard*, 337 F.3d 1091, 1092 (9th Cir. 2003). *See also Butler v. Rio Rancho Public Schs. Bd. of Educ.*, 341 F.3d 1197, 1201 (10th Cir. 2003). At the time Defendant engaged in the conduct, a reasonable official/officer in Defendant's position would have known that his conduct violated clearly established rights.

3. **The Tenth Cause Of Action States An Actionable Section 1983 Claim Against The DNASI Defendants For Depriving Plaintiffs Of The Privileges And Immunities Afforded To North Carolina Citizens In Violation Of 42 U.S.C. § 1983.**

The Amended Complaint states an actionable Section 1983 Claim for deprivation of Plaintiffs' rights to the privileges and immunities guaranteed to them as citizens of the

United States by Article IV and the Fourteenth Amendment. Plaintiffs establish this claim in their Opposition to the City Supervisor's Motion to Dismiss. Pls. Op. Br. (City Super.) § II.A.(3).

### 4. The Fourteenth Cause Of Action States An Actionable Section 1983 Claim Against DNASI Defendants For Failure To Train In Violation Of 42 U.S.C. § 1983.

Defendants contend that they were not named, but Plaintiff's Amended Complaint alleges that DNASI provided a report that was considered to be the final report of DNA testing. The training was deficient in that the report provided fell far below industry standards, and in fact, testing results had never been reported in such a way by DNASI before. DNASI's acts were an abuse of the legal process, rooted in the failure to train, which caused the deprivation of Plaintiffs' due process rights.

## IV. THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS AGAINST THE DNASI DEFENDANTS FOR PARTICIPATION IN CIVIL RIGHTS CONSPIRACIES.

### A. Conspiracies In Violation Of 42 U.S.C. § 1983.

In Plaintiffs' Fifteenth Cause of Action DNASI is alleged to have conspired with all other named defendants in this action to deprive Plaintiffs of their rights under the First, Fourth and Fourteenth Amendments, including the substantive Due Process protections of the Fourteenth Amendment, and, in furtherance of the conspiracies, committing overt acts that caused actual violations of Plaintiffs' rights. AC ¶ 1150(A)-(O).[6] AC ¶ 1147-1155. The Fifteenth Cause of Action alleges a broad conspiracy, agreement, or understanding shared by all named Defendants in this action. The

---

[6] To allege a cause of action under 42 U.S.C. § 1983 for conspiracy, a plaintiff must allege facts that show that two or more defendants "acted jointly [and] in concert and that some overt act was done in furtherance of the conspiracy" that resulted in the deprivation of a federal right. *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996).

objective of the unifying conspiracy alleged in the Fifteenth Cause of Action was to unlawfully force the wrongful indictment, prosecution, and, ultimately, incarceration of the Plaintiffs, as the principals or accomplices in a horrible, racially motivated gang-rape, which the DNASI Defendants knew, perhaps more certainly than any other defendant, the Plaintiffs did not commit.

The conduct giving rise to the Fifteenth Cause of Action is alleged by incorporating the acts and omissions giving rise to the First through Eleventh Causes of Action (collectively, "the Predicate Violations"). The required showing of constitutional harm done in furtherance of the conspiracy is met by incorporating the constitutional violations established in the First through Eleventh Causes of Action. Therefore, the Predicate Violations of the First through Eleventh Causes of Action become constitutional deprivations caused by acts and omissions in furtherance of the unifying Conspiracy to Convict. AC ¶ 1152.

The Conspiracy to Convict was made and agreed upon "in quiet deliberation and discussion" among DNASI, City and Duke University officials with final policymaking authority with respect to the matters described in the Amended Complaint. *Id.* The deliberation of the conspirators and protracted duration of the conspiracy without any act to intervene by any of its members evince a malicious and corrupt intent to harm the Plaintiffs. AC ¶¶ 1153; 1147-1155. The conduct DNASI is alleged to have agreed upon is so arbitrary and egregious that it "shocks the conscience" in violation of the Fourteenth Amendment as to shock the contemporary conscience. AC ¶ 1153.

**B.**     **The Amended Complaint States Actionable Claims For Conspiracy In Violation Of 42 U.S.C. § 1985.**

The Sixteenth Cause of Action alleges Four Conspiracies in violation of § 1985(2) and (3).

To state a cause of action under 42 U.S.C. § 1985(2), a plaintiff must allege that "two or more persons conspire[d] for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws...." 42 U.S.C. § 1985(2).

