# UNITED STATES DISTRICT COURT
## FOR THE
## MIDDLE DISTRICT OF NORTH CAROLINA

RYAN McFADYEN, et al.,

     Plaintiffs,

v.

DUKE UNIVERSITY, et al.,

     Defendants.

Civil Action No. 1:07-cv-953

_____

## PLAINTIFFS' OPPOSITION TO DEFENDANT HIMAN'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT
_____

Dated:  October 10, 2008

**EKSTRAND & EKSTRAND LLP**
Robert C. Ekstrand (NC Bar #26673)
Attn:  Stefanie A. Sparks
811 Ninth Street, Suite 260
Durham, North Carolina 27705

***Counsel for Plaintiffs Ryan McFadyen,
Matthew Wilson, and Breck Archer***

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................i

STATEMENT OF THE CASE ........................................................................... 1

NATURE OF THE PROCEEDINGS ............................................................... 1

STATEMENT OF THE FACTS ....................................................................... 2

QUESTIONS PRESENTED .............................................................................. 2

ARGUMENT........................................................................................................ 3

    I.    STANDARD OF REVIEW.................................................................. 3

    II.    THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS UNDER FEDERAL LAW AGAINST DEFENDANT HIMAN. ..................................... 4

        A. The Amended Complaint States Actionable Section 1983 Claims Against Defendant Himan. ..................................................................... 4

            1.  The First and Second Causes of Action State Actionable Section 1983 Claims for Subjecting Plaintiffs to Searches and Seizures Without Probable Cause or Reasonable Suspicion in Violation of the Fourth and Fourteenth Amendments....................................................................... 6

                a.  Plaintiffs Do Not "Concede" There Was Probable Cause for the NTID or Search Warrant ................................................................... 7

                b.  Himan's Fabrications and Omissions were Necessary to the Judicial Determination of Probable Cause ..................................................... 8

                c.  Eliminating the Fabrications and Adding Material Omissions Defeats Probable Cause.................................................................... 9

                d.  Rule 9(b) Does Not Impose a Heightened Pleading Standard Upon Plaintiffs' First (or Second) Cause of Action................................... 11

                e.  Plaintiffs never asserted "a right to be free of investigation." ......... 12

            2.  The Third Cause of Action States an Actionable Section 1983 Claim for Abuse of Process Designed to Coerce Plaintiffs into Submitting to Interrogation........................................................................................ 12

3.  The Fourth Cause of Action States a Section 1983 Claim for Deprivation of Property in Violation of the Fourteenth Amendment. ..13

4.  The Fifth Cause of Action States a Section 1983 Claim Against Defendant Himan for Stigmatizing Plaintiffs in Connection with the Deprivations of Their Rights and Tangible Interests in Violation of the Fourteenth Amendment. ....................................................................... 16

5.  The Sixth and Seventh Causes of Action State a Section 1983 Claim for Conduct that Shocks the Conscience, in Violation of the Fourteenth Amendment............................................................................................ 17

6.  The Ninth Cause of Action States an Actionable Section 1983 Claim for Retaliation and Conspiracy in Violation of Plaintiffs' First and Fourteenth Amendment Rights............................................................... 19

7.  The Tenth Cause of Action States an Actionable Section 1983 Claim Against Defendant Himan for Depriving Plaintiffs of the Privileges and Immunities Afforded to North Carolina Citizens in Violation of 42 U.S.C. § 1983........................................................................................ 20

8.  The Eleventh Cause of Action States an Actionable Section 1983 Claim Against Defendant Himan for Failure to Prevent or Aid in Preventing the Ongoing Deprivations of Plaintiffs' Constitutional Rights. ............ 21

III.  HIMAN IS NOT ENTITLED TO QUALIFIED IMMUNITY......................... 22

A.  The Qualified Immunity Standard............................................................... 22

1.  Himan Does Not Have Qualified Immunity for Fabricating Affidavits That Cause NTID Orders and Search Warrants to Issue Without Probable Cause. .................................................................................... 23

2.  Himan Does Not Have Qualified Immunity for Abuse of Process Designed to Coerce Plaintiffs into Submitting to Interrogation. ........... 24

3.  Himan Does Not Have Qualified Immunity for Causing Deprivations of Plaintiffs' Due Process Right to §15A-282 Reports............................. 25

4.  Himan is Not Entitled to Qualified Immunity for Stigmatizing Plaintiffs in Connection With Deprivation of a Constitutional Right. .................. 26

5.  Himan is not Entitled to Qualified Immunity for Retaliating Against Plaintiffs for Exercise of First Amendment Rights. .............................. 27

6.  Himan is not Entitled to Qualified Immunity for Discriminatory and Abusive Enforcement of the Criminal Laws Because Plaintiffs Were "Temporary" Residents of North Carolina. ........................................... 28

7.  Himan Does Not Have Qualified Immunity for Engaging in Conduct that Shocks the Conscience. ................................................................. 29

8.  Himan Does Not Have Qualified Immunity for Failing to Intervene to Prevent His Fellow Officers From Violating Plaintiffs Constitutional Rights in His Presence or Within His Knowledge. ............................... 30

IV.  THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS FOR PARTICIPATION IN CIVIL RIGHTS CONSPIRACIES. ............................. 31

A.  Conspiracies in Violation of 42 U.S.C. § 1983. ......................................... 31

B.  The Amended Complaint States Actionable Claims for Conspiracy in Violation of 42 U.S.C. § 1985. ...................................................................... 32

C.  The Amended Complaint States a Violation of 42 U.S.C. §1986. .............. 34

D.  The Amended Complaint Alleges Sufficient Direct and Circumstantial Evidence To Establish an Unlawful Conspiracy. ......................................... 34

E.  The § 1985 Claims Allege Racial Animus of Two Types .......................... 35

1.  Section 1985 Prohibits Invidious Animus Against Any Race. ............... 35

2.  Defendants Were Motivated by, Fomented, and Took Advantage of Racial Animus. ........................................................................................... 35

V.  The Amended Complaint States Actionable Claims Under State Law Against Defendant Himan. ............................................................................................ 38

A.  Public Official Immunity Does Not Bar Plaintiffs' State Law Claims Alleging Intentional Conduct. .................................................................... 38

B.  The Amended Complaint States a Civil Conspiracy Claim Against Defendant Himan. ..................................................................................... 40

C.  The Amended Complaint States a Common Law Obstruction of Justice Claim Against Defendant Himan. ............................................................. 40

D.  The Amended Complaint States a Common Law Abuse of Process Claim Against Defendant Himan. ........................................................................ 43

E.  The Amended Complaint States an Intentional Infliction of Emotional Distress Claim Against Defendant Himan. ................................................. 43

F.  The Amended Complaint States an Aiding or Abetting the Breach of Fiduciary Duty Claim. ............................................................................... 46

G.  The Amended Complaint States a Negligence Claim Against Defendant Himan. ....................................................................................................... 47

H.  The Amended Complaint States a Negligent Infliction of Emotional Distress Claim Against Defendant Himan. ................................................. 48

iii

VI.   THE COURT MAY DISMISS OFFICIAL CAPACITY CLAIMS WHERE THE CITY IS ALSO NAMED AS A DEFENDANT AND IS THE REAL PARTY IN INTEREST. ..................................................................... 49

VII.  defendant himan makes NO OTHER ARGUMENT FOR DISMISSAL and PLAINTIFFS REQUEST LEAVE TO COMMENCE DISCOVERY ............. 50

CONCLUSION ............................................................................................................ 50

## STATEMENT OF THE CASE

The Amended Complaint describes a combination of actors and entities referred to as the Consortium.  For thirteen months beginning in March 2006, the Consortium's ultimate objective was to railroad the Plaintiffs and their 44 teammates into convictions as either principles or accomplices to a horrific, violent crime they knew never happened.  The allegations describe a willful, malicious, and calculating conspiracy of multiple dimensions.  Acting individually and in concert, Defendants concealed exonerating evidence, manufactured inculpatory evidence, and stigmatized the Plaintiffs by subjecting them to public outrage, public condemnation, and infamy in the minds of millions of people.  Defendants' conduct shocks the conscience.  Perhaps the most unsettling allegation of all is that those who knew of the wrongs conspired to be done to Plaintiffs, and had the power to prevent or aid in preventing them.  Instead, they 'turned a blind eye' and did nothing.

## NATURE OF THE PROCEEDINGS

Plaintiffs filed this action on December 18, 2007 and amended that filing on April 17, 2008.  Pursuant to a request from this Court regarding the location of the audio and video exhibits embedded within the First Amended Complaint ("AC"), Plaintiffs re-filed the AC on April 18, 2008 with those embedded exhibits as separate documents.  Except for the location of the exhibits, the two "First Amended Complaints" are identical.   All Defendants filed Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b) (6) on July 2, 2008. This Memorandum is filed pursuant to the Court's Order of October 7, 2008 [Document #72], granting Plaintiffs' Motion for Leave to File Opposition Briefs

[Document #71], and authorizing Plaintiffs to file their Responses on or before October 10, 2008.[1]

## STATEMENT OF THE FACTS

Benjamin W. Himan has testified that when he was assigned to the case that spawned this lawsuit, he had never seen a DNA report in his life.  AC ¶ 346.  Himan has since resigned from the Durham Police Department.  At all times relevant to this action, Himan was employed by the City as a property crimes investigator.  Of the five property crimes investigators in District Two, Himan was, in his own words, "at the bottom of the list" in terms of seniority, experience, training and skill.  Gottlieb personally assigned Himan as "lead investigator" in this case.  Himan had just become an investigator when Mangum's false allegations were made.  AC ¶ 63.

Himan, perhaps more so than any other person besides Investigator Mark Gottlieb and District Attorney Michael Nifong, had the greatest opportunity to end the conspiracy to convict.  Himan was present at almost every critical meeting and juncture, including the Special Prosecutors' interviews of Mangum.  Himan has testified that it was only at this last meeting that he finally became convinced Mangum was lying.  AC ¶ 401.  By this time, it was too late, the damage was already done – in large part, by Himan.

## QUESTIONS PRESENTED

1.  Have the Plaintiffs stated actionable claims against Defendant Himan under 42 U.S.C. § 1983?  (§§ II.A.(1)-(8))

---

[1]  Plaintiffs' Opposition Brief is filed in response to Himan's Motion to Dismiss [Document #51] and supporting Memorandum [Document #52].  Himan's supporting brief is cited herein as "Himan Br."  Himan's co-defendants' supporting briefs are cited herein as: "City Br.," "Gottlieb Br.," "City Super. Br.," "DNASI Br.," "SANE Br.," "Duke Univ. Br." "DUPD Br.," "SMAC Br.," "Hodge Br.," and "Wilson Br."

2. Is Defendant Himan Entitled to Qualified Immunity for Plaintiffs' §1983 Claims? (§§ III.A.1-8)

3. Have the Plaintiffs stated actionable claims against Defendant Himan for Conspiracy under 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1986? (§IV.A.-C.).

4. Have the Plaintiffs stated actionable claims against Defendant Himan under State Law? (§V.A.–H.).

## ARGUMENT

## I. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim may be granted "only in very limited circumstances." *Rogers v. Jefferson-Pilot Life Ins. Co*., 883 F.2d 324, 325 (4th Cir. 1989). In examining a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Salami v. Monroe*, No. 1:07CV621, 2008 WL 2981553, at *5 (M.D.N.C. Aug. 1, 2008) (quoting *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). Though the complaint is not required to encompass detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quotations and alterations in original) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007)). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 127 S.Ct. at 1965). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* (quoting *Twombly*, 127 S.Ct. at 1969). Further, where Plaintiffs have asserted a civil rights action, the Court "must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Veney*

*v. Wyche,* 293 F.3d 726, 730 (4th Cir. 2002) (internal quotations omitted).  With these standards in mind, this Memorandum will identify the factual basis in the Amended Complaint ("AC") for the causes of action asserted against Defendant Himan and respond to his arguments for dismissal.

## II.  THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS UNDER FEDERAL LAW AGAINST DEFENDANT HIMAN.

### A. The Amended Complaint States Actionable Section 1983 Claims Against Defendant Himan.

The Amended Complaint's first fifteen Causes of Action allege violations of 42 U.S.C. § 1983 (the "§ 1983 Claims").  At this early stage, the Court must determine whether each of these Causes of Action alleges facts sufficient to satisfy the elements of § 1983.[1]  *See Green v. Maroules*, 211 F.App'x 159, 161 (4th Cir. 2006).  Based on statute's text, the Supreme Court held that a Section 1983 claim requires only two essential allegations:

> By the plain terms of Section 1983, two–and only two–allegations are required in order to state a cause of action under that statute.  First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who deprives them of that right acted under color of state or territorial law.

*Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *accord West v. Atkins*, 487 U.S. 42 (1988).

---

[1] Section 1983 provides:

> [E]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress[.]

