# UNITED STATES DISTRICT COURT
## FOR THE
## MIDDLE DISTRICT OF NORTH CAROLINA

RYAN McFADYEN, et al.,
      Plaintiffs,

          v.

DUKE UNIVERSITY, et al.,

     Defendants.

Civil Action No. 1:07-cv-953

---

## PLAINTIFFS' OPPOSITION TO GOTTLIEB'S
## MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

---

Dated:  October 10, 2008

**EKSTRAND & EKSTRAND LLP**

Robert C. Ekstrand (NC Bar #26673)
Attn. Stefanie A. Sparks
811 Ninth Street, Suite 260
Durham, North Carolina  27705

***Counsel for Plaintiffs Ryan McFadyen,
Matthew Wilson, and Breck Archer***

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................ i

STATEMENT OF THE CASE ................................................................................ 1

NATURE OF THE PROCEEDINGS ..................................................................... 1

STATEMENT OF THE FACTS ............................................................................. 2

QUESTIONS PRESENTED .................................................................................... 3

ARGUMENT ............................................................................................................. 3

    I.    STANDARD OF REVIEW ...................................................................... 3

    II.    THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS UNDER FEDERAL LAW AGAINST GOTTLIEB. ................................... 4

        A.    The Amended Complaint States Actionable Section 1983 Claims Against Gottlieb. ................................................................. 4

            1.    The Amended Complaint States Actionable Section 1983 Claims Against Gottlieb For Searches And Seizures In Violation Of The Fourth Amendment. ..................................... 6

            2.    The Third Cause Of Action States An Actionable Section 1983 Claim For Abuse Of Process Designed To Coerce Plaintiffs Into Submitting To Interrogation. ......................... 7

            3.    The Fourth Cause Of Action States A Section 1983 Claim For Deprivation Of Property In Violation Of The Fourteenth Amendment. ................................................ 9

            4.    The Fifth Cause Of Action States A Section 1983 Stigma-Plus Claim Against Gottlieb. ........................................ 10

            5.    The Sixth And Seventh Causes Of Action State A Section 1983 Claim For Conduct That Shocks The Conscience, In Violation Of The Fourteenth Amendment. ......................... 10

            6.    The Ninth Cause Of Action States An Actionable Section 1983 Claim For Retaliation And Conspiracy In Violation Of Plaintiffs' First, Fifth, And Fourteenth Amendment Rights. ....................... 12

            7.    The Tenth Cause Of Action States An Actionable Section 1983 Claim Against Gottlieb For Depriving Plaintiffs Of The Privileges And Immunities Afforded To North Carolina Citizens In Violation Of 42 U.S.C. § 1983. ............................................... 14

8. The Eleventh Cause Of Action States An Actionable Section 1983 Claim Against Defendant Gottlieb For His Failure To Prevent Or Aid In Preventing The Ongoing Deprivations Of Plaintiffs' Constitutional Rights. ................................................. 15

III. GOTTLIEB IS NOT ENTITLED TO QUALIFIED IMMUNITY ............. 16

A. The Qualified Immunity Standard .................................................. 16

1. Gottlieb Does Not Have Qualified Immunity For Fabricating Affidavits That Caused NTID Orders And Search Warrants To Issue Without Probable Cause. .................................................... 17

2. Gottlieb Does Not Have Qualified Immunity For Abuse Of Process Designed To Coerce Plaintiffs Into Submitting To Interrogation. ............................................................................... 18

3. Gottlieb Does Not Have Qualified Immunity For Causing Deprivations Of Plaintiffs' Due Process Right To § 15A-282 Reports. .................................................................................... 21

4. Gottlieb Is Not Entitled To Qualified Immunity For Conduct Intended To Coerce Plaintiffs' Waiver Or Retaliate Against Them For Their Exercise Of First Amendment Rights. ............ 22

5. Gottlieb Is Not Entitled To Qualified Immunity For Retaliating Against Plaintiffs For Exercise Of First Amendment Rights ..... 23

6. Gottlieb Is Not Entitled To Qualified Immunity For Discriminatory And Abusive Enforcement Of The Criminal Laws Because Plaintiffs Were "Temporary" Residents Of North Carolina .................................................................................... 24

7. Gottlieb Does Not Have Qualified Immunity For Engaging In Conduct That Shocks The Conscience. ...................................... 25

8. Gottlieb Does Not Have Qualified Immunity For Failing To Intervene To Prevent His Fellow Officers From Violating Plaintiffs' Constitutional Rights In His Presence Or Within His Knowledge. ................................................................................. 26

IV. THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS AGAINST GOTTLIEB FOR PARTICIPATION IN CIVIL RIGHTS CONSPIRACIES ................................................................................... 27

A. Conspiracies In Violation Of 42 U.S.C. § 1983 ............................. 27

B. The Amended Complaint States Actionable Claims For Conspiracy In Violation Of 42 U.S.C. § 1985. ................................................... 29

C.     The Amended Complaint States A Violation Of 42 U.S.C. §1986. 31

D.     The § 1985 Claims Allege Racial Animus Of Two Types .............. 31

     1. Section 1985 Prohibits Invidious Animus Against Any Race.... 32

     2. Defendants Were Motivated By, Fomented, And Took Advantage Of Racial Animus. ..................................................... 32

E.     Public Official Immunity Does Not Bar Plaintiffs' State Law Claims Alleging Intentional Conduct. .......................................................... 35

F.     The Amended Complaint States A Civil Conspiracy Claim Against Defendant Gottlieb. ......................................................................... 37

G.     The Amended Complaint States A Common Law Obstruction Of Justice Claim Against Defendant Gottlieb. ...................................... 39

H.     The Amended Complaint States A Common Law Abuse Of Process Claim Against Defendant Gottlieb. .................................................. 42

I.     The Amended Complaint States An Intentional Infliction Of Emotional Distress Claim Against Defendant Gottlieb. ................. 43

J.     The Amended Complaint States An Aiding And Abetting The Breach Of A Fiduciary Duty Claim Against Defendant ................. 45

K.     The Amended Complaint States A Negligence Claim Against Gottlieb In His Official Capacity. ..................................................... 46

L.     The Amended Complaint States A Negligent Infliction Of Emotional Distress Claim Against Defendant ................................. 48

V.     THE COURT MAY DISMISS OFFICIAL CAPACITY CLAIMS WHERE THE CITY IS ALSO NAMED AS A DEFENDANT AND IS THE REAL PARTY IN INTEREST .............................................................................. 48

VI.     Gottlieb MAKES NO FURTHER ARGUMENT FOR DISMISSAL; PLAINTIFFS REQUEST LEAVE TO COMMENCE DISCOVERY. ...... 49

CONCLUSION ........................................................................................... 50

## STATEMENT OF THE CASE

The Amended Complaint describes a combination of actors and entities referred to as the Consortium. For thirteen months beginning in March 2006, the Consortium's ultimate objective was to railroad the Plaintiffs and their 44 teammates into convictions as either principles or accomplices to a horrific, violent crime they knew never happened. The allegations describe a willful, malicious, and calculating conspiracy of multiple dimensions. Acting individually and in concert, Defendants concealed exonerating evidence, manufactured inculpatory evidence, and stigmatized the Plaintiffs by subjecting them to public outrage, public condemnation, and infamy in the minds of millions of people. Defendants' conduct shocks the conscience. Maybe the most unsettling of all are those who knew of the wrongs conspired to be done to Plaintiffs, and had the power to prevent or aid in preventing them. Instead, they 'turned a blind eye' and did nothing.

## NATURE OF THE PROCEEDINGS

Plaintiffs filed this action on December 18, 2007 and amended that filing on April 17, 2008. Pursuant to a request from this Court regarding the location of the audio and video exhibits embedded within the First Amended Complaint ("AC"), Plaintiffs file the AC again on April 18, 2008 with the embedded exhibits as separate documents. Except for the location of the exhibits, the two "First Amended Complaints" are identical. All Defendants filed Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b) (6) on July 2, 2008. This Memorandum is filed pursuant to the Court's Order of October 7, 2008 [Document #72], granting Plaintiffs' Motion for Leave to File Opposition Briefs [Document #71], and authorizing Plaintiffs to file their Responses on or before October 10, 2008.[1]

---

[1] Plaintiffs' Opposition Brief is filed in response to Defendant Mark D. Gottlieb's Motion to Dismiss (Document #53) and supporting Memorandum (Document #54). Gottlieb's

## STATEMENT OF THE FACTS

*Mark D. Gottlieb's* abuse of power in the investigation that spawned this case began when he was off-duty.  On March 14, 2006, while he was not working, Gottlieb learned early in the day of Crystal Mangum's rape allegations at 610 N. Buchanan – an address he recognized.  Gottlieb immediately involved himself.  He ordered Duke Police Investigator Jones not to close the investigation, not to make any formal findings, and to turn the investigation over to him. AC ¶ 333.  Gottlieb was not employed in the CID's Violent Crimes Unit.  AC ¶ 348.  Rather, he was in the Property Crimes Division.

Gottlieb was a principle figure orchestrating the investigation of the false accusations of Crystal Mangum in order to prosecute innocent people – the members of the Duke men's lacrosse team.  This was not a new role for Gottlieb: he had a history of and propensity for violating the constitutional rights of Duke students, and otherwise abusing his power over them – and the City of Durham and Duke University knew this and condoned it.[2]  Amended Complaint ("AC") ¶¶ 145-54, 171-87.  The only difference here in this particular case was that it garnered national attention.

---

supporting brief is cited herein as "Gottlieb Br" and his co-defendants' supporting briefs are cited herein as: "City Br.," "City Super. Br.," "DNASI Br.," "SANE Br.," "Duke Univ. Br." "DUPD Br.," "Himan Br.," "SMAC Br.," and "Wilson Br."

[2] Durham and Duke not only knew about these constitutional violations and abuses, they had a policy name for it: "Zero-Tolerance for Duke Students Policy."  AC ¶¶ 107-87.

## QUESTIONS PRESENTED

1.     Have the Plaintiffs stated actionable claims against Defendant Gottlieb under 42 U.S.C. § 1983? (1-7, 9-11)

2.     Is Defendant Gottlieb Entitled to Qualified Immunity?

3.     Have the Plaintiffs stated actionable claims against Defendant Gottlieb for Federal Civil Rights Conspiracies under 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C §1986? (15-17)

4.     Have the Plaintiffs stated actionable claims against Defendant Gottlieb under State Law? (18-20, 23, 25, 27)

## ARGUMENT

## I.    STANDARD OF REVIEW

A motion to dismiss for failure to state a claim may be granted "only in very limited circumstances." *Rogers v. Jefferson-Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir. 1989). In examining a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Salami v. Monroe*, No. 1:07CV621, 2008 WL 2981553, at *5 (M.D.N.C. Aug. 1, 2008) (quoting *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). Though the complaint is not required to encompass detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quotations and alterations in original) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007)). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 127 S.Ct. at 1965). "[O]nce a claim has been stated adequately, it may be supported by

showing any set of facts consistent with the allegations in the complaint." *Id.* (quoting *Twombly*, 127 S.Ct. at 1969). Further, where Plaintiffs have asserted a civil rights action, the Court "must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Veney v. Wyche,* 293 F.3d 726, 730 (4th Cir. 2002) (internal quotations omitted). With these standards in mind, this Memorandum will identify the factual basis in the Amended Complaint for the causes of action asserted against Defendant Gottlieb and respond to his arguments for dismissal.

## II. THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS UNDER FEDERAL LAW AGAINST GOTTLIEB.

### A. The Amended Complaint States Actionable Section 1983 Claims Against Gottlieb.

The first fifteen Causes of Action allege violations of 42 U.S.C. § 1983 (the "§ 1983 Claims"). At this early stage, the Court must determine whether each of these Causes of Action alleges facts sufficient to satisfy the elements of § 1983. *See Green v. Maroules*, 211 F.App'x 159, 161 (4th Cir. 2006). Based on the statute's text,[3] the Supreme Court held that a § 1983 claim requires only two essential allegations:

---

[3] § 1983 provides:

[E]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress[.]

42 U.S.C. § 1983 (2000).

> By the plain terms of section 1983, two–and only two–allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who deprives them of that right acted under color of state or territorial law.

*Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *accord West v. Atkins*, 487 U.S. 42 (1988). Section 1983 does not itself create or establish substantive rights. Instead, § 1983 provides "a remedy" where a plaintiff demonstrates a violation of a right protected by the federal Constitution, or by a federal statute other than §1983. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979); *accord Albright v. Oliver*, 510 U.S. 266 (1994). Analytically, however, it may be more useful to understand a § 1983 action as having four elements of proof: (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation (2) proximately caused (3) by the conduct of a "person" (4) who acted "under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983 (2000). *See, e.g.*, *Martinez v. California*, 404 U.S. 277 (1980).

