# UNITED STATES DISTRICT COURT
## FOR THE
## MIDDLE DISTRICT OF NORTH CAROLINA

RYAN McFADYEN, et al.,

     Plaintiffs,

v.

DUKE UNIVERSITY, et al.,

     Defendants.

Civil Action No. 1:07-cv-953

---

## PLAINTIFFS' OPPOSITION TO SOUKUP, MICHAEL, ADDISON AND CLAYTONS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

---

Dated:  October 10, 2008

**EKSTRAND & EKSTRAND LLP**

Robert C. Ekstrand (NC Bar #26673)
Attn. Stefanie A. Sparks
811 Ninth Street, Suite 260
Durham, North Carolina  27705

***Counsel for Plaintiffs Ryan McFadyen,
Matthew Wilson, and Breck Archer***

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ 1

STATEMENT OF THE CASE ..................................................................................... 4

NATURE OF THE PROCEEDINGS ........................................................................... 4

STATEMENT OF THE FACTS ................................................................................... 5

QUESTIONS PRESENTED .......................................................................................... 8

ARGUMENT.................................................................................................................... 8

    I.    STANDARD OF REVIEW ....................................................................... 8

    II.    THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS UNDER FEDERAL LAW AGAINST DEFENDANTS SOUKUP, MICHAEL, ADDISON AND CLAYTON................................................... 9

        A.    The Amended Complaint States Actionable Section 1983 Claims Against Defendants Soukup, Michael, Addison And Clayton........... 9

            1.    The Fourth Cause Of Action States A Section 1983 Claim For Deprivation Of Property In Violation Of The Fourteenth Amendment. ........................................................................ 11

            2.    The Fifth Cause Of Action States A §1983 Stigma-Plus Claim Against Addison, Michael, Gottlieb, Himan, Hodge, Wilson, Arico, Levicy, Steel, Brodhead, And Burness. ..................... 12

                a.    The Stigma .............................................................. 13

                b.    The "Plus" ............................................................... 17

            3.    The Stigma And The Plus Do Not Have To Be Caused By The Same Actor....................................................................... 18

            4.    Plaintiffs Were "Ascertained" And "Ascertainable" In Defendants' Stigmatizing Statements. .................................. 18

            5.    Plaintiffs Are Entitled To Recover For Harm To Their Reputations........................................................................ 19

            6.    The Sixth And Seventh Causes Of Action State A Section 1983 Claim For Conduct That Shocks The Conscience, In Violation Of The Fourteenth Amendment. ........................... 20

7.      The Ninth Cause Of Action States §1983 Retaliation Claim Against Defendants. ............................................................ 21

        a.      Defendants, Michael And Addison Are Not Entitled To Qualified Immunity From Plaintiffs' First Amendment Claims. ................................................... 22

8.      The Tenth Cause Of Action States An Actionable Section 1983 Claim Against Defendants Soukup, Michael, Addison And Clayton For Depriving Plaintiffs Of The Privileges And Immunities Afforded To North Carolina Citizens In Violation Of 42 U.S.C. § 1983. ............................................................. 23

9.      The Eleventh Cause Of Action States An Actionable Section 1983 Claim Against Defendants Soukup, Michael, Addison And Clayton Defendants For Their Failure To Prevent Or Aid In Preventing The Ongoing Deprivations Of Plaintiffs' Constitutional Rights. ............................................................. 24

10.     The Amended Complaint States Actionable Section 1983 Claims Against Soukup, As A Supervisory Defendant. ....... 25

III.    CLAYTON, ADDISON, MICHAEL, AND SOUKUP DO NOT HAVE QUALIFIED IMMUNITY FOR PLAINTIFFS' § 1983 CLAIMS. ........... 25

        A.      The Qualified Immunity Standard .................................................. 25

                1.      Clayton Does Not Have Qualified Immunity For Participating In The Execution Of Searches And Seizures Without Probable Cause ...................................................................... 26

                2.      Clayton Does Not Have Qualified Immunity For Causing Deprivations Of Plaintiffs' Due Process Right To §15A-282 Reports. ................................................................................ 27

                3.      No Defendant Named In The Stigma-Plus Claim, Including Michael And Addison, Have Qualified Immunity. ................ 28

                4.      Clayton, Michael, And Addison Do Not Have Qualified Immunity For Retaliating Against Plaintiffs For Exercise Of First Amendment Rights. ..................................................... 30

                5.      Defendants Are Not Entitled To Qualified Immunity For Discriminatory And Abusive Enforcement Of The Criminal Laws Because Plaintiffs Were "Temporary" Residents Of North Carolina. ...................................................................... 31

                6.      Clayton Does Not Have Qualified Immunity For Engaging In Conduct That Shocks The Conscience. ................................. 32

7.   Soukup, Michael, Addison, And Clayton Do Not Have Qualified Immunity For Failing To Intervene To Prevent Fellow Officers From Violating Plaintiffs Constitutional Rights In Their Presence Or Within Their Knowledge. ....... 32

IV.   THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS FOR PARTICIPATION IN CIVIL RIGHTS CONSPIRACIES. ........................ 33

A.   Conspiracies In Violation Of 42 U.S.C. § 1983 .............................. 33

V.   The Amended Complaint States Actionable Claims for Conspiracy in Violation of 42 U.S.C. § 1985 .................................................... 34

A.   Conspiracies In Violation Of § 1985(2) And (3). ........................... 34

B.   The Amended Complaint States A Violation Of 42 U.S.C. §1986. 36

C.   The Amended Complaint Alleges Sufficient Direct And Circumstantial Evidence To Establish An Unlawful Conspiracy. .... 36

D.   The § 1985 Claims Allege Racial Animus Of Two Types ............. 37

1.   Section 1985 Prohibits Invidious Animus Against Any Race. .................................................................................. 37

VI.   THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS UNDER STATE LAW AGAINST DEFENDANTS SOUKUP, MICHAEL, ADDISON AND CLAYTON. .................................................... 39

A.   The Amended Complaint States A Common Law Abuse Of Process Claim Against Defendants Addison And Clayton. ......................... 40

B.   The Amended Complaint States An Intentional Infliction Of Emotional Distress Claim Against Defendants. ............................... 40

C.   The Amended Complaint States A Negligence Claim Against Defendants. ...................................................................................... 42

D.   The Amended Complaint States A Negligent Supervision, Retention, Training, And Discipline Claim Against Defendants. ..................... 45

E.   The Amended Complaint States A Negligent Infliction Of Emotional Distress Claim Against SMAC Defendants. ..................................... 45

VII.   THE COURT MAY DISMISS OFFICAL CAPACITY CLAIMS WHERE THE CITY IS ALSO NAMED AS A DEFENDANTS AND IS THE REAL PARTY IN INTEREST .............................................................. 46

VIII.   DEFENDANTS MAKE NO MORE ARGUMENTS ................................ 47

CONCLUSION ........................................................................................... 47

## STATEMENT OF THE CASE

The Amended Complaint describes a combination of actors and entities referred to as the Consortium. Beginning in March 2006, and continuing for thirteen months, the Consortium's ultimate objective was to railroad the Plaintiffs and their 44 teammates into convictions as either principles or accomplices to a horrific, violent crime they knew never happened. The allegations describe a deliberate and calculated Conspiracy to Convict. Defendants, acting individually and in concert, concealed exonerating evidence, manufactured inculpatory evidence, and stigmatized the Plaintiffs by subjecting them to public outrage, public condemnation, and infamy in the minds of millions of people. Defendants' conduct shocks the conscience. The most chilling of all are those who knew of the wrongs conspired to be done to Plaintiffs, had the power to prevent or aid in preventing them, and did not. Instead, they 'turned a blind eye' and did nothing.

## NATURE OF THE PROCEEDINGS

Plaintiffs filed this action on December 18, 2007 and amended that filing on April 17, 2008. Pursuant to a request from this Court regarding the location of the audio and video exhibits embedded within the First Amended Complaint ("AC"), Plaintiffs file the AC again on April 18, 2008 with the embedded exhibits as separate documents. Except for the location of the exhibits, the two "First Amended Complaints" are identical. All Defendants filed Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b) (6) on July 2, 2008. This Memorandum is filed pursuant to the Court's Order of October 7, 2008 [Document #72], granting Plaintiffs' Motion for Leave to File Opposition Briefs [Document #71], and authorizing Plaintiffs to file their Responses on or before October 10, 2008.[1]

---

[1] Plaintiffs' Opposition Brief is filed in response to the joint-Brief filed by Defendants Soukup, Michael, Addison, and Clayton in support of their Motion to Dismiss pursuant to Rule 12(b)(6). The SMAC Defendants' supporting brief is cited herein and elsewhere as

## STATEMENT OF THE FACTS

**Richard Clayton** was a District Two Patrol Officer on March 14, 2006. AC ¶ 65. Prior to the investigation of Mangum's false accusations, Clayton was the frequent patrol partner of Sgt. Gottlieb in and around Duke University's East Campus. Gottlieb frequently had Clayton sign off on charges he brought against Duke students to conceal his own participation in the arrest and abuse of Duke students in and around Duke's East Campus. AC ¶ 65. Clayton was an active participant in the investigation supervised by Gottlieb, to whom Clayton reported. *Id.* The AC alleges, among other things, that Clayton participated in the search of Ryan McFadyen's dorm room on March 27, 2006 which had been authorized by a warrant that was deliberately fabricated to mislead a judge into believing a probable cause existed. The AC alleges that Clayton knew no such cause existed, in part because Clayton conducted the photo identification procedures that eliminated Plaintiffs as possible suspects on March 16, 2006 (two days after the party). *Id.* ¶ 613. The AC identifies Clayton as one of the "Durham Investigator Defendants."

**David Addison** was the Durham Police Department's CrimeStoppers Coordinator, one of the four constituent officers stationed within the Office of the Chief of Police. AC ¶ 61. As the Department's CrimeStoppers Coordinator, Addison reported directly to the Chief of Police and to Baker. Addison was an official spokesperson for the Department. In that capacity, he was responsible for obtaining information pertaining to unsolved crimes and wanted fugitives through mass media publicity and reward incentives, and was responsible for channeling such information.

---

"SMAC Br.," and their co-defendants' supporting briefs are cited herein as: "City Br.," "Gottlieb Br.," "City Super. Br.," "DNASI Br.," "SANE Br.," "Duke Univ. Br." "DUPD Br.," "Himan Br.," "Hodge Br.," and "Wilson Br."

**Kammie Michael** was the Durham Police Department's Public Relations Coordinator and Public Information Officer, a constituent office of the Office of the Chief. Michael reported directly to Defendant Russ, the Chief of Police Chalmers (or Acting Chief Hodge as the case may be), and Baker. Michael had the City's final policymaking authority with respect to the day to day dissemination of information to the media and the public. *Id.* ¶ 60.

