# UNITED STATES DISTRICT COURT
## FOR THE
## MIDDLE DISTRICT OF NORTH CAROLINA

RYAN McFADYEN, et al.,
      Plaintiffs,

            v.

DUKE UNIVERSITY, et al.,
      Defendants.

Civil Action No. 1:07-cv-953

---

## PLAINTIFFS' OPPOSITION TO DEFENDANT WILSON'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

---

Dated:  October 10, 2008

**EKSTRAND & EKSTRAND LLP**
Robert C. Ekstrand (NC Bar #26673)
Attn. Stefanie A. Sparks
811 Ninth Street, Suite 260
Durham, North Carolina  27705

*Counsel for Plaintiffs Ryan McFadyen,*
*Matthew Wilson, and Breck Archer*

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. i

STATEMENT OF THE CASE ......................................................................................... 1

NATURE OF THE PROCEEDINGS ............................................................................... 1

STATEMENT OF FACTS .............................................................................................. 2

QUESTIONS PRESENTED ............................................................................................ 4

ARGUMENT................................................................................................................... 5

   I.   STANDARD OF REVIEW ................................................................................... 5

   II.   DEFENDANT WILSON IS NOT PROTECTED BY ABSOLUTE IMMUNITY............................................................................................................ 6

   III.   THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS UNDER FEDERAL LAW AGAINST DEFENDANT WILSON. ................................... 7

      A. The Amended Complaint States Actionable Section 1983 Claims Against Defendant Wilson....................................................................... 7

      B. The Amended Complaint States Actionable § 1983 Claims Defendant Wilson. ................................................................................................... 9

         1. The Fifth Cause Of Action States A Section 1983 Claim Against Defendant Himan For Stigmatizing Plaintiffs In Connection With The Deprivations Of Their Rights And Tangible Interests In Violation Of The Fourteenth Amendment. ........................................ 9

         2. The Tenth Cause Of Action States An Actionable Section 1983 Claim Against Defendant Wilson For Depriving Plaintiffs Of The Privileges And Immunities Afforded To North Carolina Citizens In Violation Of 42 U.S.C. § 1983........................................................ 10

         3. The Eleventh Cause Of Action States An Actionable Section 1983 Claim Against Defendant Wilson Defendants For Their Failure To Prevent Or Aid In Preventing The Ongoing Deprivations Of Plaintiffs' Constitutional Rights....................................................... 11

   IV.   DEFENDANT WILSON IS NOT ENTITLED TO QUALIFIED IMMUNITY. 11

      A. The Standard For Reviewing Claims Of Qualified Immunity. ............. 11

         1. Wilson Is Not Entitled To Qualified Immunity For Stigmatizing Plaintiffs In Connection With Deprivation Of A Constitutional Right. ............................................................................................. 13

2. Wilson Is Not Entitled To Qualified Immunity For Discriminatory And Abusive Enforcement Of The Criminal Laws Because Plaintiffs Were "Temporary" Residents Of North Carolina. ........................... 14

3. Wilson Does Not Have Qualified Immunity For Failing To Intervene To Prevent His Fellow Officers From Violating Plaintiffs Constitutional Rights In His Presence Or Within His Knowledge. . 15

V. THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS FOR PARTICIPATION IN CIVIL RIGHTS CONSPIRACIES. ............................ 16

A. Conspiracies In Violation Of 42 U.S.C. § 1983. ................................... 16

B. The Amended Complaint States Actionable Claims For Conspiracy In Violation Of 42 U.S.C. § 1985. ............................................................ 17

C. The Amended Complaint States A Violation Of 42 U.S.C. §1986. ...... 18

D. The § 1985 Claims Allege Racial Animus Of Two Types .................... 19

1. Section 1985 Prohibits Invidious Animus Against Any Race. ........ 19

2. Defendants Were Motivated By, Fomented, And Took Advantage Of Racial Animus. ............................................................................. 19

E. Defendant Wilson's Novel Grounds For Dismissal Of The Federal Civil Rights Conspiracies ............................................................................... 21

VI. THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS UNDER STATE LAW AGAINST DEFENDANT WILSON. ...................................... 22

A. The Amended Complaint States A Civil Conspiracy Claim Against Defendant Wilson. ................................................................................ 22

B. The Amended Complaint States A Common Law Obstruction Of Justice Claim Against Defendant Wilson. ........................................................ 23

C. The Amended Complaint States A Common Law Abuse Of Process Claim Against Defendant Wilson. ........................................................ 24

D. The Amended Complaint States An Intentional Infliction Of Emotional Distress Claim Against Defendant Wilson. ........................................... 25

CONCLUSION ........................................................................................................ 27

## STATEMENT OF THE CASE

The Amended Complaint describes a combination of actors and entities referred to as the Consortium. For thirteen months beginning in March 2006, the Consortium's ultimate objective was to railroad the Plaintiffs and their 44 teammates into convictions as either principles or accomplices to a horrific, violent crime they knew never happened. The allegations describe a willful, malicious, and calculating conspiracy of multiple dimensions. Acting individually and in concert, Defendants concealed exonerating evidence, manufactured inculpatory evidence, and stigmatized the Plaintiffs by subjecting them to public outrage, public condemnation, and infamy in the minds of millions of people. Defendants' conduct shocks the conscience. Maybe the most unsettling of all are those who knew of the wrongs conspired to be done to Plaintiffs, and had the power to prevent or aid in preventing them. Instead, they 'turned a blind eye' and did nothing.

## NATURE OF THE PROCEEDINGS

Plaintiffs filed this action on December 18, 2007 and amended that filing on April 17, 2008. Pursuant to a request from this Court regarding the location of the audio and video exhibits embedded within the First Amended Complaint ("AC"), Plaintiffs file the AC again on April 18, 2008 with the embedded exhibits as separate documents. Except for the location of the exhibits, the two "First Amended Complaints" are identical. All Defendants filed Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b) (6) on July 2, 2008. This Memorandum is filed pursuant to the Court's Order of October 7, 2008 [Document #72], granting Plaintiffs' Motion for Leave to File Opposition Briefs

[Document #71], and authorizing Plaintiffs to file their Responses on or before October 10, 2008.[1]

## STATEMENT OF FACTS

LINWOOD WILSON was fired nine days after Nifong's disbarment by Interim District Attorney Jim Hardin in one of the Hardin's first acts as Interim District Attorney. At all times relevant to this action, Wilson held himself out as many things, but primarily as "an investigator." He was employed by the District Attorney for the Fourteenth Prosecutorial District in North Carolina to "assist" Nifong in undefined ways. For purposes of this action, Wilson shared with Nifong certain final policymaking authority, delegated from City officials, with respect to the investigation of Mangum's false accusations. Further, with supervisory and final policymaking authority delegated to him by the Durham Police Internal Affairs Unit and by Captain Lamb, Wilson conducted an "internal investigation" of District Two Sergeant John Shelton. Lamb directed the investigation of Shelton in retaliation for his intention to testify that he knew Mangum's claims were false, that Gottlieb, Himan and the Himan Chain of Command were conspiring to frame innocents, and that the investigation was the Duke Police Department's responsibility. Shelton was a crucial witness; he is the Sergeant who first encountered Mangum at the Kroger on March 14, 2006. It was Shelton who decided that Mangum met the standard for involuntary commitment. It was Shelton who concluded Mangum was lying on March 14, 2006. AC ¶ 64

---

[1] Plaintiffs' Opposition Brief is filed in response to Defendant Linwood Wilson's Motion to Dismiss (Document #44) and supporting Memorandum (Document #44). Wilson's supporting brief is cited herein as "Wilson Br." and his co-defendants' supporting briefs are cited herein as: "City Br.," "Gottlieb Br.," "City Super. Br.," "DNASI Br.," "SANE Br.," "Duke Univ. Br." "DUPD Br.," "Himan Br.," "SMAC Br.," and "Hodge Br."

