**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 1:07-CV-00953**

|  |  |  |
|---|---|---|
| **RYAN McFADYEN**, *et al.*, | ) ) | **BRIEF IN SUPPORT OF DEFENDANT** |
| **Plaintiffs,** | ) ) | **CITY OF DURHAM, NORTH CAROLINA'S** |
| v. | ) ) | **MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| **DUKE UNIVERSITY**, *et al.*, | ) ) | **(GOVERNMENTAL IMMUNITY)** |
| **Defendants.** | ) ) |  |

## I.  STATEMENT OF THE CASE

After an overzealous state prosecutor pursued criminal indictments against three members of the Duke Lacrosse team, Plaintiffs, who were never indicted in that matter, now seek to collect money damages from, among others, the City of Durham. In addition to asserting federal constitutional claims under various theories,[1] Plaintiffs allege a number of claims under North Carolina law. As to each of these state-law claims, however, the City is immune from suit based on the doctrine of governmental immunity.

Governmental immunity may be waived only to the extent that the City has purchased liability insurance, or participated in a substantively equivalent local government risk pool, that will indemnify it for the claims at issue. *See* N.C. Gen. Stat. §

---

[1] Each of Plaintiffs' federal claims against the City must be dismissed for the reasons set out in the Brief in Support of Defendant City of Durham, North Carolina's Motion to Dismiss Second Amended Complaint (July 2, 2008, doc. 62) (hereinafter, "Brief in Support of City's Motion to Dismiss").

160A-485 (2007).[2] Here, however, the City has not purchased insurance that would waive its immunity for the state-law claims alleged by Plaintiffs, nor has the City participated in a local government risk pool. *See* the accompanying Affidavit of Darwin Laws and Exhibits 1-3, attached thereto. Thus, the City has not waived its governmental immunity for the state-law claims.

Accordingly, this Court should grant summary judgment in favor of the City on each state-law cause of action brought against the City or against any person who allegedly acted in his "official capacity" on behalf of the City.

## II. STATEMENT OF FACTS[3]

A complete statement of the relevant facts is contained in the Brief in Support of City's Motion to Dismiss, and will not be repeated here except for specific facts relevant to the Motion for Summary Judgment.

### A. Background Facts Related to the State-Law Claims

This case arose when a young woman, Crystal Mangum, claimed she was raped by multiple people on March 14, 2006 during a party at 610 North Buchanan Boulevard, the

---

[2] North Carolina General Statute § 160A-485(a) states in pertinent part, "Any city is authorized to waive its immunity from civil liability in tort by the act of purchasing liability insurance. Participation in a local government risk pool pursuant to Article 23 of General Statute Chapter 58 shall be deemed to be the purchase of insurance for the purposes of this section. Immunity shall be waived only to the extent that the city is indemnified by the insurance contract from tort liability. No formal action other than the purchase of liability insurance shall be required to waive tort immunity, and no city shall be deemed to have waived its tort immunity by any action other than the purchase of liability insurance. . . ."

[3] The City assumes the veracity of the allegations in the Second Amended Complaint for the sole purposes of this motion—except with respect to any allegation regarding the City's waiver of governmental immunity. *See, e.g.*, Sec. Am. Compl. ¶ 48.

residence of three Duke lacrosse players. *See generally* Sec. Am. Compl. ¶¶ 194-261. The Durham Police Department conducted an official investigation into Ms. Mangum's allegations. *See, e.g.*, Sec. Am. Compl. ¶¶ 333-444.

The Second Amended Complaint includes allegations against various police investigators, police spokespersons, police supervisors and City administrators. *See, e.g.,* Sec. Am. Compl. ¶¶ 48-72. While particular allegations involve aspects of training, *see, e.g.,* Sec. Am. Compl. ¶ 1142; supervision, *see, e.g.*, Sec. Am. Compl. ¶¶ 346-49; public statements, *see, e.g.*, Sec. Am. Compl. ¶¶ 500-01, 504-17, 555-58, 809-11; or alleged policymaking, *see, e.g.*, Sec. Am. Compl. ¶¶ 107-87, 555-58, each allegation still relates to the criminal investigation that arose from Mangum's claims or to the City's administration of its law enforcement program generally. *See, e.g.,* Sec. Am. Compl. ¶¶ 48-72, 107-444, 500-01, 504-25, 555-58, 591-778, 816-26, 890-91.

