# UNITED STATES DISTRICT COURT
## FOR THE
## MIDDLE DISTRICT OF NORTH CAROLINA

RYAN McFADYEN, *et al.*,

    Plaintiffs,

    v.

DUKE UNIVERSITY, *et al.,*

    Defendants.

Civil Action No. 1:07-cv-953

---

## PLAINTIFFS' OPPOSITION TO THE CITY OF DURHAM'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT
## (GOVERNMENTAL IMMUNITY)

---

Dated:  November 24, 2008

**EKSTRAND & EKSTRAND LLP**

Robert C. Ekstrand (NC Bar #26673)
   Attn. Stefanie A. Sparks
811 Ninth Street, Suite 260
Durham, North Carolina  27705

***Counsel for Plaintiffs Ryan McFadyen,
Matthew Wilson, and Breck Archer***

EEDoc.25811

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................... i

NATURE OF THE MATTER BEFORE THE COURT ..................................... 1

STATEMENT OF THE FACTS ......................................................................... 2

    A. Plaintiffs' Common Law Claims .............................................................. 2

    B. The City's Insurance Policies .................................................................... 3

    C. The City's Defense Costs ........................................................................... 4

    D. The City's Participation in the North Carolina League of Municipalities' "Interlocal Risk Pool for Liability Risk Sharing" ........................................ 5

    E. The City's "Immunity Waiver Fund" and Resolution Waiving Immunity. 5

QUESTIONS PRESENTED ............................................................................... 6

STANDARD OF REVIEW ................................................................................ 7

    I. THE CITY AFFIANT IS NOT RELIABLE AND, AS SUCH, THE CITY HAS FAILED TO MEET ITS BURDEN UNDER RULE 56. ................................... 8

    II. THE CITY WAIVED ITS IMMUNITY BY PURCHASING INSURANCE .. 12

        1. The City Resort to the Typographical Arts Confuse the Plain Meaning of its Policies . ......................................................................................... 12

            a. The City's Ellipses (What They Conceal) ..................................... 12

            b. The Errant Comma ........................................................................ 14

            c. Patrick Baker's Email in *Jones v. City of Durham*. ....................... 16

    III. THE CITY WAIVED ITS IMMUNITY BY PARTICIPATING IN A "LOCAL GOVERNMENT RISK POOL" SINCE 2005 ................................................. 17

    IV. THE CITY WAIVED ITS IMMUNITY WHEN IT CREATED ITS "IMMUNITY WAIVER FUND" AND ADOPTED RESOLUTIONS DECLARING THE FUND A WAIVER OF ITS IMMUNITY ....................... 18

    V. THE CITY'S MOTION IS PREMATURE AND SHOULD BE CONTINUED PURSUANT TO RULE 56(F) ......................................................................... 19

CONCLUSION ................................................................................................. 20

ii

## **NATURE OF THE MATTER BEFORE THE COURT**

The matter now before the Court is the City's Motion for Partial Summary Judgment ("Motion") [Document #86].  In support of the Motion, the City filed one affidavit [Document #87], and annexed three insurance policies to the affidavit [Document #87-2, 87-3, and 87-4].  The City's Motion seeks partial summary judgment on all of Plaintiffs' "state law tort claims" against the City on the grounds that they are barred by governmental immunity.  However, governmental immunity does not bar Plaintiffs' claims because the City has waived its immunity by (1) its purchase of the insurance policies the City has presented in its Motion (and perhaps others), (2) participating in the League of Municipalities' local government risk pool, and (3) creating what the City calls its "Immunity Waiver Fund" and adopting resolutions that deem that fund to constitute a waiver of its governmental immunity.  To the extent that insurance policies the City has presented are not "triggered" until the City has exhausted the "retained limit" required by each policy, that barrier has already fallen.  All three policies are triggered (and therefore waive the City's immunity) when the City exhausts its "retained limit" through the expenditure of, "settlements, judgments, and *defense costs."*  As shown herein, there is ample uncontroverted evidence in the public domain that the City's expenditures—on attorneys' fees alone—have already pierced the City's retained limits, and therefore its immunity.

Furthermore, because the City's Motion is made before the Plaintiffs have had an opportunity to conduct discovery, the Motion is premature, and should be denied pursuant to Fed.R.Civ.P. Rule 56(f). The City's Motion for Partial Summary Judgment should be denied, *in toto*.

