## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

### CIVIL ACTION NUMBER 1:07-CV-00953

| | |
|---|---|
| RYAN McFADYEN, et al., | |
| Plaintiffs, | Reply Brief in Support of "Duke Police Defendants'" Motion to Dismiss Amended Complaint |
| v. | |
| DUKE UNIVERSITY, et al., | |
| Defendants. | |

Plaintiffs' principal contention against the Duke Police Defendants is that Duke improperly allowed the Durham Police Department to investigate allegations by Crystal Mangum that she was raped by Duke students at a private party in an off-campus house, and then improperly failed to halt Durham's investigation when Duke allegedly learned that Durham Police officers and District Attorney Nifong were violating Plaintiffs' rights. The Duke Police Defendants' opening brief showed that this claim proceeds from a flawed premise—that Duke, a private institution, had the authority and the opportunity to compel a municipal police department and public prosecutor to cease an investigation into grave felony accusations. Plaintiffs offer nothing in response to explain how the Duke Police Defendants could be liable for failing to prevent public authorities with proper jurisdiction from conducting such an investigation. Accordingly, Plaintiffs' claims against the Duke Police Defendants should be dismissed.

## I. PLAINTIFFS FAIL TO STATE A CLAIM FOR NEGLIGENCE (COUNTS 29, 37, 38, 39, 40)

The Duke Police Defendants' opening brief explained (at 8-10) that Plaintiffs' negligence claims in Counts 29, 37, 38, 39, and 40 fail under the public duty doctrine. That doctrine, which precludes claims against law enforcement agencies and officers for negligence in conducting criminal investigations, rests on the presumption that law enforcement agencies "ordinarily act for the general public," and not for the benefit of particular individuals. *See Little v. Atkinson*, 136 N.C. App. 430, 432, 524 S.E.2d 378, 380 (2000). The public duty doctrine makes clear that the Defendants did not owe a legal duty to the Plaintiffs to conduct a criminal investigation into Mangum's allegations (AC ¶¶ 1295, 1296) or to conduct any such investigation in a certain way (AC ¶ 1299).

Plaintiffs contend that the public duty doctrine only shields law enforcement agencies from liability for failure to prevent criminal acts. (Pl. Duke Police Opp. 33-34.) North Carolina courts have rejected this very argument. *See Stone v. N.C. Dep't of Labor*, 347 N.C. 473, 480, 495 S.E.2d 711, 715 (1998) (rejecting plaintiff's claim that the public duty doctrine "applies only to claims against local governments for failure to prevent crimes") (emphasis omitted); *Lassiter v. Cohn*, 168 N.C. App. 310, 317, 607 S.E.2d 688, 692 (2005) (rejecting plaintiff's argument that the public duty doctrine "applies to only those instances where the police fail to provide protection from criminal acts"). Indeed, North Carolina courts have held repeatedly that the doctrine bars lawsuits not only by crime victims for law enforcement's failure to prevent specific crimes, but

also by parties who have been injured in other ways by allegedly faulty police work, including negligent criminal investigations.[1]  Plaintiffs identify no case where an individual member of the public—whether a crime victim, suspect, witness, or anyone else—has sustained a claim against police for negligently investigating (or negligently failing to investigate) an alleged crime.

Plaintiffs next argue that general principles of tort law nonetheless impose a duty of care on every person "who enters into an active course of conduct" and therefore the Duke Police owed Plaintiffs a duty of care.  (Pl. Duke Police Opp. 35-36.)  That argument is unavailing.  The public duty doctrine does not distinguish between negligent failures to act and negligent active investigations, and several cases bar claims under the public duty doctrine where the police were alleged to have investigated actively, but inadequately.[2]  Nor does that distinction have any relevance to the purpose of the

---

[1] *See, e.g.*, *Lassiter*, 168 N.C. App. at 315-318, 607 S.E.2d at 692-693 (public duty doctrine barred claims brought by motorist against police officer for negligent acts while investigating an auto accident); *Little*, 136 N.C. App. at 432-434, 524 S.E.2d at 380-381 (public duty doctrine barred gross negligence claim brought by relatives of deceased woman who alleged police inadequately investigated and cleared site where her remains were found); *Walker v. City of Durham*, No. 02-1297, 158 N.C. App. 747, 582 S.E.2d 80 (Table), 2003 WL 21499222, at *2 (July 1, 2003) (public duty doctrine barred rape victim's claim for negligent infliction of emotional distress against police technician who mishandled forensic evidence, allowing rapist to go free, because "the collection of forensic evidence to be used in a criminal prosecution is an integral part of any criminal investigation undertaken by the government to protect against crime"); *Moore v. Cease*, No. 703-CV-144 FL 1, 2005 WL 5322794, at *19 (E.D.N.C. July 5, 2005) (public duty doctrine barred claim against police officer for negligently investigating and reporting on plaintiff, whom he suspected of driving drunk).

