IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RYAN MCFADYEN, *et al,*          )
                                 )
    Plaintiffs,              )
                                 )
v.                               )    No. 1:07-CV-00953
                                 )
DUKE UNIVERSITY, *et al,*        )
                                 )
    Defendants.              )
_____

**REPLY OF DEFENDANT HODGE
IN SUPPORT OF HIS MOTION TO DISMISS**
_____

## INTRODUCTION

    Hodge is one of a group of supervisory personnel employed by the Durham Police Department ("DPD"), labeled as the "Durham Police Supervising Defendants" by Plaintiffs. (2d Amend. Compl. ¶ 68.) In addition to the various claims asserted against him as a result of this classification, several additional claims are singled out against Hodge—all arising out of a one-sentence opinion he gave in response to a reporter's question. With this Court's permission, Hodge has filed his own Motion to Dismiss, and supporting Brief addressing these claims.[1]

    In his Brief in Support of his Motion to Dismiss, Hodge analyzed the claims arising out of the single remark attributed to him. Specifically, Plaintiffs only allege,

---

[1] Undersigned counsel also represents other Durham Police Supervising Defendants and has filed a Reply in Support of their Motions to Dismiss simultaneously with this Reply. Due to Hodge's inclusion in the larger classification of Supervisory Defendants, Hodge incorporates the Reply of the Supervising Defendants herein.

1

"when asked by a reporter about the strength of the case in light of the DNA test results, Hodge replied, 'I don't think we would be here if it wasn't (a strong case)' against Plaintiffs." (2d Amend. Compl. ¶ 809.) This remark was alleged to have been made on April 11, 2006, when Hodge was in attendance at a public forum where District Attorney Mike Nifong was a speaker. (*Id.* ¶¶ 805, 809.) The day before the forum, the negative results of the SBI's DNA testing had been made public. (*Id.* ¶ 800.) Apparently, these were the "DNA test results" that formed the basis of the reporter's inquiry.

In his Brief, Hodge cited numerous cases demonstrating that this statement was an insufficient basis to support the claims alleged against him. In their Response, Plaintiffs' ignore both the case law and the allegations in their Amended Complaint. For the most part, in responding to Hodge, Plaintiffs incorporate their responses to other defendants' motions to dismiss, where Hodge and his conduct are not even mentioned. (*See, e.g.*, Pltfs. Super. Opp. 10, 28; Ptfs. SMAC Opp. 13-17, 28-29.)

In one instance, Plaintiffs respond to Hodge's arguments by arguing facts that are not alleged in the Second Amended Complaint. Plaintiffs argue that when Hodge gave the April 11 response, that he not only knew about the SBI test results, but had also just learned "that DNASI's tests were not only negative as to the team members, but also revealed the presence of at least four other male contributors of genetic material in the [sic] Mangum's rape kit." (Plfs.' Super. Opp. 41-42.) The Second Amended Complaint contains no such allegations about Hodge and belies any such inference. Plaintiffs have <u>not</u> alleged that Hodge knew anything about the DNSAI test results when he responded to

2

the question on April 11.  Only Nifong, Gottlieb, and Himan were alleged to have learned that information on April 10, in a meeting between them and DNSAI's employees, Defendants Clark and Meehan.  (2d Amend. Compl. ¶¶ 749, 801, 803.)  Nowhere do Plaintiffs allege that this information was shared with anyone else, including Hodge, before the forum the following day.

In the same portion of their Response, Plaintiffs also argue that Hodge "announced with Nifong his determination to continue the persecution of Plaintiffs and their teammates." (Plfs.' Super. Opp. 42.)   The Amended Complaint is devoid of allegations to support this assertion.  Hodge is not alleged to have "announced" anything "with Nifong;" rather, he is alleged only to have been in attendance at a forum where Nifong was a speaker when he was questioned about his opinion by a reporter.   (2d Amend. Compl. ¶¶ 805, 809.)

