IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RYAN MCFADYEN, et al                )
                                    )
            Plaintiffs,             )
                                    )
v.                                  )        No. 1:07-CV-953
                                    )
DUKE UNIVERSITY, et al              )
                                    )
            Defendants.             )
_____

**REPLY OF DEFENDANTS BAKER, CHALMERS, RUSS, MIHAICH, COUNCIL,
LAMB, RIPBERGER, and EVANS
IN SUPPORT OF THEIR MOTION TO DISMISS**
_____

## MATTERS NO LONGER AT ISSUE

In response to Defendants' arguments on the Twenty-Sixth, Twenty-Seventh and

Twenty-Eighth Causes of Action, Plaintiffs state that they are "not seeking to impose

liability on the Supervisory Defendants in their individual capacities on th[ese] claim[s],"

and that "therefore, the Court does not need to reach the Supervisory Defendants'

arguments with respect to th[ose] cause[s] of action.  (Plfs.' Super. Opp. 44, 45-46.)

Elsewhere, Plaintiffs agree to waive their official capacity claims against these

Defendants, because the City is also named as a defendant in these causes of action.  (*Id.*

47).  Based on these concessions, as well as the arguments asserted by Defendants in

their Briefs in support of their Motions to Dismiss, the claims alleged against these

Defendants in these Causes of Action should be dismissed entirely.

Plaintiffs also concede that the federal official capacity claims alleged against some or all of these Defendants should be dismissed because they are duplicative of claims alleged against the City. (Plfs.' Super. Opp. 46.) These claims are the Fifth, Ninth, Tenth, Eleventh, Fifteenth, Sixteenth, and Seventeenth Causes of Action.

Plaintiffs also expressly waive their official capacity claims alleged against Supervisory Defendants under state law, in all causes of action where the City is also named as a defendant. (Plfs.' Super. Opp. 47) In addition to the official capacity claims in the Twenty-Sixth through the Twenty-Eighth Causes of Action, the official capacity claims in the Twenty-Third and the Twenty-Fifth Causes of Action should be dismissed as well.

## ARGUMENT

### I.     Plaintiffs Misunderstand the Standard of Review

Plaintiffs first argue, citing *Veney v. Wyche*, 293 F.3d 726 (4th Cir. 2002), that the Court should review this goliath Amended Complaint under a more relaxed standard than it reviews other complaints. (*See* Plfs.' Super. Opp. 8.) This argument is flawed.

First, *Veney*, and nearly all the cases supporting it, deal with complaints written by *pro se* plaintiffs. *See Veney,* 293 F.3d at 729 (*pro se* complainant); *see also Harrison v. United States Postal Service*, 840 F.2d 1149, 1150 (4th Cir. 1988) (same); *Canty v. Richmond, Virginia, Police Dep't*, 383 F. Supp. 1396, 1398 (E.D. Va. 1974) (same). Plaintiffs, of course, are represented by legal counsel.

Second, the Fourth Circuit has recently applied the *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007), plausibility analysis to a section 1983 civil rights complaint.

*See Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008) (applying *Twombly* in the dismissal of a section 1983 equal protection case). Accordingly, there is only one standard of review Plaintiffs must face: that the factual allegations of Plaintiffs' Amended Complaint, when applied to cognizable legal theories of liability, must plausibly support a claim. *See id.*; *see also Salami v. Monroe*, No. 1:07-CV-621, 2008 U.S. Dist. LEXIS 59058, *15-18 (M.D.N.C. Aug. 1, 2008) (dismissal of claim of infringement on "academic freedom" because the alleged right to have been violated must be grounded in the Constitution).

This threshold is not measured by the number of factual allegations, but their content. In *Sewarz v. Guice*, No. 3:08-CV-35, 2008 U.S. Dist. LEXIS 65910 (E.D. Va. Aug. 26, 2008), the Court recently dismissed a remarkably similar section 1983 complaint[1] for failing to have allegations that, when applied, supported legal claims:

> Mr. Sewraz's excessive and unnecessary detail "places an unjustified burden on the court and the [defendants] because they are forced to select the relevant material from a mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1281, at 365 (1969)). The length and confusing manner of Mr. Sewraz's amended complaint fails to give the scores of named defendants fair notice of Mr. Sewraz's claims and the grounds upon which they rest. *See Strategic Income Fund, L.L.C. v. Spear, Leeds, & Kellogg Corp.*, 305 F.3d 1293, 1295-96 (11th Cir. 2002).

---

[1] The complaint contained over 191 pages, 70 of which were "excessively detailed and often unnecessary" background, and directed 134 causes of action against 92 defendants, who were often referred to in large groups such as "Conspiracy Group." The causes of action contained "'shotgun pleadings by which each count incorporates by reference the allegations of its predecessors," and required the Court to "engage in constant cross-referencing to locate relevant allegations." *Sewarz*, 2008 U.S. Dist. LEXIS 65910 at *2-3.

*Id.* at *5; *see also Copper v. Denlinger*, ___ N.C. App. ___, ___, 667 S.E.2d 470, ___

(2008) (despite massive complaint, missing key allegations still warrants dismissal).

## II.    Plaintiffs Cannot Make Out a Plausible Privileges and Immunities Claim

In support of their Tenth Cause of Action, in which they claim that all defendants

violated Plaintiffs' right to travel secured by the Privileges and Immunities Clause of

Article IV, Plaintiffs cite *Saenz v. Roe*, 526 U.S. 489 (1999), and go on to recount the

historical benefits and protections of the Privileges and Immunities clause. *Saenz*,

however, dealt with California's ability to limit the amount of welfare benefits paid to

new residents of the state. *Id.* at 492-98. None of Plaintiffs' authority deals with

application of the Privileges and Immunities Clause to criminal investigations or policies

designed for curbing petty, disruptive offenses by college students. As such, Plaintiffs'

creative, but misguided, argument that the "Zero-Tolerance Policy" is unconstitutional

and the cause of their hardship, must fail.[2] (*See* Plfs.' Super. Opp. 16, 19.)

