UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

**File No. 1:07-CV-00953**

RYAN McFADYEN, MATTHEW WILSON;
and BRECK ARCHER,

                Plaintiffs,

     vs.

DUKE UNIVERSITY et. al,

                Defendants.

**JOINT REPLY IN SUPPORT OF THE MOTIONS TO DISMISS FILED BY
DEFENDANTS MARK GOTTLIEB AND INVESTIGATOR HIMAN**

Defendants Sergeant Mark Gottlieb ("Sgt. Gottlieb") and Investigator Benjamin Himan ("Inv. Himan") were the primary investigators for the Durham Police Department into allegations by Crystal Mangum that she was raped at an event sponsored by members of the Duke Lacrosse team. Each filed separate motions to dismiss. Plaintiffs filed oppositions to both. Sgt. Gottlieb and Inv. Himan now respectfully submit this Joint Reply, as the legal issues to be addressed are identical.

## I.     DISMISSAL OF FEDERAL CLAIMS

### A.     Ample Grounds Existed for the Superior Court to Issue the NTO

Plaintiffs' Amended Complaint identified four specific alleged "fabrications" in the affidavit that led to issuance of the NTO (the "NTO Affidavit"). (AC ¶¶ 415-39). Since Defendants demonstrated in their opening briefs that these alleged "fabrications" were immaterial to issuance of the NTO, Plaintiffs now claim that *every* statement in the affidavit was fabricated. (Opp. to City pp. 9-17). The chart below compares each

statement in the NTO Affidavit with the allegations Plaintiffs made in their Amended Complaint (which must be deemed true for purposes of this motion). As the chart demonstrates, Plaintiffs' claims are considerably less than advertised.

| NTO Affidavit | Amended Complaint |
|---|---|
| On 3/14/06 at 1:22 a.m., Durham City Police Officers were called to the Kroger on Hillsborough Road. | ***Consistent.*** Kroger Security Guard Angel Altmon called Durham Police at 1:22 a.m. on December 14, 2006. (AC ¶ 225). |
| The victim, a 27 year old black female reported to the officers that she had been raped and sexually assaulted at 610 North Buchanan Boulevard. | ***Materially consistent.*** Mangum did not claim to the responding officer that she had been assaulted. (AC ¶ 234). However, Mangum was taken to Durham Center Access. There, Nurse Alycia Wright asked Mangum "Were you raped?" Mangum nodded, yes. (AC ¶¶ 247-254). Mangum told Officer Gwen Sutton later that evening she had been raped at a bachelor party. (AC ¶ 267). Gottlieb and Himan interviewed Mangum on March 16, 2006. According to Himan's notes she identified her attackers as "Adam, Brett, and Matt." (AC ¶ 362). |
| The investigation revealed that the victim and a co-worker had an appointment to dance at 610 North Buchanan Blvd. | ***Consistent***. Mangum and Pittman were hired as dancers to perform at 610 N. Buchanan. (AC ¶¶ 195-197). |
| The victim arrived at the residence and joined the other female dancer around 11:30 p.m. on 3/13/2006. | ***Materially consistent.*** Mangum was dropped off at the residence 40 minutes late at approximately 11:40 p.m., she was staggering, appeared to come from another event, and the other dancer had already arrived. (AC ¶ 197). |
| The victim reported that they began to perform their routine inside of the residence. | ***Consistent***. "A picture captured the two dancers as the dance began in the living room." (AC ¶ 200). |
| After a few minutes, the males watching them began to get excited and aggressive. | ***Information not known to officers***. The AC does not dispute that Mangum made this claim to investigators. The AC alleges that a "sequence of pictures corroborates the party guests' accounts that they quickly became uncomfortable and/or disinterested." (AC ¶ |

| | |
|---|---|
| | 202). Gottlieb and Himan did not have possession of the photos when they filed the NTO Affidavit. (AC ¶¶ 395-96). |
| One male stated to the women "I'm gonna shove this up you" while holding a broomstick up in the air so they could see it. | **Materially consistent.** Gottlieb and Himan learned of "the broomstick exchange" from the March 16th statements of Evans, Flannery, and Zash, who each independently characterized the comment as harmless, and said in jest. (AC ¶ 420). |
| The victim and her fellow dancer decided to leave because they were concerned for their safety. | **Information not known to officers**. The AC does not dispute that Mangum made this statement. The AC alleges that Mangum's account is inconsistent with photographs (AC ¶ 397) and cell phone records (AC ¶¶ 204, 206-07). The photographs were not available until March 26 – after the NTO was entered. (AC ¶ 211). The AC does not contend that investigators had possession of the cell phone records. |
| After the two women exited the residence and got into a vehicle, they were approached by one of the suspects. He apologized and requested they go back inside and continue to dance. | **Information not known to officers**. The AC does not dispute that Mangum made this statement. The AC claims that Mangum's account is inconsistent with photographic evidence that was not available to Gottlieb and Himan. (AC ¶¶ 395-398). |
| Shortly after going back into the dwelling the two women were separated. | **Materially consistent.** The AC does not dispute that Mangum made this statement. The AC alleges that Pittman originally called Mangum's rape accusation a "crock" and later added an "addendum" stating that Mangum went back into the house to make more money. (AC ¶¶ 385-86). |
| Two males, Adam and Matt pulled the victim into the bathroom. Someone closed the door to the bathroom where she was, and said "sweet heart you can't leave." The victim stated she tried to leave, but the three males (Adam, Brett, and Matt) forcefully held her legs and arms and raped and sexually assaulted her anally, vaginally and orally. | **Materially consistent; information not known to officers**. According to the AC, Gottlieb and Himan interviewed Mangum on March 16, 2006 and according to Himan's notes she identified her attackers as "Adam, Brett, and Matt." (AC ¶ 362). The AC does not allege that the account set forth in the NTO Affidavit misstates what Mangum said during the March 16 interview. Plaintiffs |

