# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### CIVIL ACTION NO. 1:07-CV-00953

| | |
|---|---|
| **RYAN MCFADYEN**, *et al.*,      ) | |
| ) | |
| **Plaintiffs,**    ) | **REPLY BRIEF IN SUPPORT OF** |
| ) | **DEFENDANT CITY OF DURHAM,** |
| **v.**    ) | **NORTH CAROLINA'S MOTION** |
| ) | **TO DISMISS SECOND AMENDED** |
| **DUKE UNIVERSITY**, *et al.*,    ) | **COMPLAINT** |
| ) | |
| **Defendants.**    ) | |

**FAISON & GILLESPIE**

By: /s/ Reginald B. Gillespie, Jr.
    Reginald B. Gillespie, Jr.
    North Carolina State Bar No. 10895
    5517 Chapel Hill Boulevard, Suite 2000
    Post Office Box 51729
    Durham, North Carolina  27717-1729
    Telephone:  (919) 489-9001
    Fax: (919) 489-5774
    E-Mail: rgillespie@faison-gillespie.com

**STEPTOE & JOHNSON LLP**

By: /s/ Roger E. Warin
    Roger E. Warin*
    Michael A. Vatis*
    Matthew J. Herrington*
    John P. Nolan*
    Steptoe & Johnson LLP
    1330 Connecticut Avenue, NW
    Washington, DC  20036
    Telephone: (202) 429-3000
    Fax: (202) 429-3902
    E-Mail: rwarin@steptoe.com
    *(Motion for Special Appearance to be
      filed)

Attorneys for Defendant City of Durham, North Carolina

**November 26, 2008**

Although a plaintiff is not required to plead particulars, "'if a plaintiff [does so] and they show that he has no claim, then he is out of luck.'" *Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 192 (4th Cir. 1998) (citation omitted). Plaintiffs' verbose Second Amended Complaint has precisely that effect: its 427 pages' worth of "particulars" only serve to confirm the lack of any cognizable claim against the City of Durham.

## I.  THE NTID WAS REASONABLE (CLAIM 1)

Plaintiffs concede that the affidavit supporting the nontestimonial identification order ("NTID"), as written, was sufficient to establish both probable cause that a felony occurred and reasonable grounds to believe that Plaintiffs and their teammates were involved. *See* SAC ¶ 910 (affidavit "facially sufficient"). Their only argument is that the probable cause and reasonable suspicion were undercut by the affidavit's alleged fabrications and omissions. Opp. 9-17. In support, Plaintiffs offer an eight-page regurgitation of allegations made throughout their Complaint. *See* Opp. 9-17. This argument fails for several reasons. First, aside from a handful of exceptions, the Complaint does not specify which of these alleged facts were fabricated or omitted from the affidavit. *See Wilkinson v. Hallsten*, No. 5:06CV2, 2006 WL 2224293, at *5 (W.D.N.C. Aug. 2, 2006) (plaintiff's complaint must "specifically address what information within the affidavit was fraudulent").[1] Nor does it sufficiently allege that

---

[1] The Complaint specifically alleges only one omission, *see* SAC ¶ 429 (presence of nail polish accessories purposefully omitted), and four fabrications, *see* SAC ¶¶ 418-39 (including use of aliases, the "broomstick exchange," and more fingernail evidence). None of these is material. *See* pages 3-5, *infra*; City Br. 10-11.

particular fabrications or omissions were made with the intention of misleading the judge, or with reckless disregard for whether the affidavit would be misleading.  *See United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990).  Such an allegation of deliberateness is particularly crucial when a claim rests on alleged omissions because such claims "potentially open[] officers to endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit."  *Id*.  Moreover, it is axiomatic that not every conceivably exculpatory piece of evidence must be included in the warrant.  Such a requirement

> would place an extraordinary burden on law enforcement officers, . . . [requiring inclusion of] every hunch and detail of an investigation in the futile attempt to prove the negative proposition that no potentially exculpatory evidence had been excluded. . . .  Such consequences would . . . discourage reliance on warrants, a result the Supreme Court has stated should be avoided in shaping Fourth Amendment doctrine.

*Id*. at 303.[2]

Second, many of the facts allegedly omitted from the affidavit were not known by police at the time of the NTID, even according to Plaintiffs' own pleadings.  These omissions therefore could not have been deliberate or reckless.  *See United States v. Castro*, 273 Fed. App'x 287, 289 (4th Cir. 2008) (per curiam).  For example, Plaintiffs

---

[2] Even if, despite the specificity required under *Wilkinson* and *Colkley*, Plaintiffs could rely on an unstated "inference" of intent to mislead the judge, their allegations do not support that inference.  For example, the omission of Kim Pittman's statement that Mangum's allegations were "a crock,"  Opp. 12, is explained by Plaintiffs' own allegations:  Pittman had already—repeatedly—lied to police. *See, e.g*., SAC ¶¶ 102, 218, 223 (Pittman made "phony 911 call"); SAC ¶¶ 231, 272 (Pittman lied about even working with Mangum at all).

argue that investigators omitted the fact that Angel Altmon, a Kroger security guard, said the words, "Ain't No Way" when asked whether, in her estimation, Mangum had been raped earlier that night. Opp. 10. But Altmon did not make this statement until April 3, 2006, two weeks *after* the NTID affidavit was written. SAC ¶¶ 239, 242. Jason Bissey's observations were likewise unavailable to investigators at the time of the NTID. SAC ¶ 390. Similarly, though Plaintiffs decry the omission of the details of Mangum's medical examination, Opp. 13-15, the Complaint never alleges that investigators possessed these details at the time of the NTID. *See* City Br. 9-10.

