# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
# CIVIL ACTION NO. 1:07-CV-00953

| | |
|---|---|
| **RYAN McFADYEN,** *et al.*, ) | |
| ) | **REPLY BRIEF IN SUPPORT** |
| **Plaintiffs,** ) | **OF DEFENDANT** |
| ) | **CITY OF DURHAM,** |
| **v.** ) | **NORTH CAROLINA'S** |
| ) | **MOTION FOR PARTIAL** |
| **DUKE UNIVERSITY,** *et al.*, ) | **SUMMARY JUDGMENT** |
| ) | **(GOVERNMENTAL** |
| **Defendants.** ) | **IMMUNITY)** |
| ) | |

Plaintiffs completely ignore the Governmental Immunity Endorsement in the ICOP policies, which clearly preserves the City's immunity. Instead, Plaintiffs point to a variety of irrelevant City resolutions and funds in order to try to create the impression that the City might have sources of insurance coverage other than the three policies that the City's risk manager has sworn under oath are the only insurance policies that are even potentially relevant here. None of these resolutions or funds, however, constitutes an insurance policy or risk pool. Plaintiffs have failed to raise any genuine issue of material fact concerning the City's governmental immunity. Summary judgment therefore should be granted to the City on all the state-law claims.[1]

---

[1] Plaintiffs assert that the City's governmental immunity does not reach their purported "statutory claim" for violation of the North Carolina Financial Privacy Act. McFadyen Br. 2. But nowhere on the face of the Complaint do Plaintiffs allege a violation of a state statute. While Plaintiffs have obliquely alleged that "state banking laws" created a fiduciary duty between Plaintiffs and Duke, *see* SAC ¶ 1240, this is part of a claim alleging a *common law* breach of fiduciary duty – to which governmental immunity clearly applies. No statutory claim is even tangentially alleged.

**I.	Plaintiffs Have Conceded that the Governmental Immunity Endorsement in the ICOP Policies Preserves the City's Immunity.**

Plaintiffs do not dispute that the ICOP policies' Governmental Immunity Endorsement preserves the City's immunity from all of Plaintiffs' state-law tort claims. Nor do they dispute that *Patrick v. Wake County Department of Human Services*, 655 S.E.2d 920 (N.C. Ct. App. 2008), which found that the exact endorsement at issue here preserved a county agency's governmental immunity, is controlling authority on this issue. Accordingly, Plaintiffs have conceded that the City's governmental immunity is intact for the entire period covered by the ICOP policies, which includes all of the events that occurred before April 1, 2007, when the Everest policy (which lacks the endorsement) took effect. April 1, 2007, of course, was long after the alleged wrongful acts complained of by the Plaintiffs.

**II.	The Laws Affidavit Concerning the City's Insurance Policies Is Accurate and Complete.**

Plaintiffs strive mightily to identify potential mechanisms by which the City may have waived its governmental immunity in the hope of stirring up enough confusion to avoid summary judgment. *See* McFadyen Br. 5-6, 8-11,17-18. But their allegations are utterly devoid of merit. None of the potential mechanisms they point to is an insurance policy or risk pool. The Laws Affidavit, in which the City's risk manager has sworn under oath that the two ICOP policies and the Everest policy are the only potentially relevant insurance policies here, is thus accurate and complete. Moreover, the City's insurance coverage is a matter of public record, as are all documents related to the City's

transaction of public business.  *See* N.C.G.S. § 132-1 (a) ("'Public records' defined").

Thus, no amount of discovery can change the simple facts stated in the Laws Affidavit.

### A. The City Does Not Participate in Any Risk Pool.

Plaintiffs first point to the Interlocal Risk Financing Fund of North Carolina ("IRFFNC").  McFadyen Br. 5, 9, 17-18.  But the City has never contracted with the IRFFNC for its risk pool services.  *See* the accompanying Affidavit of J. Steven Lee.  As stated in the City's initial Affidavit of Darwin Laws, "the City does not now, and has not in the past participated, in any local government risk pool pursuant to Article 23 of Chapter 58 of the North Carolina General Statutes."  Laws Aff. ¶ 13.  Rather, the City has retained the IRFFNC merely to perform claims adjustment services (*i.e.*, investigating and handling claims against the City).  The various documents collected by Plaintiffs as Exhibits 3, 4, 9 and 18 to their brief relate to this arrangement.  Claims adjustment services do not involve any transfer of risk and are thus clearly not a form of insurance or a risk pool of any kind.  *See generally Blackwelder v. City of Winston-Salem*, 420 S.E.2d 432, 435 (N.C. 1992) ("One characteristic of an insurance contract is the shifting of a risk from the insured to the insurer.  If no risk is shifted, there is not an insurance contract.").  The City's relationship with the IRFFNC is thus patently irrelevant to the issue of governmental immunity.

