## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

### CIVIL ACTION NUMBER 1:07-CV-00953

| | |
|---|---|
| RYAN McFADYEN, et al., | |
|          Plaintiffs, | Joint Supplemental Brief of Duke University Defendants, Duke SANE Defendants, and Duke Police Defendants Regarding *Ashcroft v. Iqbal* |
|      v. | |
| DUKE UNIVERSITY, et al., | |
|          Defendants. | |

Pursuant to this Court's order of June 4, 2009, the Duke University Defendants, Duke SANE Defendants, and Duke Police Defendants jointly submit this Supplemental Brief addressing the impact of the Supreme Court's decision in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), on their pending Motions to Dismiss.

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court addressed the standard for determining whether the allegations in a complaint are sufficient to state a claim on which relief may be granted. In its recent *Iqbal* decision, the Court clarified and elaborated on this standard, explaining that factual allegations offered in support of a civil claim (a) may not be merely conclusory and (b) must establish a plausible—not merely a possible—basis for liability.

Under *Iqbal*, it is clear that many of Plaintiffs' claims are subject to dismissal. Plaintiffs' Amended Complaint rests fundamentally on the allegation that a vast array of

Dockets.Justia.com

Duke officials and employees, from the Chairman of the Board to campus police officers to medical professionals, colluded with each other and with government investigators to frame Duke's own students for a violent crime they did not commit.  Plaintiffs accuse Duke employees of fabricating evidence against them, suppressing exculpatory evidence, attempting to coerce them into false confessions, manipulating the local political process, and even exercising authority over Durham police and the district attorney in an effort to force them into prison.  Plaintiffs have not alleged facts that would plausibly support such grave accusations.

*Iqbal* also held that supervisors are not liable under 42 U.S.C. § 1983 for abuses committed by their subordinates.  The Court should therefore dismiss Plaintiffs' § 1983 claims that are based on a theory of "supervisory liability."

## I.  Many of Plaintiffs' Claims Are Inadequately Pled Under *Iqbal*

### A.  *Iqbal* Requires Civil Claims to Be Supported by Plausible, Non-Conclusory Factual Allegations

Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  In *Twombly*, the Supreme Court held that, to survive a motion to dismiss, a complaint must allege sufficiently specific facts to "raise a right to relief above the speculative level," 550 U.S. at 555, such that the "claim … is plausible on its face," *id.* at 570.  In *Iqbal*, the Court

further clarified this pleading standard and held that plausible, non-conclusory factual allegations are required for a cause of action to survive a motion to dismiss[1]:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice…. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss…. [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

129 S. Ct. at 1949-1950 (citations omitted); *see also id.* at 1949 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

Thus, *Iqbal* confirms that not all allegations in a complaint are entitled to the presumption of truth for motion-to-dismiss purposes and sets forth a two-step test for determining whether a cause of action is sufficiently pled under Rule 8. First, mere conclusory statements or "[t]hreadbare recitals of the elements of a cause of action," *id.*, are not entitled to be presumed true. Therefore, if a claim only makes conclusory allegations or simply recites essential elements of a cause of action without supporting facts, it cannot survive a motion to dismiss. Second, courts should also examine the factual allegations in the complaint to determine whether they establish "more than the

---

[1]     *Iqbal* also made clear that, contrary to Plaintiffs' suggestion (*see* Pl. SANE Opp., Docket #76, at 8-9), the pleading requirements set forth in *Twombly* apply to all federal civil actions, not just antitrust cases. 129 S. Ct. at 1953.

