# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## Case No. 1:07-CV-953

RYAN McFADYEN *et al.*,

    Plaintiffs,

        v.

DUKE UNIVERSITY *et al.*,

    Defendants.

_____

## SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS
## OF DEFENDANTS DNA SECURITY, INC. AND RICHARD CLARK

Robert J. King III
Kearns Davis
BROOKS, PIERCE, MCLENDON,
   HUMPHREY & LEONARD, L.L.P.
Post Office Box 26000
Greensboro, North Carolina 27420
Telephone: (336) 373-8850

*Counsel for Defendants DNA Security, Inc. and Richard Clark*

Robert A. Sar
Nicholas J. Sanservino, Jr.
OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
2301 Sugar Bush Road, Suite 600
Raleigh, North Carolina 27612
Telephone: (919) 787-9700

*Counsel for Defendant DNA Security, Inc.*

By Order dated June 4, 2009 (Docket No. 119), this Court invited the previously-designated Defendant groups to submit supplemental briefing to address the effect of the United States Supreme Court's decision in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (May 18, 2009), on the pending Motions to Dismiss. Accordingly, Defendants DNA Security, Inc. ("DSI") and Richard Clark (collectively, "the DSI Defendants") respectfully submit this Supplemental Brief in support of their Motion to Dismiss.

## I. *IQBAL* CONFIRMS THAT PLAINTIFFS HAVE NOT PLEADED SUFFICIENT FACTS TO SUPPORT THEIR CLAIMS

### A. The Rule 12(b)(6) Standard

In *Iqbal*, the Supreme Court reaffirmed that *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), articulates the pleading standard governing motions to dismiss under Fed. R. Civ. P. 12(b)(6): To survive dismissal, a complaint must offer more than "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action,'" and it cannot rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557). Instead, it must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).

At issue in *Iqbal* was the allegation that the former Attorney General and the Director of the Federal Bureau of Investigation had adopted and implemented a policy governing the confinement of post-September 11th detainees that discriminated on the basis of race, religion, or national origin. *Iqbal*, 129 S. Ct. at 1942. The Supreme Court held that Iqbal's complaint failed to state a claim for unconstitutional discrimination

against those defendants because he did not "show" that they "adopted and implemented the detention policies at issue . . . for the purpose of discriminating" against detainees. 129 S. Ct. at 1948-49. To be sure, the complaint did include factual allegations that the defendants had subjected Iqbal to harsh conditions of confinement, *id*. at 1950-52, but Court found those allegations insufficient to support Iqbal's claims, as they were "consistent with" the defendants' liability but equally consistent with other, legitimate law enforcement purposes and therefore did not "'nudge[]'" the claims "across the line from conceivable to plausible." *Id.* at 1951, 1952 (quoting *Twombly*, 550 U.S. at 570); *see also Iqbal*, 129 S. Ct. at 1951-52 (concluding that purposeful discrimination was "not a plausible conclusion" to draw from factual allegations).

*Iqbal* teaches that the Rule 12(b)(6) pleading standard rests upon "[t]wo working principles": ***first***, that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," need not be accepted as true for purposes of a motion to dismiss, and ***second***, that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1949-50 (citing *Twombly*, 550 U.S. at 555, 556). To state a "plausible" claim, a plaintiff must do more than "plead[] facts that are 'merely consistent with' a defendant's liability"; instead, he or she must provide "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has

not 'show[n]' -- 'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### B. Plaintiffs' Conclusory Allegations Fail to State a Claim

#### 1. Section 1983 Claims

Notwithstanding its length, Plaintiffs' Amended Complaint is premised solely on the sort of boilerplate legal allegation that is inadequate to state a plausible claim against the DSI Defendants. With respect to their Section 1983 claims in particular, Plaintiffs repeatedly *assert* that the DSI Defendants "met and conspired" with Nifong and others to deprive Plaintiffs of their constitutional rights by creating a misleading and incomplete DNA testing report, but the factual allegations they offer in support of those claims do not allow the court to conclude that the claims against the DSI Defendants are "plausible" rather than (at most) simply "conceivable."

