IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| RYAN MCFADYEN, et al | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:07-CV-953 |
| | ) | |
| DUKE UNIVERSITY, et al | ) | |
| | ) | |
| Defendants. | ) | |

_____

**SUPPLEMENTAL BRIEF OF DEFENDANTS BAKER, CHALMERS, COUNCIL EVANS, HODGE, LAMB, MIHAICH, RIPBERGER, RUSS, and ADDISON, CLAYTON, MICHAEL, and SOUKUP**
_____

## INTRODUCTION

The "Durham Police Supervising Defendants" have argued "there is only one standard of review Plaintiffs must face: that the factual allegations of Plaintiffs' Second Amended Complaint, when applied to cognizable legal theories of liability, must plausibly support a claim." (Doc. # 105, p. 3.) The Court in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), has now confirmed that: 1) strictly factual allegations are all that should be deemed true, and 2) only when those allegations plausibly suggest liability should a court deny a Rule 12(b)(6) motion.[1] *See id.*

_____

[1] Defendants, for the sake of brevity and in reliance on this Court's notice that the various Motions to Dismiss in all three related cases (*Evans v. City of Durham, et al* (1:07-CV-739), *McFadyen v. Duke University, et al,* (1:07-CV-953), and this case) will be decided simultaneously, will provide only a brief analysis of the Supreme Court's decision in *Ashcroft v. Iqbal*, herein, and refer the Court to the expanded discussion of *Ashcroft v. Iqbal* found in their Supplemental Brief in *Evans v. City of Durham.*

Dockets.Justia.com

## <u>ARGUMENT</u>

I.    **"We begin our analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth."** *Iqbal*, **129 S. Ct. at 1951.**

In Section 1983 actions, where vicarious liability is prohibited, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 129 S. Ct. at 1949. Thus, pleading *individual* liability against a person with "superintendent responsibilities" must, as Defendants have belabored, show "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 1948 (*see also* Doc. # 56, pp. 25-28; Doc # 58, pp. 5, 16; Doc. # 58, pp. 5-6; Doc. # 105, pp. 11-12). Plaintiffs' Amended Complaint fails this pleading threshold.

Plaintiffs continually refer to nearly all Defendants in groups of increasing size: the "Durham Police Supervising Defendants," (2d Amend. Compl. ¶ 68), a group subsumed in the "Durham Police Department Defendants," (*id.* ¶ 67), that is part of the larger "City of Durham Defendants," (*id.* ¶ 66), which is finally a component of the all-encompassing "Consortium." (*Id.* ¶ 77.) These groups, combined with other grouping methodologies like "Chain of Command," "Durham Police officials," or "Bystander Officers," then absorb the massive bulk of allegations, some involving elements of nearly all causes of action referencing *individual* liability. (*See id.* ¶¶ 66-68, 107, 110-11, 115, 117-23, 138, 142-44, 163-64, 256-60, 264, 290, 332, 387, 392, 394, 399, 403-05, 410, 413, 461, 500-01, 510, 523-24, 555-58, 561-62, 579, 589, 602, 623, 632-33, 635-37, 684,

890-91, 899, 950, 960, 1002-08, 1021, 1023-31, 1069, 1072, 1074, 1080-81, 1083-84, 1087, 1090, 1102, 1108-09, 1113, 1115-16, 1119-22, 1126, 1129-31, 1136-38, 1148-53, 1157-69, 1171-88, 1219-21, 1269-76, 1284-88.)  Because these allegations are merely "labels" and "naked assertions," *Iqbal*, 129 S. Ct. at 1949, that fail to ascribe *individual* knowledge or action, they must be discounted in any analysis of "showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2) (quoted in *Iqbal*, 129. S. Ct. at 1950).

In addition to denying deference to "labels," "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1949.  As Defendants have previously argued, many allegations that simply incorporate talismanic phrases associated with the elements of supervisory liability— knew or should have known, were plainly obvious to, condoned, ratified, acquiesced, facilitated, approved, turned a blind eye toward, recklessly acted, were grossly negligent toward, were deliberately indifferent to, etc.—are not viable, well-pleaded factual assertions.  *See Iqbal*, 129 S. Ct. at 1951 (allegations that the petitioners "'knew of, condoned, and willfully and maliciously agreed" to subject him to confinement because of his religion or race, deemed conclusory).  *Iqbal* confirms that Defendants and the Court are not to just accept a conclusory statement of knowledge as fact or treat a plaintiffs' summary assertion that an action constitutes "deliberate indifference" as truth, and then "unlock the doors of discovery" to find "any set of facts" that can back them up. 129 S. Ct. at 1950.

