# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

### CIVIL ACTION NUMBER 1:07-CV-00953

RYAN McFADYEN, et al.,

        Plaintiffs,

v.

DUKE UNIVERSITY, et al.,

        Defendants.

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DUKE UNIVERSITY DEFENDANTS', DUKE SANE DEFENDANTS', AND DUKE POLICE DEFENDANTS' MOTION TO DISMISS COUNT 41 OF PLAINTIFFS' SECOND AMENDED COMPLAINT**

Pursuant to this Court's Order of February 16, 2010 (Dkt. 135), and pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rules 7.2 and 7.3, Duke University moves to dismiss Count 41 of Plaintiffs' Second Amended Complaint ("SAC") for failure to state a claim on which relief may be granted.[1]  In Count 41, Plaintiffs allege that Duke University is liable for violations of Plaintiffs' rights under Article I, Sections 1, 14, 15, and 19, and Article IX, Section 1 of the North Carolina Constitution.  SAC ¶ 1383. Plaintiffs allege that Duke University is liable based on the "acts, omissions, agreements, and concerted conduct" of the Duke University Police Department—as alleged in the "foregoing" 1381 paragraphs of the SAC—and that those unspecified acts or omissions of the Duke Police Department "constituted willful abuses and perversions of the police

---

[1]     Also pursuant to this Court's Order of February 16, 2010 (Dkt. 135), the Duke University Defendants, the Duke SANE Defendants, and the Duke Police Defendants have filed Renewed Motions to Dismiss all the other claims asserted against them in Plaintiffs' SAC.

powers" that violated Plaintiffs' state constitutional rights. SAC ¶ 1383. Plaintiffs raise the state constitutional claims in Count 41 only in the alternative, in the event that their common law claims provide an inadequate remedy to redress their alleged injuries. SAC ¶ 1385; *see, e.g.*, *Craig ex rel. Craig v. New Hanover County Bd. of Educ.*, 363 N.C. 334, 340-342, 678 S.E.2d 351, 355-357 (2009) (where a plaintiff's common law claim is "entirely precluded" by sovereign immunity such that he is without an adequate state remedy, plaintiff may seek redress of alleged injuries directly under the North Carolina Constitution).

Count 41 should be dismissed for two independent reasons. First, Plaintiffs cannot proceed directly under the state constitution because their common law claims based on the alleged acts or omissions of the Duke Police Department provide them with an adequate state remedy. Second, Plaintiffs have failed to state a claim for relief, both as a pleading matter and as a substantive matter of North Carolina constitutional law.

## I.     PLAINTIFFS MAY NOT PROCEED DIRECTLY UNDER THE STATE CONSTITUTION

The North Carolina Supreme Court held in *Craig* that, where a plaintiff's common law claims are "entirely precluded" by governmental immunity such that the plaintiff is without an adequate state remedy, the plaintiff may pursue a claim directly under the North Carolina Constitution. 363 N.C. at 340, 342, 678 S.E.2d at 355, 356-357. This ruling provides no benefit to Plaintiffs, for two reasons. First, none of the Duke Defendants moved to dismiss any of Plaintiffs' claims against them based on governmental immunity. Second, Plaintiffs' remedies are not "inadequate" under *Craig*

- 2 -

merely because Plaintiffs' common law claims are subject to dismissal for failure to state

a claim. Plaintiffs' common law claims based on the alleged conduct of the Duke Police

are barred not because of immunity, but because the claims have no grounding as a

matter of law.

> **A.** **Plaintiffs' Remedies Are Not Inadequate Under *Craig* On The Ground That Their Common Law Claims Are "Entirely Precluded" By Sovereign Immunity**

Under *Craig*, a prerequisite to allowing a plaintiff to proceed directly under the

state constitution is a conclusion that the plaintiff's common law remedies are "entirely

precluded by the application of the doctrine of sovereign immunity."[2] 363 N.C. at 340-

342, 678 S.E.2d at 356-357. That precondition is absent here. Neither the Duke Police

Defendants, nor any of the other Duke Defendants, moved to dismiss Plaintiffs' claims

based on sovereign immunity. Rather, the Duke Police Defendants—in response to

Plaintiffs' allegations that the Duke University Police Department had negligently

