IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 1:07-CV-00953

| | | |
|---|---|---|
| RYAN MCFADYEN, *et al.*, | ) | |
| | ) | **THE CITY OF DURHAM'S** |
| Plaintiffs, | ) | **SUPPLEMENTAL BRIEF IN** |
| | ) | **SUPPORT OF ITS MOTION** |
| v. | ) | **TO DISMISS PLAINTIFFS'** |
| | ) | **SECOND AMENDED** |
| DUKE UNIVERSITY, *et al.*, | ) | **COMPLAINT** |
| | ) | |
| Defendants. | ) | |

Having thus far failed to state a cognizable claim against the City under any of their ill-conceived theories, Plaintiffs now attempt another approach: asserting claims under scattered provisions of the North Carolina Constitution. Plaintiffs' latest effort is, however, equally unavailing. None of the state constitutional provisions supplies any grounding for a cognizable claim. In particular:

- Article I, Section 19. North Carolina courts interpret Section 19 as synonymous with federal due process and equal protection provisions. *See State v. Bryant*, 614 S.E.2d 479, 485 (N.C. 2005). Accordingly, the defects in Plaintiffs' federal due process and equal protection claims, *see* City's Open. Br. (Doc. No. 62) at 18-26, 29-33, also doom Plaintiffs' Section 19 claim. *See* Parts II & III, *infra*.

- Article I, Section 1. This provision protects against excessive regulation of business. To the extent it applies in any other context, it imposes the same limits on claims as does Section 19. *See Peele v. Provident Mut. Life Ins. Co.*, 368 S.E.2d 892, 894-95 (N.C. Ct. App. 1988). Thus, Plaintiffs' Section 1 claim is defective for the same reasons as their Section 19 claim. *See* Part IV, *infra*.

- Article I, Section 14. This provision is North Carolina's analogue to the free speech guarantee of the First Amendment. Plaintiffs' claim is, presumably, a parallel state claim to their Section 1983 retaliation claim. But the state

constitution imposes the same limitations on such claims as the federal constitution. *See Swain v. Elfland*, 550 S.E.2d 530 (N.C. Ct. App. 2001). Thus, the multiple defects in Plaintiffs' federal retaliation claim, *see* City's Open. Br. at 26-29, render this claim equally baseless. *See* Part V, *infra*.

- Article I, Section 15, and Article IX, Section 1. These provisions establish a right for schoolchildren to receive a basic public education. *See Leandro v. State*, 488 S.E.2d 249, 255 (N.C. 1997). They have no conceivable application to Plaintiffs. *See* Part VI, *infra*.

For these reasons—and as explained further below—Plaintiffs' Cause of Action under the state constitution is defective. But even if it (or any one of its five subset claims) passed muster, Plaintiffs could not assert it in this case. A court's recognition of a direct claim under the North Carolina Constitution is an "extraordinary exercise of its inherent constitutional power," *Corum v. University of N.C.*, 413 S.E.2d 276, 291 (N.C. 1992), which may be exercised *only* when no other adequate remedy is available, *id.* at 291-92. Alternate remedies are, however, undoubtedly available here: Common law claims may be brought (and have been brought) against individual actors in their individual capacities—providing a remedy for the harm allegedly suffered. *See Glenn-Robinson v. Acker*, 538 S.E.2d 601, 632 (N.C. Ct. App. 2000). The availability of such alternate remedies precludes direct claims against the City under the state constitution.

I. **BACKGROUND**

Plaintiffs' original Complaint was filed on December 18, 2007. *See* Doc. Nos. 1-3. On April 17 and 18, 2008, Plaintiffs filed amended Complaints. Doc. Nos. 33-34. On November 11, 2009, Plaintiffs sought leave to amend the pleadings, adding various claims against the City and against Duke University under the North Carolina Constitution. *See* Doc. No. 130. On February 16, 2010, the Court granted leave to

- 2 -

Case 1:07-cv-00953-JAB-WWD   Document 180   Filed 03/16/10   Page 2 of 18

amend, ordering the Second Amended Complaint be filed within seven days of its Order. Doc. No. 135. The Court ruled that after Plaintiffs filed their amended Complaint, the then-pending motions to dismiss would be moot; Defendants could file renewed motions to dismiss; and the City and Duke could address new matters reflected in the Second Amended Complaint in supplemental memoranda not to exceed 20 pages. *Id.* Plaintiffs filed their Second Amended Complaint on February 23, 2010. *See* Doc. No. 136.