The Sixteenth Cause of Action alleges that Addison, Michael, Nifong, Gottlieb, Himan, Wilson, Steel, the DNASI Defendants, the Crisis Management Team Defendants, the SANE Defendants, Graves, Dean, the Duke Police Supervising Defendants, and Duke University conspired to impede or obstruct the due course of justice in North Carolina generally with the intent to deny Plaintiffs the equal protection of the laws in violation of 1985(2). AC ¶¶ 1156-59. Defendants, motivated by race-based invidiously discriminatory motives, violated this statute by conspiring to deprive Plaintiffs of their federally secured rights as alleged elsewhere in the First through Eleventh Causes of Action and by fomenting race-based animus within the Plaintiffs' community. *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

Additionally, Sixteenth Cause of Action alleges that Nifong, Gottlieb, Himan, Clayton, Addison, Michael, the Durham Police Supervising Defendants, the SANE Defendants, the City of Durham, and Duke University conspired to impede or obstruct the due course of justice in North Carolina generally with the intent to intimidate witnesses, including the Plaintiffs, elicit false statements and testimony from Plaintiffs and other witnesses, and to prevent them from testifying truthfully to matters with the general objective of securing Plaintiffs' convictions as principals or accessories in state court for crimes they knew did not happen. AC ¶¶ 1161.

## C.    The Amended Complaint States A Violation Of 42 U.S.C. §1986.

Plaintiffs' Seventeenth Cause of Action (the "Section 1986 Claims") alleges that the SANE Defendants violated 42 U.S.C. § 1986 by refusing or neglecting to prevent or

aid in the preventing of the § 1985 Conspiracies (alleged in the Sixteenth Cause of Action), despite having the power and knowledge to do so. The Plaintiffs have stated actionable Section 1986 Claims against the SANE Defendants, having alleged the predicate § 1985 Conspiracies in the Sixteenth Cause of Action, as well as the § 1985 elements and facts from with they may be inferred. AC ¶¶ 1170-88.

Defendants raise several arguments against the civil rights conspiracy claims. First, Defendants argue that the Amended Complaint fails to allege sufficient facts to support a conspiracy claim under either § 1983 or § 1985. Second, Defendants argue that the Ninth Cause of Action should be dismissed because § 1985(2) applies only to witness tampering in federal proceedings. Third, Defendants argue that the § 1985 Claims should be dismissed because Plaintiffs fail to allege invidious animus based on race or protected class, a required element of such claims. Fourth, Defendants argue that if the § 1985 Claims are dismissed, then the Eleventh and Twelfth Causes of Action, alleging violations of 42 U.S.C. § 1986, must be dismissed as well. Plaintiffs respond to each below.

**D.  The § 1985 Claims Allege Racial Animus Of Two Types**

**1.  Section 1985 Prohibits Invidious Animus Against Any Race.**

Several Defendants have asserted that only members of a "minority" or "traditionally disadvantaged" group may avail themselves of the protections of § 1985. At step one, by its terms, the statute applies to any person or class of person. 42 U.S.C. § 1985(3) (2000). Consistent with the statutory language, we have found no cases in this circuit that held that members of other races have no standing to bring a § 1985(3) claim That is consistent with the broader equal protection principles of the statute itself. Further, courts, including this one, have consistently rejected the argument. *See, e.g., Mabe*, 367 F. Supp. 2d at 873-74. ( Contention that Plaintiff "cannot rely on §1985(3)

because he is not a minority is without merit."); *Waller v. Butkovich*, 605 F. Supp. 1137, 1144-45 (M.D.N.C. 1985) (rejecting the assertion that Section 1985(3) requires the alleged animus be directed at a traditionally disadvantaged group). In addition, this Court and others have expressly permitted white plaintiffs to bring claims under § 1985 in response to animus against them based on their race or even their perceived racist beliefs. *See Waller*, 605 F. Supp. 1137 The Fourth Circuit's decision in *Harrison v. KVAT Food Management*, urged by many Defendants held only that "victims of purely political conspiracies" do not have standing on that basis to bring a § 1985(3) claim. 766 F.2d 155, 161 (4th Cir. 1985). *Harrison*'s passing mention of "blacks" was merely a counterexample invoked to explain the difference between a victim of political conspiracy and a member of a "race or class" that is protected by § 1985(3). *See id.*

### 2. Defendants Were Motivated By, Fomented, And Took Advantage Of Racial Animus.

Civil rights conspiracies under § 1985(2) and § 1985(3) require proof of invidious animus based on race or other protected status. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 340 (1993). Defendants argue (1) that Plaintiffs have failed to allege membership in any such class; (2) that Plaintiffs are alleging that "Duke students" or "Duke lacrosse players" are a protected class; or (3) that Plaintiffs have failed to allege animus at all. Each of these arguments is incorrect.

Plaintiffs allege that Defendants' acts in furtherance of the § 1985 conspiracies were motivated by invidious animus based on race and were intended to foment and take advantage of racial animus against Plaintiffs. AC ¶ 1375. Race—any race—is an established protected classification. *See* § II.E.(1), *infra.* The Amended Complaint is replete with details from which to infer Defendants' invidious racial motives. See, e.g.:

- The Racist Dimension of The Conspiracy To Convict. AC ¶ 566-90.
- Spoilation of DECC Evidence. AC ¶ 568-69.