42 U.S.C. § 1983 (2000).

Section 1983 does not itself create or establish substantive rights. Instead, § 1983 provides "a remedy" where a plaintiff demonstrates a violation of a right protected by the federal Constitution, or by a federal statute other than § 1983. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). The Amended Complaint adequately alleges a factual basis for every element of a § 1983 claim against Defendant Himan. The Amended Complaint alleges that (1) Defendant Himan is a "person" for purposes of § 1983, AC ¶¶ 905, 919, 930, 942, 969, 979, 993, 1003, 1021, 1148; (2) who, while acting under color of state law, *id* . ¶¶ 905, 919, 930, 942, 969-70, 979, 993, 1003, 1021, 1149; (3) proximately caused *id.* ¶¶ 916, 927-28, 939, 952, 976, 984, 1000, 1006, 1022-23, 1154; (4) the deprivation of Plaintiffs' federal rights, *id.* ¶¶ 916, 927-28, 934, 939, 952, 976, 984, 1000, 1006, 1022-23, 1154. The elements and the supporting allegations detailed across more than 400 pages of the Amended Complaint are more than sufficient to state § 1983 claims against Himan. *See, e.g., Gomez v. Toledo,* 446 U.S. 635, 640 (1980)*.*

Himan concedes that the Amended Complaint sufficiently alleges he is a "person" for purposes of § 1983, and, at all relevant times, was acting under color of state law. Of the § 1983 claims asserted against Himan, he argues that only the First Cause of Action, arising out of his procurement of the NTID Order, should be dismissed on the merits of the violation alleged. Himan Br. at 13-21. Himan makes no argument as to the merits of the remaining § 1983 claims asserted against him; he argues only that they should be dismissed on the grounds that qualified immunity shields him from liability because the rights alleged were not "clearly established" at the time of the violation. Himan Br. at 21-33. His arguments fail because he misstates the law governing the issuance of NTID Orders. He also fails to acknowledge the facts alleged in the AC showing all of the material allegations in the Affidavits that support the claim that the NTID and Warrant were fabrications, and he also fails to acknowledge all of the material omissions alleged

in the AC, and the rights alleged in all of the § 1983 claims asserted in the Amended Complaint that were clearly established at the time he violated them.

> **1. The First and Second Causes of Action State Actionable Section 1983 Claims for Subjecting Plaintiffs to Searches and Seizures Without Probable Cause or Reasonable Suspicion in Violation of the Fourth and Fourteenth Amendments.**

The First and Second Causes of Action state § 1983 Claims against Himan and others for unreasonable searches and seizures in violation of Fourth and Fourteenth Amendments. AC ¶¶ 904-17, 918-28. The First Cause of Action identifies the search and seizure caused by the issuance of the Non-Testimonial Identification ("NTID Order"). The Second Cause of Action identifies the search and seizure caused by Himan's Affidavit to procure a Search Warrant for Ryan McFadyen's dorm room. The Amended Complaint alleges that Himan procured the judicial authorization for both the NTID Order and the McFadyen Warrant through Affidavits in which Himan intentionally or with reckless disregard for the truth made false statements and made numerous omissions that were material to the judicial determination. *Id.* ¶¶ 415-44. With respect to the NTID Affidavit, taking the Plaintiffs' allegations as true, the Amended Complaint establishes that *every statement* in the NTID Affidavit was deliberately fabricated, *id.* ¶¶ 416-18, and, further, that Himan deliberately omitted from the NTID Affidavit all of the overwhelming evidence of innocence that was known to Himan, Nifong, Gottlieb, Levicy, and Arico at the time, *id.* ¶¶ 223-37, 262-311, 321-31, 382-85. The Amended Complaint documents Himan's omissions and fabrications, as well as Himan's knowledge of them, in rich detail. *See id.* ¶¶ 385, 414-435, 570-75. Himan, Gottlieb, and the SANE Defendants are incorrect when they contend that the only allegations of fabrication are contained in the section of the AC detailing the origins of the *most sensational* fabrications. With respect to the McFadyen Search Warrant, the only additional material included in the Affidavit used to procure it (i.e., disembodied text that

an anonymous e-mailer claimed was sent by Ryan McFadyen's Duke e-mail account) was unreliable as a matter of law, and, therefore, could not be considered in the judicial determination of probable cause. *See Illinois v. Gates*, 462 U.S. 213, 239 (1983).

Himan makes no argument for dismissal on the merits of Plaintiffs' Second Cause of Action, which alleges an unconstitutional search and seizure of Ryan McFadyen's room without probable cause in violation of the Fourth Amendment, but because the affidavits supporting the NTID and the warrant for the search of the room are materially the same, the arguments will be applicable to both causes for the purposes of incorporated briefs. *See generally* Himan Br. 1-43. He argues that the First Cause of Action should be dismissed because, he contends, (1) Plaintiffs "concede" that probable cause existed for the NTID Order; (2) his fabrications were not necessary to the finding of probable cause; (3) "inconsistencies in the accuser's statements" do not defeat probable cause; (4) the Amended Complaint fails to meet the heightened pleading requirements of Fed. R. Civ. P. 9(c); and (5) Plaintiffs are asserting a non-existent "right to be free from criminal investigation." Himan Br. at 13-21. The first, third, and fifth arguments fail because they misrepresent Plaintiffs' allegations; the fourth fails because it misapplies the law; and the second argument fails because it misrepresents the law and the allegations.

### a. Plaintiffs Do Not "Concede" There Was Probable Cause for the NTID or Search Warrant

Himan argues that his deliberate fabrications and omissions were not necessary to the finding of probable cause for two reasons. First, he contends that the Amended Complaint "concedes" that the fabrications were not necessary to the finding of probable cause. Himan Br. at 16. Of course, the Amended Complaint does not "concede" probable cause existed for the 610 N. Buchanan Search Warrant. In fact, the very paragraph that Himan cites to support his remarkable contention, AC ¶ 418, states that the

new "fabricated allegations in the NTID order added a sinister dimension to *the already fabricated account of the evening in the [610 N. Buchanan] search warrant affidavit*." AC ¶ 418 (emphasis added). The point made in the Amended Complaint is not that probable cause already existed for the 610 N. Buchanan Warrant; the point is that Himan and his co-conspirators had already fabricated and omitted enough material facts to mislead a judicial official into believing (wrongly) that probable cause existed. Plaintiffs allege that the purpose of the additional fabrications and omissions was to maliciously vilify the plaintiffs in the eyes of millions of people, and foment racial animus against them. AC ¶¶ 414, 597-601. Therefore, Himan's contention fails because it misrepresents Plaintiffs' allegations. The Amended Complaint may not be dismissed based upon "concessions" that Plaintiffs have not made.

### b. Himan's Fabrications and Omissions were Necessary to the Judicial Determination of Probable Cause

Next, Himan argues that the First Cause of Action should be dismissed because, he contends, the NTID Order only required "reasonable grounds" and after correcting for the alleged fabrications, the Affidavit still establishes "reasonable grounds." Himan Br. at 14-16 (citing *State v. Pearson*, 566 S.E.2d 50, 54 (N.C. 2002)). However, Himan misstates the law. The "reasonable grounds" standard applies only to the quantum of evidence that is required with respect to the person to be subjected to the NTID Order. *State v. Pearson*, 556 S.E.2d at 54; N.C. GEN. STAT. § 15A-282 (2008) (the sworn affidavit must show that "… there are reasonable grounds to suspect that the person named or described in the affidavit committed the offense[.]"). Himan skips a step. His Brief does not mention once that the NTID statute requires, at step one, a showing of probable cause to believe that a felony has been committed. *See id*. (quoting § 15A-282 (the sworn affidavit must show "(1) [t]hat there is *probable cause* to believe that a felony offense ... has been committed[.]" (emphasis added))). This is also why Himan's analogy

to *Torchinsky v. Siwinsky* 942 F. 2d 257 (4th Cir. 1990), must fail: in *Torchinsky*, while the victim changed his story it was obvious a crime had been committed and that he had been assaulted, in the instant case there was no proof of an assault outside of Mangum's own statements. AC ¶¶ 293-309.

The NTID Affidavit—after correcting the fabrications and omissions—does not establish probable cause to believe that a felony had been committed or "reasonable grounds" to believe that Plaintiffs committed it. The McFadyen Search Warrant Affidavit fails—after correction—to establish probable cause to believe that a crime had been committed or that the items to be seized would be found in the place to be searched. The fabrications and omissions were therefore necessary to the judicial determination that that the Affidavits contained a sufficient factual basis for both the NTID Order and the McFadyen Search Warrant.

### c. Eliminating the Fabrications and Adding Material Omissions Defeats Probable Cause

Himan contends that, even if the alleged fabrications are struck from the affidavit, what remains is sufficient to establish the constitutionally required factual basis for the NTID Order issued to all Plaintiffs and the Search Warrant for McFadyen's dorm room. Himan Br. at 14-20. Himan is wrong for several reasons. First, as is shown in Pls. Opp. City Br., § II.A.(1), after eliminating all of the fabrications, essentially no allegations remain. Second, Himan's argument completely fails to account for the second dimension of the *Franks* correction analysis: material omissions. Third, Himan misapplies the *Franks* analysis by examining the effect of each fabrication and each omission in isolation, one fabricated or omitted fact at a time, and concluding that each, in isolation, is not "necessary" to the required judicial finding because it does not defeat probable cause. The *Franks* correction analysis is, of course, quite different.

Pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), the Court undertakes a "correction" analysis. First, the Court "corrects" the fabrications by striking the false statements from the affidavit. *Franks,* 438 U.S. at 155-56. If the remaining allegations do not establish probable cause, the Plaintiff has stated a claim. If the remaining allegations are still sufficient after correcting the fabrications, the Court then "corrects" the affidavit by inserting the material omissions. The Fourth Circuit considers an omission to be a false statement for purposes of the *Franks* correction analysis when it is "*designed to mislead* " or "made '*in reckless disregard of whether [it] would mislead.' "* *United States v. Tate*, 524 F.3d 449, 455 (4th Cir. 2008) (alterations in original) (quoting *United States v. Cokley*, 899 F.2d 297, 300 (4th Cir. 1990)).

Eliminating the fabrications from the NTID Affidavit and the McFadyen Search Warrant Affidavit defeats probable cause; and, if it did not, inserting the omissions in the second step plainly does. Himan argues that probable cause or reasonable grounds still remain after correction, but Himan reaches this conclusion by cherry-picking and recasting Plaintiffs' allegations. He only finds one material omission in the pages and pages of alleged facts that Himan knew and deliberately omitted from the NTID and McFadyen Search Warrant Affidavits. Himan Br. at 19 ("inconsistencies in the accuser's statements" do not defeat probable cause). To demonstrate the extent to which Himan and his co-conspirators deliberately designed the Affidavits to mislead, Plaintiffs apply the *Franks* analysis to the NTID and McFadyen Search Warrant Affidavits in responding to the City's motion and incorporate that analysis here. *See* Pls. Opp. (City), §II.A.(1).

Himan makes no argument for dismissal of the Second Cause of Action on the merits. He does, however, generally plead qualified immunity as a defense to all of Plaintiffs' § 1983 claims. To the extent that it is necessary to define the contours of the right Plaintiffs allege was violated in the Second Cause of Action, Plaintiffs incorporate by reference the discussion the Second Cause of Action in Plaintiffs' Opposition to City

of Durham's Motion to Dismiss.  *See* Pls. Opp. Br. (City), §II.A.1.  In Section II of this Memorandum, Plaintiffs establish that, as to Himan, the Fourth Amendment right alleged to have been violated in the Second Cause of Action was "clearly established" at the time Himan violated it.

### d. Rule 9(b) Does Not Impose a Heightened Pleading Standard Upon Plaintiffs' First (or Second) Cause of Action

Himan suggests that the heightened pleading standard of Rule 9(b) applies to Plaintiffs' allegations of "essentially fraudulent behavior" and that Plaintiffs have failed to meet this heightened pleading rule.  Himan Br. at 21.  Rule 9(b) does not impose heightened pleading requirements on Plaintiffs' *Franks* claim.  The Supreme Court has rejected a heightened pleading requirement for § 1983 municipal liability claims, and, in doing so, left little room to doubt that the holding applied equally to § 1983 individual and official capacity claims.  *Leatherman v. Tarrant County Intelligence & Coordination Unit*, 507 U.S. 163 (1993).  The *Leatherman* Court reasoned that a heightened pleading standard is simply "impossible to square . . . with the liberal system of 'notice pleading' set up" by the plain language of Rule 8, as well as the Court's ruling in *Conley v. Gibson*, 355 U.S. 41 (1957), that Rule 8 "meant what it said."  *Leatherman*, 507 U.S. at 168; *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (Court rejected heightened pleading rule for Title VII and ADEA claims).  The Court pointed out that, although Rule 9 of the Federal Rules of Civil Procedure imposes a particularity requirement for claims of fraud or mistake, the Federal Rules do not contain any special pleading requirement for complaints alleging § 1983 liability.  *Leatherman*, 507 U.S. at 168.

Notwithstanding the absence of § 1983 claims from Rule 9(b)'s list of claims for which a plaintiff must allege "with particularity the circumstances" constituting the actionable conduct, even if Himan was correct that Rule 9(b) applies to Plaintiffs' claims based upon his fraudulent affidavits, the Amended Complaint alleges the specific facts

that Rule 9(b) requires for claims for fraud. *See Franks* Analysis in Pls. Opp. City Br., II.A.(1) (documenting the fraud by demonstrating each averment in Himan's pleading is false, and detailing the list of material facts Himan and his co-conspirators omitted). To the extent that Himan's argument for additional specificity is based upon his assertion of qualified immunity defense, Himan is free to move for a more definite statement pursuant to Fed. R. Civ. P. 12(e).