The Amended Complaint adequately alleges the elements of a § 1983 claim against Gottlieb. The Amended Complaint alleges that (1) Gottlieb is a "person" for purposes of § 1983, AC ¶¶ 905, 919, 930, 942, 955, 969, 979-80, 993, 1003, 1008, 1021, 1148; (2) who, while acting under color of state law, *id*. ¶¶ 905, 919, 942, 955, 969, 970, 972-73, 979-80, 993, 1003, 1008, 1021, 1149; (3) proximately caused *id.* ¶¶ 916, 927-28, 939, 952, 962, 976, 984, 1000, 1006, 1022-23, 1154; (4) Plaintiffs to be subjected to the deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States, *id.* ¶¶ 916, 927-28, 934, 939, 952, 962, 976, 984, 1000, 1006, 1022-23, 1154. The elements and the supporting allegations detailed across more than 400 pages of the Amended Complaint are more than sufficient to state § 1983 claims against Gottlieb. *See, e.g., Gomez v. Toledo,* 446 U.S. 635, 640 (1980); *Green*, 211 F.App'x at

161.  Gottlieb concedes that the Amended Complaint sufficiently alleges he is a "person" for purposes of § 1983, and, at all relevant times, was acting under color of state law. Gottlieb argues that Plaintiffs § 1983 claims against him should be dismissed because, he contends, Plaintiffs fail to allege an actionable deprivation of federal rights, and, in the alternative, that he has qualified immunity for the violations alleged. All of Gottlieb's arguments fail because they depend upon a misrepresentation of the facts alleged in the Amended Complaint, they misstate the law, or both.

### 1. The Amended Complaint States Actionable Section 1983 Claims Against Gottlieb For Searches And Seizures In Violation Of The Fourth Amendment.

The First and Second Causes of Action state § 1983 Claims against Gottlieb and others for unreasonable searches and seizures in violation of Fourth and Fourteenth Amendments. AC ¶¶ 904-17, 918-28. Plaintiffs identify two discrete searches and seizures: (1) the Non-Testimonial Identification ("NTID Order") (the First Cause of Action), *id.* ¶ 907, and (2) the Search Warrant for Ryan McFadyen's dorm room (the "McFadyen Warrant") (the Second Cause of Action) *id.* ¶ 920. The McFadyen Search Affidavit adds only one new allegation; because the two Affidavits are nearly identical, analysis is more fully developed in Plaintiffs' Opposition to the City's Motion to Dismiss (Pls. Opp. Br. (City), § II.A.(1)) and, in the interests of judicial economy, Plaintiffs incorporate that analysis here. The AC alleges that Gottlieb and Himan, in concert with other defendants, intentionally fabricated and submitted entirely fabricated Affidavits designed to mislead the judge into incorrectly believing that the required legal justification existed to issue both the NTID and Search Warrant. *Id.* ¶¶ 414-44, 591-616. With respect to the NTID Affidavit, taking the Plaintiffs' allegations as true, the Amended Complaint establishes that *every material statement* in the NTID Affidavit was deliberately fabricated (as were many immaterial statements). *Id.* ¶¶ 414-44. In addition

to the fabrications, the AC establishes that Gottlieb deliberately omitted from the NTID Affidavit all of the overwhelming evidence of innocence documented in the AC and was known to Gottlieb at the time. *See id.* ¶¶ 223-37, 262-311, 321-32, 382-85.

Gottlieb and Himan attempt to analogize this case to that of *Torchinsky v. Siwinski*, 942 F.2d 257, 262 (4th Cir. 1990), but both fail to identify its dispositive difference: in *Torchinsky*, the officer had proof of a crime. *Id.* The complaining witness was brutally beaten, with visible signs of severe injury. *Id.* at 259. Gottlieb and Himan argue that *Torchinsky* stands for the proposition that "inconsistencies in the accuser's statements" do not defeat probable cause. Himan Br. at 19-20; Gottlieb Br. at 12-13. Perhaps, but only insofar as there is evidence that a crime actually occurred, the accuser is not clinically unreliable, and overwhelming evidence does not exist that no crime ever occurred. *Cf. Torchinsky,* 942 F.2d at 259-260, *with,* AC § XI ("THE BODY OF EVIDENCE AMASSED IN THE FIRST 48 HOURS PROVED MANGUM'S RAPE CLAIM WAS A HOAX").

> **2.     The Third Cause Of Action States An Actionable Section 1983 Claim For Abuse Of Process Designed To Coerce Plaintiffs Into Submitting To Interrogation.**

The Third Cause of Action alleges that Gottlieb, in concert with Nifong, Himan, Levicy, and Arico procured the unlawful NTID Order and the unlawful McFadyen Search Warrant in retaliation for refusing to voluntarily submit to interrogations Gottlieb, Himan, Nifong, and Duke University Administrators planned for them (where they planned to obtain coerce Plaintiffs into consenting also to DNA samples). AC ¶¶ 413-14, 929-40. The Amended Complaint alleges that Gottlieb and his co-defendants were enraged by Plaintiffs' refusal to submit to those interrogations without more than a day's notice or an opportunity to consult with counsel. *See id.* ¶¶ 407, 410-13. Thus, in a fit of pique, Gottlieb, Himan, and others conspired to concoct the sensationalized, fabricated

account of events that they knew never happened. *See id.* ¶¶ 2, 106, 321, 333, 354, 382-85, 387, 402, 1191-93, 1200, 1215-16, 1367-68. Their purpose was to coerce Plaintiffs into consenting to interrogations that would be unlawful in the absence of their consent. *See id.* ¶¶ 403-04. Gottlieb's chosen means of coercion was the mob. To incite the mob, Gottlieb and Himan and others knowingly drafted a fabricated account of a brutal, racially motivated gang rape that they knew did not happen. *See* AC ¶¶ 2, 106, 321, 333, 354, 382-85, 387, 402, 1191-93, 1200, 1215-16, 1367-68. Gottlieb thus set the mob loose upon them, and subjected them to public vilification the likes of which few have ever had to endure. *See id.* 544-54, 700-02, 708. Gottlieb turned them into pariahs in their own communities and in the eyes of—literally—millions of people. *See id.* ¶¶ 414, 443-44, 700-02, 709, 930-36.

Gottlieb and many of his co-defendants mistake Plaintiffs' Third Cause of Action's allegations of public vilification and the extortionate pressures created by it as essentially a defamation claim, dressed up as a § 1983 action. They cite authority within the line of cases running from *Paul v. Davis*, 424 U.S. 693 (1976) to *Seigert v. Gilley*, 500 U.S. 226 (1991). Gottlieb Br. at 19-22. Those cases stand for the proposition that there is no § 1983 cause of action for "pure" defamation. In other words, the plaintiffs in those cases fail to allege a deprivation *in addition to* the harm to their reputations. In their Third Cause of Action, Plaintiffs allege that Gottlieb and others caused the deprivation of their right to be free of unreasonable searches and seizures for at least two unlawful purposes: (1) coercing their speech (i.e., submitting to the interrogations), and (2) retaliating against them for refusing to consent to the interrogations. AC ¶¶ 404-44, 596-610, 929-40. The retaliation and coercion were affected not merely by posters, fliers, and other false public pronouncements; they were first affected by causing Plaintiffs to be subjected to searches and seizures that violated Plaintiffs Fourth Amendment rights. *Id.* ¶¶ 414-18, 596-600.

8

The Third Cause of Action alleges that, in addition to that Fourth Amendment violation, Gottlieb's deliberate effort to coerce Plaintiffs to consent to interrogations is a violation of the Fourteenth Amendment, and his retaliation against Plaintiffs for refusing to speak violates their First Amendment rights. *Id.* ¶¶ 938-39. Plaintiffs analyze the violation of rights protected by each of those three Amendments separately in Plaintiffs' Opposition to Himan's Motion to Dismiss. Pls. Opp. Br. (Himan), § II.A(1)(2). Based upon that discussion and for purposes of this action, to the extent that the right must be located in one of those three amendments at this preliminary stage, the Fourth Circuit located the right violated in analogous circumstances in the Fourth Amendment. *See Rogers v. Pendleton*, 249 F.3d 279, 295 (4th Cir. 2001) (authorizing § 1983 claim where police retaliated against citizen for refusing to consent to a search of his home by arresting him, holding "[t]he police do not have the right to arrest citizens for refusing to consent to an illegal search."); *see also id.* at 295 (affirming denial of qualified immunity where evidence showed officers' seizure of a citizen was "motivated by the officers' anger at [plaintiff's] 'irreverent' refusal to consent to their search … which was clearly illegal absent his consent") (alteration not in original). Gottlieb's motion to dismiss this claim must be denied.

3.    **The Fourth Cause Of Action States A Section 1983 Claim For Deprivation Of Property In Violation Of The Fourteenth Amendment.**

The Fourth Cause of Action alleges that Gottlieb, individually and in concert with Nifong, Meehan, and Clark conspired to deprive Plaintiffs of their constitutionally protected property interest in the reports of results of tests conducted with the products of their NTID procedures (i.e., Plaintiff's DNA and photographs). AC ¶¶ 941-53. Because the Defendants have asserted similar contentions in arguing for dismissal of this cause of action, Plaintiffs identify the violation alleged in this cause of action and respond to all of

the arguments asserted by Gottlieb and his co-defendants along with a more fully developed analysis in Plaintiffs' Opposition to DNASI Defendants Motion to Dismiss (Pls. Opp. Br. (DNASI), § III.A.1.), and, in the interests of judicial economy, Plaintiffs incorporate that analysis here.

### 4. The Fifth Cause Of Action States A Section 1983 Stigma-Plus Claim Against Gottlieb.

The Fifth Cause of Action alleges that Gottlieb, individually and in concert with other co-defendants, stigmatized Plaintiffs in connection with a deprivation of Plaintiffs' federal rights as well as other present tangible interests. AC ¶¶ 954-62.[i] Plaintiffs' analysis is more fully developed in Plaintiffs' Opposition to Soukup, Michael, Addison, Clayton ("SMAC"). *See,* Pls. Opp. Br. (SMAC), § II.A.(3). In the interests of judicial economy, Plaintiffs incorporate that analysis by reference here.

### 5. The Sixth And Seventh Causes Of Action State A Section 1983 Claim For Conduct That Shocks The Conscience, In Violation Of The Fourteenth Amendment.

The Amended Complaint states a § 1983 claim for conduct in violation of the Fourteenth Amendment. AC ¶¶ 969-77, 978-985. Executive action that "shocks the conscience" is actionable under the Fourteenth Amendment. *County of Sacramento v. Lewis*, 523 U.S. 833 (1998). In *Lewis*, the Court refined the "shocks the conscience" standard by distinguishing between official conduct where there is a realistic opportunity to deliberate and official conduct where such an opportunity is not present. *Id*. Where an official has an opportunity to deliberate, official conduct that is "deliberately indifferent" is conscience shocking. *Id.* The rationale is that, when officials with the luxury to deliberate and an opportunity to do better nevertheless exhibit "protracted failure to care, indifference is truly shocking." *Id.* at 853. As examples of the opportunity to deliberate, the Supreme Court cited situations in which officials have the opportunity to deliberate over the provision of medical

care to detainees, *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239 (1983), and to prisoners, *Estelle v. Gamble*, 429 U.S. 97 (1976). In situations where there is no time to deliberate and unforeseen circumstances demand an officer's instant judgment, such as the tense, rapidly evolving high speed pursuit at issue in *Lewis*, the officer's conduct will be considered conscience shocking only if carried out with a purpose to cause harm. *Lewis*, 523 U.S. at 853.

The Sixth and Seventh Causes of Action allege conspiracies and conduct in furtherance of them that shock the conscience. AC ¶¶ 969-77, 978-85.; s*ee also id.* ¶¶ 414-44, 598-601, 663-64, 765. The conspiracies alleged were systematically carried out over a thirteen month period, beginning shortly after the original Duke and Durham investigation ruled the allegations 'unfounded' on or about March 15, 2006. *Id.* ¶ 333. The Amended Complaint, alleges (1) a conspiracy to fabricate evidence of a rape that Defendants knew never occurred, *see id.* ¶¶ 2, 106, 321, 354, 382-85, 387, 402, 1191-93, 1200, 1215-16, 1367-68, and (2) to systematically conceal from the Plaintiffs and the enraged public all of the overwhelming proof of the Plaintiffs' innocence, *id.* ¶¶ 562, 676-80, 765. The motives of the conspirators were to retaliate against Plaintiffs for exercising their right not to speak or submit to police interrogations, to coerce Plaintiffs into providing false inculpatory testimony through the continuing threat of a prosecution that Plaintiffs knew to be a frame up and to prevent the disclosure of the enormity of their misconduct so they could not be held accountable for it in a federal civil rights action such as this one or in a federal criminal prosecution for obstruction of justice and criminal conspiracy. The cumulative effect of conduct and conspiracies alleged in these causes of action shocks the conscience. The Amended Complaint alleges a conscious, deliberate, calculated plan to frame innocents for heinous, racially motivated crimes, *see id.* ¶ 443, 631-34, 638, 663-63, 933, that Defendants knew never occurred, *see id.* ¶¶ 2, 106, 321, 354, 382-85, 387, 402, 1191-93, 1200, 1215-16, 1367-68.