**James Soukup** is identified in the AC as a "Durham Police Supervising Defendant." Id. ¶ 68. Soukup correctly notes in his Brief that the AC does not allege that Soukup "supervised" any aspect of the investigation of the incident under review; made any public statements concerning any of the alleged events under review by this Complaint; participated in any of the various identification procedures (whether pictures or laboratory); that he ever met with Mike Nifong or any other Duke University or City of Durham agent in connection with any aspect of this matter." SMAC Br. at 5-6. Instead, the AC directs very specific, narrowly drawn allegations at Soukup. The AC alleges that Soukup was the Director of the Durham Emergency Communications Center ("DECC"). *Id.* ¶ 59. In that capacity, Soukup is alleged to have supervised all of the activities and personnel within the DECC, and had final policymaking authority over the retention, destruction, and public dissemination of DECC's audio recordings of Durham Police and Duke Police communications relating to Mangum's allegations at all relevant times. *Id.*

First, the AC establishes that all DECC recordings were destroyed. That is a remarkable fact on its own. More remarkable is that the tapes that were destroyed under Soukup's contained explosive evidence that revealed—and leave no doubt—that that the Durham Police and Duke Police investigative chains of command had concluded that Mangum's allegations were demonstrably false and closed the matter before Gottlieb seized on it. According to Gottlieb, those tapes also contain his "investigative notes"

since he used the radio dispatch device to record contemporaneous notes of events along with the required communications with DECC.

Second, the AC alleges that Soukup delegated to Defendants Hodge and Michael all of his official policymaking authority with respect to retention, preservation, and destruction records and recordings relating to the investigation. *Id.* ¶ 52.

Third, the Amended Complaint alleges that Soukup's delegation of his policymaking authority enabled those Defendants in the investigative chain of command for the investigation (running from Himan to Baker) and/or the Durham and Duke Communications Chains of Command to destroy all evidence of DECC's audio recordings relating to Mangum's false allegations. *Id.* ¶ 568-69. That evidence included evidence of the severity of Mangum's mental disturbance, the responding officers' awareness of Mangum's severe mental disturbance, the facts that led responding officers to believe that Mangum was "lying", evidence that explains why Mangum lied when she was asked if she was raped, and other powerful evidence. The AC alleges that the evidence would have been exculpatory in the criminal cases, but also alleges that the evidence would be equally powerful in a civil rights action of the type brought by the Plaintiffs in this case. Evidence was destroyed, in other words, that would have exposed the fact that those in the investigation's chain of command—from the very origins of the case—knew or were deliberately indifferent to Plaintiffs' innocence and Mangum's fraud. *Id.* ¶ 501. The AC alleges that Soukup had the final policymaking authority for the retention of evidence, and that he either directed the destruction or delegated his authority to Hodge, who did so.

***The Chains of Command Relevant to These Defendants.*** The AC identifies the "Addison/Michael Chain of Command" running from Addison to Baker and from Michael to Baker. It is therefore distinct from the Durham Police investigator chain of command running from Himan to Baker. AC ¶ 72.

## QUESTIONS PRESENTED

1.     Have Plaintiffs stated actionable claims against Defendants Soukup, Addison, Michael and Clayton under 42 U.S.C § 1983?  (§II.A.1-10).

2.     Are Defendants Soukup, Addison, Michael and Clayton entitled to Qualified Immunity on their Federal Claims?  (§ III.A.1-7)

3.     Have Plaintiffs alleged Conspiracies in violation of 42 U.S.C § 1983 and 42 U.S.C § 1985; and the failure or refusal to intervene in the § 1985 Conspiracies alleged to prevent or aid in preventing the harms known to be done to Plaintiffs?  (§ IV.A.; V.A.-D.)

4.     Have Plaintiffs stated actionable claims against Defendants Soukup, Addison, Michael and Clayton under North Carolina Law?  (§ VI.A.-E.)


## ARGUMENT

## I.     STANDARD OF REVIEW

A motion to dismiss for failure to state a claim may be granted "only in very limited circumstances."  *Rogers v. Jefferson-Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir. 1989).  In examining a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff."  *Salami v. Monroe*, No. 1:07CV621, 2008 WL 2981553, at *5 (M.D.N.C. Aug. 1, 2008) (quoting *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  Though the complaint is not required to encompass detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* (quotations and alterations in original) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007)).  The complaint's "[f]actual allegations must

be enough to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 127 S.Ct. at 1965). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* (quoting *Twombly*, 127 S.Ct. at 1969).

Further, where Plaintiffs have asserted a civil rights action, the Court "must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Veney v. Wyche,* 293 F.3d 726, 730 (4th Cir. 2002) (internal quotations omitted).

## II. THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS UNDER FEDERAL LAW AGAINST DEFENDANTS SOUKUP, MICHAEL, ADDISON AND CLAYTON.

### A. The Amended Complaint States Actionable Section 1983 Claims Against Defendants Soukup[2], Michael, Addison And Clayton.

The First through Fifteenth Causes of Action allege violations of 42 U.S.C. § 1983 (the "§ 1983 Claims"). At this early stage, the Court must determine whether each of these Causes of Action alleges facts sufficient to satisfy the elements of § 1983.[3] *See*

---

2 Defendant Soukup, as a Supervising Defendant, has adopted the arguments on file in the Memorandum on behalf of the Durham Supervising Defendants [Document #55 (Motion) and #56 (Memorandum)]. To the extent that the Supervising Defendants are addressed in any of the Plaintiffs' Briefs, Soukup should be considered among that group, as we was in the AC.

3 Section 1983 provides:

> [E]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress[.]

42 U.S.C. § 1983 (2000).

*Green v. Maroules*, 211 F.App'x 159, 161 (4th Cir. 2006). Based on statute's text, the Supreme Court held that a Section 1983 claim requires only two essential allegations:

> By the plain terms of section 1983, two–and only two–allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who deprives them of that right acted under color of state or territorial law.

*Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *accord West v. Atkins*, 487 U.S. 42 (1988).

Section 1983 does not itself create or establish substantive rights. Instead, § 1983 provides "a remedy" where a plaintiff demonstrates a violation of a right protected by the federal Constitution, or by a federal statute other than §1983. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). Analytically, however, it may be more useful to understand a Section 1983 action as having four elements of proof: (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation (2) proximately caused (3) by the conduct of a "person" (4) who acted "under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983 (2000). *See*, *e.g.*, *Martinez v. California*, 404 U.S. 277 (1980).

Defendants Soukup, Michael, Addison and Clayton address no Federal Claims individually. Instead, they recast Plaintiffs' § 1983 claims as alleging a constitutional right to be free from "defamation" and from "criminal investigation." SMAC Br. at 19. Their contention bears no relationship to the AC. Plaintiffs have alleged violations of the First, Fourth, and Fourteenth Amendment against these Defendants. Instead of answering the individual causes of action the SMAC defendants argue (1) Plaintiffs' § 1983 claims are defamation claims; (2) Plaintiffs assert a non-existent right to be free

from criminal investigation; and, on the chance that the Plaintiffs have stated a § 1983 claim against one or all of them, (3) they have qualified immunity to such surviving § 1983 claims.

### 1. The Fourth Cause Of Action States A Section 1983 Claim For Deprivation Of Property In Violation Of The Fourteenth Amendment.

The Fourth Cause of Action alleges that Clayton, individually and in concert with Gottlieb, Himan, Nifong, Meehan, and Clark conspired to deprive Plaintiffs of their constitutionally protected property interest in the reports of results of tests conducted with the products of their NTID procedures (i.e., Plaintiff's DNA and photographs). AC ¶ ¶941-53. The property right Plaintiffs allege is an entitlement, created by statute (N.C.G.S. § 15A-282), which entitles any person subjected to a NTID Order to reports of any tests conducted with the products of their NTID procedures as soon as the reports are available. N.C.G.S. § 15A-282. Because the plain language of the statute yields no discretion, but instead creates an immediate, affirmative right to such reports, it is an entitlement. As such it is protected from deprivation by the Fourteenth Amendment's Due Process Clause. It is particularly protected from the arbitrary or malicious deprivation that is alleged in the AC. Clayton's violation of the Fourteenth Amendment arises out of his participation in a conspiracy with Himan, Gottlieb, Nifong, and an investigator not named in this action, named Michelle Soucie to conceal from Plaintiffs the results of the April 4 identification procedure conducted with Crystal Mangum. In addition, another photo identification was conducted with Kim Pittman on May 10, 2006. Both reports were withheld (Plaintiffs still have not received the report of results from Kim Pittman's procedure). Plaintiffs have established the basis for the Fourth Cause of Action in their Brief Opposing DNASI's Motion to Dismiss, and incorporate that discussion and argument by reference here. *See* Pls. Opp. Br. (DNASI), §II.A.(1).

### 2. The Fifth Cause Of Action States A §1983 Stigma-Plus Claim Against Addison, Michael, Gottlieb, Himan, Hodge, Wilson, Arico, Levicy, Steel, Brodhead, And Burness.[4]

In their Fifth Cause of Action, Plaintiffs allege that Addison, Michael, Gottlieb, Himan, Hodge, Wilson, Arico, Steel, Brodhead, and Burness combined to act, individually and in concert with one another, to stigmatize Plaintiffs in connection with the deprivation of their rights and other tangible, present interests. While all those attacking this cause of action insist that "injury to reputation by itself" is not an interest protected under the Fourteenth Amendment, *Siegert v. Gilley*, 500 U.S. 226, 233 (1991), many do concede that the courts have held that a plaintiff may recover for reputational injury, so long as the plaintiff also "alleges deprivation of a cognizable property or liberty interest in connection with the harm to reputation" *id.* The elements of a stigma-plus claim under the Fourth Circuit's analysis are met where the complaint alleges that the defendants (1) made false, stigmatizing public statements, (2) in connection with an additional tangible injury[5] or deprivation of rights (the "plus"), (3) under color of law. *Ridpath v. Bd. of Governors of Marshall Univ.*, 447 F.3d 292, 309 (4th Cir. 2006) (a "tangible interest" that satisfies the element includes a "substantial demotion"); *see also Paul v. Davis,* 424 U.S. 693, 696-97 (1976) (establishing the rule that to be actionable under §1983 reputational harm must be connected to some additional deprivation) (footnote omitted).

---

[4] Here, Plaintiffs establish their Stigma-Plus claims against all Defendants named in the Fifth Cause of Action, and respond to their arguments for dismissal of this claim.

[5] The tangible loss removes the claim from the ambit of a pure defamation claim, which is not—standing alone—a basis for a Section 1983 claim. *Paul,* 424 U.S. at 696-97. Since *Paul*, the Fourth Circuit has held that the additional, "present injury" requirement was satisfied, for example, by alleging a significant demotion in connection with false public statements. *Ridpath*, 447 F.3d. at 311-12.

### a. The Stigma

Addison, Gottlieb, Nifong, Hodge, Michael, Wilson, Baker, Arico, Levicy, Duke University, and the City of Durham, individually and in concert, pursuant to express or implied agreements with one another, published false stigmatizing statements. AC ¶¶ 954-969. Their statements were conclusory and damning. *Id.* They were parallel and mutually reinforcing. Id. They were about and relating to the Plaintiffs. *Id.* They were made in connection with several identified deprivations of federal rights and tangible interests. *Id.* The Amended Complaint alleges a conspiracy to conduct a media campaign that produced from its participants *hundreds* of false and inflammatory public statements, each one in furtherance of the conspiracy to coerce the Plaintiffs into waiving the right not to submit to interrogation that they had invoked. AC §§ 904-929. The statements branded the Plaintiffs as "racist-rapists" who not only participated in a violent and racially-motivated gang rape, and were "stonewalling" the police investigation and "covering up" by "remaining silent." *See,* AC §§ XXI-IV, XXII-IV     A significant number of high-ranking officials within the City of Durham and Duke University, including those with final policymaking authority, participated in the conspiracy by making stigmatizing false statements. For example:

- Addison published statements falsely asserting as fact that investigators had "really, really strong physical evidence" to support Mangum's claims; that Mangum was, in fact, "sodomized, raped, assaulted and robbed" by Plaintiffs or in their presence; that "the attackers" left substantial genetic material that was collected in the Sexual Assault Exam. AC ¶ 505 A;

- Addison publicly declared that the DNA testing would reveal which team members were "the attackers," that Mangum was "brutally raped" in a "brutal assault… that occurred within that house," and Plaintiffs refused to identify who did it. Addison suggested to the millions of people watching his rant to imagine that Plaintiffs brutally raped their daughter, and publicly insisted that the NTID

Order (and its Affidavit) were necessary only because Plaintiffs knew who raped Mangum but refused to tell the police. AC ¶ 505.