Wilson was involved many critical meetings with key actors such as Himan, Gottlieb, Levicy, Mangum, where conspirators worked together to "fix the story." For example, Wilson was involved in the SANE conspiracy where it was agreed that SANE Levicy repeatedly proffered false testimony that was clearly designed to fill the chasms in Mangum's case and/or to restore Mangum's glaring credibility problems. AC ¶ 788.

Wilson was one of the only actors of the Consortium to meet with false accuser Crystal Mangum herself in order to conform her timeline of events to the emerging evidence. Specifically, in December 2006, Wilson and Mangum fabricated a new version of events to move the timeline of events back to start the sequence at 11:30 p.m. instead of midnight and to claim that Mangum had departed the residence by midnight. AC ¶ 390. In this "interview" of Mangum, Wilson brought pictures of the defendants in the criminal case in anticipation of a hearing on their motion to suppress Mangum's identifications of them, and to create a new timeline of events with Mangum that Wilson, Nifong, Gottlieb and Himan (incorrectly) believed avoided the irrefutable digital evidence that proved Plaintiffs and their teammates innocent. AC ¶ 1150.

Wilson may claim that he was just doing what he was told, but he was delegated extraordinary authority and exercised it to intimidate witnesses, tamper with evidence, and to further the aims of the conspiracy to railroad Plaintiffs and their 44 teammates into convictions as either principals or accomplices to a horrific, violent crime he knew never happened. AC ¶ 2.

Wilson demonstrated malice, spite, ill-will, and wanton disregard for Plaintiffs' rights by conspiring to manufacture and by fabricating false statements for incorporation into the NTID Affidavit, manufacturing false and misleading investigative reports with the knowledge that these reports would be used to advance and perpetuate the criminal investigation against Plaintiffs. AC ¶ 1204.

## QUESTIONS PRESENTED

1.      Does Defendant Wilson have absolute and qualified immunity for federal claims?

2.       Does Defendant Wilson have absolute immunity from personal liability for state law claims?

3.      Have Plaintiffs stated cognizable claims against Defendant Wilson under federal and state law?

4.       Is a late-comer to a conspiracy liable for all of the harms caused by acts in furtherance of the conspiracy?

<u>**ARGUMENT**</u>

## I.    STANDARD OF REVIEW

A motion to dismiss for failure to state a claim may be granted "only in very limited circumstances." *Rogers v. Jefferson-Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir. 1989).  In examining a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Salami v. Monroe*, No. 1:07CV621, 2008 WL 2981553, at *5 (M.D.N.C. Aug. 1, 2008) (quoting *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). Though the complaint is not required to encompass detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quotations and alterations in original) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007)).  The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Id.* (quoting *Twombly*, 127 S.Ct. at 1965).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Id.* (quoting *Twombly*, 127 S.Ct. at 1969).  Further, where Plaintiffs have asserted a civil rights action, the Court "must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Veney v. Wyche,* 293 F.3d 726, 730 (4th Cir. 2002) (internal quotations omitted).  With these standards in mind, this Memorandum will identify the factual basis in the Amended Complaint for the causes of action asserted against Defendant Wilson and respond to their arguments for dismissal.

## II.    DEFENDANT WILSON IS NOT PROTECTED BY ABSOLUTE IMMUNITY.

As a threshold issue, Wilson asserts that he has absolute immunity based on his contention that he was at all times investigator acting at the direction of a judicial officer performing prosecutorial functions." Wilson Br. at 6. He argues that "the scope of absolute prosecutorial immunity has been narrowly drawn." *Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 230 (4th Cir. 1997).

The question Wilson presents to the court is, therefore, are investigators employed by prosecutorial authorities covered by absolute or qualified immunity? As with any other public official, the nature of the particular function carried out should control the type of immunity investigator may assert. Absolute procedural immunity is justified only when the prosecutor act in an advocacy role exercising quasi-judicial power. The *Imbler* court recognized that in some instances the prosecutor "no doubt functions as administrator rather than as an officer of the court" and that "drawing a proper line between those functions may present difficult questions." *Imbler v. Pachtman*, 424 U.S. 409 (1976). Wilson does not present such a difficult question. As with all prosecutorial immunity analysis, Wilson's claim must rise and fall upon the nature of his conduct. *Burns v. Reed*, 500 US 478 at 486 (1991). Every function Wilson is alleged to have performed can only be considered "investigatory functions"--not entitled to absolute immunity--under any sense of the phrase.

Wilson repeatedly asserted he was "acting at the direction of a prosecutor" and cites cases he claims recognize "the principle that investigators performing tasks as a function of an ongoing investigation at the direction of a prosecutor should be entitled to the same absolute immunity given to prosecutors. Wilson Br. at 19. Under the functional approach, it is of no consequence in the final analysis by which one is directed in any course of dealing.

The critical question in absolute immunity analysis is, with respect to the conduct, what function does it serve?  The Supreme Court has adopted a "functional approach" to absolute prosecutorial immunity, *Burns,* 500 U.S. at 486, pursuant to which even prosecutors are not entitled to such immunity when they are performing investigatory functions similar to those of police officers, see *Buckley*, 509 U.S. at 273-76.  In *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993), the Court refused to extend absolute immunity to prosecutors who were alleged to have fabricated evidence and concocted false witness statements, even if the evidence was intended for a future trial.  *Id.*  Moreover, the Buckley Court held that this "functional approach" to prosecutorial immunity did not stop after an indictment or probable cause determination.  Buckley expressly rejects the provision of absolute immunity for any prosecutor's post-indictment "police investigative work."  509 US at 274 n.5.

Wilson alleges nothing other than "police investigative work" at the "direction of a prosecutor."  Because that is all that he has alleged, he has no basis for asserting prosecutorial immunity.  *See, e.g., Buckley,* 509 US at 274.