State prosecutor Michael Nifong decided to seek indictments against three Duke lacrosse players for rape and related charges. Sec. Am. Compl. ¶¶ 812-17. The allegations against Nifong, as well as those against Defendant DNA Security, Inc. and its employees ("the DNASI Defendants"), relate solely to their roles in the criminal case that arose from Mangum's claims. *See, e.g.,* Sec. Am. Compl. ¶¶ 487-95, 502-03, 577-80, 591-610, 641-46, 655-65, 746-778.

Grand juries indicted the three Duke lacrosse players. Sec. Am. Compl. ¶ 1150 (J). Plaintiffs were not among those who were indicted. Sec. Am. Compl. ¶¶ 679, 710-12. On January 12, 2007, the cases were referred to the North Carolina Attorney General for

an independent investigation, and on April 11, 2007, the charges were dismissed. Sec. Am. Compl. ¶¶ 5 & 104.

### B. The City of Durham's Liability Coverage

The City of Durham maintains public entity excess liability insurance covering the time periods potentially at issue in the Second Amended Complaint (which time periods are, in broadest terms, from the date of the lacrosse party to the date of the North Carolina Attorney General's dismissal of all charges), as provided by the policies attached to the accompanying Motion for Partial Summary Judgment (Governmental Immunity) as Exhibits 1, 2, and 3 to the accompanying Affidavit of Darwin Laws.[4] The Insurance Company of the State of Pennsylvania ("ICOP") issued Policy No. 4205-2178, effective April 1, 2005 to April 1, 2006, as well as the renewal of that policy, No. 4206-3929, effective April 1, 2006 to April 1, 2007 (Laws Aff. Exs. 1 and 2, respectively). Everest Reinsurance Company ("Everest") issued Policy No. 71P2000024-071, effective April 1, 2007 to April 1, 2008 (Laws Aff. Ex. 3). None of these policies extend coverage to claims against the City for which a defense of governmental immunity would otherwise be available. Nor does the City participate in any local government risk pool (Laws Aff. ¶¶ 13-15).

---

[4] For purposes of the instant Motion for Partial Summary Judgment, the City's position is that **none** of the potentially applicable policies provide coverage for the state-law claims, and thus immunity has not been waived. The City does not, and need not, take any position regarding which policy or policies may be triggered to provide coverage for the federal-law claims, nor does it assert any view as to the scope of any alleged coverage thereunder. Moreover, the City's identification of the broadest possible time period at issue is based solely on the allegations in the Second Amended Complaint and is only for the purposes of the instant Motion. The City does not concede that any alleged claims or damages arose or existed at any particular point in time.

### III. QUESTION PRESENTED

The question before the Court is whether the City is immune from all of Plaintiffs' state-law claims, where none of its liability insurance policies operate to waive the City's immunity for the state-law claims and the City did not participate in a local government risk pool.

### IV. ARGUMENT

#### A. Standard of Review

Summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986), quoted in *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 519 (4th Cir. 2003).

This Court's consideration of whether the City is immune from suit is appropriate at this stage of the litigation. *See, e.g.*, *Patrick v. Wake County Dep't of Human Servs.*, 655 S.E.2d 920, 924 (N.C. Ct. App. 2008) (granting defendants' motion for summary judgment after examining the scope of an insurance policy and determining that "[d]efendants did not waive sovereign immunity through the purchase of this [insurance] policy"); *Shuping v. Barber*, 365 S.E.2d 712, 716 (N.C. Ct. App. 1988) (examining, on

summary judgment, insurance contract's exclusions in determining scope of any waiver of immunity).