## STATEMENT OF THE FACTS

### A.    Plaintiffs' Common Law Claims

Plaintiffs' Amended Complaint states multiple causes of action against the City under state and federal law.[1]  The City concedes that its immunity does not bar Plaintiffs' federal law claims.  Instead, the City has asserted that governmental immunity bars all of Plaintiffs' "state law tort claims."  City Motion at 1.  Plaintiffs' state law claims, however, are not all subject to a defense of governmental immunity.  For example, the Amended Complaint states a statutory claim under state law for violation of the North Carolina Financial Privacy Act, N.C.G.S. 53B-1, *et seq*., which creates a private right of action and provides for statutory, compensatory, and punitive damages against the City.  In addition to Plaintiffs' Privacy Act claim, the Amended Complaint states causes of action for obstruction of justice, abuse of process, intentional infliction of emotional distress, fraud, invasion of privacy, civil conspiracy, gross negligence, negligence, negligent infliction of emotional distress, and negligent supervision.  These claims are covered by the three policies offered by the City.  *See*, Laws Aff. Ex. 1 & 2, §§I.A.2, II. MM (Wrongful act includes "any actual or  alleged error or misstatement, omission, negligent act, or breach of duty including misfeasance, malfeasance and nonfreseance by you"… including "negligent ministerial act," "discrimination on any

---

[1] Plaintiffs filed their Complaint on December 18, 2007, and an Amended Complaint ("AC") on April 17, 2008, against the City of Durham ("City"), Duke University, DNASI and their employees and agents, alleging conduct in violation of federal and state law and harms caused by their conspiracy to frame Plaintiffs for a crime Defendants knew did not occur and in retaliation for Plaintiffs exercise of constitutional rights.  *See generally,* Am. Compl.  Before filing an Answer, the City filed a Motion to Dismiss pursuant to Fed.R.Civ.P. Rule 12(b)(6). Discovery in this case has been stayed pending the Court's ruling on Defendants' Motions to Dismiss. Pursuant to Local Rule 16.1, no scheduling order will issue until the Court issues that ruling.

basis, including but not limited to race, creed, religion, ethnic background, national origin, age, handicap, sex or sexual orientation but not intentionally committed by you or at your direction," "oral or written publication that slanders or libels a person or origination or disparages a person or organization's goods, products or services," and "violation of an individual's right to privacy); Laws Aff. Ex. 3, §§ I.A.2, V.Z, and V.NN.

### B.    The City's Insurance Policies

The City has selected three insurance policies from a veritable arsenal of policies, and presented them to the Court.  They are:

1.  Policy No. 4205-2178, covering losses of $500,000 to $5 million occurring between April 1, 2005 to April 1, 2006 (the "2006 Policy") (Laws Aff., Ex. 1)[2];

2.  Policy No. 4206-3929, covering losses of $500,000 to $5 million occurring between April 1, 2006 to April 1, 2007 (the "2007 Policy" (Laws Aff., Ex. 2); and

3.  Policy No. 71P2000024-071, covering losses of $1 million to $10 million occurring between April 1, 2007 to April 1, 2008 (the "2008 Policy") (Laws Aff., Ex. 3).

All three policies share two characteristics that are dispositive of the City's Motion:  (1) the insurer's obligation to pay is triggered when the City's exhausts the "retained limit" stated in each policy ($500,000 in the 2006 Policy and the 2007 Policy, and $1 million in the 2008 Policy); and (2) the Policies provide that the City exhausts its "retained limit" when it pays any ***"defense costs"*** related to a claim.

---

[2] "Laws Aff. Ex." refers to the exhibits annexed to the Affidavit of Darwin Laws [Document #79], the sole affiant offered to support the City's Motion.

C.    **The City's Defense Costs**

The City has made numerous public statements that reveal that—long ago—the City's lawyers themselves exhausted the retained limits with their fees.  The statements are so pervasive the Court may take judicial notice of them.  *See* Exs 1-2.[3] For example, Six months ago, Durham Assistant City Attorney Kimberly Grantham reported that the City had—at that point—paid five different firms over $730,000.  (*Legal Bills Climing for Durham*, News & Observer (June 7, 2008) (Ex. 2).  Over a month before the Defendants in this case were due to submit briefs on their motions to dismiss in this action, the City had already paid $233,697.00 in legal fees related to this action.  *Id.*  At that time, the City had also paid an additional $471,286.00 in legal fees related to the *Evans* matter, *id.*, and $26,697.00 in legal fees related to the *Carrington* matter.  *Id.*

By June, 2007, therefore, the City's legal fees alone totaled $731,680.00. *Id.*  Two months later, the legal fees nearly doubled.  In September, Ms. Grantham reported that the City's defense firms had submitted bills totaling $1,245,591.37 through the end of August.  R. Gronberg, *Lacrosse Suits So Far Cost City $729,350*, Durham Herald Sun, (Ex. 1);  *egal Bills from Lacrosse Case Top $1M*,  News & Observer (Sept. 23, 2008) (Ex. 2).  Assistant City Attorney Kimberly Grantham has consistently stated that "the city was responsible for the first $500,000 and the insurer for the next $5 million."  *See, e.g., id.*.

---

[3] References to "Ex." herein refer to exhibits annexed to the Affidavit of Robert C. Ekstrand, filed in support of Plaintiffs' Response to the City's Motion for Partial Summary Judgment.