[2] *See, e.g., Lassiter*, 168 N.C. App. at 318, 607 S.E.2d at 693 (police officer actively investigated accident and made affirmative decision not to require flares); *Little*, 136

doctrine, which is to preclude tort liability where law enforcement agencies do not owe duties to specific individuals, but only to the general public. *See Stone*, 347 N.C. at 482, 495 S.E.2d at 716.

Moreover, Plaintiffs' asserted "active course of conduct" in fact consists of allegations that the Duke Police negligently *failed to act*—for example, that the Duke Police failed to intervene in Durham's investigation, failed to conduct its own parallel investigation, failed to monitor (and presumably stop) Durham's investigation, and failed to examine evidence of Nifong's misconduct or allegedly exculpatory evidence about the players. (*See* AC ¶ 1299; Pl. Duke Police Opp. at 36-37.) The mere failure to intervene, however, does not constitute negligence in the absence of an affirmative duty to act. *See Davidson v. University of North Carolina*, 142 N.C. App. 544, 553-555, 543 S.E.2d 920, 926-927 (2001). And there is no legal basis (regardless of the public duty doctrine) for Plaintiffs' claim that the Duke Police had any affirmative duty to these Plaintiffs to take any of these actions or to preempt Durham's investigation of the alleged rape. (Pl. Duke Police Opp. 35.) As the Duke Police's opening brief explained (at 10-13), Plaintiffs did not have a right to force the *Duke* Police Department, as opposed to the *Durham* Police Department, to conduct the investigation into Mangum's rape allegations. Plaintiffs make no response to that point, other than to concede that the Durham Police had the legal authority to investigate Mangum's allegations (*see* Pl. Durham Super. Opp. 20).

---

N.C. App. at 432, 524 S.E.2d at 380 (police actively searched for remains of crime victim); *Moore*, 2005 WL 5322794, at *2-6 (police officers actively investigated and pursued drunk driving suspect).

That concession is fatal to their negligence claims, for it establishes that Duke did nothing wrong by respecting Durham's exercise of its authority to investigate the allegations.[3]

Plaintiffs' claims also fail because they do not adequately allege another essential element of their negligence claims:  proximate causation.  Nifong's willful misconduct was an intervening act that broke the chain of causation between the alleged actions of the Duke Defendants and Plaintiffs' alleged injuries.  (*See* Duke Police Br. 8 n.4.) Plaintiffs respond that Nifong's conduct did not constitute an intervening act because he is alleged to have been a "co-conspirator" with the Duke Police.  (*See* Pl. Duke Police Opp. 34.)  But conspiracy is not a recognized basis for liability for negligence claims. Indeed, as numerous courts have held, there is no such thing as a conspiracy to be negligent; a "negligent conspiracy" is an inherent contradiction in terms.[4]  Accordingly, Plaintiffs' conspiracy allegations are irrelevant to the negligence claims in Counts 29, 37, 38, 39, and 40.[5]

---

[3] By failing to respond, Plaintiffs have also conceded Defendants' argument that Count 37 should be dismissed (1) as to Duke Police officers Day, Mazurek, Eason, and Falcon because those individuals are not named as Defendants in the amended complaint (*see* Duke Police Br. 14 n.8); and (2) as to claims against any of the individual University Defendants in their official capacities as duplicative of Plaintiffs' claims against Duke University (*see id.* (noting duplicative official capacity claims in Counts 37, 38, and 39)).

[4] *See, e.g.*, *In re Nat'l Century Fin. Enters., Inc.*, 504 F. Supp. 2d 287, 327 (S.D. Ohio 2007) (collecting state law cases holding that there is no civil claim for negligent conspiracy); *United States v. Mitlof*, 165 F. Supp. 2d 558, 564 (S.D.N.Y. 2001) (same); 16 Am. Jur. 2d Conspiracy § 51 ("[P]arties cannot engage in civil conspiracy to be negligent.").

[5] Plaintiffs' protestation that the inquiry into proximate cause is in any event "too fact-

All of Plaintiffs' negligence claims also fail for additional, independent reasons, as explained in the Duke Police Defendants' opening brief (at 10-22) and below.