These new "allegations" asserted in Plaintiffs' Response cannot be considered on this Motion.  *See Bratcher v. Pharm. Prod. Dev., Inc.*, 545 F. Supp. 2d 533, 542-43 (E.D.N.C. 2008) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss") (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984).  Rather, this Motion must be determined based solely upon the allegations actually contained in Plaintiffs' Amended Complaint.  For the reasons stated in Hodge's initial brief and below, these allegations are inadequate to support the claims asserted against him.

3

**MATTERS NO LONGER AT ISSUE**

In their Response, Plaintiffs concede that any official capacity claims alleged against Hodge, where the City is also identified as a defendant, should be dismissed as redundant. (*See* Plfs.' Super. Opp. 44, 45-47.) As such, the following Causes of Action against Hodge in his official capacity should be dismissed: Fifth ("false public statement" claim under section 1983); Ninth (retaliation claim under section 1983); Tenth ("privileges and immunities" claim under section 1983); Eleventh ("failure to prevent" constitutional deprivations under section 1983); Fifteenth (conspiracy under section 1983); Sixteenth (conspiracy under section 1985); Seventeenth ("failure to intervene" under section 1986); Twenty-Third (aiding and abetting breach of fiduciary duty); Twenty-Fifth (negligence); Twenty-Sixth (negligent supervision, retention, training and discipline); Twenty-Seventh (negligent infliction of emotional distress); and Twenty-Eighth (negligent infliction of emotional distress).

Additionally, Plaintiffs expressly waive their individual capacity claims in the Twenty-Sixth, Twenty-Seventh, and Twenty-Eighth Causes of Action. (*See* Plfs.' Super. Opp. 44-45.) Thus, these three claims should be dismissed entirely.

**ARGUMENT**

**I.    No Federal Claims Exist Against Hodge**

    A.    No 42 U.S.C. § 1983 False Public Statements
           (Fifth Cause of Action)

In his Brief, Hodge argued that the single remark attributed to him by Plaintiffs in the Amended Complaint is insufficient to support a claim pursuant to 42 U.S.C. §1983.

(Hodge Br. 5-15.) Hodge specifically pointed out that while other defendants are alleged to have made "volumes" of statements that a rape had occurred, and commented on the silence of the lacrosse team, none of these statements were alleged to have been made by him. (Hodge Br. 5-6; 2d Amend. Compl. ¶¶ 502, 577, 956(E).) Further, Hodge articulated why Plaintiffs asserted constitutional rights were not infringed upon by his alleged conduct, and therefore would not meet the "plus" element of the stigma-plus standard. (Hodge Br. 13-15.)

Rather than respond directly to any of Hodge's arguments, Plaintiffs refer only to their Response to the "SMAC"[2] defendants. (*See* Plfs.' Super. Opp. 10.) Plaintiffs acknowledge that a false, stigmatizing public statement by a defendant, "in connection with" the deprivation of a constitutionally protected right or property interest is the appropriate standard by which to measure this Cause of Action. (*See* Plfs.' SMAC Opp. 12-13.) However, in an effort to piece a claim against Hodge together, Plaintiffs simply lump him with others who they allege spewed "*hundreds* of false and inflammatory public statements." (*Id.*) Plaintiffs then list nearly four pages of stigmatizing comments, none of which include Hodge's remark. (*Id.* at 13-17.) Plaintiffs do not even try to demonstrate how Hodge's remark stigmatized them, or any connection at all between it and the "deprivations" of which they complain.

Plaintiffs assessment of the constitutional "plus" fairs no better. Even accepting Plaintiffs' premise that there was a coordinated conspiracy to get Plaintiffs to answer

---

[2] Plaintiffs use "SMAC" as an abbreviation for Defendants Soukup, Michael, Addison and Clayton.

police questioning, (Plfs.' SMAC Opp. 13), Hodge has established that there is no constitutional right to be free from police interrogation (*see* Durham Supervisors' Brief 11-12), despite Plaintiffs' legally unsupported pleas to the contrary.  Plaintiffs' other theories regarding searches and seizures, deprivation of reports, and release of financial information are all equally feckless.  (*See Id.*, 13-17) (regarding Fourth Amendment claims); (Hodge Br. 13) (regarding reports from the nontestimonal order); (Durham Supervisors' Reply 23-24) (regarding the financial information).  Plaintiffs have cited no law supporting their assertions that the "deprivations" of which they complain are sufficient to raise their claim against Hodge above defamation.  *See Paul v. Davis*, 424 U.S. 693, 710-12 (1976).