Plaintiffs' own support for their discrimination as out-of-state residents by all

defendants (University and City) undercuts that argument. Matthew Wilson is a North

Carolina resident. (2d Amend. Compl. ¶ 7.) Yet, Plaintiffs argue he was treated just the

same as the other out-of-state Plaintiffs. (*See* Plfs.' Super. Opp. 15.) In so arguing,

Plaintiffs admit that the perceived policy of arresting youth around Duke's campus who

commit misdemeanors was directed at all Duke students regardless of citizenship or

---

[2] The proper question regarding such a policy in this context is not the wisdom of having
it, but like anything else, whether its application in this case is consistent with the
Constitution. *Compare Ratner v. Louden County Pub. Sch.*, 16 Fed. Appx. 140, 142 (4th
Cir. 2001) *with Ratner*, 16 Fed. Appx. at 144 (Hamilton, J. concurring).

residence, and therefore not implicating the Privileges and Immunities Clause.[3] *See Chavez v. Illinois State Police*, 251 F.3d 612, 649 (7th Cir. 2001) ("Plaintiffs' complaint does not allege that the ISP discriminates against non-residents, . . . but that the ISP targets all African-American and Hispanic motorists, regardless of their state of origin. This allegation does not state a claim under the Privileges and Immunities Clause of Article VI. [sic]").

Further, there is no allegation that Plaintiffs were ever arrested or charged with any offense pursuant to the Zero-Tolerance Policy. They were certainly not charged or arrested with any crime out of the investigation into Crystal Mangum's allegations, and the Amended Complaint is silent with regard to any arrests for crimes in the past that would fall within the Policy guidelines as argued by Plaintiffs. Without such an allegation, these Plaintiffs do not have standing to argue whether the policy is unconstitutional or not.

Last, and perhaps most importantly, Plaintiffs have not laid any framework to overcome Defendants assertion of qualified immunity. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (quotations omitted). Plaintiffs, have not cited any authority clearly establishing that a criminal investigation against a

_____

[3] Alternatively, an argument that all students enrolled at Duke are not North Carolina citizens is a premise conclusively proven false by Plaintiffs' allegation that Wilson is a North Carolina citizen who is also enrolled at Duke. (2d Amend. Compl. ¶ 7.)

North Carolina resident, a New Jersey resident, and a New York resident under these circumstances implicates those residents' right to travel. Nor have Plaintiffs cited any authority that doing so would be known by the reasonable officer in 2006 as a constitutional violation.

Instead they respond that the "right identified in this Cause of Action [the 10th Cause of Action] is so worn into the fabric of our constitutional order that it goes without saying that it was clearly established well before the year 2006." (Plfs.' Super. Opp. 30.) The general right to travel may be imbedded in the Constitution, but Plaintiffs cannot overcome the affirmative defense of qualified immunity by resting on such a broad right. *See Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.") (citations omitted); *see also, Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999). Indeed, if the sole proof of a more specific right under the circumstances is Plaintiffs' word that it exists, it hardly stands to reason that the same "right" was also known to the average reasonable officer.

### III. Plaintiffs Fail to Identify Limited Circumstances of Bystander Liability

In support of their Eleventh Cause of Action for bystander liability, Plaintiffs cite only *Randall v. Prince George's County*, 302 F.3d 188 (4th Cir. 2002), which does little to help them. In *Randall*, the plaintiffs complained that they were being unlawfully detained at a police precinct, in violation of their Fourth Amendment right to be free from unreasonable seizure, and supervisory officers within the stationhouse were obliged to release them. Although framing the core elements of "bystander liability" for our Circuit,

the Court nonetheless reversed the district court's denial of directed verdict on the theory, determining that the facts in *Randall* could not support the limited circumstances in which bystander liability could be created. Indeed, the Court noted that "personal liability premised on an omission is a disfavored concept," and that only in "certain limited situations" are "bystanders officers [] obliged to act." *Id.* at 203-04.

In *Randall,* two supervising officers had been found liable on this theory based upon contentions that they should have known that the plaintiffs were being unlawfully detained, because they were present at the time of the plaintiffs' detention, knew that there was only probable cause to arrest one specific individual, and other individuals were being detained. The Court reversed, because the defendant officers had no knowledge that the specific plaintiffs were unlawfully detained. Since holding against plaintiffs in *Randall*, the Fourth Circuit has not revisited the issue of bystander liability.

Our District Courts that have tackled the issue indeed recognize its applicability in very limited circumstances: mainly excessive force scenarios or circumstances of a false arrest where the bystander officer on scene knew the same facts as the offending officer. *See, e.g., Blackburn v. Town of Coeburn*, No. 1:06-CV-114, 2007 U.S. Dist. LEXIS 40059 (W.D. Va. June 1, 2007) (excessive force case where motion to dismiss denied on basis that allegations supported bystander officer on scene with equal knowledge of circumstances); *Moore v. Cease*, No. 7:03-CV-144, 2005 U.S. Dist. LEXIS 44888 (E.D.N.C. July 5, 2005) (no liability in false arrest case where bystander officer was not aware of all information arresting officer knew). Even in cases of excessive force or arrest, where the type of constitutional infringement is more readily apparent, there must