| | contend that Mangum's account is inconsistent with the objective findings of the SANE exam (AC ¶ 308) and with photos (that were not available to investigators when they sought the NTO) (AC ¶ 326). |
|---|---|
| The victim stated she was hit, kicked, and strangled during the assault. As she attempted to defend herself she was overpowered. | ***Materially consistent.*** The AC only disputes that Mangum claimed she was strangled. The AC alleges that, according to the SANE report, Mangum denied to the SANE nurse that she had received any physical blows by hand. (AC ¶¶ 308, 309). |
| The victim reported she was sexually assaulted for an approximate 30 minute time period by the three males. | ***Materially consistent; information not known to officers.*** The AC does not dispute that Mangum made this statement. The AC alleges that Mangum gave inconsistent accounts on the morning of the alleged incident (AC ¶ 321) and the written report of the SANE examination did not corroborate, and was inconsistent with, this claim (AC ¶¶ 302-06). |
| During a search warrant at 610 N. Buchanan on 3-16-2006 the victim's four red polished fingernails were recovered inside the residence consistent to her version of the attack. She claimed she was clawing at one of the suspect's arms in an attempt to breathe while being strangled. During that time the nails broke off. | ***Materially consistent.*** The AC does not deny that four red polished nails were found in a search at 610 N. Buchanan. The AC denies that Mangum claimed she lost her fingernails in a struggle, and claims instead that Mangum said she had started affixing and painting her false nails just before she left for the party at 610 N. Buchanan. (AC ¶ 424). The AC says the NTO Affidavit omits the fact that other unpainted fingernails and accessories were also found at 610 N. Buchanan. (AC ¶ 425). |
| The victim's make up bag, cell phone, and identification were also located inside the residence during the search warrant. | ***Consistent***. The AC does not dispute this. |
| A pile of twenty dollar bills were recovered inside the residence totaling $160.00 consistent with the victim claiming $400.00 cash in all twenty dollar bills was taken from her purse immediately after the rape. | ***Consistent***. The AC does not dispute that a pile of twenty dollar bills was recovered in the residence or that Mangum told Gottlieb that she had lost $400.00. The AC alleges that Mangum gave inconsistent stories concerning the loss of her money. (AC ¶ |

| | 321). |
|---|---|
| The victim was treated and evaluated at Duke University Medical Center Emergency Room shortly after the attack took place. A Forensic Sexual Assault Nurse (SANE) and Physician conducted the examination. Medical records and interviews that were obtained by a subpoena revealed the victim had signs, symptoms, and injuries consistent with being raped and sexually assaulted vaginally and anally. The SANE nurse also stated the injuries and her behavior were consistent with a traumatic experience. | ***Inconsistency not known to officers***. The AC does not dispute the NTO Affidavit's account of what the SANE nurse told Gottlieb and Himan. The AC asserts that the objective findings in the SANE report were inconsistent with, and did not justify, a conclusion that Mangum was sexually assaulted. (AC ¶¶ 297-311). The AC asserts that Levicy was a "SANE-in-Training" who was not qualified to conduct a SANE exam (AC ¶ 299), but the AC does not allege that investigators knew this fact at the time they sought the NTO. |
| The victim stated she did not think the names the suspects were providing her were their own. She stated one male identified himself as Adam, but everyone at the party was calling him Dan. | ***Materially consistent.*** The AC denies Mangum made this statement. (AC ¶ 433). |
| In addition, the witness/co-worker stated the men at the party told her they were members of the Duke Baseball and Track Team to hide the true identity of their sports affiliation – Duke Lacrosse Team Members. | ***Materially consistent***. The AC does not confirm or dispute that Pittman made this statement. (AC ¶ 385). The AC claims that Gottlieb and Himan were aware that the walls of the house were covered with Duke Lacrosse posters, banners, and other insignia. (AC ¶ 436). |
| In a non-custodial interview with Daniel Flannery, resident of 610 N. Buchanan and Duke Lacrosse Team Captain; Mr. Flannery admitted using an alias to make the reservation to have the dancers attend the Lacrosse Team Party. | ***Consistent.*** The AC acknowledges that Daniel Flannery admitted using the name Dan Flanagan to reserve the dancers. (AC ¶ 432). |
| The State believes there is an exigent circumstance where if the suspect's injuries are not located immediately and preserved, the evidence will be lost forever. | ***No statement of fact***. This statement is based upon the claim that Mangum said she had been scratched by her assailants. The AC denies that Mangum made this claim. |
| All of the parties named in this application with the exception of the last five were named by the three residents of 610 N. Buchanan as being present at the party. The three residents stated during the non- | ***Consistent.*** The AC does not dispute the truth of this statement. The AC contends that Mangum failed to identify Plaintiffs and other members of the Duke Lacrosse Team during photographic lineups. (AC ¶¶ 383-84; |

| | |
|---|---|
| custodial interviews that their fellow Duke Lacrosse Team Members were the ones who attended this party. They knew everyone there, and stated there were no strangers who showed up at the event. Due to the fact that the residents of 610 N. Buchanan stated that all the attendees were their fellow white male Duke Lacrosse Team Members and that there were so many attendees, all of the white male Duke Lacrosse Team Members were listed since they were all aware of the party and could have been present. | 92-100). |
| It is the States belief the suspects used each others names to disguise their own identities and create an atmosphere where confusion would become a factor in this event should problems arise in the future where any actions or conduct would be questioned. | ***No statement of fact.*** This statement makes an inference about motives based upon prior statements attributed to Daniel Flannery, Kim Pittman, and Crystal Mangum. Plaintiffs contend Mangum's statement was fabricated, but they acknowledge the statement of Daniel Flannery and they do not deny the statement attributed to Pittman. |
| The DNA evidence requested will immediately rule out any innocent persons, and show conclusive evidence as to who the suspects are in the alleged violent attack upon this victim. | ***No statement of fact.*** This statement was a prediction rather than a statement of fact. Ultimately, the DNA evidence did not implicate Plaintiffs, and they were never charged. |
| Numerous persons who attended this party are seniors at Duke University and have permanent addresses outside of the State of North Carolina making it difficult if not impossible to collect the DNA evidence in the future when necessary. | ***Unknown***. Plaintiffs contend this statement is false. Plaintiffs cite to AC ¶ 757 which provides no support for this claim. |

The chart reveals that only statements in the NTO Affidavit that Plaintiffs contend were fabricated ***by investigators*** are: (1) that Mangum reported to the initial responding police officers that she had been raped, rather than nodding in response to a question at commitment proceedings and confirming her claims to police officers later; (2) the particular wording of the "broomstick exchange"; (3) that Mangum claimed to have been

"strangled" during the rape; and (4) that Mangum thought people at the party may have used aliases. Judge Stephens' decision to issue the NTO would not have been affected by removal of these statements.