Third, the remainder of the alleged omissions or fabrications would not have altered Judge Stephens' decision to enter the NTID. *See Colkley*, 899 F.2d at 300 ("the false information must be essential to the probable cause determination"). For instance, Plaintiffs argue that Mangum's statements were not always consistent. Opp. 10, 16. But inconsistent statements that occur "at a time when [an apparent assault victim] was still experiencing the shock and trauma of the assault" would not have altered the judge's decision, *Torchinsky v. Siwinski*, 942 F.2d 257, 263 (4th Cir. 1991), particularly where the medical evidence corroborated the claims. *See* City Br. 8-12. Moreover, the fact that Mangum appeared to have difficulty identifying her attackers in the photo arrays, Opp. 16, was not material to the probable cause determination. *See Colkley*, 899 F.2d at 302 (fact that six eyewitnesses failed to identify suspect in photo spread was not material).[3]

---

[3] Noteworthy in this regard is *Lallemand v. University of Rhode Island*, 9 F.3d 214 (1st Cir. 1993). There, a woman claimed to have been raped at a college frat party by someone named "Dan," who she said was six foot tall, had feathered blond hair, and lived

Indeed, the NTID was issued precisely in order to identify the assailants. Thus, Mangum's difficulty in identifying them could not have altered the judge's decision.[4]

The rest of Plaintiffs' argument consists of a hodgepodge of allegations that are, on their face, clearly not material.[5] With Mangum repeatedly claiming to have been raped at the party, and with medical and other evidence corroborating her story, none of these alleged fabrications or omissions would have altered the magistrate's decision.

---

her dormitory. *Id.* at 214-15. Police showed her photographs of all 21 fraternity members, and she positively identified one as her attacker. The suspect she identified was named David, was 6'7", did not have feathered blonde hair, and did not live in the woman's dormitory. *Id.* at 215 n.1. Officers arrested the suspect on the basis of her identification, but the charges were later dropped. *Id.* at 215. The suspect sued the university and investigators under Section 1983, alleging that they did not have probable cause to arrest him in light of the victim's inconsistent statements. He also alleged that investigators had purposefully omitted that the victim was drunk and that evidence existed implicating another student. The First Circuit found that even if the affidavit had spelled out each of these omissions, it would still have been supported by probable cause. *See id.* at 216. *See also Tangwall v. Stuckey*, 135 F.3d 510, 517 n.11 (7th Cir. 1998) ("[a] sexual assault is without question a severe trauma" and victim's descriptions of the attack do not "have the benefit of calm and considered reflection").

[4] Similarly, Plaintiffs complain that investigators failed to mention Mangum's allegedly "bizarre" behavior on the night of the party. *See, e.g.*, Opp. 10. But describing that behavior would, if anything, have supported the inference that Mangum had suffered trauma. *See, e.g.*, *Albert v. Sheets*, No. 2:07-CV-929, 2008 WL 4858254, at *14 (S.D. Ohio Nov. 10, 2008) (citation omitted) ("Rape often produces a psychological trauma to the victim which may leave her in an excited emotional state for hours after the attack.").

[5] These include, for example, allegations that: the original police response was coded "10-56" ("intoxicated pedestrian") (Opp. 10); teammate Dan Flanagan used an alias on the night of the party but never called himself "Adam" (Opp. 15); and Mangum "*was dropped off*" at the residence (as opposed to the affidavit's phrasing, "arrived at the residence"), Opp. 12 (italics in original). The City incorporates by reference the more detailed analysis of Plaintiffs' NTID arguments contained in the Joint Reply in Support of Motions to Dismiss of Defendants Gottlieb and Himan, Section I.A.

## II.	INVESTIGATORS HAD PROBABLE CAUSE TO SEARCH MCFADYEN'S ROOM AND CAR (CLAIM 2)

Plaintiffs' assertion that there was no probable cause to search McFadyen's dorm room and car runs into an insuperable obstacle:  the Complaint's acknowledgment that "[i]t was plainly obvious that the facts alleged in the application for the NTID Order were sufficient to obtain Judge Stephens' authorization to search Ryan's dorm room." SAC ¶ 596.  Since all of the facts in the NTID application were also alleged in the affidavit in support of the search warrant for McFadyen's room and car, Plaintiffs have conceded that there was probable cause to support that search warrant *even without McFadyen's email*.  In light of that concession, Plaintiffs' arguments that McFadyen's email did not support probable cause are irrelevant.

In any event, those arguments fail on their own terms.  Plaintiffs argue that the email could not support probable cause because it was provided to police by an anonymous source.  Opp. 17.  But the email itself contained sufficient indicia of reliability.  *See* City Br. 13.  In any event, the search warrant was based not merely on an anonymous tip, but on Mangum's claims that she had been raped at the party, the medical evidence backing her claims, and the other corroborating evidence that Plaintiffs themselves assert was sufficient to authorize the search warrant.  Police may consider evidence from anonymous sources when it is corroborated.[6]

---

[6] *See Florida v. J.L.*, 529 U.S. 266, 269-70 (2000); *United States v. Daugherty*, 215 Fed. App'x 314, 316 (4th Cir. 2007) (per curiam).

Plaintiffs also argue that McFadyen's email was "stale" because the affidavit was submitted two weeks after the events being investigated took place and the email was sent. Opp. 19-20. But the staleness inquiry is not resolved "'by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit.'" *United States v. McCall*, 740 F.2d 1331, 1336 (4th Cir. 1984) (citation omitted). Rather, the court must look at "all the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized." *Id.* Here, on top of the evidence police had that a rape occurred at the lacrosse party, police now had an email from a person who attended the party and was discussing future acts of violence against strippers. *See* City Br. 13 & Ex. 3. Accordingly, police had ample reason to believe that additional evidence (such as more emails regarding the alleged rape, photographs, or other physical evidence) would be found in the areas searched.[7]

Plaintiffs' related argument (Opp. 19) that there was no "nexus" between the place to be searched (McFadyen's dorm room) and the crimes alleged is similarly off-base. Nothing in the Fourth Amendment limits a search warrant to the immediate vicinity of an alleged crime. Courts simply require that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213,

---

[7] *See United States v. Washington*, 139 Fed. App'x 479, 482 (4th Cir. 2005) (per curiam) ("[The police investigator] reasonably used the relatively short time span of three weeks between the incident and obtaining the warrant to conduct her investigation. The handgun . . . was likely to remain in [the suspect's] car or house.").