### B. The Immunity Waiver Fund Was Repealed in June 2007.

Next, Plaintiffs point to a Resolution to Adopt a Policy to Waive Governmental Immunity in Limited Circumstances, and the related Resolution to Establish a Fund Reserve for Claims Where Governmental Immunity is Waived.  McFadyen Br. 5-6, 10,

18 and Exs. 5-8. Both Resolutions, however, were repealed on June 18, 2007. *See* the accompanying Affidavit of J. Steven Lee.[2] In any event, these resolutions never applied to the types of damages alleged in this case. *See* McFadyen Ex. 6 at ¶¶ 2 & 5. Thus, these Resolutions could not, as a matter of law, waive the City's governmental immunity here.

> C. **The Duke/Durham Police Agreement is Irrelevant.**

Plaintiffs also claim that the Duke-Durham Police Jurisdiction Allocation Agreement between Duke University and the City is an example of a situation in which another entity (Duke) may be responsible for paying claims incurred by the City, since in that agreement Duke promises to "defend, indemnify, and save harmless the City from and against" claims arising in connections with acts or omissions by Duke's police officers. Thus, Plaintiffs claim, the police agreement contradicts ¶ 15 of the Laws Affidavit. *See* McFadyen Ex. 10 and Br. 10-11. It is clear from the title of the Agreement and the provision quoted by Plaintiffs that the Agreement is not, by any stretch of the imagination, an insurance policy or risk pool. It is simply a "hold harmless" provision protecting the City from being sued *for the acts or omissions of the University*. The arrangement thus has zero relevance to the City's governmental immunity.

---

[2] As Exhibit 1 to McAdoo's Affidavit makes clear, the repeal of these Resolutions was effective immediately and applied "to all claims pending on that date as well as claims that arise thereafter." *See* McAdoo Aff., Ex. 1, ¶¶ 8-9.

**III. The City's Insurance Policies Do Not Waive Its Governmental Immunity Because Coverage of Plaintiffs' State-Law Claims Is Not Triggered.**

Plaintiffs' remaining arguments depend on an ellipsis and a typographical error in the City's opening brief. These arguments have no merit.

Plaintiffs trumpet a comma that the City mistakenly omitted in quoting the pertinent language of the ICOP policies in its opening brief. *See* McFadyen Br. 14. (Plaintiffs neglect to mention that the City correctly includes the comma in its quotation of the Everest policy, making clear that the omission of the comma in the parenthetical quoting the ICOP policies was a simple typographical error. *See* City's Opening Br. 11). Plaintiffs contend that "the comma's placement actually causes the meaning of the clause to shift significantly." McFadyen Br. 14. With the comma, they argue, it is clear that the phrase "that the insured becomes legally obligated to pay" modifies "ultimate net loss" rather than "retained limit." *Id.* But this hardly helps Plaintiffs' case. Under Plaintiffs' own reading, the ICOP and Everest policies provide coverage only for the City's ultimate net loss *that it is legally obligated to pay*. But for the reasons stated by this Court in *Pettiford v. City of Greensboro,* 556 F. Supp. 2d 512, 529 (M.D.N.C. 2008), the City can never be legally obligated to pay amounts for which it has immunity. Accordingly, even under Plaintiffs' own argument, the insurance coverage for the ultimate net loss on state law claims is never triggered here.[3]

---

[3] Notably, the policy in *Pettiford* contained *no* commas in the applicable provision, which stated the city would be indemnified for "ultimate net loss in excess of the retained limit which the Insured becomes legally obligated to pay." *Pettiford*, 556 F. Supp. 2d at 528 (citation omitted). With no comma following "ultimate net loss" *or* "retained limit," it is ambiguous whether "legally obligated to pay" modifies "ultimate net loss" or

Accordingly, the presence of the comma makes no difference. The City's insurance coverage for its "ultimate net loss" is triggered only when the City is "legally obligated" to pay something—either the amount of its retained limit, or the ultimate net loss, or both. But, as this Court recognized in *Pettiford*, the City cannot be legally obligated to pay any amount for Plaintiffs' state law claims because it has governmental immunity. Coverage therefore cannot be triggered on the policies at issue here.