*mere possibility* of misconduct." *Id.* at 1950 (emphasis added). If the factual allegations are "merely consistent with," but do not plausibly indicate, unlawful action, then they are inadequate under Rule 8. *Id.* at 1949.[2]

### B. *Iqbal* Mandates the Dismissal of Many of Plaintiffs' Claims Under Rule 8

Many of Plaintiffs' causes of action against the Duke defendants are subject to dismissal under *Iqbal*. Plaintiffs have failed to allege facts in support of those counts that (a) do more than recite elements of the causes of action and (b) plausibly suggest unlawful conduct on the part of the Duke defendants. *Iqbal* makes clear that Duke

---

[2]     In *Twombly* and *Iqbal*, the Supreme Court applied these principles to require dismissal of the complaints. In *Twombly*, a civil antitrust action, the plaintiffs pled that the defendants "ha[d] entered into a contract, combination or conspiracy to prevent competitive entry … and ha[d] agreed not to compete with one another.'" 550 U.S. at 551. The Court held that the plaintiffs' allegation of an illegal agreement was a "legal conclusion and was therefore not entitled to the assumption of truth." *Id.* at 555. The Court also ruled that the plaintiffs' allegation of a "parallel course of conduct … to prevent competition" could not survive a motion to dismiss because mere "parallel conduct does not suggest conspiracy," and "could just as well be [legal] independent action." *Id.* at 557. In *Iqbal*, the plaintiff, a Pakistani national, alleged that Attorney General John Ashcroft and FBI Director Robert Mueller subjected him to harsh conditions of confinement in the wake of the September 11, 2001 attacks "solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest." 129 S. Ct. at 1951. According to the Court, "[t]hese bare assertions, much like the pleading of conspiracy in *Twombly*, amount to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim" and were not entitled to be presumed true. *Id.* The plaintiff also alleged that the FBI, with the approval of Ashcroft and Mueller, subjected Muslims including Mr. Iqbal to harsh detention conditions. The Court concluded that although those allegations were "consistent with petitioners' purposefully designating detainees 'of high interest' because of their race, religion, or national origin," they were also consistent with other, lawful purposes for the detention policy—to detain people with links to the attack, which would naturally affect Arab Muslims disproportionately—and therefore did "not plausibly establish" illegal discrimination. *Id.* at 1951.

University and its employees should not be subjected to the costly burden of discovery based on Plaintiffs' conclusory and farfetched allegations.

### 1. All Claims Against the Duke Defendants that Depend on Allegations of an Unlawful Conspiracy Should Be Dismissed

At its core, Plaintiffs' Amended Complaint alleges that numerous officials of Duke University took part in a massive conspiracy with Durham city officials, District Attorney Michael Nifong, and others to deprive Plaintiffs of their constitutional rights. Plaintiffs' allegations in support of their conspiracy claims against the Duke defendants are exactly the kind of implausible assertions that are subject to dismissal under *Iqbal*. This failure of pleading requires dismissal of Counts 1-3, 5-23, and 40, which all depend on the assertion that the Duke defendants conspired to injure Plaintiffs.

In addition, Plaintiffs' claims against Duke defendants under 42 U.S.C. § 1983 (Counts 1-3 and 5-15) are defective under *Iqbal* because they fail to establish that any of the Duke defendants acted under color of state law. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). Plaintiffs' Amended Complaint offers numerous conclusory assertions that Duke Defendants acted "under color of state law"[3] and that Duke Defendants conspired or acted in concert with government officials to deprive Plaintiffs of their constitutional rights.[4] But under *Iqbal*, these bare assertions of state action and conspiracy are not entitled to the presumption of truth. 129 S. Ct. at 1949. The remaining factual allegations about interactions between Duke employees and

---

[3]    (*See, e.g.*, AC ¶¶ 905, 919, 955, 969-970, 979, 988, 993, 1003, 1008, 1038, 1149.)
[4]    (*See, e.g.*, AC ¶¶ 1-4, 84-85, 110, 402, 500-501, 637-640, 779, 907, 920, 925, 930, 956, 970, 994, 996, 998, 1010, 1039, 1046, 1048, 1074, 1083, 1114, 1149.)

government officials also fail to establish a plausible conspiracy under § 1983; as explained below, the far more plausible explanation for these alleged facts is that Duke University and its employees were properly responding to the inquiries of a facially lawful criminal investigation conducted by the Durham police and the prosecutor.