Plaintiffs' Section 1983 claims against the DSI Defendants reduce generally to this: Unindicted witnesses in a criminal investigation have a constitutional right to have information reported to them at particular times and in particular formats. *See* Opening Br. at 12-13, 14. They plead in the most general terms a Section 1983 conspiracy to deprive them of this supposed right to information between the DSI Defendants and others,[1] as evidenced by meetings among the various defendants: "Himan, Gottlieb,

---

[1] According to the Amended Complaint, the various Defendants "conspired and entered into express and/or implied agreements, understandings, or meetings of the mind among themselves and others to deprive Plaintiffs of their constitutional rights" and "participated in the conspiracy by engaging in overt acts with the intent to further some unlawful purpose of the conspiracy or with the intent to further some lawful purpose of the

3

Nifong, Meehan, and Clark met several times to discuss the results of [DSI's] testing and how to conceal from Plaintiffs the explosive findings [DSI] had made." Am. Compl. ¶ 765.[2]

Plaintiffs' allegations parrot the legal elements of their claims and make broad declarations of conspiracy and other wrongdoing, but they provide no factual foundation sufficient to render those claims "plausible." As the DSI Defendants' Opening Brief pointed out (Opening Br. at 11 n.7), a prosecutor's consultation and coordination with his retained expert is not suggestive of conspiracy but simply describes the ordinary and expected interaction between key participants in a criminal investigation. Plaintiffs' allegations that the various Defendants met with one another and discussed the format and content of the May 12 Report do not lead inevitably or even "plausibly" to the conclusion that they must have conspired to violate Plaintiffs' constitutional rights; instead, Plaintiffs describe activity that is "not only compatible with, but indeed [is] more

---

conspiracy by unlawful means." Am. Compl. ¶¶ 1149, 1150. As to the DSI Defendants, Plaintiffs "specify" two supposed overt acts: "[d]epriving, or condoning or directing the deprivation of Plaintiffs' statutory right to reports of all DNA tests" and "[p]articipating in the DNA conspiracy to manufacture false and misleading DNA evidence, and the conspiracy to conceal the powerful exculpatory findings." *Id*. ¶ 1150(D), (G).

[2] *See also* Am Compl. ¶ 946 (alleging that the various defendants, "individually and in concert, conspired to conceal and withhold from Plaintiffs the reports of [DSI's] test results"); *id*. ¶ 973 (alleging that the DSI Defendants conspired with others "to produce a DNA report that included a false and misleading report of a probative 'match' between Plaintiffs' non-indicted teammate and a 'crime scene fingernail'"); *id*. ¶ 980 (alleging that the DSI Defendants, "acting individually and in concert, intentionally and maliciously concealed explosive, exonerating evidence of Plaintiffs' innocence in furtherance of their conspiracy to obtain indictments and ultimately convict Plaintiffs").

likely explained by, lawful" interactions between prosecutor and expert. *Iqbal*, 129 S. Ct. at 1950.

In *Twombly*, the Supreme Court found allegations of parallel conduct coupled with boilerplate allegations of antitrust conspiracy to be insufficient to state an antitrust claim. 550 U.S. at 556-57 ("an allegation of parallel conduct and a bare assertion of conspiracy will not suffice," and "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality"). So too here: The facts that (1) Nifong met with DSI -- an expert retained to conduct DNA testing -- to discuss the test results and their reporting and (2) three lacrosse players (*not* these Plaintiffs) were later indicted does not suggest, much less "show," that Nifong and the DSI Defendants conspired to bring about the indictments illegally. What Plaintiffs allege is no more suggestive of conspiracy than it is of the commonplace workings of the law enforcement investigative process. To survive dismissal, Plaintiffs "would need to allege more by way of factual content to 'nudg[e]' [their] claim[s] . . . 'across the line from conceivable to plausible.'" *Iqbal*, 129 S. Ct. at 1952 (quoting *Twombly*, 550 U.S. at 570) (first alteration in original). They have not done so.