These "allegations" are nothing but conclusions and speculation; the *Iqbal* court determined that similar allegations were "bare assertions" "amount[ing] to nothing more than a 'formulaic recitation of the elements.'" *Iqbal*, 129 S. Ct. at 1951 (quoting *Twombly*, 550 U.S. at 555). There are no facts alleging: *how* any one of these defendants discovered and knew all the "facts" they are alleged to know, other than they were in the chain of command; *how* any of the defendants were "deliberately indifferent" or "willfully ignored" anything; or *how* these numerous defendants came to agree to harass young northerners. All that is alleged is essentially everyone, collectively and simultaneously, knew everything previously mentioned in the Second Amended Complaint.

This type of conclusory pleading infects Plaintiffs' Second Amended Complaint. Such allegations are entitled to no deference on the claims seeking to impose individual liability. (*See, e.g.,* 2d Amend. Compl. ¶¶ 84, 108, 110, 115, 122, 126, 140, 142-44, 163-64, 1659, 171, 181, 183, 256-60, 290, 332, 338-41, 387, 392, 394, 403, 404, 405, 410 ,413, 429, 461, 500-01, 517, 520, 523-24, 555-58, 561-62, 566-67, 569-76, 579, 589, 602, 629, 633-35, 637-40, 684, 813-14, 899, 901, 947, 949, 960, 964, 966, 972, 974-75, 994, 997, 999, 1002-08, 1021-31, 1048, 1079, 1115-16, 1120-22, 1126, 1129,-31, 1136-38, 1148-49, 1151-53, 1157-1169, 1171-88, 1190, 1196, 1214, 1210, 1219-21, 1247, 1262-66, 1269-71, 1273-76, 1278-81.)

This method of pleading is perhaps most evident in the repeated allegations of "conspiracy." That word is attributed to every defendant and every defendant group, and

some variation of it appears 216 times throughout the Second Amended Complaint. While reciting that groups of Defendants "conspired and entered into express and/or implied agreements, understandings or meetings of the minds among themselves," (*See, e.g.* 2d Amend. Compl. ¶¶ 1149, 1158, 1161-62, 1166, 1172), Plaintiffs Complaint lacks factual content to support this essential element of their conspiracy claims.

Some whole claims are pled entirely against a group and include allegations that amount to nothing more than an organized, formulaic recitation of the elements. The Tenth Cause of Action, for example, is literally pled against all captioned defendants, attributing any preceding allegation as "Defendants' conduct." (*See* 2d Amend. Compl. ¶¶ 1002-04.) It goes on to recite the elements in a privileges and immunities claim. (*Id.*) There is absolutely no allegation of how Baker, Chalmers, Council, or anyone else for example, *individually* and purposefully acted to violate the privileges and immunities clause. In fact, as long as the case was in a North Carolina court, this Cause of Action, as written, could appear in any complaint in the state without changing a word.

Ironically, Plaintiffs' "Supervisory Liability" claim, their Thirteenth Cause of Action, has no individual's name in it—despite the fact that the purpose of the claim is to seek *individual* liability. There are no factual, individual allegations describing conduct that would allow a court to infer that any individual's actions constitute "deliberate indifference" or why any individual would have had knowledge of a subordinate officer's conduct. Because vicarious liability is inapplicable to this claim, Plaintiffs were required

to plead that each of these Defendants, through his or her own individual actions, violated federal rights. *See Iqbal*, 129 S. Ct. at 1949. This, Plaintiffs fail to do.

Plaintiffs also allege that a host of Defendants (Ripberger, Lamb, Council, Hodge, Chalmers, and Baker) aided and abetted a breach of fiduciary duty that Duke University supposedly owed to Plaintiffs. (2nd Amend. Compl. ¶ 1247.) The allegation is that these City of Durham defendants "provided substantial assistance" to Duke defendants in that group's violation of its fiduciary duties. Plaintiffs then provide "examples" of the assistance supposedly provided, like "assisting in . . . mining and synthesizing" the data, "[r]etaining forensic experts, and "[p]articipating in the cover-up." Seeking individual liability off "examples" of conduct that apparently refer to some of the defendants in a list is no different than just saying "some of the supervisory defendants did the following," and listing some examples. It is just as problematic and cannot serve as a plausible basis for asserting individual liability against a single individual. *See, e.g., Iqbal*, 129 S. Ct. at 1944, 1949 (noting that a complaint naming individuals specifically in lists did not meet Rule 8 pleading standards for individual liability). Even if factual content had been plausibly alleged, these allegations do not state a viable claim for relief, as Defendants have previously shown. (*See* Doc. # 56, pp. 39-41.)