---

[2]    In *Craig*, the North Carolina Supreme Court explained that, although the lower court in that case had used the term "sovereign immunity" when discussing the action against the school board, the more precise term was "governmental immunity" because the school board was a county, rather than a state, agency. 363 N.C. at 335 n.3, 678 S.E.2d at 353 n.3. The Court explained, however, that "[i]n application here, that distinction is immaterial." *Id.* Plaintiffs suggest that what the *Craig* Court meant was that "the court was not concerned with which particular defense or immunity" defeats the plaintiff's common law claim because Plaintiffs can bring their state constitutional claims if their common law claims fail for *any* reason. *See* Plaintiffs' Reply Supporting Motion for Leave to Amend at 4 (Dkt. 133). Plaintiffs' reading of *Craig* is incorrect. *See* Order on Plaintiffs' Motion for Leave to Amend the Pleadings at 1 (Dkt. 135) (noting that *Craig* "held that where a plaintiff's claim *is precluded by a governmental immunity defense*, the plaintiff is without an 'adequate remedy at state law' and can assert a claim directly under the state Constitution") (emphasis added) (quoting *Craig*, 363 N.C. at 339-340, 678 S.E.2d at 355-356).

abdicated its alleged "statutory authority" to investigate the rape allegations, instead improperly allowing the Durham Police to investigate the alleged crime—argued that Plaintiffs' negligence claims against the Duke Police fail as a matter of law because the Duke Police owed no duty of care to Plaintiffs under established common law principles. *See* Brief in Support of Duke Police Def. Mot. to Dismiss at 9-10 (Dkt. 50).

In making that argument, the Duke Police Defendants relied on the public duty doctrine, a common law principle that public authorities such as the police generally do not have an actionable duty of care to individuals. The public duty doctrine is not an immunity. In *Myers v. McGrady*, 360 N.C. 460, 628 S.E.2d 761 (2006), the North Carolina Supreme Court made clear that a defense of a judicially-created immunity, such as sovereign or governmental immunity, is separate and distinct from a defense under the public duty doctrine. In *Myers*, the plaintiffs sued the North Carolina Division of Forest Resources for negligence based on an automobile accident allegedly caused by a forest fire. The court held that, even though the state had waived sovereign immunity under the North Carolina State Tort Claims Act, the plaintiffs nonetheless failed to state a claim because the duty allegedly violated—to "prevent, control and extinguish forest fires"— was a public duty, and not one owed to the individual plaintiffs. *Id*. at 463, 628 S.E.2d at 764.[3] In the absence of a duty to the plaintiff, a negligence claim fails as a matter of law.

---

[3]     *See also id*. ("A civil plaintiff seeking to sue a state agency for negligence for failure to carry out statutorily delegated responsibilities must overcome two limitations that are not present in suits against private individuals: (1) the State must have waived sovereign immunity as to the plaintiff's claim, and (2) the duty alleged by the plaintiff

- 4 -

*Id.* The *Myers* court thus made clear that the public duty doctrine is not an immunity—it is "a separate rule of common law negligence that may limit tort liability, even when the State has waived sovereign immunity." *Id.* at 465, 628 S.E.2d at 766.

### B. Plaintiffs' Remedies Are Not Inadequate Under *Craig* Merely Because Their Common Law Claims Are Subject To Dismissal Under Rule 12(b)(6)

Plaintiffs acknowledge that a state constitutional claim may proceed *only* in the absence of an adequate state remedy. Plaintiffs' Mot. for Leave to Amend at 1 (Dkt. 130); *see also Craig*, 363 N.C. at 334, 678 S.E.2d at 338; *Corum v. Univ. of N.C.*, 330 N.C. 761, 782, 413 S.E.2d 276, 289 (1992). Plaintiffs' remedies are not "inadequate" merely because their common law theories fail as a matter of law. As *Craig* held, state law remedies for common law claims are inadequate when those claims are "entirely precluded" by a defense of governmental immunity. *Craig*, 363 N.C. at 340, 678 S.E.2d at 355-356. *Craig* further explained that a state law remedy is not "inadequate" simply because the plaintiff's common law claim is subject to dismissal at the pleading stage for some other reason. *Id.* (distinguishing circumstances in which a plaintiff's claim is defeated by defenses such as the expiration of the statute of limitations from circumstances in which a governmental immunity defense "entirely precludes" the claim).

---

may not be a public duty previously recognized by this Court. If the State has not waived sovereign immunity, then it is immune from the plaintiff's suit in North Carolina courts. … If the plaintiff alleges negligence by failure to carry out a recognized public duty, and the State does not owe a corresponding special duty of care to the plaintiff individually, then the plaintiff has failed to state a claim in negligence." (citations omitted)).