## II. PLAINTIFFS' DUE PROCESS CLAIM UNDER SECTION 19 OF THE STATE CONSTITUTION FAILS FOR MULTIPLE REASONS

### A. The Various Harms Alleged By Plaintiffs Are No More Cognizable Here Than In the Federal Context.

North Carolina courts have held that the "law of the land" provision in Section 19 of the state constitution is synonymous with the "due process of law" provision of the Fourteenth Amendment to the United States Constitution. *See Bryant*, 614 S.E.2d at 485.[1] Under both provisions, a plaintiff must adequately plead a deprivation of a cognizable liberty or property interest. *See State v. Carolina Utility Customers Ass'n*, 446 S.E.2d 332, 344 (N.C. 1994) ("Where there is no property interest, there is no entitlement to constitutional protection."); *In re W.B.M.*, No. COA09-205, 2010 WL 702752, at *7 (N.C. Ct. App. Mar. 2, 2010) (due process claim requires "liberty or property interest which has been interfered with by the State"). But just as with Plaintiffs' federal due process claims, Plaintiffs fail to allege such a deprivation here.

---

[1] *Accord Tri-County Paving, Inc. v. Ashe County*, 281 F.3d 430, 435 n.6 (4th Cir. 2002) ("North Carolina courts have consistently interpreted the due process and equal protection clauses of the North Carolina Constitution as synonymous with their Fourteenth Amendment counterparts."); *Shavitz v. City of High Point*, 270 F. Supp. 2d 702, 709 n.5 (M.D.N.C. 2003) (Beaty, J.) (citation omitted).

- 3 -

For example, the fundamental feature of Plaintiffs' Complaint is their allegation that they have suffered, and continue to suffer, reputational harm. *See, e.g.*, SAC ¶¶ 4, 524, 636, 685, 852. But, as the City explained in its original briefs, reputational harm cannot ground any due process claim under the U.S. Constitution. *See Siegert v. Gilley*, 500 U.S. 226, 233-34 (1991); *see also* City's Open. Br. (Doc. No. 62) at 21-24; City's Reply Br. (Doc. No. 107) at 9-10. This is equally true under the state constitution. *See, e.g.*, *Toomer v. Garrett,* 574 S.E.2d 76 (N.C. Ct. App. 2002). Indeed, the "stigma plus" test—which requires that an *independent* deprivation of liberty or property occur in addition to any reputational harm—applies under both constitutions. *See Ridpath v. Board of Governors Marshall Univ.*, 447 F.3d 292, 310-11 (4th Cir. 2006) (significant demotion coupled with defamatory statement may trigger federal due process); *Toomer*, 574 S.E.2d at 87 (dismissing claim under federal and state constitutions since there was no "employment action, much less a dismissal or demotion," accompanying reputational harm). But Plaintiffs fall far short of satisfying that test.

Plaintiffs cite their inability to play lacrosse in 2006 as a deprivation of their liberty. *See* SAC ¶ 957. But even if playing lacrosse were a cognizable liberty interest,[2] any deprivation of that interest *flowed from* the alleged harm to Plaintiffs' reputations. The U.S. Supreme Court has squarely rejected such a bootstrapping approach under the federal constitution. *See Siegert*, 500 U.S. at 234 (damage which "flows from" alleged injury to reputation not cognizable property or liberty interest). And that approach has

---

[2] *But see Bailey v. Truby*, 321 S.E.2d 302, 314-15 (W. Va. 1984) ("[T]he overwhelming majority of courts have held that participation in interscholastic athletics or other extracurricular activities is not a constitutionally protected liberty or property interest.").