- Nifong's Acts in Furtherance of the Conspiracy to Fabricate. AC ¶¶ 577-80.

- Brodhead's Acts in Furtherance of the Conspiracy to Fabricate the "Racist" dimension to Mangum's False Rape and the Duke Faculty's Acts in Furtherance of the Conspiracy. AC ¶¶ 581-90.

- Nifong's Public Acts and Statements, AC ¶¶ 502-03.

- Addison Publicly Stigmatized the Plaintiffs, AC ¶ 504-06.

- The Established Policy or Custom of Disseminating Defamatory Posters in Potentially High-Profile Cases, AC ¶ 525-27.

- Duke Officials Publicly Stigmatized the Plaintiffs AC ¶¶ 528-35.

- Duke University's Clergy Publicly Stigmatize the Plaintiffs AC ¶ 554

- Duke University and City of Durham Officials with Final Policymaking Authority Ratified and Condoned the Foregoing Faculty and Employee Statements AC ¶¶ 555-58.

*See also,* AC ¶¶ 500-06; 544-59; 568-69; 570-76; 577-90; 1375. These allegations are based on fact, not "legal conclusion." *See Green v. Maroules*, 211 F. App'x 159, 162-63 (4th Cir. 2006) (holding that plaintiff who alleged she was target of racial profiling and conspiracy to falsely arrest her alleged racial animus and properly stated a claim under § 1985).

Defendants uniformly assert that "invidious racial animus" is not satisfied by deliberate acts designed to "create racial tensions or take advantage of racial animus on the part of others in order to achieve some other objective." City Br. at 32, citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). That is not the holding of *Griffin* which defined the "racial animus" element to require that the alleged "conspiracy . . . must aim at a deprivation of the equal enjoyment of rights secured by the law to all."

There is powerful guidance on this point also from the treatment given to the requirement of all actions brought under 42 U.S.C. § 1982[7] that the plaintiff prove invidious animus based on race or class. With respect to fomenting racial animus "regardless of defendants' ultimate motivation, the fact that they deliberately stirred up and harnessed the racial animosity of others to serve their own ends is sufficient to find a violation." *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc.*, 41 F.3d 1190, 1194 (7th Cir. 1994); *see also Clark v. Universal Builders, Inc.*, 501 F.2d 324, 331 (7th Cir. 1974) (defendants cannot escape liability for acting with racial animus in violation of § 1982 by "proclaiming that they merely took advantage of a discriminatory situation created by others"); *Ortega v. Merit Ins. Co.*, 433 F. Supp. 135, 140-41 (N.D. Ill. 1977) (quoting *Clark*, 501 F.3d at 331).

## V. THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS UNDER STATE LAW AGAINST THE DNASI DEFENDANTS.

The remaining causes of action asserted against the DNASI Defendants are alleged under North Carolina law. They include claims for Common Law Obstruction of Justice and Conspiracy, Intentional Infliction of Emotional Distress and Conspiracy, Negligence, Negligent Supervision, Retention, Training, and Discipline, and Negligent Infliction of Emotional Distress.

### A. The Amended Complaint States A Civil Conspiracy Claim Against The DNASI Defendants.

The Eighteenth and Twentieth Causes of Action state actionable Civil Conspiracy claims against the DNASI Defendants. AC ¶¶ 1189-1202, 1213-22. A cause of action for civil conspiracy arises whenever an injury is caused by "a wrongful act … committed

---

[7] 42 U.S.C. § 1982 was enacted pursuant to Congress' Thirteenth Amendment authority; it secures to all citizens the right, enforceable against private and public defendants, to "inherit, purchase, lease, sell, hold and convey real and personal property.'

by one or more of the conspirators pursuant to the common scheme and in furtherance of the objective." *State ex rel. Cooper v. Ridgeway Brands Mfg.,* No. 408A07, 2008 WL 3915186, at \*9 (N.C. Aug. 27, 2008) (quoting *Henry v. Deen,* 310 S.E.2d 326, 334 (1984)).  To state a claim for civil conspiracy a plaintiff must allege (1) a conspiracy, (2) wrongful acts done by certain of the alleged conspirators in furtherance of that conspiracy, and (3) injury as a result of that conspiracy.  *Id.*; *see Muse v. Morrison,* 66 S.E.2d 783, 785 (1951)).  A conspiracy, under North Carolina law, is an agreement, express or implied, between two or more persons to commit an unlawful act or to do a lawful act in an unlawful manner.  *See Evans v. Star GMC Sales & Service, Inc*., 151 S.E.2d 69, 71 (N.C. 1966).  Where a conspiracy is established, all conspirators are jointly and severally liable for acts done in furtherance of the agreement by any one of them. *See Hafner v. Brown*, 983 F.2d 570, 577 & n.6 (4th Cir. 1992).