### e. Plaintiffs never asserted "a right to be free of investigation."

Next, Himan, in unison with his co-defendants, argues that all of Plaintiffs' § 1983 claims should be dismissed because, he contends, Plaintiffs are "essentially" complaining that they have been investigated, and that "there is no constitutional right to be free of investigation." Himan Br. at 21-24. Nowhere in all the pages of the Amended Complaint do Plaintiffs allege that they have "a constitutional right to be free of investigation." The argument fails because its premise is a fabrication.

### 2. The Third Cause of Action States an Actionable Section 1983 Claim for Abuse of Process Designed to Coerce Plaintiffs into Submitting to Interrogation

The Third Cause of Action alleges that Himan, in concert with Nifong, Gottlieb, Levicy, and Arico procured the NTID Order and the McFadyen Search Warrant for unlawful purposes that violated the First, Fourth and Fourteenth Amendments. AC ¶¶ 929-40.

First, Plaintiffs allege the Defendants conspired to retaliate against the Plaintiffs for exercising their constitutional rights to refuse to consent to interrogations (and unbeknownst to the Plaintiffs, to providing DNA samples as well) on March 22, 2006. *Id.* ¶ 930(C). They retaliated against Plaintiffs by subjecting them to unconstitutional searches and seizures, *id.* ¶¶ 414-18, 596-601, 930, and then perverted the Search Warrant and NTID processes into a means of stigmatizing Plaintiffs in their local

community and in the eyes of millions of people around the world, *id.* ¶¶ 414 (C), 930(A), generating and then galvanizing the public condemnation of Plaintiffs, *id.* ¶¶ 544-58, 930(B), and subjecting Plaintiffs to the extortionate pressures that naturally flow from public outrage and infamy, *id.* ¶ 930 (D). While there is some disagreement among the Circuits over whether a search or seizure in retaliation for refusing to consent to otherwise unlawful searches or seizure violates the First Amendment or the Fourth Amendment, the Fourth Circuit located the violation in the Fourth Amendment in *Rogers v. Pendleton*, 249 F.3d 279, 295 (4th Cir. 2001) ("[t]he police do not have the right to arrest citizens for refusing to consent to an illegal search."); *id.* at 294-95 (affirming denial of qualified immunity where evidence showed officers' seizure was "motivated by the officers' anger at [plaintiff's] 'irreverent' refusal to consent to their search … which was clearly illegal absent his consent").

### 3. The Fourth Cause of Action States a Section 1983 Claim for Deprivation of Property in Violation of the Fourteenth Amendment.

The Fourth Cause of Action alleges that Himan, Gottlieb, Nifong, Meehan, and Clark conspired to withhold from Plaintiffs the reports of the results of tests conducted with the products of Plaintiffs' NTID procedures. AC ¶¶ 941-53. Plaintiffs' analysis for this Cause of Action is more fully developed in Plaintiffs' Opposition to DNASI's Motion to Dismiss ("Pl. Opp. to DNASI §II.A.(1)"). In the interests of judicial economy, Plaintiffs incorporate that analysis here. To summarize, the products of their NTID procedures included Plaintiffs' DNA profiles, mug shots, and close-up photos of suspected injuries on their torsos by Durham forensic examiners. AC ¶¶ 762, 944. These products were used in multiple tests, and Plaintiffs allege a deprivation of their statutory entitlement to reports of the results on the dates they were available. *Id.* ¶ 294 (A) – (G) (SBI serology and DNA tests, DNASI Y-STR DNA test, and Durham Police

identification procedures). The Amended Complaint alleges that Himan agreed with Nifong, Gottlieb, Clayton, Clark and Meehan to conceal from plaintiffs and their defense counsel (1) the fact that the identification tests were done, and (2) the results of the tests when the results were available. *Id.* ¶¶ 660-64, 666-69, 676-87. In doing so, Himan and his co-conspirators caused the deprivation of Plaintiffs' constitutionally protected property rights in violation of the Due Process Clause. To establish a violation of procedural due process, a complaint must allege that the plaintiff was deprived of a constitutionally protected liberty or property interest. Plaintiffs have alleged a constitutionally protected property interest. *Id.* ¶ 944. It is well settled that

> [p]roperty interests . . . are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law- rules or understandings to secure certain benefits and that support claims of entitlement to those benefits.

*Bd. of Regents vs. Roth*, 408 U.S. 564, 577 (1972). Property includes traditional notions of property as well as relatively new "statutory entitlements." *See, e.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) (Public Employment); *Matthews v. Eldridge*, 424 U.S. 319 (1976) (Social Security Benefits); *Goss v. Lopez*, 419 U.S. 565 (1975) (public school education); *Perry v. Sindermann*, 408 U.S. 593 (1972) (public employment); *Bell v. Burson*, 402 U.S. 535 (1971) (driver's license); *Goldberg v. Kelly*, 397 U.S. 254 (1965) (public assistance).

Statutory entitlements arise from the existence of objective standards of eligibility for some government-dispensed commodities. *Loudermill,* 470 U.S. 532. Objective conditions of entitlement create a "reasonable expectation" that, if the conditions are satisfied, the government will provide the entitlement; on the other hand, discretionary eligibility standards do not create a "reasonable expectation" and thus do not create statutory entitlements. *Id.* To state a cause of action for deprivation of a constitutionally

protected property interest, a complaint must allege (1) plaintiff has a constitutionally protected "liberty" or "property" interest, and (2) plaintiff has been "deprived" of that protected interest by some form of "state action." *See Roth,* 408 U.S. 564; *Daniels v. Williams,* 474 U.S. 327 (1986); *Stone v. Univ. of Md. Med. Sys.*, 855 F.2d 167, 172 (4th Cir. 1988).

Plaintiffs have alleged that (1) N.C. GEN. STAT. § 15A-282 creates in every person subject to an NTID Order an unconditional right to a report of results of all tests conducted with the products of that person's NTID procedures *as soon as the results are available*, AC ¶ 944; and (2) Nifong, Gottlieb, Himan, Clark, and Meehan, individually and in concert, conspired to withhold from Plaintiffs the results of tests conducted with their DNA and photographs. *Id.* ¶ 666-69, 676-87; § 15A-282. The statutory entitlement Plaintiffs allege arises from the objective standard of eligibility to receive reports as soon as they are available. § 15A-282 provides:

> A person who has been the subject of nontestimonial identification procedures or his attorney must be provided with a copy of any reports of test results as soon as the reports are available.

§ 15A-282. The statute plainly creates a "reasonable expectation" that if its conditions are satisfied, the government will provide the entitlement. First, the statute sets up an objective qualification standard: "a person who has been the subject of nontestimonial identification procedures." *Id.* The expectation that arises from the objective qualification standard is reinforced by the statute's mandatory language: "must be provided with a copy of any reports of test results as soon as the reports are available." *Id.* Plaintiffs plainly had a constitutionally protected property interest in those reports at the time they were available. *Accord, Loudermill*, 470 U.S. at 539.[2] Therefore, Plaintiffs

---

[2] In *Loudermill,* for example, the Court found a constitutionally protected property interest in continuing employment as a "civil servant" where the relevant state law provided no classified civil servant may be removed except for certain enumerated "acts

have stated an actionable § 1983 claim against Defendant Himan, Clayton, Gottlieb, and Nifong, jointly and severally, for depriving Plaintiffs of property in violation of their Fourteenth Amendment Due Process rights. This Cause of Action may not be dismissed.

> **4. The Fifth Cause of Action States a Section 1983 Claim Against Defendant Himan for Stigmatizing Plaintiffs in Connection with the Deprivations of Their Rights and Tangible Interests in Violation of the Fourteenth Amendment.**

Plaintiffs analysis is more fully developed in Plaintiffs' Opposition to Soukup, Michaels, Addison and Clayton's ("SMAC") Motion to Dismiss ("Pls. Opp. SMAC Br." II.A(3)), and, in the interests of judicial economy, Plaintiffs incorporate that analysis here. [3]

---

of misfeasance, malfeasance, or nonfeasance in office." 470 U.S. at 539. Based upon that statutory language, the Court held that Mr. Loudermill had a right to continuing employment except upon a showing of an enumerated form of misfeasance or nonfeasance. *Id.*

[3] To summarize, the Fifth Cause of Action alleges that Defendant Himan, jointly and in concert with other co-defendants and under color of law, stigmatized Plaintiffs in connection with other, additional tangible injuries and deprivations of rights. AC ¶¶ 954-62. Often referred to as "Stigma-Plus," to state a claim a complaint must allege (1) publication of false, stigmatizing charges that are (2) imposed in connection with the deprivation of a protected right, employment, or other tangible interest (the "plus"). *Ridpath v. Bd. of Governors of Marshall Univ.*, 447 F.3d 292, 309 (4th Cir. 2006) (a "substantial demotion" is a tangible interest, and its deprivation in connection with false stigmatizing charges states a Stigma-Plus claim; *see Paul v. Davis,* 424 U.S. 693, 696-97 (1976). The Amended Complaint sufficiently alleges that (1) Himan deliberately published false, stigmatizing charges by writing, filing, and leaking to the press his fabricated NTID Affidavit, AC ¶¶ 931, 414, 904-914; *see also* discussion of Plaintiffs documentation of Himan's fabrications in Pls. Opp. City Br., §II.A.(1). ; and (2) the stigma was imposed in connection with the unreasonable search and seizure alleged in the First and Second Causes of Action (NTID Order and McFadyen Search Warrant), AC ¶¶ 930(A), 931-36, as well as a litany of other deprivations constitutional and statutory rights and tangible interests documented in the Amended Complaint. *See* AC ¶ 957 (A) – (G) (listing constitutional rights, statutory rights and tangible interests deprived in connection with Plaintiffs' stigmatization).

**5. The Sixth and Seventh Causes of Action State a Section 1983 Claim for Conduct that Shocks the Conscience, in Violation of the Fourteenth Amendment.**

The Amended Complaint states a Section 1983 claim for conduct in violation of the Fourteenth Amendment. AC ¶¶ 969-77, 978-85. Executive action that "shocks the conscience" is actionable under the Fourteenth Amendment. *County of Sacramento v. Lewis*, 523 U.S. 833 (1998). In *Lewis*, the Court refined the "shocks the conscience" standard by distinguishing between official conduct where there is a realistic opportunity to deliberate and official conduct where such an opportunity is not present. *Id.* Where an official has an opportunity to deliberate, official conduct that is "deliberately indifferent" is conscience shocking. *Id.* The rationale is that, when officials with the luxury to deliberate and an opportunity to do better nevertheless exhibit "protracted failure to care, indifference is truly shocking." *Id.* at 853. As examples of the opportunity to deliberate, the Supreme Court cited situations in which officials have the opportunity to deliberate over the provision of medical care to detainees, *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239 (1983), and to prisoners, *Estelle v. Gamble*, 429 U.S. 97 (1976). In situations where there is no time to deliberate and unforeseen circumstances demand an officer's instant judgment, such as the tense, rapidly evolving high speed pursuit at issue in *Lewis*, the officer's conduct will be considered conscience shocking only if carried out with a purpose to cause harm. *See, e.g., Lewis*, 523 U.S. at 853.

The Amended Complaint does not allege a high speed chase or an unforeseen prison riot. The Amended Complaint alleges that Himan and his codefendants engaged in a chilling, thirteen-month conspiracy to frame plaintiffs as principals or accessories to a crime they knew did not happen. *See* AC ¶¶ 2, 106, 321, 333, 354, 382-85, 387, 402,

664, 1191-93, 1200, 1215-16, 1367-68. The conspiracies alleged were systematically carried out over a thirteen month period, beginning shortly after the original Duke and Durham investigation ruled the allegations 'unfounded' on or about March 15, 2006. *Id.* ¶ 333. The Amended Complaint, alleges (1) a conspiracy to fabricate evidence of a rape that Defendants knew never occurred, *see id.* ¶¶ 2, 106, 321, 354, 382-85, 387, 402, 1191-93, 1200, 1215-16, 1367-68, and (2) to systematically conceal from the Plaintiffs and the enraged public all of the overwhelming proof of the Plaintiffs' innocence. *Id.* ¶¶ 562, 676-80, 765. The motives of the conspirators were to retaliate against Plaintiffs for exercising their right not to speak or submit to police interrogations; to coerce Plaintiffs into providing false inculpatory testimony through the continuing threat of a prosecution that Plaintiffs knew to be a frame up; and to prevent the disclosure of the enormity of their misconduct so they could not be held accountable for it in a federal civil rights action such as this one or in a federal criminal prosecution for obstruction of justice and criminal conspiracy. The cumulative effect of the conduct and conspiracies alleged in these causes of action shocks the conscience.