11

Gottlieb had time to deliberate before causing all of the harm he caused; and Gottlieb did, in fact, deliberate. Every day, for thirteen months, he had at least three straightforward choices: the choice to be honest or to cheat; the choice to tell the truth or to lie; the choice to do justice or do harm. Every day, for thirteen months, he chose to lie, cheat, and do harm. *See id.* ¶¶ 442-44, 596-601, 605, 663-64, 680-81, 765-72, 820-22, 867-70. Gottlieb asserts that Plaintiffs are really claiming a right to be free of an investigation; in reality, The Amended Complaint alleges that Gottlieb's purpose was to cause harm, and that he caused significant harm. *See id.* ¶¶ 598-601, 685, 700-02, 709-12, 917, 933-36, 960-61, 1282. His motion to dismiss the claim must be denied.

6. **The Ninth Cause Of Action States An Actionable Section 1983 Claim For Retaliation And Conspiracy In Violation Of Plaintiffs' First, Fifth, And Fourteenth Amendment Rights.**

The Amended Complaint states a § 1983 Claim against Gottlieb and other Defendants for retaliation in violation of the First Amendment. *Id.* ¶¶ 992-1001. The Fourth Circuit's § 1983 retaliation analysis is more fully developed in Plaintiffs' Opposition to Duke Motion to Dismiss. See, Pls. Opp. Br. (Duke Univ.), §II.A.6. In the interests of judicial economy, Plaintiffs incorporate that analysis here.

Briefly, Gottlieb is alleged to have participated in a § 1983 conspiracy in violation of the First, Fifth, and Fourteenth Amendments. As established in Pls. Opp. Duke Univ. Br., the First Amendment not only protects the right to speak and the right not to speak, but also the right to be free from state-sponsored retaliation for exercising those rights. *Suarez Corp. v. McGraw,* 202 F.3d 676, 685 (4th Cir. 2000); *see ACLU v. Wicomico County, Md.*, 999 F.2d 780, 785 (4th Cir. 1993) ("Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights.") (citations omitted). To state a cause of action for First Amendment retaliation, a complaint must show that (1) a

plaintiff engaged in protected First Amendment conduct or speech;[4] (2) defendants took some action that adversely affected (i.e., "chilled") Plaintiffs' First Amendment rights; and (3) a causal relationship between the protected conduct and the retaliatory actions alleged. *Constantine v. Rectors & Visitors of George Mason Univ.,* 411 F.3d 474, 499 (4th Cir. 2005) (citing *Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 686 (4th Cir. 2000)).

First, the Amended Complaint alleges Plaintiffs participated in protected conduct: the right not to speak. AC ¶¶ 411-13. Second, as to Gottlieb, the Amended Complaint sufficiently alleges retaliatory conduct by Gottlieb that would chill a person of reasonable firmness. *See id.* ¶¶ 414-18, 431-34, 435-36, 442-43, 597-601, 788-89, 933, 946-48, 959-61. Finally, the Amended Complaint alleges facts demonstrating a causal relationship between the protected activity and the retaliatory conduct in at least two ways. First, the AC establishes a temporal nexus between Plaintiffs' protected conduct and Gottlieb's retaliatory acts: the retaliatory stigmatization began one day after Gottlieb learned that Plaintiffs refused to submit to the interrogations that he, Himan, Clayton, Duke Police, and Wasiolek had planned for them. AC § XV. For example, Himan and Gottlieb began work on their sensationalized NTID Affidavit within hours of receiving that news. *Id.* ¶¶ 414-18. Second, the Amended Complaint recounts the confessions already made by Gottlieb's co-conspirators, admitting publicly—twice under oath—to the unlawful motive of the conspiracy to coerce Plaintiffs to submit to Gottlieb's interrogations by vilifying them in the eyes of millions of people around the world. By operation of law, the admissions of Gottlieb's co-conspirators are attributable to Gottlieb, just as they are attributable to all parties shown to be participants in the conspiracy. Fed. R. Evid. 801(d) (2).

The overt acts in furtherance of the conspiracy were too many to recount in this Brief: so, over the span of roughly 150 pages, the Amended Complaint documents conduct that evinces the admitted purpose of the conspiracy to coerce Plaintiffs into abdicating their right not to submit to police interrogation and their right not to be compelled to provide false incriminating evidence in any proceeding. *See* AC § XVI ("The Conspiracy to Retaliate against Plaintiffs for Exercising Constitutional Rights") and Continuing through AC § XL ("The City of Durham and Duke University Formally and Publicly Ratified Their Officers and Employees Conduct"). A survey of *examples* of the public statements made in furtherance of the conspiracy alone occupies dozens of pages in the Amended Complaint. *See* AC §§ XXI, XXIII, XXXVI. Because words on a page cannot impart the deliberate indifference evinced by Gottlieb and his co-defendants, the Amended Complaint has annexed as exhibits video footage and audio footage of just some of the conduct giving rise to this cause of action. *See* AC Ex. 15, 23 (Videos).

> **7.    The Tenth Cause Of Action States An Actionable Section 1983 Claim Against Gottlieb For Depriving Plaintiffs Of The Privileges And Immunities Afforded To North Carolina Citizens In Violation Of 42 U.S.C. § 1983.**

The Amended Complaint states an actionable § 1983 Claim for deprivation of Plaintiffs' rights to the privileges and immunities guaranteed to them as citizens of the United States by Article IV and the Fourteenth Amendment. AC ¶¶ 1002-07. The Plaintiffs establish in their Response to the City Supervisor's Motion to Dismiss, Pls. Opp. Br. ("City Super."), §II.A.3., that they have stated an actionable claim against Gottlieb for deprivations in violation of the Privileges and Immunities Clause of Article IV and the Privileges or Immunities Clause of the Fourteenth Amendment. Gottlieb's argument is nearly identical to that asserted by the City in its Brief. *Compare* Gottlieb Br. at 35-39 *with* City Br. at 29-31; and Gottlieb's arguments for dismissal of Plaintiffs'

Privileges and Immunities claim fail for the same reasons that the City's arguments do. Plaintiffs' analysis is more fully developed in Pls. Opp. City Super. Br.," §II.A(3), and, in the interests of judicial economy, Plaintiffs incorporate that analysis here. Gottlieb's motion to dismiss this claim for failure to state a constitutional violation must be denied.

### 8. The Eleventh Cause Of Action States An Actionable Section 1983 Claim Against Defendant Gottlieb For His Failure To Prevent Or Aid In Preventing The Ongoing Deprivations Of Plaintiffs' Constitutional Rights.

The Eleventh Cause of Action states a § 1983 "bystander liability" claim against Gottlieb. AC ¶¶ 1008, 1021-24. An officer may be liable under § 1983, on a theory of bystander liability, "if he (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall v. Prince George's County*, 302 F.3d 188, 202-04 (4th Cir. 2002).[5] The Amended Complaint sufficiently alleges these elements. Plaintiffs allege that Gottlieb had knowledge that his fellow officers were violating Plaintiffs' constitutional rights: Plaintiffs allege that he acted jointly and in concert with them and provide ample evidence that he played a role in orchestrating them. *See* AC ¶¶ 368-71,

---

[5] Although personal liability premised on an omission is a disfavored concept, it is well-established that an omission to act, when coupled with a duty to act, may provide a basis for liability. The concepts of bystander and supervisory liability are each premised on omissions, but there are significant differences between them. The concept of bystander liability is premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them. *Randall v. Prince George's County*, 302 F.3d 188, 202-203 (4th Cir. 2002); (citing with approval *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988) (observing that officer who stands by and does not seek to assist victim could be "tacit collaborator")).

376-81, 402, 414, 504-10, 520-22, 668-69, 676, 765. Gottlieb also had a reasonable opportunity to prevent the harm: for example, the Amended Complaint alleges that Himan and Gottlieb worked together on both the NTID and Search Warrant Affidavits, which means Gottlieb had every opportunity to stop his own participation in fabricating the NTID and McFadyen Warrant Affidavits, and, further, his superior rank over Himan provided Gottlieb with the power to stop Himan from submitting the fraudulent Affidavits. *Id.* ¶¶ 414-18, 596-600. It is obvious that Gottlieb chose not to act to prevent the harm: he personally escorted Himan to the Judge to present the applications in every instance, and, in every instance, he is alleged to be the source of many of the material fabrications and omissions. *Id.* ¶ 418. Gottlieb makes no argument for dismissal of Plaintiffs' § 1983 bystander liability claim against him on the elements of Plaintiffs' § 1983 claim. *See generally* Gottlieb Br. at 1-49.

## III.  GOTTLIEB IS NOT ENTITLED TO QUALIFIED IMMUNITY.

### A. **The Qualified Immunity Standard**

Qualified immunity does not apply to conduct that violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A right is "clearly established" if a reasonable official would have been on fair notice that the conduct at issue was unconstitutional at the time he engaged in the conduct. *Hope v. Pelzer,* 536 U.S. 730, 739 (2002). The inquiry is an objective one; it does not depend on "the subjective beliefs of the particular officer at the scene, but instead on what a hypothetical, reasonable officer would have thought in those circumstances." *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 279 (4th Cir. 2004) (quoting *Wilson v. Kittoe,* 337 F.3d 392, 402 (4th Cir. 2003)). A constitutional right is "clearly established" for qualified immunity purposes when either (1) it has been established by closely analogous case law; *see, id.,* or (2)

"when the defendants' conduct is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts that the action was unconstitutional[.]" *Clem v. Corbeau*, 284 F.3d 543, 553 (4th Cir. 2002) (internal citations omitted). A Defendant may not avail himself of qualified immunity by ignoring the detailed facts alleged in the Complaint or recasting them into broad general propositions. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition ..." *Id.* at 201. Therefore, to determine whether Gottlieb has qualified immunity at this preliminary stage, the Court must first describe Gottlieb's alleged conduct in the specific context of the circumstantial detail alleged in the Amended Complaint and in the light most favorable to the plaintiff, and then ask if pre-existing law made the unlawfulness of Gottlieb's conduct apparent. *See, e.g., W.E.T. v. Mitchell,* No. 1:06CV487, 2008 WL 151282, *4 (M.D.N.C. Jan. 10, 2008).

        **1.**      **Gottlieb Does Not Have Qualified Immunity For Fabricating Affidavits That Caused NTID Orders And Search Warrants To Issue Without Probable Cause.**

The Amended Complaint documents an extensive body of evidence that was known to Gottlieb on March 23, 2006, and proved no rape or sexual assault occurred at 610 N. Buchanan Blvd. AC ¶¶ 262-71, 291-96, 321-31, 363-81, 382-85. Further, the Amended Complaint documents the evidence known to Gottlieb that, if there was any plausible basis to believe that Mangum had been sexually assaulted, the Plaintiffs were no longer possible suspects. AC ¶¶ 363-81. All of the evidence of Mangum's fraud and Plaintiffs' innocence detailed in those pages were known to Gottlieb, Himan, Nifong, Levicy, and others who conspired to fabricate the NTID Affidavit. Gottlieb and Himan knew they had no evidence at the time. Gottlieb and Himan admitted this weeks later when told by Nifong that they would be presenting indictments in the case, Himan

responded: "with what?" *Id.* ¶ 816. Gottlieb and Himan both feared that they may obtain indictments only to be confronted with evidence that one or both of the young men could immediately prove that they had no opportunity to commit the brutal gang rape that was alleged. *Id.* ¶ 817. On the day that Gottlieb and Himan submitted the fabricated McFadyen Warrant application, their co-conspirator Mike Nifong evaluated the evidence and told both of them, "you know, we're f***ed." *Id.* ¶ 593. Gottlieb claims that these facts are alleged in order to establish a new "right to be free from criminal investigation." *See, e.g.,* Gottlieb Br. at 31, 33, 40. That is not the right Plaintiffs assert.[6] In the First and Second Causes of Action, Plaintiffs establish a violation of their right to be free from searches and seizures without probable cause. AC ¶¶ 907-14, 920-27. That right includes the right to be free from searches and seizures authorized by warrants and other legal process procured through fabricated officer affidavits. That right was established at least as early as 1978, in *Franks*, 438 U.S. 154 (1978). A "reasonable officer" would know that fabricating an affidavit by making false statements and material omissions designed to mislead a judicial official into believing probable cause and reasonable grounds exists violates clearly established rights.

### 2. Gottlieb Does Not Have Qualified Immunity For Abuse Of Process Designed To Coerce Plaintiffs Into Submitting To Interrogation.

The Amended Complaint alleges that Gottlieb, Himan, Addison, the Supervisory Defendants, and their co-conspirators retaliated against Plaintiffs for exercising their constitutional right to refuse to submit to police interrogations at the time and place Duke

---

[6] Nowhere in all the pages of the Amended Complaint to Plaintiffs allege that they have "a constitutional right to be free of investigation." The argument fails because its premise is a fabrication.

University and Durham Police demanded they do it. AC ¶¶ 414-18, 904-17, 918-28. In a "fit of pique," Gottlieb in concert with others conspired to cause Plaintiffs to be searched and seized without probable cause. *Rogers v. Pendleton*, 249 F.3d 279, 295 (4th Cir. 2001). The unlawful search and seizure alone is enough to state a clearly established violation of the Fourth Amendment. *See supra* § A.1. (discussing the First and Second Causes of Action).