- Michael published false and stigmatizing statements to members of the local and national press corps that were deliberately calculated to foment racial hostility directed at the Plaintiffs are documented in the AC in §XXII (¶¶566-576). Michael caused plaintiffs stigmatization by, among other things, falsely stating that the police did not know the identity of the 911 caller, AC ¶ 574, when, in fact, Michael herself knew the 911 call was made by Pittman, AC 574 (A)-(D), that it was a ruse, *id*. ¶¶ 572 and that Pittman quickly admitted that to Sgt. Shelton in the Kroger parking lot on March 14th, *id*. Michael released the 911 recording to the media and concealed the exonerating audio recordings from the same time period, and—for weeks—falsely claimed that the caller "*was not* the woman who accompanied Mangum to 610 N. Buchanan," AC ¶ 573, and instead described Pittman as an "unknown, anonymous" caller in genuine fear of a racist mob in the house at 610 N. Buchanan Blvd. ¶ 574. This was Michael's contribution to the agreement to create a new "racist" dimension of the false rape claim when the SBI Serology Lab determined that not even a spiderweb of DNA evidence existed that could link Plaintiffs or their teammates to Mangum's rape kit. As late as April 4, 2006, Michael was still falsely claiming that police did not know the 911 call was a ruse and the caller was Pittman.

- Nifong and Addison's false public statements expressing their certainty that a rape occurred and the voluminous evidence to support it, and their subsequent emphasis on the victim's race—a "young, African-American mother"—and that of her "attackers"—"white members of the Duke Men's Lacrosse Team."

- Brodhead and Burness, individually and in concert, making nearly identical false statements stigmatizing in hundreds of statements and interviews to representatives of the national media, AC ¶¶ 464, 529, 535, 581-3, 698-9, 827-830; habitually making "not for attribution" statements according to a scripted set of "talking points" designed to distance the University from the very stigma that the University was deliberately imposing on Plaintiffs, AC ¶ 530; claiming to know more than [the reporters] about what happened in that house AC ¶ 529 A; and informing reporters that they knew that what Plaintiffs did to Mangum was

worse than what has been reported AC ¶ 529 B. Of course, it is difficult to imagine what could possibly be "far worse" than what had been reported.

- The University, as they routinely did when their students constitutional rights were violated, made knowingly false public statements suggesting that there was probable cause to issue the NTID Order and to issue the McFadyen Search Warrant. AC ¶ 461-465. Pursuant to the Chairman's directive, their purpose in making the statements was to bolstering the fabricated allegations Gottlieb, Himan, and Levicy conspired to make and subsequently support.

- When Nifong, Hodge, Michael, and Addison fabricated and leaked "evidence" of a racist dimension to the story, Brodhead could not condemn Plaintiffs fast enough for, again, things that never happened. AC ¶¶ 581-583 ("Brodhead's Acts in Furtherance of the Racist Dimension").

- Pursuant to the Chairman's Directive ("We're going to f**k those lacrosse players"), AC ¶ 452-5, and Brodhead's tacit participation in the Plaintiffs' stigmatization, AC ¶¶ 581-583, 698-9, 827-830 Duke University Professors publicly stigmatized Plaintiffs in connection with the searches and seizures. AC ¶¶ 544-9, 552-4, 585-7. The Amended Complaint, alleges by way of example, the statements of William Chafe, equating Plaintiffs with those historical figures who were responsible for the worst of America's racist past, AC ¶ 584; Houston Baker, who pointed to Plaintiffs "white silence" and their "white, male, athletic violence" as proof of their guilt, AC ¶ 585; and even the Duke Clergy, who also made speeches assuming the fact that a rape had occurred, AC ¶ 554, 587.

- Bryan and Moneta concocted a "statistical analysis" of fabricated "data" from a time period in which no data was systematically kept, of data they purported to be from "incident reports" showing that the lacrosse team had a "history of misconduct" that it did not have. They then used their bogus "statistical analysis" of the Lacrosse Team's "incident reports" and made a "comparative analysis" of the "incident reports" of the student body—men and women—generally, for which, there was no systematically kept data. AC ¶¶ 838-45

- The Chairman commissioned Bryan and Moneta's fabrications, and the University's final policymakers condoned and ratified their fraudulent methods,

and their bogus findings by publishing carefully chosen "facts" culled from Bryan and Moneta's "comparative analysis" of unreliable statistics. AC ¶827. They did so by publishing the report—in a nationally televised press conference—on the eve of Nifong's primary election. AC ¶ 846. The University's press office promoted the press conference vigorously as did Brodhead and Burness, all at the direction of the Chairman. AC ¶¶ 826, 848-850.

- More evidence of the agreement to stigmatize Plaintiffs exists in the tiny fraction of the emails available to Plaintiffs pending authorization to conduct discovery. One of the emails was sent by the University's press apparatus to Durham Police Chief Chalmers. Attached is an advance-copy of the Committee's report of the bogus "data" and conclusions from the bogus "statistical analysis." AC ¶ 851. Plaintiffs and Plaintiffs' counsel were not given a copy by the University, not early or ever. It was, of course, widely available through their website at the conclusion of the press conference.

- Arico's false and stigmatizing statements were made to bolster the fabricated forensic medical evidence manufactured to prove criminal conduct that she knew or should have known never occurred, including for example, Arico's false assertions to media representatives that: (1) a complete SAE was performed, when it was not; (2) a competent and qualified forensic nurse examiner performed the SAE, which she knew Levicy was not; (3) that the SANE (Levicy) observed and documented evidence of "blunt force trauma" consistent with rape, when she did not; (4) the blunt force trauma was observed and recorded by way of a coloposcope, which was never used to used; and (5) that the coloposcope findings were consistent with the fabricated narrative concocted by Levicy, Himan, Gottlieb, and others. AC ¶ 784.

It should not be overlooked that these statements were broadcast nationally and internationally by people who hold offices of trust and power. Many of them have final policymaking authority for the City or for Duke University on matters of public concern. These are overt and thinly veiled accusations came from all directions within the City and the University and were made by people who hold positions of trust. Because it is difficult to put into words how pervasive the effect of their statements was, the AC

contains embedded video that reveals a rough sense of the extraordinary condemnation that these Defendants caused. *See, e.g.,* AC Ex. 15 (Video – Protestors on Private Lawn of 610 N. Buchanan);6 Ex. 23 (Video – Angry Citizen at the NCCU Forum).7 And there is more. The AC documents detailed accounts of these Defendants' (and others') overt act in furtherance of the conspiracy.

### b. The "Plus"

The AC alleges multiple deprivations of federal rights (and tangible interests) in connection with the stigmatization of the Plaintiffs. AC ¶ 957(A)-(G). Some of the connected deprivations are significant enough to be actionable standing alone. For example, the AC alleges that the "connected" deprivations include:

- Searches and seizures without probable cause;

- Deprivation of constitutionally protected property interests in the statutory entitlement to reports of DNA tests and photo identification procedures conducted with the DNA and "mug shots" pursuant to the NTID Order as soon as the reports were available;8 and

- Duke University and City Defendants' conspiracy to violate Plaintiffs' privacy rights under the "Financial Privacy Act" (codified at N.C.G.S.A. § 53B-4, *et seq*.).

And there is more: the AC lists connected deprivations is substantial, the Plaintiffs need only to show one such deprivation to state their stigma-plus claim. AC ¶ 957 (A)-(G).

---

6 Video footage of "Wake Up Call" held by protestors surrounding 610 N. Buchanan banging pots and pans and shouting at the residents to come out and confess.

7 NNCU Forum participants spoke angrily about the fact that no lacrosse player had been arrested yet; pointing to the fact that rape suspects are typically arrested quickly and often cannot post bail. Two examples evincing the stigmatization Plaintiffs had already suffered in the community.

8 *See,* AC ¶¶ 941-953. Defendants' contentions relating to the scope and timing of Brady rights are all misplaced because Plaintiffs do not locate this right in *Brady*'s holding. Plaintiffs explain in DNASI Br. § III.A.(1)

*Ridpath v. Bd. of Governors of Marshall Univ.* 447 F.3d 292 (4th Cir. 2006); *See, e.g.,* *Bd. of Regents v. Roth*, 408 U.S. 564 (1972). The Amended Complaint sufficiently alleges a stigma-plus claim.

All Defendants in the Fifth Cause of Action have made numerous arguments for dismissal of the Plaintiffs' stigma-plus claims. They all fail:

### 3. The Stigma And The Plus Do Not Have To Be Caused By The Same Actor

Several Defendants argue that the Plaintiffs' stigma-plus claim must be dismissed because the reputational injury and the deprivation must be affected by the same person. However, the act that constitutes the stigma may be imposed by a person or entity separate from the plus formula can be imposed by different actors, even if one of them is not a state actor and therefore perhaps is not subject to suit.[9]

### 4. Plaintiffs Were "Ascertained" And "Ascertainable" In Defendants' Stigmatizing Statements.

Several defendants argue that their false, stigmatizing accusations do not "refer to some ascertained or ascertainable person" which "must be the plaintiff" to state a cause of action for defamation. *See, e.g.,* Gottlieb Br. at 28, SMAC Br. at 20. First, the Fifth Cause of Action is not a defamation claim. To the extent that the "ascertainable person" requirement otherwise exists in the requirement that the stigmatizing statement must be of or relating to a person, however, Plaintiffs' allegations meet it. There is no exception to Stigma claims that the stigma must be directed solely to one person. A group of individuals may be "ascertainable" and stigmatized. The Plaintiffs were certainly "ascertained" by millions of people as "racist rapists" for thirteen months; they were

ascertained by those who made death threats to them and their families; they were "ascertained" by local and national media; and they continue to be "ascertained" today. AC ¶¶ 501-02, 505-511, 516, 518-22, 529-35, 544-55, 577-78, 584-87, 699-702, 708-09, 852. They were "ascertainable" because of Gottlieb's fabrication that all lacrosse players attended the party and only lacrosse players attended the party. The statement was false, of course, *see id.* ¶ 415, but that fabrication was necessary to the judicial finding that there was "reasonable grounds" to issue an NTID Order directed to "all white members of the Duke Men's Lacrosse Team." *Id.*; *see also*, NTID Order, Gottlieb Br. Ex. 1. Plaintiffs' Fifth Cause of Action may not be dismissed on this basis.

### 5. Plaintiffs Are Entitled To Recover For Harm To Their Reputations.

Gottlieb, Hodge, and others argue that Plaintiffs are alleging a constitutional "interest in one's reputation," either (1) by bringing a § 1983 Claim based on false statements in the Fifth Cause of Action, or (2) by seeking damages in each of the § 1983 Claims for the reputational harms that were caused by the unlawful seizures. *See, e.g.* Gottlieb Br. at 28, Hodge Br. at 12, SMAC Br. at 20-21. They misrepresent what the AC alleges. The Fifth Cause of Action states a § 1983 claim because false statements in connection with the deprivation of a right *caused damages that include reputational harm*. A glance at the Fifth Cause of Action itself reveals that Plaintiffs do not allege what they claim; the structure of the claim mirrors the elements and the required causal relationship among them.