## III.  THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS UNDER FEDERAL LAW AGAINST DEFENDANT WILSON.

### A. The Amended Complaint States Actionable Section 1983 Claims Against Defendant Wilson.

The first fifteen Causes of Action allege violations of 42 U.S.C. § 1983 (the "§ 1983 Claims").  At this early stage, the Court must determine whether each of these Causes of Action alleges facts sufficient to satisfy the elements of § 1983.[2]  *See Green v.*

---

[2] Section 1983 provides:

[E]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and

*Maroules*, 211 F.App'x 159, 161 (4th Cir. 2006). Based on statute's text, the Supreme Court held that a Section 1983 claim requires only two essential allegations:

> By the plain terms of section 1983, two–and only two–allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who deprives them of that right acted under color of state or territorial law.

*Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *accord West v. Atkins*, 487 U.S. 42 (1988).

Section 1983 does not itself create or establish substantive rights. Instead, § 1983 provides "a remedy" where a plaintiff demonstrates a violation of a right protected by the federal Constitution, or by a federal statute other than §1983. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979); *accord*, *Albright v. Oliver*, 510 U.S. 266 (1994). Analytically, however, it may be more useful to understand a Section 1983 action as having four elements of proof: (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation (2) proximately caused (3) by the conduct of a "person" (4) who acted "under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983 (2000). *See*, *e.g.*, *Martinez v. California*, 404 U.S. 277 (1980). In addition, a plaintiff seeking to establish municipal liability under § 1983 must satisfy a fifth element: that the violation of plaintiff's federal right was attributable to the enforcement of a municipal policy or practice. *Monell v. New York City Dep't of Soc. Servs.*, 463 U.S. 658 (1978).

The Amended Complaint adequately alleges a factual basis for every element of a § 1983 claim against Defendant Wilson. The Amended Complaint alleges that (1) each

---

laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress[.] 42 U.S.C. § 1983 (2000).

of Defendant Wilson are "persons" for purposes of § 1983, *Id.*¶¶ 955, 1003, 1021, 1148; (2) who, while acting under color of state law, *Id* .¶¶ 955, 1003, 1021; (3) proximately caused *Id.* ¶¶ 967, 1006, 1035 ; (4) Plaintiffs to be subjected to the deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States, *Id.* ¶¶ 967, 1006, 1035. The elements and detailed allegations stated within each Cause of Action are illustrative only; there is more. The Amended Complaint is replete with specific facts from which the elements of Plaintiffs' § 1983 Claims can be inferred. They are detailed across more than 400 pages of the Amended Complaint.

**B. The Amended Complaint States Actionable § 1983 Claims Defendant Wilson.**

Defendant Wilson concedes that the AC sufficiently alleges he is a person, acting under color of law, and that his conduct caused the harms alleged. Wilson alleges that he is immune from liability and fails to address any substantive, except to say that the rights were not "clearly established" argument regarding these claims. *See generally* Wilson Br.

      1. **The Fifth Cause Of Action States A Section 1983 Claim Against Defendant Himan For Stigmatizing Plaintiffs In Connection With The Deprivations Of Their Rights And Tangible Interests In Violation Of The Fourteenth Amendment.**

The Fifth Cause of Action alleges that Defendant Wilson, jointly and in concert with other co-defendants and under color of law, stigmatized Plaintiffs in connection with other, additional tangible injuries and deprivations of rights. AC ¶¶ 954-62. Often referred to as "Stigma-Plus," to state a claim a complaint must allege (1) publication of false, stigmatizing charges that are (2) imposed in connection with the deprivation of a protected right, employment, or other tangible interest (the "plus"). *Ridpath v. Bd. of Governors of Marshall Univ.*, 447 F.3d 292, 309 (4th Cir. 2006) (a "substantial demotion" is a tangible interest, and its deprivation in connection with false stigmatizing charges states a Stigma-Plus claim; *see*

*Paul v. Davis,* 424 U.S. 693, 696-97 (1976). The Amended Complaint sufficiently alleges that Wilson published a false statement that caused harm to the Plaintiffs and was made in connection with deprivation of the Plaintiffs' Constitutional Rights. AC ¶¶ 956-59. A fuller analysis is more fully developed in Plaintiffs' Opposition to Soukup, Michael, Addison and Clayton's ("SMAC") Motion to Dismiss (Pl. Op. to SMAC § II.A.(2)), and, in the interests of judicial economy, Plaintiffs incorporate that analysis here.

> 2. **The Tenth Cause Of Action States An Actionable Section 1983 Claim Against Defendant Wilson For Depriving Plaintiffs Of The Privileges And Immunities Afforded To North Carolina Citizens In Violation Of 42 U.S.C. § 1983.**

The Amended Complaint states an actionable Section 1983 Claim for deprivation of Plaintiffs' rights to the privileges and immunities guaranteed to them as citizens of the United States by Article IV and the Fourteenth Amendment. This Cause of Action identifies rights within the broader "right to travel." The "right to travel" includes at least three different components: (1) the right of a citizen of one State to enter and to leave another State, (2) the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, (3) for travelers who elect to become permanent residents in a new State, the right to be treated like other citizens of that State. Plaintiffs assert that the second and third components of the right to travel are addressed in the Amended Complaint. Plaintiffs establish their § 1983 Privileges and Immunities Claims against the Duke University Defendants in the extended analysis of this Cause of Action set out in Plaintiffs Opposition Brief directed to the Supervising Def. Motion to Dismiss. Pls. Opp. Br. (City Sup), § II.A.(3)). Plaintiffs allege that Wilson participated in a conspiracy as evinced by the Zero-tolerance Policy, to harm Duke Students based upon their perceived status. Wilson asserts no defense to this claim except immunity; but, as proven above Wilson is not entitled to absolute immunity therefore, his request to dismiss this claim must be denied.

3. **The Eleventh Cause Of Action States An Actionable Section 1983 Claim Against Defendant Wilson Defendants For Their Failure To Prevent Or Aid In Preventing The Ongoing Deprivations Of Plaintiffs' Constitutional Rights.**

The Eleventh Cause of Action states a Section 1983 "bystander liability" claim against Defendant Wilson. An officer may be liable under § 1983, on a theory of bystander liability, "if he (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall v. Prince George's County,* 302 F.3d 188, 202-04 (4th Cir.2002). The Amended Complaint sufficiently alleges these elements. Plaintiffs allege that he had knowledge that he, Gottlieb, and Nifong (acting as the investigation's supervisor), the District Two Commander, and others were violating Plaintiffs constitutional rights by, among other things, submitting fabricated affidavits to procure the concealing from Plaintiffs the existence of the explosive, exonerating results of tests conducted with their DNA, *id.* ¶¶ 641-42, 644, 765. Wilson had a reasonable opportunity to prevent the harm, *id.,* ¶ 1023; and chose not to act to prevent the harm, *id.* ¶¶ 1023-24.

Defendant Wilson does not address this claim. Plaintiffs presume that he meant to include a defense of absolute prosecutorial immunity. For the reasons, stated above Defendant Wilson is not entitled to this immunity. Therefore, Plaintiffs' Section 1983 bystander liability claims against Defendant Wilson may not be dismissed.