### B. Plaintiffs' State-law Claims Against the City Must Be Dismissed Because the City Is Immune from All Such Claims

Each of Plaintiffs' state-law claims against the City (or against persons or entities in their official capacities)[5] alleges conduct taken in the performance of a governmental function, and thus—absent waiver—falls squarely within the bounds of the City's governmental immunity. Plaintiffs concede that the City is immune from civil liability as a general matter, Sec. Am. Compl. ¶ 48, but allege, on information and belief, that the City has waived its immunity by the purchase of liability insurance and/or by participating in a local government risk pool. *See id*.

Plaintiffs are mistaken. As described below, the City neither purchased insurance that would waive its immunity for the state-law claims alleged by Plaintiffs nor has it participated in a local government risk pool. As a result, the City has *not* waived its

---

[5] Official-capacity claims against City officers and administrators are, for all intents and purposes, suits against the City itself. Accordingly, North Carolina courts have made clear that governmental immunity bars both direct claims against a municipality and claims against the municipality's employees in their official capacities. *See Beck v. City of Durham*, 573 S.E.2d 183, 189 (N.C. Ct. App. 2002) (governmental immunity bars "official capacity" suits); *Clayton v. Branson*, 570 S.E.2d 253, 257 (N.C. Ct. App. 2002) (same).

As for Nifong, Wilson, and the DNASI Defendants, the City disputes that they have any "official capacity" with the City whatsoever, and has explained why it is not liable for their actions as a matter of law. *See* Brief in Support of City's Motion to Dismiss, doc. 62 at 36-38. But even if they could be regarded as acting in an "official capacity" for the City, the state-law claims that are brought against them in their official capacity (Causes of Action 18-20, 23, 28, 34-36) should be dismissed on the ground of governmental immunity.

immunity, and there is no genuine issue of material fact as to its liability under Plaintiffs' state-law causes of action. Summary judgment should therefore be granted to the City on each of those causes of action.

### 1. The City Is Immune from Liability Whenever It Engages in Governmental Functions, Such as Law Enforcement

Under North Carolina law, "a municipality is not liable for the torts of its officers and employees if the torts are committed while they are performing a governmental function." *Williams v. Holsclaw*, 495 S.E.2d 166, 168 (N.C. Ct. App.) (citation omitted), *aff'd*, 504 S.E.2d 784 (N.C. 1998); *Mullins by Mullins v. Friend*, 449 S.E.2d 227, 230 (N.C. Ct. App. 1994) ("Under the doctrine of governmental immunity, a municipality and its officers or employees sued in their official capacities are immune from suit for torts committed while the officers or employees are performing a governmental function." (citations omitted)). Governmental immunity applies both to intentional torts and torts sounding in negligence. *See Kawai Am. Corp. v. Univ. of North Carolina at Chapel Hill*, 567 S.E.2d 215, 218 (N.C. Ct. App. 2002) (applying immunity to intentional torts); *Shuping*, 365 S.E.2d at 716 (same); *Williams*, 495 S.E.2d at 168 (applying immunity to negligence claim).

The only class of municipal activity not covered by governmental immunity is conduct related to a "proprietary function" as opposed to a "governmental function."[6] As

---

[6] "A municipal corporation is dual in character and exercises two classes of powers—governmental and proprietary." *Millar v. Town of Wilson*, 23 S.E.2d 42, 43 (N.C. 1942). When "the activity is commercial or chiefly for the private advantage of the compact community, it is private or proprietary" and a municipality may be liable for any resulting injury. *Evans v. Housing Auth. of City of Raleigh*, 602 S.E.2d 668, 671 (N.C. 2004) (citing *Millar*, 23 S.E.2d at 44); *see also id.* at 670 ("[W]hen a municipal