### D. The City's Participation in the North Carolina League of Municipalities' "Interlocal Risk Pool for Liability Risk Sharing"

On June 20, 2005, the Durham City Council ("DCC") authorized Defendant Patrick Baker to execute the agreements necessary to enroll the City as a member of the N.C. League of Municipalities' "Interlocal Risk Financing Fund." Ex. 3 (Minutes of the DCC's June 20, 2005, Regular Session). The 2005 version of the Common Member Agreement governing that fund, entitled "Interlocal Agreement for a Group Self-Insurance Pool for Property and Liability Risk Sharing," is annexed as Ex. 4. The City Council also appropriated $608,322.00 in funds for the City's membership in the Leagues' Liability Risk Pool from June 2005 through June 2008. *Id*. On May 22, 2008, the City Council directed Baker, at his request, to extend the City's participation in the Leagues' Liability Risk Pool for a period of years beyond the scheduled July 31, 2008, termination date of the Agreement. *Id*. The City Council also suspended the Public Notice, Advertising and RFP requirements of the City's F.P. 503.03, the City's rules governing contracting with the City. *Id.*

### E. The City's "Immunity Waiver Fund" and Resolution Waiving Immunity.

In the summer of 2003, the North Carolina legislature amended the statute governing municipal waivers of immunity. The amendment authorized municipalities to waive governmental immunity by using a "funded reserve" and adopting a council resolution deeming the funded reserve to be a waiver of its governmental immunity. On December 20, 2004, after a year of study and based upon the recommendations of Defendant Baker and the report of an insurance consultant, the City made use of the new form of waiver. Consistent with the amendment to N.C.G.S. § 160A-153(a), the City appropriated $500,000.00 to create a new "funded reserve," and adopting at least three

resolutions that deemed the "funded reserve" to be a waiver of the City's immunity. *See,* CCM Minutes, December 20, 2004 (Ex. 5).

The Minutes of the December 20 City Council Meeting reveal that three Resolutions were adopted in creating the Immunity Waiver Fund: (1) a Resolution adopting a policy to waive the City's immunity subject to the limits of the reserve, (Ex. 6); (2) a Resolution establishing a "funded reserve" for claims for which the City waived its governmental immunity under the original Resolution, (Ex. 7); and (3) a Resolution establishing a FY 2004-05 Financial Plan for the City's new "Immunity Waiver Fund," and making an initial appropriation of $500,000.00 to its "Immunity Waiver Fund," (Ex. 8). Just to be sure, the City named its new fund, "the Immunity Waiver Fund." *Id.*[4] Notably, when City appropriated $500,000.00 to create its "Immunity Waiver Fund," the City was preparing to purchase the 2006 Policy (the first of the "excess liability policies" that the City has presented to the Court). Laws Aff. Ex. 1. The 2006 Policy imposes a self-insured retained limit (SIR) in the amount of $500,000. *Id.*

## QUESTIONS PRESENTED

1. Is an Affiant sufficiently credible for purposes of summary judgment on the question of governmental immunity, where the Affiant purports to offer all potentially relevant documents, but fails to produce to the Court—or even acknowledge—public records that reveal that the City has waived immunity by, inter alia, (a) appropriating over $600,000 to participate in the League of Municipalities' local government risk pool, and (b) adopting a resolution creating an "Immunity Waiver Fund" and declaring the Fund to be a waiver of its immunity?

---

[4] Plaintiffs have been unable to conduct more than a rudimentary search of the records of the City Council, but expect that discovery will produce additional Resolutions further clarifying the scope of the waiver and the Immunity Waiver Fund's current funding.

2.  Is there no genuine issue of material fact with respect to the City's waiver of immunity under N.C.G.S. §160-453(a), where (1) the City purchased insurance policies covering those claims in excess of their "retained limits," (2) the policies include "defense costs" in the calculation of the City's "retained limits," and (3) the City has publicly admitted that it has exhausted those "retained limits" and has submitted requests for reimbursements for defense costs in excess of its retained limit?

3.  Is there a genuine issue of material fact with respect to the City's waiver of immunity under N.C.G.S. §160-453(a), where the City Council's minutes report that the council directed the City Manger to make the City a signatory to the Leage of Municipalities General Liability Risk Pool agreement for three years, beginning in 2005, and directed the City Manager to renew its participation in 2008?

4.  Is there a genuine issue of material fact with respect to the City's waiver of immunity under N.C.G.S. §160-453(a), where the City created a funded reserve it called "the Immunity Waiver Fund" and Plaintiffs have identified three city council resolutions that deemed the fund to be a waiver of its liability?

5.  Is the City's motion for partial summary judgment on its immunity premature when discovery has not commenced, the City has failed to present documents in its possession and control that appear to establish that the City has waived its immunity in three different ways during the relevant time?

## STANDARD OF REVIEW

Summary judgment is appropriate where, after the nonmovant has had an opportunity to conduct discovery relating to the issues raised in the motion, "there is no genuine issue of material fact." *See* Fed.R.Civ.P. 56(c), (f); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The basic question in a summary judgment inquiry is whether the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, (1986); *Ward v. Maloney*, 2004 WL 1345089, 1 (M.D.N.C. 2004). The burden is upon the movant to first "establish the absence of any genuine issue of material fact and

entitlement to judgment as a matter of law." *Crater Corp. v. Lucent Techs.,* 255 F.3d 1361, 1366 (Fed.Cir. 2001) (*citing Celotex,* 477 U.S. 317, 323-34). If the movant's submissions establish the absence of any genuine issue of material fact, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Id.*; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). In making this determination, the Court must "draw all reasonable factual inferences in favor of the nonmovant." *Id.* (*citing Anderson,* 477 U.S. at 255). However, the burden upon the nonmoving party to produce admissible evidence "is qualified by Rule 56(f)'s provision that summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson,* 477 U.S. 242, 250 n. 5; *Celotex*, 477 U.S. 317, 322 (summary judgment is appropriate only after adequate time for discovery); *Strag v. Board of Trustees*, 55 F.3d 943, 952-53 (4th Cir. 1995); *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995). Rule 56(f) explicitly provides that the Court may deny the motion for summary judgment on that basis alone. Fed.R.Civ.P. Rule 56(f).