**Count 38:**  Plaintiffs seek to hold Duke University and certain so-called "Duke Police Supervising Defendants"[6] liable for negligently hiring, training, and supervising Duke Police officers in relation to the Mangum rape investigation.  (AC ¶¶ 1362-1363.) The Duke Police Defendants' opening brief explained (at 8-10, 16-18) that (a) Plaintiffs cannot maintain an action against Duke for negligent supervision because Plaintiffs have not stated a claim against any Duke employee for committing a tortious act, nor alleged that prior to the act Duke knew or had reason to know of its employee's incompetence; and (b) even if a Duke employee had committed a tortious act, Count 38 should be dismissed as to the individual "Supervising Defendants" because, under North Carolina law, only the employer, not individual defendants, can be liable for negligent supervision.

Plaintiffs argue in response (Pl. Duke Police Opp. 39-40) that the underlying tortious act was the negligence of the Duke Police in failing to intervene in the Durham Police investigation.  As explained above, however (pp. 1-5), the Duke Defendants owed no legal duty to Plaintiffs to so intervene, and so Duke could not have been negligent in

---

intensive an inquiry to dispose of upon the pleadings" (Pl. Duke Police Opp. 34) is unavailing here.  The amended complaint alleges numerous facts that—if taken as true, as required in a motion to dismiss—establish on their face that Plaintiffs would have suffered no injury if not for Nifong's wrongful actions.  (*See* Duke SANE Br. 31-34.)

[6] As noted in the Duke Police's opening brief (at 1), Plaintiffs define the "Duke Police Supervising Defendants" to include all of the "Duke Police Defendants" except Smith and Stotsenberg, plus Brodhead, Trask, Dawkins, and Graves.  Defendants Brodhead, Trask, Dawkins, and Graves join in these arguments.

failing to do so.  Plaintiffs further point out (Pl. Duke Police Opp. 38-39) that the amended complaint alleges numerous instances in which the Duke Police failed to intervene to stop alleged misconduct by *Durham* Police officers.  But Plaintiffs cannot maintain a negligence action against *Duke* for failing to supervise the *Durham* Police; the rationale for requiring prior knowledge of the employee's incompetence is that the employer has the power to control—to supervise or retain—its employees.  *See Braswell v. Braswell*, 330 N.C. 363, 372-373, 410 S.E.2d 897, 903 (1991).  The Duke Police had no such control over the Durham Police.  (*See* Duke Police Br. 12.)

Finally, Plaintiffs argue that "[n]othing in the cases cited by the Defendants compels their conclusion that only an employer may be liable for negligently supervising an[] employee."  (Pl. Duke Police Opp. 39.)  To the contrary, in *Cox v. Indian Head Indus., Inc.*, 123 F. Supp. 2d 892 (W.D.N.C. 2000), the Court rejected a negligent supervision claim against an individual supervisor, holding that, under North Carolina law, "a claim for negligent hiring, retention, and supervision would be *actionable only against employers*." *Id*. at 914-915 (emphasis added).  North Carolina courts have confirmed *Cox* by rejecting negligent supervision claims brought against an individual who was not the employer.  *See Foster v. Crandell*, 181 N.C. App. 152, 171, 638 S.E.2d 529, 539 (2007) (holding that "there [could] be no" legal basis for a negligent supervision claim against a medical director because medical director was "at most … a co-employee" and not the employer); *see also Ostwalt v. Charlotte-Mecklenburg Bd. of Educ.*, Nos. 07-534, 08-266, 2008 WL 4567389, at *4 (W.D.N.C. Oct. 8, 2008) ("North

- 7 -

Carolina courts have determined that *no claim for negligent supervision lies when the Defendant is not the employer* of the individual who commits the tortious act." (emphasis added)); *Smith v. Privette*, 128 N.C. App. 490, 494, 495 S.E. 2d 395, 398 (1998); Duke Police Br. 17-18.  Even if a Duke University employee had committed a tortious act, therefore, Count 38 should be dismissed as to the individual "Duke Police Supervising Defendants" because none of them is the employer.[7]

**Count 39:**  In this Count, Plaintiffs assert a negligent infliction of emotional distress claim.  In response to Defendants' argument that this claim must fail because it alleges only intentional, and not negligent, conduct by Duke Police (*see* Duke Police Br. 19), Plaintiffs contend that they "may plead alternative theories of recovery based on the same conduct or transaction." (Pl. Duke Police Opp. 41 (internal quotation marks omitted).)  Although Plaintiffs may indeed plead alternative theories at the pleadings stage, the *only* conduct they allege in this cause of action is intentional and purposeful conduct: namely, that various Duke Defendants, acting at the directive of the Chairman