Further, Plaintiffs have failed to offer a meaningful response to Hodge's argument that this claim is barred by the doctrine of qualified immunity.  *See, e.g., Siegert v. Gilley,* 500 U.S. 226, 232-34 (1991).  Plaintiffs again incorporate by reference portions of the SMAC Opposition (*See* Plfs.' Super. Opp. 28), where they detail why the alleged conduct of defendants other than Hodge are not protected by qualified immunity.  (*See* Plfs.' SMAC Opp. 28-29.)  There, Plaintiffs argue that the Fourth Circuit generally recognizes that "stigmatizing statements in connection with the deprivation of a tangible interest, including any federal right, is actionable under § 1983," and cite a footnote in *Stone v. University of Maryland Medical System Corp.,* 855 F.2d 167, 173 (4th Cir. 1988) to support such assertion.  However, this was not the holding of *Stone*.  In Stone, the Court expressly declined to address the question of whether the plaintiff had stated a

6

deprivation of a liberty interest in connection with his discharge from public employment, because the issue was not raised on the facts of the case. Plaintiffs' reliance on this questionable citation shows that the "contours of the right" they claim was not so "conclusively drawn as to leave no doubt that" Hodge's expression of his opinion—that "the case" was "strong"—was unconstitutional; therefore, Hodge is protected from liability for this claim by qualified immunity. *See, Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999); (2d Amend. Compl. ¶ 809).

Plaintiffs' reliance on *Buckley v. Fitzsimmons,* 509 U.S. 259, 261 (1993) in both the oppositions to Hodge's motion and the motion of the "SMAC" Defendants is misplaced. In *Buckley,* the Supreme Court did *not* hold that the false statements at issue formed a basis for a §1983 claim. The Court expressly stated that it would not decide, but instead expressly assumed, that the plaintiffs had alleged constitutional violations for which § 1983 provides a remedy. *Id.* at 261.

The sole question in *Buckley* was whether a prosecutor was entitled to *absolute* immunity for alleged fabrication of evidence and false statements at a press conference. The Court analyzed the differences between qualified and absolute immunity at length, noting that most public officials have only qualified immunity, which protects them from damages liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 268 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). By contrast, absolute immunity is reserved for officials performing certain "special functions," such as conduct of

7

prosecutors that was "intimately associated with the judicial phase of the criminal process." *Id.* at 268-70 (citations omitted). The Court held that the prosecutors' statements to the media were not entitled to absolute immunity, because they were not made during the course of judicial proceedings. *Id.* at 277. The Court noted that he may have been entitled to qualified immunity, like any other public official, *id.* at 278, but that issue had not been raised on appeal. *Id.* at 261 ("[W]e have no occasion to consider whether some or all of respondents' conduct may be protected by qualified immunity."). Further, the Court was "not concerned with petitioner's actions against the police officers (who have asserted the defense of qualified immunity)." *Id.* at 264 (parentheses in original). Thus, the *Buckley* Court's holding that the prosecutors were not entitled to *absolute* immunity is wholly irrelevant to the question of whether Hodge, or any other officer, is entitled to *qualified* immunity here.

Given these shortcomings, Plaintiffs demonstrate an inability to nudge the claims against Hodge from speculative defamation over to plausible constitutional due process claim. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Their Fifth Cause of Action against Hodge should, therefore, be dismissed.

    B.    <u>No Retaliation in Violation of 42 U.S.C. § 1983</u>
           (Ninth Cause of Action)

Plaintiffs' Response regarding the Ninth Cause of Action is more of the same. Hodge openly questioned whether Plaintiffs mistakenly included him within this Cause of Action. Plaintiffs' Response is telling. Plaintiffs, again, lump Hodge in with others and respond to his arguments in their response to the Duke University Defendants. (*See*

Plfs.' Super. Opp. 10) ("Plaintiffs establish the basis for Plaintiffs' Fifth Cause of Action and respond to Hodge's arguments for dismissal of that claim in Pls. Opp. Duke Br. § II.A(4).") Although Plaintiffs likely meant section II.A.6, which covers this Cause of Action, there is again no mention of Hodge in eight pages of argument. (Ptfs. Duke Univ. Opp. 7-25).