nonetheless be an actual constitutional violation by the offending officer before a bystander will otherwise be subject to liability. *See, e.g., Williams v. DeAngelis*, No. 1:07-CV-824, 2008 U.S. Dist. LEXIS 66500 (E.D. Va. Aug. 28, 2008) (force caused no constitutional deprivation, therefore no bystander liability); *Willis v. Oakes*, 493 F. Supp. 2d 776 (W.D. Va. 2007) (police shooting caused no constitutional deprivation, therefore no bystander liability); *Carpenter v. Sheriff of Roanoke City*, No. 7:05-CV-667, 2006 U.S. Dist. LEXIS 67536 (W.D. Va. Sept. 20, 2006) (force de minimus, therefore no bystander liability); *Blair v. County of Davidson*, No. 1:05-CV-11, 2006 U.S. Dist. LEXIS 34253 (M.D.N.C. May 10, 2006) (de minimus injury, therefore no bystander liability to officer or City). Further, there must be an opportunity or ability to prevent the constitutional harm from occurring before a bystander will be saddled with liability for failing to act. *See, e.g., North Carolina ex. rel. Hailey v. Westmoreland*, 267 F. Supp. 2d 497 (M.D.N.C. 2003) (bystander officer not liable in excessive force case because there was no opportunity to stop the hits to plaintiff); *Wilson v. Kittoe*, 229 F. Supp. 2d 520 (W.D. Va. 2002) (bystander officer arrived on scene after arrest, therefore he could not have prevented false arrest).

Plaintiffs' claims are not factually analogous to any of these cases. They do not do not allege use of excessive force or a false arrest. Indeed, as argued throughout the briefs filed by the various defendants in this case, Plaintiffs have not alleged facts showing that their constitutional rights were violated. They certainly have not alleged that any one of these Defendants had specific knowledge that their individual constitutional rights were violated. Rather, they only allege in a conclusory fashion that a

group of "Durham Bystander Officers," which includes the group they label as the "Durham Police Supervising Defendants," had knowledge that other officers violated unspecified constitutional rights. Plausibility is the standard here; *see Twombly*, 127 S. Ct. at 1964-65, and absent identifiable allegations in the Amended Complaint that move speculative relief against a bystander into the realm of plausibility, the Eleventh Cause of Action for bystander liability must be dismissed.

Application of qualified immunity yields the same result. "For a constitutional right to be clearly established, 'its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Miller v. Prince George's County*, 475 F.3d 621, 631 (4th Cir. 2007) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

> In determining whether a right was clearly established at the time of the claimed violation, courts in this circuit [ordinarily] need not look beyond the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose . . . . If a right is recognized in some other circuit, but not in this one, an official will ordinarily retain the immunity defense.

*Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999) (internal citations omitted). As demonstrated above, Plaintiffs rely solely on *Randall* to create liability and defeat the assertion of qualified immunity. *Randall* did not find bystander liability on behalf of any of the officers alleged, and the constitutional issue there was one of illegal detention or arrest. None of North Carolina's appellate courts, either state or federal, have ever established that bystander officers can be liable for failing to act to stop a

criminal investigation.  In fact, Plaintiffs admit that "[t]his cause of action has no life in a 'failure to monitor' case."  (Plfs.' Super. Opp. 20.)

## IV.    Plaintiffs' Allegations Fall Short of Supervisory Liability

As Defendants argued in their initial Brief, Plaintiffs must identify the specific right Defendants have infringed upon in order to defeat qualified immunity or state a supervisory liability claim under section 1983.  Plaintiffs broadly allege in their Amended Complaint that Defendants violated their First[4], Fourth, Fifth, Sixth, and Fourteenth Amendment rights, each of which was challenged in Defendants' Brief.  (Defs.' Br. 8-22).  In response, Plaintiffs specifically articulate only an argument in support of the Privileges and Immunities clause—which has been refuted above.

The absence of specific arguments in support of the other constitutional rights alleged speaks volumes, considering that Defendants have established that Plaintiffs have no constitutional right to be free from an official investigation, (*id.* 11); to be free from questioning in an investigation, (*id.* 11-12); to be informed that they are under investigation prior to indictment, (*id.* 12); to demand which department, agency, or individual investigates a particular crime, (*id.* 12-13); or to have officials follow state statutes, general orders, or departmental policy under the circumstances. (*Id.* 13).  Absent rights of this nature, it is unclear what basis there is for a claim that Plaintiffs' Fifth and Sixth Amendment rights have been violated.

_____

[4] Based on Plaintiff's response, it appears that Hodge is the only one of these Defendants against whom Plaintiffs assert a claim based on the First Amendment.  This contention is addressed in Hodge's Reply.

Plaintiffs also fail to respond to the argument that Defendants did not violate their Fourth Amendment rights, despite making references to it in several claims. (*See* 2d Amend. Compl. ¶¶ 1030, 1117, 1123, 1132, and 1139.) Defendants have demonstrated to the Court that, as a matter of law, the procurement of the nontestimonal order ("NTO") did not constitutionally infringe upon Plaintiffs' rights. (*See* Defs.' Br. 13-17.)

There is also no explanation how Defendants, as supervisors, violated Plaintiffs' due process rights under the Fourteenth Amendment. Defendants explained that *Albright v. Oliver*, 510 U.S. 266 (1994), establishes that the Fourth Amendment is the basis for any deprivation in a criminal prosecution, not the due process clause of the Fourteenth Amendment. (Defs.' Br. 17.) Further, Plaintiffs failed to allege a "plus" separate and apart from any stigma associated with the investigation in Mangum's allegations; information released as part of a criminal investigation is not that plus. (*See id.* at 17-20.)

In light of their failure to identify any specific constitutional rights allegedly infringed upon as a result of Defendants' purported inaction, Plaintiffs' supervisory liability claim pursuant to §1983 fails. *DeBerry v. Runyon*, No. 1:97-CV-777, 1998 U.S. Dist. LEXIS 12532, at *8 (M.D.N.C. Apr. 20, 1998)(where the plaintiff did not allege a deprivation of any constitutional rights, his complaint failed to state a claim pursuant to §1983).