Most of Plaintiffs' challenges to the NTO Affidavit are that additional information should have been included. The investigators cannot be faulted for "omission" claims, however, when the Amended Complaint fails to allege the investigators knew the information was false, or the Amended Complaint affirmatively shows that investigators did not have the information. *See, e.g.*, *Franks v. Delaware*, 438 U.S. 154, 171, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978) (only deliberately false statements **by investigators** relevant to search warrant challenge). A number of Plaintiffs' "omission" claisM fall int his category, including: Mangum initially "nodding yes" in response to a question about whether she was raped during involuntary commitment proceedings when she learned her children might be taken away (AC ¶ 382)[1]; Mangum giving eleven different renditions of her story to eight different medical providers with only consistent claim being that Pittman stole from her (AC ¶¶ 221, 271, 328)[2]; that Angel Altmon, the Kroger security

---

[1] Plaintiffs criticize investigators for relying on Levicy's account rather than interviewing other medical personnel. (AC ¶ 1142(K)). However, "the failure to pursue potentially exculpatory leads . . . is not sufficient to negate probable cause." *Villega v. Prince George's County*, 219 F. Supp. 2d 696, 701 (D. Md. 2002) (citation omitted), *aff'd*, 70 F. App'x 720 (4th Cir. 2003).

[2] Even if investigators had all the medical statements before them (which is not alleged), Mangum's inconsistent statements to medical providers apparently occurred "when [she] was still experiencing the shock and trauma of the assault," *see Torchinsky v. Siwinsky*, 942 F.2d 257, 263 (4th Cir. 1991), and they might have been exacerbated by her possible

guard, did not believe Mangum had been assaulted (when Altmon's statement was given to police two weeks after the NTO Affidavit was made, (AC ¶¶ 239, 242)); that Pittman claimed that Mangum's behavior was bizarre and the young men quickly became uncomfortable or disinterested[3]; that photographs contradict various aspects of the NTO Affidavit's account (the NTO alleges that these photographs were available three days after NTO was issued (AC ¶ 211)); that Mangum's cell phone records contradict various aspects of the NTO Affidavit's account; that Mangum was staggering when she came to the party; that Tara Levicy was only a SANE in training and Dr. Julie Manly conducted the SANE examination; that SANE report findings did not justify the conclusions reported by Levicy to investigators (there is no allegation the investigators studied any medical records or that, if they had, they were competent to second-guess Levicy's reported conclusions); and that Jason Bissey saw Mangum staggering and looking for her shoe (his statement was not obtained after the NTO was issued. (AC ¶ 390).

Plaintiffs' remaining "omission" claims are based upon information that was immaterial to Judge Stephens' decision. Most of the "omitted" details concerning Mangum's behavior on the night in question – e.g. that she gave multiple inconsistent statements to medical personnel and police officers,  that she appeared to be intoxicated, that the initial responding police officer did not believe her claim because of her erratic

---

use of drugs or alcohol (AC ¶ 197) and the late hour in which the interviews were taking place. (AC ¶¶ 280, 291).
[3] Plaintiffs' assertion that Pittman made this statement is wholly unsupported by the Amended Complaint. (AC ¶¶ 202, 385-86).

behavior, and that her behavior was characterized by witnesses as bizarre – were consistent with what officers were trained to expect from victim statements made "at a time when [Mangum] was still experiencing the shock and trauma of the assault." *Torchnisky v. Siwinsky*, 942 F.2d at 263. Plaintiffs attempt to distinguish *Torchinsky* by claiming that it was clear in that case that the accuser had been assaulted. (Opp. to Gottlieb p. 7). However, the SANE nurse told investigators in this case that Mangum "had signs, symptoms, and injuries consistent with being raped and sexually assaulted vaginally and anally."[4]

Plaintiffs also contend the NTO Affidavit was defective because it failed to disclose that Mangum had reviewed photographs of several of the Duke Lacrosse players, including the Plaintiffs, but failed to identify them. (See AC ¶¶ 366-381). A similar argument was considered and rejected by the Fourth Circuit in *United States v. Colkley*, 899 F.2d 297 (4th Cir. 1990). There, investigators sought a warrant to arrest a robbery suspect, but the warrant application did not disclose the fact that six eyewitnesses to the robbery had failed to identify the suspect in photospreads. *Id*. at 299. The Fourth Circuit held the warrant was nonetheless justified, explaining that warrant affidavits should almost never be invalidated on grounds that they omit information. The Court reasoned that "the nonlawyers who normally secure warrants in the heat of a criminal investigation

---

[4] Plaintiffs do not deny that the SANE nurse made this statement to investigators, but contend that the SANE examination did not did not justify the conclusions she reported. Plaintiffs do not allege that investigators knew this when they sought the NTO. (AC ¶¶ 302-11).

should not be burdened with the same duty to assess and disclose information as a prosecutor who possesses a mature knowledge of the entire case." *Id* at 303. Requiring investigators to routinely disclose exculpatory information in warrant applications would "result in perniciously prolix affidavits that would distract police officers from more important duties and render the magistrate's determination of probable cause unnecessarily burdensome." *Id*.