238 (1983). After receiving McFadyen's email, police had reason to believe that McFadyen possessed evidence about the crime. Accordingly, they searched for the evidence in areas where a college student would most naturally keep it—his dorm room and car. *United States v. Washington*, 139 F. App'x 479, 482 (4th Cir. 2005) (per curiam) (finding probable cause for search for gun in both a house and a car, because "those are places where one would normally [be kept]"); *United States v. Williams*, 544 F.3d 683, 688 (6th Cir. 2008) ("[A]n issuing judge may infer that a criminal suspect keeps the 'instrumentalities and fruits' of his crime in his residence.")[8]

## III. PLAINTIFFS' FEDERAL AND STATE LAW "ABUSE OF PROCESS" CLAIMS ARE DEFICIENT (CLAIMS 3 & 19)

Plaintiffs appear to recognize that their "federal abuse of process" claim sounds most appropriately in the Fourth Amendment. *See* Opp. 22. But this dooms their claim for the same reasons that the Supreme Court rejected a similar "malicious prosecution" claim in *Albright v. Oliver*, 510 U.S. 266 (1994). *See Santiago v. Fenton*, 891 F.2d 373, 388 (1st Cir. 1989) ("[T]he Supreme Court has in effect held that abuse of process—as a claim separate from a claim that there was no probable cause to make the arrest or institute the prosecution—is not cognizable as a civil rights violation under § 1983."). Even if a federal "abuse of process" claim were cognizable as a general matter, it (and the

---

[8] Plaintiffs also argue that Gottlieb "knew" no evidence of a crime would be found in McFadyen's room, citing actions that Gottlieb did *not* take, such as searching a different student's room. Opp. 20. But investigative paths not taken are irrelevant to whether probable cause existed for the search that *was* undertaken. So are the alleged subjective motivations of the police. *See Whren v. United States*, 517 U.S. 806 (1996).

parallel state law claim) would fail here because Plaintiffs' allegation of a "malicious purpose" is insufficient to make out the second element of the abuse of process tort— improper subsequent use of the process. *See* City Br. 17-18. The type of improper use required to state a claim—such as using the process to extract a bribe—is wholly absent from the Complaint. *Stanback v. Stanback*, 254 S.E.2d 611, 624 (N.C. 1979) (claim requires an "act" "whereby [the defendant] sought to use the existence of the proceeding to gain advantage . . . in respect to *some collateral matter*") (emphasis added).

## IV. NORTH CAROLINA GENERAL STATUTE § 15A-282 DOES NOT CREATE A COGNIZABLE PROPERTY INTEREST (CLAIM 4)

Plaintiffs allege that City officials deprived them of "property" without due process when those officials failed to provide them with the results of testing done pursuant to the NTID. But the "right" on which Plaintiffs' claim relies has never been recognized except in the context of ensuring a criminal defendant's fair trial. Moreover, the Supreme Court has made clear that a deprivation of a *process*—such as provision of a report—as opposed to a thing of monetary value, cannot sustain a due process claim.[9]

Plaintiffs point out the obvious fact that this is not a *Brady* case, Opp. to DNASI Defs. 12; *Brady v. Maryland*, 373 U.S. 83 (1963), but that is exactly the City's point: Plaintiffs here are asking the Court to recognize a "property right" that would result in the expansion of a constitutional right already carefully delineated under *Brady* and its

---

[9] *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 757 (2005); *see also Pusey v. City of Youngstown*, 11 F.3d 652, 656 (6th Cir. 1993) (Ohio statute requiring victim/witness notification of date, time, and place of trial did not create "'substantive interest to which the individual has a legitimate claim of entitlement'") (citation omitted).

progeny. *Taylor v. Waters*, 81 F.3d 429, 436 & n.5 (4th Cir. 1996) (failure "to disclose exculpatory evidence does not allege a deprivation . . . under the Due Process Clause," because, unlike in *Brady*, suspect was never subject to trial). As the Supreme Court has made clear, courts must view with great skepticism claims of "property rights" made in the context of criminal investigations. *See Castle Rock*, 545 U.S. at 766.[10]

## V. PLAINTIFFS' ALLEGATIONS BASED ON "FALSE PUBLIC STATEMENTS" FAIL THE "STIGMA PLUS" TEST (CLAIM 5)

Plaintiffs do not dispute that the independent deprivations they allege in the Complaint—such as the alleged loss of "educational status" or the right to compete in intercollegiate athletics, SAC ¶ 957(C), (D)—cannot support their "stigma plus" claim. *See* City Br. 21-23. Instead, they now retreat to arguing that the constitutional deprivations alleged in their other causes of action support this claim. Opp. to Soukup 17. But neither the Supreme Court nor the Fourth Circuit has ever recognized such claims in the context of a criminal investigation, and for good reason. If Plaintiffs' theory were to prevail, "a person arrested by . . . officers who announce that they believe such person to be responsible for a particular crime in order to calm the fears of an aroused populace, presumably [could sue under § 1983]." *Paul v. Davis*, 424 U.S. 693,

---

[10] Plaintiffs make the remarkable assertion that, *because* they were never tried, they enjoy *greater* rights to recovery under the Constitution. *See* Opp. to DNASI Defs. 13 n.3 (fact that Plaintiffs were never charged, arrested, or accused "operates to open up to the Plaintiffs many § 1983 causes of action"). But *Castle Rock* itself involved a plaintiff who, like Plaintiffs here, was never charged or arrested. 545 U.S. at 753-54. So *Castle Rock*'s explicit warning against minting new property rights arising out of state law enforcement statutes applies with at least equal force here.

698-99 (1976).  "It is hard to perceive any logical stopping place to such a line of reasoning."  *Id.*  In any event, those other "deprivations" cited by Plaintiffs (such as violations of their Fourth Amendment and Due Process rights) were not deprivations at all, for the reasons explained in the City's Opening Brief and elsewhere in this brief.

## VI.  PLAINTIFFS' ALLEGATIONS DO NOT MEET THE STRINGENT "SHOCKS THE CONSCIENCE" TEST (CLAIMS 6 & 7)

Plaintiffs offer no response to the City's argument that *Albright v. Oliver*, 510 U.S. 266 (1994), clearly bars their substantive due process claims, which are based on the alleged manufacture of inculpatory evidence and concealment of exculpatory evidence during the investigation.  Ignoring *Albright* and similar cases, Plaintiffs argue (Opp. 24) that the conduct of police "shocked the conscience" and therefore gives rise to a substantive due process claim, citing *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1997).   But *County of Sacramento* actually reiterated the *Albright* rule that claims like Plaintiffs' must be judged under the Fourth Amendment, not the Due Process Clause. *See* 523 U.S. 833, 842 (1997) ("'Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" (quoting *Albright*, 510 U.S. at 273)).

Even if Plaintiffs' claims were not limited to deprivations of liberty that, under *Albright*, must be assessed solely under the Fourth Amendment, those claims would still fail because Plaintiffs have failed to allege a deprivation of any independently cognizable

liberty or property interest.[11]  *See, e.g.*, *Pagan v. Calderon*, 448 F.3d 16, 32 (1st Cir.