Plaintiffs also argue that the fact that defense costs erode the City's retained limit somehow makes this case distinguishable from *Pettiford*, where, according to Plaintiffs, "'defense costs' could not exhaust the retained limit under the policy." McFadyen Br. 12.[4] Plaintiffs are wrong. The policy in *Pettiford did* provide that defense costs would erode the city's retained limit. *See* DeLorenze Aff., Ex. 1, at End. 5. Yet this did not affect this Court's analysis. Rather, the key to that decision was that insurance coverage was not triggered under the policy unless the city had a "legal obligation" to pay. And since it had no obligation to pay *either* the amount of the retained limit or the ultimate net loss on state law claims because of the existence of governmental immunity, coverage

---

"retained limit." Although the better reading of that provision is that "legally obligated to pay" modifies "ultimate net loss," the issue is irrelevant because in either case, the coverage would not have been triggered since the city had no legal obligation to pay either the ultimate net loss or the retained limit as a result of its governmental immunity.

[4] Plaintiffs suggest that the City created an "illusion" in its brief by eliding the reference to defense costs in its quotation of the policies. McFadyen Br. 12-13. But the City has never hidden the fact that defense costs erode the retained limit, as Plaintiffs' own exhibits of news articles demonstrates. *See* McFadyen Br. Exs 1& 2. The issue of erosion is simply irrelevant. The only relevant question is whether the City could ever be "legally obligated" to pay damages. Since it cannot, on account of its governmental immunity, the insurance coverage is never triggered.

was not triggered. *Pettiford*, 556 F. Supp. 2d at 529 (noting that the policies in *Pettiford* and *Magana v. Charlotte Mecklenburg Bd. of Educ.*, 645 S.E.2d 91 (N.C. Ct. App. 2007) both "disclaim any right of indemnification until (1) the damages exceed a self-insured retention amount …; (2) the insured has a legal obligation to pay those damages; and (3) the insured actually pays those damages to the claimant").[5]

Plaintiffs also rely heavily on an email exchange by City officials involving an earlier insurance policy. McFadyen Br. 15-17; Exs. 11-17. But that email exchange has nothing to do with the insurance policies here. Moreover, the email exchange simply reflects a recognition that "immunity is waived to the extent of the insurance." McFadyen Br. 17. The crucial question, therefore, is whether insurance coverage in fact applies. Where, as here, the policy expressly states that it covers only those claims and

---

[5] That one of the City's insurers has begun to pay defense costs is also irrelevant. An insurer's duty to defend is triggered solely by the four corners of the complaint. "The [North Carolina] Supreme Court has established that if review of the pleadings in an underlying action gives rise even to 'a mere possibility' that the insured's potential liability is covered by the insurance policy, then the carrier has a duty to defend." *Crandell v. Am. Home Assurance Co.*, 644 S.E.2d 604, 605 (N.C. Ct. App. 2007) (citation omitted); *see also St. Paul Fire & Marine Ins. Co. v. Vigilant Ins. Co.*, 724 F. Supp. 1173, 1176 (M.D.N.C. 1989), *aff'd*, 919 F.2d 235 (4th Cir. 1990). This duty is triggered even where a portion of the alleged claims would not be covered by the policy, or where the claims turn out to be untrue. *See State Auto Prop. & Cas. Ins. Co. v. Travelers Indem. Co.*, 343 F.3d 249, 255 (4th Cir. 2003) ("[W]here a complaint alleges multiple claims and injuries, some of which are covered and some of which are not, an insurer is obligated to defend its insured against all claims made in the lawsuit."). In contrast, an insurer's duty to indemnify is limited to claims actually covered by the policy. *See, e.g.*, *Wake Stone Corp. v. Aetna Cas. & Sur. Co.*, 995 F. Supp. 612, 615 (E.D.N.C. 1998); *Stanback v. Westchester Fire Ins. Co.*, 314 S.E.2d 775, 778 (N.C. Ct. App. 1984). Defense costs, by their very nature, do not constitute amounts that an insured is "legally obligated to pay," as they are not claims, judgments or settlements. Thus, the fact that an insurer's duty to defend is triggered says nothing about whether its indemnity obligation has been triggered.

amounts the City is "legally obligated" to pay, the insurance coverage is not triggered, so the City's immunity is not waived.