### a) All Claims Based on the "Chairman's Directive" Should Be Dismissed

Central to Plaintiffs' claims against Duke is the charge that defendant Robert Steel, who was Chairman of the University's Board of Trustees, "determined that Duke University's interests were best served if the Plaintiffs and their teammates were tried and convicted upon charges arising out of Mangum's false accusations" and directed Duke's employees to take actions in furtherance of this goal.  (AC ¶ 85; *see also id.* ¶ 332 ("The Chairman directed all Duke University Defendants to 'turn a blind eye' to the evidence, after determining that Plaintiffs' convictions were 'best for Duke,' regardless of Plaintiffs' innocence."); ¶ 453 ("[T]he Chairman announced that it would be 'best for Duke' if Plaintiffs were tried and convicted on Mangum's false accusations.").)  Under this so-called "Chairman's Directive," Plaintiffs say, Mr. Steel deliberately encouraged the Durham police to frame innocent students at his own institution for rape.  This allegation is just as implausible as the allegations in *Iqbal* and warrants dismissal for the same reason: Plaintiffs offer nothing in support for it other than their own assertions. They also fail to establish facts indicating that Mr. Steel directed Duke officials to

railroad their own innocent students into prison for a rape they did not commit, and that those subordinates willingly went along with this directive.

In *Iqbal*, the Supreme Court held that the plaintiff had not adequately stated a claim against then-Attorney General Ashcroft and FBI Director Mueller for the government's post-September 11 detention policy, even though Mr. Iqbal had alleged that "Ashcroft was the 'principal architect' of this invidious policy, and that Mueller was 'instrumental' in adopting and executing it," because those allegations were "conclusory and not entitled to be assumed true." 129 S. Ct. at 1951. Similarly, allegations of Mr. Steel's malign manipulation of Duke and Durham's actions do not suffice here. Although Plaintiffs refer many times to the "Chairman's Directive" and its supposed status as the "moving force" behind various allegedly wrongful acts by Duke employees and even Durham officials, they offer no factual support for these implausible assertions. (*See, e.g.* AC ¶¶ 85-87, 103, 445-458, 473, 543, 563, 634, 827, 853, 857, 861-862, 896, 901, 937, 996, 1016-1017.) Plaintiffs do not, for example, offer any facts suggesting that Chairman Steel ever directed any Durham or state official to take any action in connection with the case. Nor do they even indicate who at Duke was on the receiving end of Mr. Steel's supposed "announce[ment] that it would be 'best for Duke' if Plaintiffs were tried and convicted on Mangum's false accusations." (AC ¶ 453.) Just as the plaintiff in *Iqbal* could not sustain his claim against Attorney General Ashcroft by alleging that he was the "principal architect" of the detention policy, 129 S. Ct. at 1951, bald assertions that a "Chairman's Directive" from Mr. Steel caused the defendants to

deprive Plaintiffs of their legal rights cannot save Plaintiffs' conspiracy allegations in this case.

These pleading deficiencies mandate the dismissal of all causes of action against the Duke defendants that depend on the allegation that Duke officials took wrongful actions pursuant to the "Chairman's Directive," and all counts that allege a conspiracy orchestrated by Chairman Steel both within Duke University and with government officials outside the university.[5]  These include Counts 1-3 and 5-15 (claims under § 1983), as well as Count 16 (conspiracy under 42 U.S.C. § 1985); Count 17 (failure to intervene under 42 U.S.C. § 1986); Count 18 (obstruction of justice); Count 20 (intentional infliction of emotional distress); Count 21 (breach of contract), Count 22 (invasion of privacy); and Count 23 (breach of fiduciary duty).