Plaintiffs fare no better with their allegations of causation. In essence, Plaintiffs contend that they were harmed by the DSI Defendants' failure to report certain DNA test results to them in a particular format and at a particular time. As the DSI Defendants' Opening Brief demonstrated (at 26-29), Plaintiffs' (largely unspecified) theory of causation is illogical, and it is wholly unsupported by any *factual* allegation of causation.

Instead, Plaintiffs simply parrot general causation language. *See, e.g.*, Am. Compl. ¶ 952 ("[a]s a direct and proximate result of Defendants' conduct, Plaintiffs were deprived of their [constitutional] rights") (deprivation of property).[3] Those conclusory allegations are insufficient. Plaintiffs cannot plead the requisite causal link between the DSI Defendants' conduct in preparing the May 12 Report and the injuries they claim simply by alleging causation in blanket terms; they must instead plead *facts* sufficient to "show" the causal relationship. With respect to the DSI Defendants in particular, they have not even attempted to do so (nor, as a matter of law, could they do so, for the reasons the DSI Defendants have explained, *see* Opening Br. at 26-29). Here again, "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Iqbal*, 129 S. Ct. at 1954.[4]

### 2. Section 1985 and 1986 Claims

Plaintiffs' Section 1985 and Section 1986 claims are, if anything, even more poorly pleaded: The claims against the DSI Defendants (the Sixteenth and Seventeenth

---

[3] *See also* Am. Compl. ¶ 976 ("[a]s a result of the conduct of [the DSI Defendants and others], Plaintiffs were deprived of their [constitutional] rights") (manufacture of false inculpatory evidence); *id.* ¶ 984 (concealment of exculpatory evidence); *id.* ¶ 1006 (privileges and immunities); *id.* ¶ 1154 (Section 1983 conspiracy).

[4] Plaintiffs' Section 1983 claim that the DSI Defendants deprived them of their rights under the Privileges and Immunities Clause takes equally conclusory form. Am. Compl. ¶ 1004 ("Defendants' conduct deprived Plaintiffs of the same privileges and immunities they bestowed upon similarly situated citizens of the State of North Carolina because of Plaintiffs' real or perceived status as citizens of other states."). It is therefore deficient for the same reasons.

6

Causes of Action) simply parrot the statutory language,[5] and they again plead causation in only the most general of terms.[6] Indeed, Plaintiffs allege that "*one or more* of [the numerous named] defendants" engaged in overt acts motivated by racial animus (Am. Compl. ¶¶ 1159, 1160) (emphasis added), but they do not specify which of the defendants engaged in any particular act, and they certainly do not allege that the DSI Defendants took any action at all that was "motivated by invidious animus." Their exceedingly general allegations, unaccompanied by even the most basic factual development, cannot withstand scrutiny under Rule 12(b)(6), for the same reasons that Plaintiffs' Section 1983 claims fall short. Here too, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

---

[5] *See*, *e.g.*, Am. Compl. ¶¶ 1158-60 (alleging that defendants, including the DSI Defendants, "conspired and/or entered into express and/or implied agreements, understandings, or meetings of the mind among themselves for the purpose of impeding, hindering, obstructing, or defeating the due course of justice in the State of North Carolina, with the intent to deny Plaintiffs the equal protection of the law" and, "[i]n furtherance of this conspiracy, . . . engaged in overt acts that were motivated by invidious racial animus," in violation of 42 U.S.C. § 1985); *id.* ¶¶ 1180-82 (alleging that DSI Defendants "had prior knowledge of the wrongs conspired to be committed by" other defendants, "had the power to prevent or aid in preventing the commission of" those alleged wrongful acts but "neglected and/or refused to exercise such power," and thereby "evinced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights").

[6] Am Compl. ¶¶ 1168-69 (claiming that, "[a]s a direct and foreseeable consequence of" the alleged conspiracies, "Plaintiffs were deprived of their [constitutional] rights" and suffered various harms); *id.* ¶¶ 1187-88 (alleging that, "[a]s a direct and foreseeable consequence of . . . Defendants' neglect, failure, and/or refusal to intervene, Plaintiffs were deprived of their [constitutional] rights" and suffered various harms).