Plaintiffs fare no better with many allegations pointed just at individuals because they contain conclusions, with no supporting factual content. In *Iqbal*, the Court discounted pleadings that Attorney General Ashcroft and FBI Director Mueller were "'principal architect[s]; of this invidious policy," or "'instrumental' in adopting and

executing it," as nothing but "bare assertions." *Id.* at 1951. Here, Plaintiffs employ a similarly flawed technique. For example:

- Baker, Durham's City Manager, *orchestrated* the agreement and the ensuing media campaign to mislead the public, (2d. Amend. Compl. ¶ 290);

- Upon information and belief, Defendant Stephen Mihaich *authorized* the assignment of the investigation of Mangum's rape allegations to Gottlieb, *or delegated* his final decisionmaking authority with respect to assignments to Sgt. Fansler or another supervisory official within the Central Investigations Division ("CID"), who pursuant to that authority assigned the investigation to Gottlieb, (*id.* ¶ 335);

- *In collusion with Gottlieb and Himan*, Defendant Addison made the same false claim in public statements . . . in furtherance of the conspiracy, (*id.* ¶ 429);

- Michael released the 911 call *in conscious parallelism with* Nifong and Addison's false public statements expressing their certainty that a rape occurred[,] (*id.* ¶ 571); and

- Beginning on March 14, 2006 and continuing to the present Nifong, Steel, Brodhead, Burness, Gottlieb, Himan, Lamb, Wilson, Meehan, Clark, DNASI, Levicy, Manly, Arico, Dzau, DNASI [sic], PDC, DUHS, and Duke University, acting individually and in concert, attempted to and did, in fact, *prevent, obstruct, impede and hinder public and legal justice* in the State of North Carolina as alleged herein, (*id.* ¶ 1190).

These types of conclusory allegations permeate the Second Amended Complaint; they touch nearly every Defendant and should not be deemed as true on a motion to dismiss. (*See, e.g.*, 2d Amend. Compl. ¶¶ 64, 339, 340, 401, 514, 561, 566-67, 568-69, 576, 634, 813-14, 947, 964, 966, 972, 1196, 1247.)

II.   **"We next consider the factual allegations in respondent's complaint to determine if they plausibly suggest an entitlement to relief."** *Iqbal*, 129 S. Ct. at 1951.

When stripped of the conclusory allegations set out above, the Court can evaluate whether the remaining well-pled factual allegations plausibly shows entitlement to relief. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility' of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In this "plausibility" analysis, it is important to be mindful of several facts alleged by Plaintiffs: Mangum alleged that she was raped and attacked at a party hosted by lacrosse players, (2d Amend. Compl. ¶¶ 9, 194-95, 251, 266-67, 409); a Forensic Sexual Assault Nurse, Tara Levicy, maintained that Mangum had injuries consistent with being raped and attacked, (*id.* ¶¶ 647, 780-81); an investigation ensued, in which all evidence of attack and possible suspects was presented to Nifong, (*id.* ¶¶ 591-93); and, despite three of their teammates being charged, Plaintiffs were eliminated as suspects, never indicted, and never charged with any criminal behavior.

**A.     Patrick Baker**

There are few factual allegations about Defendant Patrick Baker that are relevant to these Plaintiffs and the investigation into the claims of rape and sexual assault.[2]  Baker,

---

[2] There are allegations that "reference" Baker, but do not relate to these Plaintiffs or this investigation.  For example, Baker is alleged to have "enacted" the Zero Tolerance Policy, (2d Amend. Compl. ¶ 345), "directed" other officers to enforce City Code violations, (*id.* ¶ 109), and directed Sarvis to write a letter to off-campus Duke students about the Policy.  Plaintiffs never allege that they were arrested or charged with City

who is City Manager, (2d Amend. Compl. ¶ 50), is alleged to have attended a Joint Command Meeting on March 29, 2006, where he and other "officials with final policymaking authority" were briefed on the investigation by Nifong, Gottlieb, and Himan. (*Id.* ¶¶ 627-32.)

The assertion that Baker attended a meeting where the investigation was discussed is insufficient to support any claim against him. As *Iqbal* determined, receiving reports or having knowledge of subordinates' actions is not enough for individual liability.

> In a §1983 suit or a *Bivens* action – where masters do not answer for the torts of their servants – the term "supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.

*See Iqbal*, 129 S. Ct. at 1949.