- 5 -

Plaintiffs' suggestion that they have an inadequate state remedy if they fail to prevail on their common law claims for *any* reason, *see* Plaintiffs' Reply Supporting Motion for Leave to Amend at 4 (Dkt. 133), finds no support in North Carolina law. It is well-established under North Carolina law that a plaintiff's failure to allege, or inability to prove, the elements necessary to prevail on a common law claim does not render those claims "inadequate" so as to allow the plaintiff to bring a direct constitutional claim for those same alleged injuries. *See Copper v. Denlinger,* ___ N.C. ___, 688 S.E.2d 426, 429 (N.C. 2010) (affirming trial court's dismissal of state constitutional claim against school board where plaintiff had an available remedy under state law to redress his alleged injury but failed to pursue it); *Rousselo v. Starling*, 128 N.C. App. 439, 449, 495 S.E.2d 725, 732 (1998) (affirming dismissal of plaintiff's state constitutional claim, explaining that plaintiff was not without an adequate state remedy simply because plaintiff could not demonstrate the additional elements necessary to overcome defenses to plaintiff's common law claims); *Alt v. Parker*, 112 N.C. App. 307, 317-318, 435 S.E.2d 773, 779 (1993) (affirming dismissal of plaintiff's state constitutional claim because plaintiff's common law claim for false imprisonment was an adequate state remedy, even though that claim would be dismissed for insufficiency of the proffered evidence); *see also Love-Lane v. Martin*, 355 F.3d 766, 789 (4th Cir. 2004) (affirming dismissal of plaintiff's free speech and discrimination claims under the North Carolina Constitution where plaintiff could have brought an action under a North Carolina statute to redress her alleged injuries); *Seaton v. Owens,* No. 02-00734, 2003 WL 22937693, at *8-9 (M.D.N.C. Dec.

- 6 -

8, 2003) (dismissing state constitutional claims; plaintiff was not without an adequate state remedy merely because he could not show the additional elements necessary to his common law claims); *Wilkins v. Good*, No. 98-00233, 1999 WL 33320960, at *8 (W.D.N.C. July 29, 1999) (dismissing state constitutional claims; plaintiffs did not lack an adequate state remedy even though their common law claims were barred by the statute of limitations).

Plaintiffs' common law claims fail, not because of immunity, but because the Duke Police Defendants did not owe them an actionable duty as a matter of law or because the claims are otherwise groundless. That does not make Plaintiffs' remedies "inadequate"; rather, it means that their claims fail on the merits. That is not a basis to allow Plaintiffs to proceed under the state constitution. Accordingly, Count 41 should be dismissed.

## II.    PLAINTIFFS FAIL TO STATE ANY VIOLATION OF THE NORTH CAROLINA CONSTITUTION

Even if Plaintiffs were "without an adequate remedy" under *Craig* and could therefore assert a claim directly under the state constitution, Count 41 should be dismissed, for two independent reasons: it fails to satisfy basic pleading requirements, and it fails to state any violation of the North Carolina Constitution.

### A.    Plaintiffs' State Constitutional Claims Are Deficiently Pleaded

Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Count 41 fails to

meet this standard.

In Count 41, Plaintiffs incorporate "all of the preceding allegations (¶¶ 1-1381)," and then assert that "the foregoing . . . acts, omissions, agreements, and concerted conduct" of the Duke University Police Department "constituted willful abuses and perversions of the police powers bestowed upon . . . Duke University . . . which directly and foreseeably caused deprivations of the rights guaranteed to the Plaintiffs by Article I, §§ 1, 14, 15, and 19 and Article IX § 1 of the North Carolina Constitution." SAC ¶ 1383. Count 41, however, fails to identify which particular factual allegations—in the over 400 pages of the SAC that are "incorporated" into Count 41—are relevant to Plaintiffs' various state constitutional claims. The "short and plain statement" requirement of Rule 8 is not met where the Court and the Defendants "are forced to ferret out the relevant material from a mass of verbiage." Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1281 (3d ed.). Here, Count 41's allegation that (unspecified) "acts and omissions" of the Duke Police—alleged somewhere in the SAC's 1381 previous paragraphs—violated various state constitutional rights (in unspecified ways), "does not permit [Duke University] a meaningful opportunity to respond," and should be dismissed. *Lawson v. Virginia*, No. 01-180, 2002 WL 771901, at *2 (M.D.N.C. Mar. 22, 2002) (striking pleading because it was a "rambling, prolix statement" that provided inadequate opportunity to respond), *aff'd*, 36 Fed. Appx. 537 (4th Cir. 2002); *see also Ajuluchuku v. Stacey*, No. 07-0069, 2008 WL 345616, at *1 (M.D.N.C. Feb. 05, 2008) (proper disposition of a complaint which is "verbose, redundant, confusing, ambiguous, unintelligible, prolix, or