- 4 -

had no better traction under the state constitution. *See, e.g., Toomer*, 574 S.E.2d at 83 (finding no liberty deprivation where plaintiff alleged that he was "blacklisted" as a result of harm to his reputation). Moreover, the decision to cancel lacrosse games was made by Duke University, not the City. Accordingly, the fundamental requirement for state action is absent. *See Paul v. Davis*, 424 U.S. 693, 711 (1976). That requirement applies equally to the state constitution. *See Weston v. Carolina Medicorp., Inc.*, 402 S.E.2d 653, 657 (N.C. Ct. App. 1991) ("[S]tate action is required to trigger the 'synonymous' due process provisions of the Fourteenth Amendment to the United States Constitution and Article I, § 19 of the North Carolina Constitution.").

Plaintiffs also cite the nondelivery of the NTID test results as a "deprivation of property" sufficient to sustain their claim. *See* SAC ¶ 957. But as the City has explained, *see* Open. Br. at 18-20, this confuses *process* with *property*. Delivery of the NTID results is a not a property interest sufficient to ground a due process claim. *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 766 (2005) (finding no "property" interest in enforcement of a restraining order for federal due process purposes, in part because it "does not 'have some ascertainable monetary value'") (citation omitted). The same is true under the state constitution. *See Toomer*, 574 S.E.2d at 88 (interest in confidentiality of personnel file not "'monetizable'" property interest protected by due process).[3]

---

[3] The only other plausibly cognizable liberty interests at issue here are those implicated during the NTID and the searches of Plaintiff McFadyen's dormitory room and car pursuant to a court-issued search warrant. But Plaintiffs have not asserted any claim under Section 20—the section of the North Carolina Constitution which speaks to searches and seizures. *See State v. Carter*, 370 S.E.2d 553, 555 (N.C. 1998). In any

- 5 -

Moreover, even if a failure to deliver NTID results could conceivably implicate the state constitution in some circumstances, it would do so only where it deprived a criminal defendant of a fair trial. *See State v. Pearson*, 551 S.E.2d 471 (N.C. Ct. App. 2001) (any statutory violation arising from 12-year delay in providing DNA report not "substantial" because did not prejudice defendant's trial).[4] But Plaintiffs, of course, were never even indicted, let alone subjected to trial. For all these reasons, Plaintiffs have failed to state a due process claim under the state constitution.

> **B.  A Substantive Due Process Theory Would Fail For Additional Reasons.**

To the extent Plaintiffs style their Section 19 claim as implicating *substantive* due process, it still fails for numerous reasons. First, the requirement to plead a deprivation of liberty or property still applies. Therefore, Plaintiffs' failure to do so dooms any substantive due process claim just as it dooms any procedural due process claim. *See, e.g.*, *Gravitte v. North Carolina Div. of Motor Vehicles*, 33 Fed. App'x 45 (4th Cir. 2002) ("A plaintiff seeking to assert a substantive due process claim must allege the deprivation of a cognizable interest in life, liberty, or property; a mere allegation of 'arbitrary' government conduct in the air, so to speak, will not suffice."); *Ware v. Fort*, 478 S.E.2d

---

event, the NTID and search warrants were each supported by probable cause, thus, any deprivation of liberty was consistent with constitutional standards.

[4] *See also Jean v. Collins*, 221 F.3d 656, 659 (4th Cir. 2000) (Wilkinson, J.) (no *Brady* violation unless "failure to disclose the exculpatory information deprived the § 1983 plaintiffs of their right to a fair trial") (citation omitted); *accord id.* at 674 (Murnaghan, J.) ("no court has ever recognized [a] freestanding liberty interest in exculpatory evidence"). Moreover, it was State Prosecutor Nifong—not City investigators—who determined how and when evidence was to be disclosed. *Jean*, 221 F.3d at 661 (Wilkinson, J.) (the law places "ultimate responsibility upon the prosecutor for disclosing [evidence favorable to the accused] . . . to the defense.") (citing *Brady*).

- 6 -

Case 1:07-cv-00953-JAB-WWD   Document 180   Filed 03/16/10   Page 6 of 18

218, 222 (N.C. Ct. App. 1996) (mere fact that state actor maliciously refused to reappoint professor was insufficient to state a substantive or procedural due process claim under federal or state constitutions, because professor had no cognizable property right to appointment in first place).