The Amended Complaint alleges sufficient facts showing (1) the existence of the conspiracy to manufacture false and misleading reports of forensic testing and inculpatory evidence and deprive Plaintiffs of copies of exonerating test results through the concealment of exculpatory forensic evidence, AC ¶¶ 1191, 1215, in which the DNASI Defendants participated, *id.* ¶¶ 1190, 1194, 1215; and (2) numerous acts of the DNASI Defendants' co-conspirators in furtherance of the conspiracy, *id*. ¶¶ 1191-95, 1214-16; *see also id.* ¶¶ 660-87, 779-99, that caused injury to Plaintiffs, *id.* ¶¶ 1200, 1221-22.  Taken together, these allegations are sufficient to withstand a motion to dismiss.  The DNASI Defendants contend that Plaintiffs will not be able make good the allegations of the conspiracies alleged.  However, that contention "is of no concern at this stage." *Ridgeway Brands Mfg.,* 2008 WL 3915186 at \*10 (citing *Muse*, 66 S.E.2d at 785).  Plaintiffs' allegations entitle them to an opportunity to do so—their day in court. Therefore, the DNASI Defendants' Motion to Dismiss Plaintiffs civil conspiracy claims must be denied.

## B. The Amended Complaint States A Common Law Obstruction Of Justice Claim Against The DNASI Defendants.

The Eighteenth Cause of Action states an actionable claim for Common Law Obstruction of Justice against the DNASI Defendants. AC ¶¶ 1189-1202. To state an obstruction of justice claim under North Carolina law, a plaintiff may allege "any act which prevents, obstructs, impedes or hinders public or legal justice." *Jones v. City of Durham*, 643 S.E.2d 631, 633 (N.C. Ct. App. 2007) (quoting *Broughton v. McClatchy Newspapers, Inc.,* 588 S.E.2d 20, 30 (N.C. Ct. App. 2003)). The cause of action is a broad one, and courts have held that plaintiffs have stated actionable claims in a variety of contexts. *See, e.g., Jones,* 643 S.E.2d at 633 (claim stated against the City of Durham for its Police Department's failure to produce evidence); *Jackson v. Blue Dolphin Commc'ns of N.C.*, 226 F.Supp.2d 785, 794 (W.D.N.C. 2002) (cause of action stated upon allegation of soliciting a false affidavit); *Henry v. Deen,* 310 S.E.2d 326, 334 (N.C. 1984) (cause of action stated by allegation of conspiracy to conceal evidence of medical negligence).[8]

The Amended Complaint alleges that the DNASI Defendants "prevented, obstructed, impeded, or hindered" public justice in North Carolina by:

- Conspiring to manufacture and by manufacturing false and misleading reports with respect to the forensic testing of evidence in the investigation of Mangum's allegations, *id.* ¶ 1191;

---

[8] Article 30 of Chapter 14 of the North Carolina General Statutes identifies specific obstruction of justice offenses, but the common law claim remains a valid cause of action. *Jackson,* 226 F. Supp. at 794 (citing *In re Kivett,* 309 S.E.2d 442, 462 (N.C. 1983) (holding that Article 30 of Chapter 14 did not abrogate the common law offense of obstruction of justice)); *Burgess v. Busby,* 544 S.E.2d 4, 12, *reh'g den.,* 559 S.E.2d 554 (N.C. Ct. App. 2001) (permitting a civil common law obstruction of justice claim to proceed along with a statutory claim).

- Conspiring to deprive Plaintiffs of copies of reports exonerating DNA test results that existed on or before April 10, 2006, in the form of copies of the raw data tests conducted with their DNA, which Plaintiffs' retained forensic experts could have expeditiously interpreted—within hours—as conclusively exonerating them when those reports were available on or before April 10, 2006, *id.*¶ 1194; and,

- Conspiring to intimidate other witnesses who had personal knowledge necessary to prove Plaintiffs' and their teammates' innocence. *Id.* ¶ 1191; *see id.* 767-71.