Himan had time to deliberate before causing all of the harm he caused; and Himan did, in fact, deliberate. Every day, for thirteen months, he had at least three straightforward choices: the choice to be honest or to cheat; the choice to tell the truth or to lie; the choice to do justice or do harm. Every day, for thirteen months, he chose to lie, cheat, and do harm. *See id.* ¶¶ 442-44, 596-601, 605, 663-64, 680-81, 765-72, 820-22, 867-70. The Amended Complaint alleges that Himan's purpose was to cause harm, and that he caused significant harm. *See id*. ¶¶ 598-601, 685, 700-02, 709-12, 917, 933-36, 960-61, 1282. The Plaintiffs' Fourteenth Amendment claim against Himan seeks to hold Himan accountable for the harms caused by Himan's conscience shocking conduct. His motion to dismiss the claim must be denied.

6. **The Ninth Cause of Action States an Actionable Section 1983 Claim for Retaliation and Conspiracy in Violation of Plaintiffs' First and Fourteenth Amendment Rights.**

The Amended Complaint states a Section 1983 claim for retaliation in violation of the First Amendment. AC ¶¶ 992-1001. The First Amendment not only protects the right to speak and the right not to speak, but also the right to be free from state-sponsored retaliation for exercising those rights. *Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 685 (4th Cir. 2000); *see ACLU v. Wicomico County, Md.*, 999 F.2d 780, 785 (4th Cir.) ("Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights."). To state a cause of action for First Amendment retaliation, a complaint must show that (1) a plaintiff engaged in protected First Amendment conduct or speech; (2) defendants took some action that adversely affected (i.e., "chilled") Plaintiffs' First Amendment rights; and (3) a causal relationship between the protected conduct and the retaliatory actions alleged. *Suarez,* 202 F.3d at 686; *Constantine v. Rectors & Visitors of George Mason Univ.,* 411 F.3d 474, 499 (2005).

Analysis for this cause of action is more fully developed in Plaintiffs' Opposition to Duke University's Motion to Dismiss ("Pl. Opp. Br. (Duke Univ.) § II.A.(4)"), and, in the interests of judicial economy, Plaintiffs incorporate that analysis here. The Amended Complaint alleges Plaintiffs participated in protected conduct: the right not to speak. AC ¶¶ 411-13. Second, the Amended Complaint sufficiently alleges retaliatory conduct by Defendant Himan that would chill a person of reasonable firmness. *See id.* ¶¶ 414-18, 431-34, 435-36, 442-43, 597-601, 685-86, 788-89, 933, 946-48, 959-61. Finally, the Amended Complaint alleges facts demonstrating a causal relationship between the

protected activity and the retaliatory conduct by establishing a temporal nexus between the protected conduct and the retaliatory acts and through the confessions of co-conspirators that admit the retaliatory purpose. First, Plaintiffs establish a temporal nexus between the first two elements: the retaliatory stigmatization began the day after Defendant Himan learned that Plaintiffs exercised their protected right not to speak. First, Himan and Gottlieb began work on a revised Affidavit that added new, sensational allegations to the already completely fabricated 610 N. Buchanan Search Warrant Application immediately after they were told that Plaintiffs chose to invoke their right not to speak with them—or anyone apart from counsel—about the events of March 13-14, 2006. *Id.* ¶¶ 414-18. Second, Plaintiffs have alleged that multiple co-conspirators have openly admitted that the purpose of their conduct was to chill Plaintiffs continuing exercise of their right not to speak about the events of March 13-14, 2006. *Id.* ¶ 503, Ex. 12 (Video – Nifong testifying at Bar Hearing)[4]. The statements of these co-conspirators are attributable to all Defendants, including the Defendant Himan, who are alleged to have participated in the conspiracy. Fed. R. Evid. 801(d) (2).

### 7. The Tenth Cause of Action States an Actionable Section 1983 Claim Against Defendant Himan for Depriving Plaintiffs of the Privileges and Immunities Afforded to North Carolina Citizens in Violation of 42 U.S.C. § 1983.

The Amended Complaint states an actionable Section 1983 Claim against Himan for deprivation of Plaintiffs' rights to the privileges and immunities guaranteed to them as citizens of the United States by Article IV and the Fourteenth Amendment. AC ¶¶ 1002-07. In a footnote, Himan incorporates by reference the City's argument opposing this claim. Himan Br. at 35 n.4. Analysis for this cause of action is more fully developed in

---

[4] Nifong testified that his intention at the time in making the statements was to make Plaintiffs and their teammates "feel a sense of duty to come forward… and cooperate with the law enforcement investigation." *Id.*

Plaintiffs' Opposition to City of Durham's Motion to Dismiss ("Pls. Opp. Br. (City)§II.A.3."), and, in the interests of judicial economy, Plaintiffs incorporate that analysis here. For same reasons that the City's arguments for dismissal of the Tenth Cause of Action fail, Himan's motion to dismiss this cause of action also fails. *See* Pls. Opp. City Br., §II.A.7.

### 8. The Eleventh Cause of Action States an Actionable Section 1983 Claim Against Defendant Himan for Failure to Prevent or Aid in Preventing the Ongoing Deprivations of Plaintiffs' Constitutional Rights.

The Eleventh Cause of Action states a § 1983 "bystander liability" claim against Defendant Himan. AC ¶¶ 1008, 1021-24. An officer may be liable under § 1983, on a theory of bystander liability, "if he (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall v. Prince George's County*, 302 F.3d 188, 202-04 (4th Cir. 2002).[5] The Amended Complaint sufficiently alleges that Himan had knowledge that he, Gottlieb, and Nifong (acting as the investigation's supervisor), the District Two Commander, and others were violating Plaintiffs constitutional rights by, among other things, submitting fabricated affidavits to procure the NTID Order and McFadyen Search Warrant, *id.* ¶¶ 414-55, 904-40, concealing both the fact of the procedures conducted with Plaintiffs' NTID photographs as well as the exonerating

---

[5] Although personal liability premised on an omission is a disfavored concept, it is well established that an omission to act, when coupled with a duty to act, may provide a basis for liability. The concepts of bystander and supervisory liability are each premised on omissions, but there are significant differences between them. The concept of bystander liability is premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them. *Randall v. Prince George's County*, 302 F.3d 188, 202-203 (4th Cir. 2002); (citing with approval *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988) (observing that officer who stands by and does not seek to assist victim could be "tacit collaborator")).

results of those procedures, *id.* ¶¶ 676-87, and concealing from Plaintiffs the existence of the explosive, exonerating results of tests conducted with their DNA, *id.* ¶¶ 641-42, 644, 765. Himan had a reasonable opportunity to prevent the harm, *id.,* ¶ 1023; and chose not to act to prevent the harm, *id.* ¶¶ 1023-24. *See generally* AC ¶¶ 414-18, 628-30, 644, 655, 663-64, 765, 788-89, 867-71 (highlighting opportunities where Himan had a reasonable opportunity to prevent the harm and chose not to act to prevent the harm).

Appropriately, Himan makes no argument for dismissal of the § 1983 "bystander liability" claim on the merits.

## III. HIMAN IS NOT ENTITLED TO QUALIFIED IMMUNITY.

### A. The Qualified Immunity Standard

Qualified immunity does not apply to conduct that violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A right is "clearly established" if a reasonable official would have been on fair notice that the conduct at issue was unconstitutional at the time he engaged in the conduct. *Hope v. Pelzer,* 536 U.S. 730, 739 (2002). The inquiry is an objective one; it does not depend on "the subjective beliefs of the particular officer at the scene, but instead on what a hypothetical, reasonable officer would have thought in those circumstances." *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 279 (4th Cir. 2004) (quoting *Wilson v. Kittoe,* 337 F.3d 392, 402 (4th Cir. 2003)). A constitutional right is "clearly established" for qualified immunity purposes when either (1) it has been established by closely analogous case law; *see, id.,* or (2) "when the defendants' conduct is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts that the action was unconstitutional[.]" *Clem v. Corbeau*, 284 F.3d 543, 553 (4th Cir. 2002) (internal citations omitted). A Defendant may not avail himself of qualified immunity by ignoring

the detailed facts alleged in the Complaint or recasting them into broad general propositions. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition ..." *Id.* at 201. Therefore, to determine whether Defendants have qualified immunity at this preliminary stage the Court must first describe the Himan's alleged conduct in the specific context of the circumstantial detail alleged in the Amended Complaint and in the light most favorable to the plaintiff, and then ask if pre-existing law made the unlawfulness of Himan's conduct apparent. *See, e.g., W.E.T. v. Mitchell,* No. 1:06CV487, 2008 WL 151282, * 4 (M.D.N.C. Jan. 10, 2008).

### 1. Himan Does Not Have Qualified Immunity for Fabricating Affidavits That Cause NTID Orders and Search Warrants to Issue Without Probable Cause.

The Amended Complaint documents the extensive evidence known to Himan that Mangum's claims were demonstrably false, and that Plaintiffs were innocent. The Amended Complaint catalogues this evidence across dozens of pages. AC ¶¶ 262-71, 291-96, 321-31, 363-81, 382-85. Further, the Amended Complaint documents the evidence known to Himan that, if there was any plausible basis to believe that Mangum had been sexually assaulted, the Plaintiffs were no longer possible suspects. *Id.* ¶¶ 363-81. All of the evidence detailed in those pages of Mangum's fraud and Plaintiffs' innocence existed prior to the time Himan, Gottlieb, Nifong, Levicy, and others conspired to fabricate the NTID Affidavit. Himan knew he had no evidence at the time, and admitted that he still did not have any weeks later: when told he would have to present indictments in the case, Himan asked "with what?" *Id.* ¶ 816. On the day that Himan submitted the fabricated McFadyen Warrant application, his co-conspirator, Mike Nifong told Himan, "you know, we're f***ed." *Id.* ¶ 593. Himan claims that these facts are alleged in order to establish a new "right to be free from criminal investigation." *See,*

*e.g.,* Himan Br. at 22. That is not the right Plaintiffs assert. In the First and Second Causes of Action, Plaintiffs establish a violation of their right to be free from searches and seizures without probable cause. AC ¶¶ 907-14, 920-27. That right includes the right to be free from searches and seizures authorized by warrants and other legal process procured through fabricated officer affidavits, which was established at least as early as 1978, in *Franks*, 438 U.S. 154 (1978). A "reasonable officer" would know that fabricating an affidavit by making false statements and material omissions designed to mislead a judicial official into believing probable cause and reasonable grounds exist violates clearly established rights.

### 2. Himan Does Not Have Qualified Immunity for Abuse of Process Designed to Coerce Plaintiffs into Submitting to Interrogation.

The Third Cause of Action alleges that the unlawful searches and seizures alleged in the First and Second Cause of Action were motivated by malice and were done for the purpose of retaliation and coercion. AC ¶ 938; *see generally id.* ¶¶ 929-40. The Amended Complaint alleges that the conspiracy to subject Plaintiffs to unlawful searches and seizures also had an unlawful purpose beyond the searches and seizures. *See id.* ¶¶ 910, 924, 1150. The Third Cause of Action alleges that there were two unlawful purposes of the conspiracy established in the First and Second Causes of Action: (1) to retaliate against Plaintiffs for exercising their constitutionally protected right to not to submit to interrogations Duke and Durham Defendants had planned; and (2) to coerce them into consenting to interrogations that would be unlawful in the absence of their consent. *Id.* ¶ 930. The unlawfulness of the conspiracy's retaliatory motive in subjecting Plaintiffs to unconstitutional searches and seizures was clearly established in this circuit no later 2001. That year, the Fourth Circuit held an officer violated Plaintiff's clearly established rights when the officer seized the plaintiff without probable cause in retaliation for plaintiff's refusal to consent to a search without a warrant. *Rogers v.*

*Pendleton*, 249 F.3d 279 (4th Cir. 2001). The circuit court was quite plain in identifying the unlawfulness of the motive: "[t]he police do not have the right to arrest citizens for refusing to consent to an illegal search." *Id*. at 295. A reasonable officer at the time Himan engaged in this conduct would know that his conduct violates Plaintiffs' clearly established rights.

The right to be free of extreme coercion designed to elicit statements from citizens was clearly established as a Fourteenth Amendment violation no later than 1945. *See, e.g., Darwin v. Connecticut,* 391 U.S. 346 (1968); *Beecher v. Alabama,* 389 U.S. 35, 36 (1967); *Reck v. Pate,* 367 U.S. 433, 439-40 (1961); *Leyra v. Denno,* 347 U.S. 556 (1954); *Malinski v. New York,* 324 U.S. 401 (1945). In 2003, the Supreme Court reaffirmed the clearly established right, and established a distinction in the location of the right in question. For "the accused," the right to be free of such coercion is located in the Fifth Amendment, and for those who are not constitutionally "accused" (i.e., not charged, tried, or convicted) the right is located within the broader sweep of the substantive dimension of the Fourteenth Amendment's Due Process clause. *Chavez v. Martinez*, 538 U.S. 760 (2003).

### 3. Himan Does Not Have Qualified Immunity for Causing Deprivations of Plaintiffs' Due Process Right to §15A-282 Reports.