The Third Cause of Action alleges that there were two unlawful purposes of the unlawful searches and seizures established in the First and Second Causes of Action: (1) to retaliate against Plaintiffs for exercising their constitutionally protected right to not to submit to interrogations Duke and Durham Defendants had planned; and (2) to coerce them into consenting to interrogations that would be unlawful in the absence of their consent. AC ¶¶ 930; 938, 929-40.

The unlawfulness of the conspiracy's retaliatory motive in subjecting Plaintiffs to unconstitutional searches and seizures was clearly established in this circuit no later than 2001. That year, the Fourth Circuit held that an officer violated plaintiff's clearly established rights when the officer seized the plaintiff without probable cause in retaliation for plaintiff's refusal to consent to a search without a warrant. *Pendleton*, 249 F.3d at 295. The circuit court was quite plain in identifying the unlawfulness of the motive: "[t]he police do not have the right to arrest citizens for refusing to consent to an illegal search." *Id.* at 295.

At the time Gottlieb undertook this course of conduct he knew that the allegations (to the extent they came from Mangum) were all demonstrably false. AC ¶¶ 321-31, 354, 363-81, 382-85. Plaintiffs refused to consent to interrogations that would be unlawful in the absence of their consent. *Id.* ¶¶ 407-12. Gottlieb in concert with others retaliated against them by intentionally making false statements and material omissions in order to

mislead a judge into finding probable cause, *id.* ¶¶ 413-18, when Gottlieb knew no rape had occurred, *see id.* ¶¶ 2, 106, 321, 333, 354, 382-85, 387, 402, 1191-93, 1200, 1215-16, 1367-68.  At the time, a reasonable officer would have known that subjecting Plaintiffs to searches and seizures in the absence of probable cause in a "fit of pique" for Plaintiffs refusal to submit to their interrogations.  *Pendleton*, 249 F.3d at 295.  The right to be free of precisely this form of official retaliation was "clearly established" in the Fourth Circuit no later than 2001. *See id*, 249 F.3d 279 (officer had no qualified immunity for seizure when effected in a "fit of pique" in retaliation for refusing to consent to a search that would have been unlawful without consent).

The second illicit purpose of the conspiracy was to coerce plaintiffs into submitting to police questioning in violation of the Plaintiffs' Fifth and Fourteenth Amendment rights.  The right to be free of psychological or physical coercion designed to elicit statements from citizens was clearly established as a Fourteenth Amendment violation no later than 1945.  *See, e.g., Darwin v. Connecticut,* 391 U.S. 346 (1968); *Beecher v. Alabama,* 389 U.S. 35, 36 (1967); *Reck v. Pate,* 367 U.S. 433, 439-40 (1961); *Leyra v. Denno,* 347 U.S. 556 (1954); *Malinski v. New York,* 324 U.S. 401(1945).  In 2003, the Supreme Court reaffirmed the clearly established right, and established a distinction in the location of the right in question.  For "the accused," the right to be free of such coercion is located in the Fifth Amendment, and for those who are not constitutionally "accused" (i.e., not charged, tried, or convicted) the right is located within the broader sweep of the substantive dimension of the Fourteenth Amendment's Due Process clause.  *Chavez v. Martinez*, 538 U.S. 760 (2003).  Therefore, by 2006, a reasonable officer in Gottlieb's position would know that his conduct violates the law.

### 3. Gottlieb Does Not Have Qualified Immunity For Causing Deprivations Of Plaintiffs' Due Process Right To § 15A-282 Reports.

Gottlieb is not entitled to qualified immunity from the claims asserted in Plaintiffs' Fourth Cause of Action because the right violated by his conduct was clearly established well before March of 2006, when he engaged in the conduct. AC ¶¶ 941-53. The authorities cited in Plaintiffs' discussion of the Fourth Cause of Action establish that Plaintiffs' Due Process right was established when the state statute created the property right Plaintiffs were deprived of through the unlawful agreement and/or understanding among Gottlieb, Himan, Clayton, Nifong, Clark, and Meehan to withhold the results Plaintiffs were entitled to by statute. The Due Process right to entitlements created by state law, including statutes such as § 15A-282, was clearly established by the Supreme Court as early as 1972. *Roth,* 408 U.S. 564. In light of the Supreme Court's and Fourth Circuit's pre-2006 decisions, a "reasonable official" in the same position would understand, in the face of § 15A-282's clear declaration of Plaintiffs' entitlement to results of tests as soon as results were available, that withholding the results of tests long after they were available, and, further, actively concealing from Plaintiffs the fact that such tests were conducted violates Plaintiffs' clearly established rights to be free of retaliatory searches and seizures. *Hope,* 536 U.S. at 741. Further, even in the absence of the foregoing authority demonstrating that the constitutional right was clearly established at the time of the violation, pre-existing law also makes the unlawfulness of Gottlieb's conduct apparent. *Meeker v. Edmundson*, 415 F.3d 317 (4th Cir. 2005) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Further, the conduct Plaintiffs allege is so patently violative of the Fourteenth Amendment right asserted here that a reasonable officer would know without guidance from the courts that the conduct was unconstitutional, and, as such, closely analogous pre-existing case law is not required. *Corbeau,* 284 F.3d at 553.

**4. Gottlieb Is Not Entitled To Qualified Immunity For Conduct Intended To Coerce Plaintiffs' Waiver Or Retaliate Against Them For Their Exercise Of First Amendment Rights.**

Gottlieb and Himan are not entitled to qualified immunity from Plaintiffs' "Stigma-Plus" claims because the right to be free from deprivations of constitutional rights or tangible interests in connection with stigmatizing statements was clearly established in the Fourth Circuit in 2006. The Fifth Cause of Action specifically relates to the fabricated affidavit made by Himan, Gottlieb, and others that they deliberately and maliciously leaked to the media and caused Plaintiffs to be subjected to searches and seizures without probable cause. AC ¶¶ 954-62; *see also id.* ¶¶ 414, 931. Gottlieb's fabricated narrative evoked a furor among people of all races, both in the Durham community and around the world. *Id.* ¶¶ 567, 637. Over the course of the three weeks leading up to the April 17th Indictments, Gottlieb and Himan's fabricated narrative was exploited by their fellow officer, Addison, and by Nifong, who falsely and publicly insisted on an almost daily basis that Plaintiffs, who are white, and 43 of their white teammates had participated in a brutal, *id.* ¶ 505, racially-motivated gang-rape of a young African-American mother of two, *id.* ¶¶ 571, 577, 901; that there was "no doubt" the account of the rape Gottlieb and Himan had fabricated in their Affidavit had occurred, *id.* ¶¶ 502, 956; that it was a "horrific crime [that] sent shock waves throughout our community," *id.* ¶ 507; that there was "really, really strong physical evidence" to prove it, *id.* ¶¶ 505, 956; that there was evidence also of a "deep racial motivation," *id.* ¶ 577; and that the lacrosse team was a "bunch" of "hooligans" who were "stonewalling" the investigation by "standing together" and "refusing to talk with investigators," *id.* ¶¶ 502, 505, 956. Even after Defendants had learned that at least four sources of male DNA were found in Mangum's rape kit, that every member of the Duke lacrosse team had been excluded with 100% certainty as a contributor of the male DNA found on the rape kit items, Hodge, in his official capacity, stood by Nifong at the April 11, 2006, NCCU

forum and told the horde of local, national, and international media that Durham Police had a strong case against the Duke lacrosse team. *Id.* ¶ 809. At the time, Hodge was acting as the Chief of Police. *Id.* ¶ 810. The Amended Complaint alleges that these false statements were made in connection with the conduct subjecting Plaintiffs to unlawful searches and seizures. *Id.* ¶¶ 500-01.

In *Buckley v. Fitzsimmons*, the Supreme Court considered a § 1983 claim against prosecutors based on false public statements alleged to have caused a deprivation of the plaintiff's constitutional rights, and held that the prosecutors lacked absolute immunity with respect to the claim. 509 U.S. 259, 262 (1993). While "consensus of cases of persuasive authority from other jurisdictions," *Owens*, 372 F.3d at 280 (internal quotations omitted), demonstrates that the right not to be deprived of one's liberty or property interests as a result of false public statements is clearly established.

In 2006, a reasonable officer in Gottlieb's position would know that it violates the law when he undertakes to draft a vilifying and purely fabricated affidavit to cause the community to explode in outrage in connection with a deprivation of Fourth Amendment rights.

### 5. Gottlieb Is Not Entitled To Qualified Immunity For Retaliating Against Plaintiffs For Exercise Of First Amendment Rights

Gottlieb is not entitled to qualified immunity from Plaintiffs' retaliation claims because the rights alleged were clearly established at the time Gottlieb engaged in the conduct. AC ¶¶ 992-1001. In 2001, the Fourth Circuit unequivocally stated: "[i]t is well established that a public official may not misuse his power to retaliate against an individual for the exercise of a valid constitutional right." *Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001) (citing *Suarez*, 202 F.3d at 685). The Fourth Circuit has also held that *Suarez*, decided in 2000, clearly established a "bright line" violation of the First

Amendment whenever retaliatory or chilling speech "include[s] a threat, coercion, or intimidation." *Blankenship v. Manchin*, 471 F.3d 523, 533 (4th Cir. 2006) (quoting *Suarez*, 202 F.3d at 688 n. 13 and identifying *Suarez* as establishing the same "bright line" rule that Defendants are alleged to have violated here). A "reasonable official" in Gottlieb's position would understand that abusing police power to retaliate against a citizen by submitting fraudulent affidavits to obtain illegal seizure orders violates Plaintiffs' clearly established rights. *Hope,* 536 U.S. at 739.

> **6.** **Gottlieb Is Not Entitled To Qualified Immunity For Discriminatory And Abusive Enforcement Of The Criminal Laws Because Plaintiffs Were "Temporary" Residents Of North Carolina.**

Gottlieb is not entitled to qualified immunity from the claims asserted in Plaintiffs' Tenth Cause of Action. AC ¶¶ 1002-07. The Plaintiffs' right to be free from discrimination and disparate treatment because of their status as "temporary" residents was "clearly established" over one hundred years ago. State action that classifies citizens based upon their recent arrival or imminent departure from a state has been subjected to the Court's most rigorous scrutiny. The Court has subjected such classifications to such scrutiny because the Privileges and Immunities Clause in Article IV and the Privileges or Immunities Clause of the Fourteenth Amendment protect rights that are fundamental to our system of ordered liberty. As documented in the Amended Complaint and detailed in Pls. Opp. Br. (City), § II.A(7), Gottlieb's conduct violated these fundamental proscriptions deliberately and, indeed, pursuant to an express policy ("Zero-Tolerance for Duke Students Policy"). The Zero-Tolerance for Duke Students Policy singled out "temporary" residents for disparate treatment, including disproportionate enforcement of the criminal laws. The discriminatory customs, practices, and policies are well documented in the Amended Complaint. *See* AC ¶¶ 107-15, 116-22, 170, 181. The Amended Complaint also details numerous specific allegations describing the Zero-

Tolerance for Duke Students Policy in practice, including but not limited to: AC ¶¶ 113-15, 117-18, 127, 166 (Identification and Description); AC ¶¶ 119-22, 138-39, 145-54 (Documentation in Practice); AC ¶¶ 117,126-33, 150-53, 160-64 (Breadth of Involvement of all Co-defendants).

The Amended Complaint alleges that Gottlieb was the preeminent violator of the fundamental constitutional right. *Id.* ¶¶ 171-76. He was the Policy's most avid proponent and the most flagrant abuser of the unlawful license it gave. The ordeal described in the Amended Complaint is what the Framers sought to avoid when they infused the Constitution with the notion of the dual citizenship of every American, who would, at all times, be a citizen of the United States and a citizen of the state wherein he chooses to reside. To be a citizen of the United States means—exactly—the right to be free from what the Zero-Tolerance for Duke Students Policy codified. The right identified in this Cause of Action is so worn into the fabric of our constitutional order that it goes without saying that it was clearly well-established before the year 2006. Therefore, Gottlieb is not entitled to qualified immunity from Plaintiffs' Tenth Cause of Action.

### 7. Gottlieb Does Not Have Qualified Immunity For Engaging In Conduct That Shocks The Conscience.

Defendant does not have qualified immunity for Plaintiffs' § 1983 Fourteenth Amendment substantive due process claims. The conduct alleged in the Sixth, Seventh, and Fifteenth Causes of Action shocks the conscience. The Causes of Action describe the deliberate, calculated, planned and orchestrated scheme to convict innocents by manufacturing evidence of guilt and concealing evidence of innocence. Like all conduct that shocks the conscience, Gottlieb's conduct in furtherance of the conspiracies alleged in the AC is not simply intentional, it is "intended to injure in some way unjustifiable by any government interest." *Hawkins v. Freeman*, 195 F. 3d 732, 742 (4th Cir. 1999). Like

any other violation of a federal right, conduct that shocks the conscience and violates clearly established rights is not entitled to qualified immunity. *Martinez v. City of Oxnard*, 337 F.3d 1091, 1092 (9th Cir. 2003). *See also Butler v. Rio Rancho Public Schs. Bd. of Educ.*, 341 F.3d 1197, 1201 (10th Cir. 2003). At the time Defendant engaged in the conduct, a reasonable official/officer in Defendant's position would have known that his conduct violated clearly established rights.