To the extent that Defendants argue that reputational harm is not recoverable as an element of damages, they misstate the law. It is well settled that, because § 1983 incorporates "the common law of torts," a plaintiff is permitted to recover all damages that flow from a constitutional deprivation, including any damages for impairment of reputation . . . , personal humiliation, mental anguish, and suffering. *Memphis Cmty. Sch.*

*Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (alteration in original) (quotation marks omitted); *see also Randall v. Prince George's County*, 302 F.3d 188, 208 (4th Cir. 2002) (quoting *Stachura*); *Price v. City of Charlotte*, 93 F.3d 1241, 1245 (4th Cir. 1996) (same). This is precisely what the AC alleges.

> **6.    The Sixth And Seventh Causes Of Action State A Section 1983 Claim For Conduct That Shocks The Conscience, In Violation Of The Fourteenth Amendment.**

The Sixth and Seventh Causes of Action allege conspiracies and conduct in furtherance of them that shock the conscience. The conspiracies alleged were systematically carried out over a thirteen month period, beginning shortly after the original Duke and Durham investigation ruled the allegations 'unfounded' on or about March 15, 2006. *Id.*¶52, 333. The Amended Complaint alleges (1) a conspiracy to fabricate evidence of a rape that Defendants knew never occurred, *Id.* ¶ 343-44, and (2) to systematically conceal from the Plaintiffs and the enraged public all of the overwhelming proof of the Plaintiffs' innocence. *Id.* ¶ 500-01. The motives of the conspirators were to retaliate against Plaintiffs for exercising their right not to speak or submit to police interrogations, to coerce Plaintiffs into providing false inculpatory testimony through the continuing threat of a prosecution that Plaintiffs knew to be a frame up and to prevent the disclosure of the enormity of their misconduct so they could not be held accountable for it in a federal civil rights action such as this one or in a federal criminal prosecution for obstruction of justice and criminal conspiracy. The cumulative effect of conduct and conspiracies alleged in these causes of action shocks the conscience. The Amended Complaint alleges a conscious, deliberate, calculated plan to frame innocents for heinous, racially motivated crimes (*Id.* ¶ 350-57), that Defendants knew never occurred (*Id.* ¶ 382-84).

Defendant Clayton, who alleges there are no cognizable claims against him, worked in furtherance of this conspiracy by among other things:

- Designing with Nifong, Gottlieb, and Himan an identification procedure that violated G.O. 4077 and was designed to facilitate misidentification of the Plaintiffs so as to secure indictments against Plaintiffs as principals or accessories to crimes they knew to be falsely alleged. AC ¶¶ 972; 371, 381

- Clayton participated in the search of Ryan McFadyen's dorm room AC ¶ 613

- Clayton reported directly defendant Gottlieb during the course of the investigation, AC ¶ 65.

       **7.**      **The Ninth Cause Of Action States §1983 Retaliation Claim Against Defendants.**

The Amended Complaint states a Section 1983 claim for retaliation in violation of the First Amendment. The First Amendment not only protects the right to speak and the right not to speak, but also the right to be free from state-sponsored retaliation for exercising those rights. *Suarez Corp. v. McGraw,* 202 F.3d 676, 685 (4th Cir. 2000); *see ACLU v. Wicomico County, Md.*, 999 F.2d 780, 785 (4th Cir.) ("Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights."). To state a cause of action for First Amendment retaliation, a complaint must show that (1) a plaintiff engaged in protected First Amendment conduct or speech; (2) defendants took some action that adversely affected (i.e., "chilled") Plaintiffs' First Amendment rights; and (3) a causal relationship between the protected conduct and the retaliatory actions alleged. *Id*. at 686; *Constantine v. Rectors & Visitors of George Mason Univ.,* 411 F.3d 474, 499 (2005).

As more fully explained in Plaintiffs' Brief in Opposition to the Duke Defendants, the AC sufficiently alleges each of the three elements of a Retaliation claim. *See* Pls. Opp. Br. (Duke Univ.) at §II.A.6.. First, the Amended Complaint alleges Plaintiffs participated in protected conduct: the right not to speak. *Id.*¶¶ 407, 411. Second, the AC sufficiently alleges retaliatory conduct by Defendants, Michael, and Addison that would

chill a person of reasonable firmness. *Id.* ¶¶ 429, 500-01. 504-16, 561, 566-76, 613, 625, 668-69, 901, 945(G), 947, 956(F), 972, 997, 1085, 1125-28, 1196. Finally, the AC alleges facts demonstrating a causal relationship between the protected activity and the retaliatory conduct by establishing a temporal nexus between the protected conduct and the retaliatory acts and by the confessions of co-conspirators that admit the retaliatory purpose. First, Plaintiffs establish a temporal nexus between the first two elements: the retaliatory stigmatization began the day after Defendants, Michael, and Addison and learned that Plaintiffs exercised their protected right not to speak. First, Himan and Gottlieb began work on a revised Affidavit that added new, sensational allegations to the already completely fabricated 610 N. Buchanan Search Warrant Application immediately after they were told that Plaintiffs chose to invoke their right not to speak with them—or anyone apart from counsel—about the events of March 13-14, 2006. (AC¶¶ 414-38). Second, Plaintiffs have alleged that multiple co-conspirators have openly admitted that the purpose of their conduct was to chill Plaintiffs' continuing exercise of their right not to speak about the events of March 13-14, 2006. (*Id.* ¶¶ 496-99). The statements of these co-conspirators are attributable to all Defendants, including Defendants, Michael, and Addison who are alleged to have participated in the conspiracy. F. R. Evid. 801(d) (2).

### a. Defendants, Michael And Addison Are Not Entitled To Qualified Immunity From Plaintiffs' First Amendment Claims.

Defendants, Michael, and Addison next argue that Plaintiffs' First Amendment claims should be dismissed as to them because, they contend, the violations alleged were not violations of clearly established law at the time, and, as such, they have qualified immunity from such claims. SMAC Br. at 11-14. On these allegations, Defendants' claim of qualified immunity fails completely. The rights alleged here have been clearly established by the Supreme Court and even more so by the Fourth Circuit. The Fourth Circuit has held that "[i]t is well established that a public official may not misuse his

22

power to retaliate against an individual for the exercise of a valid constitutional right."
*Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001) (citing *Suarez*, 202 F.3d at 685). The
Fourth Circuit has also held that *Suarez*, decided in 2000, clearly established a "bright
line" violation of the First Amendment whenever retaliatory or chilling speech
"include[s] a threat, coercion, or intimidation." *Blankenship*, 471 F.3d at 533 (quoting
*Suarez*, 202 F.3d at 688 n. 13 and identifying *Suarez* as establishing the same "bright
line" rule that Defendants are alleged to have violated here). Because Defendants
Soukup, Michael, Addison and Clayton's alleged conduct violated Plaintiffs' clearly
established rights, qualified immunity does not shield them from liability.

      **8.**    **The Tenth Cause Of Action States An Actionable Section 1983 Claim Against Defendants Soukup, Michael, Addison And Clayton For Depriving Plaintiffs Of The Privileges And Immunities Afforded To North Carolina Citizens In Violation Of 42 U.S.C. § 1983.**

The Amended Complaint states an actionable § 1983 claim for deprivation of
Plaintiffs' rights to the privileges and immunities guaranteed to them as citizens of the
United States by Article IV and the Fourteenth Amendment. For their defense against
this Cause of Action, Clayton, Addison, Michael, and Soukup all adopt and incorporate
by reference the Motion to Dismiss and Memorandum in Support of that Motion filed on
behalf of the City of Durham as their response to the Tenth Cause of action. [Document
#55 (Motion) and Document #56 (Memorandum).] Plaintiffs respond to the City's
arguments with respect to the Article IV and Fourteenth Amendment Privileges and
Immunities Claims as a basis for imposing *Monell* liability on the City in Plaintiffs'
Memorandum in Opposition to the City's Motion, and incorporate that argument here by
reference. For all the reasons that the City's arguments fail to support dismissal of
Plaintiffs' Tenth Cause of Action, and to the extent that the City's argument fails to
address the Plaintiffs' basis for asserting this Cause of Action against these Defendants,
Plaintiffs' Tenth Cause of Action may not be dismissed as to these Defendants.

Plaintiffs' analysis is more fully developed in Plaintiffs' Opposition to the Supervising Defendants Motion to Dismiss, Pls. Opp. Br. (City Super.) § II.A.3. In the interests of judicial economy, Plaintiffs incorporate that analysis by reference here.

> **9.** **The Eleventh Cause Of Action States An Actionable Section 1983 Claim Against Defendants Soukup, Michael, Addison And Clayton Defendants For Their Failure To Prevent Or Aid In Preventing The Ongoing Deprivations Of Plaintiffs' Constitutional Rights.**

The Eleventh Cause of Action states a Section 1983 "bystander liability" claim against Defendants Soukup, Michael, Addison and Clayton. An officer may be liable under § 1983, on a theory of bystander liability, "if he (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall v. Prince George's County,* 302 F.3d 188, 202-04 (4th Cir.2002). The Amended Complaint sufficiently alleges these elements. Plaintiffs allege that the Defendants had knowledge that fellow officers were violating Plaintiffs' constitutional rights, *Id.*¶¶ 404; had a reasonable opportunity to prevent the harm, *Id.*¶¶ 405; and chose not to act to prevent the harm, *Id.*¶¶ 458.

Soukup makes no argument for dismissal of the Plaintiffs' Eleventh Cause of Action. Instead, Soukup adopts and incorporates by reference the arguments in the Memorandum in Support of the Motion to Dismiss filed in this action on behalf of Baker, Chalmers, Hodge, Russ, Mihaich, Council, Lamb, Ripberger and Evans. [Document #55 (Motion) and Document #56 (Memorandum).]

For their part, Clayton, Addison, and Michael also make no argument in their Memorandum, with the exception of their general assertion of qualified immunity as a defense to all § 1983 claims asserted against them in the AC. As discussed, infra, in § XV, the AC's allegations, however, pierce any such assertion of qualified immunity.

Therefore, Plaintiffs' Section 1983 bystander liability claims against Defendants Soukup, Michael, Addison and Clayton may not be dismissed.

> **10.** **The Amended Complaint States Actionable Section 1983 Claims Against Soukup, As A Supervisory Defendant.**

Soukup makes no independent arguments in opposition to Plaintiffs Thirteenth Cause of Action, which asserts a §1983 supervisory liability claim against him in his official and individual capacity. Instead, Soukup adopts and incorporates by reference the arguments in the Memorandum in Support of the Motion to Dismiss filed in this action on behalf of Baker, Chalmers, Hodge, Russ, Mihaich, Council, Lamb, Ripberger and Evans. [Document #55 (Motion) and Document #56 (Memorandum).]