## IV. DEFENDANT WILSON IS NOT ENTITLED TO QUALIFIED IMMUNITY.

### A. The Standard For Reviewing Claims Of Qualified Immunity.

Qualified immunity is an affirmative defense that protects government officials performing discretionary functions. The defense does not apply to conduct that violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Determining whether a defendant's conduct is protected by qualified immunity requires a two-step analysis. First, the court must determine whether the facts alleged establish a violation of a constitutional or statutory right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). If a violation is identified, the court must then determine whether the right violated was "clearly established" at the time of the alleged violation. *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002). Where the alleged right was clearly established at the time of the conduct at issue, qualified immunity does not operate to protect the defendant from liability.

A right is "clearly established" if a reasonable official would have been on fair notice that the conduct at issue was unconstitutional at the time he engaged in the conduct. *Hope v. Pelzer,* 536 U.S. 730, 739 (2002) (internal quotations omitted). The inquiry "is an objective one, dependent not on the subjective beliefs of the particular officer at the scene, but instead on what a hypothetical, reasonable officer would have thought in those circumstances." *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 279 (4th Cir. 2004) (quoting *Wilson v. Kittoe,* 337 F.3d 392, 402 (4th Cir. 2003)).

Finally, the Fourth Circuit does not require that the exact conduct at issue be shown to have been held unlawful for the right at issue to be clearly established. This rule is grounded in the sensible proposition that "general statements of the law are not inherently incapable of giving fair and clear warning, and … a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question[.]" *Hope,* 536 U.S. at 741 (internal quotations omitted).

Because the allegations of the complaint, which must be accepted as true for purposes of a Rule 12 Motion to Dismiss, often will satisfy both showings required to defeat a claim of qualified immunity, qualified immunity is typically tested at the summary judgment stage after the facts have been developed during discovery.

Defendant Wilson's claims of qualified immunity must be denied because the A.C. alleges violations of clearly established rights. Wilson does not address the merits of anyone claim, but alleges that he is entitled to absolute immunity, and if that fails qualified immunity as the rights were not clearly established.

### 1. Wilson Is Not Entitled To Qualified Immunity For Stigmatizing Plaintiffs In Connection With Deprivation Of A Constitutional Right.

Wilson is not entitled to qualified immunity from Plaintiffs' "Stigma-Plus" claims because the right to be free from deprivations of constitutional rights or tangible interests in connection with stigmatizing statements was clearly established in the Fourth Circuit in 2006. The Fifth Cause of Action specifically relates to the fabricated affidavit made by Himan, Gottlieb, and others that they deliberately and maliciously leaked to the media and caused Plaintiffs to be subjected to searches and seizures without probable cause. AC ¶¶ 954-62; *see also id.* ¶¶ 414, 931. Himan and Gottlieb's fabricated narrative evoked a furor among people of all races, both in the Durham community and around the world. *Id.* ¶¶ 567, 637. Over the course of the three weeks leading up to the April 17 Indictments, Himan and Gottlieb's fabricated narrative was exploited by their fellow officer, Addison, and by Nifong, who falsely and publicly insisted on an almost daily basis that Plaintiffs, who are white, and 43 of their white teammates had participated in a brutal, *id.* ¶ 505, racially-motivated gang-rape of a young African-American mother of two; that there was "no doubt" the account of the rape Gottlieb and Himan had fabricated in their Affidavit had occurred, *id.* ¶¶ 502(A), 956; that it was a "horrific crime [that] sent shock waves throughout our community," *id.* ¶ 507; that there was "really, really strong physical evidence" to prove it, *id.* ¶¶ 505, 956; that there was evidence also of a "deep racial motivation," *id.* ¶ 577; and that the lacrosse team was a "bunch" of "hooligans" who were "stonewalling" the investigation by "standing together" and "refusing to talk with investigators," *id.* ¶¶ 502, 505, 956.

2.  **Wilson Is Not Entitled To Qualified Immunity For Discriminatory And Abusive Enforcement Of The Criminal Laws Because Plaintiffs Were "Temporary" Residents Of North Carolina.**

Wilson is not entitled to qualified immunity from the claims asserted in Plaintiffs' Tenth Cause of Action.  AC ¶¶ 1002-07.  The Plaintiffs' right to be free from discrimination and disparate treatment because of their status as "temporary" residents was "clearly established" over one hundred years ago.  State action that classifies citizens based upon their recent arrival or imminent departure from a state has been subjected to the Court's most rigorous scrutiny.  The Court has subjected such classifications to such scrutiny because the Privileges and Immunities Clause in Article IV and the Privileges or Immunities Clause of the Fourteenth Amendment protect rights that are fundamental to our system of ordered liberty.  As documented in the Amended Complaint and detailed in Section II.A.(7) of Plaintiffs' Memorandum in Response to the City's Motion to Dismiss, Himan's conduct violated these fundamental proscriptions deliberately and, indeed, pursuant to an express policy ("Zero-Tolerance for Duke Students Policy").  Zero-Tolerance for Duke Students Policy singled out "temporary" residents for disparate treatment, including disproportionate enforcement of the criminal laws.  The discriminatory customs, practices, and policies are well documented in the Amended Complaint.[3]

The ordeal described in the Amended Complaint is what the Framers sought to avoid when they infused the Constitution with the notion of the dual citizenship of every American, who would, at all times, be a citizen of the United States and a citizen of the state wherein he chooses to reside.  To be a citizen of the United States means—exactly—the right to be free

---

[3] *See* AC ¶¶ 107-15, 116-22, 170, 181.  AC ¶¶ 113-15, 117-18, 127, 166 (Identification and Description); AC ¶¶ 119-22, 138-39, 145-54 (Documentation in Practice); AC ¶¶ 117,126-33, 150-53, 160-64 (Breadth of Involvement of all Co-defendants).

from what Zero-Tolerance for Duke Students Policy codified. The right identified in this Cause of Action is so worn into the fabric of our constitutional order that it goes without saying that it was clearly established before the year 2006. Therefore, Wilson is not entitled to qualified immunity from Plaintiffs' Tenth Cause of Action.

### 3. Wilson Does Not Have Qualified Immunity For Failing To Intervene To Prevent His Fellow Officers From Violating Plaintiffs Constitutional Rights In His Presence Or Within His Knowledge.

Wilson does not have immunity for Plaintiffs' § 1983 "bystander liability" claim. The rights that Plaintiffs allege were violated in this cause of action were clearly established no later than 2002. Thus, when Wilson was engaging in the conduct alleged, the Fourth Circuit had clearly established that all law enforcement officers have an affirmative duty to act to intervene when a fellow officer undertakes to violate the constitutional rights of any person either in his presence or within his knowledge. *Randall,* 302 F.3d at 202-04. The Fourth Circuit undertook in *Randall* to clearly define the scope and contours of officer bystander liability. Prior to *Randall,* the Fourth Circuit indicated that bystander liability would be recognized in a proper case. *Jackson v. Pantazes,* 810 F.2d 426, 430 (4th Cir. 1987). The Fourth Circuit has defined the bystander officer as "a tacit collaborator" in the principal's wrongdoing. *Randall,* 302 F.3d at 203(citing with approval the Second Circuit's use of that label in *O'Neill v. Krzeminski,* 839 F.2d 9, 11-12 (2nd Cir. 1988)). A "reasonable official" who knew all that Wilson knew about the evidence in the case and the magnitude of the harm he was causing "would understand that what he is doing violates" Plaintiffs' clearly established right to the aid of an officer who knows his fellow officers are violating Plaintiffs' constitutional rights. *Hope,* 536 U.S. at 739.