this Court very recently recognized, in the context of governmental immunity, "[l]aw enforcement is well-established as a governmental function." *Pettiford v. City of Greensboro*, 556 F. Supp. 2d 512, 524 (M.D.N.C. 2008) (citing *Clayton v. Branson*, 570 S.E.2d 253, 257 (N.C. Ct. App. 2002)); *see also Schmidt v. Breeden*, 517 S.E.2d 171, 175 (N.C. Ct. App. 1999) ("Certain activities qualify as 'clearly governmental[,] such as law enforcement operations and the operation of jails . . . .'" (quoting *Hare v. Butler*, 394 S.E.2d 231, 235 (N.C. Ct. App. 1990)); *Mullins*, 449 S.E.2d at 230; *Jones v. City of Durham*, 643 S.E.2d 631, 636 (N.C. Ct. App. 2007) ("A police officer in the performance of his duties is engaged in a governmental function."). Naturally, this includes training and supervision of police officers. *Lyles v. City of Charlotte*, 461 S.E.2d 347, 350 (N.C. Ct. App. 1995), *rev'd on other grounds*, 477 S.E.2d 150 (N.C. 1996).

Because Plaintiffs' allegations relate solely to the City's enforcement of criminal law, they unquestionably arise from conduct that constitutes a function of government. Accordingly, absent waiver, governmental immunity applies to all state-law claims

---

corporation undertakes functions beyond its governmental and police powers and engages in business in order to render a public service for the benefit of the community for a profit, it becomes subject to liability for contract and in tort as in case of private corporations . . . ." (citation omitted)); *Schmidt v. Breeden*, 517 S.E.2d 171, 175 (N.C. Ct. App. 1999) ("Non-traditional governmental activities such as the operation of a golf course or an airport are usually characterized as proprietary functions." (citation omitted)); *Pierson v. Cumberland County Civic Ctr. Comm'n*, 540 S.E.2d 810, 813 (N.C. Ct. App. 2000) (finding that operation of an entertainment arena is a proprietary function of the county). But "[a]ny activity of the municipality which is discretionary, political, legislative or public in nature and performed for the public good in behalf of the State, rather than for itself, comes within the class of governmental functions." *Evans*, 602 S.E.2d at 671 (citing *Millar*, 23 S.E.2d at 44). Put another way, whenever a municipality "promot[es] or protect[s] the health, safety, security or general welfare of its citizens, it is an agency of the sovereign." *Millar*, 23 S.E.2d at 44.

against the City.  *See Millar*, 23 S.E.2d at 43.  As discussed below, *no such waiver occurred*; thus, the City remains immune from tort liability.

### 2. The City of Durham Has Not Waived Its Governmental Immunity for Any Torts

The City of Durham has clearly and expressly *not* waived its immunity for any of the state-law causes of action asserted against it in this case.  A "waiver of sovereign immunity may not be lightly inferred and State statutes waiving this immunity, being in derogation of the sovereign right to immunity, must be strictly construed."  *Patrick v. Wake County Dep't of Human Servs.*, 655 S.E.2d 920, 923 (N.C. Ct. App. 2008) (citations and quotations omitted); *see also Magana v. Charlotte-Mecklenburg Bd. of Educ.*, 645 S.E.2d 91, 93 (N.C. Ct. App. 2007) ("Our courts have strictly construed [the analogous statute for school boards] N.C.G.S. § 115C-42 against waiver.").  As discussed below, none of the City's insurance policies provide coverage where the City would otherwise be immune from liability.[7]  Accordingly, the City's immunity remains intact.

#### a. Waiver of Governmental Immunity

A city may waive its governmental immunity under North Carolina law by purchasing liability insurance or participating in a local government risk pool that covers losses arising from tort claims for which a city would otherwise be immune.  *See* N.C. Gen. Stat. § 160A-485(a) ("[N]o city shall be deemed to have waived its tort immunity by any action other than the purchase of liability insurance."); *see also id*. (participation

---

[7] Additionally, the City has not participated in any local government risk pool, as explained in the accompanying affidavit of the City's Risk Manager, Darwin Laws.  *See* Laws Aff. at ¶ 13-15.

in local government risk pool "shall be deemed to be the purchase of insurance for the purposes of this section"); *Blackwelder v. City of Winston-Salem*, 420 S.E.2d 432, 436 (N.C. 1992) (purchase of liability insurance is "only way" municipality can waive governmental immunity); *Jones*, 643 S.E.2d at 636 (same).