## ARGUMENT

## I. THE CITY AFFIANT IS NOT RELIABLE AND, AS SUCH, THE CITY HAS FAILED TO MEET ITS BURDEN UNDER RULE 56.

The City has selected three insurance policies that cover much of the relevant period (April 1, 2005, through April 1, 2008). City Br. at 11, Laws Aff. Ex. 1, Ex. 2, & Ex.3. Plaintiffs have not been authorized to conduct discovery directed to the City's waiver of immunity through the various means authorized by N.C.G.S. §160A-153(a), and, as such, cannot concede that the City's proffered policies the only evidence

of their waiver of immunity that exists.  Compounding the problems associated with the City's premature affidavit, the City's sole Affiant, Mr. Darwin Laws, has failed to reveal many facts that are material to this City's immunity.  The following omissions are offered by way of illustration only:

First, the City and Mr. Laws have failed to reveal to the Court the evidence that the City is now and has been a member of the Interlocal Risk Financing Fund of North Carolina ("IRFFNC").  *See*, Ex. 3, *Minutes of June 20, 2005, City Council Meeting* (authorizing the City into a contract with other local governments participating in the "Interlocal Risk Financing Fund of North Carolina ("Interlocal Risk Fund")).

Second, the City and Mr. Laws have failed to reveal that the Interlocal Risk Fund is a general liability risk pool of only "municipalities and other units of local government," administered by the North Carolina League of Municipalities ("NCLM").  Ex. 4, Interlocal Risk Fund Agreement, § VI ("the Trustees may admit as members of this Fund only the units of local government set forth in [N.C. Gen. Stat. §160A-460, *et seq*."].

Third, the City and Mr. Laws failed to reveal to the Court that the City Council appropriated $608,322.00 for the City's participation in the League of Municipalities' Interlocal Risk Fund.  *See*, Ex. 3 at 14 (CC Minutes, June 20, 2004).

Fourth, the City and Mr. Laws failed to reveal to the Court that, on May 22nd of this year, Defendant Baker sought and obtained an emergency authorization to continue the City's participation in the League of Municipalities' Interlocal Risk Fund.  *See*, Ex. 9 ("2008 Baker Memo").

Instead of mentioning any of those facts or submitting any document from which they may be deduced, Mr. Laws makes the following unqualified assertion:  "The City does not now participate, and has not in the past participated, in any local

government risk pool pursuant to Article 23 of Chapter 58 of the North Carolina General Statutes." Laws Aff. ¶ 13. As demonstrated, *infra*, in Argument §II.B, the Interlocal Risk Fund is—by its design—a local government risk pool that comports with Article 23 of Chapter 58 of the North Carolina General Statutes. And there is more.

Mr. Laws and the City failed to reveal to the Court the fact that the City rather flamboyantly waived its immunity pursuant to the 2003 Amendment to N.C. Gen. Stat. §160A-485(a) by establishing a "funded reserve" called the City of Durham's **"Immunity Waiver Fund"** (that is the City's label, not the Plaintiffs'). Ex. 7. Mr. Laws and the City also failed to reveal that the City perfected its waiver pursuant to the 2003 Amendment by adopting a city council resolution (there are at least three) acknowledging that the fund constituted a waiver of its immunity. *See,* e.g., Exs. 6, 7, & 8. Further, the City and Mr. Laws failed to reveal to the Court that the City appropriated $500,000.00 to create the "Immunity Waiver Fund" was $500,000. Ex. 2; *see generally*, Laws Aff.

The City and Mr. Laws failed to reveal to the Court that *at least* three city council resolutions deemed the City's "Immunity Waiver Fund" a waiver of the City's governmental immunity. Ex. 1, 2, & 3. The Plaintiffs will assume nothing about what discovery will reveal relating to the City's waivers of its immunity.

Mr. Laws' states under oath— unequivocally and incorrectly—that "the City is not a party to any agreement which requires … any other entity to pay claims for which the City incurs liability." Laws Aff. ¶15. Mr. Laws is wrong. One such agreement was attached to Plaintiffs' Amended Complaint: the Duke-Durham Police Jurisdiction Allocation Agreement [Document #34-4]. Ex. 10. Section 3.5 of the Police Jurisdiction Allocation Agreement contradicts Mr. Laws' sworn declaration. It provides:

> To the maximum extent allowed by law, the University shall defend, indemnify, and save harmless the City from and against all claims, demands and lawsuits that may arise in any manner from, in connection with, the acts or omissions of the University's officers while performing their duties under this Agreement.