---

[7] Contrary to Plaintiffs' assertion (Pl. Duke Police Opp. 39 & n.17), the cases they cite do not hold that negligent supervision claims may be maintained against individuals who are not the employer.  *See Medlin v. Bass*, 327 N.C. 587, 590-591, 398 S.E.2d 460, 461-463 (1990) (recognizing claim for negligent retention and supervision against employer); *Foster*, 181 N.C. App. at 171, 638 S.E.2d at 539 (explaining that "the *Medlin* theory of liability" is "a basis for imposing liability *upon an employer* for negligently hiring or retaining an employee" (emphasis added)); *Braswell*, 330 N.C. at 372-373, 410 S.E.2d at 903 (recognizing claim for negligent retention and supervision against employer); *Floyd v. McGill*, 156 N.C. App. 29, 35-36, 575 S.E.2d 789, 793-794 (2003) (recognizing negligent training claim against employer); *Gamble v. Barnette*, No. 5:06-104, 2007 WL 2003418, at *5 (W.D.N.C. July 5, 2007) (suggesting that supervisors could be liable for negligent supervision but dismissing claim against individual supervisor); *see also* Reply Br. for Duke SANE Defendants 7-8.

of the Board of Trustees of Duke University, "manufactured false and misleading witness statements to manufacture inculpatory witness statements [sic] and conceal their personal knowledge of evidence of Plaintiffs' innocence for the purpose of obtaining Plaintiffs' convictions."  (AC ¶ 1367; *see also* AC ¶¶ 445-455 (describing the "Chairman's Directive" as a plan to frame the players because "the Chairman [of the Duke University Board of Trustees had] announced that it would be 'best for Duke' if Plaintiffs were tried and convicted on Mangum's false accusations").)  These are clearly allegations of intentional, not negligent, conduct, and so they do not state a claim for negligent infliction of emotional distress.

**Count 40**:  This Count alleges that Duke negligently "entrusted" the rape investigation to Durham.  Plaintiffs concede that the North Carolina courts have never recognized a claim for negligent entrustment based on the entrustment of a criminal investigation.  (Pl. Duke Police Opp. 42.)  Indeed, Plaintiffs acknowledge that their theory of liability here is entirely "novel."  (*Id.* at 44.)

Plaintiffs argue, however, that such a novel claim should be cognizable by analogy to social host or dram shop liability.  In making this argument, Plaintiffs copy almost verbatim—and without attribution—from the Eastern District of North Carolina's recent opinion in *Lumsden v. United States*, 555 F. Supp. 2d 580 (E.D.N.C. 2008).  *Compare Lumsden*, 555 F. Supp. 2d at 592, *with* Pl. Duke Police Opp. at 43-44 (first full paragraph

of p. 43 through full paragraph of p. 44); *compare also Lumsden*, 555 F. Supp. 2d at 590, *with* Pl. Duke Police Opp. at 42-43 (carryover paragraph).[8]

*Lumsden* does not aid Plaintiffs.  In that case, government officials knew that a Marine Corps private had a propensity to abuse ether and that canisters of ether were in his car, yet those officials returned the Marine's previously impounded car to him; he then became intoxicated on ether and drove his car head-on into the plaintiff's car. *Lumsden*, 555 F. Supp. 2d at 582.  In allowing a negligent entrustment claim to go forward, the *Lumsden* court explained that North Carolina has only recognized negligent entrustment claims involving automobiles and firearms, but concluded that the canister of ether was a tangible "instrumentality" that would be used by the driver "*in conjunction with his operation of an automobile*" to injure the plaintiff.  *Id.* at 591 (emphasis added); *see also Meachum v. Faw*, 112 N.C. App. 489, 493, 436 S.E.2d 141, 144 (1993) (quoting the Restatement of Torts' characterization of negligent entrustment as requiring the entrustment of "a *chattel* for the use of another" (emphasis added)).  Nothing in *Lumsden*

---

[8] Plaintiffs cite *Hart v. Ivey*, 332 N.C. 299, 420 S.E.2d 174 (1992), and *Iodice v. United States*, 289 F.3d 270 (4th Cir. 2002), for their theory that the North Carolina dram shop law "codified the common law theory of negligent entrustment as applied to the purveyors of alcohol."  (Pl. Duke Police Opp. 43.)  But *Hart* and *Iodice* are not negligent entrustment cases, and even if they had recognized a limited principle of negligent entrustment of dangerous substances such as alcoholic beverages or narcotics, neither involved a claim that the defendant had negligently entrusted something intangible—in this case, an investigation.  Plaintiffs suggest, in effect, that Duke "owned" the investigation and negligently entrusted it elsewhere, but no authority suggests that a police investigation can be "owned."  Even if it could, Duke did not "own" it, for as Plaintiffs concede (Pl. Durham Super. Opp. 20; Pl. Duke Police Opp. 35), Durham had full, independent authority and jurisdiction to conduct the investigation.

or North Carolina law supports expanding the tort of negligent entrustment to cover the "entrustment" of an intangible responsibility like the conduct of a criminal investigation. Count 40 should therefore be dismissed.