As explained in Hodge's Brief, Plaintiffs have averred no retaliatory connection between Hodge's remark and their constitutional rights other than that of timing, which is inadequate to state a claim. (*See* Hodge Br. 17-18.) Plaintiffs own authority suggests nothing more. Hodge did not direct Plaintiffs to do anything, like come forward. (*C.f.* Plfs.' Duke Opp. 23) (discussing the intent of Nifong's comments.) Nor did Hodge direct his subordinate officers to do anything retaliatory. *C.f. Garcia v. City of Trenton*, 348 F.3d 726, 728 (8th Cir. 2003) (just hours after a heated exchange with the mayor, in which he said he would begin ticketing the plaintiff's car for her constant nagging regarding enforcement of a separate ordinance, the plaintiff's car was ticketed the first of four times over the following month). Nothing about Hodge's remark is coercive or threatening. *See Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 689 (4th Cir. 2000) (reversing denial of qualified immunity where "[n]one of the [defendants'] statements even imply that [defendants] would utilize their governmental power to silence [plaintiff].").

Further, *Suarez, supra,* a case cited by Plaintiffs, establishes that Hodge is entitled to qualified immunity from liability on this claim. In *Suarez,* the Fourth Circuit

9

considered qualified immunity on a §1983 claim based upon alleged retaliation for exercise of the plaintiff's First Amendment rights. Noting that a qualified immunity analysis begins with "whether the plaintiff has alleged the deprivation of an actual constitutional right at all," the Court observed that to make out a retaliation claim, the plaintiff must establish the following: "First, the plaintiff must demonstrate that his or her speech was protected. . . . Second, the plaintiff must demonstrate that the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech. . . . Third, the plaintiff must demonstrate that a causal relationship exists between its speech and the defendant's retaliatory action." *Id.* at 685-86 (citations omitted).

In discussing the second element, the Court stated:

The nature of the alleged retaliatory acts has particular significance where the public official's acts are in the form of speech. Not only is there an interest in having public officials fulfill their duties, a public official's own First Amendment speech rights are implicated. Thus, where a public official's alleged retaliation is in the nature of speech, in the absence of a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will imminently follow, such speech does not adversely affect a citizen's First Amendment rights, even if defamatory. *See X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 72 (2d Cir. 1999) (holding that, in the absence of threats, intimidation, or coercion, legislators' "disparaging, accusatory, or untrue statements about X-Men fail to state a claim for violation of X-Men's constitutional rights"); *Colson v. Grohman*, 174 F.3d 498, 512 (5th Cir. 1999) (holding that a citizen's First Amendment rights were not adversely affected because she had "alleged only that she was the victim of criticism, an investigation (or an attempt to start one), and false accusations: all harms that, while they may chill speech, are not actionable under our First Amendment retaliation jurisprudence"); *Penthouse Int'l Ltd. v. Meese*, 939 F.2d 1011, 1015-16 (D.C. Cir. 1991) (holding that public officials were entitled to qualified immunity for criticism they leveled at publishers of pornography and noting that "the Supreme Court has never found a government abridgment of First Amendment rights in the absence

of some actual or threatened imposition of governmental power or sanction").

*Id.* at 687.

The Fourth Circuit held that the claims against the defendants arising out of statements made about the plaintiffs were barred by qualified immunity. *Id*. at 689-91. The Court concluded that the defendants had not adversely affected the plaintiff's First Amendment speech rights, because the speech at issue was not "threatening, coercive, or intimidating so as to intimate that punishment, sanction, or adverse regulatory action will imminently follow." *Id* at 689. Statements that the plaintiff had "a documented proclivity to violence" and "links to organized crime" were insufficient to make out a §1983 claim:

> [Plaintiff] has failed to show that [defendant's] statements can reasonably be interpreted as intimating that [defendants] would punish, sanction, or take an adverse action against [plaintiff]. None of the statements even imply that [defendants] would utilize their governmental power to silence [plaintiff]. Thus, [plaintiff] has failed to show that [defendants'] alleged defamatory statements to the media and other attorneys general adversely affected its First Amendment rights.