Additionally, despite their own acknowledgement that supervisory liability requires that the defendant actually be a "supervisor" and "pinpointing the persons in the decision-making chain" who are responsible for any constitutional violations (Plfs.' Super. Opp. 20-22, 24), Plaintiffs still insist that allegations against Defendants as a

group, regardless of their individual supervisory authority, is sufficient to support claims of individual liability. For example, they point to allegations that all "Durham Supervising Defendants" should have known of general "investigative abuse" by Gottlieb, Himan, and Nifong, (*id*. 25, 2d Amend. Compl. ¶¶ 1114, 1115), even though they have not alleged that all of the Defendants falling into this group supervised these individuals. (*Id*. ¶¶ 53, 54, 71.) Similarly, Plaintiffs argue that this entire group is liable for the conduct of Defendant Addison (Plfs.' Super. Opp. 25), even though several of these individuals are not alleged to have supervised him. (2d Amend. Compl. ¶¶ 54, 55, 56, 57, 58, 72.)

Indeed, Plaintiffs have acknowledged that Defendant Mihaich did not supervise anybody involved in the investigation. (Plfs.' Super Opp. 2-3.) He is allegedly in an entirely different division from the investigators. *Id.* While Plaintiffs opine that he *should* have supervised the investigation, they cite no authority at all for imposing supervisory liability against him. The cases Plaintiffs cite establish that an essential element of this claim is missing: a supervisor can only be held liable for the conduct of "his subordinate." *See, e.g., Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. N.C. 1994).

Additionally, these same cases show that supervisory authority alone is not enough. As Plaintiffs acknowledge, the essential elements of this claim are:

> 1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) that there was an 'affirmative causal link'

> between the supervisor's inaction and the particular constitutional injury
> suffered by the plaintiff.

*Id.*   Plaintiffs acknowledge that their only allegation against Defendant Laird Evans is that he was Himan's supervisor beginning in October, 2006.  (Plfs.' Super. Op. 23). Without allegations of knowledge of Addison's conduct, deliberate indifference to it, and a causal link, there is an insufficient factual basis to make out this claim against him.

Plaintiffs have failed to allege a constitutional violation, and have failed to allege sufficient facts to support the imposition of individual liability on any of these Defendants.  Thus, this claim should be dismissed.

## V.   Plaintiffs Fail to Plausibly State Any Federal Conspiracy Claim

### A.   No Claim Pursuant To 42 U.S.C. § 1983

Plaintiffs admit that their Fifteenth Cause of Action "alleges a broad conspiracy . . . by all Defendants in this action."  (Plfs.' Super. Opp. 31) (emphasis added).  However, as discussed in Defendants' Brief, (Defs.' Br. 31-32), a broad claim for conspiracy under 42 U.S.C. § 1983 cannot withstand this Circuit's stringent pleading standard, and therefore should be dismissed.  *See Simmons v. Poe*, 47 F.3d 1370 (4th Cir. 1995); *Brissett v. Paul*, No. 97-6898, 1998 U.S. App. LEXIS 6824 (4th Cir. Apr. 6, 1998).

Plaintiffs cite no case to the contrary; instead they suggest that the alleged breadth of the conspiracy is apparently an appropriate substitute for a lack of specificity.  (*See* Plfs.' Super. Opp. 32) ("The Amended Complaint alleges the combined and concerted conduct of so many pursuant to a preordained plan.").  However, this Court recently dismissed such vague and conclusory allegations of conspiracy in *McHam v. North*

*Carolina Mutual Life Insurance Company*, specifically noting this Circuit's "stringent" standard. No. 1:05-CV-1168, 2007 U.S. Dist. LEXIS 42582, *13-14 (M.D.N.C. June 11, 2007) ("In light of the stringent Fourth Circuit standard, Mr. McHam's claims under § 1985(2) and § 1985(3) fail because he has not sufficiently pled the existence of a conspiracy."), *aff'd*, No. 07-1623, 2007 U.S. App. LEXIS 23988 (4th Cir. Oct. 12, 2007).

Further, Plaintiffs lack the critical substantive element of a § 1983 conspiracy: actual violation of Plaintiffs constitutional rights. *See supra*, §§ II-IV; (Defs.' Br. 32.) Thus, given the inadequately pled specificity of Plaintiffs' § 1983 conspiracy claims, as well as the failure to demonstrate constitutional infringement, the Fifteenth Cause of Action should be dismissed.

B.   No Claims Pursuant To 42 U.S.C. § 1985

Even though Plaintiffs argue that the "stir" around *Twombly* does not create a heightened standard for section 1985 conspiracy claims, (*see* Plfs.' SANE Opp. 8-10), the Fourth Circuit has "specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *Simmons*, 47 F.3d at 1377; *see also Jenkins v. Trustees of Sandhills Cmty. College*, 259 F. Supp. 2d 432, 445 (M.D.N.C. 2003), *aff'd*, 80 Fed. Appx. 819 (4th Cir. 2003). In response, Plaintiffs lament that they have "document[ed] all Defendants' meetings, agreements, and coordinated misconduct in painstaking detail." (Plfs.' SANE Opp. 9). Their Response aside, the Amended Complaint only conclusory states that everyone from DNASI to Duke and the Durham Police Supervising Defendants "conspired and/or entered into express and/or implied agreements, understandings, or

meetings of the minds among themselves for the purpose of impeding, hindering, obstructing or defeating the due course of justice . . . ." (2d Amend. Compl. ¶ 1158.) There is no guidance whatsoever with regard to the specific concrete facts regarding an agreement against even one Defendant, (Plfs.' Super. Opp. 33-34); they merely lump all of the defendants together and claim they all violated section 1985. (*Id.*) This type of conclusory pleading is insufficient to survive a motion to dismiss.