This NTO, like the arrest warrant in *Colkley*, was justified despite the nondisclosure of the initial photo arrays. When Mangum reviewed photographs during the initial identification procedures, she was unable to recognize people she had clearly seen at the party, stating, "[t]hey all look the same." (AC ¶ 380). Investigators sought photographs to "give the availability of the suspect's current hair styles, complection [sic], and body mass." (Sgt. Gottlieb Initial Memo Ex. 1). Investigators were reasonable to surmise that Mangum could better identify her attackers with more current photographs. For that matter, investigators may have concluded that the availability of DNA evidence ultimately might lessen the importance of eyewitness identification.[5]

Plaintiffs' torrent of words cannot alter the fact that the NTO Affidavit truthfully reported: Mangum's claim that she was sexually assaulted by three men in the bathroom of 610 N. Buchanan; the SANE nurse's corroboration of Mangum's claims; the

---

[5] Other alleged omissions are similarly immaterial. For instance, Plaintiffs allege that Pittman made statements that were not consistent with Mangum's account. (Opp. to City p. 12). The Amended Complaint, however, makes clear that investigators had reason to question Pittman's credibility, as she had already made the "phony 911 call" (AC ¶¶ 102, 218, 223) and lied about working with Mangum that night. (AC ¶¶ 231, 272).

admission by occupants of 610 N. Buchanan that only Duke Lacrosse players were present on the night of the alleged incident; and the collection of Mangum's personal effects at the scene of the alleged crime. The NTO Affidavit easily satisfied well-established constitutional standards. Qualified immunity attached to the investigators' actions, and this Court should dismiss Plaintiffs' First Cause of Action as to Sgt. Gottlieb and Inv. Himan.

### B. Probable Cause Existed to Search Ryan McFadyen's Dorm Room

The Amended Complaint asserted that investigators should have recognized that Ryan McFadyen's email regarding the brutal murder of strippers was a "parody." (AC ¶¶ 594-610). Plaintiffs now contend that investigators could not rely upon McFadyen's email to seek a search warrant because it was supplied by an anonymous source. (Opp. to City pp. 17-19). This new contention is contradicted the Amended Complaint and established law.

Plaintiffs cannot avoid their affirmative allegation that Ryan McFadyen wrote the email. The Amended Complaint admits as much in a section entitled "Ryan's Email." The first paragraph states: "Gottlieb obtained an email *written by Ryan McFayden*." (AC ¶ 594) (emphasis added). Having admitted its authenticity, Plaintiffs are estopped from arguing that the email is merely "text allegedly extracted from an email" or "text claimed to be excerpted from an email". *See Whitacre P'ship v. BioSignia, Inc.*, 358 N.C. 1, 32, 591 S.E.2d 870, 890 (2004) (holding that the doctrine of judicial estoppel in North

Carolina precludes a litigant from making õinconsistent assertions of factö before a tribunal).[6]

Given the emailøs authenticity, the cases cited by Plaintiffs ó discussing instances where anonymous informants rather than the criminal suspects themselves actually provide substantive information about the crime ó are inapposite. *See, e.g.*, *Illinois v. Gates*, 462 U.S. 213, 225, 203 S. Ct. 2317, 76 L. Ed. 527 (1983) (anonymous letter recounting the defendantøs alleged criminal activity); *Florida v. J.L.*, 529 U.S. 266, 270, 120 S. Ct. 1375, 146 L. Ed. 2d 254 (2000) (anonymous phone call reporting that õa young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gunö). Here, the substantive information was in an email õwritten by Ryan McFadyen,ö (AC ¶ 594), not in an email written by an anonymous informant. For this reason, õRyanøs emailö can hardly be viewed as a tip by an õanonymous informantö as that phrase is used in the caselaw.[7] Plaintiffsø second cause of action as to Sgt. Gottlieb and Inv. Himan must therefore be dismissed.

---

[6]The email contained the following indications of authenticity: (1) the distinctive email address of its sender (ryan.mcfadyen@duke.edu), which included Ryan McFadyenøs full name and specified a Duke University email account; (2) the name and number of the dorm room (Edens 2C); (3) a reference to a õduke issue spandexö lacrosse jersey, and (4) the use of õ41ö as a signature, which represented Ryan McFadyenøs lacrosse jersey number. (Gottlieb Initial Brief Ex. 2).

[7] Moreover, the email was only small part of the õtotality of circumstancesö relied upon by the Court to issue the Search Warrant. *See Gates* at 241. The probable cause affidavit included McFadyenøs email *along with* the same information included in the NTO Application. (AC ¶¶ 611-13). Section I(A) of this Brief demonstrates that even without the email investigators had ample basis to seek a search warrant directed to McFadyen.

**C.    Plaintiffs' Third Cause of Action for Abuse of Process Must be Dismissed**

Plaintiffs' Third Cause of Action, styled "Abuse of Process and Conspiracy in Violation of 42 U.S.C. § 1983" is premised upon the claim that officers "procured the *unlawful* NTID Order and the *unlawful* McFadyen Search Warrant in retaliation for refusing to voluntarily submit to interrogations . . . planned for them." (Opp. to Gottlieb p. 7) (emphasis added). Plaintiffs contend that Gottlieb, Himan, and others "caused the *deprivation of their right to be free of unreasonable searches and seizures* [e.g., the alleged unlawful NTO and McFadyen search warrant]" for unlawful purposes. (Opp. to Gottlieb p. 8) (emphasis added). As demonstrated in Sections A and B, *infra*, demonstrate that the NTO and the Search Warrant were lawfully issued.

**D.    Plaintiffs' Fourth Cause of Action for Deprivation of Property in Violation of the Fourteen Amendment Must Be Dismissed**

Plaintiffs contend they were deprived of a "property interest" without due process, claiming that they did not receive results of NTO "as soon as they were available." *See* N.C. Gen. Stat. § 15A-282. However, N.C. Gen. Stat. § 15A-282 is a procedural statute, codified in North Carolina's "Criminal Procedure Act". Its purpose is to protect the right of criminal suspects to a fair trial. "A state created procedural right or policy is not itself a property interest within the confines of the Fourteenth Amendment." *Ledford v. Sullivan*, 105 F.3d 354, 358 (7th Cir. 1997). *See also Shango v. Mary Jurich*, 681 F.2d 1091, 1100 (7th Cir. 1982) ("We have repeatedly observed: ‗Procedural protections or the lack thereof do not determine whether a property right exists.'") (internal citations omitted).