2006) ("Where, as here, a plaintiff's substantive due process claim challenges the specific

acts of a state officer, the plaintiff must show *both* that the acts were so egregious as to

shock the conscience *and* that they deprived him of a protected interest in life, liberty, or

property.") (citation omitted); *Lambert v. Williams*, 223 F.3d 257, 260-61 (4th Cir. 2000)

(claims of concealing exculpatory evidence, fabricating evidence, and making false

statements failed to state a due process claim).

Finally, regardless of how much time City defendants allegedly had to "deliberate"

over the investigation (*see* Opp. 25), the conduct alleged here simply does not rise to the

level of conscience-shocking behavior, which courts have generally found only in cases

involving police brutality, torture, or other wanton physical harm.[12]  Since Plaintiffs were

not even arrested or charged, let alone falsely convicted, their due process claims fall far

short of the shocks-the-conscience mark.

## VII.  PLAINTIFFS' RETALIATION CLAIM FAILS FOR MULTIPLE REASONS (CLAIM 9)

Plaintiffs now make clear that their retaliation claim is brought solely under the

First Amendment.  Opp. to Duke Defs. 18 & n.18.  But Plaintiffs fail to rebut the City's

---

[11] *See* Sections IV (failure to deliver DNA tests is not a cognizable property deprivation) & V (reputational injury is not a cognizable property deprivation).

[12] *See, e.g., Rochin v. California*, 342 U.S. 165 (1952) (forced stomach pumping); (*Orem v. Rephann*, 523 F.3d 442, 447 (4th Cir. 2008) ("sadistic" use of taser gun on defendant); *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553 (1st Cir. 1989) (plain clothes police officers conducting "preventive rounds" in neighborhood began shooting without warning at car driving away, hitting driver and rendering him a paraplegic).

explanations for why a First Amendment claim fails here.  *See* City Br. 26-29.  First, while the First Amendment surely protects a right not to speak, it does not provide the basis for a retaliation claim whenever police take steps to gather evidence in a criminal investigation following a suspect's refusal to answer questions or provide evidence voluntarily.  If it did, any suspect that refused to cooperate might bring a retaliation claim if police subsequently took steps to obtain evidence using other investigative methods.  This would wreak havoc on criminal investigations.  Not surprisingly, Plaintiffs cite no cases in which a court has recognized a First Amendment claim in any remotely similar context.  To the contrary, courts have expressly rejected such a theory.[13]

Second, Plaintiffs' own allegations make it impossible for them to show the necessary causal link between their alleged refusal to speak and the allegedly retaliatory investigation.  Plaintiffs concede that the investigation was already well underway by the time of the NTID, Opp. to Duke Defs. 24, and do not dispute that investigators had already focused on obtaining DNA evidence using any legal means available, even before team members cancelled the meeting with police.  Moreover, the Complaint is built on

---

[13] *See, e.g.*, *Colson v. Grohman*, 174 F.3d 498, 512 (5th Cir. 1999) ("[Plaintiff] alleged only that she was the victim of criticism, [a criminal] investigation . . . and false accusations: all harms that, while they may chill speech, are not actionable under our First Amendment retaliation jurisprudence."), *cited with approval in Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 687 (4th Cir. 2000); *Albright v. Rodriguez*, 51 F.3d 1531, 1539 (10th Cir. 1995) (finding no "case recognizing a First Amendment right to refuse to identify one's self to a police officer during a lawful investigative stop"); *Grimm v. City of Uniontown*, No. 06-1050, 2008 WL 282344, at *26 (W.D. Pa. Jan. 31, 2008) (rejecting "novel theory" of retaliation claim based on fact that plaintiff "refused to answer a question and was not released thereafter").

the theory that the entire investigation stemmed from a desire by Durham police and Duke to "target" Duke students for discriminatory enforcement of the law – a motivation that had nothing to do with the refusal by team members to talk with police.

Finally, Plaintiffs fail to show how the investigative actions here were "likely [to] deter 'a person of ordinary firmness'" from refusing to speak to police. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005) (citation omitted). Indeed, if the actions *were* likely to cause such persons to give in and cooperate with the police, presumably Plaintiffs would have done so, but they did not. *See id.* (a plaintiff's actual response is relevant to inquiry). Even more tellingly, *not one of their teammates* is alleged to have done so. SAC ¶¶ 407, 411-12. This is hardly surprising: a person of ordinary firmness, having already decided *not* to talk to police in the absence of counsel, would not *then change his mind* and talk to police voluntarily after the police obtained an NTID and a search warrant and (as Plaintiffs allege) fabricated and concealed evidence. Plaintiffs' allegations thus fail to state a First Amendment claim.[14]

## VIII. PLAINTIFFS' "PRIVILEGES AND IMMUNITIES" CLAIMS FAIL BECAUSE THEY DO NOT ALLEGE THAT THEY WERE TREATED DIFFERENTLY THAN NORTH CAROLINIANS (CLAIM 10)

Plaintiffs describe this claim's "question presented" as follows:

Whether Plaintiffs adequately state a claim under the Privileges and Immunities Clauses of Article IV and the Fourteenth Amendment, when

---

[14] Plaintiffs claim also fails because they cannot show a lack of probable cause for the alleged retaliatory investigative actions. *See Hartman v. Moore*, 547 U.S. 250, 252 (2006) (claim against investigators "for inducing prosecution in retaliation for speech" is cognizable only if the "want of probable cause [is] alleged and proven").

> Plaintiffs *do* allege that officers treated the Plaintiff who is a North Carolina citizen differently from those who are not?