## IV. This Case is Ripe for Summary Judgment on the State-Law Claims.

Despite Plaintiffs' exhaustive efforts to create the impression that discovery might yield facts relevant to the question of whether the City has insurance coverage that serves to waive its governmental immunity, it is clear that discovery would lead only to a fishing expedition into completely extraneous material. The City's risk manager has sworn under oath that the two ICOP policies and the Everest policy are the only potentially relevant insurance policies, and nothing Plaintiffs have pointed to raises even the barest hint that other relevant policies or risk pools exist. Whether the three relevant polices provide coverage of Plaintiffs' state law claims can be determined by a review of the plain language of the policies. Discovery is not necessary for the Court to decide this issue. "The meaning of language used in an insurance contract is a question of law for the Court . . . ." *Daniel v. City of Morganton*, 479 S.E.2d 263, 267 (N.C. Ct. App. 1997) (interpreting insurance contract and granting summary judgment finding school board did not waive defense of government immunity by purchasing insurance) (citations and quotations omitted). Where an insurance contract is plain and unambiguous, courts do not permit a review of extrinsic evidence to interpret it. *See Metric Constructors, Inc. v. Industrial Risk Insurers*, 401 S.E.2d 126, 128 (N.C. Ct. App. 1991). Accordingly, no discovery is necessary for this Court to interpret the City's insurance policy and determine whether the City has waived its governmental immunity. *See, e.g.*, *Patrick*,

655 S.E.2d at 924 ("When it is clear that immunity applies, additional discovery is futile and should not delay summary judgment.").

Moreover, delaying resolution of the immunity issue until after discovery would defeat one of the principal purposes of governmental immunity, which is to protect governmental entities not only from the cost of civil judgments, but also to spare them the burden and distraction of discovery and trial proceedings. *See Smith v. Phillips*, 451 S.E.2d 309, 311 (N.C. Ct. App. 1994) ("[T]o force a defendant to proceed with a trial from which he should be immune would vitiate the doctrine of sovereign immunity.") (citation omitted); *cf. Fares v. I.N.S.*, 29 F. Supp. 2d 259, 265 (W.D.N.C. 1998) (denying plaintiffs' request for discovery on qualified immunity in order to "prevent subjecting those individuals to unnecessary and burdensome discovery or trial proceedings"). Accordingly, this Court should grant summary judgment in favor of the City on all of Plaintiffs' state-law tort claims.

## V. Conclusion

For all of the reasons discussed herein and in the City's Motion for Partial Summary Judgment (Governmental Immunity), summary judgment should be granted for the City on all the state-law claims.

This the 12th day of December, 2008.

| FAISON & GILLESPIE | STEPTOE & JOHNSON LLP |
|---|---|
| By: /s/ Reginald B. Gillespie, Jr. | By: /s/ Roger E. Warin |
| Reginald B. Gillespie, Jr. | Roger E. Warin* |
| North Carolina State Bar No. 10895 | Michael A. Vatis* |
| 5517 Chapel Hill Boulevard, Suite 2000 | Matthew J. Herrington* |
| Post Office Box. 51729 | John P. Nolan* |
| Durham, North Carolina 27717-1729 | Leah M. Quadrino* |
| Telephone: (919) 489-9001 | Steptoe & Johnson LLP |
| Fax: (919) 489-5774 | 1330 Connecticut Avenue, NW |
| E-Mail: rgillespie@faison-gillespie.com | Washington, DC 20036 |
| | Telephone: (202) 429-3000 |
| | Fax: (202) 429-3902 |
| | E-mail: rwarin@steptoe.com |
| | *Motion for Special Appearance to be filed |

*Attorneys for Defendant City of Durham*

CERTIFICATE OF ELECTRONIC FILING AND SERVICE

The undersigned hereby certifies that, pursuant to Rule 5 of the Federal Rules of Civil Procedure and LR5.3 and LR5.4, MDNC, the foregoing pleading, motion, affidavit, notice, or other document/paper has been electronically filed with the Clerk of Court using the CM/ECF system, which system will automatically generate and send a Notice of Electronic Filing (NEF) to the undersigned filing user and registered users of record, and that the Court's electronic records show that each party to this action is represented by at least one registered user of record (or that the party is a registered user of record), to each of whom the NEF will be transmitted.

This the 12th day of December, 2008.

FAISON & GILLESPIE

By: /s/ Reginald B. Gillespie, Jr.
Reginald B. Gillespie, Jr.
North Carolina State Bar No. 10895