### b)  Conspiracy Claims Against Duke Medical Providers Should Be Dismissed

Plaintiffs also fail to plausibly allege any conspiracy between Duke employees and government officials with respect to the collection and reporting of medical evidence. The Amended Complaint alleges that in meetings with Durham investigators, a Duke Hospital employee, Tara Levicy, "repeatedly proffered false testimony that was clearly designed to fill the chasms in Mangum's case and/or to restore Mangum's glaring credibility problems."  (AC ¶ 788.)  But putting aside conclusory assertions of concerted

---

[5]      *See, e.g.*, *Atherton v. District of Columbia Office of Mayor*, No. 07-5195, 2009 WL 1515373, at *13 (D.C. Cir., June 2, 2009) (rejecting § 1983 claim because complaint's "spare facts and allegations are not enough to survive a motion to dismiss under *Iqbal* and *Twombly*"); *Rounds v. Woodford*, No. CIV S-05-0555, 2009 WL 1657462, at *2-*4 (E.D. Cal., June 12, 2009) (same).

action (AC ¶ 779), neither this nor any other part of the Amended Complaint alleges facts sufficient to establish that Ms. Levicy—a Sexual Assault Nurse Examiner who is trained to listen to what alleged victims are reporting and to collect physical evidence from them—conspired with government officials to manufacture false evidence against Plaintiffs.

The fact that Ms. Levicy met with police officers and prosecutors does not plausibly demonstrate a conspiracy, as *Iqbal* requires. Rather, it shows only the unremarkable fact that the police investigating a possible crime gathered information from a health care provider who examined the alleged victim. The Amended Complaint sets forth no facts plausibly showing that Durham investigators deliberately elicited statements from Ms. Levicy that both she and they knew to be false. *Iqbal* requires more than a mere *possibility* of unlawful action for a complaint to survive dismissal; it requires that the allegation of illegality be *plausible*. It is implausible that Ms. Levicy would have entered into a conspiracy with Durham police to manufacture evidence against alleged perpetrators with whom she had no personal connection, thereby putting her own livelihood and her nursing license at risk. And where, as here, the factual allegations are at most "merely consistent with" unlawful action and do not *plausibly* establish an illegal course of conduct, the claim must be dismissed. *Iqbal*, 129 S. Ct. at 1949. Plaintiffs' failure warrants dismissal of § 1983 Counts 1, 2, 3, 5, 6, 7 and 9 against all Duke University Defendants and Duke SANE Defendants insofar as they are based on allegations relating to the medical evidence. It also mandates dismissal of state law

claims insofar as they allege Duke employees conspired with Durham investigators with respect to this evidence: Count 18 (obstruction of justice); Count 19 (abuse of process); and Count 20 (intentional infliction of emotional distress).

### c) Conspiracy Claims Against Duke Police Should Be Dismissed

All claims relating to the supposed involvement of Duke University Police in Durham's investigation of Crystal Mangum's allegations should be dismissed because they fail to establish an unlawful conspiracy between the Duke police and the Durham police. Putting aside conclusory allegations of agreements and conspiracy, Plaintiffs' assertions about meetings and communications between the Duke and Durham police departments show only that the two forces were occasionally, and entirely properly, exchanging information about the case. Such exchanges are not surprising considering that Durham police were engaged in a highly publicized investigation that involved Duke students, and that the complaining witness was examined at Duke University Medical Center. Any allegation of an illegal conspiracy between the two forces to railroad innocent Duke students is simply not plausible, as *Iqbal* mandates.

For example, although Plaintiffs refer to a so-called "Joint Command meeting" on March 29, 2006 between Duke officials and Durham officials (AC ¶¶ 627-631, 633-634, 636-637, 811, 860, 1055, 1244), the only thing they allege in a non-conclusory fashion about the meeting is that information was exchanged about the case. (AC ¶ 631.) The same is true with respect to (1) the communications between Duke and Durham police at Duke hospital the night of the alleged attack (AC ¶¶ 275-277); (2) Nifong "direct[ing] the

Duke Police Officers who interacted with Mangum to submit reports of those interactions to his assistant, Sheila Eason" (AC ¶ 466); (3) Duke police officers Gary Smith and Greg Stotsenberg turning over Plaintiffs' DukeCard information to Durham police (AC ¶¶ 857, 861); and (4) Duke Police Sergeant Smith not affirmatively interfering in the Durham Police's search of Ryan McFadyen's dormitory room (AC ¶¶ 614-615, 922).