3. State Law Claims

Plaintiffs' state law claims suffer from the same pleading deficiencies as their federal claims. They assert an obstruction of justice claim against the DSI Defendants (among others) based on allegations that can only be described as boilerplate:

> [The DSI Defendants,] acting individually and in concert [with other Defendants], attempted to and did, in fact, prevent[,] obstruct, impede and hinder public and legal justice in the State of North Carolina . . . . [The various Defendants] obstructed justice by conspiring to manufacture and by manufacturing false and misleading reports with respect to the forensic testing of evidence in the investigation of Mangum's allegations, knowing that the reports of forensic testing would . . . be used to bring and maintain criminal prosecutions against Plaintiffs . . . or to intimidate Plaintiffs and other witnesses . . . . [The DSI Defendants and others also] obstructed justice by conspiring to deprive Plaintiffs of copies of reports [of] exonerating DNA test results that existed on or before April 10, 2006, . . . which Plaintiffs' retained forensic experts could have expeditiously interpreted -- within hours -- as conclusively exonerating them when those reports were available on or before April 10, 2006.

Am. Compl. ¶¶ 1190-91, 1194. These allegations, like Plaintiffs' Section 1983 claims, do not rise to the level of plausibility required by *Twombly* and *Iqbal*, for the same reason that Plaintiffs' Section 1983 claims fall short: Plaintiffs baldly allege a conspiracy to "obstruct justice," but they offer nothing in the way of factual development to *show* that their claims against the DSI Defendants are plausible. Indeed, they are facially *implausible*, as they essentially allege an attempt by the DSI Defendants to "hide evidence" that Plaintiffs elsewhere acknowledge was fully disclosed to the prosecutor. *See* Am. Compl. ¶ 749.

Plaintiffs' intentional infliction of emotional distress claim is no more satisfactory. Once again, Plaintiffs offer only legal generalizations coupled with rhetoric but

8

unsupported by specific factual allegations. *See* Am. Compl. ¶¶ 1215, 1217 (alleging that various Defendants "acted individually and in concert to manufacture inculpatory forensic evidence and to conceal exculpatory forensic evidence for the purpose of lending scientific credibility to Mangum's accusation that Plaintiffs committed a horrific, violent, racially motivated crime . . ." and that those actions "evinced a malicious and corrupt intent and a pattern of extreme and outrageous behavior pursued with the intent to cause Plaintiffs to suffer severe emotional distress"). Plaintiffs cannot transform a boilerplate allegation of wrongdoing into a plausible claim simply by stringing adjectives together.

Plaintiffs' negligence claims are similarly flawed. They allege generally that the DSI Defendants "agreed to omit exculpatory findings" from the May 12 Report, Am. Compl. ¶ 1334, that they "acted individually and in concert to produce the May 12 Report that misstated the purported results of [DSI's] scientific testing . . . and omitted exculpatory findings that resulted from their scientific testing of Mangum's rape kit items," *id.* ¶ 1335, and that it was "plainly obvious" by April 2006 that the DSI Defendants' alleged "acts and omissions would result in the filing and prosecution of serious criminal charges against the Plaintiffs," *id.* ¶ 1337. These claims parrot the substance of Plaintiffs' Section 1983 "misleading report" claims, and they fail for the same reason: Plaintiffs offer only conclusory declarations of the DSI Defendants' supposed liability but no supporting facts that would make "plausible" their claim that the

DSI Defendants had and breached a duty to these Plaintiffs in preparing the May 12 Report.[7]

* * *

The Supreme Court has made clear that, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S. Ct. at 1950. Because all of Plaintiffs' claims are premised on unadorned legal conclusions, Rule 12(b)(6) requires their dismissal.