Plaintiffs fail to allege any response by Baker based on knowledge he allegedly gained at that meeting. While they assert that "the Joint Command" directed others to "act swiftly to charge, prosecute, and convict Plaintiffs and/or their teammates," (2d Amend. Compl. ¶ 634), the Complaint contains no factual content to suggest that Baker, or any other specific individual gave that instruction. Because Baker's liability is

---

Code violations pursuant to a Zero Tolerance Policy or charged with anything by Gottlieb or Nifong in the past. Allegations dealing with Duke's capabilities of investigation, (*see id.* ¶¶ 82-106) the Zero Tolerance Policy and its application to Duke students, (*see id.* ¶¶ 107-187), how Durham and Duke Police jurisdictions overlap, (*see id.* ¶¶ 82-193), what equipment is used, (*see id.* ¶ 101, relating to Soukup's remark of a systems upgrade), how many old arrests Clayton made as Gottlieb's partner, (*see id.* ¶ 65), or other allegations of this sort are irrelevant to these Plaintiffs and their claims against Defendants. Accordingly, Defendants will not specifically address each of them specifically.

determined by his own response alone, this allegation is insufficient. *Iqbal*, 129 S. Ct. at 1949.

Further, Plaintiffs allege no facts showing that Baker, or anyone else, suggested at the meeting that someone should be arrested for the rape, unless the investigation led to a proper identification and probable cause for the arrest. While Plaintiffs imply that the investigation should have been terminated at that meeting, its continuation after May 29 could not have violated any clearly established federal right[3]. As *Iqbal* instructs, in "[d]etermining whether a complaint states a plausible claim," the Court may consider the factual context of the events described, and "draw on its judicial experience and common sense." 129 S. Ct. at 1950. The Complaint shows, at the time of this meeting, Mangum was still contending that she had been assaulted at the party, (2d Amend. Compl. ¶ 376), and a nurse from Duke Medical Center who was present at her examination had told investigators that she had symptoms and injuries consistent with her report that she had been raped. (*Id.* ¶¶ 647, 780-81.) Thus, the facts alleged show a legitimate law-enforcement basis for continued investigation after May 29, and any inference that the evidence on that day demanded no further investigation is not plausible.

Baker's alleged attendance at this meeting is insufficient to support his liability for any of the claims alleged in the Complaint. His motion to dismiss should be allowed.

---

[3] As Defendants have previously argued, there is no constitutional right to be free from investigation. (Doc. # 56, pp. 10-22.)

### B.    <u>Steven Chalmers</u>

Defendant Steven Chalmers is the Chief of Police for the Durham Police Department, (2d Amend. Compl. ¶ 51), and during the investigation of Mangum's allegations of rape and attack he "was on leave or made unavailable." (*Id.* ¶ 52.) Therefore, there is no factual basis for attributing any "knew or should have known" allegations to Chalmers.

The only other well-plead factual allegation about Chalmers is that he transferred Gottlieb from a patrol beat to supervisor of property crimes on March 6, 2006. (2d Amend. Compl. ¶¶ 178-79.) This transfer occurred one week before the party, and has no plausible relation to Plaintiffs' claims. While Plaintiffs imply that the transfer was related to the delivery of a "dossier" cataloguing alleged misdeeds of Gottlieb to John Burness, the Duke University's Senior Vice President for Public Affairs and Government Relations, no facts are pled even suggesting that Chalmers was aware of the document or its contents. (*Id.* ¶ 177.) The only plausible inference, based on the facts alleged, is that the transfer was the result of a normal departmental reorganization. *See Iqbal*, 129 S. Ct. at 1949. Even if Plaintiffs had pled facts showing that Chalmers had the knowledge attributed to Burness, that knowledge, standing alone, is insufficient to allege any claim for individual liability against Chalmers. Thus, his motion to dismiss should be allowed.

### C.    <u>Beverly Council</u>

Defendant Beverly Council is alleged to have been the Commander of the Uniform Patrol Bureau. (2d Amend. Compl. ¶ 55.) The Second Amended Complaint

fails to attribute any individual actions specifically to her. Because vicarious liability is inapplicable to the claims alleged against her, in the absence of such specific allegations, Council's motion to dismiss should be allowed.

### D.    Ronald Hodge

Defendant Ronald Hodge was the Deputy Chief of Police, (2d Amend. Compl. ¶ 52), and is alleged to have attended the March 29, 2006 meeting of the "Joint Command." (*Id.* ¶¶ 627-32.) As with Baker, Plaintiffs have failed to allege sufficient factual content to plausibly state a claim against Hodge arising out of that meeting.