- 8 -

argumentative" is to dismiss it); *Wenger v. Lumisys, Inc.,* 2 F. Supp. 2d 1231, 1243 (N.D. Cal. 1998) (complaint failed to conform with Rule 8 because it "require[d] a laborious deconstruction and reconstruction of a great web of scattered, vague, redundant, and often irrelevant allegations").[4]

In addition, Plaintiffs' conclusory allegations that unspecified acts or omissions of the Duke Police Department constituted "willful abuses and perversions" of police powers, SAC ¶ 1383, are precisely the kind of "unadorned, the-defendant-unlawfully-harmed-me accusation" that the Supreme Court found failed to state a claim under Rule 8. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (conclusory statements or "[t]hreadbare recitals of the elements of a cause of action" are insufficient to state a claim); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Francis v. Giacomelli*, 588 F.3d 186, 197 (4th Cir. 2009) (affirming dismissal of discrimination claims against police because the allegations were "conclusory" or "amount[ed] to no

---

[4]     Although Plaintiffs do not identify which factual allegations in the SAC they rely on in Count 41, it is clear that they may not rely on the *entire* SAC.  *Craig* explained that, when a plaintiff may bring claims under the state constitution because his common law claims are barred by immunity, the constitutional claims must be "based on the same facts that formed the basis" for the common law claims.  363 N.C. at 340, 678 S.E.2d at 355.  Plaintiffs' common law claims based on the acts or omissions of the Duke Police Department sound in negligence (for improperly "ceding" the rape investigation to the Durham authorities), invasion of privacy (for not intervening to prevent the Durham Police from executing a sealed, judicially issued search warrant), and fraud (for failing to advise Plaintiffs that subpoenaed information had already been provided to Durham Police).  *See* SAC ¶¶ 1229-1234; 1249-1260; 1289-1300; 1354-1381; Duke Police Br. at 7-31 (Dkt. 50); Duke Police Reply Br. at 2-11, 14-18 (Dkt. 99).  The factual bases for those claims fail to support any of Plaintiffs' state constitutional claims in Count 41: Duke University cannot be liable under any legal theory for "ceding" an investigation that was not theirs to cede or for failing to intervene in Durham's investigation.

- 9 -

more than a legal conclusion"). And as with their other claims, Plaintiffs have failed to plead sufficient facts to "plausibly suggest" that they are entitled to relief against Duke University. *See* Duke Supp. Br. 2-4 (Dkt. 120); *Iqbal*, 129 S. Ct. at 1950-1951 (requiring plaintiff to allege "more than the mere possibility of misconduct").

## B. Plaintiffs Fail To Allege The Deprivation of Any Rights Under the North Carolina Constitution

Count 41 should be dismissed in any event because it fails to allege any deprivations of rights under the North Carolina Constitution.[5] Plaintiffs invoke Article I, Sections 1 (equality and rights of persons), 14 (freedom of speech and press), 15 (education), and 19 (law of the land; equal protection of the laws) and Article IX, Section 1 (education encouraged) of the North Carolina Constitution, but fail to state any violations of those provisions.

### 1. Article I, Section 15 and Article IX, Section 1 (Education)

Plaintiffs allege that they "suffered the loss of education" in violation of Article I, Section 15, and Article IX, Section 1 of the North Carolina Constitution. SAC ¶ 1384. This allegation does not state a claim for relief because the North Carolina Constitution

---

[5]     Count 41 also fails because Plaintiffs' conclusory assertions that Duke Defendants conspired with Durham are insufficient to establish the state action required to hold Duke University liable for an alleged constitutional violation. *See Craig*, 363 N.C. at 339, 678 S.E.2d at 355 (individual rights under the state constitution are protected against encroachment by the state); *Corum*, 330 N.C. at 788, 413 S.E.2d at 293 (state constitutional claim could be asserted "only against state officials, sued in their official capacity"); *see also* Duke Br. 9-12 (Dkt. 46), Duke Reply Br. 1 n.2 (Dkt. 97), Duke SANE Br. 7-8 (Dkt. 48), Duke SANE Reply Br. 9-10 (Dkt. 98), Duke Police Br. 31 n. 21 (Dkt. 50), Duke Police Reply Br. 11-12 (Dkt. 99).