Second, the U.S. Supreme Court has rejected substantive due process claims in the pre-trial context. *See Albright v. Oliver*, 510 U.S. 266 (1994); *see also Brooks v. City of Winston-Salem*, 85 F.3d 178, 184 n.6 (4th Cir. N.C. 1996) (noting that *Albright* rejected the argument that "a defendant is deprived of substantive due process by continued prosecution in the absence of probable cause"). Since the state due process provisions have been interpreted as synonymous with federal due process provisions, this Court should reject a state due process claim grounded on pre-trial conduct.

Third, the North Carolina Constitution imposes the same stringent "shocks the conscience" test on due process claims as its federal counterpart. *See Farrell v. Transylvania County Bd. of Educ.*, 682 S.E.2d 224, 229-30 (N.C. Ct. App. 2009); *General Textile Printing & Processing Corp. v. City of Rocky Mount*, 908 F. Supp. 1295, 1305 (E.D.N.C. 1995) (same). Allegations that meet the "shocks the conscience" standard typically involve depravity, torture, or wanton infliction of bodily harm. *See, e.g.*, *Farrell*, 682 S.E.2d at 229-30. Plaintiffs' allegations do not come close to meeting that standard.

### C. The Allegations Purporting to Support State Due Process Claims Are Demonstrably Implausible Under *Iqbal*.

Plaintiffs' state constitutional cause of action fails for yet another reason: their allegations fail to meet the pleading standard clarified by the U.S. Supreme Court in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). *Iqbal* requires that a court cull out any allegations that are conclusory in nature before evaluating whether the remaining factual allegations are sufficient to state a claim. *See id.* at 1951-52. Because *Iqbal* is an interpretation of Rule 8, *see Iqbal*, 129 S. Ct. at 1953 (citation omitted), it applies to any civil action brought in federal court, whether that action relies on federal or state causes of action. *See, e.g.*, *Collum v. Charlotte-Mecklenburg Bd. of Educ.*, No. 3:07-CV-534, 2010 WL 702462, *1, 9-10 (W.D.N.C. Feb. 23, 2010).

As the City has already explained, *see* City's *Iqbal* Brief (Doc. No. 100) at 5-18, the Complaint is littered with conclusory allegations: According to Plaintiffs, malice was afoot far and wide, with one or more conspiracies bent on convicting innocent people of rape. *See, e.g.*, SAC ¶¶ 1-4, 108, 128, 402-44, 591-610, 617-26, 629, 639-41, 660-84, 746-99.[5] Yet, once stripped of the purple prose, the remaining factual allegations in the Complaint do not plausibly suggest anything of the sort. Even if it were theoretically *possible* that City Defendants conspired among themselves and with others to

---

[5] Indeed, the latest version of Plaintiffs' Complaint actually exacerbates the problem. In asserting their new state constitutional claims, they fail to identify which particular factual allegations—in the over 400 pages of the Complaint—are relevant to those claims. This violates the "short and plain statement" requirement of Rule 8, and Plaintiffs' new claims should be dismissed on that basis alone. *See* Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1281 (3d ed.) (Rule 8 not satisfied when court and defendants "are forced to ferret out the relevant material from a mass of verbiage").

intentionally convict innocent people of rape, the allegations are *at least* as consistent with conduct devoid of such wickedness—*i.e.*, police investigating a felony under unusually trying circumstances. See City's Supp. Br. (*Iqbal*) (Doc. No. 123) at 5-14.

Once the conclusory allegations are stripped away, the true nature of Plaintiffs' Complaint becomes clear: Plaintiffs believe that City investigators should have taken less time investigating; that they should have weighed the available evidence differently; and that they never should have suspected these Plaintiffs of any wrongdoing. But no matter how understandable such a reaction may be, it cannot support a due process claim. *See, e.g., Wolf v. Fauquier County Bd. of Supervisors*, 555 F.3d 311 (4th Cir. 2009) (rejecting due process claim based on claim that investigators "sought too much information and spent too long investigating" allegations).

## III. PLAINTIFFS' STATE EQUAL PROTECTION CLAIMS ARE JUST AS DEFICIENT AS THEIR FEDERAL EQUAL PROTECTION CLAIMS

To the extent Plaintiffs style their Section 19 claim as arising under an equal protection theory, it fares no better. Claims brought under that provision are subject to the same limiting principles as federal equal protection claims. *See Shavitz*, 270 F. Supp. 2d at 722 ("North Carolina's Equal Protection Clause is 'functionally equivalent to the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.'") (Beaty, J.) (citing *White v. Pate*, 304 S.E.2d 199, 203 (N.C. 1983)). Thus, the defects in the Complaint outlined in the City's opening brief are equally fatal here: Plaintiffs do not allege that they are members of a protected class, nor do they allege that any particular Defendants acted out of racial animus against them. See City's Open. Br.