The DNASI Defendants assert that a claim for obstruction of justice related to documentary evidence "lies only for *alteration* or *destruction* of that documentary evidence that makes it unavailable to a party to the litigation." DNASI Br. at 39. (emphasis in original) (citing *Henry v. Deen,* 310 S.E.2d 326 (N.C. 1984) and *Jones v. City of Durham*, 643 S.E.2d 631 (2007)). The settled law of North Carolina contradicts them. DNASI hopes to put this tort in a straight-jacket. Nothing in the cases suggests such a limitation on its scope. Indeed, the cause of action is sprawling, particularly in light of its statutory counterpart. Future or past litigation may be the subject of an obstruction claim. *Jackson, 226 F.Supp.2d 785 at 794.* A plaintiff need not be in the position of a defendant or plaintiff in the underlying action. A juror may state a claim for obstruction of justice arising out of his or her jury service in a prior civil action. *Burgess, 544 S.E.2d at 410-11.* Similarly, in Jackson, the Plaintiff alleged that the Defendants attempted to force her to sign a false witness affidavit that was to have been used in a civil suit that would possibly be filed later by one of Plaintiff's colleagues. *226 F. Supp. 2d at 794.* When the Plaintiff refused to sign the false affidavit, she was terminated. *Id.* The Western District held that those allegations were sufficient to show that Defendants attempted to impede the legal justice system. *Id. at 794-95.* Likewise, in Burgess, the defendant retaliated against jurors who had previously found him liable for medical

malpractice by sending a letter to his colleagues that listed the jurors' names. 544 S.E.2d at 6-7. The acts alleged to constitute obstruction of justice occurred after the first trial concluded, but before the obstruction claim was filed. *Id.* In Burgess, even though a suit was not pending at the time of the acts that obstructed justice, the plaintiffs had standing. *544 S.E.2d 4; Jackson, 226 F. Supp. 2d at 794.* North Carolina courts have already squarely decided this issue in Plaintiffs' favor: there is no requirement that plaintiff show that a lawsuit was pending against Plaintiff at the time a defendant is alleged to obstruct justice. *Jackson, 226 F. Supp. 2d at 794-95.* Defendants' argument that such a requirement exists is unsupportable. The DNASI Defendants have no other arguments for dismissal of this cause of action. Their motion to dismiss Plaintiffs' obstruction of justice claim must be denied.

### C. The Amended Complaint States An Intentional Infliction Of Emotional Distress Claim Against The DNASI Defendants.

The Twentieth Cause of Action states an actionable claim for Intentional Infliction of Emotional Distress ("IIED"). AC ¶¶ 1213-21. To state a claim for IIED under North Carolina law, a plaintiff must allege: "(1) extreme and outrageous conduct by the defendant; (2) which is intended to and does in fact cause (3) severe emotional distress." *W.E.T. v. Mitchell,* No. 1:06CV487, 2007 WL 271294, at *8 (M.D.N.C. Sept. 14, 2007) (citing *Harris v. County of Forsyth*, 921 F. Supp. 325, 335-36 (M.D.N.C. 1996)); *see also Waddle v. Sparks*, 414 S.E.2d 22, 27 (N.C. 1992) (stating same essential elements for IIED). "A claim may also exist where the defendant's actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress." *W.E.T., at* *8 (citing to *Hogan v. Forsyth Country Club Co.*, 340 S.E.2d 116, 119-20 (N.C. Ct. App. 1986)). "It is a question of law for the court to determine, from the materials before it, whether the conduct complained of may be reasonably found to be sufficiently outrageous as to permit recovery." *Id.* (citing *Beck v. City of Durham*, 573 S.E.2d 183,

191 (N.C. Ct. App. 2002)).  As distilled by the North Carolina Supreme Court, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *West v. King's Dep't Store, Inc.*, 365 S.E.2d 621, 625 (citing *Dickens v. Puryear*, 276 S.E.2d 325, 332 (N.C. 1981)) (quoting Restatement (Second) of Torts § 46 (1965)).

The DNASI Defendants argue for dismissal of Plaintiffs IIED Claim, contending that Plaintiffs must be held to the "stringent" North Carolina standard.  DNASI. Br. at 40. According to Defendants this is only met *"when it is "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."* *Johnson v. Colonial Life & Accident Ins. Co.,* 618 S.E.2d 867, 873 (2005) (internal quotations omitted). Defendants contend that even if it is assumed that an expert's failure to include all test results in an expert report or to summarize the underlying raw data constituted a violation of these Plaintiffs' legal rights, such conduct fails to pass the high standard of "extreme and outrageous conduct necessary to state a claim for intentional infliction of emotional distress." (DNASI Br. at 40-41)

Plaintiffs do assert the failure to include all tests results and the failure to summarize the data, AC ¶¶ 758-68, but Plaintiffs also have alleged that this was done intentionally and maliciously out of an orchestrated attempt to force the Plaintiffs to appear guilty in the eyes of the world and cause them public humiliation.  *Id.* ¶ 3, 951, 980, 1191, 1215, 1218.  This behavior is extreme and outrageous and beyond the societal norms, and as such, Plaintiffs have stated a claim for emotional distress.