Himan is not entitled to qualified immunity from the claims asserted in Plaintiffs' Fourth Cause of Action because the right violated by his conduct was clearly established well before March of 2006, when he engaged in the conduct. AC ¶¶ 941-53. The authorities cited in Plaintiffs' discussion of the Fourth Cause of Action establish that Plaintiffs' Due Process right was established when the state statute created the property right Plaintiffs were deprived of through the unlawful agreement and/or understanding among Himan, Gottlieb, Clayton, Nifong, Clark, and Meehan to withhold the results

Plaintiffs were entitled to by statute. The Due Process right to entitlements created by state law, including statutes such as §15A-282, was clearly established by the Supreme Court as early as 1972. *Roth,* 408 U.S. 564. In light of the Supreme Court's and Fourth Circuit's pre-2006 decisions, a "reasonable official" in the same position would understand, in the face of § 15A-282's clear declaration of Plaintiffs' entitlement to results of tests as soon as results were available, that withholding the results of tests long after they were available would violate Plaintiffs' federal rights. Moreover, Himan's active concealment from Plaintiffs of the fact that such tests had been conducted violates Plaintiffs' clearly established rights to be free of retaliatory searches and seizures. AC ¶¶ 681-687; *Hope,* 536 U.S. at 741; *Meeker v. Edmundson*, 415 F.3d 317, 323 (4th Cir. 2005) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). A reasonable officer would know without guidance from the courts that the conduct alleged in this Cause of Action was unconstitutional, and, as such, closely analogous pre-existing case law is not required. *Corbeau*, 284 F.3d at 553 (4th Cir. 2002).

### 4. Himan is Not Entitled to Qualified Immunity for Stigmatizing Plaintiffs in Connection With Deprivation of a Constitutional Right.

Himan is not entitled to qualified immunity from Plaintiffs' "Stigma-Plus" claims because the right to be free from deprivations of constitutional rights or tangible interests in connection with stigmatizing statements was clearly established in the Fourth Circuit in 2006. The Fifth Cause of Action specifically relates to the fabricated affidavit made by Himan, Gottlieb, and others that they deliberately and maliciously leaked to the media and caused Plaintiffs to be subjected to searches and seizures without probable cause. AC ¶¶ 954-62; *see also id.* ¶¶ 414, 931. Himan and Gottlieb's fabricated narrative evoked a furor among people of all races, both in the Durham community and around the world. *Id.* ¶¶ 567, 637. Over the course of the three weeks leading up to the April 17

indictments, Himan and Gottlieb's fabricated narrative was exploited by their fellow officer, Addison, and by Nifong, who falsely and publicly insisted on an almost daily basis that Plaintiffs, who are white, and 43 of their white teammates had participated in a brutal, *id.* ¶ 505, racially-motivated gang-rape of a young African-American mother of two; that there was "no doubt" the account of the rape Gottlieb and Himan had fabricated in their Affidavit had occurred, *id.* ¶¶ 502(A), 956; that it was a "horrific crime [that] sent shock waves throughout our community," *id.* ¶ 507; that there was "really, really strong physical evidence" to prove it, *id.* ¶¶ 505, 956; that there was evidence also of a "deep racial motivation," *id.* ¶ 577; and that the lacrosse team was a "bunch" of "hooligans" who were "stonewalling" the investigation by "standing together" and "refusing to talk with investigators," *id.* ¶¶ 502, 505, 956.

### 5. Himan is not Entitled to Qualified Immunity for Retaliating Against Plaintiffs for Exercise of First Amendment Rights.

Himan is not entitled to qualified immunity for Plaintiffs' retaliation claims because the rights alleged were clearly established at the time Himan engaged in the conduct. In 2001, the Fourth Circuit unequivocally stated: "[i]t is well established that a public official may not misuse his power to retaliate against an individual for the exercise of a valid constitutional right." *Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001) (citing *Suarez*, 202 F.3d at 685). The Fourth Circuit has also held that *Suarez*, decided in 2000, clearly established a "bright line" violation of the First Amendment whenever retaliatory or chilling speech "include[s] a threat, coercion, or intimidation." *Blankenship v. Manchin*, 471 F.3d 523, 533 (4th Cir. 2006) (quoting *Suarez*, 202 F.3d at 688 n.13 and identifying *Suarez* as establishing the same "bright line" rule that Defendants are alleged to have violated here). A "reasonable official" in the same position "would understand that what he is doing violates" Plaintiffs' clearly established rights. *Hope,* 536 U.S. at 739.

**6. Himan is not Entitled to Qualified Immunity for Discriminatory and Abusive Enforcement of the Criminal Laws Because Plaintiffs Were "Temporary" Residents of North Carolina.**

Himan is not entitled to qualified immunity from the claims asserted in Plaintiffs' Tenth Cause of Action. AC ¶¶ 1002-07. The Plaintiffs' right to be free from discrimination and disparate treatment because of their status as "temporary" residents was "clearly established" over one hundred years ago. State action that classifies citizens based upon their recent arrival or imminent departure from a state has been subjected to the Court's most rigorous scrutiny. The Court has subjected such classifications to such scrutiny because the Privileges and Immunities Clause in Article IV and the Privileges or Immunities Clause of the Fourteenth Amendment protect rights that are fundamental to our system of ordered liberty. As documented in the Amended Complaint and detailed in Section II.A.7 of Plaintiffs' Memorandum in Response to the City's Motion to Dismiss, Himan's conduct violated these fundamental proscriptions deliberately and, indeed, pursuant to an express policy ("Zero-Tolerance for Duke Students Policy"). Zero-Tolerance for Duke Students Policy singled out "temporary" residents for disparate treatment, including disproportionate enforcement of the criminal laws. The discriminatory customs, practices, and policies are well documented in the Amended Complaint.[6]

The ordeal described in the Amended Complaint is what the Framers sought to avoid when they infused the Constitution with the notion of the dual citizenship of every American, who would, at all times, be a citizen of the United States and a citizen of the state wherein he chooses to reside. To be a citizen of the United States means—

---

[6] *See* AC ¶¶ 107-15, 116-22, 170, 181; AC ¶¶ 113-15, 117-18, 127, 166 (Identification and Description); AC ¶¶ 119-22, 138-39, 145-54 (Documentation in Practice); AC ¶¶ 117,126-33, 150-53, 160-64 (Involvement of all Co-defendants).

exactly—the right to be free from what Zero-Tolerance for Duke Students Policy codified. The right identified in this Cause of Action is so worn into the fabric of our constitutional order that it goes without saying that it was clearly established before the year 2006. Therefore, Himan is not entitled to qualified immunity from Plaintiffs' Tenth Cause of Action.

### 7. Himan Does Not Have Qualified Immunity for Engaging in Conduct that Shocks the Conscience.

Himan does not have qualified immunity for Plaintiffs' § 1983 Fourteenth Amendment substantive due process claims. The first step in determining if a person is immune for actions under § 1983 for substantive due process claims is to determine whether "whether the challenged government actions shocks the conscience of federal judges." *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006) (Citing to *Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002)). Additionally, this right must be clearly established at the time it as violated. *Seigert v. Gilley*, 500 U.S. 226, 232 (1992). Conduct that shocks the conscience is not simply intentional, it is "intended to injure in some way unjustifiable by any government interest." *Hawkins v. Freeman*, 195 F.3d 732, 742 (4th Cir. 1999). Like any other violation of a federal right, conduct that shocks the conscience and violates clearly established rights is not entitled to qualified immunity. *Martinez v. City of Oxnard*, 337 F.3d 1091, 1092 (9th Cir. 2003). *See also Butler v. Rio Rancho Public Schs. Bd. of Educ.*, 341 F.3d 1197, 1201 (10th Cir. 2003). At the time Defendant engaged in the conduct, a reasonable official/officer in Defendant's position would have known that his conduct violated clearly established rights.

### 8. Himan Does Not Have Qualified Immunity for Failing to Intervene to Prevent His Fellow Officers From Violating Plaintiffs Constitutional Rights in His Presence or Within His Knowledge.

Himan does not have immunity for Plaintiffs' § 1983 "bystander liability" claim. The rights that Plaintiffs allege were violated in this cause of action were clearly established no later than 2002. Thus, when Himan was engaging in the conduct alleged, the Fourth Circuit had clearly established that all law enforcement officers have an affirmative duty to act to intervene when a fellow officer undertakes to violate the constitutional rights of any person either in his presence or within his knowledge. *Randall,* 302 F.3d at 202-04. The Fourth Circuit undertook in *Randall* to clearly define the scope and contours of officer bystander liability. Prior to *Randall*, the Fourth Circuit indicated that bystander liability would be recognized in a proper case. *Jackson v. Pantazes,* 810 F.2d 426, 430 (4th Cir. 1987). The Fourth Circuit has defined the bystander officer as "a tacit collaborator" in the principal's wrongdoing. *Randall,* 302 F.3d at 203(citing with approval the Second Circuit's use of that label in *O'Neill v. Krzeminski,* 839 F.2d 9, 11-12 (2nd Cir. 1988)). A "reasonable official" who knew all that Himan knew about the evidence in the case and the magnitude of the harm he was causing "would understand that what he is doing violates" Plaintiffs' clearly established right to the aid of an officer who knows his fellow officers are violating Plaintiffs' constitutional rights. *Hope,* 536 U.S. at 739.

# IV. THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS FOR PARTICIPATION IN CIVIL RIGHTS CONSPIRACIES.

## A. Conspiracies in Violation of 42 U.S.C. § 1983.

The Fifteenth Cause of Action states a §1983 claim against all Defendants for unlawful conspiracies that deprived Plaintiffs of their civil rights.[7]  AC ¶¶ 1147-55.  The Fifteenth Cause of Action alleges a broad conspiracy, agreement, or understanding shared by all named Defendants in this action.  The objective of the unifying conspiracy alleged in the Fifteenth Cause of Action was to unlawfully force the wrongful indictment, prosecution, and, ultimately, incarceration of the Plaintiffs, as the principals or accomplices in a horrific, racially motivated gang-rape, which all Defendants in this action knew or were deliberately indifferent to the likelihood that it did not occur.  The Fifteenth Cause of Action incorporates all of the violations alleged in the First through Eleventh Causes of Action (collectively, "the Predicate Violations").  In the Fifteenth Cause of Action, the Predicate Violations are constitutional deprivations caused by acts in furtherance of the Conspiracy to Convict, and are the direct and proximate cause of the damages alleged.  The acts and omissions that establish the Predicate Violations are alleged to be done in furtherance of the unifying common objective and plan of the larger conspiracy to convict.  In addition, the predicate elements of causation, state action, and the Defendants status' as a § 1983 "person" are all established in the Predicate Violations.  The Amended Complaint alleges the combined and concerted conduct of all Defendants pursuant to a preordained common plan.  AC ¶ 1152.  The plan was "made in quiet deliberation and discussion" among officials with final policymaking authority with respect to the matters described in the Amended Complaint. *Id.* The acts and omissions

---

[7] To allege a cause of action under 42 U.S.C. § 1983 for conspiracy, a plaintiff must allege facts that show that two or more defendants "acted jointly [and] in concert and that some overt act was done in furtherance of the conspiracy" that resulted in the deprivation of a federal right. *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996).

described in the Amended Complaint evince a malicious and corrupt intent to harm the Plaintiffs. *Id.* ¶¶ 1153; 1147-55. The cumulative effect of the concerted wrongdoing among so many is so egregious that it "shocks the conscience" in violation of the Fourteenth Amendment as to shock the contemporary conscience. *Id.* ¶ 1153. The Fifteenth Cause of Action alleges that Defendants violated § 1983 by conspiring to deprive Plaintiffs of their rights under the Fourth and Fourteenth Amendments, including the substantive Due Process protections of the Fourteenth Amendment, and, in furtherance of the conspiracies, committing overt acts that caused actual violations of Plaintiffs' rights. AC ¶ 1150(A)-(O). Appropriately, Himan makes no argument for dismissal of the § 1983 conspiracies claim on the merits.

**B. The Amended Complaint States Actionable Claims for Conspiracy in Violation of 42 U.S.C. § 1985.**

The Sixteenth Cause of Action alleges Four Conspiracies in violation of § 1985(2) and (3). AC ¶¶ 1156-69.

To state a cause of action under 42 U.S.C. § 1985(2), a plaintiff must allege that "two or more persons conspire[d] for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws...." 42 U.S.C. § 1985(2).

The Sixteenth Cause of Action alleges that the City of Durham, Addison, Michael, Nifong, Gottlieb, Himan, Wilson, Steel, the DNASI Defendants, the Crisis Management Team Defendants, the SANE Defendants, Graves, Dean, the Duke Police Supervising Defendants, and Duke University, conspired to impede or obstruct the due course of justice in North Carolina generally with the intent to deny Plaintiffs the equal protection of the laws in violation of 1985(2). *Id.* ¶¶ 1156-59. Defendants, motivated by race-based invidiously discriminatory motives, violated this statute by conspiring to deprive Plaintiffs of their federally secured rights as alleged elsewhere in the First through

Eleventh Causes of Action and by fomenting race-based animus within the Plaintiffs' community. *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Additionally, the Sixteenth cause of action alleges that Nifong, Gottlieb, Himan, Clayton, Addison, Michael, the Durham Police Supervising Defendants, the SANE Defendants, the City of Durham, and Duke University conspired to impede or obstruct the due course of justice in North Carolina generally with the intent to intimidate witnesses, including the Plaintiffs, elicit false statements and testimony from Plaintiffs and other witnesses, and to prevent them from testifying truthfully to matters with the general objective of securing Plaintiffs' convictions as principals or accessories in state court for crimes they knew did not happen. AC ¶ 1161.