> **8.    Gottlieb Does Not Have Qualified Immunity For Failing To Intervene To Prevent His Fellow Officers From Violating Plaintiffs' Constitutional Rights In His Presence Or Within His Knowledge.**

Gottlieb is not entitled to qualified immunity for Plaintiff's § 1983 Bystander Officer Claim because a police officer's obligation to act to protect a citizen from ongoing constitutional violations occurring in their presence or within their knowledge was clearly established well before the conduct alleged in the Amended Complaint, no later than 2002. Four years before Gottlieb engaged in the conduct alleged, the Fourth Circuit clearly established that all law enforcement officers have an affirmative duty to act to intervene when they are aware that a fellow officer is conspiring to violate the constitutional rights of any person. *Randall,* 302 F.3d at 202-04. The Fourth Circuit observed in *Randall* that it had not yet "definitively assessed the circumstances under which bystander liability might attach to a law officer," and so *Randall* undertook to clearly define the scope and contours of officer bystander liability. Prior to *Randall*, the Fourth Circuit indicated that bystander liability would be recognized in a proper case. *Jackson v. Pantazes,* 810 F.2d 426, 430 (4th Cir. 1987). Thus, in *Randall*, the Fourth Circuit recognized the cause of action and defined with great clarity the circumstances in which officers may be subjected to bystander liability under § 1983. 302 F.3d at 203. Bystander liability, its elements and contours were therefore "clearly established" in 2002. Gottlieb's conduct, as alleged in the Amended Complaint falls squarely within the

26

rule established four years prior in *Randall*. Directly relevant to the allegations in the Amended Complaint, *Randall* specifically held that bystander liability attaches when an officer fails to intervene to stop a state actor from executing an unconstitutional search. *Id*. at 203-04; *see Jackson*, 810 F.2d at 430 (observing same). The Fourth Circuit's bystander officer rule is informed, appropriately, by the common law rules of accomplice liability: this circuit calls the bystander officer "a tacit collaborator" in the principal's wrongdoing. *Randall,* 302 F.3d at 203 (citing with approval the Second Circuit's use of that label in *O'Neill v. Krzeminski,* 839 F.2d 9, 11-12 (2nd Cir. 1988)). A "reasonable official" in the same position would understand that he is violating clearly established law by failing to act to thwart multiple conspiracies to fabricate SANE evidence, fabricate DNA evidence, fabricate police statements and reports, conceal exonerating evidence to which a citizen has a statutory entitlement, and to procure orders authorizing searches and seizures with fabricated affidavits, he is violating Plaintiffs' clearly established right to the aid of an officer who knows his fellow officers are violating Plaintiffs' constitutional rights. *Hope,* 536 U.S. at 739.

IV. THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS AGAINST GOTTLIEB FOR PARTICIPATION IN CIVIL RIGHTS CONSPIRACIES.

A. **Conspiracies In Violation Of 42 U.S.C. § 1983.**

The Fifteenth Cause of Action states a §1983 claim against all Defendants for unlawful conspiracies that deprived Plaintiffs of their civil rights.[7] AC ¶ 1147-55. The Fifteenth Cause of Action alleges a broad conspiracy, agreement, or understanding shared by all named Defendants in this action. The common objective shared by all in this

---

[7] To allege a cause of action under 42 U.S.C. § 1983 for conspiracy, a plaintiff must allege facts that show that two or more defendants "acted jointly [and] in concert and that some overt act was done in furtherance of the conspiracy" that resulted in the deprivation of a federal right. *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996).

unifying conspiracy alleged was to unlawfully force the wrongful indictment, prosecution, and, ultimately, incarceration of the Plaintiffs, as the principals or accomplices in a horrific, racially motivated gang-rape, which all Defendants in this action knew or were deliberately indifferent to the likelihood that it did not occur. AC ¶¶ 1149, 1151. The conduct giving rise to the Fifteenth Cause of Action is alleged in the Fifteenth Cause of Action by incorporation of the First through Eleventh Causes of Action ("the Predicate Violations"). AC ¶¶ 1147, 1150 (A)-(O). The required showing of constitutional harm done in furtherance of the conspiracy is met by the constitutional violations in the First through Eleventh Causes of Action. AC ¶ 1147. The Predicate Violations were done in furtherance of the unifying common objective and plan of the larger Conspiracy to Convict. AC ¶ 1150. In addition, the predicate elements of causation, state action (with respect to the private party and private entity Defendants), and the Defendants status as a § 1983 "person" Are all established in the Predicate Violations.

The Amended Complaint alleges the combined and concerted conduct of so many pursuant to a preordained plan. AC ¶ 1152. The plan was "made in quiet deliberation and discussion" among officials with final policymaking authority with respect to the matters described in the Amended Complaint. *Id.* The acts and omissions described in the Amended Complaint evince a malicious and corrupt intent to harm the Plaintiffs. AC ¶¶ 1153; 1147-55. The Predicate Violations a include the intentional fabrication of affidavits to procure legal process to seize and search Plaintiffs; to abuse that unlawfully obtained process to vilify Plaintiffs in the eyes of millions, and to coerce false testimony from the Plaintiffs through those extortionate abuses. AC ¶¶ 1150 (A)-(O). The cumulative effect of the concerted wrongdoing among so many is so egregious that it "shocks the conscience" in violation of the Fourteenth Amendment as to shock the contemporary conscience. AC ¶ 1153. The Fifteenth Cause of Action alleges that Defendants violated § 1983 by conspiring to deprive Plaintiffs of their rights under the

Fourth and Fourteenth Amendments, including the substantive Due Process protections of the Fourteenth Amendment, and, in furtherance of the conspiracies, committing overt acts that caused actual violations of Plaintiffs' rights.  AC ¶ 1150 (A)-(O).  Appropriately, Gottlieb makes no argument for dismissal of conspiracies in violation § 1983 claim on the merits.

    B. **The Amended Complaint States Actionable Claims For Conspiracy In Violation Of 42 U.S.C. § 1985.**

The Sixteenth Cause of Action alleges Four Conspiracies in violation of § 1985(2) and (3).  AC ¶¶ 1156-69.

To state a cause of action under 42 U.S.C. § 1985(2), a plaintiff must allege that "two or more persons conspire[d] for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws...." 42 U.S.C. § 1985(2).

The Sixteenth Cause of Action alleges that Addison, Michael, Nifong, Gottlieb, Himan, Wilson, Steel, the DNASI Defendants, the Crisis Management Team Defendants, the SANE Defendants, Graves, Dean, the Duke Police Supervising Defendants, the Durham Police Supervising Defendants, the City of Durham, and Duke University conspired to impede or obstruct the due course of justice in North Carolina generally with the intent to deny Plaintiffs the equal protection of the laws in violation of 1985(2).  *Id.* ¶¶ 1156-59.  Defendants, motivated by race-based invidiously discriminatory motives, violated this statute by conspiring to deprive Plaintiffs of their federally secured rights as alleged elsewhere in the First through Eleventh Causes of Action and by fomenting race-based animus within the Plaintiffs' community. *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).  Additionally, Sixteenth cause of action alleges that Nifong, Gottlieb, Himan, Clayton, Addison, Michael, the Durham Police Supervising Defendants, the SANE Defendants, the City of Durham, and Duke University conspired to impede or obstruct

the due course of justice in North Carolina generally with the intent to intimidate witnesses, including the Plaintiffs, elicit false statements and testimony from Plaintiffs and other witnesses, and to prevent them from testifying truthfully to matters with the general objective of securing Plaintiffs' convictions as principals or accessories in state court for crimes they knew did not happen. AC ¶ 1161.

To establish a violation of 42 U.S.C. § 1985(3), a plaintiff must allege that "two or more persons in any State or Territory conspire…(1)for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (2)or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws." 42 U.S.C. § 1985(3).

The Sixteenth Cause of Action alleges that, in violation of 42 U.S.C. § 1985(3) (cl.2), Nifong, Gottleib, Himan, Clayton, Addison, Michael, the Durham Police Supervising Defendants, Steel, the Crisis Management Team Defendants, the Duke Police Supervising Defendants, the SANE Defendants, the City of Durham and Duke University, conspired with others to deprive Plaintiffs of their federal rights with the purpose of targeting "temporary residents" for disparate treatment and abusive enforcement of the criminal laws depriving Plaintiffs of the equal privileges or immunities of national citizenship under the laws thereby violating this statute by conspiring to deprive Plaintiffs of their federally secured rights. AC ¶¶ 1156-1169; *Phillips v. Mabe*, 367 F. Supp. 2d 861, 873 (M.D.N.C. 2005). Plaintiffs also allege in the Sixteenth Cause of Action an independent §1985(3) Claim arising out of animus directed to Plaintiffs status as "temporary residents" and, on that basis, subject them to discriminatory and abusive police tactics, thereby imposing "disabilities of state

citizenship" in deprivation of their equal protection and immunities under laws. AC ¶¶ 1164-65.

C.    **The Amended Complaint States A Violation Of 42 U.S.C. §1986.**

Plaintiffs' Seventeenth Cause of Action (the "§ 1986 Claims") alleges that the SANE Defendants violated 42 U.S.C. § 1986 by refusing or neglecting to prevent or aid in the preventing of the § 1985 Conspiracies (alleged in the Sixteenth Cause of Action), despite having the power and knowledge to do so. The Plaintiffs have stated actionable § 1986 Claims against Gottlieb, having alleged the predicate § 1985 Conspiracies in the Sixteenth Cause of Action, as well as the § 1985 elements and facts from with they may be inferred. AC ¶¶ 1170-88. Defendant Gottlieb argues that Plaintiffs' § 1986 Claims should be dismissed because, they contend, there is no predicate § 1985 conspiracy. The argument fails because its premise is false.[8]    Defendants' motion to dismiss should be denied.

D.    **The § 1985 Claims Allege Racial Animus Of Two Types**

Gottlieb argues for dismissal of the Sixteenth Cause of Action on the grounds that the AC does not allege he was motivated by racial animus. Gottlieb Br. at 39. However,

---

[8] *See* AC ¶ 418 (explicitly attributing many of the sensationalized false claims in the NTID Affidavit to Gottlieb specifically). The Plaintiffs were certainly "ascertained" by millions of people as "racist rapists" for thirteen months; they were ascertained by those who made death threats to them and their families; they were "ascertained" by local and national media; and they continue to be "ascertained" today. *See* AC ¶¶ 501-02, 505-511, 516, 518-22, 529-35, 544-55, 577-78, 584-87, 699-702, 708-09, 852. They were "ascertainable" because of Gottlieb's fabrication that all lacrosse players attended the party and only lacrosse players attended the party.

the AC does not need to show everyone was so motivated; only the person indicated must act with such motivation furtherance of the conspiracy.

### 1.    Section 1985 Prohibits Invidious Animus Against Any Race.

Several Defendants have asserted that only members of a "minority" or "traditionally disadvantaged" group may avail themselves of the protections of § 1985. At step one, by its terms, the statute applies to any person or class of person. 42 U.S.C. § 1985(3) (2000). Consistent with the statutory language, we have found no cases in this circuit that held that members of other races have no standing to bring a § 1985(3) claim That is consistent with the broader equal protection principles of the statute itself. Further, courts, including this one, have consistently rejected the argument. *See, e.g., Mabe*, 367 F. Supp. 2d at 873-74 (Contention that Plaintiffs "cannot rely on §1985(3) because he is not a minority is without merit."); *Waller v. Butkovich*, 605 F. Supp. 1137, 1144-45 (M.D.N.C. 1985) (rejecting the assertion that § 1985(3) requires the alleged animus be directed at a traditionally disadvantaged group). In addition, this Court and others have expressly permitted white plaintiffs to bring claims under § 1985 in response to animus against them based on their race or even their perceived racist beliefs. *See Waller*, 605 F. Supp. 1137 The Fourth Circuit's decision in *Harrison v. KVAT Food Management*, urged by many Defendants held only that "victims of purely political conspiracies" do not have standing on that basis to bring a § 1985(3) claim. 766 F.2d 155, 161 (4th Cir. 1985). *Harrison*'s passing mention of "blacks" was merely a counterexample invoked to explain the difference between a victim of political conspiracy and a member of a "race or class" that is protected by § 1985(3). *See id.*

### 2.    Defendants Were Motivated By, Fomented, And Took Advantage Of Racial Animus.

Civil rights conspiracies under § 1985(2) and § 1985(3) require proof of invidious animus based on race or other protected status. *See Bray v. Alexandria Women's Health*

*Clinic*, 506 U.S. 263, 340 (1993). Defendants argue (1) that Plaintiffs have failed to allege membership in any such class; (2) that Plaintiffs are alleging that "Duke students" or "Duke lacrosse players" are a protected class; or (3) that Plaintiffs have failed to allege animus at all. Each of these arguments is incorrect.