## III. CLAYTON, ADDISON, MICHAEL, AND SOUKUP DO NOT HAVE QUALIFIED IMMUNITY FOR PLAINTIFFS' § 1983 CLAIMS.

### A. The Qualified Immunity Standard

Qualified immunity does not apply to conduct that violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A right is "clearly established" if a reasonable official would have been on fair notice that the conduct at issue was unconstitutional at the time he engaged in the conduct. *Hope v. Pelzer,* 536 U.S. 730, 739 (2002) (internal quotations omitted). The inquiry is an objective one; it does not depend on "the subjective beliefs of the particular officer at the scene, but instead on what a hypothetical, reasonable officer would have thought in those circumstances." *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 279 (4th Cir. 2004) (quoting *Wilson v. Kittoe,* 337 F.3d 392, 402 (4th Cir. 2003)). A constitutional right is "clearly established" for qualified immunity purposes when either (1) it has been established by closely analogous case law; *see, id.,* or (2) "when the defendants' conduct is so patently violative of the constitutional right that reasonable officials would know without guidance from the

courts that the action was unconstitutional[.]" *Clem v. Corbeau*, 284 F.3d 543, 553 (4th Cir. 2002) (internal citations omitted). A Defendant may not avail himself of qualified immunity by ignoring the detailed facts alleged in the Complaint or recasting them into broad general propositions. *Saucer v. Katz*, 533 U.S. 194, 201 (2001). The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition ..." *id.* Therefore, to determine whether Defendants have qualified immunity at this preliminary stage the Court must first describe the Defendants' alleged conduct in the specific context of the circumstantial detail alleged in the Amended Complaint and in the light most favorable to the plaintiff, and then ask if pre-existing law made the unlawfulness of Defendants' conduct apparent. *See, e.g., W.E.T. v. Mitchell,* 2008 WL 151282, * (M.D.N.C. Jan. 10, 2008).

### 1. Clayton Does Not Have Qualified Immunity For Participating In The Execution Of Searches And Seizures Without Probable Cause

The Amended Complaint documents an extensive body of evidence that was known to Clayton on and before March 23, 2006, and which proved no rape or sexual assault occurred at 610 N. Buchanan Blvd. AC ¶¶ 321(A-M) - 332. Further, the Amended Complaint documents the evidence known to Clayton that, if there was any plausible basis to believe a Mangum had been sexually assaulted, the Plaintiffs were no longer possible suspects. AC ¶¶ 363-381, 383-384. All of the evidence of Mangum's fraud and Plaintiffs' innocence detailed in those pages were known to Clayton.

Clayton argues that there is no clearly established "right to be free from criminal investigation." Plaintiffs agree, but that is not the right they claim to have been violated in the First and Second Causes of Action. In the First and Second Causes of Action, Plaintiffs establish a violation of their right to be free from searches and seizures without probable cause. AC ¶¶ 909-927. That right includes the right to be free from searches and seizures authorized by warrants and other legal processes procured through

fabricated officer affidavits, which was established at least as early as 1978, in *Franks v. Delaware*, 438 U.S. 154 (1978). A reasonable officer who knew all that Clayton knew on March 23, 2006, when he participated in the NTID Order and on March 27, 2006, when he participated in execution of the McFadyen Search Warrant, would also know that participating in those searches and seizures violated Plaintiffs' clearly established rights. A "reasonable officer" with Clayton's knowledge of the fabricated Affidavits would also know that he may not reasonably rely upon a warrant he knows to have been procured by fraud. Therefore, Clayton does not have

> **2. Clayton Does Not Have Qualified Immunity For Causing Deprivations Of Plaintiffs' Due Process Right To §15A-282 Reports.**

Clayton is not entitled to qualified immunity from the claims asserted in Plaintiffs' Fourth Cause of Action because the right violated by his conduct was clearly established well before March of 2006, when he engaged in the conduct. AC ¶¶ 941-53. The authorities cited in Plaintiffs' discussion of the Fourth Cause of Action establish that Plaintiffs' Due Process right was established when the state statute created the property right Plaintiffs were deprived of through the unlawful agreement and/or understanding among Himan, Gottlieb, Clayton, Nifong, Clark, and Meehan to withhold the results Plaintiffs were entitled to by statute. The Due Process right to entitlements created by state law, including statutes such as §15A-282, was clearly established by the Supreme Court as early as 1972. *Roth,* 408 U.S. 564. In light of the Supreme Court's and Fourth Circuit's pre-2006 decisions, a "reasonable official" in the same position would understand, in the face of § 15A-282's clear declaration of Plaintiffs' entitlement to results of tests as soon as results were available, that withholding the results of tests long after they were available would violate Plaintiffs' federal rights. Moreover, Himan's active concealment from Plaintiffs of the fact that such tests had been conducted violates Plaintiffs' clearly established rights to be free of retaliatory searches and seizures. AC ¶¶

681-687; *Hope,* 536 U.S. at 741; *Meeker v. Edmundson*, 415 F.3d 317, 323 (4th Cir. 2005) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  A reasonable officer would know without guidance from the courts that the conduct alleged in this Cause of Action was unconstitutional, and, as such, closely analogous pre-existing case law is not required.  *Corbeau*, 284 F.3d at 553 (4th Cir. 2002).

> **3.**    **No Defendant Named In The Stigma-Plus Claim, Including Michael And Addison, Have Qualified Immunity.**

Addison and Michael are not entitled to qualified immunity from Plaintiffs' "Stigma-Plus" claims because the right to be free from deprivations of constitutional rights or tangible interests in connection with stigmatizing statements was clearly established in the Fourth Circuit in 2006.  The Fifth Cause of Action specifically relates to the participation of Addison, and Michael in the deliberate and malicious public vilification of the Plaintiffs in connection with the deprivation of their Fourth Amendment right to be free of searches and seizures (described in the First and Second Causes of Action).   The fabricated Affidavit and the statements made by Addison and Michael in the immediate aftermath of the unconstitutional searches and seizures evoked a furor among people of all races, both in the Durham community and around the world.  Over the course of the three weeks leading up to the April 17 Indictments, Addison and Michael exploited the fabrications in the NTID Affidavit and McFadyen Search Warrant.  Addison, in concert with Nifong and Duke's President and Vice President for Media Relations falsely and publicly insisted that Plaintiffs, who are white, and 43 of their white teammates participated in a brutal, racially-motivated gang-rape of a young African-American mother of two; that there was "no doubt" or they "knew" a rape occurred, and there was "really, really strong physical evidence" to prove it, that it was a "horrific crime [that] sent shock waves throughout our community;" that Plaintiffs were capable of committing such a heinous crime; that there was evidence also of a "deep racial

motivation"; and that the lacrosse team was a "pack" of "hooligans" who were presently seeking to "get away with it" by "stonewalling" the investigation and "remaining silent." AC ¶ 956. Addison and Michael continued making these incendiary statements even after they and their co-conspirators learned that at least four sources of male DNA were found in Mangum's rape kit and that every member of the Duke lacrosse team had been ruled out with 100% certainty as a contributor of the male DNA found on the rape kit items by the most sophisticated DNA testing available. The Amended Complaint alleges—and demonstrates—that these false statements were made in connection with the conduct subjecting Plaintiffs to unlawful searches and seizures. *Id.* ¶¶ 414-18, 596-615. Addison, for example, connected the two directly, saying that police would have never had to obtain the NTID Order compelling their DNA samples if the Plaintiffs were not stonewalling the investigators. AC ¶ 505.

The conduct described in the Fifth Cause of Action violated rights that were clearly established in 1983. In *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993). The Supreme Court considered a § 1983 claim against prosecutors based on false public statements connected with unconstitutional seizures authorized by an indictment issued upon false and fabricated testimony. Id at 262. The right was clearly established by the Fourth Circuit no later than 1988. In that year, the Fourth Circuit expressly acknowledged the implicit holding of *Paul* and held for this circuit that stigmatizing statements in connection with the deprivation of a tangible interest, including any federal right, is actionable under § 1983. *Stone v. Univ. of Md. Med. Sys. Corp.,* 855 F.2d 167, 172 n. 5 (4th Cir.1988) ("[w]e have required that, in order to deprive an employee of a liberty interest, a public employer's stigmatizing remarks must be 'made in the course of a discharge or significant demotion.'") (citing *Lawson v. Sheriff of Tippecanoe County,* 725 F.2d 1136, 1139 (7th Cir.1984); *Mosrie v. Barry,* 718 F.2d 1151, 1160-62 (D.C.Cir.1983); *Moore v. Otero,* 557 F.2d 435, 438 (5th Cir.1977)).); *see also Ridpath v.*

*Board of Governors Marshall University*, 447 F.3d 292, 309 (4th Cir. 2006) (clarifying that, in Stone, the Fourth Circuit "relied upon the established in decisions of our sister circuits" in recognizing a the "Stigma-Plus" theory of liability under § 1983.[10]

### 4. Clayton, Michael, And Addison Do Not Have Qualified Immunity For Retaliating Against Plaintiffs For Exercise Of First Amendment Rights.

Clayton, Michael, and Addison are alleged to have participated in the conspiracy to retaliate against Plaintiffs for refusing to consent to police interrogations. Plaintiffs' right to be free of retaliation for the exercise of their First Amendment rights was clearly established no later than 2001. In 2001, the Fourth Circuit has unequivocally stated: "[i]t is well established that a public official may not misuse his power to retaliate against an individual for the exercise of a valid constitutional right." *Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001) (citing *Suarez*, 202 F.3d at 685). Michael and Addison do not assert any defense or immunity arising out of the fact that much of their retaliatory conduct was, itself, speech. It would not be of any consequence if they had asserted such a defense or claim to immunity. Pre-existing law in this circuit clearly established that their retaliatory speech was not protected and was actionable under § 1983. The Fourth Circuit held that the Fourth Circuit's decision in *Suarez*, decided in 2000, clearly established a "bright line" violation of the First Amendment whenever retaliatory or chilling speech "include[s] a threat, coercion, or intimidation." *Blankenship*, 471 F.3d at 533 (quoting *Suarez*, 202 F.3d at 688 n. 13 and identifying *Suarez* as establishing the same "bright line" rule that Defendants are alleged to have violated here). A reasonable officer in Clayton, Michael, and Addison's position would understand, based upon clearly established, pre-existing law in this circuit, that making public statement that

foment racial animus and direct it toward an accused violates Plaintiffs' clearly established rights.

>    5.    **Defendants Are Not Entitled To Qualified Immunity For Discriminatory And Abusive Enforcement Of The Criminal Laws Because Plaintiffs Were "Temporary" Residents Of North Carolina.**

Soukup, Addison, and Clayton are not entitled to qualified immunity for violations of the Privileges and Immunities Clause of Article IV or violations of the Privileges or Immunities Clause of the Fourteenth Amendment (collectively, "the Privileges and Immunities Clauses). Plaintiffs' right to be free from discrimination and disparate treatment because of their status as "temporary" residents was "clearly established" as a right fundamental to and "implicit in the concept of ordered liberty" in 1868. *Paul v. Virginia,* 75 U.S. 168, 180 (1868) ("[W]ithout some provision ... removing from the citizens of each State the disabilities of alienage in the other States, and giving them equality of privilege with citizens of those States, the Republic would have constituted little more than a league of States; it would not have constituted the Union which now exists."). Since 1868, the Privileges and Immunities protections have been identified by the Supreme Court as fundamental to our constitutional order. Clayton's acts were in furtherance of the City's Zero Tolerance Policy, which by its terms, as stated by Captain Sarvis, AC ¶ 113, targeted short-term residents for disparate treatment, including disproportionate enforcement of the criminal laws. The discriminatory customs, practices, and policies are well documented in the Amended Complaint. AC ¶¶ 116-122, 123-28, 129-137, 138-170, and Plaintiffs' fullest analysis of the Tenth Cause of Action is in Pls. Opp. Br. (City Super.) § II.A.3.