V.	**THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS FOR PARTICIPATION IN CIVIL RIGHTS CONSPIRACIES**.

   A.	**Conspiracies In Violation Of 42 U.S.C. § 1983.**

The Fifteenth Cause of Action states a §1983 claim against all Defendants for unlawful conspiracies that deprived Plaintiffs of their civil rights.[4] AC ¶ 1147-1155. The Fifteenth Cause of Action alleges a broad conspiracy, agreement, or understanding shared by all named Defendants in this action. The objective of the unifying conspiracy alleged in the Fifteenth Cause of Action was to unlawfully force the wrongful indictment, prosecution, and, ultimately, incarceration of the Plaintiffs, as the principals or accomplices in a horrific, racially motivated gang-rap, which all Defendants in this action knew or were deliberately indifferent to the likelihood that it did not occur. The conduct giving rise to the Fifteenth Cause of Action is alleged in the Fifteenth Cause of Action by incorporation of the First through Eleventh Causes of Action (collectively, "the Predicate Violations"). The required showing of constitutional harm done in furtherance of the conspiracy is met by the showings of constitutional violations in the First through Eleventh Causes of Action. The Predicate Violations are constitutional deprivations caused by acts in furtherance of the Conspiracy to Convict, and were the direct and proximate cause of the damages alleged. The acts and omissions that establish the Predicate Violations are alleged to be done in furtherance of the unifying common objective and plan of the larger conspiracy to convict. In addition, the predicate elements of causation, state action and/or joint action (with respect to the private party and private entity Defendants), and the Defendants status as a § 1983 "person." The Amended Complaint alleges the combined and concerted conduct of so many pursuant to a

---

[4] To allege a cause of action under 42 U.S.C. § 1983 for conspiracy, a plaintiff must allege facts that show that two or more defendants "acted jointly [and] in concert and that some overt act was done in furtherance of the conspiracy" that resulted in the deprivation of a federal right. *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996).

preordained plan.  AC ¶ 1152.  The plan was "made in quiet deliberation and discussion" among officials with final policymaking authority with respect to the matters described in the Amended Complaint.  *Id.*  The acts and omissions described in the Amended Complaint evince a malicious and corrupt intent to harm the Plaintiffs.  AC ¶¶ 1153; 1147-1155.  The cumulative effect of the concerted wrongdoing among so many is so egregious that it "shocks the conscience" in violation of the Fourteenth Amendment as to shock the contemporary conscience.  AC ¶ 1153.  The Fifteenth Cause of Action alleges that Defendants violated § 1983 by conspiring to deprive Plaintiffs of their rights under the Fourth and Fourteenth Amendments, including the substantive Due Process protections of the Fourteenth Amendment, and, in furtherance of the conspiracies, committing overt acts that caused actual violations of Plaintiffs' rights.  AC ¶ 1150(A)-(O).

**B.     The Amended Complaint States Actionable Claims For Conspiracy In Violation Of 42 U.S.C. § 1985.**

The Sixteenth Cause of Action alleges Four Conspiracies in violation of § 1985(2) and (3).   To state a cause of action under 42 U.S.C. § 1985(2), a plaintiff must allege that "two or more persons conspire[d] for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws...." 42 U.S.C. § 1985(2).

The Sixteenth Cause of Action alleges that Addison, Michael, Nifong, Gottlieb, Himan, Wilson, Steel, the DNASI Defendants, the Crisis Management Team Defendants, the SANE Defendants, Graves, Dean, the Duke Police Supervising Defendants, and Duke University conspired to impede or obstruct the due course of justice in North Carolina generally with the intent to deny Plaintiffs the equal protection of the laws in violation of 1985(2). AC ¶¶ 1156-59.  Defendants, motivated by race-based invidiously discriminatory motives, violated this statute by conspiring to deprive Plaintiffs of their federally secured rights as alleged elsewhere in the First through Eleventh Causes of Action and by fomenting

race-based animus within the Plaintiffs' community. *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Additionally, Sixteenth cause of action alleges that Nifong, Gottlieb, Himan, Clayton, Addison, Michael, the Durham Police Supervising Defendants, the SANE Defendants, the City of Durham, and Duke University conspired to impede or obstruct the due course of justice in North Carolina generally with the intent to intimidate witnesses, including the Plaintiffs, elicit false statements and testimony from Plaintiffs and other witnesses, and to prevent them from testifying truthfully to matters with the general objective of securing Plaintiffs' convictions as principals or accessories in state court for crimes they knew did not happen. AC ¶¶ 1161.

### C. The Amended Complaint States A Violation Of 42 U.S.C. §1986.

Plaintiffs' Seventeenth Cause of Action (the "Section 1986 Claims") alleges that the SANE Defendants violated 42 U.S.C. § 1986 by refusing or neglecting to prevent or aid in the preventing of the § 1985 Conspiracies (alleged in the Sixteenth Cause of Action), despite having the power and knowledge to do so. The Plaintiffs have stated actionable Section 1986 Claims against the SANE Defendants, having alleged the predicate § 1985 Conspiracies in the Sixteenth Cause of Action, as well as the § 1985 elements and facts from with they may be inferred. AC ¶¶ 1170-88.

Defendants raise several arguments against the civil rights conspiracy claims. First, Defendants argue that the Amended Complaint fails to allege sufficient facts to support a conspiracy claim under either § 1983 or § 1985. Second, Defendants argue that the Ninth Cause of Action should be dismissed because § 1985(2) applies only to witness tampering in federal proceedings. Third, Defendants argue that the § 1985 Claims should be dismissed because Plaintiffs fail to allege invidious animus based on race or protected class, a required element of such claims. Fourth, Defendants argue that if the § 1985 Claims are dismissed, then the Eleventh and Twelfth Causes of Action, alleging violations of 42 U.S.C. § 1986, must be dismissed as well. Plaintiffs respond to each below.