Importantly, governmental immunity is waived only to the extent insurance coverage applies. *See* N.C. Gen. Stat. § 160A-485(a) ("Immunity shall be waived only to the extent that the city is indemnified by the insurance contract from tort liability."); *see also Pettiford*, 556 F. Supp. 2d at 528, n.17 (noting "[o]bviously, if neither policy applies, the City enjoys its immunity anyway because no waiver exists."); *Magana*, 645 S.E.2d at 92-93 (interpreting an analogous statute providing immunity to boards of education and finding that immunity is waived only "to the extent of the coverage obtained under an insurance policy"); *Schlossberg v. Goins*, 540 S.E.2d 49, 53 (N.C. Ct. App. 2000) ("Such immunity is waived only to the extent that the city is indemnified by its purchase of insurance . . . ."). Thus, the purchase of insurance policies alone has no bearing on the City's defense of governmental immunity. *Pettiford*, 556 F. Supp. 2d at 526 (rejecting plaintiffs' arguments that the purchase of an insurance policy waives a city's immunity "regardless of the policy's underlying terms and conditions").

Whether to waive immunity at all, or to waive it only as to certain torts, is left entirely to the discretion of the City. N.C. Gen. Stat. § 160A-485(b) (insurance contract "may cover such torts . . . as the governing board may determine"). Unless the City purchased liability coverage covering the specific type of tortious conduct alleged, there is no waiver. *See Dickens v. Thorne*, 429 S.E.2d 176, 179 (N.C. Ct. App. 1993)

(governmental immunity retained for causes of action excluded by insurance policy); *Shuping*, 365 S.E.2d at 716 (finding no waiver for defamation claim since claim not covered under policy). As a result, whether the City has waived its immunity depends solely on whether its insurance policies indemnify the City for the torts alleged.

### b. None of the City's Excess Liability Policies Are Triggered by an Accumulation of Losses Arising from the State-Law Claims

Although the City maintains three consecutive annual excess liability policies that may potentially be implicated by the time period of conduct alleged in the Second Amended Complaint, none of those policies by their terms provide coverage for losses arising from the state-law claims. *See* Laws Aff. Exs. 1, 2, & 3 (consecutively covering April 1, 2005 to April 1, 2008 on an annual basis). Each of these excess liability policies specifically limits the scope of its coverage with nearly identical language: "We will pay on behalf of the insured, the 'ultimate net loss', in excess of the 'retained limit', that the insured becomes legally obligated to pay . . . ." Ex. 3 at Section I.A.(1-4); *see also* Exs. 1 & 2 at Section I.A.2 ("**We** shall pay **you**, or on **your** behalf, the **ultimate net loss**, in excess of the **retained limit** that the **insured** becomes legally obligated to pay . . . .") (emphasis in original). By the express terms of each policy, the excess coverage is not triggered until the City has exhausted a self-insured retention that it is "legally obligated to pay." Because the City cannot be "legally obligated to pay" losses arising from claims for which it has immunity, it cannot exhaust its self-insured retention with those losses. Thus, the excess coverage is not triggered, and the City's immunity remains intact.

- 11 -

This Court recently interpreted identical[8] policy language in *Pettiford v. Greensboro* as not waiving governmental immunity:

> Based on the explicit language of the excess liability insurance policy, the City has not waived its immunity from common law negligence claims. This excess liability insurance does not apply unless and until the City has a legal obligation to pay the $3 million self-insured amount. Because the City is immune from negligence claims up to $3 million, it will never have a legal obligation to pay this self-insured amount and, thus, has not waived its immunity through the purchase of this excess liability insurance policy.