The City's agreement with Duke, contrary to Mr. Law's declaration, in fact "requires [Duke University] to pay claims for which the City incurs liability." Laws Aff. ¶15.

The foregoing are just *examples* of publicly available documents that flatly contradict Mr. Laws' unqualified assertions. They also expose material omissions that call into question Mr. Laws' competency to testify accurately—and completely—with respect to the City's purchases of insurance, its participation in local government risk pools, and its creation of funded reserves like the City's "Immunity Waiver Fund," all of which waive its immunity. *See* N.C.G.S. §160a-153(a). Furthermore, the City has presented Mr. Laws' Affidavit at a stage in these proceedings where the Plaintiffs have had no opportunity to examine him (or anyone with knowledge of the relevant facts).

Plaintiffs can only assume that Mr. Laws simply did not know of either the City's "Immunity Waiver Fund," the City's three Resolutions deeming the fund to be a waiver of the City's governmental immunity, the City Council's appropriation of over $600,000.00 to participate in the League of Municipalities' local government risk pool, or the City's indemnification agreement with Duke University relating to all claims arising out of the concerted activities of the Duke and Durham police departments. If that is the case, Mr. Laws simply not a reliable affiant with respect to the facts at issue in the City's dispositive motion. There being no other affidavits in support of the City's motion, the City has failed to meet its burden of producing credible evidence establishing that it is entitled to Summary Judgment as a matter of law. In the absence of creditable evidence, the City's Motion must be denied.

## II.    THE CITY WAIVED ITS IMMUNITY BY PURCHASING INSURANCE

The City claims that only three of its policies cover Plaintiffs' state law claims against the City.  City Motion at 1; Laws Aff. ¶¶ 12.  For the reasons discussed, *supra* at § 1, Plaintiffs cannot concede that these are the only insurance policies or indemnification agreements that might apply to the Plaintiffs' common law claims.  Furthermore, the Policies the City presented in its Motion plainly waive the City's immunity with respect to Plaintiffs state law tort claims.

The City is correct when it asserts that the language Policies are nearly identical with respect to the triggering event for coverage under each of the policies.  All three policies are triggered by the City's expenditure of the retained limits stated in each policy ($500,000.00 in the 2006 and 2007 Policies and $1 million in the 2008 Policy).  *See,* City Br. at 11-13; Affidavit of Laws, Ex. 1, 2, & 3.  However, the City obfuscates the text of the Policies when it contends that the phrase "legally obligated to pay …" requires that the City can only exhaust its retained limits through payment of settlements or judgments to a claimant.  *See*, City Br. at 11-13.

### 1.    The City Resort to the Typographical Arts Confuse the Plain Meaning of its Policies .

#### a.    The City's Ellipses (What They Conceal)

The City's argument depends entirely upon an illusion that it creates by way of an ellipsis.  The illusion is that the insurer's coverage obligations under the policies are not triggered until the City becomes legally obligated to pay a claimant, pursuant a judgment or settlement. City Br. at 11-13.  The City creates the illusion by

inserting an ellipsis in place of the very language that dispels it.  The City presents the critical policy language as follows:

> Specifically, the first two policies provide, "**Our** duty to pay any sums that **you** become legally obligated to pay arises only after there has been a complete expenditure of **your retained limit** . . . ."  The third policy states, "We will pay any sums covered under this Policy only after your 'retained limit' has been exhausted . . . ."

The illusion is that the exhaustion of the retained limit must be through payments of judgments that the insured becomes "legally obligated to pay" by way of a judgment, for example.  (As discussed, *infra*, the City then reinforces the illusion through an errant comma.)  The City then argues from the illusion, contending that its retained limit can never be exhausted because the City is immune for the first $500,000.00 of any judgment rendered against the City for Plaintiffs' state law claims.   The City leans heavily on cases like *Pettiford* and *Magana*, where "defense costs" could not exhaust the retained limit under the policy.

The ellipses conceal the text that reveals that the City's retained limit is exhausted not only by the City's obligation to pay a claimant, but also by the City's payment of "defense costs" along the way to judgment.  Specifically, the City's ellipses replace the phrase "by means of payments for judgments, settlements, or defense costs."  Restored to its original state, the quoted sentence reads:

> [The insurer's] duty to pay any sums that you become legally obligated to pay arises only after there has been a complete expenditure of your retained limit *by means of payments for judgments, settlements, or defense costs*.

*Id.* (emphasis not in original).

### b. The Errant Comma

The City's argument also depends upon an errant comma in the City's recitation of §1.A.2 of the policies. The comma's placement actually causes the meaning of the clause to shift significantly, and may have led the City to the equally errant conclusion that the Court "interpreted identical policy language in *Pettiford v. Greensboro*, 556 F.Supp. 2d 512 (M.D.N.C. 2008). It is important because that false premise drives much of the City's argument on the policy (i.e., the City's contention that the City must be "legally obligated to pay" before coverage is triggered and immunity is waived.). This becomes clear when the City's incorrect recitation of the provision is juxtaposed against the correct recition:

The City's incorrect recitation of §I.A.2 reads:

> We shall pay . . . the ultimate net loss, in excess of the retained limit that the insured becomes legally obligated to pay . . . .