## II. PLAINTIFFS FAIL TO STATE A CLAIM UNDER 42 U.S.C. § 1983 FOR FAILURE TO INTERVENE (COUNT 11)

Plaintiffs contend that numerous Duke Defendants—from Duke Police officers to the Chairman of the Duke Board of Trustees—were aware of violations of Plaintiffs' constitutional rights by various Durham defendants, but nonetheless failed to prevent those constitutional violations from occurring. (Pl. Duke Police Opp. 12, 14.)[9] In so arguing, Plaintiffs seek to dramatically expand a very narrow theory of § 1983 liability, under which police officers may be liable for failing to prevent flagrant violations of constitutional rights (usually beatings of suspects) that occur openly in their presence. The expansion that Plaintiffs seek is unsupported and would be wholly unworkable.

Plaintiffs cite only one case in support of their bystander liability claim, *Randall v. Prince George's County, Md.*, 302 F.3d 188 (4th Cir. 2002). But in *Randall*—and in all of the bystander liability cases it cites, *id*. at 203-205—the constitutional violations that

---

[9] Contrary to Plaintiffs' assertions, the Duke Defendants do not "concede that the A.C. sufficiently alleges they are persons, acting under color of law, and that their conduct caused the harms alleged." (Pl. Duke Police Opp. 8.) As explained in the Duke University Defendants' opening brief (at 9), conclusory assertions that defendants acted under color of law (which is all Plaintiffs offer) are insufficient. *See Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 766 (4th Cir. 2003). And as explained below, Plaintiffs cannot credibly allege that the Duke Police "caused" any of their alleged harms because the Duke Police could not have forced the Durham Police to halt their investigation.

the defendants failed to prevent occurred during a specific incident that took place in the defendants' immediate, physical presence.[10] Here, by contrast, Plaintiffs contend that various Duke Defendants were aware of (but failed to hinder) constitutional violations allegedly committed behind the scenes by law enforcement officers over the course of a thirteen-month investigation. (Pl. Duke Police Opp. 12.) Plaintiffs cite no case (and the Duke Police Defendants have not found one) that would support the expansion of bystander liability to require police officers (and their supervisors) to actively interfere with a criminal investigation by another police agency under the supervision of a public prosecutor under the supposition that the investigation might be ill-founded. Such an expansion of bystander liability would cause great mischief, for it inevitably would lead law enforcement agencies to refuse to cooperate with each others' investigations, lest it be said in retrospect that they knew or should have known that the other agency's investigation had no basis but nonetheless failed to bring it to a halt.

---

[10] *See also Skrtich v. Thornton,* 280 F.3d 1295, 1301 (11th Cir. 2002) ("[A]n officer who *is present at the scene* and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance.") (emphasis added); *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir. 1994) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers *in their presence*.") (emphasis added); *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972) (holding that bystander liability exists for "nonsupervisory officers who *are present at the scene* of such summary punishment") (emphasis added); *cf. Moore v. Cease*, No. 703-144, 2005 WL 5322794, at *15 (E.D.N.C. July 5, 2005) ("[W]here plaintiff has failed to present evidence that defendant Seitter was present at the scene of the arrest … the court is compelled to dismiss plaintiff's § 1983 claim against defendant Seitter premised upon bystander liability.").

Count 11 should also be dismissed because Plaintiffs have failed to respond to Defendants' argument (at 32-33) that Plaintiffs have not pleaded that any Duke Defendant had any reasonable opportunity to prevent any constitutional deprivation. *See Randall*, 302 F.3d at 204 (noting that essential element of claim is a "reasonable opportunity" to prevent the violation). Plaintiffs contend that Defendants somehow "knew" that Mangum was not raped and that the Durham Police were engaged in a "calculated scheme to frame Plaintiffs or three of their teammates," but nonetheless "abdicated their authority and let the hoax begin." (Pl. Duke Police Opp. 13.) But Plaintiffs fail to explain how any Duke Defendant could have reasonably or realistically halted the Durham Police's investigation. In fact, as explained in the Duke Police Defendants' opening brief (at 11-13)—and as Plaintiffs themselves concede (*see* Pl. Durham Super. Opp. 20)—the Durham Police had full and independent statutory authority to conduct and control the investigation. That independent (and undisputed) authority is fatal to Plaintiffs' contention that any Duke Defendant could have reasonably prevented or terminated the Durham Police's investigation of Mangum's accusations.