*Id.*

Similarly here, Hodge's statement that the case was strong is not "threatening, coercive, or intimidating" and does not "intimate that punishment, sanction, or adverse regulatory action will imminently follow." *Id.* His expression of his opinion did not adversely affect Plaintiffs' First Amendment rights, and he is entitled to qualified immunity on this claim.

## II.  State Law Tort Claims Against Hodge Are Not Supported by the Amended Complaint

11

A.  Statute of Limitations Bars State Law Claims Against Hodge

Plaintiffs make no response whatsoever against Hodge's argument that their intentional infliction of emotional distress claim or negligence claim are nothing more than a time-barred claim for defamation. (*See* Hodge Br. 19-22.) "Pleading the statute of limitations as a defense places the burden on Plaintiff[s] to establish that [their] claim for relief accrued within the time prescribed." *Integrated Healthcare Facilities, L.P. v. Wesley Long Community Health Servs. Prof'l Office Bldg. Pshp.*, No. 2:96-CV-628, 1998 U.S. Dist. LEXIS 4052, *5 (M.D.N.C. Jan. 12, 1998) (citing *Lea Co. v. North Carolina Bd. of Transp.*, 308 N.C. 603, 629, 304 S.E.2d 164, 181 (1983)). Responding to a statute of limitations argument with silence hardly qualifies as meeting Plaintiffs' burden; therefore, Hodge should be entitled to dismissal from these Causes of Action.

B.  No Intentional Infliction of Emotional Distress
    (Twentieth Cause of Action)

The only case cited by Plaintiffs in support of their intentional infliction of emotional distress claim, *West v. King's Department Stores, Inc.*, 321 N.C. 698, 365 S.E.2d 621 (1988), has no application to the allegation concerning Hodge. In *West,* as Plaintiffs point out, the defendant store manager loudly and repeatedly accused the plaintiffs of shoplifting merchandise and threatened them with arrest, in the presence of other shoppers, while also refusing to look at their proof of purchase. *Id.* at 699-701, 365 S.E.2d at 623. Here, Hodge is not quoted as having said *anything* about these Plaintiffs in particular. He is certainly not accused of personally threatening them with arrest. All

he is alleged to have done is to impliedly acknowledge that "the case" was "strong." For the reasons articulated in Hodge's initial brief in support of this Motion, this statement is insufficient to demonstrate extreme or outrageous conduct.

By relying on facts not alleged in the Amended Complaint, Plaintiffs contend that the time he made the statement, Hodge "knew the Plaintiffs were innocent." (Ptfs. Super. Opp. 42.) Specifically, Plaintiffs assert in support of this argument that Defendant Hodge not only knew about the SBI test results, which had been made public the previous day, but *also* knew about the DNASI's test results, which revealed evidence of genetic material of four men who were not on the lacrosse team. (Plfs.' Super. Opp. 41-42.) As discussed in the Introduction above, Plaintiffs did *not* allege that Hodge had this information on April 11. Plaintiffs allege only that Gottlieb, Himan and Nifong obtained this information at a meeting the day before with DNASI representatives. (2d Amend. Compl. ¶¶ 749, 801, 803). Plaintiffs have made no allegations from which any inference could be drawn that this information was provided to Hodge or anyone else associated with the police department prior to the forum. Plaintiffs' resort to reliance on unpled facts demonstrates that the facts that are pled are simply insufficient to rise to the high standard necessary to support this claim. This claim should be dismissed.

C. No Negligence
(Twenty-Fifth Cause of Action)

In his initial brief, Hodge pointed out that the only North Carolina common law claim arising out of false statements negligently made, is a claim for negligent misrepresentation, and that Plaintiffs have not alleged the essential elements of that claim.