### 1. No Animus Based Upon State Citizenship

Plaintiffs also maintain that their state citizenship provides an avenue for section 1985 claims. (Plfs.' Super. Opp. 35.) They argue that the cases cited in Defendants' Brief, (Defs' Br. 34-35), "were not brought pursuant to the 'privileges and immunities' claims of § 1985" and are "inapposite to Plaintiffs' claims." (Plfs.' Super. Opp. 35.) Despite this observation, however, Plaintiffs cite no authority holding that a § 1985 claim can be supported by a violation of the Privileges and Immunities Clause, thus leaving the Court to dismiss or adopt a new and unsupported read on § 1985 case law. As argued earlier, qualified immunity shields Defendants from liability on such a newly minted claim. *See supra*, §§ II-III.[5]

### 2. No Racial Animus

#### A. Plaintiffs Are Not a Protected Class

---

[5] Further, because Plaintiffs tie their Sixteenth and Tenth Causes of Action together, (*see* Plfs.' Super. Opp. 33-35), and Plaintiffs' Tenth Cause of Action claiming violations of the Privileges and Immunities Clause should be dismissed, so should the Sixteenth Cause of Action.

Plaintiffs misinterpret Defendants' analysis of the case law on § 1985 (2) or (3)

claims to a conclusion that white plaintiffs cannot ever bring such a claim. Plaintiffs then

attack their mischaracterization of Defendants' argument in their Response by citing

cases where white plaintiffs have brought § 1985 claims. (Plfs.' Super. Opp. 35-36.)

Defendants' argument, however, is that § 1985(2) or (3) claims require a plaintiff, if not a

member of protected class themselves, to at least have a connection to a protected class.

(*See* Defs.' Br. 34-35); *see also Phillips v. Mabe*, 367 F. Supp. 2d 861, 873 (M.D.N.C.

2005) ("Plaintiffs have standing under § 1985 *only* if they can show they are members of

a class that the government has determined requires and warrants special federal

assistance in protecting their civil rights.") (emphasis added).

Plaintiffs citation of the Court's decision in *Mabe* does not further their cause.

There, the Court granted the defendants' motion to dismiss, finding that the plaintiff—a

white law enforcement officer who alleged that he was terminated because of his desire

to investigate a racially hostile environment against black students—failed to establish

that he was a member of a protected class warranting "special federal protection." *Id.* at

874 (While one does not necessarily have to be a racial minority to bring a section

1985(3) claim, "Plaintiff still must be able to show . . . that he is a 'member of a protected

class' that warrants special federal protection. The Court finds that Plaintiff has not done

so.").

*Waller v. Butkovich*, 605 F. Supp. 1137 (M.D.N.C. 1985), also cited by Plaintiffs

in support of their purported class allegations, was decided before the Fourth Circuit's

decision in *Harrison v. KVAT*, 766 F.2d 155 (4th Cir. 1985), which was discussed in

Defendants' Brief. (Defs.' Br. 34-35.) In addition, the *Waller* court did not hold that all white people were members of a protected class; rather, the Court held that the members of certain political organizations (*e.g.* the Klu Klux Klan and Nazi party) could, under appropriate circumstances, state a claim under section 1985. *Waller*, 605 F. Supp. at 1145. Plaintiffs have made no such allegations here.[6]

B.      No Motivation or Fomentation of Racial Animus

Plaintiffs' theory of § 1985 liability is shown through the oft recited catch phrase, "[d]efendants were motivated by, fomented and took advantage of racial animus" in the community. (Plfs.' Super. Opp. 37-38.) However, they fail to cite even one case under § 1985 that adopts this theory as a basis for a claim.

Instead they cite to three cases from other jurisdictions involving claims under § 1982, not § 1985. (*Id.*) Plaintiffs attempt to draw a parallel between their § 1985 racial-animus claim and two recent holdings by the United States Supreme Court: *CBOCS West, Inc. v. Humphries*, 128 S.Ct. 1951 (2008), and *Gomez-Perez v. Potter*, 128 S.Ct. 1931 (2008). (Plfs.' Super. Opp. 37-38.) Plaintiffs argue that these cases support applying a § 1982 theory of racial animus to § 1985[7] cases. (Plfs.' Super. Opp. 38.) However, both decisions were based upon employment discrimination retaliation claims, one under 42 U.S.C. § 1981 and the other under 29 U.S.C. § 633a, not conspiracy claims pursuant to

_____

[6] Plaintiffs specifically disavow themselves of any argument that Duke students or Duke lacrosse players are a protected class. (*See* Plfs.' Super Opp. 36-37.)

[7] Plaintiffs' Response makes reference to § 1983 and racial animus. Defendants presume that Plaintiffs meant to say § 1985, consistent with the rest of that portion of their brief, since a § 1983 claim would not require racial animus.

42 U.S.C. § 1985.  In fact, the Court does not mention, much less analogize, the application of the meaning of the language of § 1982 to a claim for conspiracy under § 1985.  Therefore, the Sixteenth Cause of Action should be dismissed.

      C.      <u>Plaintiffs' 42 U.S.C. § 1986 Claim Fails</u>

As argued in Defendants' Brief, (Defs.' Br. 38), and established above, because Plaintiffs fail to state a claim under 42 U.S.C. § 1985 their claim under 42 U.S.C. § 1986 must also be dismissed.

**IV.    Plaintiffs' Individual Capacity State Law Claims Warrant Dismissal**

      A.      <u>No Obstruction Of Justice Against Lamb</u>

In their Response, Plaintiffs claim that Lamb failed to address their Eighteenth Cause of Action, a claim for common law obstruction of justice.  (Plfs.' Super. Opp. 39-40.)  The Amended Complaint contains minimal reference to indicate that Plaintiffs intended for Lamb to be included in this claim.  Aside from his name in the parenthetical list of defendants alleged to be included in the claim, there is only a conclusory allegation that references him in a group of others:

> Beginning on March 14, 2006 and continuing to the present Nifong Steel, Brodhead, Burness, Gottlieb, Himan, Lamb, Wilson, Meehan, Clark, DNASI, Levicy, Manly, Arico, Dzau, DNASI, PDC, DUHS, and Duke University, acting individually and in concert, attempted to and did, in fact, prevent obstruct, impede and hinder public and legal justice in the State of North Carolina *as alleged herein*.