The cited cases deal with plaintiffs who were allegedly deprived of governmental benefits with clear intrinsic economic value, such as public employment, social security payments, public school education, drivers licenses, and public assistance. (Opp. to DNASI pp. 13-14). The right to receive reports of identification procedures, by contrast, has no intrinsic value apart from its procedural utility to a defendant facing criminal prosecution. Plaintiffs never faced criminal prosecution, and they were not deprived of any property interest protected by the Fourteenth Amendment.

**E.**      **Plaintiffs' Fifth Cause of Action Fails to State a Stigma-Plus Claim**

Plaintiffs clarify that, for purposes of their ößtigma-Plusö claims against Sgt. Gottlieb and Inv. Himan, the ößtigmaö came from the NTO Affidavit and the öplussesö were ößearches and seizures without probable cause.ö (Opp. to Himan p. 26; Opp. to Gottlieb p. 22). Since, as demonstrated in Sections A and B *infra*, there were no searches and seizures without probable cause, Plaintiffsø stigma-plus claim likewise fails.

**F.**      **Plaintiffs' Sixth and Seventh Causes of Action for Fabrication and Concealment Fail to State a Claim for Relief**

In their Sixth and Seventh Causes of Action, Plaintiffs contend that Sgt. Gottlieb and Inv. Himan violated their substantive due process rights by fabricating and concealing evidence. Plaintiffs do not, however, essay to explain how this ößhockingö conduct deprived them of any interest protected by the Fourteenth Amendment. Plaintiffs cite cases with very different facts involving concrete interests that plaintiffs allege were impacted by governmental action. *See County of Sacramento v. Lewis*, 523 U.S. 833, 118

S. Ct. 1708, 140 L. Ed. 2d 1043 (1998) (alleged deprivation of "right to life" by police officer's high speed chase); *Hawkins v. Freeman*, 195 F.3d 732 (4th Cir. 1999) (alleged deprivation of liberty by parole board that erroneously released and then "re-incarcerated" plaintiff); *Martinez v. City of Oxnard*, 337 F.3d 1091 (9th Cir. 2003) (alleged deprivation of liberty when police officer continued a coercive interrogation of the injured plaintiff despite pleas for immediate medical treatment); *Butler v. Rio Rancho Public Sch. Bd. Of Educ.*, 341 F.3d 1197 (10th Cir. 2003) (alleged deprivation of property right to public education by wrongful school suspension). No similar deprivation occurred here. Plaintiffs were members of a group that was the subject of a criminal investigation, but they were never charged or arrested, and never suffered a deprivation of their due process rights.

**G.      Plaintiffs' Ninth Cause of Action for Retaliation Fails to State a Claim**

Plaintiffs' Ninth Cause of Action for First Amendment retaliation must be dismissed, as the factual allegations on which it is based describe officers acting in an appropriate and common way. The Fourth Circuit and the Supreme Court have limited the liability of governmental officers for "retaliation" claims when the challenged government action is so "pervasive" and "universal" that allowing such a claim would "plant the seed of a constitutional case" in "virtually every" interchange." *Balt. Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006) (*quoting Connick v. Myers*, 461 U.S. 138, 148-49, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983), and *Umbehr*, 518 U.S. 668, 675, 116 S. Ct. 2342, 135 L. Ed. 2d 843). Here, Plaintiffs exercised their right not to voluntarily

provide information to investigators, and the investigators responded by seeking an order

compelling production. Allowing a claim for retaliation to go forward based upon these

allegations would clearly ö÷plant the seed of a constitutional caseø in ÷virtually everyø

interchangeö in which the government seeks to investigate crimes. *Ehrlich*, 437 F.3d at

416 (internal quotes omitted).

Plaintiffsø retaliation claim fails for the additional reason that the NTO was legally

justified. *See* Sections A and B, *infra*.[8] As the actions of investigators were

öindependently justified on grounds other than the improper one [i.e. retaliation]ö there is

no basis for a retaliation claim. *Wilkie v. Robbins*, 127 S. Ct. 2588, 2603, 168 L. Ed 2d

389, 2007 U.S. LEXIS 8513 (June 25, 2007); *see also Hartman v. Moore*, 547 U.S. 250,

256 (2006) (ö[s]ome official actions adverse to [an individual exercising First

Amendment rights] might well be unexceptionable if taken on other groundsö).

**H.      Plaintiffs' Tenth Cause of Action for Deprivation of Privileges and
         Immunities Does Not State a Claim**

Plaintiffsø Tenth Cause of Action for deprivation of privileges and immunities

under by Article IV and the Fourteenth Amendment should be dismissed as to Sgt.

---

[8] Plaintiffs offer no authority for their argument. The cited cases do not help, as they are based on far different facts. *Garcia v. City of Trenton*, 348 F.3d 726, 727-28 (2003) (öthe retaliatory issuance of parking ticketsö to a store owner who complained about lack of enforcement of ordinance prohibiting bicycle riding); *Suarez v. McGraw*, 202 F.3d 676, 681 (2000) (West Virginia Attorney Generaløs repeated defamations of a company in retaliation for plaintiff companyøs exercise of political speech); *Blankenship v. Manchin*, 471 F.3d 523, 525 (2006) (governor threatening a political rival); *Rogers v. Pendleton*, 249 F.3d 279 (2001) (no First Amendment retaliation claim).

Gottlieb and Inv. Himan for the reasons set forth in Section VIII the Reply Brief of the City of Durham, which is incorporated herein by reference.