Opp. 5 (emphasis in original).  Yet, Plaintiffs *nowhere* allege that Defendants treated Matt Wilson (the North Carolina resident) differently from the other Plaintiffs.  The crux of the Complaint is that they were all equally subject to maltreatment—not as "temporary residents"—but as Duke students.  SAC ¶¶ 108-09, 113-15, 173, 710.  Plaintiffs allege that Defendants (including Duke administrators) *perceived* all Duke students to be from out of state, even those from North Carolina.  Opp. to Supervisory Defs. 15.  But Plaintiffs identify no authority supporting a cause of action based on such perceptions.  *Actual* out-of-state residency, not the *perception* thereof, is the touchstone in this area.[15]

## IX. PLAINTIFFS' CIVIL RIGHTS CLAIMS FAIL BECAUSE THEY DO NOT ALLEGE THAT THEY BELONG TO A PROTECTED CLASS OR THAT DEFENDANTS ACTED OUT OF RACIAL ANIMUS (CLAIMS 16 & 17)

Plaintiffs' claims under Sections 1985 and 1986—premised on racial discrimination—fail for several reasons.  First, the Complaint does not allege that Plaintiffs are members of any particular class, let alone one "'in unprotected circumstances similar to those of the victims of Klan violence.'"  *Buschi v. Kirven*, 775 F.2d 1240, 1258 (4th Cir. 1985) (citation omitted).  In their Brief (Opp. 40), Plaintiffs now identify themselves as "white."  But courts in this Circuit have made clear that

---

[15] *Goldfarb v. Supreme Court of Virginia*, 766 F.2d 859, 864-65 (4th Cir. 1985) ("[T]he Privileges and Immunities Clause provides 'no security for the citizen of the State in which [the privileges] were claimed.'") (citation omitted); *see also United Bldg. & Constr. Trades Council v. Camden*, 465 U.S. 208, 217 (1984) (state residents lack standing to sue their own state under Article IV).

section 1985 does not extend beyond African Americans.[16]  Plaintiffs' assertion to the

contrary is based on *Waller v. Butkovich*, 605 F. Supp. 1137 (M.D.N.C. 1985),[17] but the

expansive view of section 1985 reflected in *Waller* has since been expressly rejected by

the Fourth Circuit.  *See Buschi*, 775 F.2d at 1258 ("[I]t is doubtful that the expansive

view of the statute . . . could be considered of continued precedential reliability."); *see*

*also Harrison v. KVAT Food Mgmt.*, 766 F.2d 155, 161-62 (4th Cir. 1985).[18]

Even if Plaintiffs *were* members of a protected class, their claims still fail because

they have not adequately pled racial animus against them.  The only allegations of racial

animus were made in the alternative—the Defendants had animus and/*or* they took

advantage of animus in the community.  SAC ¶¶ 1159, 1163.  Plaintiffs now purport to

---

[16] *See Cloaninger v. McDevitt*, No. 1:-06CV135, 2006 U.S. Dist. LEXIS 65913, at *18 (W.D.N.C. Sept. 3, 2006) ("As recognized by the controlling law in the Fourth Circuit . . . the only class of persons protected by Section 1985(3) are African-Americans.").  Plaintiffs' alternative suggestion that they were discriminated against because of their real or perceived out-of-state residence is no more helpful to them under Section 1985.  *See, e.g.*, *Korotski v. Goughan*, 597 F. Supp. 1365, 1374 (D. Md. 1994) (rejecting Section 1985(3) claim because "[n]on-resident drivers do not qualify as a historically disadvantaged group in need of special assistance in exercising their rights").

[17] *Phillips v. Mabe*, 367 F. Supp. 2d 861 (M.D.N.C. 2005), *supplemental op.*, 367 F. Supp. 2d 86, 2005 U.S. Dist. LEXIS 6998 (M.D.N.C. 2005), also offers no support to Plaintiffs.  *Phillips* hypothesized that a white plaintiff *might* be able to bring a § 1985(3) claim under circumstances in which the plaintiff possessed "characteristics comparable to a 'discrete and insular minority,'" such as white plaintiffs who were discriminated against on account of their support of blacks.  *Id*. at 874 (citations omitted).  Plaintiffs do not suggest that they were discriminated against because they were supporting blacks.

[18] Plaintiffs argue that *Harrison* merely holds that "victims of purely political conspiracies" cannot bring Section § 1985 claims.  Opp. 40.  In fact, *Harrison*'s broad holding was explicitly informed by the Supreme Court's "noticeable lack of enthusiasm for expanding the coverage of Sec. 1985(3)" beyond African Americans. 766 F.2d at 161.

remove the alternative in their Opposition Brief. Opp. 41. Even if this Court accepts the Plaintiffs' implicit amendment of their Complaint (which it should not), their allegations fail to state a claim under either theory.

With regard to the claim that the Defendants themselves had racial animus, Plaintiffs offer nothing but conclusory allegations.[19] Plaintiffs have sued over forty individuals, the City, Duke University, and DNASI; yet they have alleged absolutely *no* facts suggesting which, if any, of these parties had animus against them because they are white, or any facts from which such an animus could be inferred. *See* City Br. 31-33.[20]

Plaintiffs' alternative theory—that the Defendants "fomented" and "exploited" racial animus on the part of others—cannot support their claim. That theory relies exclusively on cases involving a different statute, 42 U.S.C. § 1982. *See* Opp. 42. But unlike Section 1982, Section 1985(3) undoubtedly requires discriminatory intent on the

---

[19] Plaintiffs invite the Court to sift through a mishmash of allegations on this point in search of an "inference" of racial animus. Opp. 41. But those allegations either describe the "fomenting" of racial animosity that underlies Plaintiffs' alternative theory, *see, e.g.*, SAC ¶¶ 567, 577, or plainly provide no inference of any discrimination at all, racial or otherwise, *see, e.g.*, SAC ¶¶ 568-69 (alleging "spoilation of evidence").

[20] Plaintiffs cite *Green v. Maroules*, 211 Fed. App'x 159 (4th Cir. 2006), apparently to support an (unstated) argument that Plaintiffs need not identify which Defendants acted with racial animus. But *Green* was a *pro se* action, in which pleading requirements are substantially relaxed. *See id*. at 162. Moreover, *Green* involved only six police defendants, who were alleged to have conspired in a racial profiling scheme. *Id*. Here, after 427 pages, Plaintiffs muster not a single factual allegation to justify leveling a *racial* discrimination charge against any of the numerous Defendants. Instead, they focus repeatedly on a *different* type of discrimination—against *Duke students*.

part of the defendant himself.[21]  Accordingly, Plaintiffs' "fomenting" theory, and the

Section 1982 cases on which that theory depends, cannot help them.

## X.     PLAINTIFFS CANNOT IMPOSE LIABILITY ON THE CITY BASED ON THE ALLEGED "ZERO TOLERANCE" POLICY OR THE ACTIONS OF STATE PROSECUTOR MICHAEL NIFONG (CLAIM 12)

Even if Plaintiffs had stated a cognizable constitutional claim against a City

employee, their *Monell* claims against the City fail because their allegations fail to show

that any City policy or custom caused the alleged constitutional violations.