The sharing of information and the decision not to actively intervene in another police force's investigation are common occurrences when multiple law enforcement agencies are involved. They do not plausibly demonstrate an unlawful conspiracy and do not establish that Duke exercised supervisory authority over Durham officials or Nifong. Therefore, plaintiffs fail to state a claim that the Duke police were engaged in an unlawful conspiracy with Durham. This failure of pleading requires dismissal of § 1983 Counts 1, 2, 5, 7, 9, 11, 12, and 13 against various Duke defendants insofar as they depend on an illegal police conspiracy between Duke and Durham. It also mandates dismissal of state law claims that allege Duke police conspired with, or supervised, Durham investigators because Plaintiffs have not shown that Duke conspired with Durham to commit wrongful acts: Count 23 (breach of fiduciary duty) and Count 40 (negligent entrustment).[6]

---

[6]    Several of Plaintiffs' § 1983 claims warrant dismissal under *Iqbal* because, in addition to the failure to allege conspiracy and state action, they also fail to plausibly establish other key elements of the cause of action. In Count 5, for instance, Plaintiffs allege that "false and stigmatizing public statements" made about them "were temporally and causally connected and proximate to" deprivations of certain "tangible interests" they possessed. (AC ¶¶ 956-958.) The allegation of such a causal link between the public

## 2. All Emotional Distress Claims Should Be Dismissed

Counts 20, 27, 33, and 39 allege intentional or negligent infliction of emotional distress by one or more Duke defendants. These claims should be dismissed because an essential element of those causes of action—severe emotional distress—is alleged with nothing more than a bald recitation of that element, without any supporting facts or details whatsoever.

Under North Carolina law, an element of the cause of action of both intentional and negligent infliction of emotional distress is "severe emotional distress," which courts have defined as a "severe and disabling emotional or mental condition which may be

statements and the deprivations is entirely conclusory and, as explained in Duke's prior briefing, not plausible. (*See* Duke Univ. Br., Docket #46, at 18-21, Duke Univ. Reply, Docket #97, at 3-4 & n.5.) Count 5 therefore cannot survive a motion to dismiss under *Iqbal*. 129 S. Ct. at 1949-1950. Similarly, in Count 9, Plaintiffs allege that several Duke defendants retaliated against them because they refused to speak with the police. (AC ¶¶ 994-998.) This allegation is both conclusory and implausible and therefore cannot survive *Iqbal*'s clarification of the pleading standards. Likewise, Count 11 merely recites the elements of a "failure to intervene" § 1983 claim, without any support other than vague and conclusory assertions that Duke defendants were aware of, but failed to prevent, constitutional violations by the Durham police and Mr. Nifong. (AC ¶¶ 1009-1020.) This Count offers nothing more than "[t]hreadbare recitals of the elements of a cause of action," *Iqbal*, 129 S. Ct. at 1949, and is therefore not entitled to the presumption of truth. Finally, Count 12 alleges in purely conclusory terms that Duke University's policies were the moving force behind various alleged misdeeds not only by Duke employees, but also by Durham police and Nifong. (*See, e.g.*, AC ¶¶ 1046, 1057, 1061, 1074, 1083, 1087, 1088, 1100.) Even apart from the fact that Duke did not have the legal authority to "delegate" responsibility over the investigation to Durham or Nifong (*see* Duke Univ. Br., Docket #46, at 29-32; Duke Univ. Reply, Docket #97, at 12; Duke Police Br., Docket #50 at 11-12), Count 12 is insufficient because it contains nothing more than conclusory assertions about Duke's alleged policies, without any specifically pled facts about the content or origins of those policies or the persons responsible for them. They are not entitled to the presumption of truth and Count 12 should be dismissed.