## II. *IQBAL* CONFIRMS THAT THE SUPERVISORY LIABILITY CLAIM AGAINST CLARK CANNOT STAND

*Iqbal* makes clear that Plaintiffs' Section 1983 claims against Defendant Clark fall short of the pleading standard governing liability of "supervisory" defendants under

---

[7] Plaintiffs' negligent hiring, retention and supervision claim is pleaded in the same conclusory terms, *see* Am. Compl. ¶ 1344 (DSI Defendants "negligently hired, supervised and retained Meehan, failed to provide Meehan with proper training and discipline, and failed to instruct and enforce the protocol with respect to the reports of" DSI's DNA testing); *id.* ¶ 1345 (DSI Defendants and Meehan "negligently hired, supervised and retained" other DSI personnel "in understanding the rudimentary requirement that every subject of an NTID proceeding must be provided with copies of the results of every test conducted with the subject's DNA"); *id.* ¶ 1346 (DSI Defendants and Meehan "negligently failed to provide . . . proper training, and failed to outline proper procedure . . . with respect to the preparation and issuance of reports of scientific testing conducted by" DSI), as is their negligent infliction of emotional distress claim. *Id.* ¶ 1349 (alleging that DSI Defendants and Meehan, "acting individually and in concert, manufactured false and misleading DNA reports . . . for the purpose of concealing from Plaintiffs the evidence of Plaintiffs' innocence in order to facilitate the indictment and prosecution of actually innocent Duke lacrosse players on charges . . . they knew or reasonably believed were false and unsupported by their own scientific testing"); *id.* ¶ 1350 (DSI Defendants' "conduct subjected Plaintiffs to public condemnation, public outrage, and stigmatization"); *id.* ¶ 1352 (DSI Defendants and Meehan "were negligent in engaging in this conduct, from which it was reasonably foreseeable that Plaintiffs would suffer emotional and psychological harm").

10

Section 1983. The Supreme Court has reaffirmed that, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each . . . defendant, *through [his] own individual actions*, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948 (emphasis added); *see also id.* (Section 1983 defendants "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*"); *id.* at 1949 ("In a § 1983 suit . . . where masters do not answer for the torts of their servants . . . the term 'supervisory liability' is a misnomer. Absent vicarious liability, each [defendant], his or her title notwithstanding, is only liable for his or her own misconduct."). Plaintiffs have alleged no individual misconduct by Clark sufficient to sustain a Section 1983 claim against him. At most, they allege that Clark "was present" at meetings at which Nifong and other defendants discussed the results of the DNA testing conducted by DSI. *See* Am. Compl. ¶¶ 749, 755. In the absence of any specific allegation of wrongdoing (or, indeed, even of knowledge) on Clark's part, Plaintiffs appear to premise their claims against him on his title alone. *Id.* ¶ 749 (alleging that "Defendant Clark, *President of [DSI]*, was present at the [April 10, 2006] meeting" with Nifong) (emphasis added). *Iqbal* makes clear that such a claim cannot stand.

## CONCLUSION

For the foregoing reasons, as well as those stated in their Opening and Reply Briefs, defendants DNA Security, Inc. and Richard Clark respectfully request that the claims against them be dismissed.

11

Respectfully submitted,

/s/ Robert J. King III
Robert J. King III
N.C. State Bar No. 15946
Kearns Davis
N.C. State Bar No. 22014
Brooks, Pierce, McLendon, Humphrey, &
  Leonard, L.L.P.
Post Office Box 26000
Greensboro, North Carolina  27420
Telephone:  336-373-8850
Facsimile:  336-378-1001

*Counsel for Defendants DNA Security, Inc. and Richard Clark*


Robert A. Sar
N.C. State Bar No. 22306
Nicholas J. Sanservino, Jr.
N.C. State Bar No. 36557
Ogletree, Deakins, Nash, Smoak &
  Stewart, P.C.
2301 Sugar Bush Road, Suite 600
Raleigh, North Carolina 27612
Telephone: (919) 787-9700
Facsimile: (919) 783-9412