Hodge is also accused of making a statement to a reporter on April 11, 2006, indicating that the case was strong. (*Id.* ¶¶ 809-11.) Several claims are asserted against Hodge based upon this statement. Hodge has consistently maintained that this single statement is insufficient to plausibly support any of these claims. (*See* Doc. # 58, Doc. # 102.) Plaintiffs have ignored this argument, simply lumping him with others, and contending that he was a member of a group that made "hundreds" of statements. (*See* Doc. # 78 p. 10, incorporating Doc. # 82, pp. 12-13.) *Iqbal* establishes that Hodge is liable only for his own conduct, not the conduct of Nifong, or any "damages" associated with his statements. Hodge's motion to dismiss should be allowed.

### E.    Jeff Lamb

Plaintiffs allege that Defendant Jeff Lamb became Commander of Durham Police Department's Patrol District Two on March 6, 2006, just days before the party. (2d Amend. Compl. ¶ 56.) Plaintiffs further allege that on March 24, 2006, he agreed to

allow Nifong, the County's elected District Attorney, to "take control" of the investigation, at Nifong's request. (*Id.*¶¶ 486-87.)[4]

The Second Amended Complaint contains no factual allegations even implying that Lamb knew, or would have any reason to know, that his agreement to have Nifong direct the investigation could create a risk of constitutional injury. While Plaintiffs allege that "Nifong had determined that he would ride Mangum's allegations into office," (2d Amend. Compl. ¶ 488), there are no facts alleged to suggest that Lamb knew this intent or knew that Nifong would later engage in any inappropriate conduct. Nifong was the District Attorney appointed to serve by the Governor, and police officers are immune from liability for taking direction from a prosecutor. *See Rhodes v. Smithers,* 939 F. Supp. 1256, 1274 (S.D. W. Va. 1995), *aff'd* 91 F.3d 132 (4th Cir. 1996). Lamb is not vicariously liable for Nifong's conduct or the conduct of his subordinates. *See Iqbal,* 129 S. Ct. at 1948. Without more factual content, Plaintiffs have failed to allege a plausible claim against Lamb for his agreement to Nifong's involvement in the investigation.

Plaintiffs also allege that a poster containing their photographs was produced "[u]nder District Two Commander Jeff Lamb's direction." (2d Amend. Compl. ¶ 520.) "Under the direction of" is no less a "bare assertion" than those found as such in *Iqbal*. *See Iqbal*, 129 S. Ct. at 1951 (discounting pleadings that Attorney General Ashcroft and

---

[4] Lamb is also accused of destroying audio tapes involving the officers' radio discussions of Mangum's allegations. (*Id.* ¶ 238.) This accusation appears to be irrelevant: it never seems to be suggested as supporting a claim. Even though Lamb is alleged to have "obstructed justice," in conclusory paragraph 1190, there is no reference that his alleged actions with audio tapes supports this claim, despite numerous paragraphs of what other people have done to "obstruct justice." (*See id.* ¶¶ 1191-97.)

FBI Director Mueller were "'principal architect[s]' of this invidious policy," or "'instrumental' in adopting and executing it," as nothing but "bare assertions"). If this conclusory allegation is considered factual, it is insufficient to support Plaintiffs' claims asserted against Lamb, for the reasons argued previously. (Doc. # 56, pp. 17-20, 38-39; Doc. # 105, pp. 11, 19-22.) Lamb's motion to dismiss should be granted.

**F.    Lee Russ**

Defendant Lee Russ, a Major with the Durham Police Department, (2d Amend. Compl. ¶ 53), is alleged to have attended the March 29, 2006, Joint Command meeting discussed above. (*Id*. ¶ 627.) Again, this allegation fails to yield any plausible basis for liability.

Plaintiffs also allege that Russ was the supervisor of Addison and Michael. (2d Amend. Compl. ¶ 53.) Plaintiffs only allege in a conclusory fashion that Russ had knowledge of their actions, based upon the chain of command. (*See id.* ¶¶ 510, 570.) Because his liability cannot be grounded in respondeat superior, however, these allegations are not enough. *Iqbal,* 129 S. Ct. at 1948. In *Iqbal,* the Supreme Court expressly rejected the respondent's contention that "a supervisor's mere knowledge of his subordinate's [unconstitutional conduct] amounts to the supervisor's violating the Constitution." *Id.* at 1949. His title and the chain of command notwithstanding, Russ is liable only for his own misconduct. *Id.* Plaintiffs' Complaint lacks factual content to show such misconduct, and the claims against Russ should be dismissed.

### G.    **Michael Ripberger**

Defendant Michael Ripberger, a Lieutenant in District Two, (2d Amend. Compl. ¶ 57), appears to have no relevant, factual allegations directed at him that are not mere conclusions.  His motion to dismiss should be allowed.