does not guarantee a right to a college education at a private university. Instead, Article I and Article IX together protect the right of every *child* within the state of North Carolina to receive a *basic, public* education. *See Sneed v. Greensboro City Bd. of Educ.*, 299 N.C. 609, 618, 264 S.E.2d 106, 113 (1980) (Article IX and Article I, § 15 protect "equal access to participation in [the state's] public school system"); *see also Leandro v. State*, 346 N.C. 336, 347, 488 S.E.2d 249, 255 (1997) (North Carolina Constitution guarantees "every child of this state an opportunity to receive a sound basic education in our public schools"); *Britt v. N.C. State Bd. of Educ.*, 86 N.C. App. 282, 289, 357 S.E.2d 432, 436 (1987) (North Carolina Constitution protects the "fundamental right" of "every child . . . to receive an education in our public schools"); *Mebane Graded School Dist. v. Alamance County*, 211 N.C. 213, 189 S.E. 873, 879 (1937) (state has duty to provide "a general and uniform system of public schools" accessible to "all children of the State"). No authority extends Article I, Section 15, and Article IX, Section 1, to protect the right to a college education at a private institution like Duke University. Accordingly, these claims should be dismissed.

### 2. Article I, Sections 1, 14, and 19 (Free Speech, Due Process, and Equal Protection)

Plaintiffs also bring claims for deprivations of their free speech, due process, and equal protection rights under the state constitution. SAC ¶ 1383. North Carolina courts have consistently treated free speech, due process, and equal protection claims under the North Carolina Constitution as equivalent to claims under their First and Fourteenth

Amendment counterparts. *See State v. Petersilie*, 334 N.C. 169, 184, 432 S.E.2d 832, 841 (1993) (adopting United States Supreme Court's First Amendment jurisprudence in applying North Carolina Constitution's Free Speech Clause); *State v. Felmet*, 302 N.C. 173, 178, 273 S.E.2d 708, 712 (1981) (dismissing free speech claims under both federal and state constitutions and expressly refusing to interpret the free speech clause of the North Carolina Constitution to provide greater protections than the First Amendment); *Bacon v. Lee*, 353 N.C. 696, 719 n.11, 720-21, 549 S.E.2d 840, 856 n.11, 856-857 (2001) (stating that due process and equal protection challenges under the North Carolina Constitution are resolved by applying "the same test used by federal courts under the parallel clause in the United States Constitution"); *see also Tri-County Paving, Inc. v. Ashe County*, 281 F.3d 430, 435 n.6 (4th Cir. 2002); *Toomer v. Garrett*, 155 N.C. App. 462, 474, 476, 574 S.E.2d 76, 88 (2002).[6]

As the Duke Defendants have explained in detail in their motions to dismiss, Plaintiffs have failed to state a claim for any violation of their federal constitutional

---

[6]     Plaintiffs also assert a claim under Article I, Section 1 of the North Carolina Constitution, which provides that "all persons are created equal; that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty, the enjoyment of the fruits of their own labor, and the pursuit of happiness." N.C. Const. art. I, § 1. The North Carolina Supreme Court has "ma[d]e it clear that Article I, Section 1 is intended to be a check against the government's excessive regulation of business affairs." *Sanders v. State Personnel Comm'n*, 677 S.E.2d 182, 190-191 (N.C. Ct. App. 2009). To the extent this provision also protects equal protection rights, the same standards used to evaluate Article I, Section 19 are employed. *See, e.g., Rosie J. v. N.C. Dep't of Human Res.*, 347 N.C. 247, 251-252, 491 S.E.2d 535, 537-538 (1997) (construing Article I, §§ 1 and 19 collectively).

rights.[7]  Plaintiffs' state constitutional claims in Count 41 do not depend on any

additional factual allegations.  Accordingly, Count 41 similarly fails to state any claim

under the analogous provisions of the North Carolina Constitution.

Plaintiffs' free speech, due process, and equal protection claims in Count 41 fail

for additional reasons as well:

**Free speech**.  Plaintiffs' free speech claim fails at the threshold, because nowhere

in the SAC have Plaintiffs alleged that they engaged in any protected speech activity.  *See*

*Glenn-Robinson v. Acker*, 140 N.C. App. 606, 631, 538 S.E.2d 601, 619 (2000) (plaintiff

failed to raise a free speech claim under the North Carolina Constitution where "plaintiff

does not allege . . . that any action by [defendants] has restricted her speech or deterred

her from speaking on any subject").  Plaintiffs cannot rely on the allegations that Duke