- 9 -

Case 1:07-cv-00953-JAB-WWD   Document 180   Filed 03/16/10   Page 9 of 18

at 31-33; *see also White*, 304 S.E.2d at 205 (rejecting federal and state equal protection claims when purported class lacked "indicia of suspectness"); *State v. Rogers*, 562 S.E.2d 859 (N.C. 2002) (applying Fourteenth Amendment "protected class" requirement to state constitutional claim premised on equal protection theory).

Moreover, the state constitution provides no greater latitude than the federal constitution with respect to Plaintiffs' allegations that City defendants "fomented" racism on the part of others. On the contrary, "[t]o prevail upon a claim for racial discrimination in either a federal or state court in North Carolina, a plaintiff must establish improper motivation on defendant's part by proffering evidence of *discriminatory intent*." *McCallum v. North Carolina Coop. Extension Serv. of N.C. State Univ.*, 542 S.E.2d 227, 233 (N.C. Ct. App. 2001) (assessing equal protection claim under North Carolina Constitution) (emphasis added); *see also Monroe v. City of Charlottesville*, 579 F.3d 380 (4th Cir. 2009) (finding no discriminatory intent where focus on white suspects stemmed from victim's descriptions, not from any racial animus on part of police).[6] Plaintiffs' failure to allege facts suggesting intentional discrimination by the City Defendants thus dooms their state equal protection claim.

---

[6] *See also Coggins v. Gov't of Dist. of Columbia*, No. 97-2263, 1999 WL 94655, at *4 (4th Cir. Feb. 19, 1999) ("The fact that [defendants] are both Caucasian makes any anti-Caucasian bias unlikely."); *Neely v. United States Postal Serv.*, No. 03-6566, 2007 WL 4389473, at *8 n.4 (E.D. Pa. Dec. 12, 2007) (when defendant of same race as plaintiff "substantially weakens any inference of discrimination"); *Williams v. Alternative Behavioral Servs.*, No. 2:03-CV-903, 2004 WL 3258906, at *7 (E.D. Va. Sep. 15, 2004) ("[A]ny inference of discrimination is negated when the decision-maker is in the same protected class as the plaintiff.").

## IV. PLAINTIFFS' ARTICLE I, SECTION 1 CLAIM HAS NO RELEVANCE HERE; AT BEST, IT IS REPETITIVE OF PLAINTIFFS' SECTION 19 CLAIM AND DEFECTIVE FOR THE SAME REASONS.

In addition to their Section 19 claim, Plaintiffs also assert a claim under Article I, Section 1 of the North Carolina Constitution.[7] Despite that provision's broad language, however, it applies only in one narrow context—protection against undue business regulation. *See Sheaffer v. County of Chatham*, 337 F. Supp. 2d 709, 730 (M.D.N.C. 2004) ("This provision has thus been held to protect the right to engage in 'ordinary trades and occupations' without undue government regulation or interference.") (citation omitted); *North Carolina Real Estate Licensing Board v. Aikens*, 228 S.E.2d 493, 496 (N.C. Ct. App. 1976) (Article I, Section 1 "guarantee[s] the right to pursue ordinary and simple occupations free from governmental regulation."); *Sanders v. State Pers. Comm'n*, 677 S.E.2d 182, 191 (N.C. Ct. App. 2009) ("Article I, Section 1 is intended to be a check against the government's excessive regulation of business affairs."). Courts have not expanded the reach of this provision beyond that narrow context. *See* John V. Orth, The North Carolina Constitution 38 (1995) (noting absence of litigation under Section 1 in any context outside of claims of excessive business regulation, because such claims would be brought under "more detailed provisions elsewhere in the constitution").