**D.** **The Amended Complaint States A Negligence Claim Against The DNASI Defendants.**

The Thirty-Forth Cause of Action states an actionable Negligence claim against the DNASI Defendants. AC ¶¶ 1332-39. To state a negligence claim, a plaintiff must allege that (1) defendant owed plaintiff a duty of care, (2) the defendant breached that duty, and (3) defendant's breach was the actual and proximate cause of plaintiff's injury. *Cameron v. Merisel Props., Inc.,* 652 S.E.2d 660, 664 (N.C. Ct. App. 2007) (quoting *Thomas v. Weddle*, 605 S.E.2d 244, 246 (N.C. Ct. App. 2004)). The Amended Complaint states an actionable negligence claim against the DNASI Defendants. AC ¶¶ 1332-39. The DNASI Defendants argue that the Plaintiffs' negligence claims should be dismissed because, they contend, they owed Plaintiffs no "duty." DNASI Br. at 37. Their argument fails because, under North Carolina law, "every person" who engages in an active course of conduct that creates the risk of foreseeable harm to other persons, owes a duty of care to such other persons.

North Carolina's common law of ordinary negligence "'imposes upon every person *who enters upon an active course of conduct the positive duty to exercise ordinary care to protect others from harm*, and calls a violation of that duty negligence.'" *Peal v. Smith*, 444 S.E.2d 673, 677 (N.C. Ct. App. 1994) (emphasis in the original) (quoting *Hart v. Ivey*, 420 S.E.2d 174, 178 (N.C. 1992)). "The duty to protect others from harm arises whenever one person is by circumstances placed in such a position towards another that anyone of ordinary sense who thinks will at once recognize that if he does not use ordinary care and skill in his own conduct with regard to those circumstances, he will cause danger of injury to the person or property of the other." *Lumsden v. United States*, 555 F. Supp.2d 580, 589 (E.D.N.C. May 7, 2008) (quoting *Quail Hollow E. Condo. Ass'n v. Donald J. Scholz Co.*, 268 S.E.2d 12, 15 (N.C. Ct. App. 1980)). "Every man is in general bound to use care and skill in his conduct wherever the reasonably prudent person

in his shoes would recognize unreasonable risk to others from failure to use such care."
*Id.* (quoting *Estate of Mullis v. Monroe Oil Co.*, 505 S.E.2d 131, 137 (N.C. 1998)). Thus,
a duty of care arises from any conduct where the risk of harm to another is both
unreasonable and foreseeable. *Mullis*, 505 S.E.2d at 137. Therefore, it is every person's
duty is to avoid foreseeable, unreasonable risk of harm to others. *Id.* (quoting Justice
Cardozo's "classic analysis of duty" in *Palsgraf v. Long Island R.R. Co.*, 162 N.E. 99
(N.Y. 1928) ("*The risk reasonably to be perceived defines the duty to be obeyed… .*")
(emphasis in original)).

The test for whether Plaintiffs have stated a claim for negligence "is no more than
whether [defendant(s)/or it agents], in undertaking to perform an active course of
conduct, exercised such ordinary care as is required of a reasonable, prudent person under
the circumstances." *Lumsden*, 555 F. Supp.2d at 589 (alteration not in original). Taking
as true the allegations contained in the Complaint, these defendants owed a duty of
ordinary care to plaintiffs. AC ¶ 1333. The Amended Complaint alleges the following
negligent conduct of the DNASI Defendants:

- In April 2006, Clark, Meehan, and DNASI agreed to omit exculpatory findings
  that resulted from their scientific testing of Mangum's rape kit items from
  DNASI's report of the results of its scientific testing relating to the investigation.
  AC ¶ 1334; *see also id.* ¶¶ 802-03.

- In April and May 2006, Clark, Meehan, and DNASI acted individually and in
  concert to produce the May 12 Report that misstated the purported results of
  DNASI's scientific testing relating to the investigation of Mangum's claims and
  omitted exculpatory findings that resulted from their scientific testing of
  Mangum's rape kit items. *Id.* ¶ 1335; *see also id.* ¶¶ 765-68.

- DNASI's act and omissions failed to comply with DNASI's internal protocols,
  Federal Bureau of Investigation standards, and regulations governing accredited
  DNA testing facilities. *Id.* ¶ 1336; 756.

- At the time the April 10, 2006 meeting, it was plainly obvious and Clark, Meehan, and DNASI knew, or should have known, that their acts and omissions would result in the filing and prosecution of serious criminal charges against the Plaintiffs. *Id.* ¶ 1337; *see also id.* ¶¶ 769-72, 775-78.

These allegations are more than sufficient to state actionable negligence claims against the DNASI Defendants; as such, their motion to dismiss Plaintiffs' negligence claims must be denied.