To establish a violation of 42 U.S.C. § 1985(3), a plaintiff must allege that "two or more persons in any State or Territory conspire…(1)for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (2)or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws." 42 U.S.C. § 1985(3).

The Sixteenth Cause of Action alleges that, in violation of 42 U.S.C. § 1985(3) (cl.2), Nifong, Gottllieb, Himan, Clayton, Addison, Michael, the Durham Police Supervising Defendants, Steel, the Crisis Management Team Defendants, the Duke Police Supervising Defendants, the SANE Defendants, the City of Durham and Duke University, conspired with others to deprive Plaintiffs of their federal rights with the purpose of targeting "temporary residents" for disparate treatment and abusive enforcement of the criminal laws depriving Plaintiffs of the equal privileges or immunities of national citizenship under the laws thereby violating this statute by conspiring to deprive Plaintiffs of their federally secured rights. AC ¶¶ 1156-69; *Phillips*

*v. Mabe*, 367 F. Supp. 2d 861, 873 (M.D.N.C. 2005). Plaintiffs also allege in the Sixteenth Cause of Action an independent §1985(3) Claim arising out of animus directed to Plaintiffs status as "temporary residents" and, on that basis, subject them to discriminatory and abusive police tactics, thereby imposing "disabilities of state citizenship" in deprivation of their equal protection and immunities under laws. AC ¶¶ 1164-65.

### C. The Amended Complaint States a Violation of 42 U.S.C. §1986.

Plaintiffs' Seventeenth Cause of Action (the "§ 1986 Claims") alleges that Himan violated 42 U.S.C. § 1986 by refusing or neglecting to prevent or aid in the preventing of the § 1985 Conspiracies (alleged in the Sixteenth Cause of Action), despite having the power and knowledge to do so. The Plaintiffs have stated actionable Section 1986 Claims against Defendant Himan and other co-conspirators, having alleged the predicate § 1985 Conspiracies in the Sixteenth Cause of Action, as well as the § 1985 elements and facts from with they may be inferred. AC ¶¶ 1170-88. Appropriately, Himan makes no argument for dismissal of the § 1986 conspiracy claim on the merits.

### D. The Amended Complaint Alleges Sufficient Direct and Circumstantial Evidence To Establish an Unlawful Conspiracy.

Plaintiffs respond to the Defendants' assertions or suggestions that *Twombly* creates a heightened pleading requirement in § 1983 Actions. Plaintiffs address this argument in Plaintiffs Opposition to the SANE Defendants' Brief at §1(A).

### E. The § 1985 Claims Allege Racial Animus of Two Types

#### 1. Section 1985 Prohibits Invidious Animus Against Any Race.

Several Defendants have asserted that only members of a "minority" or "traditionally disadvantaged" group may avail themselves of the protections of § 1985. At step one, by its terms, the statute applies to any person or class of person. 42 U.S.C. § 1985(3) (2000). Consistent with the statutory language, we have found no cases in this circuit that held that members of other races have no standing to bring a § 1985(3) claim that is consistent with the broader equal protection principles of the statute itself. Further, courts, including this one, have consistently rejected the argument. *See, e.g., Mabe*, 367 F. Supp. 2d at 873-74 (Contentions that Plaintiff "cannot rely on §1985(3) because he is not a minority is without merit."); *Waller v. Butkovich*, 605 F. Supp. 1137, 1144-45 (M.D.N.C. 1985) (rejecting the assertion that Section 1985(3) requires the alleged animus be directed at a traditionally disadvantaged group). In addition, this Court and others have expressly permitted white plaintiffs to bring claims under § 1985 in response to animus against them based on their race or even their perceived racist beliefs. *See Waller*, 605 F. Supp. 1137 The Fourth Circuit's decision in *Harrison v. KVAT Food Management*, urged by many Defendants held only that "victims of purely political conspiracies" do not have standing on that basis to bring a § 1985(3) claim. 766 F.2d 155, 161 (4th Cir. 1985). *Harrison*'s passing mention of "blacks" was merely a counterexample invoked to explain the difference between a victim of political conspiracy and a member of a "race or class" that is protected by § 1985(3). *See id.*

#### 2. Defendants Were Motivated by, Fomented, and Took Advantage of Racial Animus.

Civil rights conspiracies under § 1985(2) and § 1985(3) require proof of invidious animus based on race or other protected status. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 340 (1993). Defendants argue (1) that Plaintiffs have failed to

allege membership in any such class; (2) that Plaintiffs are alleging that "Duke students" or "Duke lacrosse players" are a protected class; or (3) that Plaintiffs have failed to allege animus at all. Each of these arguments is incorrect.

Plaintiffs allege that Defendants' acts in furtherance of the § 1985 conspiracies were motivated by invidious animus based on race and were intended to foment and take advantage of racial animus against Plaintiffs. AC ¶ 1375. Race—any race—is an established protected classification. *See § II.E.(1), infra.*. The Amended Complaint is replete with details from which to infer Defendants' invidious racial motives. *See, e.g.*:

- The Racist Dimension of The Conspiracy To Convict. AC ¶¶ 566-90.
- Spoilation of DECC Evidence. AC ¶¶ 568-69.
- Nifong's Acts in Furtherance of the Conspiracy to Fabricate. AC ¶¶ 577-80.
- Brodhead's Acts in Furtherance of the Conspiracy to Fabricate the "Racist" dimension to Mangum's False Rape and the Duke Faculty's Acts in Furtherance of the Conspiracy. AC ¶¶ 581-90.
- Nifong's Public Acts and Statements, AC ¶¶ 502-03.
- Addison Publicly Stigmatized the Plaintiffs, AC ¶ 504-506.
- The Established Policy or Custom of Disseminating Defamatory Posters in Potentially High-Profile Cases, AC ¶ 525-27.
- Duke Officials Publicly Stigmatized the Plaintiffs AC ¶¶ 528-35.
- Duke University's Clergy Publicly Stigmatize the Plaintiffs AC ¶ 554.
- Duke University and City of Durham Officials with Final Policymaking Authority Ratified and Condoned the Foregoing Faculty and Employee Statements AC ¶¶ 555-558.

*See also* AC ¶¶ 500-06; 544-59; 568-69; 570-76; 577-90; 1375. These allegations are based on fact, not "legal conclusion." *See Green v. Maroules*, 211 F. App'x 159, 162-63 (4th Cir. 2006) (holding that plaintiff who alleged she was target of racial profiling and

conspiracy to falsely arrest her alleged racial animus and properly stated a claim under § 1985).

Defendants uniformly assert that "invidious racial animus" is not satisfied by deliberate acts designed to "create racial tensions or take advantage of racial animus on the part of others in order to achieve some other objective." City Br. at 32, citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *see also* Himan Br. at 34. That is not the holding of *Griffin* which defined the "racial animus" element to require that the alleged "conspiracy . . . must aim at a deprivation of the equal enjoyment of rights secured by the law to all."

There is powerful guidance on this point also from the treatment given to the requirement of all actions brought under 42 U.S.C. § 1982[8] that the plaintiff prove invidious animus based on race or class. With respect to fomenting racial animus "regardless of defendants' ultimate motivation, the fact that they deliberately stirred up and harnessed the racial animosity of others to serve their own ends is sufficient to find a violation." *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc.*, 41 F.3d 1190, 1194 (7th Cir. 1994); *see also Clark v. Universal Builders, Inc.*, 501 F.2d 324, 331 (7th Cir. 1974) (defendants cannot escape liability for acting with racial animus in violation of § 1982 by "proclaiming that they merely took advantage of a discriminatory situation created by others"); *Ortega v. Merit Ins. Co.*, 433 F. Supp. 135, 140-41 (N.D. Ill. 1977) (quoting *Clark*, 501 F.3d at 331).

Some Defendants assert as a defense that they did not harbor any invidious animus personally. In doing so, they are merely raising an issue of fact. There are sufficient allegations in the AC to overcome these objections.

---

[8] 42 U.S.C. § 1982 was enacted pursuant to Congress' Thirteenth Amendment authority; it secures to all citizens the right, enforceable against private and public defendants, to "inherit, purchase, lease, sell, hold and convey real and personal property."

## V.  THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS UNDER STATE LAW AGAINST DEFENDANT HIMAN.

The remaining causes of action asserted against Defendant Himan are alleged under North Carolina law.  They include claims for Common Law Obstruction of Justice and Conspiracy, Common Law Abuse of Process and Conspiracy, Intentional Infliction of Emotional Distress and Conspiracy, Negligence, and Negligent Infliction of Emotional Distress.

### A. Public Official Immunity Does Not Bar Plaintiffs' State Law Claims Alleging Intentional Conduct.

As a threshold issue, Plaintiffs agree that public official immunity bars negligence claims alleged against the Durham Police Defendants in their individual capacities. However, public official immunity will not shield Himan from Plaintiffs' claims alleging intentional torts (the Twentieth through the Twenty-Second Causes of Action).   Public official immunity does not protect public officials when they act with "malice" or whose conduct is intended to be prejudicial or injurious to the Plaintiff.  David A. Logan & Wayne A. Logan, *North Carolina Torts* § 107 (2d ed. 2004); *Moore v. Evans*, 476 S.E.2d 415, 421 (N.C. Ct. App. 1996); *Bailey v. Kennedy*, 349 F.3d 731, 742 (4th Cir. 2003). Additionally, Public Official immunity from negligence suits does not extend to an official, in his official capacity, when the governmental employer "has waived immunity by the purchase of liability insurance."   *Thompson v. Town of Dallas*, 543 S.E.2d 901, 905 (N.C. Ct. App. 2001).  Plaintiffs have asserted that the City of Durham is part of a municipal risk pool scheme the extent of which will not be known until Discovery is conducted.  AC ¶ 48.

Himan acknowledges that Plaintiffs have alleged malice.  *See* Himan Br. at 37. However, Himan contends that the Amended Complaint fails to allege facts that support an inference that he "intended his actions to be prejudicial or injurious" to the Plaintiffs. *Id.*   His contention is without merit.  The Amended Complaint is replete with allegations

of conduct that evinces Himan's malice or intent to be prejudicial or injurious to the Plaintiffs.  *See* AC ¶¶ 3, 441-44, 505-11, 507-16, 518-22, 570-76, 596-601, 605-10, 629-30, 663-64, 678-80, 754-57, 765-68, 785-89, 865.  *See generally* AC p.154–282; *see also* Sections XXI ("The Conspiracy To Convict By Stigmatization In Retaliation For Plaintiffs' Exercise Of Their Constitutional Rights"), XXIII ("The Racist Dimension Of The Conspiracy To convict"), XXIV ("The Conspiracy To Abuse The Warrant Process"), XXV ("The DNA Conspiracy"), XXVII ("Nifong, Himan, And Gottlieb Conspired To Withhold DNA Test Results That Proved Mangum's Claims Were A Fraud In Violation Of N.C.G.S. §15A-282"), XXX ("The Conspiracy To Fabricate Identification Evidence").   In the face of these allegations, Himan brazenly attempts to explain it away as being no different than the conduct of the hapless deputy sheriff in *Marlow v. Piner*, 458 S.E.2d 220 (N.C. Ct. App. 1995), who "negligently believed he had probable cause to arrest the plaintiffs." *Id.* at 223.  The argument is for the jury.  The facts in the Amended Complaint allege and evince malice and the intent to injure the Plaintiffs.

Further, malice may be inferred from conduct that violates a clearly established right, as a matter of law.  *See Bailey v. Kennedy*, 349 F.3d at 742 (officers who violate clearly established rights have no public official immunity "because an officer acts with malice when he does that which a man of reasonable intelligence would know to be contrary to his duty."); *Moore v. Evans*, 476 S.E.2d at 421-22 (denying public official immunity where genuine issue existed as to whether officer had probable cause).  Therefore, the Durham Police Defendants' assertions of public official immunity should be granted only with respect to Plaintiffs' negligence claims asserted against them in their individual capacities.

**B. The Amended Complaint States a Civil Conspiracy Claim Against Defendant Himan.**

The Eighteenth, Nineteenth, and Twentieth Causes of Action state an actionable civil conspiracy claims against Defendant Himan. AC ¶¶ 1189-1222. A cause of action for civil conspiracy arises whenever an injury is caused by "a wrongful act … committed by one or more of the conspirators pursuant to the common scheme and in furtherance of the objective." *State ex rel. Cooper v. Ridgeway Brands Mfg.*, No. 408A07, 2008 WL 3915186 *9 (N.C. Aug. 27, 2008) (quoting *Henry v. Deen* 310 S.E.2d 326, 334 (N.C. 1984)). To state a claim for civil conspiracy a plaintiff must allege (1) a conspiracy, (2) wrongful acts done by certain of the alleged conspirators in furtherance of that conspiracy, and (3) injury as a result of that conspiracy. *Id.*; *see Muse v. Morrison,* 66 S.E.2d 783, 785 (N.C. 1951). A conspiracy, under North Carolina law, is an agreement, express or implied, between two or more persons to commit an unlawful act or to do a lawful act in an unlawful manner. *See Evans v. Star GMC Sales & Service, Inc*., 151 S.E.2d 69, 71 (N.C. 1966). Where a conspiracy is established, all conspirators are jointly and severally liable for acts done in furtherance of the agreement by any one of them. *See Hafner v. Brown,* 983 F.2d 570, 577 & n.6 (4th Cir. 1992).