Plaintiffs allege that Defendants' acts in furtherance of the § 1985 conspiracies were motivated by invidious animus based on race and were intended to foment and take advantage of racial animus against Plaintiffs. AC ¶ 1375. Race—any race—is an established protected classification. *See* § II.E.(1). The Amended Complaint is replete with details from which to infer Defendants' invidious racial motives. *See, e.g*.,:

- The Racist Dimension of The Conspiracy To Convict. AC ¶¶ 566-90.

- Gottlieb's previous history of targeting Duke Students due to their outsider status. AC ¶¶ 145-187

- Spoilation of DECC Evidence. AC ¶¶ 568-69.

- Nifong's Acts in Furtherance of the Conspiracy to Fabricate. AC ¶¶ 577-80.

- Brodhead's Acts in Furtherance of the Conspiracy to Fabricate the "Racist" dimension to Mangum's False Rape and the Duke Faculty's Acts in Furtherance of the Conspiracy. AC ¶¶ 581-90.

- Nifong's Public Acts and Statements, AC ¶¶ 502-03.

- Addison Publicly Stigmatized the Plaintiffs, AC ¶¶ 504-506.

- The Established Policy or Custom of Disseminating Defamatory Posters in Potentially High-Profile Cases, AC ¶ 525-27.

- Duke Officials Publicly Stigmatized the Plaintiffs AC ¶¶ 528-35.

- Duke University's Clergy Publicly Stigmatize the Plaintiffs AC ¶ 554.

- Duke University and City of Durham Officials with Final Policymaking Authority Ratified and Condoned the Foregoing Faculty and Employee Statements AC ¶¶ 555-558.

*See also,* AC ¶¶ 500-06; 544-59; 568-69; 570-76; 577-90; 1375. These allegations are based on fact, not "legal conclusion." *See Green v. Maroules*, 211 F. App'x 159, 162-63 (4th Cir. 2006) (holding that plaintiff who alleged she was target of racial profiling and conspiracy to falsely arrest her alleged racial animus and properly stated a claim under § 1985).

Defendants uniformly assert that "invidious racial animus" is not satisfied by deliberate acts designed to "create racial tensions or take advantage of racial animus on the part of others in order to achieve some other objective." City Br. at 32, citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). That is not the holding of *Griffin* which defined the "racial animus" element to require that the alleged "conspiracy . . . must aim at a deprivation of the equal enjoyment of rights secured by the law to all."

There is powerful guidance on this point also from the treatment given to the requirement of all actions brought under 42 U.S.C. § 1982[9] that the plaintiff prove invidious animus based on race or class. With respect to fomenting racial animus "regardless of defendants' ultimate motivation, the fact that they deliberately stirred up and harnessed the racial animosity of others to serve their own ends is sufficient to find a violation." *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc*., 41 F.3d 1190, 1194 (7th Cir. 1994); *see also Clark v. Universal Builders, Inc.*, 501 F.2d 324, 331 (7th Cir. 1974) (defendants cannot escape liability for acting with racial animus in violation of § 1982 by "proclaiming that they merely took advantage of a discriminatory situation created by others"); *Ortega v. Merit Ins. Co.*, 433 F. Supp. 135, 140-41 (N.D. Ill. 1977) (quoting *Clark*, 501 F.3d at 331). Gottlieb in

_____

[9] 42 U.S.C. § 1982 was enacted pursuant to Congress' Thirteenth Amendment authority; it secures to all citizens the right, enforceable against private and public defendants, to "inherit, purchase, lease, sell, hold and convey real and personal property.'

concert with others "deliberately stirred up and harnessed racial animosity" to serve selfish aims. AC ¶ 5. Defendants' motion to dismiss should be denied.

The remaining causes of action asserted against Gottlieb are alleged under North Carolina law. They include claims for Common Law Obstruction of Justice and Conspiracy, Common Law Abuse of Process and Conspiracy, Intentional Infliction of Emotional Distress and Conspiracy, Aiding or Abetting the Breach of a Fiduciary Duty, Negligence, and Negligent Infliction of Emotional Distress.

### E. Public Official Immunity Does Not Bar Plaintiffs' State Law Claims Alleging Intentional Conduct.

As a threshold issue, Plaintiffs agree that public official immunity bars negligence claims alleged against the Durham Police Defendants in their individual capacities. However, public official immunity will not shield Gottlieb from Plaintiffs' claims alleging intentional torts (the Eighteenth through the Nineteenth Causes of Action). AC ¶¶ 1189-1212. Public official immunity does not protect public officials when they act with "malice" or whose conduct is intended to be prejudicial or injurious to the Plaintiff. David A. Logan & Wayne A. Logan, *North Carolina Torts* § 107 (2d Ed. 2004); *Moore v. Evans*, 476 S.E.2d 415, 421 (N.C. Ct. App. 1996); *Bailey v. Kennedy*, 349 F.3d 731, 742 (4th Cir. 2003). Additionally, Public Official immunity from negligence suits does not extend to an official, in his official capacity, when the governmental employer "has waived immunity by the purchase of liability insurance." *Thompson v. Town of Dallas*, 543 S.E.2d 901, 905 (N.C. Ct. App. 2001). Plaintiffs have asserted that the City of Durham is part of a municipal risk pool scheme the extent of which will not be known until Discovery is conducted. AC ¶ 48.

Gottlieb does not contend that Plaintiffs fail to allege Gottlieb's malice. *See* Gottlieb Br. at 40-41. His contention is without merit. The Amended Complaint is

replete with allegations of conduct that evinces Gottlieb's malice or intent to be prejudicial or injurious to the Plaintiffs. *See* AC ¶¶ 3, 414-44, 505-11, 518-22, 570-76, 596-601, 605-10, 629-30, 663-64, 678-80, 754-57, 765-68, 785-89, 865. It is difficult to find a page that does not allege at least one fact that evinces Gottlieb's or his co-conspirators' malice or intent to be prejudicial or injurious to the Plaintiffs. *See generally* A.C. at 154–282.[10]; *see also* §§ XXI ("The Conspiracy To Convict By Stigmatization In Retaliation For Plaintiffs' Exercise Of Their Constitutional Rights"), XXIII ("The Racist Dimension Of The Conspiracy To convict"), XXIV ("The Conspiracy To Abuse The Warrant Process"), XXV ("The DNA Conspiracy"), XXVII ("Nifong, Himan, And Gottlieb Conspired To Withhold DNA Test Results That Proved Mangum's Claims Were A Fraud In Violation Of N.C.G.S. §15A-282"), XXX ("The Conspiracy To Fabricate Identification Evidence"). In the face of these allegations, Gottlieb brazenly attempts to explain his gross misconduct as no different than the conduct of the deputy sheriff in *Marlowe v. Piner*, 458 S.E.2d 220 (N.C. Ct. App. 1995), who "negligently believed he had probable cause to arrest the plaintiffs." *Id.* at 223. The argument is for the jury. And it disregards the settled rule that Gottlieb must take the facts as alleged; in this case, the allegation is that Gottlieb knew he did not have probable cause. AC ¶¶ 910-12, 923-24**.** The facts alleged in the Amended Complaint evince malice and the intent to injure the Plaintiffs. *See* AC ¶¶ 415-16, 596-97.

---

[10] *See also* §§: XXI ("The Conspiracy To Convict By Stigmatization In Retaliation For Plaintiffs' Exercise Of Their Constitutional Rights"), XXIII ("The Racist Dimension Of The Conspiracy To convict"), XXIV ("The Conspiracy To Abuse The Warrant Process"), XXV ("The DNA Conspiracy"), XXVII ("Nifong, Himan, And Gottlieb Conspired To Withhold DNA Test Results That Proved Mangum's Claims Were A Fraud In Violation Of N.C.G.S. §15A-282"), XXX ("The Conspiracy To Fabricate Identification Evidence").

Further, malice may be inferred from conduct that violates a clearly established right, as a matter of law. *See Bailey v. Kennedy*, 349 F.3d at 742 (officers who violate clearly established rights have no public official immunity "because an officer acts with malice when he does that which a man of reasonable intelligence would know to be contrary to his duty."); *Moore v. Evans*, 476 S.E.2d at 421-22 (denying public official immunity where genuine issue existed as to whether officer had probable cause). Therefore, the Durham Police Defendants' assertions of public official immunity should be granted only with respect to Plaintiffs' negligence claims asserted against them in their individual capacities.

F.     **The Amended Complaint States A Civil Conspiracy Claim Against Defendant Gottlieb.**

The Eighteenth, Nineteenth, and Twentieth Causes of Action state an actionable civil conspiracy claim against Defendant Gottlieb. AC ¶¶ 1189-1202, 1203-12, 1213- 22, 1235-48. A cause of action for civil conspiracy arises whenever an injury is caused by "a wrongful act … committed by one or more of the conspirators pursuant to the common scheme and in furtherance of the objective." *State ex rel. Cooper v. Ridgeway Brands Mfg.,* No. 408A07, 2008 WL 3915186 *9 (N.C. Aug. 27, 2008) (quoting *Henry v. Deen,* 310 S.E.2d 326, 334 (N.C. 1984)). To state a claim for civil conspiracy a plaintiff must allege (1) a conspiracy, (2) wrongful acts done by certain of the alleged conspirators in furtherance of that conspiracy, and (3) injury as a result of that conspiracy. *Id.*; *see Muse v. Morrison,* 66 S.E.2d 783, 785 (N.C. 1951). A conspiracy, under North Carolina law, is an agreement, express or implied, between two or more persons to commit an unlawful act or to do a lawful act in an unlawful manner. *See Evans v. Star GMC Sales & Service, Inc.*, 151 S.E.2d 69, 71 (N.C. 1966). Where a conspiracy is established, all conspirators are jointly and severally liable for acts done in furtherance of the agreement by any one of them. *See Hafner v. Brown,* 983 F.2d 570, 577 & n.6 (4th Cir. 1992).

The Amended Complaint alleges sufficient facts showing Gottlieb's participation in (1) multiple conspiracies; (2) wrongful acts done in furtherance of them; and (3) injury caused by those acts in furtherance of them, including but not limited to: an overarching conspiracy to stigmatize the Plaintiffs in conjunction with multiple deprivations of Plaintiffs' significant interests for purposes of depriving Plaintiffs of a fair, impartial jury; several conspiracies to conceal exculpatory, tangible, testimonial, and forensic evidence, several conspiracies to manufacture inculpatory tangible, testimonial, and forensic evidence; conspiracies to abuse multiple forms of legal process; conspiracies to invade the Plaintiffs' federally protected private financial, banking, communications, and educational records and accounts without legal cause, and an overarching conspiracy not to intervene among all Defendants who had the power to prevent the wrongs conspired to be done to Plaintiffs over the course of 13 months, AC ¶¶ 640, 1114; in which Defendant Gottlieb participated, *id*. ¶¶ 414-18, 596-601, 605, 629-30, 663-64, 676-80, 746-57, 765-66, 785-89, 853-71; and (2) numerous acts of Defendant Gottlieb's co-conspirators in furtherance of the conspiracy, *see id.* ¶¶ 456-58, 468-75, 501-24, 552-58, 566-76, 827-51, that caused injury to Plaintiffs, *see id.* ¶¶ 693-702, 706-21, 865, 852, 916-17, 927-28, 939-40, 1023-24, 1221-22, 1277-82. Taken together, these allegations are sufficient to withstand a motion to dismiss. Gottlieb contends that Plaintiffs will not be able make good the allegations of the conspiracies alleged. However, that contention "is of no concern now." *Ridgeway Brands Mfg.,* 2008 WL 3915186 at *10 (citing *Muse*, 66 S.E.2d at 785). Plaintiffs' allegations entitle them to an opportunity to do so—their day in court. Therefore, Defendant Gottlieb's Motion to Dismiss Plaintiffs civil conspiracy claims must be denied.

G.     **The Amended Complaint States A Common Law Obstruction Of Justice Claim Against Defendant Gottlieb.**

The Eighteenth Cause of Action states an actionable claim for Common Law Obstruction of Justice AC ¶¶ 1189-1202.  To state an obstruction of justice claim under North Carolina law, a plaintiff must allege "any act which prevents, obstructs, impedes or hinders public or legal justice." *Jones v. City of Durham*, 643 S.E.2d 631, 633 (N.C. Ct. App. 2007) (quoting *Broughton v. McClatchy Newspapers, Inc.,* 588 S.E.2d 20, 30 (N.C. Ct. App. 2003)).  The Amended Complaint alleges that Defendant Gottlieb "prevented, obstructed, impeded, or hindered" public justice in North Carolina by, among other things:

- Conspiring with Nifong, Himan, and Levicy to deliberately omit and misrepresent material facts for purposes of misleading a judicial official into issuing an NTID Order directed to all three Plaintiffs and a Search Warrant directed to McFadyen. AC ¶¶ 414-45; 1189-1201; *see also supra* § III.9.