The Amended Complaint alleges that Clayton was a common violator of the fundamental constitutional right prior to the abuses he committed in the 'investigation' of Mangum's false allegations. AC ¶ 65; § II-IV. Violations of the rights protected by the

31

Privileges and Immunities Clauses are so worn into the fabric of our nation's constitutional order that it goes without saying that the rights Clayton violated were clearly established before the year 2006. *See, e.g., Paul*, 75 U.S. 168, 180*; Saenz v. Roe*, 526 U.S. 489, 501 (1999). Therefore, Clayton is not entitled to qualified immunity for Plaintiffs' Privileges and Immunities Claims.

### 6. Clayton Does Not Have Qualified Immunity For Engaging In Conduct That Shocks The Conscience.

Defendants assert qualified immunity against Plaintiffs' § 1983 substantive due process claims. The first step in determining if a person is immune for actions under § 1983 for substantive due process claims is to determine "whether the challenged government actions shocks the conscience of federal judges." Moore v. *Guthrie* 438 F. 3d 1036, 1040 (10th Cir. 2006) (Citing to *Ruiz v. McDonnell*, 299 F. 3d 1173, 1183 (10th Cir. 2002)). Additionally, this right must be clearly established at the time it as violated. *Seigert v. Gilley* 500 US 226, 232 (1992). Conduct that shocks the conscience is not simply intentional it is "intended to injure in some way unjustifiable by any government interest." *Hawkins v. Freeman* 195 F. 3d 732, 742 (4th Cir. 1999). Therefore conduct that shocks the conscience by violating clearly established rights is not entitled to qualified immunity. *Martinez v. City of Oxnard* 337 F. 3d 1091, 1092 (9th Cir, 2003). *See Also Butler v. Rio Rancho Public Schools Bd. Of Educ.* 341 F. 3d 1197, 1201 (10th Cir, 2003) (The School's decisions was not arbitrary, nor does it shock the conscience. Accordingly, the decision did not violate Mr. Butler's substantive due process rights if any. Since the Butlers failed to state a substantive due process violation, we conclude the school is entitled to qualified immunity on the Butlers' substantive due process claims.)

### 7. Soukup, Michael, Addison, And Clayton Do Not Have Qualified Immunity For Failing To Intervene To Prevent Fellow Officers

**From Violating Plaintiffs Constitutional Rights In Their Presence Or Within Their Knowledge.**

Soukup, Michael, Addison, and Clayton is not entitled to qualified immunity for Plaintiff's Section 1983 Bystander Officer Claim because a police officer's obligation to act to protect a citizen from ongoing constitutional violations occurring in their presence or within their knowledge was clearly established in this circuit in 2002. In *Randall v. Prince George's County,* 302 F.3d 188, 202-04 (4th Cir.2002). A "reasonable official" in the same position "would understand that what he is doing violates" Plaintiffs' clearly established right to the aid of an officer who knows his fellow officers are violating Plaintiffs' constitutional rights.

## IV.  THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS FOR PARTICIPATION IN CIVIL RIGHTS CONSPIRACIES.

### A.  Conspiracies In Violation Of 42 U.S.C. § 1983.

The Fifteenth Cause of Action alleges a broad conspiracy, agreement, or understanding shared by all named Defendants in this action. AC ¶ 1147-55. The objective of the unifying conspiracy alleged in the Fifteenth Cause of Action was to unlawfully force the wrongful indictment, prosecution, and, ultimately, incarceration of the Plaintiffs, as the principals or accomplices in a horrific, racially motivated gang-rape, which all Defendants in this action knew or were deliberately indifferent to the likelihood that it did not occur. The conduct giving rise to the Fifteenth Cause of Action is alleged in the Fifteenth Cause of Action by incorporation of the First through Eleventh Causes of Action (collectively, "the Predicate Violations"). The required showing of constitutional harm done in furtherance of the conspiracy is met by the showings of constitutional violations in the First through Eleventh Causes of Action. The Predicate Violations are constitutional deprivations caused by acts in furtherance of the Conspiracy to Convict, and were the direct and proximate cause of the damages alleged. The acts and omissions

that establish the Predicate Violations are alleged to be done in furtherance of the unifying common objective and plan of the larger conspiracy to convict.

The Amended Complaint alleges the combined and concerted conduct of so many pursuant to a preordained plan.  AC ¶ 1152.  The plan was "made in quiet deliberation and discussion" among officials with final policymaking authority with respect to the matters described in the Amended Complaint. *Id.* The acts and omissions described in the Amended Complaint evince a malicious and corrupt intent to harm the Plaintiffs.  AC ¶¶ 1153; 1147-1155.  The cumulative effect of the concerted wrongdoing among so many is so egregious that it "shocks the conscience" in violation of the Fourteenth Amendment as to shock the contemporary conscience.  AC ¶ 1153.  The Fifteenth Cause of Action alleges that Defendants violated § 1983 by conspiring to deprive Plaintiffs of their rights under the Fourth and Fourteenth Amendments, including the substantive Due Process protections of the Fourteenth Amendment, and, in furtherance of the conspiracies, committing overt acts that caused actual violations of Plaintiffs' rights.  AC ¶ 1150(A)-(O).

## V.    The Amended Complaint States Actionable Claims for Conspiracy in Violation of 42 U.S.C. § 1985.

### A.    Conspiracies In Violation Of § 1985(2) And (3).

Plaintiffs allege four Conspiracies in violation of § 1985.  To state a cause of action under 42 U.S.C. § 1985(2), a plaintiff must allege that "two or more persons conspire[d] for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws...." 42 U.S.C. § 1985(2).

The Sixteenth Cause of Action alleges that Addison, Michael, Nifong, Gottlieb, Himan, Wilson, Steel, the DNASI Defendants, the Crisis Management Team Defendants, the SANE Defendants, Graves, Dean, the Duke Police Supervising Defendants, and Duke

University conspired to impede or obstruct the due course of justice in North Carolina generally with the intent to deny Plaintiffs the equal protection of the laws in violation of 1985(2). AC ¶¶ 1156-59. Defendants, motivated by race-based invidiously discriminatory motives, violated this statute by conspiring to deprive Plaintiffs of their federally secured rights as alleged elsewhere in the First through Eleventh Causes of Action and by fomenting race-based animus within the Plaintiffs' community. *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

Additionally, Sixteenth cause of action alleges that Nifong, Gottlieb, Himan, Clayton, Addison, Michael, the Durham Police Supervising Defendants, the SANE Defendants, the City of Durham, and Duke University conspired to impede or obstruct the due course of justice in North Carolina generally with the intent to intimidate witnesses, including the Plaintiffs, elicit false statements and testimony from Plaintiffs and other witnesses, and to prevent them from testifying truthfully to matters with the general objective of securing Plaintiffs' convictions as principals or accessories in state court for crimes they knew did not happen. AC ¶¶ 1161.

To establish a violation of 42 U.S.C. § 1985(3), a plaintiff must allege that "two or more persons in any State or Territory conspire…(1)for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (2)or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws." 42 U.S.C. § 1985(3).

The Sixteenth Cause of Action alleges that, in violation of 42 U.S.C. § 1985(3) (cl.2), Nifong, Gottlieb, Himan, Clayton, Addison, Michael, the Durham Police Supervising Defendants, Steel, the Crisis Management Team Defendants, the Duke Police Supervising Defendants, the SANE Defendants, the City of Durham and Duke

University, conspired with others to deprive Plaintiffs of their federal rights with the purpose of targeting "temporary residents" for disparate treatment and abusive enforcement of the criminal laws depriving Plaintiffs of the equal privileges or immunities of national citizenship under the laws thereby violating this statute by conspiring to deprive Plaintiffs of their federally secured rights. AC ¶¶ 1156-1169; *Phillips v. Mabe*, 367 F. Supp. 2d 861, 873 (M.D.N.C. 2005). Plaintiffs also allege in the Sixteenth Cause of Action an independent §1985(3) Claim arising out of animus directed to Plaintiffs status as "temporary residents" and, on that basis, subject them to discriminatory and abusive police tactics, thereby imposing "disabilities of state citizenship" in deprivation of their equal protection and immunities under laws. AC ¶ 1164-65.

**B.    The Amended Complaint States A Violation Of 42 U.S.C. §1986.**

Plaintiffs' Seventeenth Cause of Action (the "Section 1986 Claims") alleges that Defendants Soukup, Michael, Addison and Clayton violated 42 U.S.C. § 1986 by refusing or neglecting to prevent or aid in the preventing of the § 1985 Conspiracies (alleged in the Sixteenth Cause of Action), despite having the power and knowledge to do so. The Plaintiffs have stated actionable Section 1986 Claims against the Defendants, having alleged the predicate § 1985 Conspiracies in the Sixteenth Cause of Action, as well as the § 1985 elements and facts from with they may be inferred.  AC ¶¶ 1170-88.

**C.    The Amended Complaint Alleges Sufficient Direct And Circumstantial Evidence To Establish An Unlawful Conspiracy.**

Plaintiffs respond to the Defendants' assertions or suggestions that *Twombly* creates a heightened pleading requirement in § 1983 Actions.  Plaintiffs address this argument in Plaintiffs Opposition to the SANE Defendants' Brief at §1(A).

**D.      The § 1985 Claims Allege Racial Animus Of Two Types**

**1.      Section 1985 Prohibits Invidious Animus Against Any Race.**

Several Defendants have asserted that only members of a "minority" or "traditionally disadvantaged" group may avail themselves of the protections of § 1985. At step one, by its terms, the statute applies to any person or class of person. 42 U.S.C. § 1985(3) (2000). Consistent with the statutory language, we have found no cases in this circuit that held that members of other races have no standing to bring a § 1985(3) claim That is consistent with the broader equal protection principles of the statute itself. Further, courts, including this one, have consistently rejected the argument. *See, e.g., Mabe*, 367 F. Supp. 2d at 873-74 (the contention that Plaintiff "cannot rely on §1985(3) because he is not a minority is without merit."); *Waller v. Butkovich*, 605 F. Supp. 1137, 1144-45 (M.D.N.C. 1985) (rejecting the assertion that Section 1985(3) requires the alleged animus be directed at a traditionally disadvantaged group). In addition, this Court and others have expressly permitted white plaintiffs to bring claims under § 1985 in response to animus against them based on their race or even their perceived racist beliefs. See Waller, 605 F. Supp. 1137   The Fourth Circuit's decision in *Harrison v. KVAT Food Management*, urged by many Defendants held only that "victims of purely political conspiracies" do not have standing on that basis to bring a § 1985(3) claim. 766 F.2d 155, 161 (4th Cir. 1985). *Harrison's* passing mention of "blacks" was merely a counterexample invoked to explain the difference between a victim of political conspiracy and a member of a "race or class" that is protected by § 1985(3). See id.

Defendants Were Motivated by, Fomented, and Took Advantage of Racial Animus.

Civil Rights conspiracies under § 1985(2) & § 1985(3) require proof of invidious animus based on race or other protected status. See Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 340 (1993). Defendants argue (1) that Plaintiffs have failed to allege membership in any such class; (2) that Plaintiffs are alleging that "Duke students"

or "Duke lacrosse players" are a protected class; or (3) that Plaintiffs have failed to allege animus at all. Each of these arguments is incorrect.

Plaintiffs allege that Defendants' acts in furtherance of the § 1985 conspiracies were motivated by invidious animus based on race and were intended to foment and take advantage of racial animus against Plaintiffs. AC ¶ 1375. Race—any race—is an established protected classification. See infra § 2. The Amended Complaint is replete with details from which to infer Defendants' invidious racial motives. See, e.g.:

- The Racist Dimension of The Conspiracy To Convict. AC ¶ 566-90.

- Spoliation of DECC Evidence. AC ¶ 568-69.