**D.     The § 1985 Claims Allege Racial Animus Of Two Types**

   4.  **Section 1985 Prohibits Invidious Animus Against Any Race.**

Several Defendants have asserted that only members of a "minority" or "traditionally disadvantaged" group may avail themselves of the protections of § 1985. At step one, by its terms, the statute applies to any person or class of person.  42 U.S.C. § 1985(3) (2000).  Consistent with the statutory language, we have found no cases in this circuit that held that members of other races have no standing to bring a § 1985(3) claim that is consistent with the broader equal protection principles of the statute itself.  Further, courts, including this one, have consistently rejected the argument.  *See, e.g., Mabe*, 367 F. Supp. 2d at 873-74.  ( Contention that Plaintiff "cannot rely on §1985(3) because he is not a minority is without merit.");  *Waller v. Butkovich*, 605 F. Supp. 1137, 1144-45 (M.D.N.C. 1985) (rejecting the assertion that Section 1985(3) requires the alleged animus be directed at a traditionally disadvantaged group).   In addition, this Court and others have expressly permitted white plaintiffs to bring claims under § 1985 in response to animus against them based on their race or even their perceived racist beliefs. *See Waller*, 605 F. Supp. 1137     The Fourth Circuit's decision in *Harrison v. KVAT Food Management*, urged by many Defendants held only that "victims of purely political conspiracies" do not have standing on that basis to bring a § 1985(3) claim. 766 F.2d 155, 161 (4th Cir. 1985).   *Harrison*'s passing mention of "blacks" was merely a counterexample invoked to explain the difference between a victim of political conspiracy and a member of a "race or class" that is protected by § 1985(3).  *See id.*

   5.  **Defendants Were Motivated By, Fomented, And Took Advantage Of Racial Animus.**

Civil rights conspiracies under § 1985(2) and § 1985(3) require proof of invidious animus based on race or other protected status.   *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 340 (1993). Defendants argue (1) that Plaintiffs have failed to allege membership in any such class; (2) that Plaintiffs are alleging that "Duke students"

19

or "Duke lacrosse players" are a protected class; or (3) that Plaintiffs have failed to allege animus at all. Each of these arguments is incorrect.

Plaintiffs allege that Defendants' acts in furtherance of the § 1985 conspiracies were motivated by invidious animus based on race and were intended to foment and take advantage of racial animus against Plaintiffs. AC ¶ 1375. Race—any race—is an established protected classification. *See* §II.E.(1), *infra*. The Amended Complaint is replete with details from which to infer Defendants' invidious racial motives. See, e.g.:

- The Racist Dimension of The Conspiracy To Convict. AC ¶ 566-90.

- Spoliation of DECC Evidence. AC ¶ 568-69.

- Nifong's Acts in Furtherance of the Conspiracy to Fabricate. AC ¶¶ 577-80.

- Brodhead's Acts in Furtherance of the Conspiracy to Fabricate the "Racist" dimension to Mangum's False Rape and the Duke Faculty's Acts in Furtherance of the Conspiracy. AC ¶¶ 581-90.

- Nifong's Public Acts and Statements, AC ¶¶ 502-03.

- Addison Publicly Stigmatized the Plaintiffs, AC ¶ 504-506.

- The Established Policy or Custom of Disseminating Defamatory Posters in Potentially High-Profile Cases, AC ¶ 525-27.

- Duke Officials Publicly Stigmatized the Plaintiffs AC ¶¶ 528-35.

- Duke University's Clergy Publicly Stigmatize the Plaintiffs AC ¶ 554

- Duke University and City of Durham Officials with Final Policymaking Authority Ratified and Condoned the Foregoing Faculty and Employee Statements AC ¶¶ 555-558.

*See also,* AC ¶¶ 500-06; 544-59; 568-69; 570-76; 577-90; 1375. These allegations are based on fact, not "legal conclusion." *See Green v. Maroules*, 211 F. App'x 159, 162-63 (4th Cir. 2006) (holding that plaintiff who alleged she was target of racial profiling and

conspiracy to falsely arrest her alleged racial animus and properly stated a claim under §
1985).

Defendants uniformly assert that "invidious racial animus" is not satisfied by
deliberate acts designed to "create racial tensions or take advantage of racial animus on
the part of others in order to achieve some other objective." City Br. at 32, citing *Griffin
v. Breckenridge*, 403 U.S. 88, 102 (1971). That is not the holding of *Griffin* which
defined the "racial animus" element to require that the alleged "conspiracy . . . must aim
at a deprivation of the equal enjoyment of rights secured by the law to all."

There is powerful guidance on this point also from the treatment given to the
requirement of all actions brought under 42 U.S.C. § 1982[5] that the plaintiff prove
invidious animus based on race or class. With respect to fomenting racial animus
"regardless of defendants' ultimate motivation, the fact that they deliberately stirred up
and harnessed the racial animosity of others to serve their own ends is sufficient to find a
violation." *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty
Abuse-Wisconsin, Inc.*, 41 F.3d 1190, 1194 (7th Cir. 1994); *see also Clark v. Universal
Builders, Inc.*, 501 F.2d 324, 331 (7th Cir. 1974) (defendants cannot escape liability for
acting with racial animus in violation of § 1982 by "proclaiming that they merely took
advantage of a discriminatory situation created by others"); *Ortega v. Merit Ins. Co.*, 433
F. Supp. 135, 140-41 (N.D. Ill. 1977) (quoting *Clark*, 501 F.3d at 331).

### E.    Defendant Wilson's Novel Grounds For Dismissal Of The Federal Civil Rights Conspiracies

Defendant Wilson asserts that as a latecomer to the Civil Rights Conspiracies who
may not have participated in the initial meetings he cannot be held liable for actions he

---

[5] 42 U.S.C. § 1982 was enacted pursuant to Congress' Thirteenth Amendment authority;
it secures to all citizens the right, enforceable against private and public defendants, to
"inherit, purchase, lease, sell, hold and convey real and personal property.'

may not have known about that happened earlier. Wilson Br. at 29. This misstates the law of conspiracy: "The liability of the conspirators is joint and several. That [e]very one who does enter into a common purpose or design is equally deemed in law a party to every act which had before been done by the others, and a party to every act which may afterwards be done by any of the others in furtherance of such common design. *Muse v. Morrison* 66 S.E.2d 783, 785 (N.C.1951) (internal citations omitted). Additionally, Wilson asserts that he was entitled to absolute prosecutorial immunity. As stated in section II, *supra*, that is not the case.

## VI. THE AMENDED COMPLAINT STATES ACTIONABLE CLAIMS UNDER STATE LAW AGAINST DEFENDANT WILSON.

The remaining causes of action asserted against Defendant Wilson are alleged under North Carolina law. They include claims for Common Law Obstruction of Justice and Conspiracy, Common Law Abuse of Process and Conspiracy, and Intentional Infliction of Emotional Distress and Conspiracy.