*Pettiford*, 556 F. Supp. 2d at 529. Accordingly, this Court granted the City of Greensboro's motion to dismiss state-law tort claims that had been made against it. *Id.*

Under the first two consecutive annual excess liability policies issued by ICOP, the City maintains a $500,000 retained limit (Laws Aff. Ex. 1 at Endorsement No. 3, Item 3.B.; Ex. 2 at Endorsement No. 1, Item 3.B.), and under the third annual excess liability policy issued by Everest, it maintains a $1 million retained limit (*id.* Ex. 3, Item 3.B.), per "ultimate net loss." Each of these limits must first be exhausted before any coverage will apply under the respective policies. Specifically, the first two policies provide, "**Our** duty to pay any sums that **you** become legally obligated to pay arises only after there has been a complete expenditure of **your retained limit** . . . ." *See id.* Exs. 1 & 2 at Section III.C. The third policy states, "We will pay any sums covered under this Policy only after your 'retained limit' has been exhausted . . . ." *See id.* Ex. 3, Section III.3. As was the

---

[8] The key policy language at issue in *Pettiford* is identical to that contained in the Everest policy and nearly identical to that contained in the ICOP policies, the only difference being the introductory words, "We will pay on behalf of the insured," versus, "**We** shall pay **you**, or on **your** behalf . . . ."

case in *Pettiford*, these respective exhaustion requirements are a "prerequisite to coverage." *Pettiford*, 556 F. Supp. 2d at 529.

By the plain language of each policy, as this Court so recently interpreted, this exhaustion requirement cannot be satisfied by losses for which the City maintains immunity. *Id.*; *see also Magana,* 645 S.E.2d at 93 (granting summary judgment for the school board on the ground that "[s]ince the Board has statutory immunity from liability for tort claims, it cannot be required to pay any part of the $ 1,000,000 self-insured amount and, therefore, the excess policy will provide no indemnification."). Where the language of an insurance policy is plain and unambiguous, it should be enforced according to its terms. *See Patrick v. Wake County Dep't of Human Servs.*, 655 S.E.2d 920, 924 (N.C. Ct. App. 2008) ("'If the meaning of the policy is clear and only one reasonable interpretation exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein.'") (citations omitted). The plain language of each policy limits the trigger of coverage and therefore does not act to waive the City's governmental immunity for the state-law claims.[9] Accordingly, the City's governmental immunity remains intact.

---

[9] Importantly, this reading of the excess liability policies "does not render the insurance coverage meaningless." *Pettiford*, 556 F. Supp. 2d at 529, n.21. As was the case in *Pettiford*, the excess policies "may provide coverage for other types of claims where immunity is not available." *Id.* For example, to the extent any of the respective policies are triggered, coverage may apply to the federal-law claims alleged against the City.

### c. The ICOP Policies Also Contain a Governmental Immunity Endorsement, Thereby Further Precluding Coverage for the State-Law Claims

Not only are none of the City's excess policies triggered, but two of the policies also expressly limit coverage to only those claims for which a defense of immunity is not available. Here, the City's consecutive annual excess liability policies from April 1, 2005 through April 1, 2007 both contain explicit language stating that the City has not waived its immunity by purchasing this coverage and that the policy will not cover claims for which a defense of immunity is available:

> **<u>Governmental Immunity Endorsement</u>**
>
> *This policy is not intended by the insured to waive its governmental immunity* as allowed by North Carolina Statutes Sec. 153A-435. Accordingly, subject to this policy and the Limits of Liability shown on the Declarations, *this policy provides coverage only for occurrences or wrongful acts for which the defense of governmental immunity is clearly not applicable* or for which, after the defense[] is asserted, a court of competent jurisdiction determines the defense of governmental immunity not to be applicable.