The correct reproduction of, Section I.A.2 reads:

> We shall pay . . . *the ultimate net loss*, in excess of the retained limit*, that the insured becomes legally obligated to pay* . . . .

City Ex. 1 & 2 at § I.A.2 (emphasis added). The phrase "retained limit" is not, in fact, modified by the phrase "that the insured becomes legally obligated to pay" as the City's rendition suggests; instead the phrase "ultimate net loss" is modified by the phrase "that the insured becomes legally obligated to pay."

Relying on the inaccurate language, the City incorrectly represents that this Court "interpreted identical policy language" in *Pettiford v. City of Greensboro*, 556 F. Supp. 2d 512 (M.D.N.C. 2008), "the only difference being the introductory words" in the AIG/ISCOP policies. City Br. at 12 & n.8. In fact, in *Pettiford* the policies actually *did*

14

refer to "'*the retained limit which the Insured becomes legally obligated to pay.*'" 556 F. Supp. 2d at 528-29 (quoting policy). Here, by contrast, the construction of the City's policies makes clear that the only legal obligation relates to the City's "ultimate net loss."

The City's reliance upon *Pettiford* and *Magana v. Charlotte Mecklenburg Bd. of Educ.,* 645 S.E.2d 91 (N.C. App 2007) are misplaced for another reason. Both *Pettiford* and *Magna* involved insurance policy structures in which an underlying local government risk pool was in place to fund the entities' retained limits. Id. In *Pettiford* and *Mangna* both of the underlying risk pools failed to waive the entities' immunity as a matter of law. In *Pettiford*, the Court held that the city's risk pool was not a failed to constitute a "local government risk pool" under Article 23 of Chapter 58 of the North Carolina General Statutes. *Pettiford,* 556 F.Supp. 2d at 528-29. In *Magana*, the Court held that the school board was subject to a different immunity statute, which did not authorize waiver through participation in a "local government risk pool." Thus, in both cases—due to the structural failure caused by the entities' participation in risk pools that did not qualify to waive their immunity, their immunity could never be pierced.

An email exchange between Defendant Patrick Baker and the City's Risk Manager, Laura Henderson, (Ex. 12) confirms that the City and its insurers understood that the insurer's obligation is triggered when the City exhausts its retained limits through expenditures for defense costs. The email exchange is contained in the record on appeal in *Jones v. City of Durham*, 183 N.C.App. 57 (2007). Given that the City's counsel in this case prepared and settled the record on appeal in that case, Plaintiffs trust that counsel stands by its completeness and the authenticity of the documents contained therein.

### c.     Patrick Baker's Email in *Jones v. City of Durham.*

In *Jones*,  as here, the City filed a motion for partial summary judgment asserting the governmental immunity defense to the plaintiffs' state law claims.  The City filed its governmental immunity motion *after* discovery had concluded.  As such, the plaintiffs were able to file substantial evidence that the City and its insurer agreed that the City's "excess coverage" policies waived the City's immunity, even before the City created its "Immunity Waiver Fund."  Some of that evidence was preserved in the Record on Appeal submitted to the North Carolina Court of Appeals, including an illuminating email exchange between Patrick Baker and the City's Risk Manager, annexed as Exhibit 12.

Baker's email was sent soon after the City obtained "excess coverage" after many years in which the City carried no insurance at all.  The email was promted by the first claim Baker encountered that posed an obvious likelihood of piercing the City's Self Insured Retainer of $375,000.00.  In fact, the claim ultimately gave rise to the case of *Jones v. City of Durham*.  The email exchange begins with Defendant Baker's questions when presented with Ms. Jones' claim, which Baker described as "catastrophic" and certain to pierce the City's $350,000 self-insured retention ("SIR"):

> BAKER:  "I am about to send a denial letter… .  Does our excess coverage defeat immunity once the claim is above the self insured amount?  Should we notify the carrier?  …
>
>  [HENDERSON]:   "The insurance provides 5M per accident above 350K SIR. The SIR applies to damages ***as well as legal defense expenses*** (but not to expense of our staff counsel, so we can't bill for your time.)  When we expect that a claim could go into the excess (exceed the SIR), then we need to report it to the underwriter promptly. … We have an obligation to protect the underwriter's interest, and that necessarily affects our settlement posture within the SIR . . . .  ***This does affect the potential for***

> *an immunity defense* because immunity is waived to the extent
> of the insurance. … ***This is the dilemma of the low SIR*** . . . ..

Henderson's response makes it clear that the City understood that, when a claim's expenses exhaust the SIR, the excess policy is triggered and the City is covered for the next $5 million in defense costs, settlements, and judgments.  Henderson knew then what the City, try as it might, cannot avoid:  the City essentially waived its immunity for claims with significant defense costs by purchasing an excess insurance policy that includes defense costs the retained limits.  The City avoids the glaring failures of its argument by failing to disclose the facts that reveal them.