Finally, Plaintiffs nowhere respond to the Duke Police Defendants' argument (at 33 n.23) that Plaintiffs have not adequately identified (1) which constitutional violations Defendants' allegedly failed to prevent; and (2) which Defendants allegedly failed to prevent them.[11] Nor do Plaintiffs respond to the Duke Police Defendants' argument (at

---

[11] In addition, Plaintiffs' entire briefing is focused on alleged failures to intervene by the "Duke Police Department's officers and investigators." (Pl. Duke Police Opp. 12; *see id*.

33-34) that their *only* specific allegation of a failure to intervene—that Duke Police Sgt.

Gary Smith stood by as Durham Police executed a warrant to search Ryan McFadyen's

dorm room—fails to state a claim as a matter of law.  In fact, Plaintiffs merely summarize

Defendants' arguments with respect to this allegation without offering any argument of

their own in response.  (*See* Pl. Duke Police Opp. 12-13.)  Plaintiffs' exclusive reliance

on conclusory assertions that unspecified Defendants were allegedly aware of unnamed

constitutional violations cannot state a valid claim for failure to intervene under § 1983.

*See Young v. City of Mount Rainier*, 238 F.3d 567, 577 (4th Cir. 2001).

## III.  PLAINTIFFS FAIL TO STATE A CLAIM FOR INVASION OF PRIVACY (COUNT 22)

The Duke Police Defendants' opening brief (at 22-29) explained the numerous

reasons why the allegations in Count 22 fail to state a claim for invasion of privacy.

Plaintiffs respond to only a few of those arguments, and their responses are

unpersuasive.[12]

---

at 12-14.)  Plaintiffs nowhere explain on what basis the many individual Duke Defendants named in this Count who are not part of the Duke Police Department could be liable for failing to prevent asserted but unnamed constitutional violations.  To the extent that Plaintiffs' unspecified allegations against any Duke Defendants are premised on an alleged policy or custom (*see* AC ¶¶ 1014-1016, 1032-1035), those claims are duplicative of those stated in Count 12 (*Monell* Liability) and should be dismissed for the same reasons.  (*See* Duke Br. 26-31; Duke Reply Br. 9-12.)

[12] Plaintiffs offer no response at all to several of the Duke Police Defendants' arguments. Plaintiffs do not address, for instance, Defendants' arguments that Plaintiffs cannot state a claim based on intrusions into *others'* seclusion or based on any alleged harassment that took place in public.  (*Compare* Duke Police Br. 25-27, *with* Pl. Duke Police Opp. 25-26.)

The Duke Police Defendants explained in their opening brief (at 23-25) that Plaintiffs had no reasonable expectation of privacy in the data stored on their Duke Cards because that data contained information that either is publicly observable or openly shared with third parties. Plaintiffs do not take issue with the case law that Defendants cite, but instead offer the conclusory retort that "Plaintiffs can reasonably expect that personal information, such as financial information and educational records, will be free of unfounded or unreasonable seizure." (Pl. Duke Police Opp. 25.) Plaintiffs nowhere explain, however, why this information should be treated as private, given the well-settled law holding that such information does *not* give rise to a legitimate expectation of privacy. *See, e.g.*, *United States v. Knotts*, 460 U.S. 276, 281-282 (1983); *Smith v. Maryland*, 442 U.S. 735, 743-744 (1979). Nor do Plaintiffs explain where they have alleged that financial or educational information was "seized," or how any purported seizure is relevant to a common law invasion of privacy claim.

In addition, the Duke Police Defendants argued (at 27-28) that there can be no invasion of privacy claim against any Duke Defendant based on the search of Ryan McFadyen's dorm room because (1) no Duke Defendant actually entered McFadyen's dorm room; and (2) in any event, the Durham Police's entry into his room was pursuant to a valid, court-issued search warrant. (*See* AC ¶¶ 596, 611, 614, 922.) Plaintiffs do not respond to Defendants' first argument; they do not dispute that no Duke Defendant entered McFadyen's dorm room, nor do they explain how any Duke Defendant can be liable for invasion of privacy when that Defendant did *not* actually intrude upon

Plaintiffs' private space.[13]  Similarly, Plaintiffs cite no case that would refute Defendants'

second argument that there can be no invasion of privacy here because the entry into

McFadyen's dorm room was based on a facially-valid search warrant issued by a

magistrate judge.[14]  Count 22 should therefore be dismissed.