13

(*See* Hodge Br. 26-27). Plaintiffs ignore this argument. Rather than respond to it, Plaintiffs assert that the Supervising Defendants do not dispute that Plaintiffs have alleged the essential elements of a negligence claim against some of them. (Plfs.' Super. Opp. 43.) This bizarre assertion is simply untrue. Defendants Russ and Hodge are the only Supervising Defendants named in this claim; Defendants specifically argued that no allegations at all had been made about Defendant Russ, and that Plaintiffs had not pled the essential elements of a negligent misrepresentation claim against Defendant Hodge. (Durham Supervisors Br. 42-43; Hodge Br. 26-27.) Plaintiffs have cited no law at all to refute Hodge's argument that his statement will not support a negligence claim.[3] This claim is legally unsupported and should be dismissed.

Plaintiffs choose to respond to Hodge's arguments that he is immune from claims based on negligent acts with essentially one sentence: "Because much of Supervising Defendants' conduct was inspired by a malicious, and corrupt conduct such as *Baker* overseeing an investigation or directing the violation of Plaintiffs' constitutional rights, the immunity does not apply." (Plfs.' Super. Opp. 44.) (emphasis added).[4]

The referenced citations to the Amended Complaint do not have anything to do with Hodge's remark. Rather, these allegations aver that Hodge and others were

---

[3] Cameron v. Merisel Props., ___ N.C. App. ___, 652 S.E.2d 660 (2007), the only case cited by Plaintiffs, is premises liability case, and has nothing to do with negligence arising out of false statements.

[4] The general negligence claim contained in Cause of Action Twenty-Five is not asserted against Defendant Baker. While Defendant Baker is included in the group of defendants in the Twenty-Sixth through Twenty-Eighth Causes of Action, Plaintiffs have waived those claims.

14

negligent in failing to supervise or terminate Gottlieb, Himan, Nifong, and others. Interestingly, Plaintiffs next point in their Response is that they are not seeking individual liability on a claim of negligent supervision. (*Id.*) Further, none of the cited allegations mention malice or corruption.

In the body of the Twenty-Fifth Cause of Action, Plaintiffs allege only that in making the statement, Hodge acted negligently. (2d Amend. Compl. ¶ 1266). There are no allegations that he acted with malice or corruption. Thus, even if this statement could form the basis of a negligence claim under North Carolina common law, Hodge is immune from this claim.

## CONCLUSION

For the reasons stated herein, as well as in the initial Memorandum in Support of Defendant Hodge's Motion to Dismiss, and the Memoranda of the other "Supervising Defendants," all claims against Defendant Hodge should be dismissed.

Respectfully submitted, this the 26th day of November, 2008.

> TROUTMAN SANDERS LLP
>
> By: /s/ Patricia P. Kerner
>     Patricia P. Kerner
> N.C. State Bar No. 13005
>     Hannah G. Styron
> N.C. State Bar No. 28824
>     D. Martin Warf
> N.C. State Bar No. 32982
> *Attorneys for Defendant Hodge*
> 434 Fayetteville Street, Suite 1900
> Raleigh, North Carolina 27601
> Telephone: (919) 835-4100
> Facsimile: (919) 829-8714

tricia.kerner@troutmansanders.com
hannah.styron@troutmansanders.com
martin.warf@troutmansanders.com

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| RYAN MCFADYEN, *et al,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:07-CV-00953 |
| | ) | |
| DUKE UNIVERSITY, *et al,* | ) | |
| | ) | |
| Defendants. | ) | |

_____

**CERTIFICATE OF SERVICE**
_____

I hereby certify that the foregoing was electronically filed with the Clerk of the

Court using the CM/ECF system, which will send notification of such filing to the

following:

Robert C. Ekstrand
EKSTRAND & EKSTRAND, LLP
811 Ninth Street, Suite 260
Durham, North Carolina 27705
rce@ninthstreetlaw.com
*Attorneys for Plaintiffs*

James D. Cowan, Jr.
Dixie T. Wells
Leslie Cooper Harrell
SMITH MOORE, LLP
Post Office Box 21927
Greensboro, NC 27420
don.cowan@smithmoorelaw.com
dixie.wells@smithmoorelaw.com
cooper.harrell@smithmoorelaw.com
*Attorneys for Defendants Duke
University, Duke University Health System,
Inc., Richard Brodhead,
Peter Lange, Larry Moneta,
John Burness, Tallman Trask,
Suzanne Wasiolek, Matthew
Drummond, Aaron Graves,
Robert Dean, Tara Levicy, Theresa
Arico, Kate Hendricks, Victor Dzau*