(2d Amend. Compl. ¶ 1190)(emphasis added).  Lamb is not mentioned at all in any of the remaining eleven paragraphs making up the alleged claim.  (*See id.* ¶¶ 1191-202.)

Nonetheless, if the Eighteenth Cause of Action is construed to allege an obstruction claim against Lamb, it should be dismissed.

The Amended Complaint does not support a conclusion that <u>Lamb</u> "hinder[ed] or imped[ed] public or legal justice." *See Broughton v. McClatchy Newspapers, Inc.*, [161 N.C. App. 20, 33](), [588 S.E.2d 20, 30]() (2003) (The defendants' allegedly false statements did not support an obstruction of justice claim where there was no evidence that the defendants' actions "in some way judicially prevented, obstructed, impeded or hindered" the plaintiff's case.). A review of allegations highlighted by Plaintiffs, (Plfs.' Super. Opp. 40), shows that the allegation relate to claims against <u>other</u> defendants and do not aver an act by Lamb that constitutes obstruction of justice. (*See* 2d Amend. Compl. ¶¶ 64, 238, 520, 486-87.)

Moreover, these allegations do not state that Lamb attempted to blackmail them into not filing a case, *c.f. Reed v. Buckeye Fire Equip.*, [241 Fed. Appx. 917, 922, 928]() (4th Cir. 2007) (unpublished) (threat of blackmail sufficient allegation to support obstruction of justice claim); attempted to make them testify falsely, *c.f. Jackson v. Blue Dolphin Commc'ns of N.C.*, [226 F. Supp. 2d 785, 794-95]() (W.D.N.C. 2002) (forcing false testimony sufficient allegation to support obstruction of justice claim); or attempted to destroy evidence, *c.f. Grant v. High Point Reg. Health Sys.*, [184 N.C. App. 250, 255-56](), [645 S.E.2d 851, 855]() (2007) (destruction of evidence sufficient allegation to support obstruction of justice claim). Absent allegations of these types, Lamb's actions do not constitute obstruction of justice.

     B.    <u>No Intentional Infliction of Emotional Distress</u>

As pointed out in Defendants' Brief, although Lamb is included in the parenthetical following the caption of the Twentieth Cause of Action, no allegations are asserted against him in that claim for relief.  In response, Plaintiffs argue that despite not mentioning him in the Cause of Action, Lamb has notice that overseeing "production of the poster" renders him liable for intentional infliction of emotional distress.[8]  (Plfs.' Super. Opp. 41.)  Although unattributed in their Response, this is apparently a reference to Paragraph 520 of the Second Amended Complaint:

> Under District Two Commander Jeff Lamb's direction, Durham Police and Duke University personnel created the "Wanted" poster using the Plaintiffs' photographs . . . .

(2d Amend. Compl. 520.)  Plaintiffs go on to allege that Duke University officials mass-produced this poster, and unnamed persons disseminated it on the Duke campus and in Durham.  (*See id*. ¶¶ 521-23.)

The single allegation that the poster was created at Lamb's direction does not meet the "high standard" for extreme and outrageous conduct established by North Carolina's courts for this claim.  *See Dobson v. Harris*, 134 N.C. App. 573, 578-79, 521 S.E.2d 710, 715 (1999) (false report of child abuse not "utterly intolerable in a civilized community"), *rev'd on other grounds,* 352 N.C. 77, 530 S.E.2d 829 (2000).  The poster accuses Plaintiffs of nothing; rather, it implores them to come forward with information.  (*See* 2d Amend. Compl., Ex. 14.)  Specifically, its headline reads, "Please Come Forward," and quotes Corporal Addison as saying, "We're not saying that all 46 are involved.  But we

---

[8] A copy of the poster is attached to the Amended Complaint as Exhibit 14.  (2d. Amend. Compl., Ex. 14.)

do know that some of the players inside that house on that evening knew what transpired and we need them to come forward." (*See id.*)

By the time this poster is alleged to have been distributed, on March 28, 2006, (2d Amend. Compl. ¶ 518), the investigation had been ongoing for two weeks, and Plaintiffs, potential witnesses to the events at issue, had declined to talk to police. (*See id.* ¶¶ 405, 412). To the extent that this poster can be construed to be a statement concerning these Plaintiffs, it was made to seek information during the course of a police investigation, is thus privileged, *see Averitt v. Rozier,* 119 N.C. App. 216, 458 S.E.2d 26 (1995), and will not support a claim for intentional infliction of emotional distress. *McCray v. Chapel Hill Police Dep't*, No. 1:06-CV-984, 2008 U.S. Dist. LEXIS 22341 (M.D.N.C. Mar. 19, 2008).

*Woodruff v. Miller*, 64 N.C. App. 364, 307 S.E.2d 176 (1983), the only case cited by Plaintiffs in support of the poster as extreme and outrageous, is inapposite. There, the defendant, "hostile to plaintiff because of two bitterly contested lawsuits between them which defendant lost, . . . discovered that thirty years earlier, as a result of a prank participated in with some other college boys, plaintiff was indicted in Orange County for aiding and abetting a service station break in." *Id.* at 365, 307 S.E.2d at 177. He obtained copies of the related papers and posted them in the Laurel Springs post office, "on the 'Wanted' board alongside posters for unapprehended criminals." *Id.* He also showed them to individuals, while accusing the plaintiff of being a thief. *Id.* The North Carolina Court of Appeals found this behavior sufficient to support this claim:

> At the time defendant acted, plaintiff's record was not being considered or reviewed by any person or agency for any reason or purpose; no one but defendant was then interested in plaintiff's background, and defendant's concern was only because of animosity and spite. Defendant's consuming animus against the plaintiff, the lengths he went to in getting copies of the records, the truculent, vindictive methods used in circulating them, the outrageous comparison of a minor transgressor, who long since paid his debt to society, to dangerous criminals that have escaped apprehension, his delight in the plaintiff being unable to sleep, all indicate a calculated, persistent plan to disturb, humiliate, harass, and ruin plaintiff for no purpose but defendant's own spiteful satisfaction.