**I.      Plaintiffs' Eleventh Cause of Action for "Bystander Liability" Fails to State a Claim**

In support of their Eleventh Cause of action for õbystander liabilityö, Plaintiffs contend that Sgt. Gottlieb and/or Inv. Himan knew that their fellow officers in the Duke or Durham police departments were violating Plaintiffsø constitutional rights. Plaintiffs argue that either of them should have stopped the other from playing a role in obtaining the NTO and Search Warrant. For the reasons set forth in Sections I(A) and I(B), the NTO and Search Warrant were lawfully issued, and Plaintiffs have identified no other constitutional violation by a fellow officer that Sgt. Gottlieb or Inv. Himan knew about and had the power to prevent.

**J.      Plaintiffs' Sixteenth and Seventeenth Causes of Action for Racial Discrimination Conspiracy Fail to State a Claim**

Plaintiffs Sixteenth and Seventeenth Causes of Action allege racial discrimination. For reasons set forth in Section IX of the City of Durhamøs Reply, which Sgt. Gottlieb and Inv. Himan incorporate by reference, these claims likewise fail to state a claim upon which relief may be granted, and must be dismissed.

**K.** **Plaintiffs' Creative Federal Claims against Gottlieb and Himan Are Barred by Qualified Immunity**

Plaintiffs' opposition briefs demonstrate that all of Plaintiffs' federal claims against Sgt. Gottlieb and Inv. Himan would require an extension of existing law and thus should be dismissed on qualified immunity grounds.

Plaintiffs cite no cases other than *Franks* for the proposition that the NTO and Search Warrant affidavits were fraudulent. (Opp. to Gottlieb pp. 17-18; Opp. to Himan pp. 23-24). These affidavits were consistent with existing law given: (1) the witness statements obtained from Mangum, SANE Nurse Levicy, and the occupants of 610 N. Buchanan; (2) the evidence collected from 610 N. Buchanan; (3) guidance from *Torchinsky* that allowance should be made for inconsistent statements and erratic behavior by recent assault victims; and (4) guidance from *Colkley* that warrant affidavits need not disclose all potentially exculpatory information. Under these circumstances, as other courts have concluded, Sgt. Gottlieb and Inv. Himan are qualifiedly immune from Plaintiffs' First and Second Causes of Action. *See Hallemand v. University of Rhode Island*, 9 F.3d 214 (1st Cir. 1993); *Tangwall v. Stuckey*, 135 F.3d 510 (7th Cir. 1998).

Qualified immunity similarly attaches to the remaining federal claims against Sgt. Gottlieb and Inv. Himan because no clearly established law: precluded investigators from seeking a warrant to conduct a search relevant to a criminal investigation merely because the subjects of the search refused to provide information voluntarily (Plaintiffs' Third and

Ninth Causes of Action); required investigators to immediately send reports of NTO procedures to individuals or risk a "taking" of property under the due process clause (Plaintiffs' Fourth Cause of Action); made investigators liable for "stigma-plus" claims based upon statements made in affidavits seeking lawful search warrants or NTO's (Plaintiffs' Fifth Cause of Action); made investigators liable to people who were never charged with crimes for fabrication or concealment of evidence (Plaintiffs' Sixth and Seventh Causes of Action); or precluded investigators from conducting a criminal investigation because some of the subjects of the investigation were Duke students perceived as "temporary" residents of North Carolina or because of animus allegedly existed in the community against Plaintiffs because they are white (Plaintiffs' Sixteenth and Seventeenth Causes of Action).

## II.     DISMISSAL OF STATE LAW CLAIMS

### A.     Public-Official Immunity Bars Plaintiffs' State Law Claims

Plaintiffs contend that the public official immunity doctrine is inapplicable to their obstruction of justice, abuse of process, intentional infliction of emotional distress and aiding and abetting claims (Plaintiffs' Eighteenth, Nineteenth, Twentieth and Twenty-Third Causes of Action) based upon their assertions of "malice." (Opp. to Himan p. 38). These *ipse dixit* assertions are not enough. The alleged facts do not create a plausible inference that they were taken with the intent to harm Plaintiffs or were done outside of Sgt. Gottlieb's and Inv. Himan's duties. *Compare Olvera v. Edmundson*, 151 F. Supp. 2d 700, 706 (W.D.N.C. 2001) (wrongful death claim dismissed based upon public official

immunity where plaintiff alleged only that the sheriff acted with deliberate indifference towards decedent rather than having an intention to injure), *with Blair v. County of Davidson*, No. 1:05CV00011, 2006 U.S. Dist. LEXIS 34253 (M.D.N.C. May 10, 2006) (no public official immunity where plaintiff alleged police officers repeatedly shocked and burned her with high voltage taser devices, forced her into lewd poses while others made salacious comments, and assaulted her).

### B. Plaintiffs Fail to State Obstruction of Justice Claims

The common law tort of obstruction of justice potentially arises where the defendant performs an act that prevents, obstructs, impedes or hinders public or legal justice. *Broughton v. McClatchy Newspapers, Inc*., 161 N.C. App. 20, 33, 588 S.E.2d 20, 29-30 (2003). Despite this broad language, the tort of obstruction of justice has not been extended to a case where the plaintiff seeks damages arising out of the handling of a criminal investigation. Plaintiffs' allegations are not comparable to the examples of perversion of the justice system or abuses of power that have previously given rise to civil liability for obstruction of justice. *See, e.g.*, *Reed v. Buckeye Fire Equip.*, 241 Fed. App'x. 917, 919 (4th Cir. 2007) (defendant attempted blackmail of plaintiff for pursuing Family Medical Leave Act claim); *Burgess v. Busby*, 142 N.C. App. 393, 544 S.E.2d 4, 12-13 (2001) (defendant physician retaliated against jurors by disclosing their names to other health care providers); *In re Kivett*, 309 N.C. 635, 309 S.E.2d 442 (1983) (abuse of power by Superior Court judge); *Jones v. City of Durham*, 183 N.C. App. 75, 643 S.E.2d 631 (2007) (destruction of evidence by law enforcement officers); *Jackson v. Blue*

*Dolphin Communs. of N.C., LLC*, 226 F. Supp. 2d 785 (W.D.N.C. 2002) (plaintiff terminated for refusal to sign false affidavit); *Henry v. Deen*, 310 N.C. 75, 310 S.E.2d 326 (1984) (physician altered medical records).