### A.     The "Zero Tolerance" Policy Relating to Underage Drinking and Noise at College Parties Cannot Be the "Moving Force" Behind the Alleged Violations Here (Claim 12(A)(1))

Plaintiffs assert that "the most significant allegations with respect to the City" are

those relating to the so-called "Zero-Tolerance for Duke Students Policy."  Opp. 2, 29-

31.  But as explained in the City's Opening Brief (at 34-36), and as reflected in the chart

below, that policy was not "closely related to the ultimate injury" allegedly caused by the

investigation of Mangum's rape claims, *City of Canton v. Harris*, 489 U.S. 378, 391

(1989), let alone the "moving force" behind it, *Monell*, 436 U.S. at 694.

---

[21] *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) ("[T]here must be . . . discriminatory animus behind the conspirators' action.") (citations omitted).  The Supreme Court has required proof of discriminatory intent under § 1985 in part because that statute implements the Equal Protection Clause.  *See Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 265 (1977).  In contrast, Section 1982, which was enacted as part of the Civil Rights Act of 1866, has been interpreted by some courts as requiring only discriminatory *impact*.  *Clark v. Universal Builders, Inc*., 501 F.2d 324 (7th Cir. 1974).

| Criterion | Alleged Police Conduct Under "Zero Tolerance" Policy | Alleged Police Conduct Against Plaintiffs |
| --- | --- | --- |
| Objective of Defendants | To "dramatically increase[e] enforcement" where violations "were believed to be committed by Duke Students." SAC ¶ 1111(A). | To "railroad the Plaintiffs into convictions" for a crime defendants "knew never happened." SAC ¶ 2. |
| Type of Crime | Applies to misdemeanors only. In particular, uses underage drinking prohibition and City's noise, open container, and public urination ordinances. SAC ¶ 109. | Plaintiffs investigated for felony crimes only; no misdemeanor charges investigated or brought. |
| Officers' Discretion to Charge | Policy suspends officer discretion; directs officers to "criminally charge every Duke student" who violates the ordinance. SAC ¶ 111. | No allegation that officers lacked discretion to charge Plaintiffs. No charges ever brought. |
| Arrest | Officers directed to arrest students who were charged with violating such ordinances. SAC ¶ 111. | No policy directing the arrest of Plaintiffs is alleged. Indeed, Plaintiffs were never arrested. |
| Geographic Area | Applies only off campus. SAC ¶ 108. | Applies both off campus (610 N. Buchanan) and on campus (McFadyen's room). SAC ¶¶ 83, 611. |
| Legal Strategy | Policy intentionally employed "unconstitutionally vague" crimes. SAC ¶ 115. | Plaintiffs do not allege that crime of rape was "unconstitutionally vague." |
| Warrantless Activity | Deliberate decision to raid homes without obtaining warrants and catch fleeing students, who would then be charged with resisting arrest. SAC ¶¶ 117-18, 122. | No warrantless action of any kind taken against Plaintiffs or their teammates. |
| *Miranda* Rights | No *Miranda* rights given to suspects. SAC ¶ 124. | Plaintiffs do not allege that they were interrogated at all, or that their teammates were interrogated without being given *Miranda* rights. |
| Discrimination in Enforcement | Policy related to disproportionate enforcement of crimes that *were admittedly committed*. SAC ¶¶ 108-09, 111, 112, 115. | Case solely relates to an alleged effort to frame innocent persons of a violent felony. |

| Criterion | Alleged Police Conduct Under "Zero Tolerance" Policy | Alleged Police Conduct Against Plaintiffs |
|---|---|---|
| Who Took Action | Durham/Duke "strictly divided cases according to the Police Jurisdiction Allocation Agreement, regardless of the severity of the crime." SAC ¶ 96. | Plaintiffs allege that Duke/Durham did *not* properly allocate responsibilities under agreement. SAC ¶ 82-83. |
| Physical Abuse | Duke students were physically abused during warrantless searches. SAC ¶¶ 144, 162-64. | No such abuse is alleged against Plaintiffs or their teammates. |

The "Zero Tolerance" theory of City liability thus cannot be sustained as a matter of law.

**B. The City Is Not Responsible for the Actions of Michael Nifong (Claim 12(C)(2), 12(C)(4), and 12(C)(5))**

The City has explained that, as a matter of law, Michael Nifong acted solely on behalf of the State of North Carolina, rather than the City. *See* City Br. 36-38. A *Monell* claim therefore cannot be brought against the City based on his actions—whether premised on a "delegation," "ratification," or "lack of supervision" theory. *See id.*; *see also McMillian v. Monroe County*, 520 U.S. 781, 786 (1997). Plaintiffs do not dispute this conclusion—indeed, they do not even engage the argument. Instead, they simply regurgitate the various permutations of *Monell* claims found in their Complaint, Opp. 32-33, and then cite cases for the uncontroversial proposition that, in the normal course, a

plaintiff may proceed under *Monell* on a ratification theory. Opp. 33 n.6.[22] Accordingly, Plaintiffs' *Monell* claims based on the actions of Michael Nifong should be dismissed.[23]

## XI. CLAIMS 11 AND 13 ARE REDUNDANT OF CLAIM 12

As explained in the City's Opening Brief (at 38), Claims 11 and 13 are entirely repetitive of the *Monell* claims outlined in Claim 12. As Plaintiffs have offered no response, the Court should dismiss these claims against the City.

## XII. THE ALLEGATIONS DO NOT SUPPORT AN "OBSTRUCTION OF JUSTICE" TORT (CLAIM 18)

North Carolina courts have never held that an "obstruction of justice" tort claim is available where, as here, a criminal suspect takes issue with the manner in which the investigation against him was conducted. *See* City Br. 39-40. Plaintiffs do not dispute this point, *see* Opp. 42-43, and the cases they cite confirm that the obstruction tort applies only when a person interferes with a citizen's right to bring a civil action.[24] Plaintiffs

---

[22] Plaintiffs' citation of *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), offers them no support. *See* Opp. 33 n.6. As the City has already explained, that decision was based on the particulars of Ohio law; in Ohio, a sheriff or prosecutor *could* establish county policy. 475 U.S. at 484-85. North Carolina law, by contrast, leaves no doubt that District Attorneys operate, at all times, as *state* actors. *See* City Br. 37 & nn.23, 25.