generally recognized and diagnosed by professionals trained to do so." *Waddle v. Sparks,* 331 N.C. 73, 83, 414 S.E.2d 22, 27 (1992); *Johnson v. Ruark Obstetrics*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). In Plaintiffs' Amended Complaint, each of the four Counts listed above identically alleges that, as a result of the defendants' wrongful acts, "Plaintiffs have suffered and continue to suffer diagnosable emotional and mental conditions causing Plaintiffs disabling emotional, mental, and/or physical harm." (AC ¶¶ 1222, 1282, 1331, 1371.) These allegations amount to nothing but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and are therefore not entitled to be presumed true for motion-to-dismiss purposes. *Iqbal*, 129 S. Ct. at 1949. Nor does any other part of the Amended Complaint specify what sort of "diagnosable emotional and mental conditions" Plaintiffs have suffered due to the defendants' actions. Counts 20, 27, 33, and 39 should therefore be dismissed. *See, e.g.*, *Oshop v. Tenn. Dept. of Children's Servs.*, No. 3:09-CV-0063, 2009 WL 1651479, at *9 (M.D. Tenn., June 10, 2009) (dismissing claim for negligent infliction of emotional distress because allegations of "infliction of severe emotional harm" and similar harms were simply "[t]hreadbare recitals of the elements of a cause of action" and could not state a claim under *Iqbal* (citations omitted)); *DiPietro v. N.J. Family Support Payment Center*, No. 08-4761, 2009 WL 1635568, at *8 (D.N.J., June 10, 2009) (same).

### 3. Plaintiffs' Claims Under 42 U.S.C. § 1985(3) Should Be Dismissed

In Count 16, setting forth their claims for conspiracy in violation of 42 U.S.C. § 1985(3), Plaintiffs assert that "one or more defendants," in conspiring against them,

were motivated by "invidious racial animus" and by "invidious animus based upon Plaintiffs' state citizenship." (AC ¶¶ 1159-1160.) This Count should be dismissed because, in addition to its many other deficiencies (*see* Duke Univ. Br., Docket #46, at 32-39; Duke Univ. Reply, Docket #97, at 15-19), it does not plausibly allege non-conclusory facts establishing such racial- or citizenship-based animus on the part of any Duke defendant. *See, e.g., Atherton*, 2009 WL 1515373, at *13 (rejecting § 1985 claim because the complaint's "bare facts clearly do not raise an inference that [the defendants] were conspiratorially motivated by some class-based, invidiously discriminatory animus").

To the extent Plaintiffs accuse Duke of singling out them and their teammates for poor treatment, their allegations do not plausibly indicate intentional discrimination on the basis of their race or state of origin. This situation is very similar to *Iqbal*, where the Supreme Court directed dismissal of a racial discrimination claim brought by a Muslim detained after September 11, 2001 because the defendants' decision to detain him was more plausibly explained by a non-discriminatory reason—the legitimate pursuit of an investigation into possible accomplices of the attackers. *See Iqbal*, 129 S. Ct. at 1951 (explaining that, even though Muslims were disproportionately detained after the September 11 attacks, that "should come as no surprise" given that Arab Muslims had perpetrated the attacks and those who had suspected connections to the attackers were likely to share their demographics). So too here, any alleged actions taken by Duke against the Plaintiffs are more plausibly explained, not as rooted in invidious

discrimination, but by the fact that Plaintiffs attended a party at which a hired stripper alleged she had been gang-raped (and because one of them wrote an e-mail several hours after the alleged attack in which he stated an intention to kill strippers). (Durham Br., Docket #62, at 12-13 & Ex. 3.) Count 16 should therefore be dismissed.