*Counsel for Defendant DNA Security, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2009, I electronically filed the foregoing **Supplemental Brief in Support of Motion to Dismiss of Defendants DNA Security, Inc. and Richard Clark** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Robert C. Ekstrand
Ekstrand & Ekstrand, LLP
811 Ninth Street, Ste. 260
Durham, NC 27705
*Counsel for Plaintiffs Ryan McFadyen, Matthew Wilson,and Breck Archer*

Jamie S. Gorelick
Paul R. Q. Wolfson
Jennifer M. O'Conner
Wilmer Cutler Pickering Hale and Dorr, LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006

*and*

William F. Lee
Wilmer Cutler Pickering Hale and Dorr, LLP
60 State Street
Boston, MA 02109

*and*

James Donald Cowan, Jr.
Dixie Thomas Wells
Ellis & Winters, LLP
333 N. Greene Street, Ste. 200
Greensboro, NC 27401
*Counsel for Defendants Duke University, Duke University Police Department, Aaron Graves, Robert Dean, Leila Humphries, Phyllis Cooper, William F. Garber, II, James Schwab, Joseph Fleming, Jeffrey O. Best, Gary N. Smith, Greg Stotsenberg, Robert K. Steel, Richard H. Brodhead, Ph.D., Peter Lange, Ph.D., Tallman Trask, III, Ph.D., John Burness, Larry Moneta, Ed.D., Victor J. Dzau, M.D., Allison Halton, Kemel Dawkins, Suzanne Wasiolek, Stephen Bryan, and Matthew Drummond*

Jamie S. Gorelick
Paul R. Q. Wolfson
Jennifer M. O'Conner
Wilmer Cutler Pickering Hale and Dorr, LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006

*and*

William F. Lee
Wilmer Cutler Pickering Hale and Dorr, LLP
60 State Street
Boston, MA 02109

*and*

Dan Johnson McLamb
Shirley M. Pruitt
Thomas Carlton Younger, III
Yates, McLamb & Weyher, LLP
P.O. Box 2889
Raleigh, NC 27602-2889
*Counsel for Defendants Duke University Health Systems, Inc., Private Diagnostic Clinic, PLLC, Julie Manly, M.D., Theresa Arico, R.N., and Tara Levicy, R.N.*

Reginald B. Gillespie, Jr.
Faison & Gillespie
P.O. Box 5517
Durham, NC 27717-1729
*Counsel for Defendants City of Durham, North Carolina and Edward Sarvis*

Patricia P. Kerner
D. Martin Warf
Hannah Gray Styron
Troutman Sanders, LLP
434 Fayetteville Street, Ste. 1900 (27601)
P.O. Box 1389
Raleigh, NC 27602
*Counsel for Defendants Patrick Baker, Steven Chalmers, Ronald Hodge, Lee Russ, Stephen Mihaich, Beverly Council, Jeff Lamb, Michael Ripberger, and Laird Evans*

James B. Maxwell
Maxwell, Freeman & Bowman, P.A.
P.O. Box 52396
Durham, NC 27717-2396
*Counsel for Defendants James T. Soukup, Kammie Michael, David W. Addison, and Richard D. Clayton*

David W. Long
Eric P. Stevens
Poyner Spruill, LLP
P.O. Box 1801
Raleigh, NC 27602-1801
*Counsel for Defendant Mark D. Gottlieb*

Joel M. Craig
Henry W. Sappenfield
Kennon Craver Belo Craig & McKee, PLLC
4011 University Drive, Ste. 300
P.O. Box 51579
Durham, NC 27717-1579
*Counsel for Defendant Benjamin W. Himan*

James A. Roberts, III
Paul R. Dickinson, Jr.
Lewis & Roberts, PLLC
1305 Navaho Dr., Ste. 400 (27609-7482)
P.O. Box 17529
Raleigh, NC 27619
*Counsel for Defendant Brian Meehan, Ph.D.*

Linwood Wilson
*Address redacted pursuant to Local Rule
*Pro Se*

                              Respectfully Submitted,

                              /s/ Robert J. King