### H.    **Stephen Mihaich**

Defendant Stephen Mihaich is alleged to be the Commander of Investigative Services.  (2d Amend. Compl. ¶ 54.)  Plaintiffs do not allege that he supervised any of the investigators involved in the case, and concede that he did not.  (*See id.* ¶¶ 71, 72; *see also* Doc. # 78. p. 3.)  Rather, Plaintiffs allege that he either "authorized the assignment of the investigation of Mangum's rape allegations to Gottlieb" or delegated his decision making authority to another supervisor who had made the delegation.  (2d Amend. Compl. ¶ 335.)  Plaintiffs allege that as a result of this assignment, the case was handled by a chain of command that was "incompetent."  (*Id.* ¶ 337.)  While they submit that it should have been "plainly obvious" that placing this case with Himan and Gottlieb would lead to the deprivation of their constitutional rights, (*id.* ¶ 338), they fail to allege a single fact to support this conclusion.  The Complaint is devoid of any allegation indicating that Mihaich had any reason to know of the alleged incompetence of anyone involved in the investigation, much less that the assignment posed an unreasonable risk of constitutional injury.  Plaintiffs have not alleged even a possibility of liability against Mihaich, based on his own individual actions.  His motion to dismiss should be allowed.

## I.     __Laird Evans__

Other than his rank and role in the DPD, Plaintiffs do not allege a single fact about Evans. (*Id.* ¶ 58.) Evans' motion to dismiss should be granted.

## J.     __David Addison__[5]

Defendant David Addison, a Corporal in the DPD and coordinator for the Durham CrimeStoppers, (2d Amend. Compl. ¶ 61), is alleged to have made statements about the strength of the evidence in the investigation and the fact that no one, including members of the lacrosse team, was coming forward with information. (*Id.* ¶¶ 505-516.) Although Plaintiffs have no doubt catalogued every article, blog, photograph, or comment about the investigation, they do not allege that they were ever *individually* mentioned at any time by Addison.

Plaintiffs contend that Addison's statements that a rape had occurred were false, and made with malice. (*Id.* ¶ 514.) Plaintiffs base this conclusion on the fact that the Durham Police Department learned that the SBI lab results were negative. (*Id.* ¶ 508.) Plaintiffs do not allege, however, that this information was ever shared with Addison before it was publicly announced on April 10. Most of Addison's statements are alleged to have been made on or before March 28, 2008, the day that Nifong first learned the results. (*Id.* ¶¶ 505, 507, 623.) Addison was not at the meeting on March 29, where Plaintiffs allege that various officials were informed of the test results. (*Id.* ¶¶ 627, 631.)

---

[5] Addison, Michael, Clayton and Soukup, while not "Durham Police Supervisors" are discussed herein in an effort to comply with the Court's direction to consolidate briefs where feasible.

While Plaintiffs will likely argue that it is possible that Addison's statements were made for the purpose of vilifying them, Plaintiffs fail to allege factual content to plausibly support this conclusion. Indeed, the only plausible conclusion is that Addison was attempting to urge witnesses to come forward, in connection with discharging his duties for Durham Crimestoppers. (*Id.* ¶ 507.)

Additionally, to the extent that his statements possibly created some stigma for McFadyen, Wilson, and Archer, they at most would support a claim for defamation—not a constitutional violation. There is no "plus." Defendants have continually highlighted Plaintiffs inability to plausibly plead this important and necessary element of constitutional deprivation claims based on statements. (*See* Doc. # 43, pp.11-14, 19-23; Doc. # 56, pp.17-20; Doc. # 58, pp.6-15; Doc. # 105, pp.4-8.)

### K. Kammie Michael

Defendant Kammie Michael is alleged to be the DPD's Public Relations Coordinator and Public Information Officer. (2d Amend. Compl. ¶ 60.) In this capacity, Plaintiffs allege that she told the media that DPD did not know the identity of the 911 caller who reported the racial slurs coming from 610 N. Buchannan. (*Id.* ¶¶ 570-576.)[6] Plaintiffs allege that this statement was false, because members of the Police Department other than Michael, knew that the call had been made by Pittman. (*Id.* ¶¶ 572-574.) The Second Amended Complaint is devoid of any factual content suggesting that Michael

---

[6] While Plaintiffs allege that Michael, along with Hodge and Addison, "deleted, destroyed, despoiled or otherwise secreted" audio recordings of the early morning reports of officers attending to Mangum, they have not alleged a claim against her arising out of these allegations. (*Id.* ¶¶ 568-69.)

personally knew that Pittman made the call. Plaintiffs' conclusion that Michael made the statement in an "effort to frame the Plaintiffs for crimes that did not happen," (*Id.* ¶ 576), is simply not plausible. The only plausible conclusion, based on the facts alleged, is that at the time Michael made the statements alleged, she did not know all of the details of the investigation. While Plaintiffs may have alleged that through Michael the DECC issued a technically inaccurate statement, this statement is not sufficient impose liability on her.