University interfered with the lacrosse team's voter registration efforts because the SAC

nowhere alleges that any of these three Plaintiffs *personally*—as opposed to other

members of the lacrosse team—were actually "stopped and detained" when trying to

register voters.  SAC ¶¶ 883-884.  In any event, decisions under both the state and federal

constitutions make clear that Plaintiffs had no free speech right to engage in political

activity on Duke's privately owned land.  *See State v. Marcoplos*, 159 N.C. App. 707,

583 S.E.2d 726 (2003) (per curiam) (no right under the federal or state constitution to

hold political protest on privately owned property held open to the public); *Felmet*, 302

---

[7]      *See* Duke Br. 8-40 (Dkt. 46), Duke Reply Br. 1-19 (Dkt. 97), Duke SANE Br. 7-20
(Dkt. 48), Duke SANE Reply Br. 9-17 (Dkt. 98), Duke Police Br. 31-34 (Dkt. 50), Duke
Police Reply Br. 11-14 (Dkt. 99).

N.C. at 177-178, 273 S.E.2d at 711-712 (no right under the federal or state constitution to conduct political activity in a privately-owned mall parking lot); *see also* Duke Reply Br. 4-5 & n.6 (Dkt. 97).

Nor is there merit under the state constitution to Plaintiffs' claim that they had a free speech right not to speak to the police during the investigation and that the alleged conspiracy to frame them was retaliation for exercising that right. Retaliation claims brought under the state constitution are analyzed in the same way as are analogous claims under the federal constitution, and a prerequisite to such retaliation claims is identifying the constitutionally protected speech that motivated the supposed retaliation. *See Sheaffer v. County of Chatham*, 337 F. Supp. 2d 709, 718-720, 729-730 (M.D.N.C. 2004). But no decision of which the Duke Defendants are aware treats the right not to speak to police during a criminal investigation as a free speech right; indeed, several courts have rejected that idea.[8] Moreover, Plaintiffs do not allege that they were forced to disseminate a particular political or ideological message, or to subsidize speech to which they object; they contend only that they did not wish to submit to police questioning. This case therefore does not present any issue of "compelled speech." *Cf. Johanns v. Livestock Marketing Ass'n*, 544 U.S. 550, 557 (2005) (noting that the Supreme Court has sustained First Amendment "challenges to allegedly compelled

---

[8]   *See Albright v. Rodriguez*, 51 F.3d 1531, 1539 (10th Cir. 1995) (finding no "case recognizing a First Amendment right to refuse to identify one's self to a police officer during a lawful investigative stop"); *Niebur v. Town of Cicero*, No. 98-4157, 1998 WL 677155, at *7 (N.D. Ill. Sept. 22, 1998) (holding that the refusal to answer investigators' questions "may be protected, but not by the First Amendment").

- 14 -

expression in two categories of cases: true 'compelled-speech' cases, in which an individual is obliged personally to express a message he disagrees with, imposed by the government; and 'compelled-subsidy' cases, in which an individual is required by the government to subsidize a message he disagrees with, expressed by a private entity").

**Due Process**. Plaintiffs were never arrested, indicted, or convicted of a crime, and they therefore cannot allege any deprivation of liberty on those grounds. The only possible proceedings involving these Plaintiffs that could have implicated a cognizable liberty interest were related to the Non-Testimonial Identification Order (NTID) (the court-ordered collection of DNA samples from 46 members of the lacrosse team) and the search of Plaintiff McFadyen's dormitory room pursuant to a court-issued search warrant.

Those alleged deprivations do not state a claim under Article I, Section 19 of the North Carolina Constitution, for several reasons. First, Plaintiffs have adequate common law remedies for those alleged injuries that they elected not to pursue: trespass to chattels and false imprisonment. *See Rousselo*, 128 N.C. App. at 448-450, 495 S.E.2d at 731-732 (trespass to chattels and false imprisonment are adequate common law remedies for illegal search and seizure that bar direct claim under state constitution); *Copper*, 688 S.E.2d at 428-429 (common law remedy that was available but which plaintiffs did not pursue is an adequate state remedy that bars direct constitutional claims based on the same facts).

Moreover, any claim under the North Carolina Constitution for an illegal search and seizure would arise under Article I, Section 20—a claim Plaintiffs do not raise in

- 15 -

Count 41—rather than Section 19. *See State v. Carter*, 322 N.C. 709, 712-713, 370 S.E.2d 553, 555 (1988) (Article I, Section 20 of the North Carolina Constitution forbids unreasonable searches and seizures). Just as federal courts treat allegedly illegal searches and seizures as violations of the Fourth Amendment rather than the Due Process Clause, *see Graham v. Connor*, 490 U.S. 386 (1989), so do the North Carolina courts treat allegedly illegal searches and seizures as violations of Article I, Section 20. *See State v. McClendon*, 350 N.C. 630, 636, 517 S.E.2d 128, 132 (1999) ("Article I, Section 20 of our North Carolina Constitution, like the Fourth Amendment, protects against *unreasonable* searches and seizures."); *State v. Styles*, 362 N.C. 412, 414, 665 S.E.2d 438, 439 (2008) ("The Fourth Amendment protects individuals against 'unreasonable searches and seizures,' U.S. Const. amend. IV, and the North Carolina Constitution provides similar protection, N.C. Const. art. I, § 20.").