Even if this Section's reach went beyond that narrow category of cases, it would extend no further than the reach of Section 19—and claims under Section 1 would be

---

[7] Article I, Section 1 provides that "all persons are created equal; that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty, the enjoyment of the fruits of their own labor, and the pursuit of happiness."

subject to the same limitations. *See Rosie J. v. North Carolina Dep't of Human Resources*, 491 S.E.2d 535, 537-38 (N.C. 1997) (dismissing all state constitution claims, including Sections 1 and 19, on same grounds); *Peele v. Provident Mut. Life Ins. Co.*, 368 S.E.2d 892, 894-95 (N.C. Ct. App. 1988) (dispatching Section 19 and Section 1 claims on same grounds—lack of property interest); *Sanders*, 677 S.E.2d at 191 ("The test used to interpret the validity of state regulation of business under Article I, Section 1 is the same as that used under the analysis articulated above for an equal protection claim . . . ."). Thus, to the extent that Section 1 has any relevance to Plaintiffs' claims, it completely overlaps their Section 19 claim—and is subject to dismissal on the same grounds.

## V. PLAINTIFFS' RETALIATION CLAIM UNDER THE STATE CONSTITUTION FAILS FOR THE SAME REASONS AS ITS FEDERAL RETALIATION CLAIM

Plaintiffs also assert a "free speech" claim under Article I, Section 14 of the North Carolina Constitution,[8] presumably under the same theory that gave rise to Plaintiffs' "retaliation" theory in the federal context. *See* Cause of Action 9. But Section 14 imposes the same substantive requirements on would-be plaintiffs as the First Amendment. *See State v. Petersilie*, 432 S.E.2d 832, 841 (N.C. 1993); *Harter v. Vernon*, 953 F. Supp. 685, 697 (M.D.N.C.), *aff'd*, 101 F.3d 334 (4th Cir. 1996). This is also true with respect to free-speech retaliation claims. *See Sheaffer*, 337 F. Supp. 2d at 729-30 ("The standards for free speech retaliation claims under the state constitution are the

---

[8] Article I, Section 14 provides, "Freedom of speech and of the press are two of the great bulwarks of liberty and therefore shall never be restrained, but every person shall be held responsible for their abuse."

- 12 -

Case 1:07-cv-00953-JAB-WWD   Document 180   Filed 03/16/10   Page 12 of 18

same as those for free speech claims under the federal constitution."); *Swain v. Elfland*, 550 S.E.2d 530 (N.C. App. 2001). Thus, the same deficiencies that require dismissal of Plaintiffs' federal retaliation claim also require dismissal of the parallel state constitutional claim.

Those deficiencies are many: First, the alleged retaliatory activity—*i.e.*, the DNA testing pursuant to the NTID—was conducted upon probable cause. *See* City's Open. Br. at 8-12. This alone precludes a retaliation claim. *See Hartman v. Moore*, 547 U.S. 250, 252 (2006). Second, Plaintiffs' teammates' postponement of the meeting with police—essentially a tactical decision about how and when they might share information with investigators—was not speech by these Plaintiffs. *See* Open. Br. at 28-29; *see also Nieber v. Town of Cicero*, No. 98-4157, 1998 WL 677155, at *7 (N.D. Ill. Sept. 22, 1998) (holding that refusal to answer investigators' questions "may be protected, but not by the First Amendment").

Third, Plaintiffs failed to allege any "adverse effect" on their First Amendment rights. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005) (to be actionable, retaliatory conduct must be "likely [to] deter 'a person of ordinary firmness' from the exercise of First Amendment rights"). There is no allegation that the NTID or any other investigatory action deterred Plaintiffs from engaging in any actual speech, or even from rescheduling or cancelling meetings with police. In fact, the opposite is true: Plaintiffs postponed and then cancelled their meeting with investigators. *See* Open. Br. at 28.

Finally, this claim fails for lack of causation. Plaintiffs concede that the rape investigation in general, and the search for DNA evidence in particular, was underway prior to their postponement of the meeting. Thus, Plaintiffs cannot establish a causal link between the postponement and the subsequent investigatory steps as a matter of law. *See, e.g., Ruttenberg v. Jones*, 283 Fed. App'x 121, 131 (4th Cir. 2008) (dismissing retaliation claim where defendant's actions could not have been in retaliation for plaintiff's speech because they had started prior to that speech); *see also Grimm v. City of Uniontown*, No. 06-1050, 2008 WL 282344, at *26 (W.D. Pa. Jan. 31, 2008) (rejecting "novel theory" of retaliation claim based on fact that plaintiff "refused to answer a question and was not released thereafter").