E. **The Amended Complaint States A Negligent Supervision, Retention, Training, And Discipline Claim Against The Dnasi Defendants.**

The Thirty-Fifth Cause of Action states an actionable claim for Negligent Supervision, Retention, Training, and Discipline ("Negligent Supervision") Claim against the DNASI Defendants. AC ¶¶ 1340-47. North Carolina recognizes an employer's negligent supervision and retention of an employee as an independent tort that renders employers liable to third parties injured as a result of their employees' incompetence. *See Smith v. Privette*, 495 S.E.2d 395, 398 (N.C. Ct. App. 1998) (citing *Braswell v. Braswell*, 410 S.E.2d 897, 903 (N.C. 1991)). To state a claim for negligent supervision, a plaintiff must allege that: (1) an incompetent employee committed a tortious act resulting in injury to the plaintiff, and that (2) prior to the tortious act, the employer knew or had reason to know of the employee's incompetence. *Privette*, 495 S.E.2d at 398 (citing *Graham v. Hardee's Food Sys., Inc.*, 465 S.E.2d 558, 560 (N.C. Ct. App. 1996)).

F. **The Amended Complaint States A Negligent Infliction Of Emotional Distress Claim Against The DNASI Defendants.**

The Thirty-Sixth Cause of Action states an actionable claim for Negligent Infliction of Emotional Distress ("NIED") against the DNASI Defendants. AC ¶¶ 1348-53. To state a cause of action for Negligent Infliction of Emotional Distress ("NIED"), the plaintiff must allege that the defendant (1) negligently engaged in conduct, (2) under circumstances in which it was reasonably foreseeable that the conduct would cause the

plaintiff severe emotional distress; and (3) the conduct caused the plaintiff severe emotional distress. *Johnson v. Ruark Obstetrics & Gynecology Assoc.*, 395 S.E.2d 85, *reh.'g den.*, 399 S.E.2d 133 (1990). The term "severe emotional distress" means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by a professional trained to do so. *Sorrells v. M.Y.B. Hospitality Ventures*, 435 S.E.2d 320, 322 (1993); *Johnson*, 395 S.E.2d 85.

## VI.    DNASI'S *MONELL* LIABILITY

In Plaintiffs Brief in Opposition to the City of Durham's Motion to Dismiss, Plaintiffs establish the factual and theoretical basis for DNASI's *Monell* liability,[9] which arises out of DNASI policymakers' participation in, direction and ratification of the conduct that caused the constitutional violations alleged. Specifically, Meehan and Clark are both alleged to be DNASI officials with final policymaking authority for the entity; their participation in the conspiracy to violate Plaintiffs constitutionally protected property rights, and by extension, their participation in the unifying Conspiracy to Convict, alleged in the Fifteenth Cause of Action, renders DNASI "responsible" under *Monell* for the harms caused by that conduct. *See, generally,* Pls. Opp. Br. (City) §II.B(1)-(2).

## VII.    DNASI'S RESPONDEAT SUPERIOR LIABILITY

Under North Carolina law, a principal is liable for the torts of his agent in three situations: "(1) when the agent's act is expressly authorized by the principal; (2) when the agent's act is committed within the scope of his employment and in furtherance of the

___

[9] *Monell v. Dep't of Social Servs. of N.Y.,* 436 U.S. 658 (1978)

principal's business; or (3) when the agent's act is ratified by the principal." *Hogan v. Forsyth Country Club Co.,* 340 S.E.2d 116, 121-22 (N.C. App. 1986) (citations omitted). Pursuant to each of the three theories of liability authorized by North Carolina law, DNASI is liable for the tortious conduct of Meehan and Clark.

## VIII. DNASI DEFENDANTS MAKE NO OTHER ARGUMENT FOR DISMISSAL; PLAINTIFFS REQUEST LEAVE TO COMMENCE DISCOVERY.

The DNASI Defendants have made no other arguments in support of dismissal of Plaintiffs' claims. With respect, Plaintiffs request leave to schedule the Rule 26(f) discovery conference.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motions to Dismiss, and Plaintiffs' request for leave to conduct the Rule 26(f) discovery conference should be granted.

Dated: October 10, 2008

Respectfully submitted,

**EKSTRAND & EKSTRAND LLP**

/s/ Robert C. Ekstrand

_____
Robert C. Ekstrand, Esq. (NC Bar #26673)
Attn: Stefanie A. Sparks
811 Ninth Street, Suite 260
Durham, North Carolina 27705
Email: rce@ninthstreetlaw.com
Email: sas233@law.georgetown.edu
Phone: (919) 416-4590
*Counsel for Plaintiffs Ryan McFadyen, Matthew Wilson, and Breck Archer*

# UNITED STATES DISTRICT COURT
## FOR THE
## MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| RYAN MCFADYEN, ET AL., | |
| Plaintiffs, | |
| V. | **Civil Action No. 1:07-cv-953** |
| DUKE UNIVERSITY, ET AL., | |
| Defendants. | |