Himan's participation in civil conspiracies is well documented in the Eighteenth, Nineteenth, and Twentieth causes of Action. *See* AC ¶¶ 640, 1114; in which Defendant Himan participated, *see id.* ¶¶ 414-18, 596-601, 605, 629-30, 663-64, 676-80, 681-87, 746-57, 765-66, 785-89, 853-71; and (2) numerous acts of Defendant Himan's co-conspirators in furtherance of the conspiracy, *see id.* ¶¶ 456-58, 468-75, 501-24, 552-58, 566-76, 827-51, that caused injury to Plaintiffs, *see id.* ¶¶ 693-702, 706-21, 852, 865, 916-17, 927-28, 939-40, 1023-24, 1221-22, 1277-82. Taken together, these allegations are sufficient to withstand a motion to dismiss.

**C. The Amended Complaint States a Common Law Obstruction of Justice Claim Against Defendant Himan.**

The Eighteenth Cause of Action states an actionable claim for Common Law Obstruction of Justice against Himan. *Id.* ¶¶ 1189-1202. To state an obstruction of justice claim under North Carolina law, a plaintiff must allege "any act which prevents, obstructs, impedes or hinders public or legal justice." *Jones v. City of Durham*, 643 S.E.2d 631, 633 (N.C. Ct. App. 2007) (quoting *Broughton v. McClatchy Newspapers, Inc.,* 588 S.E.2d 20, 30 (N.C. Ct. App. 2003)). The Amended Complaint alleges that Defendant Himan "prevented, obstructed, impeded, or hindered" public justice in North Carolina by, among other things:

- Conspiring to fabricate—and fabricating—an Affidavit for purposes of misleading a judicial official into issuing the NTID Order and the McFadyen Search Warrant. AC ¶¶ 414-45; 1189-1201; *see also supra* Section II.A.(1).

- Conspiring with Duke Police Defendants to manufacture false and misleading police reports from Duke Police Officers, styled as bystander witness statements, designed to conceal evidence of Mangum's instability and, at the same time, fabricate witness testimony that was intended to be used to corroborate Crystal Mangum's false accusation that Plaintiffs were principals or accomplices in a racially motivated gang rape. AC ¶¶ 1192, 466-477.

- Conspiring with the Duke SANE Defendants, Steel, the CMT Defendants, Gottlieb, Wilson, and Nifong to fabricate forensic medical reports and records of Crystal Mangum's SAE conducted at DUHS. AC ¶¶ 1193, 779-99 (Section XXXIV, "The SANE Conspiracy").

- Conspiring with the DNASI Defendants, Gottlieb, and Nifong to deprive Plaintiffs of copies of reports of exonerating DNA test results that existed on or before April 10, 2006 to which Plaintiffs had a statutory right, which conclusively exonerated the plaintiffs, and which exposed the conspiracy to manufacture a criminal case against the plaintiffs, as principals or accessories, to a crime they knew never occurred. AC ¶¶ 1194, 800-03, 617-26, 746-79; *see generally* Sections XXV and XXXIII "The DNA Conspiracy" and "The Conspiracy to Conceal DNASI's Test Results In Violation of N.C.G.S § 15A-282."

- Conspiring with Gottlieb, Nifong, Baker, and other members of the Joint Command to destroy, and to not maintain notes (including, but not limited to notes of all conversations and meetings in which co-conspirators participated), or to delete material from reports "to the point where [they] didn't say anything" for the purpose of depriving Plaintiffs of evidence that could be used to prove the claims asserted in this action. AC ¶¶ 629-30, 1189-1202.

While there is more, *see, e.g.,* AC ¶¶ 1189-1202, any one of the foregoing is sufficient to state a common law obstruction of justice claim. *See, e.g., Jones v. City of Durham*, 643 S.E.2d 631 (N.C. Ct. App. 2007). Nevertheless, Himan argues that the cause of action should be dismissed.

Himan argues that Plaintiffs' Common Law Obstruction of Justice claim must fail because the Amended Complaint "allege[s] that Investigator Himan shared all information he uncovered, or inculpatory and exculpatory, with District Attorney Michael Nifong, and up the chain of command." Himan Br. at 39. In support of this contention, Himan cites AC ¶ 7 , which states, "Plaintiff Matthew Wilson is a citizen and resident of North Carolina." Himan also cites AC ¶ 387, which states, "Himan and Gottlieb, with the approval of the Himan Chain of Command, deliberately avoided taking investigative steps that would have produced even more evidence of Plaintiffs' innocence." It is unclear at all how the first allegation relates in any way to Himan's contention. The second allegation only hurts his position because the AC alleges that Himan conspired with Nifong and others to obstruct justice. This argument appears to be nothing more than an improperly placed pasting of his argument in *Evans* that, somehow, the prosecutor's *Brady* duties absolve him from liability, so long as he shares everything he learns with the prosecutor. The proposition is flawed from the beginning, but it certainly does not help him where, as here, the fundamental allegation is that he is engaged in a conspiracy with the prosecutor to obstruct justice.

**D.    The Amended Complaint States a Common Law Abuse of Process Claim Against Defendant Himan.**

The Amended Complaint states an actionable claim for Common Law Abuse of Process against Himan.  AC ¶¶ 1203-12.  To state a claim for Abuse of Process, a complaint must allege (1) a willful act by the defendant, (2) done with bad intent or ulterior motive, (3) after valid process has been issued at defendant's behest, (4) whereby the defendant attempts to use the process to accomplish a purpose for which it was not intended.  *Carson v. Moody*, 394 S.E.2d 194 (N.C. Ct. App. 1990).  The claim arises from "the malicious perversion of a legally issued process whereby a result not properly obtainable under it is [intended] to be secured. *Stanback v. Stanback*, 254 S.E.2d 611, 624 (N.C. 1979) (alteration not in original) (quoting *Barnette v. Woody*, 88 S.E.2d 223 (N.C. 1955)); W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts,* § 121 (5th ed. 1984) ("The gist of the tort is the misuse of process for an end other than that which it was designed to accomplish").  The Amended Complaint states facts sufficient to allege the elements of the claim, AC ¶¶ 1203-12, and Himan makes no argument for dismissal of this Cause of Action.  *See generally* Himan Br. 1-43.  Himan's claim to public official immunity does not shield him from this claim because the Amended Complaint alleges Himan acted with malice and malice may also be inferred from the conduct giving rise to this cause of action against Himan.  AC ¶¶ 1203-12; *see supra* Section V.A.

**E. The Amended Complaint States an Intentional Infliction of Emotional Distress Claim Against Defendant Himan.**

The Twentieth Cause of Action states an actionable claim for Intentional Infliction of Emotional Distress ("IIED") and conspiracy.  AC ¶¶ 1213-22.  To state a claim for IIED under North Carolina law, a plaintiff must allege: "(1) extreme and outrageous conduct by the defendant; (2) which is intended to and does in fact cause (3) severe emotional distress."  *W.E.T. v. Mitchell,* No. 1:06CV487, 2007 WL 271294, at *8 (M.D.N.C. Sept. 14, 2007) (citing *Harris v. County of Forsyth*, 921 F.Supp. 325, 335-36

(M.D.N.C. 1996). "A claim may also exist where the defendant's actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress." *Id. at* *8 (citing to *Hogan v. Forsyth Country Club Co.*, 340 S.E.2d 116, 119-20 (N.C. Ct. App. 1986)).

Himan does not dispute that the Amended Complaint sufficiently alleges the second and third elements; he contends, his conduct was "not sufficiently extreme or atrocious" to state a claim. Himan Br. at 42. "It is a question of law for the court to determine, from the materials before it, whether the conduct complained of may be reasonably found to be sufficiently outrageous as to permit recovery." *W.E.T.,* 2007 WL 271294, at *8 (citing *Beck v. City of Durham*, 573 S.E.2d 183, 191 (N.C. Ct. App. 2002)). Himan contends that Plaintiffs' allegations of his conduct "do[] not compare" with a husband's knowledge of and intentionally refusing to pay a tax deficiency as part of a separation agreement, resulting to foreclosure of the wife's home, *Stanback*, 254 S.E.2d 611, or with a private citizen placing posters of Plaintiff in public places, approaching other citizens, including teachers and students in a high school in the district where defendant was a superintendent, and reading or showing portions of papers about the plaintiff's *nolo contendere* plea while a college student decades earlier. Himan Br. at 42 (citing *Woodruff v. Miller*, 307 S.E.2d 176 (1983)). Plaintiffs agree that Himan's conduct "does not compare" to the conduct in *Stanback* or *Woodruff*: Himan's conduct was far more egregious, and obviously so. There were, of course, a few posters of the Plaintiffs hung across their campus. Unlike a foreclosure or disclosure of the truth that plaintiff pleaded *nolo contendere* to petty offenses years before, Himan launched and maintained a thirteen-month, world-wide vilification of the Plaintiffs as racists who participated in or aided a brutal, racially motivated, 30-minute gang rape of a struggling young mother of two who was dancing to earn her way through college. What Himan did does not compare at all, particularly in light of the Amended Complaint's allegations that Himan

participated in fabricating the now famous narrative, he manufactured false evidence, he concealed exculpatory (and exonerating) evidence, and he knew—all along—that no sexual assault of any kind ever occurred in Plaintiffs' presence.

Plaintiffs submit that Himan's conduct "exceeds all bounds of decency tolerated by society[.]" *West v. King's Dept. Store, Inc.,* 365 S.E.2d 621, 625 (N.C. 1988). In *West*, the North Carolina Supreme Court reversed a directed verdict for a shopkeeper who accused the plaintiffs of stealing a hand cart. When plaintiffs attempted to offer proof that they purchased the hand cart, the shopkeeper ignored their offer of proof. Instead, the manager announced "in the presence of others that they stole the merchandise and would be arrested if they did not return it." *See id.* at 625 (citations omitted). The North Carolina Supreme Court held that it was "manifest" that the shopkeeper's conduct was "extreme and outrageous conduct," adding that

> Few things are more outrageous and more calculated to inflict emotional distress on innocent store customers that have paid their good money for merchandise and have in hand a document to prove their purchase than for the seller or his agent, disdaining to even examine their receipt, to repeatedly tell them in a loud voice in the presence of others that they stole the merchandise and would be arrested if they did not return it. . . . [T]he store manager's last remarks to the [plaintiffs] as they left the store, a threat of prosecution in the future, left the [plaintiffs] under a continuing apprehension of prosecution for a year after this incident. . . . [T]hese factors together constitute sufficient evidence upon which a reasonable jury could have returned a verdict in favor of the plaintiffs.

*Id.* at 625-26 (alteration, citations, and quotation marks omitted).

Here, Defendants did not simply accuse Plaintiffs of a minor theft in front of other store customers. Addison, Hodge, and Nifong engaged in a prolonged campaign of false, inflammatory, and racially-charged statements both to the Durham community and the world accusing Plaintiffs of committing a racially-motivated gang rape—statements that predictably led to death threats and other epithets against Plaintiffs, *see* AC ¶¶ 502-17,

566-590, 685, 709, 1230, and subjected Plaintiffs to fear felony convictions as accessories to a crime that never occurred for over a year. *See id.* ¶¶ 491, 502(F), 847, 956 (I), 974, 1214-18, 1307. Like the shopkeeper in *West*, Himan willfully ignored overwhelming evidence of innocence, but, worse than the shopkeeper in *West*, Himan concealed proof that no crime occurred and fabricated evidence in an effort to establish that it did. *See id.* ¶¶ 441-44, 624, 663-64, 676-87, 746-51, 756, 765-71, 779, 788-89.

### F. The Amended Complaint States an Aiding or Abetting the Breach of Fiduciary Duty Claim.

The Twenty-Third Cause of Action states an actionable claim for Aiding and Abetting the Breach of a Fiduciary Duty against Himan. To state a claim for aiding or abetting breach of fiduciary duties, Plaintiff must allege "(1) the existence of fiduciary duty by the primary party; (2) knowledge of the violation on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in the achievement of the primary violation." *Blow v. Shaughnessy*, 364 S.E.2d at 490; *see also In re EBW Laser, Inc.*, Nos. 05-1022OC-7G, 05-102216-7G, 2008 WL 1805575, at *2 (Bankr. M.D.N.C. April 21, 2008) (quoting *Blow v. Shaughnessy*); *Battleground Veterinary Hosp., P.C. v. McGeough*, No. 05 CVS 18918,2007 WL 3071618, at *7 (N.C. Super. Oct. 19, 2007) (citing *Blow v. Shaughnessy*). The Amended Complaint alleges that the Himan with other city Defendants accepted from a bank, (i.e., Duke University)[9], protected financial data. AC § XXVIII. They then conspired with Duke officers to issue false subpoenas and then conduct a hearing to cover up the fact that they already possessed the protected data and they had retrieved it in violation of the N.C. Financial Privacy Act which requires a subpoena in order for law enforcement to garner protected financial data. *Id*; N.C. GEN.