- Conspiring with Duke Police Defendants to fabricate Duke Police reports and witness statements that deliberately omitted and misrepresented material facts to prop up Mangum's false accusations, to conceal evidence that Duke employees who encountered Mangum at the hospital on March 14th could not—and did not—believe her claims, to conceal evidence of her severe psychological instability and, at the same time, to fabricate the testimony of Duke Police officers, and to corroborate Mangum's claim of a sexual assault that Gottlieb and his co-defendants knew never happened.  All of this was done in pursuit of ensuring a case against Plaintiffs and/or their teammates would be brought to trial in spite of the defendants' knowledge that no sexual assault occurred.  AC ¶¶ 1192; 466-77.

- Conspiring with the Duke SANE Defendants, Steel, the CMT Defendants, Himan, Wilson, and Nifong, to fabricate forensic medical reports and records of Crystal Mangum's SAE conducted at DUHS.  AC ¶¶ 1193, 779-99 (§ XXXIV, "The SANE Conspiracy").

- Conspiring with the DNASI Defendants, Himan, and Nifong to deprive Plaintiffs of copies of reports of exonerating DNA test results that existed on or before April

10, 2006 to which Plaintiffs had a statutory right, which conclusively exonerated the Plaintiffs, and which exposed the conspiracy to manufacture a criminal case against the Plaintiffs, as principals or accessories, to a crime they knew never occurred. AC ¶ ¶ 1194, 617-626, 746-779, 800-803. *See generally* §§ XVI and XXXIII ("The DNA Conspiracy" and "The Conspiracy to Conceal DNASI's Test Results").

- Conspiring with Himan, Nifong, Baker, and other members of the Joint Command to destroy, to not maintain notes (including, but not limited to notes of all conversations and meetings in which co-conspirators participated), or to delete material from reports "to the point where [they] didn't say anything" for the purpose of depriving Plaintiffs of evidence that could be used to prove the claims asserted in this action. AC ¶¶ 629-30, 1189-1202.

While there is more, AC ¶¶ 1189-1202, any one of the foregoing is sufficient to state a common law obstruction of justice claim. *See, e.g., Jones v. City of Durham*, 643 S.E.2d 631 (N.C. Ct. App. 2007). *See Broughton v. McClatchy Newspapers, Inc.,* 588 S.E.2d 20, 30 (N.C. Ct. App. 2003); *Grant v. High Point Reg'l Health Sys.*, 645 S.E.2d 851, 853-56 (N.C. Ct. App. 2007); *see also Reed v. Buckeye Fire Equip.*, 241 F. App'x 917, 928 (4th Cir. 2007) (per curiam) (holding that threat to reveal embarrassing letter if plaintiff proceeded with a lawsuit was obstruction); *Burgess v. Busby*, 544 S.E.2d 4, 13 (N.C. Ct. App. 2001) (holding that alerting health care providers to jurors' identities after their verdict was obstruction). [11]

---

[11] Further, there is no requirement that Plaintiff allege the Defendant succeeded in obstructing justice. *Reed v. Buckeye Fire Equip.*, 241 F. App'x 917, 928 (4th Cir. 2007) (per curiam) (citing *Burgess v. Busby*, 544 S.E.2d 4, 12-13 (N.C. Ct. App. 2001); *Kivett*, 309 S.E.2d at 462; *Blue Dolphin Commc'ns*, 226 F. Supp. 2d at 794; *State v. Rogers*, 315 S.E.2d 492, 512-13 (N.C. Ct. App. 1984)).

Nevertheless, Gottlieb argues that the cause of action should be dismissed because no criminal trial ever materialized, so Plaintiffs lack standing to bring a claim for obstruction of justice. Gottlieb Br. at 40. However, the settled law of North Carolina contradicts him. There is no requirement that Plaintiff show that a lawsuit was pending against Plaintiff at the time a defendant is alleged to obstruct justice. *Jackson v. Blue Dolphin Commc'ns of N.C.*, 226 F.Supp.2d 785, 794-95 (W.D.N.C. 2002). Future or past litigation may be the subject of an obstruction claim. *Id*. at 794. A plaintiff need not be in the position of a defendant or plaintiff in the underlying action; even a former juror may state a claim for obstruction of justice arising out of his or her jury service in a prior civil action. *Burgess v. Busby,* 544 S.E.2d 4 (N.C. Ct. App. 2001). Nor must there be a pending action. In *Jackson,* the Plaintiff alleged that the Defendants attempted to force her to sign a false witness affidavit that was to be used in a *potential* civil suit to be brought, if at all, by one of Plaintiff's colleagues. 226 F.Supp.2d at 794. After Plaintiff refused to sign the false affidavit, she was terminated. *Id.* Nor must the conduct be shown to successfully obstruct justice; it is sufficient to show that a defendant attempted to impede the legal justice system. *Id.* at 794-95. North Carolina courts have recognized a cause of action where the acts alleged to constitute obstruction of justice occurred *after* a trial concluded. *Burgess,* 544 S.E.2d at 6-7 (the defendant physician retaliated against jurors who had previously found him liable for medical malpractice by sending a letter to his colleagues that listed the jurors' names).

Gottlieb goes on to assert that Plaintiffs are really claiming a right to be free of an investigation. This is not the case, Plaintiffs assert that Gottleib and his co-defendants conspired to impeded the justice system and create a case in which Plaintiffs would either be witness or accomplices. Gottlieb has no other arguments for dismissal of this cause of action. His motion to dismiss Plaintiffs' obstruction of justice claim must be denied.

H. **The Amended Complaint States A Common Law Abuse Of Process Claim Against Defendant Gottlieb.**

The Amended Complaint states an actionable claim for Common Law Abuse of Process against Gottlieb. AC ¶¶ 1203-12. To state a claim for Abuse of Process, a complaint must allege (1) a willful act by the defendant, (2) done with bad intent or ulterior motive, (3) after valid process has been issued at defendant's behest, (4) whereby the defendant attempts to use the process to accomplish a purpose for which it was not intended. *Carson v. Moody*, 394 S.E.2d 194 (N.C. Ct. App. 1990). The claim arises from "the malicious perversion of a legally issued process whereby a result not properly obtainable under it is [intended] to be secured." *Stanback v. Stanback*, 254 S.E.2d 611, 624 (N.C. 1979) (alteration not in original) (citing *Barnette v. Woody*, 88 S.E.2d 223 (N.C. 1955)); W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 121 (5th ed. 1984) ("The gist of the tort is the misuse of process for an end other than that which it was designed to accomplish"). The Amended Complaint states facts sufficient to allege the elements of the claim, AC ¶¶ 1203-12, and Gottlieb makes no argument for dismissal of this Cause of Action other than the fact that a bad motive does not convert a legitimate action into a tort. *See generally* Gottlieb Br. at 41-42. Gottlieb premises this argument on the notion that District Attorney Saaks requested the NTID, Plaintiffs do not make this assertion, but in fact assert that Gottleib and Himan created a new NTID affidavit on their own initiative. *See generally* AC §§ XV-XVI. At this stage in the proceedings, Defendants must take Plaintiffs facts as true and cannot assert new, unsubstantiated allegations. Gottlieb's claim to public official immunity does not shield him from this claim because the Amended Complaint alleges Gottlieb acted with malice and malice may also be inferred from the conduct giving rise to this cause of action against Gottlieb. AC ¶¶ 1203-12; *see supra* § V.A. Thus, this claim may not be dismissed.

I.    **The Amended Complaint States An Intentional Infliction Of Emotional Distress Claim Against Defendant Gottlieb.**

The Twentieth Cause of Action states an actionable claim for Intentional Infliction of Emotional Distress ("IIED") and conspiracy.  AC ¶¶ 1213-22.  To state a claim for IIED under North Carolina law, a plaintiff must allege: "(1) extreme and outrageous conduct by the defendant; (2) which is intended to and does in fact cause (3) severe emotional distress."  *W.E.T. v. Mitchell,* No. 1:06CV487, 2007 WL 271294, at *8 (M.D.N.C. 2007) (citing *Harris v. County of Forsyth*, 921 F. Supp. 325, 335-36 (M.D.N.C. 1996)).  "A claim may also exist where the defendant's actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress." *Id. at *8 (citing to *Hogan v. Forsyth Country Club Co.*, 340 S.E.2d 116, 119-20 (N.C. Ct. App. 1986)).

Gottlieb does not dispute that the Amended Complaint sufficiently alleges the second and third elements.  He argues that the cause of action should be dismissed because, he contends, his conduct was not sufficiently "outrageous" or "atrocious." Gottlieb Br. at 42.  "It is a question of law for the court to determine, from the materials before it, whether the conduct complained of may be reasonably found to be sufficiently outrageous as to permit recovery." *W.E.T.,* 2007 WL 271294, at *8 (citing *Beck v. City of Durham*, 573 S.E.2d 183, 191 (N.C. Ct. App. 2002)).  Gottlieb argues that his conduct— as alleged—was not sufficiently "outrageous" to state the first element of the claim. Gottlieb Br. 42.  To support his contention, Gottlieb carefully selects just two allegations from the Amended Complaint, recasts them, and concludes that his conduct is not outrageous as to these plaintiffs because they were not implicated in it.  Gottlieb Br. 43. Gottlieb contends specifically that the "manufactured medical evidence" did not implicate any of the plaintiffs; the DNA test results did not implicate any of the plaintiffs; the DNA test results were provided to Plaintiffs counsel on April 10, 2006; and not one

of the plaintiffs was identified by Mangum.  *Id*. at 43.  All four of Gottlieb's contentions are all demonstrably false (yes, even the last contention), and relevant to this motion at war with the Plaintiffs' allegations.  Gottlieb's arguments merely raise fact issues; they are for the jury.

Next, Gottlieb relies upon the familiar refrain that pursuing an investigation is not extreme or outrageous and that Gottlieb's conduct "had no impact on the plaintiffs." Gottlieb Br. at 43.  First, plaintiffs do not allege that Gottlieb was merely "pursuing an investigation."  In fact, Plaintiffs allege that the investigation had been concluded and ruled "unsubstantiated" by an investigator who was actually employed as a violent crimes investigator, as opposed to a property crimes investigator.  Gottlieb attempts to analogize this case to *Dobson v. Harris,* 521 S.E.2d 710 (N.C. Ct. App. 1999), *rev'd on other grounds,* 530 S.E.2d 829 (N.C. 2000) in order to assert that fabricated statements within an investigation are by definition not extreme or outrageous.  Gottlieb Br. at 43.  In *Dobson*, the court assumed that the Plaintiff was correct, as it must in Rule 12 Motions, in asserting that the defendant falsified or exaggerated the child abuse claim; but, it found that because this merely initiating an investigation did not cause severe and outrageous harm.  Plaintiffs do not contend that they have the right to remain free of investigation or that investigations by nature are extreme and outrageous conduct.  Instead, the difference is that in this instance, the fabrication and other actions of Sergeant Gottlieb were used to continue the investigation, even after he knew that neither Plaintiffs nor their teammates were not guilty of anything, and thereby continued to subject them to public trauma and humiliation.  The basis for Gottlieb's assertion that his conduct "had no impact on the Plaintiffs," Gottlieb Br. at 43, does not cite to any allegation in the Amended Complaint, nor could it.  Gottlieb is merely raising a fact issue that has no place in this motion.  *See* Fed. R. Civ. P. 12(b) (6).

Last, Gottlieb suggests that if this court were to authorize Plaintiffs' claim to go forward against Gottlieb, the floodgates would open and "every difficult criminal investigation" would "become a font of tort liability for our law enforcement officers [.]" Gottlieb Br. at 43. In light of the allegations in the Amended Complaint, which must be taken as true, Gottlieb's argument requires no response. One can only hope that we never again witness a travesty such as the one that Gottlieb orchestrated. Plaintiffs see no floodgate here.

J.  **The Amended Complaint States An Aiding And Abetting The Breach Of A Fiduciary Duty Claim Against Defendant**

The Amended Complaint states an actionable claim against Gottlieb for Aiding and Abetting the Breach of a Fiduciary Duty.[12] AC ¶¶ 1235-48. Gottlieb's sole argument for dismissal of this claim is that there is "no foundation in the law" for Plaintiffs' contention that Duke had a fiduciary obligation to them. Gottlieb Br. at 44. The existence of Duke University's fiduciary obligation established within Pls. Opp. Duke Univ. Br., §II.A(4). Because Plaintiffs establish that Duke University had a fiduciary obligation to the Plaintiffs, Gottlieb's motion to dismiss this cause of action against him must be denied.

---

[12] The elements are: "(1) the existence of a fiduciary duty by the primary party; (2) knowledge of the violation on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in the achievement of the primary violation." *Blow v. Shaughnessy*, 364 S.E.2d 444, 490 (N.C. Ct. App. 1988); *see also In re EBW Laser, Inc.*, Nos. 05-1022OC-7G, 05-102216-7G, 2008 WL 1805575, at *2 (Bankr. M.D.N.C. April 21, 2008) (quoting *Blow v. Shaughnessy*); *Battleground Veterinary Hosp., P.C. v. McGeough*, No. 05 CVS 18918, 2007 WL 3071618, at *7 (N.C. Super. Oct. 19, 2007) (citing *Blow v. Shaughnessy*).