- Nifong's Acts in Furtherance of the Conspiracy to Fabricate. AC ¶¶ 577-80.

- Brodhead's Acts in Furtherance of the Conspiracy to Fabricate the "Racist" dimension to Mangum's False Rape and the Duke Faculty's Acts in Furtherance of the Conspiracy. AC ¶¶ 581-90.

- Nifong's Public Acts and Statements, AC ¶¶ 502-03.

- Addison Publicly Stigmatized the Plaintiffs, AC ¶ 504-06.

- The Established Policy or Custom of Disseminating Defamatory Posters in Potentially High-Profile Cases, AC ¶ 525-27.

- Duke Officials Publicly Stigmatized the Plaintiffs AC ¶¶ 528-35.

- Duke University's Clergy Publicly Stigmatize the Plaintiffs AC ¶ 554

- Duke University and City of Durham Officials with Final Policymaking Authority Ratified and Condoned the Foregoing Faculty and Employee Statements AC ¶¶ 555-58.

*See also*, AC ¶¶ 500-06; 544-59; 568-69; 570-76; 577-90; 1375. These allegations are based on fact, not "legal conclusion." See Green v. Maroules, 211 F. App'x 159, 162-63

(4th Cir. 2006) (holding that plaintiff who alleged she was target of racial profiling and conspiracy to falsely arrest her alleged racial animus and properly stated a claim under § 1985).

Defendants uniformly assert that "invidious racial animus" is not satisfied by deliberate acts designed to "create racial tensions or take advantage of racial animus on the part of others in order to achieve some other objective." City Br. at 32, citing Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). That is not the holding of Griffin which defined the "racial animus" element to require that the alleged "conspiracy . . . must aim at a deprivation of the equal enjoyment of rights secured by the law to all."

There is powerful guidance on this point also from the treatment given to the requirement of all actions brought under 42 U.S.C. § 1982 that the plaintiff prove invidious animus based on race or class. With respect to fomenting racial animus "regardless of defendants' ultimate motivation, the fact that they deliberately stirred up and harnessed the racial animosity of others to serve their own ends is sufficient to find a violation." Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc., 41 F.3d 1190, 1194 (7th Cir. 1994); see also Clark v. Universal Builders, Inc., 501 F.2d 324, 331 (7th Cir. 1974) (defendants cannot escape liability for acting with racial animus in violation of § 1982 by "proclaiming that they merely took advantage of a discriminatory situation created by others"); Ortega v. Merit Ins. Co., 433 F. Supp. 135, 140-41 (N.D. Ill. 1977) (quoting Clark, 501 F.3d at 331).

## VI.  THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS UNDER STATE LAW AGAINST DEFENDANTS SOUKUP, MICHAEL, ADDISON AND CLAYTON.

The remaining causes of action asserted against Defendants Soukup, Michael, Addison and Clayton are alleged under North Carolina law. They include claims for Common Law Abuse of Process and Conspiracy, Intentional Infliction of Emotional

Distress and Conspiracy, Negligence, Negligent Supervision, Retention, Training, and Discipline, and Negligent Infliction of Emotional Distress.

### A. The Amended Complaint States A Common Law Abuse Of Process Claim Against Defendants Addison And Clayton.

The Nineteenth Cause of Action states an actionable claim for Common Law Abuse of Process. To state a claim for Abuse of Process, a complaint must allege (1) a willful act by the defendant, (2) done with bad intent or ulterior motive, (3) after valid process has been issued at defendant's behest, (4) whereby the defendant attempts to use the process to accomplish a purpose for which it was not intended. *Carson v. Moody*, 394 S.E.2d 194 (1990). It is the malicious perversion of a legally issued process whereby a result not lawfully or properly obtainable under it is [intended] to be secured. *Stanback*, 254 S.E.2d 611 (1979) (quoting *Barnette v. Woody*, 88 S.E.2d 223 (1955)); W. Page Keeton, Prosser and Keeton on the Law of Torts, Section 121 (5th ed. 1984) ("The gist of the tort is the misuse of process for an end other than that which it was designed to accomplish").11 The AC states a claim for Abuse of Process against Addison and Clayton. AC ¶¶ 1203-12. Addison and Clayton do not mention let alone make any argument for address this claim at all in their brief.

### B. The Amended Complaint States An Intentional Infliction Of Emotional Distress Claim Against Defendants.

The Twentieth Cause of Action states an actionable claim for Intentional Infliction of Emotional Distress ("IIED"). To state a claim for IIED under North Carolina law, a plaintiff must allege: "(1) extreme and outrageous conduct by the defendant; (2) which is intended to and does in fact cause (3) severe emotional distress." W.E.T. v. Mitchell, No.

1:06CV487, 2007 WL 271294, at *8 (M.D.N.C. Sept. 14, 2007); *see also* Waddle v. Sparks, 414 S.E.2d 22, 27 (N.C. 1992) (stating same essential elements for IIED). "A claim may also exist where the defendant's actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress." W.E.T., at *8 (citing to Hogan v. Forsyth Country Club Co., 340 S.E.2d 116, 119-20 (N.C. Ct. App. 1986)). With respect to Addison and Michael, the AC alleges the elements of IIED, and, further, makes additional allegations from which the elements may be inferred. AC ¶ 1213-22.

The only argument for dismissal of this cause of action is that the conduct alleged was not sufficiently outrageous as a matter of law. SMAC Br. at 25. In light of the North Carolina Supreme Court's decision in West, this argument fails. In *West*, the North Carolina Supreme Court reversed a directed verdict for a shopkeeper who accused the plaintiffs of stealing a hand cart. When plaintiffs attempted to offer proof that they purchased the hand cart, the shopkeeper ignored their offer of proof. Instead, the manager announced "in the presence of others that they stole the merchandise and would be arrested if they did not return it." *See id*. at 625 (quotation marks omitted). The North Carolina Supreme Court held that it was "manifest" that the shopkeeper's conduct was "extreme and outrageous conduct," adding that

> Few things are more outrageous and more calculated to inflict emotional distress on innocent store customers that have paid their good money for merchandise and have in hand a document to prove their purchase than for the seller or his agent, disdaining to even examine their receipt, to repeatedly tell them in a loud voice in the presence of others that they stole the merchandise and would be arrested if they did not return it. . . . [T]he store manager's last remarks to the [plaintiffs] as they left the store, a threat of prosecution in the future, left the [plaintiffs] under a continuing apprehension of prosecution for a year after this incident. . . . [T]hese factors together constitute sufficient evidence upon which a reasonable jury could have returned a verdict in favor of the plaintiffs.

*Id*. at 625-26 (alteration, citations, and quotation marks omitted).

Here, Defendants did not simply accuse Plaintiffs of a minor theft in front of other store customers. Addison conspired with Gottlieb, Hodge, Nifong, and others to engage in a prolonged campaign to foment racial hostility and a pervasive belief in plaintiffs' guilt for crimes these defendants knew never happened. They made false, inflammatory, and racially-charged statements both to the Durham community and the world accusing Plaintiffs of committing a racially-motivated gang rape—statements that predictably led to death threats and other epithets against Plaintiffs and subjected Plaintiffs to fear felony convictions as accessories to a crime that never occurred for over a year. AC ¶¶ 566-67, 577. Like the shopkeeper in *West*, Addison conspired with others to willfully ignore overwhelming evidence of innocence, but, worse than the shopkeeper in *West*, they concealed proof that no crime occurred and fabricated evidence in an effort to establish that it did. See, e.g., AC ¶¶ 569.

### C. The Amended Complaint States A Negligence Claim Against Defendants.

The Twenty-Fifth Cause of Action states an actionable Negligence claim against Defendants, Michael, and Addison. To state a negligence claim, a plaintiff must allege that (1) defendant owed plaintiff a duty of care, (2) the defendant breached that duty, and (3) defendant's breach was the actual and proximate cause of plaintiff's injury. *Cameron v. Merisel Props*, Inc., 652 S.E.2d 660, 664 (N.C. Ct. App. 2007) (quoting *Thomas v. Weddle*, 605 S.E.2d 244 (N.C. Ct. App. 2004)). The Amended Complaint states an actionable negligence claim against Defendants Soukup, Michael, Addison and Clayton. AC ¶¶ 1261-67. Defendants Michael and Addison argue that the Plaintiffs' negligence claims should be dismissed because, they contend, they owed Plaintiffs no "duty". SMAC Br. at 24-25. Their argument fails because, under North Carolina law, "every person" who engages in an active course of conduct that creates the risk of foreseeable harm to other persons, owes a duty of care to such other persons.

North Carolina's common law of ordinary negligence "'imposes upon every person *who enters upon an active course of conduct the positive duty to exercise ordinary care to protect others from harm*, and calls a violation of that duty negligence.'" *Peal v. Smith*, 444 S.E.2d 673, 677 (N.C. Ct. App. 1994) (emphasis in the original) (quoting *Hart v. Ivey*, 420 S.E.2d 174, 178 (N.C. 1992)). "The duty to protect others from harm arises whenever one person is by circumstances placed in such a position towards another that anyone of ordinary sense who thinks will at once recognize that if he does not use ordinary care and skill in his own conduct with regard to those circumstances, he will cause danger of injury to the person or property of the other." *Lumsden v. U.S.*, 555 F.Supp.2d 580, 589 (E.D.N.C. May 7, 2008) (quoting *Quail Hollow E. Condo. Ass'n v. Donald J. Scholz Co.*, 268 S.E.2d 12, 15 (N.C. Ct. App. 1980)). "Every man is in general bound to use care and skill in his conduct wherever the reasonably prudent person in his shoes would recognize unreasonable risk to others from failure to use such care." *Id*. (quoting *Estate of Mullis v. Monroe Oil Co.*, 505 S.E.2d 131, 137 (N.C. 1998)). Thus, a duty of care arises from any conduct where the risk of harm to another is both unreasonable and foreseeable. *Mullis*, 505 S.E.2d at 137. Therefore, it is every person's duty is to avoid foreseeable, unreasonable risk of harm to others. *Id.* (quoting Justice Cardozo's "classic analysis of duty" in *Palsgraf v. Long Island R. Co.*, 162 N.E. 99 (N.Y. 1928) ("*The risk reasonably to be perceived defines the duty to be obeyed… .*") (emphasis in original)).

The test for whether Plaintiffs have stated a claim for negligence "is no more than whether [defendant(s) / or his/her/their agents], in undertaking to perform an active course of conduct, exercised such ordinary care as is required of a reasonable, prudent person under the circumstances." *Lumsden*, 555 F.Supp.2d at 589 (alteration not in original).

Taking as true the allegations contained in the Complaint, these defendants owed a duty of ordinary care to plaintiffs. The AC alleges that, when Addison and Michael made the false statements described in the AC, they owed Plaintiffs a duty to use due care to avoid foreseeable harm to the Plaintiffs with respect to their public statements concerning the investigation of Mangum's claims. AC 1261-67. It was within the ambit of the risk they took in making their statements that the statements would be false and cause Plaintiffs to suffer the harms alleged in the AC. *Id*. Further, the AC alleges that their statements were made in violation of the Police Department's policies and general orders, all of which applied to them and are evidence of a duty. Id.; *See,* 514-15. These allegations are more than sufficient to state actionable negligence claims against Defendants Michael, and Addison; as such, their motion to dismiss Plaintiffs' negligence claims must be denied.