### A. The Amended Complaint States A Civil Conspiracy Claim Against Defendant Wilson.

The Eighteenth, Nineteenth, and Twentieth Causes of Action state an actionable civil conspiracy claims against Defendant Wilson. A cause of action for civil conspiracy arises whenever an injury is caused by "a wrongful act … committed by one or more of the conspirators pursuant to the common scheme and in furtherance of the objective." *State ex rel. Cooper v. Ridgeway Brands Mfg.*, No. 408A07, 2008 WL 3915186 *9 (N.C. Aug. 27, 2008) (quoting *Henry v. Deen* 310 S.E.2d 326, 334 (N.C. 1984)). To state a claim for civil conspiracy a plaintiff must allege (1) a conspiracy, (2) wrongful acts done by certain of the alleged conspirators in furtherance of that conspiracy, and (3) injury as a result of that conspiracy. *Id.*; *see Muse v. Morrison,* 66 S.E.2d 783, 785 (N.C. 1951). A conspiracy, under North Carolina law, is an agreement, express or implied, between two or more persons to

commit an unlawful act or to do a lawful act in an unlawful manner. *See Evans v. Star GMC Sales & Service, Inc.*, 151 S.E.2d 69, 71 (N.C. 1966). Where a conspiracy is established, all conspirators are jointly and severally liable for acts done in furtherance of the agreement by any one of them. *See Hafner v. Brown*, 983 F.2d 570, 577 & n.6 (4th Cir. 1992).

Wilson's participation in these conspiracies is well documented in which Defendant Wilson participated, *see generally* AC; and (2) numerous acts of Defendant Wilson co-conspirators in furtherance of the conspiracy, *see id.* ¶¶ 456-58, 468-75, 501-24, 552-58, 566-76, 827-51, that caused injury to Plaintiffs, *see id.* ¶¶ 693-702, 706-21, 852, 865, 916-17, 927-28, 939-40, 1023-24, 1221-22, 1277-82. Taken together, these allegations are sufficient to withstand a motion to dismiss.

### B. The Amended Complaint States A Common Law Obstruction Of Justice Claim Against Defendant Wilson.

The Eighteenth Cause of Action states an actionable claim for Common Law Obstruction of Justice *Id.* ¶¶ 1189-1202. To state an obstruction of justice claim under North Carolina law, a plaintiff must allege "any act which prevents, obstructs, impedes or hinders public or legal justice." *Jones v. City of Durham*, 643 S.E.2d 631, 633 (N.C. Ct. App. 2007) (quoting *Broughton v. McClatchy Newspapers, Inc.*, 588 S.E.2d 20, 30 (N.C. Ct. App. 2003)). The Amended Complaint alleges that Defendant Wilson "prevented, obstructed, impeded, or hindered" public justice in North Carolina by, among other things:

- Conspiring with the Duke SANE Defendants, Steel, the CMT Defendants, Gottlieb, Himan, and Nifong to fabricate forensic medical reports and records of Crystal Mangum's SAE conducted at DUHS. AC ¶¶ 1193, 779-799 (Section XXXIV, "The SANE Conspiracy").

While there is more, *see, e.g.,* AC ¶¶ 1189-1202, any one of the foregoing is sufficient to state a common law obstruction of justice claim. *See, e.g., Jones v. City of Durham*, 643

S.E.2d 631 (N.C. Ct. App. 2007).     Nevertheless, Wilson argues that the cause of action should be dismissed as he is immune.

Defendant Wilson fails to address this claim outside of his immunity defense. Because those defenses are flawed and Plaintiffs state an actionable claim against him as a latecomer to the Conspiracy to Convict.  His request to dismiss his request should be denied.

### C. The Amended Complaint States A Common Law Abuse Of Process Claim Against Defendant Wilson.

The Amended Complaint states an actionable claim for Common Law Abuse of Process against Wilson. AC ¶¶ 1203-12.  To state a claim for Abuse of Process, a complaint must allege (1) a willful act by the defendant, (2) done with bad intent or ulterior motive, (3) after valid process has been issued at defendant's behest, (4) whereby the defendant attempts to use the process to accomplish a purpose for which it was not intended.  *Carson v. Moody*, 394 S.E.2d 194 (1990).  The claim arises from "the malicious perversion of a legally issued process whereby a result not properly obtainable under it is [intended] to be secured. *Stanback v. Stanback*, 254 S.E.2d 611, 624 (1979) (alteration not in original) (quoting *Barnette v. Woody*, 88 S.E.2d 223 (1955)); W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts,* § 121 (5th ed. 1984) ("The gist of the tort is the misuse of process for an end other than that which it was designed to accomplish").  The Amended Complaint states facts sufficient to allege the elements of the claim by among other things alleging that Wilson helped to create misleading statements and reports that helped perpetuate the flawed investigation. AC ¶¶ 1203-1212. These actions included meeting with Mangum and Levicy to recalibrate the timeline. AC ¶¶ 390, 787-89.  Wilson therefore conspired with Levicy to get her timeline right, which is part of the conspiracy to abuse process.  Therefore, Wilson's

contention that he was not part of the Conspiracy fails; he was a late-comer to the conspiracy. As such he was liable for actions that happened before and after he joined.[6]

### D. The Amended Complaint States An Intentional Infliction Of Emotional Distress Claim Against Defendant Wilson.

The Twentieth Cause of Action states an actionable claim for Intentional Infliction of Emotional Distress ("IIED"). To state a claim for IIED under North Carolina law, a plaintiff must allege: "(1) extreme and outrageous conduct by the defendant; (2) which is intended to and does in fact cause (3) severe emotional distress." *W.E.T. v. Mitchell,* No. 1:06CV487, 2007 WL 271294, at *8 (M.D.N.C. Sept. 14, 2007) (citing *Harris v. County of Forsyth*, 921 F.Supp. 325, 335-36 (M.D.N.C. 1996)); *see also Waddle v. Sparks*, 414 S.E.2d 22, 27 (N.C. 1992) (stating same essential elements for IIED). "A claim may also exist where the defendant's actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress." *W.E.T., at* *8 (citing to *Hogan v. Forsyth Country Club Co.*, 340 S.E.2d 116, 119-20 (N.C. Ct. App. 1986)). "It is a question of law for the court to determine, from the materials before it, whether the conduct complained of may be reasonably found to be sufficiently outrageous as to permit recovery." *Id.* (citing *Beck v. City of Durham*, 573 S.E.2d 183, 191 (N.C. Ct. App. 2002)). As distilled by the North Carolina Supreme Court, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *West v. King's Dep't Store, Inc.*, 365 S.E.2d 621, 625 (citing *Dickens v. Puryear*, 276 S.E.2d 325, 332 (N.C. 1981)) (quoting Restatement (Second) of Torts § 46 (1965)).

---

[6] "The liability of the conspirators is joint and several. That [e]very one who does enter into a common purpose or design is equally deemed in law a party to every act which had before been done by the others, and a party to every act which may afterwards be done by any of the others in furtherance of such common design. *Muse v. Morrison* 66 S.E.2d 783, 785 (N.C.1951) (internal citations omitted).