Laws Aff. Exs. 1 & 2 (Endorsement 9) (emphasis added).[10]

The North Carolina Court of Appeals recently interpreted an identical "Governmental Immunity Endorsement" in *Patrick*, 655 S.E.2d at 923. Noting that the

---

[10] While the endorsement mistakenly makes reference to the governmental immunity provision applicable to counties, N.C. Gen. Stat. § 153A-435 (2007), instead of that applicable to municipalities, N.C. Gen. Stat. § 160A-485, those provisions are to the same effect: Each permits the governmental body in question to waive its immunity and prescribes rules for doing so. *See id*. In any event, the limited scope of coverage is plain on the face of the endorsement. Moreover, as explained in part IV.B.2 *supra*, the City's coverage under the policies is not triggered, because the City is immune as to, and thus not legally obligated to pay, any amount of its self-insured retention. *See Pettiford*, 556 F. Supp. 2d at 529; *Magana*, 645 S.E.2d at 92-93.

- 14 -

county would be immune from liability for negligence absent a waiver, the court relied on this exact endorsement language to hold that the county's purchase of the policy did not waive its immunity. *Id.* at 924. Rather, the court looked at the plain language of the endorsement and noted that "defendants' insurance policy *unambiguously* states, 'this policy provides coverage only for occurrences or wrongful acts for which the defense of governmental immunity is clearly not applicable . . . .'" *Id*. (emphasis added) (quoting policy endorsement). As such, "[d]efendants did not waive sovereign immunity through the purchase of this policy . . . ." *Id.*

Similarly here, the City did not waive its governmental immunity for any of the state-law claims by the purchase of the ICOP policies, as the policies' coverage is unambiguously limited to "occurrences or wrongful acts for which the defense of governmental immunity is clearly not applicable . . . ." *See* Laws Aff. Exs. 1 & 2 (Endorsement 9). As such, the City maintains its immunity for the state-law claims.

## V. CONCLUSION

As explained above, there is no genuine issue of material fact as to whether the City is immune from the Plaintiffs' state-law causes of action. The City has not waived its governmental immunity by purchasing any liability insurance covering state-law tort claims -- including all such tort claims alleged in the Second Amended Complaint. Thus, to the extent Causes of Action 18-20, 23, 25-28 and 34-36 are alleged against the City (or individuals in their official capacity allegedly acting on the City's behalf), summary judgment on those Causes of Action should be granted.

This the 22nd day of October, 2008.

        FAISON & GILLESPIE

        By: /s/ Reginald B. Gillespie, Jr.
            Reginald B. Gillespie, Jr.
            North Carolina State Bar No. 10895
            5517 Chapel Hill Boulevard, Suite 2000
            Post Office Box 51729
            Durham, North Carolina  27717-1729
            Telephone:  (919) 489-9001
            Fax: (919) 489-5774
            E-Mail: rgillespie@faison-gillespie.com

        STEPTOE & JOHNSON LLP

        By: /s/ Roger E. Warin
            Roger E. Warin*
            Michael A. Vatis*
            Matthew J. Herrington*
            John P. Nolan*
            Leah M. Quadrino*
            Steptoe & Johnson LLP
            1330 Connecticut Avenue, NW
            Washington, DC  20036
            Telephone: (202) 429-3000
            Fax: (202) 429-3902
            E-Mail: rwarin@steptoe.com
            *(Motion for Special Appearance to be filed)

        Attorneys for Defendant, City of Durham, North Carolina

CERTIFICATE OF ELECTRONIC FILING AND SERVICE

The undersigned hereby certifies that, pursuant to Rule 5 of the Federal Rules of Civil Procedure and LR5.3 and LR5.4, MDNC, the foregoing pleading, motion, affidavit, notice, or other document/paper has been electronically filed with the Clerk of Court using the CM/ECF system, which system will automatically generate and send a Notice of Electronic Filing (NEF) to the undersigned filing user and registered users of record, and that the Court's electronic records show that each party to this action is represented by at least one registered user of record, to each of whom the NEF will be transmitted.

This the 22nd day of October, 2008.

                                      FAISON & GILLESPIE

                                      By: /s/ Reginald B. Gillespie, Jr.
                                            Reginald B. Gillespie, Jr.
                                            North Carolina State Bar No. 10895