## III.    THE CITY WAIVED ITS IMMUNITY BY PARTICIPATING IN A "LOCAL GOVERNMENT RISK POOL" SINCE 2005.

The City and Mr. Laws unequivocally—and incorrectly—contend that the City has never waived its immunity by participating in a local government risk pool pursuant to N.C.G.S. §160A-153(a).  *See,* Motion at 1-2;  Laws Aff. at ¶ 12-13.   On June 20, 2005, the Durham City Council adopted a resolution authorizing the Durham City Manager to execute a contract for the City's participation in the North Carolina League of Municipalities' (NCLM) risk pool.  *Minutes of the June 20, 2005, Regular Session of the Durham City Council.*  (Ex. 3 at 14-15.)  Since the summer of 2005, Durham has participated in NCLM's Inter-local Risk Financing Fund of North Carolina" ("Risk Financing Fund").  The Risk Financing Fund is N.C.L.M.'s general liability coverage program.  *See generally,* Ex. 4.   The Council authorized Defendant Baker to spend up to $608,322 for the City's participation in NCLM's General Liability Fund in the following

three years (through June of 2008).  There is evidence that the City *still participates* in

the N.C.L.M's local government risk fund.  *See*, Ex. 9, Patrick Baker Memorandum, May

22, 2008 (requesting immediate authorization to renew the City's three-year contract for

participation in N.C.L.M.'s Risk Financing Fund).[5]

## IV. THE CITY WAIVED ITS IMMUNITY WHEN IT CREATED ITS "IMMUNITY WAIVER FUND" AND ADOPTED RESOLUTIONS DECLARING THE FUND A WAIVER OF ITS IMMUNITY.

The City incorrectly asserts that "a city may waive its governmental

immunity *only* through the purchase of liability insurance or participation in a local

government risk pool that provides coverage for the claims at issue."  Motion at 1-2

(emphasis in original).  The City omits a third way North Carolina cities may waive their

immunity, pursuant to *the second part* of N.C.G.S. §160A-485(a), which the City

ignores.  Specifically, a city waives its governmental immunity if it (1) uses a "funded

reserve," and (2) adopts a resolution that deems the funded reserve to be a waiver of its

governmental immunity.  Unbeknownst to Mr. Laws, the City has done both.  Consistent

with the second part of §160-485(a), on December 20, 2004, the city council appropriated

$500,000 to create a funded reserve and named it an "Immunity Waiver Fund,"(Ex.7)

and, on the same day, adopted a city council resolution that deemed the "Immunity

Waiver Fund" to be a waiver of the City's governmental immunity.

---

[5] On _____, ___, 2008, Defendant Baker issued a memorandum to the Durham City Council requesting that the Council waive public notice and bidding and simply authorize him to execute contracts necessary to continue the City's participation in NCLM's general liability risk pool.  (Exhibit ____).

## V. THE CITY'S MOTION IS PREMATURE AND SHOULD BE CONTINUED PURSUANT TO RULE 56(f)

The Plaintiffs have not been permitted to conduct discovery. As such, the City's Motion is premature, and gives rise to a serious claim that Plaintiffs are being "railroaded" into defending the City's motion without the means by which it can do so. The Supreme Court has has held that Fed.R.Civ.P. Rule 56(f)[6] was specifically designed to remedy the problems associated with premature summary judgment motions. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) ("premature motions can be adequately dealt with under Rule 56(f),[FN6] which allows a summary judgment motion to be denied, or the hearing on the motion to be continued, if the nonmoving party has not had an opportunity to make full discovery."); Fed.R.Civ.P.Rule 56(f). It is well settled that the non-moving party's burden of producing specific facts showing that there is a genuine issue for trial imposed by Rule 56 "is qualified by Rule 56(f)'s provision that summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson*, supra, 477 U.S. at 250 n. 5, 106 S. Ct. at 2511 n. 5. See also, Strag v. Board of Trustees, 55 F.3d 943 (4th Cir. 1995); Nguyen v. CNA Corp., 44 F.3d 234 (4th Cir. 1995).

---

[6] Rule 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

As a general rule, summary judgment is appropriate only after "adequate time for discovery." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 719 (4th Cir. 1991), *cert denied*, 502 U.S. 1095 (1992). "[S]ummary judgment must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson*, 477 U.S. at 250 n.5 ; *see also, Willis v. Town of Marshall, North Carolina*, 426 F.3d 251, 264 (4th Cir. 2005). Here, there has been no opportunity for discovery. On that basis alone, Defendants' Motion for Summary Judgment should be denied.

## CONCLUSION

For the foregoing reasons, Defendants' Motions for Partial Summary Judgment should be denied.


Dated: November 24, 2008                    **EKSTRAND & EKSTRAND LLP**

                                             /s/  Robert C. Ekstrand
                                            _____
                                            Robert C. Ekstrand (NC Bar #26673)
                                               Attn:  Stefanie A. Sparks
                                            811 Ninth Street, Suite 260
                                            Durham, North Carolina  27705
                                            ***Counsel for Plaintiffs Ryan McFadyen,***
                                            ***Matthew Wilson, and Breck Archer***

EEDoc.25811

# UNITED STATES DISTRICT COURT
## FOR THE
## MIDDLE DISTRICT OF NORTH CAROLINA

RYAN MCFADYEN, et al.,
      Plaintiffs,
    v.