## IV.    PLAINTIFFS FAIL TO STATE A CLAIM FOR FRAUD (COUNT 24)

As explained in the Duke Police Defendants' opening brief (at 29-31), Plaintiffs

have not alleged the elements of fraud.  Plaintiffs now contend that Defendants' asserted

failure to "advise Plaintiffs that information from their financial records had been

unlawfully released" constitutes fraud because Defendants had a legal duty to

communicate that information to them.  (Pl. Duke Police Opp. 30, 31.)[15]  Plaintiffs insist

that this purported legal duty was imposed by the North Carolina Financial Privacy Act,

---

[13] In their opposition, Plaintiffs obliquely refer to the Defendants' alleged "power to control others' misconduct."  (Pl. Duke Police Opp. 25.)  But, as a matter of law, the Duke Police had no power to "control" the Durham Police, especially when the Durham Police were acting pursuant to a warrant.  *See supra* 7, 13; *see also* Duke Br. 29-32.  Nor do Plaintiffs allege any conspiracy or concerted action in Count 22.  (AC ¶¶ 1229-1234.)

[14] *See Doby v. Decrescenzo*, No. 94-3991, 1996 WL 510095, at *33 (E.D. Pa. Sept. 9, 1996) (rejecting invasion of privacy claim where a police officer's actions were "performed under a valid warrant"); *see also Dye v. Columbus Retail Merchants Delivery, Inc*., No. 252, 1975 WL 181891, at *2 (Ohio Ct. App. Nov. 4, 1975) ("The second assignment of error relates to the claimed invasion of privacy that existed when the police officers searched appellants' home, using a search warrant valid on its face.… The right of privacy must yield to the right to search by a judicially issued search warrant.").

[15] *See Breeden v. Richmond Cmty. College*, 171 F.R.D. 189, 194 (M.D.N.C. 1997) (holding that in the "case of fraudulent concealment or nondisclosure, a plaintiff must additionally allege that all or some of the defendants had a duty to disclose material information … as silence is fraudulent *only when there is a duty to speak*." (emphasis added)).

N.C. Gen. Stat. § 53B, *et seq.* (*See* Pl. Duke Police Opp. 30; Pl. Duke Opp. 41.) That argument fails for several reasons.

First, the North Carolina Financial Privacy Act does not impose any such duty. On its face, the Act establishes no duty to inform Plaintiffs of past disclosures in the way asserted in this Count. *See* N.C. Gen. Stat. §§ 53B-4-5. Nor does it create a general fiduciary relationship between Duke and these Plaintiffs. And even if Duke were a "financial institution" under the Act, the relationship between banker and customer generally is not fiduciary in nature. (Duke Br. 46; Reply Br. for Duke University Defendants 21-22.)

Plaintiffs further insist that the violation of this "duty" caused them financial loss because they had to expend time and resources to quash the subpoena for their key card records after Defendants informed them of this subpoena by letter without disclosing that the records allegedly had been turned over to the prosecutors already. (*See* Pl. Duke Police Opp. 30; Pl. Duke Opp. 40; AC ¶ 1256.) But had those letters informed Plaintiffs that the key card records had already been turned over, Plaintiffs surely would have filed a motion to quash the subpoena or to obtain some other form of relief from the Court. Plaintiffs have thus failed to allege an essential element of fraud: that they acted differently because of Defendants' alleged misrepresentations or that they relied to their detriment on these misrepresentations.[16]

---

[16] *See Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 663, 464 S.E.2d 47, 57 (1995); *Feibus & Co. v. Godley Constr. Co.*, 44 N.C. App. 133, 139, 260 S.E.2d

Finally, Plaintiffs' opposition asserts *for the first time* a claim for constructive fraud based on disclosure of their key card data.  (*See* Pl. Duke Police Opp. 31-32.)  No such claim appears in the amended complaint.  This Court should reject Plaintiffs' belated attempt to raise a constructive fraud claim.  It is well settled that a plaintiff cannot add supplemental claims in an opposition to a motion to dismiss.  *See, e.g.*, *Beck v. City of Durham*, 129 F. Supp. 2d 844, 855 (M.D.N.C. 2000) (Beaty, J.).  Even if this claim had been raised in the amended complaint, moreover, it could not survive dismissal, for a claim for constructive fraud arises only where a fiduciary relationship exists.  *See Toomer v. Branch Banking & Trust Co.*, 171 N.C. App. 58, 67, 614 S.E.2d 328, 335 (2005).  But as explained in Duke University Defendants' opening brief (at 43-46) and Reply Brief (at 21-22), no fiduciary relationship existed between Duke and Plaintiffs.  Plaintiffs' claim for constructive fraud therefore fails as a matter of law.