Jamie S. Gorelick
Jennifer M. O'Connor
Paul R.Q. Wolfson
William F. Lee
WILMER, CUTLER, PICKERING,
HALE, and DORR, LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006
jamie.gorelick@wilmerhale.com
jennifer.oconnor@wilmerhale.com
paul.wolfson@wilmerhale.com
william.lee@wilmerhale.com
*Attorneys for Defendants Duke
University, Duke University Health
System, Inc., Richard Brodhead,
Peter Lange, Larry Moneta,
John Burness, Tallman Trask,
Suzanne Wasiolek, Matthew
Drummond, Aaron Graves,
Robert Dean, Tara Levicy, Theresa
Arico, Kate Hendricks, Victor Dzau*

Dan J. McLamb
Shirley M. Pruitt
T. Carlton Younger, III
YATES, MCLAMB & WEYHER, LLP
P.O. Box 2889
Raleigh, NC 27602-2889
dmclamb@ymwlaw.com
spruitt@ymwlaw.com
cyounger@ymwlaw.com
*Attorneys for Defendants Duke
University Health Systems, Inc.,
Tara Levicy, and Theresa Arico*

Robert A. Saar
Nicholas J. Sanservino, Jr.
OGLETREE DEAKINS NASH SMOAK
& STEWART, PC
2301 Sugar Bush Rd., Suite 600
Raleigh, NC 27612
*Attorneys for DNA Security*

Robert J. King, III
Kearns Davis
BROOKS, PIERCE, McLENDON,
HUMPHREY & LEONARD, LLP
Post Office Box 26000
Greensboro, NC 27420
*Attorneys for Defendants DNA Security,
Inc. and Richard Clark*

Paul R. Dickinson, Jr.
LEWIS & ROBERTS, PLLC
590 Fairview Rd., Suite 102
Charlotte, NC 28210
*Attorneys for Brian Meehan*

Edwin M. Speas
Eric P. Stevens
POYNER & SPRUILL, LLP
3600 Glenwood Avenue
Raleigh, NC 27612
*Attorneys for Defendant Gottlieb*

James B. Maxwell
MAXWELL, FREEMAN & BOWMAN, P.A.
Post Office Box 52396
Durham, NC 27717
*Attorneys for Defendant Addison*

James A. Roberts, III
LEWIS & ROBERTS, PLLC
1305 Navaho Drive, Suite 400
Raleigh, NC 27605
*Attorneys for Brian Meehan*

Reginald B. Gillespie, Jr.
FAISON & GILLESPIE
Post Office Box 51729
Durham, NC 27717
rgillespie@faison-gillespie.com
*Attorneys for Defendant City of Durham*

Joel M. Craig
Henry W. Sappenfield
KENNON, CRAVER, BELO, CRAIG & MCKEE, PLLC
Post Office Box 51579
P.O. Box 51579
Durham, NC 27717-1579
*Attorneys for Defendant Himan*

I further certify that a copy of the foregoing was served today upon each of the following non CM/ECF participants by United States mail, postage prepaid, addressed as follows:

Linwood Wilson
6910 Innesbrook Way
Bahama, NC 27503-9700
*Pro Se*

Roger E. Warrin
Michael A. Vatis
John P. Nolan
Leah M. Quadrino
STEPTOE & JOHNSON, LLP
1330 Connecticut Ave. N.W.
Washington, DC 20036
*Attorneys for Defendant City of Durham*

This the 26th day of November, 2008.

Respectfully submitted,

By: /s/ Patrica P. Kerner
    Patricia P. Kerner
N.C. State Bar No. 13005
*Attorneys for Defendant Hodge*
434 Fayetteville Street, Suite 1900
Raleigh, North Carolina 27601
Telephone: (919) 835-4100
Facsimile: (919) 829-8714
tricia.kerner@troutmansanders.com