*Id.* at 366, 307 S.E.2d at 178. Lamb, however, is not alleged to have engaged in comparable conduct. He allegedly only directed the preparation of a poster seeking information in connection with an ongoing investigation; he did not maliciously publish information from Plaintiffs' distant past. As such, the conduct alleged is not "atrocious, and utterly intolerable," *Briggs v. Rosenthal,* 73 N.C. App. 672, 677, 327 S.E.2d 308, 311 (1985)*,* and is insufficient to support this claim.

    C.    <u>No Aiding or Abetting Breach of Fiduciary Duty</u>

Plaintiffs and Defendants both cite *Battleground Veterinary Hosp., P.C. v. McGeough*, 2007 NCBC 33, 68-69 (N.C. Super. Ct. 2007), which notes that it is unclear as to whether the recognition of a claim of aiding and abetting a breach of fiduciary duty by the Court in *Blow v. Shaughnessy,* 88 N.C. App. 484, 364 S.E.2d 444 (1988) is still good law. Even if this claim does exist, absence of a fiduciary relationship is a "basic obstacle to aider and abettor liability." *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 350 (4th Cir. 1998).

In their Oppositions, Plaintiffs ignore the North Carolina case law cited by the University and these Defendants holding that there is no fiduciary relationship between a

university and a student as a matter of law.  *See Ryan v. Univ. of N.C. Hosp.*, [168 N.C. App. 729](), [609 S.E.2d 498]() (2005).  Instead, Plaintiffs argue that Duke is a "bank," (Plfs.' Super. Opp. 42, fn 14), and use that shaky premise to support their assumption that Duke is a "financial institution" governed by the North Carolina's Financial Privacy Act, codified in Chapter 53B of the North Carolina General Statutes.  (DUPD Opp. 27-30.)

Plaintiffs argue that they have alleged violations of G.S. §53B-4.  This statute prescribes the methods by which government authorities may have access to "a customer's financial record held by a *financial institution*."  (emphasis added). "Financial institution" is a statutorily defined term:

> "Financial institution" means a banking corporation, trust company, savings and loan association, credit union, or other entity *principally engaged in the business of lending money or receiving or soliciting money on deposit.*

G.S. §53B-2(2)(emphasis added)[9].  Duke is not, nor is it alleged to be, an entity that is principally engaged in the business of lending money or receiving money on deposit.  As Plaintiffs allege, "Duke University is an educational institution…" (2d Amend. Compl. ¶10.)  Chapter 53B simply has no application to this case.[10]  Because there is no statutory

---

[9] Plaintiff's assertion that the "Duke Card Reports are 'financial records'" within the meaning of G.S. §53B-2(3) is specious.  A "financial record" is defined as "a record held by a *financial institution*…" *Id.* (emphasis added).

[10] Even if Duke had been a "financial institution" that improperly disclosed financial information, Plaintiffs have failed to allege that Defendants participated in, solicited or induced a violation of Chapter 53B. Plaintiff alleges that Duke employees accessed Plaintiffs' records on March 13 and 14, 2006, and delivered them to Gottlieb over two weeks later, on March 31, 2006, and that he passed it on to Himan on April 4.  (2d Amend. Compl. ¶¶ 853, 857, 858.)  Plaintiffs do not allege any facts to show that any of these Defendants participated in any disclosure, an allegation that would be necessary to make out a claim under G.S. §53B-10(b).

or common law basis for their contention that Duke was their fiduciary, Plaintiffs'

Twenty-Third Cause of Action should be dismissed.

      D.    <u>Negligence Claims Should Be Dismissed</u>

As set out above, Plaintiffs asserted four negligence claims (Twenty-Fifth through

Twenty-Eighth Causes of Action) against these Defendants. While taking issue with

Defendants' analysis of some claims, Plaintiffs expressly waive their individual liability

claims in Counts Twenty-Six, Twenty-Seven, and Twenty-Eight. (Plfs.' Super. Opp. 44-

45.) In addition, Plaintiffs waive the official capacity claims in all four of these causes of

action, because the City is also named as a separate defendant. (*Id*. 45.)

All that remains of the negligence claims are the individual liability claims in the

Twenty-Fifth Cause of Action. This Cause of Action attempts to assert a general

negligence claim against Defendant Hodge, which is addressed in his separate reply.

What still remains unclear is whether Plaintiffs intended to also assert this claim against

Defendant Russ. As noted in Defendants' initial brief, Defendant Russ is included in the

parenthetical list under the caption, but no allegations appear about him in the paragraphs

that follow. (Defs.' Br. 42-43.) Further, the Amended Complaint does not allege that he

made public statements or was active in the investigation, which are the nature of the

allegations lodged against the other defendants in this claim.[11] Plaintiffs have failed to

respond at all to this argument raised in Defendants' initial brief about Defendant Russ,

supporting Defendant's suggestion that his inclusion in the list was simply a mistake. In

---

[11] Although like the police supervisor defendants, Defendant Russ is alleged to have supervised other defendants, Plaintiffs have conceded the dismissal of their negligent supervision claims. (Plfs.' Super. Opp. 44.)

any event, the Amended Complaint contains no allegations that Defendant Russ breached any duty of care that he owed to Plaintiffs, or that he acted with malice[12], and this negligence claim, if there is one, should be dismissed.

<u>CONCLUSION</u>

For the reasons stated above, and in Defendants' original brief, Plaintiffs allegations against them are insufficient to make out cognizable claims as a matter of law, and should be dismissed.