Plaintiffs allege that Sgt. Gottlieb and Inv. Himan investigated an alleged sexual assault based on claims made by the supposed victim of a brutal rape that appeared to be corroborated by forensic evidence (AC ¶¶ 306, 346, 362, 376) and shared all information they uncovered. Plaintiffs nonetheless contend that Sgt. Gottlieb and Inv. Himan should be held liable, because of a supposed massive, secret conspiracy that resulted in Plaintiffsø being investigated and subjected to DNA swabs and, for one, a search of his dorm room. (AC ¶¶ 414-45, 466-77, 779-99, 800-03, 1189-1202). This does not constitute a prevention, obstruction, impediment or hindrance of public or legal justice in light of the relevant caselaw.

### C.    Plaintiffs Cannot Satisfy the Elements of an Abuse of Process Claim

Plaintiffsø oppositions provide a further basis for dismissal of their abuse of process claim. (Opp. to Himan p. 43). The elements of an abuse of process claim specifically require that the wrongful act occur after valid process has been issued at defendantøs behest. *See, e.g.*, *Ellis v. Wellons*, 224 N.C. 269, 271, 29 S.E. 2d 884, 885 (1944) (õ[t]he distinctive nature of an action for abuse of process is the improper use of process after it has been issued, and not for maliciously causing it to issueö).

Plaintiffs allege that Sgt. Gottlieb and Inv. Himan participated in the request for a subpoena to obscure the fact that they already had the keycard information. (Opp. to

Himan p. 43). Even if true, their claim is that the subpoena was improperly sought— not that it was improperly used it after it had been issued.

**D.    Plaintiffs' Intentional Infliction of Emotional Distress Claim Must be Dismissed**

In their initial briefs Sgt. Gottlieb and Inv. Himan cite a number of cases to delineate the limits of what constitutes "outrageous" conduct and how Plaintiffs' allegations fall short. Plaintiffs respond by asserting that the conduct *really was* outrageous, pointing to factual differences between the cited cases and their own characterization of the facts. This is insufficient.

Whether allegations are sufficiently outrageous is a question of law. *Capouch v. Cook Grp., Inc.*, Civil No. 3:04CV421-H, 2006 U.S. Dist. LEXIS 36984, at *32 (W.D.N.C. June 5, 2006). An intentional infliction of emotional distress claim requires more than a horrible situation and an assertion that defendant was responsible. (Opp. to Himan p. 44). Plaintiffs must also allege that this conduct is intended to cause, and did cause, severe and disabling emotional distress.[9] *Dickens v. Puryear*, 302 N.C. 437, 452-53, 276 S.E.2d 325, 335 (1981). Even if Plaintiffs' allegations of massive conspiracy had some factual basis, Plaintiffs have not alleged that this was done to cause them emotional distress and that this distress was sufficiently severe and disabling. *See Id.*

---

[9] An IIED claim may also exist where a defendant's actions indicate a "reckless indifference" to the likelihood that they will cause "severe emotional distress." *Dickens*, 302 N.C. at 452, 276 S.E.2d at 335.

While no comprehensive definition of "extreme and outrageous" exists in the caselaw, the alleged acts must be directed at the plaintiff, such as physical abuse, sexual harassment, threats, obscene gestures or cursing. Plaintiffs do not allege that they suffered any specific physical injuries or that Sgt. Gottlieb and Inv. Himan intentionally took actions against them with the knowledge that they might suffer some physical injury. *See, e.g.*, *Watson v. Dixon*, 130 N.C. App. 47, 53, 502 S.E.2d 15, 20 (1998), *aff'd*, 352 N.C. 343, 532 S.E.2d 175 (2000) (defendant frightened and humiliated plaintiff with cruel practical jokes, made obscene comments and physically threatened her).

Plaintiffs cite *West v. King's Dept. Store*, *Inc.* to bolster their claim. 321 N.C. 698, 705, 365 S.E.2d 621, 625 (1988). It does not. *West* involved a defendant who was aware of the actual physical harm he was likely to cause, and did cause, to the elderly plaintiffs. *West*, 321 N.C. at 705, 365 S.E.2d at 625. There was evidence of physical injury in *West* not found here. *See id.* at 705 ("Both plaintiffs required medical treatment after the incident and Mrs. West's previous condition was exacerbated"). "[N][either physical injury nor foreseeability of injury is required for intentional infliction of emotional distress . . . [however] both of these factors go to the outrageousness of the [alleged] conduct." *Id*.

### E. Plaintiffs' Aiding and Abetting Claim Fails as a Matter of Law

Despite Plaintiffs' numerous assertions to the contrary, Duke does not have a fiduciary relationship to its students. *Davidson v. University of North Carolina*, 142 N.C.

App. 544, 543 S.E.2d 920, 925 (2001). Since there is no underlying tort or fraud, Sgt.

Gottlieb and Inv. Himan cannot be held liable for aiding and abetting.

## F. Plaintiffs' Negligence and Negligent Infliction of Emotional Distress are Insufficient as a Matter of Law

Plaintiffs' official capacity[10] negligence and negligent infliction of emotional

distress claims against Sgt. Gottlieb and Inv. Himan are barred by the fact that those acts

are specifically alleged to be intentional. Negligence claims based on intentional acts fail

as a matter of law. *Barbier v. Durham County Bd. Of Educ.*, 225 F. Supp. 2d 617, 631

(M.D.N.C. 2002); *see also Shaw v. Stroud*, 13 F.3d 791, 803 (4th Cir. 1994) ("[a]

negligent infliction of emotional distress claim, by its very definition, necessarily alleges

only negligence").