[23] Plaintiffs similarly fail to respond to the City's argument that it cannot be held responsible for the actions of DNASI and its employees, since DNASI acted on behalf of the state, not the City. *See* City Br. 36 n.22. Accordingly, this Court should dismiss all claims against the City based on the actions of DNASI and its employees.

[24] *See Jones v. City of Durham*, 643 S.E.2d 631, 633 (N.C. Ct. App. 2007) (police officer allegedly destroyed evidence in anticipation of a *civil* suit against him); *Jackson v. Blue Dolphin*, 226 F. Supp. 2d 785, 794 (W.D.N.C. 2002) (defendant forced plaintiff to sign false affidavit for *civil* suit); *Henry v. Dean*, 310 S.E.2d 326, 334 (N.C. 1984) (false medical documents created in anticipation of *civil* action).

nevertheless urge this Court to expand dramatically the reach of this tort to allow claims such as theirs. The Court should decline the invitation, since doing so would not only render the malicious prosecution tort superfluous, but would also have an enormous chilling effect on the proper investigation of crimes. *See* City Br. 39-40.[25]

## XIII. PLAINTIFFS' INTENTIONAL INFLICTION CLAIM FAILS BECAUSE THEY HAVE ALLEGED NEITHER EXTREME AND OUTRAGEOUS CONDUCT NOR "SEVERE" EMOTIONAL DISTRESS (CLAIM 20)

The conduct alleged here is, by any measure, akin to a common law malicious prosecution claim (a claim that is, of course, unavailable to Plaintiffs here, since they were never arrested, let alone prosecuted). But a claim of intentional infliction of emotional distress requires far more—conduct "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.'" *Bradley v. Lowe's Cos.*, No. 3:05CV488-MU, 2007 U.S. Dist. LEXIS 69872, at *10 (W.D.N.C. Sept. 20, 2007) (citation omitted). Plaintiffs' allegations fall far short. Not surprisingly, then, Plaintiffs offer no response to all but one of the many North Carolina cases the City cited to demonstrate this point. *See* City Br. 42, n.31 (collecting cases).[26]

---

[25] Indeed, if Plaintiffs' reasoning prevailed, such a claim would be available as well to any crime victim who believed that a criminal case *should have been brought* but was wrongly "prevented" or "impeded" by investigators or prosecutors.

[26] As to the sole case Plaintiffs do address, *Dobson v. Harris*, 521 S.E.2d 710 (N.C. Ct. App. 1999), *rev'd on other grounds*, 530 S.E.2d 829 (N.C. 2000), Plaintiffs suggest that it is distinguishable on the ground that the defendant there had merely "initiated" a child abuse investigation of the plaintiff, whereas here the defendants "continue[d]" an investigation. *See* Opp. 45. But Plaintiffs misstate *Dobson*'s rationale. The court held that even if the plaintiff had fabricated the account she reported to the Department of Social Services, that conduct was not "extreme and outrageous" because it

Second, Plaintiffs fail to allege that they suffered "severe" emotional distress.[27] Plaintiffs argue that it is enough to have alleged that some emotional distress might be "diagnosable" in the future. *See* Opp. 46. But the cases they cite do not support or even address this argument. In any event, the courts have ruled otherwise. *See* City Br. 42-43.

## XIV. PLAINTIFFS HAVE NOT STATED A CLAIM AGAINST THE CITY FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY (CLAIM 23)

Plaintiffs do not dispute that, as a general matter, a university is not a fiduciary of its students. *See* City Br. 43-44. Rather, they allege that a fiduciary duty was created by virtue of Duke's provision of "Duke Card" accounts—the debit accounts through which students could purchase food and other items from university merchants. *See* Opp. to Duke Police Defs. 26-28. But this common university practice is hardly the "special circumstance" required to create a fiduciary duty where none otherwise exists.[28]

Plaintiffs now purport to allege independent claims based on various federal and state banking laws. Even if such claims had been properly pleaded in the Complaint

---

merely "subject[ed] the reported parent to questioning and investigation." *Dobson*, 521 S.E.2d at 715. Even according to Plaintiffs' own allegations, Defendants here did no more than subject Plaintiffs to questioning and investigation, as Plaintiffs were never charged, arrested, or convicted.

[27] Plaintiffs' allegation that the Defendants *intended* to cause "severe emotional distress," SAC ¶ 1217, does not cure the deficiency, since nowhere do they claim that they *actually suffered* severe emotional distress. *See Pruett v. Town of Spindale*, *N.C.*, 162 F. Supp. 2d 442, 444, 447 (W.D.N.C. 2001) (when plaintiffs allege that they suffered "emotional distress" but not "severe emotional distress" claim must be dismissed).

[28] *See Davidson v. Univ. Of N.C.*, 543 S.E.2d 920, 928 (N.C. Ct. App. 2001); *see also Angell v. Kelly*, 336 F. Supp. 2d 540, 551 (M.D.N.C. 2004); *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998).

(which they were not), they would be patently deficient.  In their Opposition Brief,

Plaintiffs cite the North Carolina Financial Privacy Act, N.C. Gen. Stat. §§ 53B-1 to 53B-

10.  But that law applies only to a "financial institution," which is limited to a "banking

corporation, trust company, savings and loan association, credit union, or other entity

*principally* engaged in the business of lending money or receiving or soliciting money on

deposit."  *Id.* § 53B-2(2) (emphasis added).  Duke is none of those things.[29]  As to any

applicable federal law, Plaintiffs do not identify any, *see* Opp. 28, nor could they.[30]  In

any event, an aiding and abetting claim in this context is improper.[31]

---

[29] Plaintiffs refer to an Attorney General Advisory Opinion that suggested that a university debit card system would violate North Carolina law in certain circumstances. *See* Opp. to Duke Police Defs. 29; N.C. Att'y Gen. No. 69 (Oct. 4, 1993), *available at* ncdoj.com (follow links to "legal services," "legal opinions" & ref. no. 69).  But Plaintiffs have alleged no such illegality here.  In any event, that Opinion recognizes that nothing more than normal contract relationships apply with respect to such cards, undermining the notion that "special circumstances" created a fiduciary relationship here. *See id.* (university debit card system at most created a "relationship of bailee/bailor as between the University and the student").