## II. *Iqbal* Requires Dismissal of All § 1983 Claims Based on Supervisory Liability

In addition to its ruling on the pleading requirements under Rule 8, the *Iqbal* decision established important precedent as to the liability of supervisors under 42 U.S.C. § 1983 for the actions of their subordinates. The Court held that, in a § 1983 suit, "where masters do not answer for the tort of their servants[,] the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her misconduct." 129 S. Ct. at 1949. Thus, the Court made clear that a plaintiff in a § 1983 action cannot hold supervising employees vicariously liable for the wrongful actions of their subordinates. Rather, the plaintiff must establish the supervisor personally acted to deprive the plaintiff of his rights.

*Iqbal* thus forecloses Count 13 of the Amended Complaint, which by its very title seeks to impose "supervisory liability for violations of 42 U.S.C. § 1983" on (among others) the Duke Police Supervising Defendants and the Duke Officials Defendants. (AC at 346.) Count 13 alleges that the Duke Police Supervising Defendants had supervisory authority over Durham police, Mike Nifong, and "various [unnamed] Duke University Defendants" who "engaged in a number of investigative abuses," and that these supervisors "knew or should have known" about those abuses and "acquiesced in" them.

(AC ¶¶ 1112, 1114-1115, 1120.)  Under *Iqbal*, these allegations do not establish § 1983 liability because they do not show that Duke supervisors personally violated the Plaintiffs' rights, as opposed to merely supervising others who did so.[7]  Nor does Plaintiffs' repeated, conclusory assertion that Duke defendants acted "reckless[ly]" in allowing these abuses save this count from dismissal when it offers no facts indicating that they personally took part in these actions.  (AC ¶¶ 1116, 1121, 1122, 1126, 1131.)

The same reasoning mandates dismissal of the following § 1983 counts as to certain Duke defendants who are named only for their alleged supervisory authority over others, not their own actions: Count 3 (Victor Dzau and Robert Steel); Count 6 (Theresa Arico and Julie Manly); Count 9 (Richard Brodhead, John Burness, Victor Dzau, and Peter Lange); Count 11 (all Crisis Management Team Defendants and Duke Police Supervising Defendants); and Count 15 (all defendants not alleged to have personally taken part in the non-supervisory actions described in AC ¶ 1150).

## III. Conclusion

For the reasons articulated herein, Counts 1-3, 5-23, 27, 33, 39, and 40 against the Duke University Defendants, Duke SANE Defendants, and Duke Police Defendants should be dismissed for failure to state a claim on which relief may be granted.[8]  These

---

[7]    This is setting aside the fact that Duke officials, as a matter of law, had no supervisory authority over Durham police or over Nifong and so they cannot be held vicariously liable for Durham's or Nifong's actions in any event.  (*See* Duke Univ. Br., Docket #46, at 29-31; Duke Univ. Reply, Docket #97 at 12; Duke Police Br., Docket #50, at 11-12.)

[8]    At this stage, Plaintiffs should not be allowed to file yet another amended complaint to attempt to correct their pleading deficiencies.  *Iqbal* did not create new

reasons are in addition to those set forth in the Duke defendants' prior briefs in support of

their Motions to Dismiss, which explain why *all* claims against these defendants should

be dismissed.

---

pleading standards; it confirmed the pleading standards of Rule 8 that the Supreme Court had already articulated in *Twombly*, which was decided before any of Plaintiffs' complaints were filed. Furthermore, Plaintiffs' Amended Complaint is already 427 pages long, with 1,384 distinct allegations and 28 exhibits. After multiple tries, it is unlikely that Plaintiffs are capable of inserting any more factual material that would cure the deficiencies in their claims. To allow them to amend their complaint once again, after extensive briefing has already been completed, would be a waste of both the parties' and the court's resources.

Respectfully submitted, this 24th day of June, 2009.