Further, as with Addison, Michael's statement that the police had not identified the 911 caller, even if inaccurate, does not plausibly give rise to constitutional violations. Michael's motion to dismiss should be granted.

## L.    Richard Clayton

Defendant Richard Clayton was a District Two patrol officer, (2d Amend. Compl. ¶ 65.) With no supporting factual allegations, Plaintiffs allege that he "conspired" with Nifong, Gottlieb, and Himan to create the photograph identification procedure used on April 4, 2006. (*Id.* ¶ 668.) Plaintiffs do not allege facts to suggest that Clayton designed or administered that procedure. In fact, Plaintiffs allege that Nifong conceived the process on March 31, and explained the procedure to Gottlieb and Himan and directed them to do it. (*Id.* ¶¶ 662, 663.) Gottlieb administered it on April 4. (*Id.* ¶ 668 F.) There are no factual allegations that Clayton was involved in this procedure at all.

Plaintiffs also summarily allege that Clayton "conspired to conceal" the results of this procedure from Plaintiffs with Nifong, Gottlieb, and Himan. (*Id.* ¶ 947.) Again, there are no factual allegations to support this conclusion. Plaintiffs allege that Nifong,

Gottlieb and Himan failed to disclose the results in the NTID Order Application and from Plaintiffs' counsel. (*Id.* ¶¶ 676-687.) Clayton is not mentioned in these allegations. No facts are alleged in support of the claims against Clayton, thus, his motion to dismiss should be allowed.

### M.    James Soukup

Soukup is alleged to have been the Director of the Durham Emergency Communications Center ("DECC"). (2d Amend. Compl. ¶ 59.) Plaintiffs allege that he made public statements touting the 2005 upgrade of Durham's Computer Aided Dispatch System. (*Id.* ¶ 101.) Other than that, the only factual allegation about him is that he "delegated" his "policymaking authority with respect to the DECC's recorded police exchanges, dispatches and 911 calls to Hodge, Addison, and Michael." Absolutely no facts are alleged in support of this conclusory allegation that he "delegated" his authority, and it is thus not entitled to the presumption of truth. *Iqbal,* 129 S.Ct. at 1951.

Further, much like the allegations against Mihaich, Plaintiffs fail to allege any facts to suggest that Soukup should have known that such a delegation posed an unreasonable risk of constitutional injury. Plaintiffs have not alleged even a possibility of liability against Soukup, based on his own individual actions. His motion to dismiss should be allowed.

Respectfully Submitted, this the  24th  day of June, 2009.

TROUTMAN SANDERS LLP

By: /s/ Patricia P. Kerner
    Patricia P. Kerner

N.C. State Bar No. 13005
    Hannah G. Styron
N.C. State Bar No. 28824
    D. Martin Warf
N.C. State Bar No. 32982
*Attorneys for Defendants Baker, Chalmers,*
*Council, Evans, Hodge, Lamb, Mihaich,*
*Ripberger, and Russ*
434 Fayetteville Street, Suite 1900
Raleigh, North Carolina 27601
Telephone: (919) 835-4100
Facsimile: (919) 829-8714
tricia.kerner@troutmansanders.com

MAXWELL, FREEMAN & BOWMAN, P.A.

By:/s/ James B. Maxwell
    James B. Maxwell
N.C. State Bar No. 2933
*Attorneys for David Addison, Kammie Michael,*
*Richard Clayton, and James Soukup*
P.O. Box 52396
Durham, North Carolina 27717
Telephone: (919) 493-6464
Facsimile:  (919) 493-1218
jmaxwell@mfbpa.com

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RYAN MCFADYEN, *et al*,           )
                                  )
            Plaintiffs,           )
                                  )
v.                                )        Case No. 1:07-CV-00953
                                  )
DUKE UNIVERSITY, *et al*,         )
                                  )
            Defendants.           )
_____

**CERTIFICATE OF SERVICE**
_____

I hereby certify that the foregoing was electronically filed with the Clerk of the

Court using the CM/ECF system, which will send notification of such filing to the

following:

Robert C. Exstrand
EXSTRAND & EXSTRAND, LLP
811 Ninth Street, Suite 260
Durham, North Carolina 27705
rce@ninthstreetlaw.com
*Attorneys for Plaintiffs*