Finally, Plaintiffs have failed to state any claim against Duke University for an illegal search or seizure under the state constitution for the same reasons that they have failed to state a claim under the analogous standards of the Fourth Amendment. *See* Duke SANE Br. 9-16 (Dkt. 48); Duke SANE Reply Br. 9-14 (Dkt. 98).

**Equal Protection**. Plaintiffs have contended that they were subjected to a wrongful criminal investigation by the Durham Police and District Attorney that was motivated by animus against them as "out-of-staters" and as white men. Plaintiffs have further argued that the Duke Police contributed to that wrongdoing by conspiring to "cede" the criminal investigation to the Durham Police and the District Attorney and then

failing to intervene to stop alleged abuses by the Durham authorities. *See* Duke Br. 24-40 (Dkt. 46); Duke Reply Br. 6-19 (Dkt. 97); Duke Police Br. 31-34 (Dkt. 50); Duke Police Reply Br. 11-14 (Dkt. 99).

Nothing in these allegations states a claim for an equal protection violation under the North Carolina Constitution. "Out-of-staters" are clearly not a suspect or protected class for purposes of the Fourteenth Amendment, and they are not a suspect class under the North Carolina Constitution. *See, e.g.*, *Graham v. Richardson*, 403 U.S. 365, 372 (1971) (classifications based on race, alienage, and nationality are suspect); *Bacon*, 353 N.C. at 719 n.11, 720-721, 549 S.E.2d at 856 n.11, 856-857 (equal protection challenges under the North Carolina Constitution are resolved by applying "the same test used by federal courts under the parallel clause in the United States Constitution").

Count 41 also fails to allege any improper action based on race. An equal protection violation occurs "when *the government* distinguishes among the citizenry on the basis of race." *Monroe v. City of Charlottesville*, 579 F.3d 380, 388 (4th Cir. 2009), *cert. denied*, ___ S. Ct.___, 2010 WL 757718 (Mar. 8, 2010) (No. 09-795). Further, to violate an individual's equal protection rights, the government must act with a discriminatory purpose, which "implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Adm'r v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted).

- 17 -

Here, the Durham police did not select Plaintiffs for investigation "because of" their race, that is, based on a racial classification; rather, the Durham Police investigated Plaintiffs because the complainant identified her assailants as white males who attended a party hosted by Duke lacrosse team members.[9]  This case is therefore closely analogous to *Monroe*, where the Fourth Circuit ruled that the plaintiff failed to state an equal protection claim based on his allegations that the police had approached and questioned him about a rape because he was African-American.  As the Fourth Circuit explained, the case involved no government classification based on race because it was the victim of the crime who described her assailant as an African-American male, and the police subsequently approached the plaintiff because he matched that description.  *Monroe*, 579 F.3d at 387.  Indeed, the Fourth Circuit noted that, under *Iqbal*, the plaintiff's claim that he was approached by police *because* he was African-American was not even plausible. *Id.* at 389.  So too here, the alleged victim described her assailants to the Durham police as white men who attended a Duke lacrosse party, and the investigation proceeded based on that description.

* * * * *

In sum, Plaintiffs may not pursue claims directly under the state constitution because they have adequate remedies in common law claims, which are not precluded by

---

[9]     *See* SAC ¶ 83 (Mangum claimed she was raped at a party at 610 N. Buchanan), ¶ 317 (Mangum described her attackers as white men), ¶ 363 (same); *see also* Duke SANE Br., Ex. 2 at 9 (Dkt. 48); *id.*, Ex. 3 at 7 (NTID application made clear that the three residents of 610 N. Buchanan told the police that only "their fellow Duke Lacrosse Team Members … attended the party" at which the alleged rape occurred).

immunity; to the extent the public duty doctrine (which is not an immunity) bars their common law claims, or to the extent that Plaintiffs' claims otherwise fail as a matter of law, that does not make their remedies "inadequate" under *Craig*. Moreover, the alleged acts or omissions of the Duke Police that underlie Plaintiffs' common law claims provide no basis for any of Plaintiffs' state constitutional claims. Indeed, Plaintiffs have failed to state any deprivation of rights under the state constitution at all. Accordingly, Count 41 of the Second Amended Complaint should be dismissed.