## VI. PLAINTIFFS' RIGHT TO EDUCATION CLAIMS FAIL BECAUSE THE CONSTITUTIONAL RIGHT APPLIES TO PUBLIC SCHOOLCHILDREN

Finally, Plaintiffs assert "right to education" claims under Article I, Section 15[9] and Article IX, Section 1[10] of the North Carolina Constitution. But these provisions have no application to Plaintiffs, since they simply protect the rights of the children of North Carolina to a public education. *See, e.g.*, *Leandro v. State*, 488 S.E.2d 249, 255 (N.C. 1997); *Mebane Graded School Dist. v. Alamance County*, 189 S.E. 873, 879 (1937). They do not provide a right to a private college education. Nor could this claim be brought against the City in any event, since any deprivation of a right to an education was

---

[9] Section 15 provides: "The people have a right to the privilege of education, and it is the duty of the State to guard and maintain that right."

[10] Article IX, Section 1 provides: "Religion, morality, and knowledge being necessary to good government and the happiness of mankind, schools, libraries, and the means of education shall forever be encouraged."

caused by Duke, not the City. Thus, both "state action" and the necessary causal link between the City's actions and the violation of a right to education are absent.

## VII. BECAUSE ADEQUATE ALTERNATIVE REMEDIES ARE AVAILABLE TO PLAINTIFFS, THEIR NEW CLAIMS ARE PRECLUDED

A court's recognition of a direct claim brought under the state constitution is an "extraordinary exercise of its inherent constitutional power," *Corum v. University of N.C.*, 413 S.E.2d 276, 291 (N.C. 1992), which may be exercised *only* when no other adequate remedies are available, *id.* at 291-92. Because such remedies are available here, Plaintiffs' state constitutional claim must be dismissed.

As the North Carolina Supreme Court recently confirmed, a court must look to any remedies available "based on the same facts" forming the basis of the plaintiffs' constitutional claim. *See Craig v. New Hanover County Bd. of Educ.*, 678 S.E.2d 351, 355 (N.C. 2009). A remedy is adequate for these purposes when, "if successful, [it] would have compensated [a plaintiff] for the same injury he claims in his direct constitutional action." *Rousselo v. Starling*, 495 S.E.2d 725, 731 (N.C. Ct. App. 1998) (citation omitted). Moreover, "the *form* of relief available . . . is irrelevant." *Iglasias v. Wolford*, 539 F. Supp. 2d 831, 839 (E.D.N.C. 2008). A remedy may be adequate even though it arises by virtue of different types of available claims,[11] in different venues or

---

[11] *See, e.g.*, *Copper v. Denlinger*, 688 S.E.2d 426 (N.C. 2010) (administrative appeal provided adequate remedy precluding state constitutional claim); *Alt v. Parker*, 435 S.E.2d 773, 779 (N.C. Ct. App. 1993) (available administrative remedies precluded constitutional tort claim).

- 15 -

proceedings,[12] or against different defendants.[13] Moreover, whether the alternate remedy would ultimately be successful is irrelevant: Even if a claim wholly lacks merit—or is defective for other (non-immunity-based) reasons—its availability precludes a direct constitutional claim based on the same alleged facts. *See, e.g.*, *Alt v. Parker*, 435 S.E.2d 773, 779 (N.C. Ct. App. 1993).

Here, common law claims are available against other defendants in their individual capacities. North Carolina courts have repeatedly concluded that when common-law claims against individual government actors in their individual capacities are available, they are "adequate remedies." *See, e.g.*, *Glenn-Robinson v. Acker*, 538 S.E.2d 601, 632 (N.C. Ct. App. 2000) (rejecting state constitutional claim against city arising out of false arrest because claim could be brought against individual officer); *Rousselo*, 495 S.E.2d at 731; *Seaton v. Owens*, No. 1:02CV00734, 2003 WL 22937693, at *8 (M.D.N.C. Dec. 8, 2003). Since Plaintiffs have available to them common-law claims against a number of individual defendants—and they have, in fact, asserted many such claims—they cannot bring a direct claim under the North Carolina Constitution. The fact that the claims against individual City Defendants lack merit—for the reasons discussed in the City's and those individual Defendants' opening briefs—is irrelevant. The claims are still

---

[12] *See, e.g.*, *Love-Lane v. Martin*, 355 F.3d 766, 789 (4th Cir. 2004) (precluding assertion of North Carolina constitutional claim in federal venue when statutory remedy had been available in state venue).