## CERTIFICATE OF SERVICE

I hereby certify that, on October 10, 2008, I electronically filed the foregoing PLAINTIFFS' OPPOSITION TO THE DNASI DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> James Donald Cowan, Jr.
> Ellis & Winters, LLP
> 100 North Greene Street, Suite 102
> Greensboro, NC 27401
> ***Counsel for the University Defendants***

> Dixie Wells
> Ellis & Winters, LLP
> 100 North Greene Street, Suite 102
> Greensboro, NC 27401
> ***Counsel for the University Defendants***

Jamie S. Gorelick
Wilmer Cutler Pickering Hale and Dorr, LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
***Counsel for the University Defendants***

Jennifer M. O'Connor
Wilmer Cutler Pickering Hale and Dorr, LLP
1875 Pennsylvania Ave., N.W.
Washington, DC  20006
***Counsel for the University Defendants***

Paul R.Q. Wolfson
Wilmer Cutler Pickering Hale and Dorr, LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
***Counsel for the University Defendants***

William F. Lee
Wilmer Cutler Pickering Hale and Dorr, LLP
60 State Street
Boston, MA  02109
***Counsel for the University Defendants***

Dan J. McLamb
Yates, McLamb & Weyher, LLP
One Bank of America Plaza, Ste 1200
421 Fayetteville Street
Raleigh, NC 27601
***Counsel for the Sane Defendants***

Reginald B. Gillespie, Jr.
Faison & Gillespie
P.O. Box 51729
Durham, NC 27717
***Counsel for the City of Durham, North Carolina***

Patricia P. Kerner
Troutman Saunders, LLP
434 Fayetteville Street, Suite 1900
Raleigh, NC 27601
***Counsel for Steven Chalmers, Patrick Baker, Beverly Council, Ronald Hodge, Jeff Lamb, Stephen Mihaich, Michael Ripberger, Laird Evans, and Lee Russ***

D. Martin Warf
Troutman Sanders LLP
P.O. Drawer 1389
Raleigh, North Carolina 27602
***Counsel for Steven Chalmers, Patrick Baker, Beverly Council, Ronald Hodge, Jeff Lamb, Stephen Mihaich, Michael Ripberger, Laird Evans, and Lee Russ***

James B. Maxwell
Maxwell, Freeman & Bowman
P.O. Box 52396
Durham, NC 27717-2396
***Counsel for David Addison, Kammie Michael, Richard D. Clayton and James T. Soukup***

Joel M. Craig
Kennon, Craver, Belo, Craig & McKee
4011 University Drive, Suite 300
Durham, NC 27707
***Counsel for Benjamin W. Himan***

Edwin M. Speas, Jr.
Poyner & Spruill, LLP
P.O. Box 10096
Raleigh, NC 27605-0096
***Counsel for Mark Gottlieb***

Eric P. Stevens
Poyner & Spruill, LLP
P.O. Box 10096
Raleigh, NC 27605-0096
***Counsel for Mark Gottlieb***

Kearns Davis
Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P.
P.O. Box 26000
Greensboro, NC  27420
***Counsel for DNA Security, Inc. and Richard Clark***

Robert J. King, III
Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P.
P.O. Box 26000
Greensboro, NC  27420
***Counsel for DNA Security, Inc. and Richard Clark***

Linwood Wilson
**\*\* Address Redacted Pursuant to Local Rule**

I further certify that I caused the foregoing document to be served by first-class mail, postage prepaid, to the following non CM/ECF participants:

Paul R. Dickinson, Jr.
Lewis & Roberts, PLLC
5960 Fairview Road, Suite 102
Charlotte, NC  28210
***Counsel for Brian Meehan***

James A. Roberts, III
Lewis & Roberts, PLLC
1305 Navaho Drive, Suite 400
Raleigh, NC  27609-7482
***Counsel for Brian Meehan***

Roger E. Warin
Steptoe & Johnson, LLP
1330 Connecticut Avenue, NW
Washington, DC 20003
***City of Durham, North Carolina***

Robert A. Sar
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2301 Sugar Bush Road, Suite 600
Raleigh, NC  27612
***Counsel for DNA Security, Inc.***

Nicholas J. Sanservino, Jr.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2301 Sugar Bush Road, Suite 600
Raleigh, NC  27612
***Counsel for DNA Security, Inc.***


Respectfully submitted,

**EKSTRAND & EKSTRAND LLP**

/s/ Robert C. Ekstrand
_____
Robert C. Ekstrand, Esq.
NC Bar #26673
811 Ninth Street, Suite 260
Durham, North Carolina 27705
Email:  rce@ninthstreetlaw.com
Phone: (919) 416-4590
Counsel for Plaintiffs