---

[9] Plaintiffs establish that University was operating as a "bank" with respect to plaintiffs' Duke Card Account in Pls. Opp. DUPD Br. §V.C.,within the argument in support of Plaintiffs Cause of Action for Breach of Fiduciary Duty.

STAT. § 53-B (2008); *see also* Pls. Opp. Br. (DUPD), §V(D)-(E) (establishing violation of the Financial Privacy Act, N.C.G.S. §53B). Himan makes no argument for dismissal of this Cause of Action. *See* Himan Br. 1-43. Himan's claim to public official immunity does not shield him from this claim because the Amended Complaint alleges Himan acted with malice and malice may also be inferred from the conduct giving rise to this cause of action against Himan. AC ¶¶ 1203-12; *see supra* Section V(A).

### G. The Amended Complaint States a Negligence Claim Against Defendant Himan.

The Twenty-Fifth Cause of Action states an actionable Negligence claim against Defendant Himan in his official capacity. *See id.* ¶¶ 1261-67. To state a negligence claim, a plaintiff must allege that (1) defendant owed plaintiff a duty of care, (2) the defendant breached that duty, and (3) defendant's breach was the actual and proximate cause of plaintiff's injury. *Cameron v. Merisel Props.*, Inc., 652 S.E.2d 660, 664 (N.C. Ct. App. 2007). The Amended Complaint alleges these elements and facts from which they are readily inferred. AC ¶¶ 1261-67. Defendant Himan does not dispute that the Amended Complaint alleges facts sufficient to meet the second, third, and fourth elements; instead, Himan argues that the cause of action should be dismissed because he owed Plaintiffs no "duty". Himan Br. at 40. First, Himan restyles Plaintiffs' allegations as a claim for "negligent investigation" (which the Plaintiffs neither assert nor suggest), and then claims that a search of the decisions of North Carolina courts turned up no evidence of such a claim. *Id.* His argument fails because, North Carolina law imposes upon "every person" who undertakes an active course of conduct that creates the risk of foreseeable harm to other persons, owes a duty of care to such other persons. *Hart v. Ivey,* 420 S.E.2d 174, 178 (N.C. 1992). Himan offers no authority to support the proposition that "every person" does not include Himan. Himan Br. at 40; *see also Hart,* 420 S.E.2d at 178.

North Carolina's common law of ordinary negligence "'imposes upon every person *who enters upon an active course of conduct the positive duty to exercise ordinary care to protect others from harm*, and calls a violation of that duty negligence.'" *Peal v. Smith*, 444 S.E.2d 673, 677 (N.C. Ct. App. 1994) (emphasis omitted) (quoting *Hart,* 420 S.E.2d at 178). The duty imposed upon "every person" to protect others from harm "arises whenever one person is by circumstances placed in such a position towards another that anyone of ordinary sense who thinks will at once recognize that if he does not use ordinary care and skill in his own conduct with regard to those circumstances, he will cause danger of injury to the … the other." *Lumsden v. United States.*, 555 F. Supp. 2d 580, 589 (E.D.N.C. May 7, 2008) (quoting *Quail Hollow East Condo. Ass'n v. Donald J. Scholz Co.,* 268 S.E.2d 12, 15 (N.C. Ct. App. 1980)). ). A duty of care arises from any conduct where the risk of harm to another is both unreasonable and foreseeable. *Mullis v. Monroe Oil Co.*, 505 S.E.2d 131, 137 (N.C. 1998). Therefore, it is every person's duty to avoid foreseeable, unreasonable risk of harm to others. *Id.* (quoting Justice Cardozo's "classic analysis of duty" in *Palsgraf v. Long Island R.R. Co.*, 162 N.E. 99, 100 (N.Y. 1928) ("The risk reasonably to be perceived defines the duty to be obeyed… .")).

## H. The Amended Complaint States a Negligent Infliction of Emotional Distress Claim Against Defendant Himan.

The Twenty-Seventh Cause of Action states an actionable claim for Negligent Infliction of Emotional Distress ("NIED") against Himan in his official capacity.[10]  AC ¶¶ 1277-82.  Himan argues for dismissal of Plaintiffs' NIED claim based upon the same

---

[10] To state a cause of action for Negligent Infliction of Emotional Distress, the plaintiff must allege that the defendant (1) negligently engaged in conduct, (2) under circumstances in which it was reasonably foreseeable that the conduct would cause the plaintiff severe emotional distress; and (3) the conduct caused the plaintiff severe emotional distress. *Johnson v. Ruark Obstetrics & Gynecology Assoc.*, 395 S.E.2d 85, *reh'g. den.*, 399 S.E.2d 133 (N.C. 1990).

contention that he argued for dismissal of Plaintiffs' negligence claim against him, i.e., he owed "no duty" to the Plaintiffs. *See,* Himan Br. at 40. Himan's argument fails for the same reasons the same argument failed to support his argument for dismissal of his negligence claim. *See, supra,* § V.F. Therefore Plaintiffs' NIED claim against Himan in his official capacity may not be dismissed.

## VI. THE COURT MAY DISMISS OFFICIAL CAPACITY CLAIMS WHERE THE CITY IS ALSO NAMED AS A DEFENDANT AND IS THE REAL PARTY IN INTEREST.

Defendant Himan requests that the court dismiss official capacity claims in which City of Durham is already named directly as a defendant as duplicative. Plaintiffs agree that under the Civil Rights statues, a claim against an official in their official capacity in which the governmental is also named is "in all respects other than name, to be treated as a suit against the [municipality]. Claims against the official in his or her official capacity which are duplicative of claims against a government entity are subject to dismissal. *W.E.T. v. Mitchell* 2007 WL 2712924 at *10 (citing to *Kentucky v. Graham,* 473 U.S. 159, 166 (1985)*; see Shaeffer v. County of Chatham,* 337 F. Supp. 2d 709, 721 (M.D.N.C. 2004) (claims against a defendant in their official capacity were dismissed as duplicative of the municipality). Therefore, the Court may dismiss all official capacity claims against Defendant Himan in causes of action1-4, 9-11, 15-17 because the City of Durham is a party to each claim.

Without conceding that the same principle applies to state law claims, Plaintiffs will waive the official capacity claims against Himan in Causes of Action 18-19, 23, 25, 27-28, as the entity is also a party that action and the claims are therefore redundant. Plaintiffs will not waive the official capacity of Himan in Plaintiffs' Cause of Action 20 as the entity is not a party to the action. Consequently, this claim should not be dismissed unless the City of Durham is substituted directly as a defendant in these claims.

Additionally Plaintiffs will not waive official capacity for Defendant Himan in causes of action 6-7 and 13 as the claims are only for the individual capacity.

## VII. DEFENDANT HIMAN MAKES NO OTHER ARGUMENT FOR DISMISSAL AND PLAINTIFFS REQUEST LEAVE TO COMMENCE DISCOVERY.

Defendant Himan has made no other arguments in support of dismissal of Plaintiffs' claims. Defendants have, however, requested oral argument on their motions, pointing to the "complexity" of the issues raised by the Amended Complaint. Any complexity that Defendants could not clarify in the course of the 825 pages that has already been extended to them likely will not clarify in oral argument. That is particularly true if, at oral argument, Defendants persist in recasting Plaintiffs' allegations to find a foothold for their arguments. With respect, Plaintiffs request that the Defendants' request for oral argument be denied, and Plaintiffs request leave to schedule the Rule 26(f) discovery conference.

## CONCLUSION

For the foregoing reasons, the Court should deny Himan's Motions to Dismiss, except that, where the City is already named as a defendant in the Causes of Action, the Court may dismiss the official capacity claims alleged in those causes of action. Himan's request for oral argument should be denied, and Plaintiffs' request for leave to conduct the Rule 26(f) discovery conference should be granted.

Dated:  October 10, 2008

Respectfully submitted,

**EKSTRAND & EKSTRAND LLP**

/s/ Robert C. Ekstrand

_____
Robert C. Ekstrand, Esq. (NC Bar #26673)
Attn:  Stefanie A. Sparks
811 Ninth Street, Suite 260
Durham, North Carolina 27705
Email:  rce@ninthstreetlaw.com
Email:  sas233@law.georgetown.edu
Phone: (919) 416-4590

*Counsel for Plaintiffs Ryan McFadyen,
Matthew Wilson, and Breck Archer*

# UNITED STATES DISTRICT COURT
## FOR THE
## MIDDLE DISTRICT OF NORTH CAROLINA

RYAN McFADYEN, et al.,

     Plaintiffs,

v.

DUKE UNIVERSITY, et al.,

     Defendants.

Civil Action No. 1:07-cv-953

## CERTIFICATE OF SERVICE

I hereby certify that, on October 10, 2008, I electronically filed the foregoing PLAINTIFFS' OPPOSITION TO DEFENDANT HIMAN' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

     James Donald Cowan, Jr.
     Ellis & Winters, LLP
     100 North Greene Street, Suite 102
     Greensboro, NC  27401
     ***Counsel for The University Defendants***

     Dixie Wells
     Ellis & Winters, LLP
     100 North Greene Street, Suite 102
     Greensboro, NC  27401
     ***Counsel for The University Defendants***

Jamie S. Gorelick
Wilmer Cutler Pickering Hale and Dorr, LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
***Counsel for The University Defendants***

Jennifer M. O'Connor
Wilmer Cutler Pickering Hale and Dorr, LLP
1875 Pennsylvania Ave., N.W.
Washington, DC  20006
***Counsel for The University Defendants***

Paul R.Q. Wolfson
Wilmer Cutler Pickering Hale and Dorr, LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
***Counsel for The University Defendants***

William F. Lee
Wilmer Cutler Pickering Hale and Dorr, LLP
60 State Street
Boston, MA  02109
***Counsel for The University Defendants***

Dan J. McLamb
Yates, McLamb & Weyher, LLP
One Bank of America Plaza, Ste 1200
421 Fayetteville Street
Raleigh, NC 27601
***Counsel for The SANE Defendants***

Reginald B. Gillespie, Jr.
Faison & Gillespie
P.O. Box 51729
Durham, NC 27717
***Counsel for City of Durham, North Carolina***

Patricia P. Kerner
Troutman Saunders, LLP
434 Fayetteville Street, Suite 1900
Raleigh, NC 27601
***Counsel for Steven Chalmers, Patrick Baker, Beverly Council, Ronald Hodge, Jeff Lamb, Stephen Mihaich, Michael Ripberger, Laird Evans, and Lee Russ***

D. Martin Warf
Troutman Sanders LLP
P.O. Drawer 1389
Raleigh, North Carolina 27602
***Counsel for Steven Chalmers, Patrick Baker, Beverly Council, Ronald Hodge, Jeff Lamb, Stephen Mihaich, Michael Ripberger, Laird Evans, and Lee Russ***

James B. Maxwell
Maxwell, Freeman & Bowman
P.O. Box 52396
Durham, NC  27717-2396
***Counsel for David Addison, Kammie Michael, Richard D. Clayton and James T. Soukup***

Joel M. Craig
Kennon, Craver, Belo, Craig & McKee
4011 University Drive, Suite 300
Durham, NC 27707
***Counsel for Benjamin W. Himan***

Edwin M. Speas, Jr.
Poyner & Spruill, LLP
P.O. Box 10096
Raleigh, NC 27605-0096
***Counsel for Mark Gottlieb***

Eric P. Stevens
Poyner & Spruill, LLP
P.O. Box 10096
Raleigh, NC 27605-0096
***Counsel for Mark Gottlieb***

Kearns Davis
Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P.
P.O. Box 26000
Greensboro, NC 27420
***Counsel for DNA Security, Inc. and Richard Clark***

Robert J. King, III
Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P.
P.O. Box 26000
Greensboro, NC 27420
***Counsel for DNA Security, Inc. and Richard Clark***

Linwood Wilson
****Address Redacted Pursuant to Local Rule**

I further certify that I caused the foregoing document to be served by first-class mail, postage prepaid, to the following non CM/ECF participants:

Paul R. Dickinson, Jr.
Lewis & Roberts, PLLC
5960 Fairview Road, Suite 102
Charlotte, NC 28210
***Counsel for Brian Meehan***

James A. Roberts, III
Lewis & Roberts, PLLC
1305 Navaho Drive, Suite 400
Raleigh, NC 27609-7482
***Counsel for Brian Meehan***

Roger E. Warin
Steptoe & Johnson, LLP
1330 Connecticut Avenue, NW
Washington, DC 20003
***Counsel for City of Durham, North Carolina***

Robert A. Sar
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2301 Sugar Bush Road, Suite 600
Raleigh, NC  27612
***Counsel for DNA Security, Inc***.

Nicholas J. Sanservino, Jr.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2301 Sugar Bush Road, Suite 600
Raleigh, NC  27612
***Counsel for DNA Security, Inc.***

Respectfully submitted,

**EKSTRAND & EKSTRAND LLP**

/s/ Robert C. Ekstrand
Robert C. Ekstrand, Esq.
NC Bar #26673
811 Ninth Street, Suite 260
Durham, North Carolina 27705
Email:  rce@ninthstreetlaw.com
Phone: (919) 416-4590
*Counsel for Plaintiffs Ryan McFadyen, Matthew Wilson, and Breck Archer*