K.    **The Amended Complaint States A Negligence Claim Against Gottlieb In His Official Capacity.**

The Twenty-Fifth Cause of Action states an actionable Negligence claim against Defendant Gottlieb in his official capacity.[13]   AC ¶¶ 1261-1267.   To state a negligence claim, a plaintiff must allege that (1) defendant owed plaintiff a duty of care, (2) the defendant breached that duty, and (3) defendant's breach was the actual and proximate cause of plaintiff's injury.   *Cameron v. Merisel Props.*, Inc., 652 S.E.2d 660, 664 (N.C. Ct. App. 2007).   The Amended Complaint alleges these elements and facts from which they are readily inferred.   AC ¶¶ 1261-67.   Defendant Gottlieb does not dispute that the Amended Complaint alleges facts sufficient to meet the second, third, and fourth elements; instead, Gottlieb argues that the cause of action should be dismissed because he owed Plaintiffs no "duty".   Gottlieb Br. at 44-45.   First, Gottlieb rewrites Plaintiffs' allegations as a claim for "negligent investigation" (which Plaintiffs neither assert nor suggest), and then claims that a search of the decisions of North Carolina courts turned up no evidence of such a claim.   *Id.*   His argument fails because, North Carolina law imposes upon "every person" who undertakes an active course of conduct that creates the risk of foreseeable harm to other persons, owes a duty of care to such other persons.   *Hart v. Ivey,* 420 S.E.2d 174, 178 (N.C. 1992).   Gottlieb offers no authority to support the proposition that "every person" does not include Gottlieb.   Gottlieb Br. at 44-45; *see also Hart*, 420 S.E.2d at 178.

North Carolina's common law of ordinary negligence "'imposes upon every person *who enters upon an active course of conduct the positive duty to exercise ordinary care*

---

[13] Although Plaintiffs have named Gottlieb and the City of Durham in the state-law causes of action alleging negligence, the City is the real party in interest with respect to those claims. *See Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306-07 (4th Cir. 2006).

*to protect others from harm*, and calls a violation of that duty negligence.'" *Peal v. Smith*, 444 S.E.2d 673, 677 (N.C. Ct. App. 1994) (emphasis in original) (quoting *Hart v. Ivey,* 420 S.E.2d at 178). The duty imposed upon "every person" to protect others from harm "arises whenever one person is by circumstances placed in such a position towards another that anyone of ordinary sense who thinks will at once recognize that if he does not use ordinary care and skill in his own conduct with regard to those circumstances, he will cause danger of injury to the … the other." *Lumsden v. U.S.*, 555 F. Supp. 2d 580, 589 (E.D.N.C. May 7, 2008) (quoting *Quail Hollow East Condo. Ass'n v. Donald J. Scholz Co.*, 268 S.E.2d 12, 15 (N.C. Ct. App. 1980)). "Every man is in general bound to use care and skill in his conduct wherever the reasonably prudent person in his shoes would recognize unreasonable risk to others from failure to use such care." *Id.* (quoting *Mullis v. Monroe Oil Co.,* 505 S.E.2d 131, 137 (N.C. 1998)). Thus, a duty of care arises from any conduct where the risk of harm to another is both unreasonable and foreseeable. *Mullis,* 505 S.E.2d at 137. Therefore, it is every person's duty is to avoid foreseeable, unreasonable risk of harm to others. *Id.* (quoting Justice Cardozo's "classic analysis of duty" in *Palsgraf v. Long Island R.R. Co.*, 162 N.E. 99, 100 (N.Y. 1928) ("The risk reasonably to be perceived defines the duty to be obeyed… .").

Gottlieb's attempt to carve out an exception unto himself to the general rule of ordinary negligence fails. His motion to dismiss Plaintiffs' negligence claims against him in his official capacity must be denied.

L.     **The Amended Complaint States A Negligent Infliction Of Emotional Distress Claim Against Defendant**

The Twenty-Seventh Cause of Action states an actionable claim for Negligent Infliction of Emotional Distress ("NIED") against Gottlieb in his official capacity.[14]  AC ¶¶ 1277-82.  Gottlieb argues for dismissal of Plaintiffs' NIED claim based upon the same contention that he argued for dismissal of Plaintiffs' negligence claim against him, i.e., he owed "no duty" to the Plaintiffs.  *See* Gottlieb Br. at 46.  Gottlieb's argument fails for the same reasons the same argument failed to support his argument for dismissal of his negligence claim.  *See* discussion in § V. G., *supra.*  Therefore, Plaintiffs' NIED claim against Gottlieb in his official capacity may not be dismissed.


V.     **THE COURT MAY DISMISS OFFICIAL CAPACITY CLAIMS WHERE THE CITY IS ALSO NAMED AS A DEFENDANT AND IS THE REAL PARTY IN INTEREST**

Defendant Gottlieb requests that the court dismiss official capacity claims in which City of Durham is already named directly as a defendant as duplicative.  Plaintiffs agree that under the Civil Rights statues, a claim against an official in their official capacity in which the government is also named is "in all respects other than name, to be treated as a suit against the [municipality]. Claims against the official in his or her official capacity which are duplicative of claims against a government entity are subject to dismissal. *W.E.T. v. Mitchell* 2007 WL 2712924 at *10  (citing to *Kentucky v. Graham,*

---

[14] To state a cause of action for Negligent Infliction of Emotional Distress, the plaintiff must allege that the defendant (1) negligently engaged in conduct, (2) under circumstances in which it was reasonably foreseeable that the conduct would cause the plaintiff severe emotional distress; and (3) the conduct caused the plaintiff severe emotional distress. *Johnson v. Ruark Obstetrics & Gynecology Assoc.*, 395 S.E.2d 85, *reh'g. den.*, 399 S.E.2d 133 (N.C. 1990).

473 U.S. 159, 166 (1985); *See Shaeffer v. County of Chatham,* 337 F.Supp.2d 709, 721 (M.D.N.C.2004) (claims against a defendant in their official capacity were dismissed as duplicative of the municipality). Therefore the Court may dismiss all official capacity claims against Defendant Gottlieb in causes of action 1-5, 9-11, 15-17 because the City of Durham is a party to each claim.

Without conceding that the same principle applies to state law claims, Plaintiffs will waive the official capacity claims against Gottlieb in causes of action 18-19, 23, 25, 27-28, as the entity is also a party in that action and the claims are therefore redundant. Plaintiffs will not waive the official capacity claims of Gottlieb in the 20th Cause of Action as the entity is not a party to the action. Consequently, this claim should not be dismissed unless the City of Durham is substituted directly as a defendant in these claims. Additionally Plaintiffs will not waive official capacity claims against Gottlieb in causes of action 6-7 and 13 as the claims are only asserted against him in individual capacity.

## VI. GOTTLIEB MAKES NO FURTHER ARGUMENT FOR DISMISSAL; PLAINTIFFS REQUEST LEAVE TO COMMENCE DISCOVERY.

Defendant Gottlieb makes no other argument in support of dismissal of Plaintiffs' claims against him. Gottlieb is not one of the Defendant requesting oral argument on his motions. He has apparently found the expanse of 825 collective pages for all Defendants to address the "complexities" of the AC. With respect, Plaintiffs request that the Defendants' request for oral argument be denied, and Plaintiffs request leave to schedule the Rule 26(f) discovery conference.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant Gottlieb's Motion to Dismiss, except that, where the City is already named as a defendant in the Causes of Action, the Court may dismiss the official capacity claims against Gottlieb alleged in those causes of action; and, further, Plaintiffs' request for leave to schedule and conduct the Rule 26(f) discovery conference should be granted.

Dated:  October 10, 2008                    Respectfully submitted,

**EKSTRAND & EKSTRAND LLP**

/s/ Robert C. Ekstrand

_____
Robert C. Ekstrand, Esq. (NC Bar #26673)
Attn:  Stefanie A. Sparks
811 Ninth Street, Suite 260
Durham, North Carolina 27705
Email:  rce@ninthstreetlaw.com
Email:  sas233@law.georgetown.edu
Phone: (919) 416-4590

***Counsel for Plaintiffs Ryan McFadyen, Matthew Wilson, and Breck Archer***

# UNITED STATES DISTRICT COURT
## FOR THE
## MIDDLE DISTRICT OF NORTH CAROLINA

RYAN McFADYEN, et al.,

      Plaintiffs,

v.

DUKE UNIVERSITY, et al.,

      Defendants.

Civil Action No. 1:07-cv-953

## CERTIFICATE OF SERVICE

I hereby certify that, on October 10, 2008, I electronically filed the foregoing

PLAINTIFFS' OPPOSITION TO DEFENDANT GOTTLIEB'S MOTION TO DISMISS

PLAINTIFFS' AMENDED COMPLAINT with the Clerk of the Court using the

CM/ECF system which will send notification of such filing to the following:

> James Donald Cowan, Jr.
> Ellis & Winters, LLP
> 100 North Greene Street, Suite 102
> Greensboro, NC  27401
> ***Counsel for The University Defendants***
>
> Dixie Wells
> Ellis & Winters, LLP
> 100 North Greene Street, Suite 102
> Greensboro, NC  27401
> ***Counsel for The University Defendants***

Jamie S. Gorelick
Wilmer Cutler Pickering Hale and Dorr, LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
***Counsel for The University Defendants***

Jennifer M. O'Connor
Wilmer Cutler Pickering Hale and Dorr, LLP
1875 Pennsylvania Ave., N.W.
Washington, DC  20006
***Counsel for The University Defendants***

Paul R.Q. Wolfson
Wilmer Cutler Pickering Hale and Dorr, LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
***Counsel for The University Defendants***

William F. Lee
Wilmer Cutler Pickering Hale and Dorr, LLP
60 State Street
Boston, MA  02109
***Counsel for The University Defendants***

Dan J. McLamb
Yates, McLamb & Weyher, LLP
One Bank of America Plaza, Ste 1200
421 Fayetteville Street
Raleigh, NC 27601
***Counsel for The SANE Defendants***

Reginald B. Gillespie, Jr.
Faison & Gillespie
P.O. Box 51729
Durham, NC 27717
***Counsel for the City of Durham, North Carolina***

Patricia P. Kerner
Troutman Saunders, LLP
434 Fayetteville Street, Suite 1900
Raleigh, NC 27601
***Counsel for Steven Chalmers, Patrick Baker, Beverly Council, Ronald Hodge, Jeff Lamb, Stephen Mihaich, Michael Ripberger, Laird Evans, and Lee Russ***

D. Martin Warf
Troutman Sanders LLP
P.O. Drawer 1389
Raleigh, North Carolina 27602
***Counsel for Steven Chalmers, Patrick Baker, Beverly Council, Ronald Hodge, Jeff Lamb, Stephen Mihaich, Michael Ripberger, Laird Evans, and Lee Russ***

James B. Maxwell
Maxwell, Freeman & Bowman
P.O. Box 52396
Durham, NC  27717-2396
***Counsel for David Addison, Kammie Michael, Richard D. Clayton and James T. Soukup***

Joel M. Craig
Kennon, Craver, Belo, Craig & McKee
4011 University Drive, Suite 300
Durham, NC 27707
***Counsel for Benjamin W. Himan***

Edwin M. Speas, Jr.
Poyner & Spruill, LLP
P.O. Box 10096
Raleigh, NC 27605-0096
***Counsel for Mark Gottlieb***

Eric P. Stevens
Poyner & Spruill, LLP
P.O. Box 10096
Raleigh, NC 27605-0096
***Counsel for Mark Gottlieb***

Kearns Davis
Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P.
P.O. Box 26000
Greensboro, NC 27420
***Counsel for DNA Security, Inc. and Richard Clark***

Robert J. King, III
Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P.
P.O. Box 26000
Greensboro, NC 27420
***Counsel for DNA Security, Inc. and Richard Clark***

Linwood Wilson
***Pro Se***
**\*\*Home Address Redacted Pursuant to Local Rule LR 7.1(b), MDNC and ECF P&P Manual, part J.**

I further certify that I caused the foregoing document to be served by first-class mail, postage prepaid, to the following non CM/ECF participants:

Paul R. Dickinson, Jr.
Lewis & Roberts, PLLC
5960 Fairview Road, Suite 102
Charlotte, NC 28210
***Counsel for Brian Meehan***

James A. Roberts, III
Lewis & Roberts, PLLC
1305 Navaho Drive, Suite 400
Raleigh, NC 27609-7482
***Counsel for Brian Meehan***

Roger E. Warin
Steptoe & Johnson, LLP
1330 Connecticut Avenue, NW
Washington, DC 20003
***Counsel for City of Durham, North Carolina***

Robert A. Sar
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2301 Sugar Bush Road, Suite 600
Raleigh, NC  27612
***Counsel for DNA Security, Inc.***

Nicholas J. Sanservino, Jr.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2301 Sugar Bush Road, Suite 600
Raleigh, NC  27612
***Counsel for DNA Security, Inc***.

Respectfully submitted,

**EKSTRAND & EKSTRAND LLP**

/s/ Robert C. Ekstrand

Robert C. Ekstrand, Esq.
NC Bar #26673
811 Ninth Street, Suite 260
Durham, North Carolina 27705
Email:  rce@ninthstreetlaw.com
Phone: (919) 416-4590
*Counsel for Plaintiffs Ryan McFadyen, Matthew Wilson, and Breck Archer*