Defendants assert that they are generally immune for negligence due to public official immunity. Plaintiffs acknowledge that police officers are immune from suit in their individual capacity for suits in negligence that relate to discretionary functions. "As long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption, he is protected from liability." *Smith v. State,* 222 S.E.2d 412, 430 (N.C. 1976) (citations omitted). Public official immunity does not protect an official's malicious or corrupt conduct in the performance of their official duties. *Slade v. Vernon,* 110 N.C.App. 422, 429 S.E.2d 744 (1993). Public Official immunity from negligence suits does not extend to an official, in his official capacity, when the governmental employer "has waived immunity by the purchase of liability insurance." Thompson v. Town of Dallas 543 S.E.2d 901, 905 (N.C.App. 2001). Plaintiffs have asserted that the City of Durham is part of a municipal risk pool scheme the extent of which will not be known until Discovery is conducted. AC ¶ 48.

### D. The Amended Complaint States A Negligent Supervision, Retention, Training, And Discipline Claim Against Defendants.

The Twenty-Sixth Cause of Action states an actionable claim for Negligent Supervision, Retention, Training, and Discipline ("Negligent Supervision") against the Supervising Defendants.12    Instead, Soukup adopts and incorporates by reference the arguments in the Memorandum in Support of the Motion to Dismiss filed in this action on behalf of Baker, Chalmers, Hodge, Russ, Mihaich, Council, Lamb, Ripberger and Evans.   [Document #55 (Motion) and Document #56 (Memorandum).]

Plaintiffs are not seeking to impose liability on the Supervisory Defendants in their individual capacities on this claim, only to hold the City liable both directly and based on official capacity. Therefore, the Court does not need to reach the Supervisory Defendants' arguments with respect to this cause of action.

### E. The Amended Complaint States A Negligent Infliction Of Emotional Distress Claim Against SMAC Defendants.

The Twenty-Seventh and Twenty-Eighth Cause of Action states an actionable claim for Negligent Infliction of Emotional Distress ("NIED") against Defendants Michael (28) and Addison (27 and 28).   To state a cause of action for Negligent Infliction of Emotional Distress ("NIED"), the plaintiff must allege that the defendant (1) negligently engaged in conduct, (2) under circumstances in which it was reasonably foreseeable that the conduct would cause the plaintiff severe emotional distress; and (3) the conduct caused the plaintiff severe emotional distress. *Johnson v. Ruark Obstetrics & Gynecology Assoc.*, 395 S.E.2d 85, *reh. den.*, 399 S.E.2d 133 (1990). The term "severe emotional distress" means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling

emotional or mental condition which may be generally recognized and diagnosed by a professional trained to do so. *Sorrells v. M.Y.B. Hospitality Ventures*, 435 S.E.2d 320, 322 (1993); *Johnson*, 395 S.E.2d 85. The AC alleges the elements, AC ¶¶ 1272-89, and it also makes allegation from which the elements may be inferred. The AC alleges that Addison and Michael, through their public reports and characterizations of the "evidence" in the case, subjected Plaintiffs to national and international public infamy, made them pariahs in their communities and around the world, and forced them to endure the extortionate pressures caused by their conduct for over a year, while under the threat of criminal prosecution for the horrific crimes they alleged and which never happened. AC ¶1278. Addison and Michael make no argument for dismissal of this Cause of Action against them, except for an implied argument that the allegations do not state the negligent conduct that is a necessary predicate to the claim and public official immunity. For the reasons discussed above, Plaintiffs have sufficiently alleged such negligence. Therefore, Defendants motion to dismiss this cause of action must be denied.

## VII.  THE COURT MAY DISMISS OFFICAL CAPACITY CLAIMS WHERE THE CITY IS ALSO NAMED AS A DEFENDANTS AND IS THE REAL PARTY IN INTEREST

Defendants Soukup, Michael, Addison and Clayton request that the court dismiss official capacity claims in which the City of Durham is already named directly as a defendant as duplicative. Plaintiffs agree that under Civil Rights statues, a claim against an official in their official capacity in which the governmental is also named is "in all respects other than name, to be treated as a suit against the [municipality]. Claims against the official in his or her official capacity which are duplicative of claims against a government entity are subject to dismissal. *Wet v. Mitchell* 2007 WL 2712924 at *10 (citing to *Kentucky v. Graham,* 473 U.S. 159, 166(1985)*; See Shaeffer v. County of Chatham,* 337 F.Supp.2d 709, 721 (M.D.N.C.2004)  (claims against a defendant in their official capacity were dismissed as duplicative of the municipality).  Therefore the Court

may dismiss all official capacity claims against Soukup, Michael, Addison, and Clayton in causes of action 4-5, 9-11, 15-17 because the City of Durham is a party in each claim.

Without conceding that the same principle applies to state law claims, Plaintiffs will waive the official capacity claims against Soukup, Michael, Addison, and Clayton in causes of action 19, 25-28 as the entity is also a party that action and the claims is therefore redundant. Plaintiffs will not waive the official capacity claims of Addison in cause of action 20 as the entity is not a party to the action. Consequently, this claim should not be dismissed unless the City of Durham is substituted directly as a defendant in these claims. Additionally Plaintiffs will not waive official capacity claims against Defendants Soukup, Michael, Addison, and Clayton is causes of action 6-7 and 13 as the claims are only in their individual capacity.

## VIII.  DEFENDANTS MAKE NO MORE ARGUMENTS

Defendants have made no other arguments in support of dismissal of Plaintiffs' claims. Defendants have, however, requested oral argument on their motions, pointing to the "complexity" of the issues raised by the Amended Complaint. Already, the Defendants, collectively, have been authorized by the Court to submit 825 pages to brief and reply in support of their motions. Any "complexity" that cannot be clarified in the course of 825 pages is not likely to be clarified in argument. That is particularly true if the Defendants at argument persist, as they have here, in recasting Plaintiffs' allegations to find a foothold for their arguments. With respect, Plaintiffs request that the Defendants' request for oral argument be denied, and Plaintiffs request leave to schedule the Rule 26(f) discovery conference.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motions to Dismiss, except that, where the City is already named as a defendant in the Causes of Action, the Court may dismiss the official capacity claims alleged in those causes of action. Defendants' request for oral argument should be denied, and Plaintiffs' request for leave to conduct the Rule 26(f) discovery conference should be granted.

Dated:  October 10, 2008                    Respectfully submitted,

**EKSTRAND & EKSTRAND LLP**

/s/ Robert C. Ekstrand
_____
Robert C. Ekstrand, Esq. (NC Bar #26673)
Attn:  Stefanie A. Sparks
811 Ninth Street, Suite 260
Durham, North Carolina 27705
Email:  rce@ninthstreetlaw.com
Email:  sas233@law.georgetown.edu
Phone: (919) 416-4590
*Counsel for Plaintiffs Ryan McFadyen,*
*Matthew Wilson, and Breck Archer*

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF NORTH CAROLINA

RYAN MCFADYEN, ET AL.,

      Plaintiffs,

V.

DUKE UNIVERSITY, ET AL.,

      Defendants.

Civil Action No. 1:07-cv-953

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on October 10, 2008, I electronically filed the foregoing PLAINTIFFS' OPPOSITION TO DEFENDANTS SOUKUP, MICHAEL, ADDISON AND CLAYTON' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

James Donald Cowan, Jr.
Ellis & Winters, LLP
100 North Greene Street, Suite 102
Greensboro, NC  27401
***Counsel for the University Defendants***

Dixie Wells
Ellis & Winters, LLP
100 North Greene Street, Suite 102
Greensboro, NC  27401
***Counsel for the University Defendants***

Jamie S. Gorelick
Wilmer Cutler Pickering Hale and Dorr, LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
***Counsel for the University Defendants***

Jennifer M. O'Connor
Wilmer Cutler Pickering Hale and Dorr, LLP
1875 Pennsylvania Ave., N.W.
Washington, DC  20006
***Counsel for the University Defendants***

Paul R.Q. Wolfson
Wilmer Cutler Pickering Hale and Dorr, LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
***Counsel for the University Defendants***

William F. Lee
Wilmer Cutler Pickering Hale and Dorr, LLP
60 State Street
Boston, MA  02109
***Counsel for the University Defendants***

Dan J. McLamb
Yates, McLamb & Weyher, LLP
One Bank of America Plaza, Ste 1200
421 Fayetteville Street
Raleigh, NC 27601
***Counsel for the Sane Defendants***

Reginald B. Gillespie, Jr.
Faison & Gillespie
P.O. Box 51729
Durham, NC 27717
***Counsel for the City of Durham, North Carolina***

Patricia P. Kerner
Troutman Saunders, LLP
434 Fayetteville Street, Suite 1900
Raleigh, NC 27601
***Counsel for Steven Chalmers, Patrick Baker, Beverly Council, Ronald Hodge, Jeff Lamb, Stephen Mihaich, Michael Ripberger, Laird Evans, and Lee Russ***

D. Martin Warf
Troutman Sanders LLP
P.O. Drawer 1389
Raleigh, North Carolina 27602
***Counsel for Steven Chalmers, Patrick Baker, Beverly Council, Ronald Hodge, Jeff Lamb, Stephen Mihaich, Michael Ripberger, Laird Evans, and Lee Russ***

James B. Maxwell
Maxwell, Freeman & Bowman
P.O. Box 52396
Durham, NC  27717-2396
***Counsel for David Addison, Kammie Michael, Richard D. Clayton and James T. Soukup***

Joel M. Craig
Kennon, Craver, Belo, Craig & McKee
4011 University Drive, Suite 300
Durham, NC 27707
***Counsel for Benjamin W. Himan***

Edwin M. Speas, Jr.
Poyner & Spruill, LLP
P.O. Box 10096
Raleigh, NC 27605-0096
***Counsel for Mark Gottlieb***

Eric P. Stevens
Poyner & Spruill, LLP
P.O. Box 10096
Raleigh, NC 27605-0096
***Counsel for Mark Gottlieb***

Kearns Davis
Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P.
P.O. Box 26000
Greensboro, NC 27420
***Counsel for DNA Security, Inc. and Richard Clark***

Robert J. King, III
Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P.
P.O. Box 26000
Greensboro, NC 27420
***Counsel for DNA Security, Inc. and Richard Clark***

Linwood Wilson
**\*\* Address Redacted Pursuant to Local Rule**

I further certify that I caused the foregoing document to be served by first-class mail, postage prepaid, to the following non CM/ECF participants:

Paul R. Dickinson, Jr.
Lewis & Roberts, PLLC
5960 Fairview Road, Suite 102
Charlotte, NC 28210
***Counsel for Brian Meehan***

James A. Roberts, III
Lewis & Roberts, PLLC
1305 Navaho Drive, Suite 400
Raleigh, NC 27609-7482
***Counsel for Brian Meehan***

Roger E. Warin
Steptoe & Johnson, LLP
1330 Connecticut Avenue, NW
Washington, DC 20003
***Counsel for City of Durham, North Carolina***

Robert A. Sar
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2301 Sugar Bush Road, Suite 600
Raleigh, NC 27612
***Counsel for DNA Security, Inc.***

Nicholas J. Sanservino, Jr.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2301 Sugar Bush Road, Suite 600
Raleigh, NC  27612
**Counsel for DNA Security, Inc.**

Respectfully submitted,

**EKSTRAND & EKSTRAND LLP**

/s/ Robert C. Ekstrand
_____

Robert C. Ekstrand, Esq.
NC Bar #26673
811 Ninth Street, Suite 260
Durham, North Carolina 27705
Email:  rce@ninthstreetlaw.com
Phone: (919) 416-4590
Counsel for Plaintiffs