Defendant Wilson argues for dismissal of Plaintiffs IIED Claim, contending that he is immune from all actions because his actions were prosecutorial in nature:

With respect to the claim of witness intimidation, all of the relevant actions involving Defendant Wilson also took place after indictment and in preparation for the pending criminal trial. The alleged intimidation involved Defendant Wilson interviewing and evaluating the testimony of important potential witnesses, including a December, 2006 interview with Mangum after indictment of Evans, Finnerty and Seligmann, and an April 24, 2006 interaction with Plaintiff Seligmann's alibi witness, Moezeldin Elmostafa, which occurred after the indictment of Plaintiff Seligmann." …"Defendant Wilson's actions with respect to these three witnesses were taken based on the contents of each individual's projected testimony in court proceedings. The alleged actions were done after indictment of the Criminal Defendants Evans, Seligmann and Finnerty, not the Plaintiffs in this action, and were not taken in the preliminary investigation of a crime as in *Buckley*. Even though Defendant Wilson's alleged actions might have lead to a deprivation of a constitutional right or are otherwise illegal, absolute immunity still applies where the conduct is done, as here, in preparation for a criminal trial. *Carter,* 34 F.3d at 261." (Wilson Br. 31-32).

Because, as stated above, Wilson is not entitled to absolute immunity, the Court must take his own words at face value and find that he tampered with Witness. He did this knowing that Plaintiffs were innocent, and it is of no moment that Wilson joined the Conspiracy to Convict late. He joined it nonetheless, and is therefore liable for all of the harms it caused these Plaintiffs. his request that the Claim against him for IIED should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motions to Dismiss. Plaintiffs' request for leave to conduct the Rule 26(f) discovery conference should be granted.


Dated:  October 10, 2008                     Respectfully submitted,

                                             **EKSTRAND & EKSTRAND LLP**

                                             /s/ Robert C. Ekstrand
                                             _____
                                             Robert C. Ekstrand, Esq. (NC Bar #26673)
                                             Attn:  Stefanie A. Sparks
                                             811 Ninth Street, Suite 260
                                             Durham, North Carolina 27705
                                             Email:  rce@ninthstreetlaw.com
                                             Email:  sas233@law.georgetown.edu
                                             Phone: (919) 416-4590
                                             *Counsel for Plaintiffs Ryan McFadyen, Matthew Wilson, and Breck Archer*

**UNITED STATES DISTRICT COURT**
**FOR THE**
**MIDDLE DISTRICT OF NORTH CAROLINA**

RYAN MCFADYEN, ET AL.,

     Plaintiffs,

          V.

DUKE UNIVERSITY, ET AL.,

     Defendants.

**Civil Action No. 1:07-cv-953**

CERTIFICATE OF SERVICE

    I hereby certify that, on October 10, 2008, I electronically filed the foregoing PLAINTIFFS' OPPOSITION TO DEFENDANT WILSON'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

    James Donald Cowan, Jr.
    Ellis & Winters, LLP
    100 North Greene Street, Suite 102
    Greensboro, NC  27401
    ***Counsel for The University Defendants***

    Dixie Wells
    Ellis & Winters, LLP
    100 North Greene Street, Suite 102
    Greensboro, NC  27401
    ***Counsel for The University Defendants***

Jamie S. Gorelick
Wilmer Cutler Pickering Hale and Dorr, LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
***Counsel for The University Defendants***

Jennifer M. O'Connor
Wilmer Cutler Pickering Hale and Dorr, LLP
1875 Pennsylvania Ave., N.W.
Washington, DC  20006
***Counsel for The University Defendants***

Paul R.Q. Wolfson
Wilmer Cutler Pickering Hale and Dorr, LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
***Counsel for The University Defendants***

William F. Lee
Wilmer Cutler Pickering Hale and Dorr, LLP
60 State Street
Boston, MA  02109
***Counsel for The University Defendants***

Dan J. McLamb
Yates, McLamb & Weyher, LLP
One Bank of America Plaza, Ste 1200
421 Fayetteville Street
Raleigh, NC 27601
***Counsel for The Sane Defendants***

Reginald B. Gillespie, Jr.
Faison & Gillespie
P.O. Box 51729
Durham, NC 27717
***Counsel for City of Durham, North Carolina***

Patricia P. Kerner
Troutman Saunders, LLP
434 Fayetteville Street, Suite 1900
Raleigh, NC 27601
***Counsel for Steven Chalmers, Patrick Baker, Beverly Council, Ronald Hodge, Jeff Lamb, Stephen Mihaich, Michael Ripberger, Laird Evans, and Lee Russ***

D. Martin Warf
Troutman Sanders LLP
P.O. Drawer 1389
Raleigh, North Carolina 27602
***Counsel for Steven Chalmers, Patrick Baker, Beverly Council, Ronald Hodge, Jeff Lamb, Stephen Mihaich, Michael Ripberger, Laird Evans, and Lee Russ***

James B. Maxwell
Maxwell, Freeman & Bowman
P.O. Box 52396
Durham, NC  27717-2396
***Counsel for David Addison, Kammie Michael, Richard D. Clayton and James T. Soukup***

Joel M. Craig
Kennon, Craver, Belo, Craig & McKee
4011 University Drive, Suite 300
Durham, NC 27707
***Counsel for Benjamin W. Himan***

Edwin M. Speas, Jr.
Poyner & Spruill, LLP
P.O. Box 10096
Raleigh, NC 27605-0096
***Counsel for Mark Gottlieb***

Eric P. Stevens
Poyner & Spruill, LLP
P.O. Box 10096
Raleigh, NC 27605-0096
***Counsel for Mark Gottlieb***

Kearns Davis
Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P.
P.O. Box 26000
Greensboro, NC  27420
***Counsel for DNA Security, Inc. and Richard Clark***

Robert J. King, III
Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P.
P.O. Box 26000
Greensboro, NC  27420
***Counsel for DNA Security, Inc. and Richard Clark***

Linwood Wilson
**\*\*Address Redacted Pursuant to Local Rule**

I further certify that I caused the foregoing document to be served by first-class mail, postage prepaid, to the following non CM/ECF participants:

Paul R. Dickinson, Jr.
Lewis & Roberts, PLLC
5960 Fairview Road, Suite 102
Charlotte, NC  28210
***Counsel for Brian Meehan***

James A. Roberts, III
Lewis & Roberts, PLLC
1305 Navaho Drive, Suite 400
Raleigh, NC  27609-7482
***Counsel for Brian Meehan***

Roger E. Warin
Steptoe & Johnson, LLP
1330 Connecticut Avenue, NW
Washington, DC 20003
***Counsel for City of Durham, North Carolina***

Robert A. Sar
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2301 Sugar Bush Road, Suite 600
Raleigh, NC  27612
***Counsel for DNA Security, Inc.***

Nicholas J. Sanservino, Jr.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2301 Sugar Bush Road, Suite 600
Raleigh, NC  27612
***Counsel for DNA Security, Inc.***

Respectfully submitted,

**EKSTRAND & EKSTRAND LLP**

/s/ Robert C. Ekstrand

Robert C. Ekstrand, Esq.
NC Bar #26673
811 Ninth Street, Suite 260
Durham, North Carolina 27705
Email:  rce@ninthstreetlaw.com
Phone: (919) 416-4590
Counsel for Plaintiffs