DUKE UNIVERSITY, *et al.,*
   Defendants.

Civil Action No. 1:07-cv-953

---

## CERTIFICATE OF SERVICE

---

I hereby certify that, on October 6, 2008, I electronically filed the foregoing

PLAINTIFFS' BRIEF IN OPPOSITION TO THE CITY'S MOTION FOR PARTIAL

SUMMARY JUDGMENT (GOVERNMENTAL IMMUNITY) with the Clerk of the

Court using the CM/ECF system which will send notification of such filing to the

following:

James Donald Cowan, Jr.
Ellis & Winters, LLP
100 North Greene Street, Suite 102
Greensboro, NC 27401
Counsel for the University Defendants

Dixie Wells
Ellis & Winters, LLP
100 North Greene Street, Suite 102

Greensboro, NC  27401
Counsel for the University Defendants

Jamie S. Gorelick
Wilmer Cutler Pickering Hale and Dorr, LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Counsel for the University Defendants

Jennifer M. O'Connor
Wilmer Cutler Pickering Hale and Dorr, LLP
1875 Pennsylvania Ave., N.W.
Washington, DC  20006
Counsel for the University Defendants

Paul R.Q. Wolfson
Wilmer Cutler Pickering Hale and Dorr, LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Counsel for the University Defendants

William F. Lee
Wilmer Cutler Pickering Hale and Dorr, LLP
60 State Street
Boston, MA  02109
Counsel for the University Defendants

Dan J. McLamb
Yates, McLamb & Weyher, LLP
One Bank of America Plaza, Ste 1200
421 Fayetteville Street
Raleigh, NC 27601
Counsel for the Sane Defendants

Reginald B. Gillespie, Jr.
Faison & Gillespie
P.O. Box 51729
Durham, NC 27717
Counsel for City of Durham, North Carolina

Patricia P. Kerner
Troutman Saunders, LLP

434 Fayetteville Street, Suite 1900
Raleigh, NC 27601
Counsel for Steven Chalmers, Patrick Baker, Beverly Council, Ronald Hodge, Jeff Lamb,
Stephen Mihaich, Michael Ripberger, Laird Evans, and Lee Russ

D. Martin Warf
Troutman Sanders LLP
P.O. Drawer 1389
Raleigh, North Carolina 27602
Counsel for Steven Chalmers, Patrick Baker, Beverly Council, Ronald Hodge, Jeff Lamb,
Stephen Mihaich, Michael Ripberger, Laird Evans, and Lee Russ

James B. Maxwell
Maxwell, Freeman & Bowman
P.O. Box 52396
Durham, NC 27717-2396
Counsel for David Addison, Kammie Michael, Richard D. Clayton and James T. Soukup

Joel M. Craig
Kennon, Craver, Belo, Craig & McKee
4011 University Drive, Suite 300
Durham, NC 27707
Counsel for Benjamin W. Himan

Edwin M. Speas, Jr.
Poyner & Spruill, LLP
P.O. Box 10096
Raleigh, NC 27605-0096
Counsel for Mark Gottlieb

Eric P. Stevens
Poyner & Spruill, LLP
P.O. Box 10096
Raleigh, NC 27605-0096
Counsel for Mark Gottlieb

Kearns Davis
Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P.
P.O. Box 26000
Greensboro, NC 27420
Counsel for DNA Security, Inc. and Richard Clark

Robert J. King, III
Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P.
P.O. Box 26000
Greensboro, NC 27420
Counsel for DNA Security, Inc. and Richard Clark

Linwood Wilson
** Address Redacted Pursuant to Local Rule

I further certify that I caused the foregoing document to be served by first-class mail,
postage prepaid, to the following non CM/ECF participants:

Paul R. Dickinson, Jr.
Lewis & Roberts, PLLC
5960 Fairview Road, Suite 102
Charlotte, NC 28210
Counsel for Brian Meehan

James A. Roberts, III
Lewis & Roberts, PLLC
1305 Navaho Drive, Suite 400
Raleigh, NC 27609-7482
Counsel for Brian Meehan

Roger E. Warin
Steptoe & Johnson, LLP
1330 Connecticut Avenue, NW
Washington, DC 20003
Counsel for City of Durham, North Carolina

Robert A. Sar
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2301 Sugar Bush Road, Suite 600
Raleigh, NC 27612
Counsel for DNA Security, Inc.

Nicholas J. Sanservino, Jr.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

2301 Sugar Bush Road, Suite 600
Raleigh, NC  27612
Counsel for DNA Security, Inc.

Respectfully submitted,

**EKSTRAND & EKSTRAND LLP**

/s/ Robert C. Ekstrand

Robert C. Ekstrand, Esq.
NC Bar #26673
811 Ninth Street, Suite 260
Durham, North Carolina 27705
Email:  rce@ninthstreetlaw.com
Phone: (919) 416-4590
Counsel for Plaintiffs