665, 669 (1979), *rev'd on other grounds*, 301 N.C. 294, 271 S.E.2d 385 (1980).

## V.  CONCLUSION

The amended complaint should be dismissed for failure to state a claim against the Duke Police Defendants.[17]

/s/ Jamie S. Gorelick

_____

Jamie S. Gorelick
District of Columbia Bar No. 101370
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Ave., N.W.
Washington, D.C. 20006
Telephone: (202) 663-6500
Facsimile: (202) 663-6363
Email: jamie.gorelick@wilmerhale.com

/s/ J. Donald Cowan, Jr.

_____

J. Donald Cowan, Jr.
N.C. State Bar No. 0968
Ellis & Winters LLP
100 N. Greene Street, Suite 102
Greensboro, North Carolina 27401
Telephone:  (336) 217-4193
Facsimile:  (336) 217-4198
Email:  don.cowan@elliswinters.com

---

[17] Plaintiffs conclude their opposition briefs with a "request [for] leave to schedule the Rule 26(f) discovery conference."  (Pl. Duke Police Opp. 45; *see also* Pl. Duke Opp. 48, Pl. SANE Opp. 49.)  As Plaintiffs themselves concede, however, no such conference is appropriate until the motions to dismiss have been decided, and Plaintiffs have now clarified that their request did not intend to seek a conference before that time. (Plaintiffs' Reply to DNASI's and Richard Clark's Purported Response to Plaintiffs' Request For Leave To Schedule and Conduct the Rule 26(f) Discovery Conference, Dkt. No. 93 at 2-3.)  Plaintiffs' suggestion (*id*. at 1) that Defendants other than DNASI and Richard Clark somehow do not oppose a request for leave to schedule the Rule 26(f) discovery conference at the present time is incorrect.  Rather, the Duke Defendants recognize, as do Plaintiffs, that no such conference is appropriate until all the motions to dismiss have been decided.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 25, 2008, I electronically filed the foregoing Reply Brief in Support of "Duke Police Defendants'" Motion to Dismiss Amended Complaint with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

*Counsel for the Plaintiffs*
Robert C. Ekstrand
Email: rce@ninthstreetlaw.com

*Counsel for City of Durham and Edward Sarvis*
Reginald B. Gillespie, Jr.
Email: rgillespie@faison-gillespie.com

*Counsel for Patrick Baker, Steven Chalmers, Ronald Hodge, Lee Russ, Stephen Mihaich, Beverly Council, Jeff Lamb, Michael Ripberger, and Laird Evans*

Patricia P. Kerner
Email: tricia.kerner@troutmansanders.com

D. Martin Warf
Email: martin.warf@troutmansanders.com

Hannah Gray Styron
Email: hannah.styron@troutmansanders.com

*Counsel for James T Soukup, Kammie Michael, David Addison, Richard D. Clayton*
James B. Maxwell
Email: jmaxwell@mfbpa.com

*Counsel for Mark Gottlieb*
Edwin M. Speas, Jr.
Email: espeas@poynerspruill.com
Eric P. Stevens

Email:  estevens@poyners.com

*Counsel for Benjamin Himan*
    Henry W. Sappenfield
    Email:  hsappenfield@kennoncraver.com

    Joel Miller Craig
    Email:  jcraig@kennoncraver.com

*Counsel for DNA Security, Inc., Richard Clark*
    Kearns Davis
    Email:  kdavis@brookspierce.com

    Robert James King, III
    Email:  rking@brookspierce.com

*Counsel for J. Wesley Covington*
    Kenneth Kyre, Jr.
    Email:  kkyre@pckb-law.com

*Counsel for Brian Meehan*
    James A. Roberts, III
    Email:  jimroberts@lewis-roberts.com

*Linwood Wilson, Pro Se*
    Email: ADDRESS REDACTED

This 25th day of November 2008.

        /s/ Jamie S. Gorelick
        Jamie S. Gorelick

        Attorney for Duke University Police
        Department, Jeffrey O. Best, Phyllis Cooper,
        Robert Dean, Joseph Fleming, William F.
        Garber II, Leila Humphries, James Schwab,
        Gary N. Smith, and Greg Stotsenberg