TROUTMAN SANDERS LLP

By: /s/ Patricia P. Kerner
    Patricia P. Kerner
N.C. State Bar No. 13005
    Hannah G. Styron
N.C. State Bar No. 28824
    D. Martin Warf
N.C. State Bar No. 32982
*Attorneys for Defendants Baker, Chalmers, Council, Evans, Lamb, Ripberger, and Russ*
434 Fayetteville Street, Suite 1900
Raleigh, North Carolina 27601
Telephone: (919) 835-4100
Facsimile: (919) 829-8714
tricia.kerner@troutmansanders.com
hannah.styron@troutmansanders.com
martin.warf@troutmansanders.com

---

[12] The paragraphs cited by Plaintiffs in response to the general argument about public official immunity do not name Defendant Russ.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RYAN MCFADYEN, *et al,*      )
                                       )
           Plaintiffs,       )
                                       )
v.                                 )     Case No. 1:07-CV-00953
                                       )
DUKE UNIVERSITY, *et al,*    )
                                       )
           Defendants.     )
_____

## CERTIFICATE OF SERVICE
_____

I hereby certify that the foregoing was electronically filed with the Clerk of the

Court using the CM/ECF system, which will send notification of such filing to the

following:

Robert C. Exstrand
EXSTRAND & EXSTRAND, LLP
811 Ninth Street, Suite 260
Durham, North Carolina 27705
rce@ninthstreetlaw.com
*Attorneys for Plaintiffs*

James D. Cowan, Jr.
Dixie T. Wells
Leslie Cooper Harrell
SMITH MOORE, LLP
Post Office Box 21927
Greensboro, NC 27420
don.cowan@smithmoorelaw.com
dixie.wells@smithmoorelaw.com
cooper.harrell@smithmoorelaw.com
*Attorneys for Defendants Duke*
*University, Duke University Health System,*
*Inc., Richard Brodhead,*
*Peter Lange, Larry Moneta,*
*John Burness, Tallman Trask,*
*Suzanne Wasiolek, Matthew*
*Drummond, Aaron Graves,*
*Robert Dean, Tara Levicy, Theresa*
*Arico, Kate Hendricks, Victor Dzau*

Jamie S. Gorelick
Jennifer M. O'Connor
Paul R.Q. Wolfson
William F. Lee
WILMER, CUTLER, PICKERING,
HALE, and DORR, LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006
jamie.gorelick@wilmerhale.com
jennifer.oconnor@wilmerhale.com
paul.wolfson@wilmerhale.com
william.lee@wilmerhale.com
*Attorneys for Defendants Duke*
*University, Duke University Health*
*System, Inc., Richard Brodhead,*
*Peter Lange, Larry Moneta,*
*John Burness, Tallman Trask,*
*Suzanne Wasiolek, Matthew*
*Drummond, Aaron Graves,*
*Robert Dean, Tara Levicy, Theresa*
*Arico, Kate Hendricks, Victor Dzau*

Dan J. McLamb
Shirley M. Pruitt
T. Carlton Younger, III
YATES, MCLAMB & WEYHER, LLP
P.O. Box 2889
Raleigh, NC 27602-2889
dmclamb@ymwlaw.com
spruitt@ymwlaw.com
cyounger@ymwlaw.com
*Attorneys for Defendants Duke*
*University Health Systems, Inc.,*
*Tara Levicy, and Theresa Arico*

Robert A. Saar
Nicholas J. Sanservino, Jr.
OGLETREE DEAKINS NASH SMOAK
& STEWART, PC
2301 Sugar Bush Rd., Suite 600
Raleigh, NC 27612
*Attorneys for DNA Security*

Robert J. King, III
Kearns Davis
BROOKS, PIERCE, McLENDON,
HUMPHREY & LEONARD, LLP
Post Office Box 26000
Greensboro, NC 27420
*Attorneys for Defendants DNA Security,*
*Inc. and Richard Clark*

James A. Roberts, III
LEWIS & ROBERTS, PLLC
1305 Navaho Drive, Suite 400
Raleigh, NC 27605
*Attorneys for Brian Meehan*

Paul R. Dickinson, Jr.
LEWIS & ROBERTS, PLLC
590 Fairview Rd., Suite 102
Charlotte, NC 28210
*Attorneys for Brian Meehan*

Reginald B. Gillespie, Jr.
FAISON & GILLESPIE
Post Office Box 51729
Durham, NC 27717
rgillespie@faison-gillespie.com
*Attorneys for Defendant City of Durham*

Edwin M. Speas
Eric P. Stevens
POYNER & SPRUILL, LLP
3600 Glenwood Avenue
Raleigh, NC 27612
*Attorneys for Defendant Gottlieb*

Joel M. Craig
Henry W. Sappenfield
KENNON, CRAVER, BELO, CRAIG &
MCKEE, PLLC
Post Office Box 51579
P.O. Box 51579
Durham, NC 27717-1579
*Attorneys for Defendant Himan*

James B. Maxwell
MAXWELL, FREEMAN & BOWMAN,
P.A.
Post Office Box 52396
Durham, NC 27717
*Attorneys for Defendant Addison*

I further certify that a copy of the foregoing was served today upon each of the following non CM/ECF participants by United States mail, postage prepaid, addressed as follows:

Linwood Wilson          Roger E. Warrin
6910 Innesbrook Way     Michael A. Vatis
Bahama, NC 27503-9700   John P. Nolan
*Pro Se*                Leah M. Quadrino
                        STEPTOE & JOHNSON, LLP
                        1330 Connecticut Ave. N.W.
                        Washington, DC 20036
                        *Attorneys for Defendant City of Durham*

This the <u>26th</u> day of November, 2008.

Respectfully submitted,

By: /s/ Patrica P. Kerner
    Patricia P. Kerner
N.C. State Bar No. 13005
*Attorneys for Defendants Baker, Chalmers,*
*Council, Evans, Hodge, Lamb, Mihiach,*
*Ripberger, and Russ*
434 Fayetteville Street, Suite 1900
Raleigh, North Carolina 27601
Telephone: (919) 835-4100
Facsimile: (919) 829-8714
tricia.kerner@troutmansanders.com