Plaintiffs contend that Sgt. Gottlieb and Inv. Himan owed them a duty as members

of the general public.[11] (Opp. to Himan pp. 47-48). The relevant case law states

otherwise. *See, e.g.*, *Myers v. McGrady*, 360 N.C. 460, 465-66, 628 S.E.2d 761, 766

(2006) ("The rule provides that when a governmental entity owes a duty to the general

public . . . individual plaintiffs may not enforce the duty in tort"). Plaintiffs have failed to

---

[10] Plaintiffs admit that their individual capacity claims against Sgt. Gottlieb and Inv. Himan for negligence and negligent infliction of emotional distress (the Twenty-Second and Twenty-Fifth Causes of Action) are barred by the public official immunity doctrine. (Opp. to Gottlieb p. 46, n. 13).
[11] Plaintiffs also allege negligence in public statements made by Sgt. Gottlieb and Inv. Himan but fail to identify what these supposed statements were. (AC ¶¶ 1262-63).

allege that Sgt. Gottlieb or Inv. Himan made overt promises of protection or owed a
õspecial dutyö. *Little v. Atkinson*, 136 N.C. App. 430, 432-33, 524 S.E.2d at 380 (2000).

## CONCLUSION

For the foregoing reasons, Defendants Mark Gottlieb and Benjamin Himan respectfully request the Court to dismiss all claims asserted against them in the Amended Complaint (Plaintiffs First, Second, Third, Fourth, Fifth, Sixth, Seventh, Ninth, Tenth, Eleventh, Sixteenth, Seventeenth, Eighteenth Nineteenth, Twentieth, Twenty-Third, Twenty-Fifth, and Twenty-Seventh Causes of Action) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This the 26th day of November, 2008.

**POYNER & SPRUILL LLP**

By:  /s/Edwin M. Speas, Jr.
      Edwin M. Speas, Jr.
      North Carolina Bar #4112
      Eric P. Stevens
      North Carolina Bar # 17609
      P.O. Box 10096
      Raleigh, N.C. 27605-0096
      Tel.   (919) 783-6400
      Fax   (919) 783-1075
      espeas@poynerspruill.com
*Attorneys for Defendant Mark Gottlieb*

**KENNON, CRAVER, BELO, CRAIG & MCKEE, PLLC**

By: /s/ Joel M. Craig
      North Carolina Bar # 9179
      Henry W. Sappenfield
      North Carolina Bar #37419
      4011 University Drive
      P.O. Box 51579
      Durham, NC 27717-1579
      Tel.   (919) 490-0500
      Fax   (919) 490-0873
      jcraig@kennoncraver.com
*Attorneys for Defendant Benjamin Himan*

RALEIGH/573488v2

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that I electronically filed the foregoing Joint Reply in Support of the Motions to Dismiss Filed by Defendants Mark Gottlieb and Investigator Himan with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Robert C. Ekstrand
Ekstrand & Ekstrand, LLP
811 Ninth St., Ste. 260
Durham, NC 27705
*Attorney for Plaintiffs Breck Archer, Matthew Wilson and Ryan McFadyen*

Reginald B. Gillespie, Jr.
Faison & Gillespie
P.O. Box 51729
Durham, NC 27717-1729
*Attorneys for Defendant City of Durham, North Carolina and Edward Sarvis*

James B. Maxwell
Maxwell, Freeman & Bowman, P.A.
P.O. Box 52396
Durham, NC 27717-2396
*Attorney for Defendants David W. Addison, James T. Soukup, Kammie Michael and Richard D. Clayton*

Edwin M. Speas, Jr.
Eric P. Stevens
Poyner & Spruill LLP
P.O. Box 1801
Raleigh, NC 27602-1801
*Attorneys for Defendant Mark Gottlieb*

Patricia P. Kerner
D. Martin Warf
Hannah G. Styron
Troutman Sanders LLP
434 Fayetteville Street, Suite 1900
Raleigh, NC 27601
*Attorneys for Defendants Patrick Baker, Steven Chalmers, Ronald Hodge, Lee Russ, Stephen Mihaich, Beverly Council, Jeff Lamb, Michael Ripberger and Laird Evans*

Dan J. McLamb
Shirley M. Pruitt
T. Carlton Younger, III
Yates, McLamb & Weyher, L.L.P.
P.O. Box 2889
Raleigh, NC 27602
*Attorneys for Defendants Duke University Health Systems, Inc., Private Diagnostic Clinic, PLLC, Julie Manly, M.D., Theresa Arico, R.N. and Tara Levicy, R.N.*

J. Donald Cowan, Jr.
Dixie T. Wells
Ellis & Winters LLP
100 N. Greene Street, Suite 102
Greensboro, NC 27401

William F. Lee
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109

Jamie Gorelick
Jennifer M. O¢Connor
Paul R.Q. Wolfson
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
*Attorneys for Defendants Duke University, Duke University Police Department,
Aaron Graves, Robert Dean, Leila Humphries, Phyllis Cooper, William F.
Garber, II, James Schwab, Joseph Fleming, Jeffrey O. Best, Gary N. Smith, Greg
Stotsenberg, Robert K. Steel, Richard H. Brodhead, Ph.D., Peter Lange, Ph.D.,
Tallman Trask, III, Ph.D., John Burness, Larry Moneta, Ed.D., Victor J. Dzau,
M.D., Allison Halton, Kemel Dawkins, Suzanne Wasiolek, Stephen Bryan and
Matthew Drummond*

Robert J. King, III
Kearns Davis
Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P.
P.O. Box 26000
Greensboro, NC 27420
*Attorneys for Defendants DNA Security and Richard Clark*

The undersigned further certifies that the foregoing document was served by first-class mail, postage prepaid to the following non CM/ECF participant:

Linwood Wilson
Bahama, NC
*Pro Se*

This the 26th day of November, 2008.

KENNON, CRAVER, BELO,
CRAIG & MCKEE, PLLC

By:  */s/ Joel M. Craig*
        North Carolina State Bar No. 9179
        Attorneys for Defendant Benjamin Himan
        4011 University Drive, Suite 300
        P.O. Box 51579
        Durham, NC 27717-1579
        (919) 490-0500
        E-mail: jcraig@kennoncraver.com