[30] If the Plaintiffs purport to invoke the Federal Right to Financial Privacy Act, 12 U.S.C. §§ 3401-3422, that Act applies only to disclosures made to the federal government.  *See* 12 U.S.C. § 3402; *see also United States v. Zimmerman*, 957 F. Supp. 94, 96 (N.D.W.Va. 1997).  If they mean the Family Educational Records and Privacy Act, 20 U.S.C. § 1232g(b)(1), *et seq*., that statute provides no enforceable cause of action. *Gonzaga Univ. v. Doe*,  536 U.S. 273, 287 (2002).

[31] Plaintiffs concede (Opp. 47) that it is an open question whether "aiding and abetting a breach of fiduciary duty" is a viable claim in *any* context.  Here, where such a claim would have serious implications for law enforcement, *see* City Br. 44, and where the alleged disclosure of financial records falls outside the parameters of the state statute designed to protect against such disclosure, *see* N.C. Gen. Stat. § 53B-2(2), an expansion of the tort to cover aiding and abetting would be particularly unwarranted.

## XV.  PLAINTIFFS' NEGLIGENCE-BASED CLAIMS (CLAIMS 25-28) ARE BARRED BY THE PUBLIC DUTY DOCTRINE

Plaintiffs do not dispute that under the public duty doctrine, a municipality does not owe a duty of care to individual persons.  Nor do they claim that either of the narrow exceptions to that doctrine apply here.  *See* City Br. 45.  Rather, Plaintiffs argue that the doctrine actually applies only to a small subset of cases—those that seek to impose liability for failure to prevent a criminal act.  *See* Opp. 49.  But while the doctrine *originated* in that narrow context, *see Braswell v. Braswell*, 410 S.E.2d 897, 901 (N.C. 1991), it now applies more broadly.  *See, e.g., Stone v. North Carolina Dep't of Labor*, 495 S.E.2d 711, 715 (N.C. 1998) (rejecting plaintiff's argument that seemingly narrow language used in *Braswell* limited scope of doctrine).[32]  Indeed, courts have expressly held that the doctrine bars claims that rest on allegations that a criminal investigation was negligently conducted.  *See Walker v. City of Durham*, No. COA01-1297, 2003 WL 21499222, at *2 (N.C. Ct. App. July 1, 2003) (rejecting argument that police owed rape victim a duty of care which was breached by negligent destruction of evidence, reasoning that to hold otherwise "would make any individual victim of any crime a person to whom . . . criminal investigators would be liable for deviations from proper performance of their duties and would eviscerate the conceptual underpinnings of the public duty doctrine.").

---

[32] Plaintiffs argue that two recent cases have "limited" the public duty doctrine to the narrow context at issue in that case.  Opp. 49.  But those cases either apply the doctrine more broadly, *see Multiple Claimants v. N.C. Dep't of Health & Human Servs.*, 646 S.E.2d 356, 358 (N.C. 2007) (applying doctrine to prison inspections), or do not address the breadth of the doctrine at all,  *see Lumsden v. United States*, 555 F. Supp. 2d 580, 594 (E.D.N.C. 2008).

Police have no more of an individualized duty to crime *suspects* than they do to crime *victims*.[33]  The public duty doctrine therefore bars Plaintiffs negligence claims.[34]

## XVI.  CONCLUSION

For the foregoing reasons, to the extent Plaintiffs' Second Amended Complaint alleges claims against the City, they should be dismissed.

This the 26th day of November, 2008.

FAISON & GILLESPIE

By: /s/ Reginald B. Gillespie, Jr.
    Reginald B. Gillespie, Jr.
    North Carolina State Bar No. 10895
    5517 Chapel Hill Boulevard, Suite 2000
    Post Office Box 51729
    Durham, North Carolina  27717-1729
    Telephone:  (919) 489-9001
    Fax: (919) 489-5774
    E-Mail: rgillespie@faison-gillespie.com

STEPTOE & JOHNSON LLP

By: /s/ Roger E. Warin
    Roger E. Warin*
    Michael A. Vatis*
    Matthew J. Herrington*
    John P. Nolan*
    Steptoe & Johnson LLP
    1330 Connecticut Avenue, NW
    Washington, DC  20036
    Telephone: (202) 429-3000
    Fax: (202) 429-3902
    E-Mail: rwarin@steptoe.com
    *(Motion for Special Appearance to be
      filed)

Attorneys for Defendant City of Durham, North Carolina

---

[33]  Other states have similarly barred claims arising from an allegedly negligent investigation, arrest, or prosecution.  *See, e.g.*, *Jestic v. Long Island Sav. Bank*, 81 A.D.2d 255, 255-56  (N.Y. App. Div. 1981); *Hildenbrand v. Cox*, 369 N.W.2d 411, 416 (Iowa 1985); *Stansfield v. Douglas County*, 27 P.3d 205, 212-13 (Wash. Ct. App. 2001); *Bolduc v. United States*, 402 F.3d 50, 59 (1st Cir. 2005).

[34]  As they have offered no argument in opposition, Plaintiffs apparently concede that their negligent infliction of emotional distress claims (claims 27-28) also must be dismissed because Plaintiffs have alleged only intentional acts.  *See* City Br. 45-46 n.33.

## CERTIFICATE OF ELECTRONIC FILING AND SERVICE

The undersigned hereby certifies that, pursuant to Rule 5 of the Federal Rules of Civil Procedure and LR5.3 and LR5.4, MDNC, the foregoing pleading, motion, affidavit, notice, or other document/paper has been electronically filed with the Clerk of Court using the CM/ECF system, which system will automatically generate and send a Notice of Electronic Filing (NEF) to the undersigned filing user and registered users of record, and that the Court's electronic records show that each party to this action is represented by at least one registered user of record (or that the party is a registered user of record), to each of whom the NEF will be transmitted.

This the 26th day of November, 2008.

FAISON & GILLESPIE

By: /s/ Reginald B. Gillespie, Jr.
     Reginald B. Gillespie, Jr.
     North Carolina State Bar No. 10895

     Attorneys for Defendant the City of
       Durham, North Carolina

     5517 Chapel Hill Boulevard, Suite 2000
     Post Office Box 51729
     Durham, North Carolina  27717-1729
     Telephone:  (919) 489-9001
     Fax: (919) 489-5774
     E-Mail: rgillespie@faison-gillespie.com