/s/ Jamie S. Gorelick

---

Jamie S. Gorelick
District of Columbia Bar No. 101370
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Ave., N.W.
Washington, D.C. 20006
Telephone: (202) 663-6500
Facsimile: (202) 663-6363
Email: jamie.gorelick@wilmerhale.com

*Counsel for Duke University Defendants,
Duke SANE Defendants, and Duke Police
Defendants*

/s/ J. Donald Cowan, Jr.

---

J. Donald Cowan, Jr.
N.C. State Bar No. 0968
Ellis & Winters LLP
333 N. Greene Street, Suite 200
Greensboro, N.C. 27401
Telephone: (336) 217-4193
Facsimile: (336) 217-4198
Email: don.cowan@elliswinters.com

*Counsel for Duke University Defendants
and Duke Police Defendants*


/s/ Dan J. McLamb

---

Dan J. McLamb
N.C. State Bar No. 6272
Yates, McLamb & Weyher, LLP
421 Fayetteville Street, Suite 1200
Raleigh, N.C. 27601
Telephone: (919) 835-0900
Facsimile: (919) 835-0910
Email: dmclamb@ymwlaw.com

*Counsel for Duke SANE Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2009, I electronically filed the foregoing Joint Supplemental Brief of Duke University Defendants, Duke SANE Defendants, and Duke Police Defendants Regarding *Ashcroft v. Iqbal* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

*Counsel for the Plaintiffs*
Robert C. Ekstrand
Email: rce@ninthstreetlaw.com

*Counsel for City of Durham and Edward Sarvis*
Reginald B. Gillespie, Jr.
Email: rgillespie@faison-gillespie.com

*Counsel for Patrick Baker, Steven Chalmers, Ronald Hodge, Lee Russ, Stephen Mihaich, Beverly Council, Jeff Lamb, Michael Ripberger, and Laird Evans*

Patricia P. Kerner
Email: tricia.kerner@troutmansanders.com

D. Martin Warf
Email: martin.warf@troutmansanders.com

Hannah Gray Styron
Email: hannah.styron@troutmansanders.com

*Counsel for James T. Soukup, Kammie Michael, David Addison, Richard D. Clayton*
James B. Maxwell
Email: jmaxwell@mfbpa.com

*Counsel for Mark Gottlieb*
David William Long
Email: dlong@poynerspruill.com

Eric P. Stevens
Email: estevens@poyners.com

*Counsel for Benjamin Himan*
Henry W. Sappenfield
Email: hsappenfield@kennoncraver.com

Joel Miller Craig
Email: jcraig@kennoncraver.com

*Counsel for DNA Security, Inc., Richard Clark*
Kearns Davis
Email: kdavis@brookspierce.com

Robert James King, III
Email: rking@brookspierce.com

*Counsel for Brian Meehan*
James Avery Roberts, III
Email: jimroberts@lewis-roberts.com

Paul R. Dickinson, Jr.
Email: pauldickinson@lewis-roberts.com

*Counsel for J. Wesley Covington*
Kenneth Kyre, Jr.
Email: kkyre@pckb-law.com

*Linwood Wilson, pro se*
Email: redacted


This 24th day of June 2009.

/s/ Jamie S. Gorelick
Jamie S. Gorelick

- 2 -

Attorney for Duke University, Richard H. Brodhead, Stephen Bryan, John Burness, Kemel Dawkins, Matthew Drummond, Victor J. Dzau, Aaron Graves, Allison Haltom, Peter Lange, Larry Moneta, Robert K. Steel, Tallman Trask III, Suzanne Wasiolek, Duke University Health System, Inc., the Private Diagnostic Clinic, PLLC, Theresa Arico, Tara Levicy, Dr. Julie Manly, Duke University Police Department, Jeffrey O. Best, Phyllis Cooper, Robert Dean, Joseph Fleming, William F. Garber II, Leila Humphries, James Schwab, Gary N. Smith, and Greg Stotsenberg