James D. Cowan, Jr.
Dixie T. Wells
ELLIS & WINTERS, LLP
333 N. Greene Street, Suite 200
Greensboro, NC 27401
don.cowan@elliswinters.com
dixie.wells@elliswinters.com
*Attorneys for Defendants Duke
University, Duke University Health
System, Inc., Richard Brodhead,
Peter Lange, Larry Moneta,
John Burness, Tallman Trask,
Suzanne Wasiolek, Matthew
Drummond, Aaron Graves,
Robert Dean, Tara Levicy, Theresa
Arico, Kate Hendricks, Victor Dzau*

Jamie S. Gorelick
Jennifer M. O'Connor
Paul R.Q. Wolfson
William F. Lee
WILMER, CUTLER, PICKERING, HALE,
and DORR, LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006
jamie.gorelick@wilmerhale.com
jennifer.oconnor@wilmerhale.com
paul.wolfson@wilmerhale.com
william.lee@wilmerhale.com
*Attorneys for Defendants Duke
University, Duke University Health System,
Inc., Richard Brodhead,
Peter Lange, Larry Moneta,
John Burness, Tallman Trask,
Suzanne Wasiolek, Matthew
Drummond, Aaron Graves,
Robert Dean, Tara Levicy, Theresa
Arico, Kate Hendricks, Victor Dzau*

Dan J. McLamb
Shirley M. Pruitt
T. Carlton Younger, III
YATES, MCLAMB & WEYHER, LLP
P.O. Box 2889
Raleigh, NC 27602-2889
dmclamb@ymwlaw.com
spruitt@ymwlaw.com
cyounger@ymwlaw.com
*Attorneys for Defendants Duke
University Health Systems, Inc.,
Tara Levicy, and Theresa Arico*

Robert A. Saar
Nicholas J. Sanservino, Jr.
OGLETREE DEAKINS NASH SMOAK
& STEWART, PC
2301 Sugar Bush Rd., Suite 600
Raleigh, NC 27612
*Attorneys for DNA Security*

Robert J. King, III
Kearns Davis
BROOKS, PIERCE, McLENDON,
HUMPHREY & LEONARD, LLP
Post Office Box 26000
Greensboro, NC 27420
*Attorneys for Defendants DNA Security,
Inc. and Richard Clark*

James A. Roberts, III
LEWIS & ROBERTS, PLLC
1305 Navaho Drive, Suite 400
Raleigh, NC 27605
*Attorneys for Brian Meehan*

Paul R. Dickinson, Jr.
LEWIS & ROBERTS, PLLC
590 Fairview Rd., Suite 102
Charlotte, NC 28210
*Attorneys for Brian Meehan*

Reginald B. Gillespie, Jr.
FAISON & GILLESPIE
Post Office Box 51729
Durham, NC 27717
rgillespie@faison-gillespie.com
*Attorneys for Defendant City of Durham*

David W. Long
Eric P. Stevens
POYNER & SPRUILL, LLP
Post Office Box 1801
Raleigh, NC 27602-1801
*Attorneys for Defendant Gottlieb*

Joel M. Craig
Henry W. Sappenfield
KENNON, CRAVER, BELO, CRAIG &
MCKEE, PLLC
Post Office Box 51579
P.O. Box 51579
Durham, NC 27717-1579
*Attorneys for Defendant Himan*

James B. Maxwell
MAXWELL, FREEMAN & BOWMAN,
P.A.
Post Office Box 52396
Durham, NC 27717
*Attorneys for Defendant Addison*

Linwood Wilson
6910 Innesbrook Way
Bahama, NC 27503-9700
*Pro Se*

I further certify that a copy of the foregoing was served today upon each of the following non CM/ECF participants by United States mail, postage prepaid, addressed as follows:

> Roger E. Warrin
> Michael A. Vatis
> John P. Nolan
> Leah M. Quadrino
> STEPTOE & JOHNSON, LLP
> 1330 Connecticut Ave. N.W.
> Washington, DC 20036
> *Attorneys for Defendant City of Durham*

This the 24th day of June, 2009.

> Respectfully submitted,
>
> By: /s/ Patrica P. Kerner
>      Patricia P. Kerner
> N.C. State Bar No. 13005
> *Attorneys for Defendants Baker, Chalmers,*
> *Council, Evans, Hodge, Lamb, Mihaich,*
> *Ripberger, and Russ*
> 434 Fayetteville Street, Suite 1900
> Raleigh, North Carolina 27601
> Telephone: (919) 835-4100
> Facsimile: (919) 829-8714
> tricia.kerner@troutmansanders.com