/s/ Jamie S. Gorelick

_____

Jamie S. Gorelick
District of Columbia Bar No. 101370
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Ave., N.W.
Washington, D.C. 20006
Telephone: (202) 663-6500
Facsimile: (202) 663-6363
Email: jamie.gorelick@wilmerhale.com

*Counsel for Duke University Defendants,*
*Duke SANE Defendants, and Duke Police*
*Defendants*

/s/ J. Donald Cowan, Jr.

_____

J. Donald Cowan, Jr.
N.C. State Bar No. 0968
Ellis & Winters LLP
333 N. Greene Street, Suite 200
Greensboro, N.C. 27401
Telephone: (336) 217-4193
Facsimile: (336) 217-4198
Email: don.cowan@elliswinters.com

*Counsel for Duke University Defendants*
*and Duke Police Defendants*

/s/ Dan J. McLamb

_____

Dan J. McLamb
N.C. State Bar No. 6272
Yates, McLamb & Weyher, LLP
421 Fayetteville Street, Suite 1200
Raleigh, N.C. 27601
Telephone: (919) 835-0900
Facsimile: (919) 835-0910
Email: dmclamb@ymwlaw.com

*Counsel for Duke SANE Defendants*

- 20 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 16, 2010, I electronically filed the foregoing Supplemental Memorandum in Support of Duke University Defendants', Duke SANE Defendants', and Duke Police Defendants' Motion to Dismiss Count 41 of Plaintiffs' Second Amended Complaint with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

*Counsel for the Plaintiffs*
Robert C. Ekstrand
Email: rce@ninthstreetlaw.com

*Counsel for City of Durham and Edward Sarvis*
Reginald B. Gillespie, Jr.
Email: rgillespie@faison-gillespie.com

*Counsel for Patrick Baker, Steven Chalmers, Ronald Hodge, Lee Russ, Stephen, Mihaich, Beverly Council, Jeff Lamb, Michael Ripberger, and Laird Evans*

Patricia P. Kerner
Email: tricia.kerner@troutmansanders.com

D. Martin Warf
Email: martin.warf@troutmansanders.com

Hannah Gray Styron
Email: hannah.styron@troutmansanders.com

*Counsel for James T. Soukup, Kammie Michael, David Addison, Richard D. Clayton*
James B. Maxwell
Email: jmaxwell@mfbpa.com

*Counsel for Mark Gottlieb*
　　　David William Long
　　　Email:  dlong@poynerspruill.com

　　　Eric P. Stevens
　　　Email:  estevens@poyners.com

*Counsel for Benjamin Himan*
　　　Henry W. Sappenfield
　　　Email:  hsappenfield@kennoncraver.com

　　　Joel Miller Craig
　　　Email:  jcraig@kennoncraver.com

*Counsel for DNA Security, Inc., Richard Clark*
　　　Kearns Davis
　　　Email:  kdavis@brookspierce.com

　　　Robert James King, III
　　　Email:  rking@brookspierce.com

　　　Clinton R. Pinyan
　　　Email:  cpinyan@brookspierce.com

*Counsel for Brian Meehan*
　　　James Avery Roberts, III
　　　Email:  jimroberts@lewis-roberts.com

　　　Paul R. Dickinson, Jr.
　　　Email:  pauldickinson@lewis-roberts.com

*Counsel for J. Wesley Covington*
　　　Kenneth Kyre, Jr.
　　　Email:  kkyre@pckb-law.com

*Linwood Wilson, pro se*
　　　Email:  redacted

/s/  Jamie S. Gorelick
Jamie S. Gorelick

Attorney for Duke University, Richard H.
Brodhead, Stephen Bryan, John Burness, Kemel
Dawkins, Matthew Drummond, Victor J. Dzau,
Aaron Graves, Allison Haltom, Peter Lange,
Larry Moneta, Robert K. Steel, Tallman Trask
III, Suzanne Wasiolek, Duke University Health
System, Inc., the Private Diagnostic Clinic,
PLLC, Theresa Arico, Tara Levicy, Dr. Julie
Manly, Duke University Police Department,
Jeffrey O. Best, Phyllis Cooper, Robert Dean,
Joseph Fleming, William F. Garber II, Leila
Humphries, James Schwab, Gary N. Smith, and
Greg Stotsenberg