[13] *See Cooper v. Brunswick Co. Bd. of Educ.*, No. 7:08-CV-48, 2009 WL 1491447, at *4 (E.D.N.C. May 26, 2009) (finding that "a state-law remedy is still 'adequate' notwithstanding that a plaintiff could not use it to sue his preferred defendant").

"available" as an alternate remedy within the meaning of North Carolina law. *See, e.g.*, *Alt*, 435 S.E.2d at 779.[14]

## VIII. CONCLUSION

Plaintiffs' claim brought under the North Carolina Constitution must be dismissed.

This the 16th day of March, 2010.

| FAISON & GILLESPIE | STEPTOE & JOHNSON LLP |
|---|---|
| By: /s/ Reginald B. Gillespie, Jr. | By: /s/ Roger E. Warin |
| Reginald B. Gillespie, Jr. | Roger E. Warin* |
| North Carolina State Bar No. 10895 | Michael A. Vatis* |
| 5517 Chapel Hill Boulevard, Suite 2000 | Matthew J. Herrington* |
| Post Office Box 51729 | John P. Nolan* |
| Durham, North Carolina 27717-1729 | Leah M. Quadrino* |
| Telephone: (919) 489-9001 | Steptoe & Johnson LLP |
| Fax: (919) 489-5774 | 1330 Connecticut Avenue, N.W. |
| E-Mail: rgillespie@faison-gillespie.com | Washington, D.C. 20036 |
| | Telephone: (202) 429-3000 |
| | Fax: (202) 429-3902 |
| | E-mail: rwarin@steptoe.com |
| | *Motion for Special Appearance to be filed |

*Attorneys for Defendant City of Durham*

---

[14] Even if the availability of individual capacity claims did not suffice in this context, Plaintiffs would not have been without other alternatives. For example, they could have brought a direct state-court action against Nifong's employer, the State of North Carolina, for a purported violation of their state constitutional rights. While Plaintiffs do somersaults to construct a supervisory role for *the City*, Nifong—as a matter of law—was the responsibility of the State. *See* City's Open. Br. at 36-38. Any claims based on negligent supervision of Michael Nifong, *see*, *e.g.*, SAC ¶¶ 1273, 1280, must be brought against Nifong's employer, the State of North Carolina. *See* N.C. Gen. Stat. § 143-291 *et seq*. Moreover, Plaintiffs have, of course, brought federal constitutional claims against the City itself. *See, e.g.*, *Giraldo v. California Dept. of Corrections and Rehabilitation*, 85 Cal. Rptr. 3d 371, 390 (Cal. Ct. App. 2009) (rejecting state constitutional claim in part because plaintiff had parallel Eighth Amendment claim available pursuant to Section 1983); *Board of County Comm'rs of Douglas Co. v. Sundheim*, 926 P.2d 545, 553 & n.14 (Colo. 1996) (en banc) (same, as to due process).

CERTIFICATE OF ELECTRONIC FILING AND SERVICE

The undersigned hereby certifies that, pursuant to Rule 5 of the Federal Rules of Civil Procedure and LR5.3 and LR5.4, MDNC, the foregoing pleading, motion, affidavit, notice, or other document/paper has been electronically filed with the Clerk of Court using the CM/ECF system, which system will automatically generate and send a Notice of Electronic Filing (NEF) to the undersigned filing user and registered users of record, and that the Court's electronic records show that each party to this action is represented by at least one registered user of record (or that the party is a registered user of record), to each of whom the NEF will be transmitted.

This the 16th day of March, 2010.

                                          FAISON & GILLESPIE

                                          By: /s/ Reginald B. Gillespie, Jr.
                                                Reginald B. Gillespie, Jr.
                                                North Carolina State Bar No. 10895